IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BRAUN GmbH,

        Plaintiff,

        v.

RAYOVAC CORPORATION,

        Defendant.

Civil Action No. 03-CV-12428-WGY

## BRAUN GmbH'S *MARKMAN* REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS CLAIM CONSTRUCTION

BRAUN GmbH

By its attorneys,

William L. Patton (BBO #391640)
Dalila Argaez Wendlandt (BBO #639280)
Lesley Frieder Wolf (BBO #651199)
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
(617) 951-7000
(617) 951-7050 (facsimile)

Dated: January 5, 2005

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................... 1

II.   THE LEVEL OF ORDINARY SKILL IN THE ART IS EXPERIENCE IN DESIGN
      IN THE DRY SHAVING INDUSTRY ................................................................... 2

III.  CONSTRUCTION OF THE '328 PATENT ........................................................... 3

      A.    Cradle Structure Adapted To Receive A Head Of A Shaving Apparatus ............. 4

            1.    The Claim Element Recites Structure And Is Not Governed By 35
                  U.S.C. § 112, ¶ 6. ...................................................................................... 4

            2.    Rayovac's Alternative Construction Is Not Supported By The Claim
                  Language, The Specification, Or The Prosecution History Of The
                  '328 Patent. ................................................................................................ 9

      B.    Feed Device For Feeding Cleaning Fluid From Said Cleaning Fluid Container
            To Said Cradle Structure .................................................................................. 15

            1.    The Claim Element Recites Structure And Is Not Governed By 35
                  U.S.C. § 112, ¶ 6. .................................................................................... 15

            2.    Rayovac's Characterization Of The Specification And The Prosecution
                  History Is Incorrect And Irrelevant To Construction Of The Claim. ....... 16

      C.    An Impeller ...................................................................................................... 19

      D.    Cradle Structure Adapted To Receive A Shaving Head Of A Shaving Apparatus,
            Said Cradle Structure Being Permanently Open To Atmosphere ........................ 19

      E.    Bracket For Insertion Of The Shaving Apparatus ............................................. 20

IV.   CONSTRUCTION OF THE '556 PATENT ......................................................... 21

      A.    A Cradle Structure Adapted To Receive Therein The Shaving Head ................. 21

            1.    The Claim Element Recites Structure And Is Not Governed By 35
                  U.S.C. § 112, ¶ 6. .................................................................................... 21

            2.    Rayovac's Alternative Construction Is Not Supported By The Claim
                  Language, The Specification, Or The Prosecution History Of The
                  '556 Patent. .............................................................................................. 22

      B.    A Cleaning Fluid Container Separate From The Cradle Structure For Holding
            A Cleaning Fluid .............................................................................................. 27

      C.    Fluid Feed Mechanism Which Feeds The Cleaning Fluid After It Passes
            Through The Filter To The Cradle Structure During Cleaning ........................... 29

            1.    The Claim Element Recites Structure And Is Not Governed By 35
                  U.S.C. § 112, ¶ 6. .................................................................................... 29

            2.    Rayovac's Characterization Of The Specification And The Prosecution
                  History Is Incorrect And Irrelevant To Construction Of The Claim. ....... 29

D.     Said Container And Filter Being Separable From The Cradle Structure As A Unit ......................................................................................... 32

E.     Construction Of Claim 2 ...................................................................... 35

F.     Construction Of Claim 18 .................................................................... 36

V.     CONCLUSION ............................................................................................... 36

# TABLE OF AUTHORITIES

## CASES

Al-Site Corp. v. VSI Int'l, Inc., 174 F.3d 1308 (Fed. Cir. 1999)....................................6

Apple Computer, Inc. v. Articulate Sys., Inc., 234 F.3d 14..............................................7

Application of Lundberg, 244 F.2d 543 (C.C.P.A. 1957) ...............................................7

Aztrazeneca AB v. Mutual Pharm. Co., 384 F.3d 1333 (Fed. Cir. 2004).....................11

Bell Atlantic Network Svcs., Inc. v. Covad Communications Group, Inc., 262 F.3d 1258
    (Fed. Cir. 2001) .......................................................................................12, 23

Cybor Corp. v. FAS Techs, Inc., 138 F.3d 1448 (Fed. Cir. 1998).................................32

Electro Med. Sys., S.A. v. Cooper Life Scis., Inc., 34 F.3d 1048 (Fed. Cir. 1994)...............passim

Envtl. Designs, Ltd.. v. Union Oil Co., 713 F.2d 693 (Fed. Cir. 1983)...........................2

Festo Corp. v. Kinzoku Kogyo Kabushiki Co., 535 U.S. 722 (2002) .....................18, 32

Forest Labs,, Inc. v. Abbott Labs,, 239 F.3d 1305 (Fed. Cir. 2001) ..............................33

Fuji Photo Film Co., Ltd. v. Int'l Trade Comm'n, 386 F.3d 1095 (Fed. Cir. 2004).....................22

Gaus v. Conair Corp., 363 F.3d 1284 (Fed. Cir. 2004) ...............................................11

Greenberg v. Ethicon Endo-Surgery, Inc., 91 F.3d 1580
    (Fed. Cir. 1996) ..........................................................................................passim

Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111 (Fed. Cir.
    2004) ......................................................................................................8, 9

Intel Corp. v. VIA Techs., Inc., 319 F.3d 1357 (Fed. Cir. 2003) .................................6, 7

Irdeto Access, Inc. v. EchoStar Satellite Corp., 383 F.3d 1295 (Fed. Cir. 2004) ..................passim

Ishida Co. v. Taylor, 221 F.3d 1310 (Fed. Cir. 2000) .................................................7

Lighting World, Inc. v. Birchwood Lighting, Inc., 382 F.3d 1354 (Fed. Cir. 2004).............4, 8, 15

Linear Tech Corp. v. Impala Linear Corp., 379 F.3d 1311 (Fed. Cir. 2004)...........................4, 15

Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995) ..........................................2

N. Telecom Ltd. v. Samsung Elecs, Co., 215 F.3d 1281 (Fed. Cir. 2000) ....................................32

Omega Eng' g, Inc. v. Raytek Corp., 334 F.3d 1314 (Fed. Cir. 2003) ...........................................32

PSC Computer Prods., Inc. v. Foxconn Int'l, Inc., 355 F.3d 1353 (Fed. Cir. 2004) ....................17

SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107 (Fed. Cir. 1985) ........................16, 29

SuperGuide Corp. v. DirectTV Enters., Inc., 358 F.3d 870 (Fed. Cir. 2004) ...............................33

Texas Digital Sys., Inc. v. Telegenix, Inc., 308 F.3d 1193 (Fed. Cir. 2002)...........................1, 5

Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576 (Fed. Cir. 1996) ...................................passim

W.E. Hall Co. v. Atlanta Corrugating, LLC, 370 F.3d 1343 (Fed. Cir. 2004) ............................19

In re Watts, 354 F.3d 1362 (Fed. Cir. 2004) .................................................................................6

York Prods., Inc., v. Central Tractor Farm & Family Center, 99 F.3d 1568 (Fed. Cir.
        1996) ...............................................................................................................................25

## STATUTES

35 U.S.C. § 112, ¶ 6 ..............................................................................................................passim

## OTHER AUTHORITIES

MCGRAW-HILL DICTIONARY OF SCIENTIFIC & TECHNICAL TERMS (6TH ED.
2003)….……………………………………………………………….......................... .... 5,19, 20

## I.    INTRODUCTION

In a tortured attempt to evade the consequences of its clear infringement of patents owned by Braun GmbH ("Braun"),[1] Rayovac Corporation ("Rayovac") has taken the relatively simple prose of the patented claims at issue and proffered claim construction contentions that ignore settled patent law and frankly defy logic.  For example, Rayovac's proposed constructions ignore the first, and indeed foremost, source of evidence in claim construction, the words of the claims themselves.[2]  Next, finding no support in the specifications or prosecution histories of the patents, Rayovac nonetheless attempts to apply means-plus-function analysis to the claims.  All the while, Rayovac proposes a construction that reads out the preferred embodiment from the claims.

Desperate to avoid the consequences of its infringement, Rayovac conveniently alleges that the subject matter of the patents "represent[s] technology in the public domain for at least 20 years."  (Rayovac Br. at 1.)  Rayovac makes this unsupported allegation in the face of its knowledge that Braun's products embodying the patented inventions have enjoyed enormous commercial success worldwide and filled a growing industry need not met by preexisting products.  Indeed, this success prompted Rayovac to copy Braun's patented technology with its infringing Titanium Smart System.

Properly stating that "claims may never be construed with reference to the accused device," (id. at 10), Rayovac nevertheless plods ahead to describe its infringing products and, throughout its brief, attempts to distinguish its products from the claims of Braun's patents, as it

---

[1]  U.S. Patent No. 5,711,328 (the "'328 patent") and U.S. Patent No. 5,649,556 (the "'556 patent," together with the '328 patent "Braun's patents").

[2]  See Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996) (first source of evidence in claim construction is "words of the claims themselves").  There is a "'heavy presumption' that [the claims] mean what they say."  Texas Digital Sys., Inc. v. Telegenix, Inc., 308 F.3d 1193, 1202 (Fed. Cir. 2002).

proposes they be read.  By its own admission, Rayovac's references to the accused products are

misplaced in a claim construction brief.  They do however, provide insight into Rayovac's

proposed constructions.  Rather than consider the claims, specification, and prosecution history

as mandated by law, Rayovac starts with the accused products and backs into its rather absurd

constructions.  The law, however, forbids this method of construction, which as a practical

matter yields incorrect results.  In contrast, Braun has proffered straightforward constructions

consistent with the language of the claims, the specifications, and the prosecution histories.[3]  As

such, Braun's constructions should be adopted by this Court.

## II.    THE LEVEL OF ORDINARY SKILL IN THE ART IS EXPERIENCE IN DESIGN IN THE DRY SHAVING INDUSTRY

Rayovac proposes a level of ordinary skill in the art that requires, at a minimum, a

"Bachelor of Science Degree in Mechanical Engineering."  (Rayovac Br. at 9.)  Braun agrees,

but proposes a more flexible standard that takes account of the educational level of the inventors.

See Envtl. Designs, Ltd. v. Union Oil Co., 713 F.2d 693, 696 (Fed. Cir. 1983) (factors relevant to

determining ordinary skill in the art include "educational level of the inventors").  One of the

inventors – Dr. Dietrich Pahl – has the German equivalent of a PhD in mechanical engineering

and experience in the design of dry shavers.  The other inventor – Gebhard Braun – however,

lacks such a formal education, but (like Dr. Pahl) has experience in design in the dry shaving

industry, which serves as the equivalent of a formal degree in mechanical engineering.

Therefore, Braun has proposed an experience-based level of ordinary skill in the art, which more

accurately reflects the educational level of the inventors.  In particular, Braun proposes that the

---

[3]  See Vitronics, 90 F.3d at 1582 (claim construction consists of review of claim language, specification, and prosecution history); Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995) (same).

level of ordinary skill is either a Bachelor of Science in mechanical engineering or experience in design in the dry shaving industry.[4]

Rayovac's additional contention that the level of ordinary skill in the art requires "3-5 years experience designing devices involving fluid processes," (Rayovac Br. at 9), is unsupportable. The requisite background in mechanical engineering gives the ordinary artisan knowledge about pumps, motors, and electronic circuitry, (id.); despite Rayovac's statements to the contrary, no additional background in fluid processing devices is necessary. Rayovac's observation that Braun's invention is a cleaning system, not a shaver, (id.), does not support its additional requirement of experience in designing fluid processing devices. Indeed, the observation fails to acknowledge that those designing dry shavers would be acutely aware of the need for a better cleaning method for those shavers. In fact, both Dr. Pahl and Mr. Braun worked in Braun's shaver research group. (Id. at Ex. 7, ¶ 3); Decl. of Gebhard Braun ¶ 4, attached hereto as Exhibit 9. Therefore the relevant level of ordinary skill is either a mechanical engineering degree or equivalent experience in design in the dry shaving industry, which would give the ordinary artisan a background in mechanical engineering and provide the industry specific background in the problems of cleaning dry shavers.

## III.    CONSTRUCTION OF THE '328 PATENT

Rayovac tries to overcome the simple and straightforward language of the claims by arguing for means-plus-function construction of structural claims, importing limitations from the specification into the claims, and misreading the prosecution history. Nonetheless, the simple

---

[4]   Rayovac improperly quotes the level of ordinary skill in the art proposed by Braun. While Rayovac states that Braun argues the appropriate level is "experience in the dry shaving industry," (Rayovac Br. at 9), Braun's interrogatory response states that the appropriate level is "experience in design in the dry shaving industry." (Id. at Ex. 5 (emphasis added).). Thus, Rayovac's concern that Braun's position would include a marketing or account executive, individuals "unlikely to be the type of person involved in designing cleaning systems," (id. at 9), is unwarranted.

constructions offered by Braun remain the clear and correct interpretations of the claims of

Braun's patents.

>   **A.    Cradle Structure Adapted To Receive A Head Of A Shaving Apparatus**

Signifying its own uncertainty about its position, Rayovac offers the Court not one, but

two separate, constructions of the "cradle structure" element of claims 11, 12, 14, and 18 of the

'328 patent.  Despite having two bites at the apple, Rayovac in unable to present a supportable

construction of this claim element.

>   **1.    The Claim Element Recites Structure And Is Not Governed By 35
>   U.S.C. § 112, ¶ 6.**

As discussed in Braun's initial memorandum, (Braun Br. at 6-8), the absence of the

words "means for" in the cradle structure element of the claims of the '328 patent creates a

strong presumption that the element is not governed by § 112, ¶ 6.  See Greenberg v. Ethicon

Endo-Surgery, Inc., 91 F.3d 1580, 1584 (Fed. Cir. 1996) ("[T]he use of the word 'means' has

come to be so closely associated with 'means-plus-function' claiming that it is fair to say use of

the term  'means' (particularly as used in the phrase 'means for') generally invokes section

112(6) and that the use of a different formulation generally does not.").  In this case, Rayovac

has not met its very heavy burden to overcome this strong presumption because the term "cradle"

has a well understood meaning in the art.  See Linear Tech Corp. v. Impala Linear Corp., 379

F.3d 1311, 1319-20 (Fed. Cir. 2004) ("circuit" has understood meaning in the art, therefore party

advocating means-plus-function construction, could not overcome presumption that §112, ¶ 6 did

not apply); Lighting World, Inc. v. Birchwood Lighting, Inc., 382 F.3d 1354, 1358-62 (Fed. Cir.

2004) (word "connector" has well understood meaning in art, therefore "connector assembly"

not a means-plus-function claim element).  Namely, a cradle is a "framework or other resting

place for supporting or restraining objects." MCGRAW-HILL DICTIONARY OF SCIENTIFIC & TECHNICAL TERMS (6th ed. 2003).[5]

In an attempt to muddy the waters, Rayovac quotes various definitions of "cradle" from a general use dictionary – WEBSTER'S NEW COLLEGE DICTIONARY. (Rayovac Br. at 14.) However, such general usage dictionaries are of limited value, especially when a technical dictionary (such as the MCGRAW-HILL DICTIONARY OF SCIENTIFIC & TECHNICAL TERMS) indicates a specialized usage of the term within the relevant discipline. See Irdeto Access, Inc. v. EchoStar Satellite Corp., 383 F.3d 1295, 1300 (Fed. Cir. 2004) (where technical dictionary shows one skilled in art would assign "special meaning to claim term," general dictionaries are irrelevant to construction of the claim language).

In this case, Rayovac has defined the relevant art as a formal degree in mechanical engineering and Braun agrees that equivalent experience in design in the dry shaving industry is the appropriate level of ordinary skill. As such, Rayovac's criticism of the use of the definition of "cradle" from the technical dictionary – that is, the dictionary that would be consulted by the ordinary artisan – is unfounded.[6] See, e.g., id.

Rayovac's next argument that the term "cradle" is not well understood in the art rests on the absence of the word "cradle" from an English translation of the German-language description of the cleaning device contained in an internal document in which one of the inventors discloses

---

[5] "[D]ictionaries, encyclopedias, and treatises are particularly useful resources to assist the Court in determining the ordinary and customary meaning of claim terms." Texas Digital, 308 F.3d at 1202.

[6] As discussed in Braun's initial memorandum, (Braun Br. at 7-8), Rayovac's criticism of the technical definition of "cradle" as circular – because it defines "cradle" by what it does, (Rayovac Br. at 14-15), is equally unfounded. As the Federal Circuit has stated, "Many devices take their name from the functions they perform. The examples are innumerable, such as 'filter,' 'brake,' 'clamp,' 'screwdriver,' or 'lock.'" Greenberg, 91 F.3d at 1583. The question is whether the term is well understood in the art. In this case, the word "cradle" has a well understood meaning.

the cleaning device to Braun's patent department.  (Rayovac Br. at 15.)  Like Rayovac's reliance on the general use dictionary, the argument is untenable.  To begin, inventor's statements about claim scope are generally irrelevant to claim construction where the public record, including the claims, the specification, and the prosecution history, are unambiguous.  See Vitronics, 90 F.3d at 1584 ("Nor may the inventor's subjective intent as to claim scope, when unexpressed in the patent documents, have any effect.").  In this case, however, the inventor's statement is even less helpful in determining the scope of the claims as he was not addressing the meaning of any patented claims, but was rather providing a general description of a cleaning device, which he constructed.

Moreover, nothing about the use of the words "structure" or "adapted to" warrants application of § 112, ¶ 6.  (Rayovac Br. at 15-16.)  Indeed, it is clear from the Federal Circuit's case law that the use of the word "adapted" does not require application of § 112, ¶ 6.  See, e.g., In re Watts, 354 F.3d 1362, 1363-64 (Fed. Cir. 2004) (claim element describing "[a]n apparatus, comprising… a clock manager adapted to receive a control signal" not a means-plus-function element) (emphasis added); Al-Site Corp. v. VSI Int'l, Inc., 174 F.3d 1308, 1319 (Fed. Cir. 1999) (district court erred in applying § 112, ¶ 6 to claim for "eyeglass contacting member…having an encircling portion adapted to encircle a part of said frame") (emphasis added).

The cases cited by Rayovac do not support its argument.  In Intel Corp. v. VIA Techs., Inc., 319 F.3d 1357 (Fed. Cir. 2003), for example, the Federal Circuit addressed whether the claim element – "a selection device adapted to determine whether data is able to be written directly to said peripheral device" – was indefinite because, the infringer argued, there was no corresponding structure disclosed in the specification.  Id. at 1365-66.  The court did not address

whether the term "selection device" had a well understood meaning in the art, and contrary to Rayovac's arguments, the court did not determine that the use of the words "adapted to" required application of § 112, ¶ 6. <u>Id.</u> The remaining cases cited by Rayovac are similarly distinguishable. <u>See</u> <u>Ishida Co. v. Taylor</u>, 221 F.3d 1310, 1312, 1316 (Fed. Cir. 2000) (relevant claim element drafted in traditional "means for" style and no discussion that words "adapted to" required independent application of § 112, ¶ 6); <u>Application of Lundberg</u>, 244 F.2d 543, 546 (C.C.P.A. 1957) (in an overruled opinion, assuming, without deciding, that "adapted to" formulation invokes § 112, ¶ 6), <u>overruled by</u> <u>In re Donaldson Co</u>, 16 F.3d 1189, 1193-94 (Fed. Cir. 1994).

Furthermore, Rayovac's observation that claim 1 of the '328 patent – which is not at issue in this litigation – includes the element "a cradle structure including a concave surface for receiving a shaving head of a shaving apparatus," (Rayovac Br. at 38), does not support its contention that the term "cradle" has no meaning within the art. To begin, claim 1 is not at issue, and each claim of a patent must be considered individually. <u>See</u> <u>Apple Computer, Inc. v. Articulate Sys., Inc.</u>, 234 F.3d 14, 24 (Fed. Cir. 2000) (district court erred in failing to separately consider and construe all claims at issue in patent). More importantly, however, the fact that the cradle structure of unasserted claim 1 includes a concave surface does not obfuscate the well understood meaning from the term cradle. Rayovac's argument would have the Court adopt the rather absurd notion that any claim element comprising the term "container" requires application of § 112, ¶ 6 because the term "container" is part of another element which includes an additional limitation. For example, claim 1 of the '328 patent requires a "cleaning fluid container," (Braun Br. at Ex. 1, col. 13, l. 28), but claim 7 of the '328 patent requires a "cleaning fluid container . . . permanently open to atmosphere." (<u>Id.</u> at ll. 57-58). According to Rayovac's

logic, § 112, ¶ 6 would govern construction of both claims.  Such a result is unsupportable under the law.  See Greenberg, 91 F.3d at 1583 (acknowledging that "container" has a well understood meaning).  Quite simply, there is no requirement that a claim element include specific information regarding shape in order to avoid the restrictions of § 112, ¶ 6, so long as the claim element has a well understood meaning in the art.  See Lighting World, 382 F.3d at 1359-61 ("In considering whether a claim term recites sufficient structure to avoid application of section 112 ¶ 6, we have not required the claim term to denote a specific structure.").

Finally, Rayovac has pointed to nothing in the specification's discussions of U.S. Patent No. 3,172,416 (the "Simmons patent"), the French Patent No. 2,568,111 (the "French patent"), or in the prosecution history of the '328 patent, (Rayovac Br. at 39-43), that supports application of § 112, ¶ 6.  Therefore, Rayovac has not met its burden, and application of § 112, ¶ 6 is unwarranted.

Because § 112, ¶ 6 does not govern the construction of the cradle structure element of the asserted claims of the '328 patent, Rayovac's argument that the element is limited to the specific embodiments disclosed in the specification, (id. at 38-39), must be rejected.  It is clear that limitations from the specification cannot be imported into the claim itself.  Electro Med. Sys., S.A. v. Cooper Life Scis., Inc., 34 F.3d 1048, 1054 (Fed. Cir. 1994).  Instead, the Court must construe the claim in a manner consistent with the plain meaning of its terms, rather than base its interpretations upon limitations and descriptions contained only in the specification.  See Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1117 (Fed. Cir. 2004) ("[I]t is unjust to the public, as well as an invasion of the law to construe [a claim] in a manner different from the plain import of its terms.").

2.    **Rayovac's Alternative Construction Is Not Supported By The Claim Language, The Specification, Or The Prosecution History Of The '328 Patent.**

Recognizing the weakness of its means-plus-function argument, Rayovac proposes an alternative construction of the cradle structure element as "a trough that supports a seated shaving head and that receives and retains fluid during the cleaning of the shaving head." (Rayovac Br. at 37.)  As discussed in Braun's initial memorandum, Rayovac's alternative construction finds no support in the claim language and must be rejected.  (Braun Br. at 8-9.)  Rayovac points to no part of the claim language that supports its proposed construction. (Rayovac Br. at 44.)  Instead, Rayovac relies on mischaracterizations of the discussions of the prior art Simmons and French patents in the specification, a misunderstanding of the prosecution history's discussion of U.S. Patent No. 5,335,394 (the "Cunningham patent"), other claim elements,[7] and language in unasserted claims that depend from other unasserted claims.[8]  (Id. at 39-45.)

Rayovac's argument that Braun "disavowed claim scope" through its discussion in the specification[9] of the deficiencies of the cleaning devices in the Simmons and French patents, (id.

---

[7]  In particular, Rayovac purports to rely on the claim element – "said cradle being arranged above a fluid level of the cleaning fluid in said cleaning fluid container during the feeding of said cleaning fluid to said cradle structure."  Rayovac does not, however, explain how this additional claim element supports its construction of the cradle structure element.  (Rayovac Br. at 44.)

[8]  Recognizing that nothing in the language of the claims themselves supports Rayovac's alternative proposed construction for the cradle structure element, Rayovac purports to rely on the language of unasserted claims 2 and 10.  Rayovac cites to the language of claims 2 and 10, which are dependent on unasserted claims 1 and 9, in support of its position.  (Rayovac Br. at 44.)  Nothing in these unasserted claims, however, supports Rayovac's proposed construction of the cradle structure element.  Claim 2 relates the dimension of the outlet port of the cradle structure of claim 1, and claim 10 relates to when the drying device of claim 9 is activated.

[9]  While the specification is useful in construing claims, limitations found only in the specification are not to be imported into claims.  Innova/Pure Water, 381 F.3d at 1117 ("The claim is a statutory requirement, prescribed for the very purpose of making the patentee define precisely what his invention is; and it is unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms.").

at 39), is untenable.  Rayovac's argument appears to be that the specification's use of the word "cradle" to describe the "upper area of [the cleaning casing of the Simmons cleaning device where] a seat is provided for receiving therein the cutter portion of an electric razor," (Braun Br. at Ex. 1, col. 1, ll. 10-12, 28-30), in contrast to the use of the word "cleaning chamber" of the French patent, (id. at col. 1, ll. 61-63), indicates an unambiguous intent on the part of the patentee to limit the word "cradle" in the claims to cradles of the type used in the Simmons patent. (Rayovac Br. at 39-42.)  Rayovac then appear to make the mistaken assumption that the type of cradle employed by the Simmons device is one in which the cutter portion of the shaving head takes a "bath" rather than a "shower."  (Id. at 2-3, 42.)  Because Rayovac both misinterprets the specification and the Simmons patent, its argument must fail.

Nothing in the specification supports limitation of the term "cradle structure" in the claims to Simmons-like cradles.  In particular, the specification points out flaws of the French patent's cleaning device that are not related to the use, shape, or structure of the French device's "cleaning chamber."  Rather, the specification's criticism of the French patent relates to the lack of efficacy of the cleaning method.  In particular, the French device uses air to attempt to blow or suction off debris from a shaver head.  (Braun Br. at Ex. 1, col. 1, ll. 63-67.)  As the specification notes, however, this blowing/suction action of the French device is unable to clear "hair dust" and "sebum" from all components of the shaving head even when the shaving head is disassembled.  (Id. at col. 1, l. 63-col. 2, l. 8.)  Therefore, Braun's "criticism" of the French patent's ineffective cleaning does not disavow the structure of the cleaning chamber of the French device.

Rayovac's reliance on Aztrazeneca AB v. Mutual Pharm. Co., 384 F.3d 1333 (Fed. Cir. 2004) is misplaced.[10]  In that case, the Federal Circuit addressed the question whether the claim element "solubilizer" – which has an ordinary meaning in the relevant art that includes surfactants, co-solvents, and complexation agents – had been limited to surfactants by the specification.  Id. at 1336-38.  The court determined that it had been limited because the patentee acted as its own lexicographer.  Id. at 1339-40.  In particular, the specification specifically defined the solubilizers suitable for the disclosed invention to include only surfactants.  Id. at 1339 (noting statement in specification that suitable solubilizers were "defined below" coupled with subsequent statement that suitable solubilizers were surfactants) (emphasis added).  In further support of this conclusion, the court noted that the specification had specifically criticized other types of solubilizers – co-solvents – as causing undesirable results.  Id. at 1340.  In contrast, in the '328 patent, there is no statement defining the term "cradle."  Moreover, the criticism of the French device is unrelated to the shape or structure of its cleaning chamber, relating instead to the overall deficiency of its air blowing/suction means to remove hair dust and sebum.

Nor does the specification's reference to the element receiving the cutter portion of the shaving head of the Simmons patent as a "cradle" indicate that Braun redefined the term cradle away from its ordinary meaning in the art.  (Rayovac Br. at 22.)  "[A] patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history."  Vitronics, 90 F.3d at 1582.  Where a term has an ordinary meaning in the art, there is a "heavy

---

[10]  Similarly, the other case cited by Rayovac is distinguishable.  See Gaus v. Conair Corp., 363 F.3d 1284, 1288-90  (Fed. Cir. 2004) (clear disclaimer where specification explains inadequacy of triggering technology of protective circuit and claim is for improved triggering technology).

presumption" in favor of adopting that meaning.  Bell Atlantic Network Svcs., Inc. v. Covad

Communications Group, Inc., 262 F.3d 1258, 1268 (Fed. Cir. 2001).  The patentee's intent to

deviate from the ordinary meaning must be clear or express.  Id.  Definition by implication, on

the other hand, arises when there is no accepted meaning and the claim term can only be defined

as provided for by the patent itself.  See Irdeto Access, 383 F.3d at 1300-01(defining claim terms

by implication where patentee conceded term "group" had no ordinary meaning in the art).  As

Braun has shown above, the term cradle has an ordinary meaning in the relevant art as a

"framework or other resting place for supporting or restraining objects," and therefore the "heavy

presumption" that "cradle" in the claims adopts this meaning applies to construction of this

element.  Nothing in the specification's discussion of the Simmons patent indicates a clear intent

to deviate from this ordinary meaning.  Certainly, there is nothing in the specification to support

Rayovac's proposed construction.  Nowhere in the specification does Braun discuss a "trough," a

"seated shaving head," or one that "retains fluid."  To interpret the claim in such a fashion

requires sharp deviation from the language of both the claim and the specification.  Rayovac has

offered insufficient support for its tenuous construction.

　　　　Moreover, Rayovac misunderstands the operation of the cleaning device of the Simmons

patent as requiring a "shaver bath," which Rayovac purports to distinguish from a shaver shower.

(Rayovac Br. at 42.)  As discussed in more detail in the Simmons patent, the operation of the

Simmons device (Figure 1 of the Simmons patent is shown below) requires that a dry shaver

head first be inserted into opening (4) of the cleaning device and into "cleaning chamber 23, until

. . . firmly seated on . . . resilient sealing member 5."  (Id. at Ex. 3, col. 6, ll. 33-37.)  The device

is turned on, activating impellers 31, which causes the cleaning fluid in channels 18, 19, 20, 21,

22, and 23 to circulate within the channels "at high velocity."  (Id. at col. 6, ll. 37-42.)



As a result, "hair particles adhering to the cutters and adjacent parts of the razor are flushed from these parts by the fast moving liquid stream, aided by the cutter's own oscillating action." (Id. at col. 6, ll. 42-45.) Thus, the Simmons device cannot be adequately described as a mere bath. Simply, there is no support in the specification for Rayovac's proposed construction.

Nor does Rayovac fair any better when examining the prosecution history of the '328 patent.[11] (Id. at 42-43, 45.) In particular, the prosecution history's discussion of the Cunningham patent does not support Rayovac's construction. The Cunningham cleaning device (Figure 2 of the Cunningham patent is reproduced below) consists of a U-shaped container (18), containing cleaning fluid, into which eyeglasses are inserted. (Id. at Ex. 26, col. 3, ll. 48-52.) The eyeglasses are cleaned by means of an agitation device (40, 41) which circulates the cleaning fluid within the U-shaped container. (Id. at col. 4, ll. 37-42.) As Braun explained in the

---

[11] As discussed infra, Rayovac reliance on the prosecution history of the '556 patent to support its construction of "cradle structure" is equally unavailing.



FIG. 2

prosecution history, the Cunningham patent does not teach a cradle to support an object into which cleaning fluid is fed that is above the fluid level of the cleaning fluid in the cleaning fluid container. (Braun Br. at Ex. 2, B000335.) It merely teaches a cleaning fluid container filled with cleaning fluid into which eyeglasses are dunked and cleaned through the circulation of cleaning fluid caused by an agitation device. Nothing in Braun's current claim construction purports to recapture the Cunningham patent.

Construction of the claim element as a cradle structure able to receive the head of a shaving apparatus is well-supported by the language of the claims, the specification, and the prosecution history. Rayovac's objections to this construction are misguided, and its own proposed construction finds no support in the relevant evidence. Therefore, the Court should adopt Braun's proposed construction of this element.

**B.**    **Feed Device For Feeding Cleaning Fluid From Said Cleaning Fluid Container To Said Cradle Structure**

As with the first element of claim 11, Rayovac argues that this element is governed by

§ 112, ¶ 6. (Rayovac Br. at 46.)

**1.**    **The Claim Element Recites Structure And Is Not Governed By 35 U.S.C. § 112, ¶ 6.**

As discussed in Braun's initial memorandum, (Braun Br. at 11), the absence of any

"means for" language in the claim element creates a heavy presumption against application of §

112, ¶ 6. See Greenberg, 91 F.3d at 1583-84. Rayovac has provided no evidence to meet its

heavy burden to overcome the presumption. This is because the term "feed device" – like the

terms lock, filter, brake or clamp – has a well understood meaning among those with a

background in mechanical engineering as a mechanism for moving fluid (in the instant invention,

cleaning fluid) from one location to another. The existence of this generally understood meaning

indicates that the element of the claim recites sufficient structure and therefore is not controlled

by § 112, ¶ 6. See id. at 1583 (finding that although "detent mechanism" described any structure

that performed a "detent function," § 112, ¶ 6 did not apply because detent had generally

understood meaning in applicable art); Lighting World, 382 F.3d at 1359-60 ("[W]e have not

required the claim term to denote a specific structure … it is sufficient if … used … by persons

of skill in the pertinent art to designate structure, even if the term covers a broad class of

structures and even if the term identifies the structures by their function."); Linear Tech, 379

F.3d at 1320 (understood meaning in art indicates claim term denotes sufficient structure).

Therefore, construction of this element is not governed by § 112, ¶ 6 and limited to the particular

structure disclosed in the specification.

2.    **Rayovac's Characterization Of The Specification And The Prosecution History Is Incorrect And Irrelevant To Construction Of The Claim.**

Rayovac's discussion of the specification and prosecution history, as they relate to this element of the claims, is curiously out of place in a claim construction brief. Rather than shed any light on the meaning of the terms, Rayovac makes a non-infringement argument. (Rayovac Br. at 47.) Not only is this improper as a matter of form, their substantive argument is incorrect.[12] See SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1118 (Fed. Cir. 1985) (claim construction not done "in light on the accused device"). To the extent that Rayovac's non-infringement argument can be translated into a claim construction argument, it appears that Rayovac's proposed claim construction for the "feed device" element requires fluid to be fed directly to the cradle structure and not to the shaving head as it sits in the cradle structure. (Rayovac Br. at 47.) Nothing in the claim language, specification, or prosecution history of the '328 patent supports Rayovac's proposed additional claim limitations.

To begin, the claim reads a "feed device for feeding cleaning fluid from the cleaning fluid container to the cradle structure." It does not contain the further limitations that the cleaning fluid be fed "directly" to the cradle structure and "not to the shaving head," as Rayovac proposes. See Electro Med., 34 F.3d at 1054 (improper to import limit from specification into claim term).

Moreover, far from dedicating to the public cleaning devices that feed cleaning fluid directly to the shaving head as argued by Rayovac, (Rayovac Br. at 47), the specification indicates that the feed device element includes a mechanism that feeds cleaning fluid to the cradle or to the shaving head in the cradle. In either case, fluid is fed to the cradle.

---

[12]  Braun does not, as Rayovac contends, hide from the "real dispute between the parties." (Rayovac Br. at 47.)  Rather, Braun focuses on the appropriate task at hand in its claim construction brief, construing the relevant patent claims.

Thus, for example, the specification states "it is advantageous that the cradle or the shaving head are adapted to be supplied with cleaning fluid from the cleaning fluid container by means of the feed pump . . . ."  (Braun Br. at Ex. 1, col. 2, ll. 32-35 (emphasis added).) Describing the operation of the cleaning device, the specification states that "the feed pump for supplying cleaning fluid to the shaving head is turned on for a first period of time of between 3 and 20 seconds, during which time the cleaning fluid is continuously conveyed to the cradle . . . ."  (Id. at col. 5, ll. 8-13 (emphasis added).)  Discussing the preferred embodiment, the specification states:  "Operation of the switching means 9 causes the feed pump 23 to be driven which then delivers cleaning fluid 40 to the cradle 7 and to the shaving head 3 for a predetermined period of time . . . ."  (Id. at col. 8, ll. 23-27 (emphasis added).)  Thus, the specification does not, as Rayovac suggests, differentiate between devices that feed fluid directly to the cradle and devices that feed fluid to the shaving head within the cradle, dedicating the latter type devices to the public.  Instead, the specification acknowledges the obvious reality that when fluid is fed to the shaving head in the cradle, it is effectively fed to the cradle.[13]  Consistent with this acknowledgment, the "feed device" element is drafted broadly to include a mechanism for feeding cleaning fluid to the cradle structure or to the shaving head within that structure.

Nor does the prosecution history of the '328 patent support Rayovac's insistence that the "feed device" element be construed as requiring feeding cleaning fluid directly to the cradle and not to the shaving head within the cradle.  In an attempt to buttress its novel construction claim with something, Rayovac misrepresents the prosecution history related to the Simmons patent and unasserted claim 1.

---

[13]  It does not disclose any subject matter not claimed in the patent.  See PSC Computer Prods., Inc. v. Foxconn Int'l, Inc., 355 F.3d 1353, 1360 (Fed. Cir. 2004) ("disclosure-dedication" does not apply to generic reference in specification, only where one with ordinary skill in the art would recognize subject matter as disclosed, but not claimed).

In particular, in his first office action, the Examiner rejected claim 1 as unpatentable over the Simmons patent. (Braun Br. at Ex. 2, B000322.) Subsequently, Braun made primarily cosmetic amendments to claim 1, reflecting good draftsmanship. In particular, Braun amended the claim element "a feed device (23) adapted to be driven by motor for feeding the cleaning fluid, characterized in that . . . the cradle structure (7) is adapted to be supplied with cleaning fluid from the cleaning fluid container (6) for the duration of the cleaning operation of the shaving head" to read more elegantly "a feed device for feeding cleaning fluid to said cradle structure." This cosmetic amendment, however, was not made to overcome the Examiner's rejection based on the Simmons patent. Instead, as the prosecution history makes clear, Braun explained to the Examiner in response to his Simmons rejection that the Simmons patent "does not teach a structure adapted to receive a shaving head that is arranged above a fluid level of cleaning fluid in a cleaning fluid container, as claimed." (Id. at B000335.) Because the amendment was not made to overcome the Examiner's rejection based on the Simmons patent, Rayovac is incorrect in claiming that Braun is estopped by this prosecution history from claiming that the feed device element includes not only devices that feed fluid to the cradle but also those that feed fluid to the shaving head within the cradle. See Festo Corp. v. Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 736-37 (2002) ("truly cosmetic" amendment in course of patent prosecution does not narrow scope of patent or give rise to estoppel).

The Court should adopt Braun's construction of this element of claim 11 of the '328 patent as a mechanism that feeds cleaning fluid from the cleaning fluid container to the cradle structure. This construction is consistent with the language of the claims, the specification, and the prosecution history. Though hidden beneath irrelevant and erroneous argument, Rayovac does not dispute this construction.

### C.    An Impeller

Rayovac initially proposed a definition of impeller of claim 12 as limited to "a rotating device for forcing a gas in a given direction under pressure, a definition taken from WEBSTER'S NEW COLLEGE DICTIONARY. (Rayovac Br. at 49.) Because the word impeller has a well understood meaning in the relevant art, in the instant case, mechanical engineering, a definition from a general purpose dictionary is of little value. See Irdeto Access, 383 F.3d at 1300. Therefore, the Court should adopt Braun's construction of impeller as "rotating member of a turbine, blower, fan, axial, or centrifugal pump, or mixing apparatus," which is the definition provided by the MCGRAW HILL DICTIONARY OF SCIENTIFIC AND TECHNICAL TERMS (6th ed. 2003) – the technical dictionary used by the artisan of ordinary skill in the art.

### D.    Cradle Structure Adapted To Receive A Shaving Head Of A Shaving Apparatus, Said Cradle Structure Being Permanently Open To Atmosphere

Claim 14 of the '328 patent includes an element of a cradle structure adapted to receive a shaving head of a shaving apparatus, said cradle structure being permanently open to atmosphere. Rayovac's proposed construction is that the cradle structure is permanently unsealed, (Rayovac Br. at 49), while Braun remains true to the language of the claim itself, offering the construction that the cradle structure is able to receive the shaving head of a shaving apparatus and that is open to the atmosphere. (Braun Br. at 15.) Rayovac believes there is no real dispute between the parties' proposed constructions. (Rayovac Br. at 49.) Braun disagrees. While "open" encompasses things which are "unsealed," it also includes things that are not shut, confined, lidded, or covered. See W.E. Hall Co. v. Atlanta Corrugating, LLC, 370 F.3d 1343, 1350 (Fed. Cir. 2004). Moreover, "unsealed" implies that prior to the supply of cleaning fluid entering the cradle, the cradle is somehow sealed. Nonetheless, Rayovac does not object to Braun's construction, comprising the literal claim language. (Rayovac Br. at 49.) Therefore, the

Court should adopt Braun's proposed construction stating that the cradle structure is permanently open to the atmosphere.

> **E.**     **Bracket For Insertion Of The Shaving Apparatus**

Claim 18 of the '328 patent includes a bracket for insertion of the shaving apparatus. Rayovac's proposed construction of the bracket as "a simple, rigid L-shaped structure, one arm of which is fixed to a vertical surface, the other projecting horizontally to support a weight, as a shelf," (id.), draws no support from the claim, the specification, or the prosecution history. Therefore, the Court should reject Rayovac's unduly narrow construction, and adopt Braun's broader and more appropriate construction of a projecting support.

Rayovac takes its proposed construction from a general usage dictionary, which is inappropriate when the term has a well understood meaning in the relevant art. Irdeto Access, 383 F.3d at 1300. Though Braun draws its proposed construction from a more appropriate source, a technical dictionary, Rayovac argues that the definition relied upon is used in the context of civil engineering, rather than mechanical engineering, and is therefore inapplicable. (Rayovac Br. at 50.) Rayovac overlooks the overlap in knowledge and training between these two disciplines. Civil and mechanical engineers often take the same introductory structural engineering classes, and therefore would have the same understanding of bracket, as any variety of "projecting support[s]." McGraw Hill Dictionary of Scientific and Technical Terms (6th ed. 2003).

Rayovac's reliance on the specification is also misplaced. The portions of the specification cited by Rayovac are entirely consistent with Braun's claim construction. The specification describes the bracket as a "supporting structure," and describes a bracket with a "vertically extending leg," both of which are consistent with a "projecting support." (Braun Br. at Ex. 1, col. 3, ll. 61-62, col. 4, l. 62.) The description of the bracket in the preferred

embodiment is also consistent with Braun's proposed construction. Limits from the specification cannot be imported into the claim construction, where the claim term has a well understood meaning. See Electro Med., 34 F.3d at 1054. Rayovac's proposed construction does just that and therefore must be rejected by the Court.

## IV.    CONSTRUCTION OF THE '556 PATENT

As with its proposed constructions of the '328 patent, Rayovac's constructions of the '556 patent seek to escape the simple and straightforward meaning of the claims set forth by the patents themselves. Rayovac again inappropriately argues for the application of means-plus-function analysis, imports limits from the specification into the claims, and misreads the prosecution history. In contrast, Braun's straightforward claim constructions remain true to the evidence and should be adopted by the Court.

### A.    A Cradle Structure Adapted To Receive Therein The Shaving Head

As with the '328 patent, Rayovac has offered two distinct constructions of the cradle structure element in the '556 Patent. On one hand, Rayovac argues that it is a means-plus-function claim, governed by § 112, ¶ 6. On the other hand, Rayovac presents an alternative construction of a "trough that supports a seated shaving head and that receives and retains fluid during the cleaning of the shaving head." (Rayovac Br. at 12.) Rayovac's constructions lack evidentiary support and must be rejected by the Court.

#### 1.    The Claim Element Recites Structure And Is Not Governed By 35 U.S.C. § 112, ¶ 6.

As discussed in Braun's initial memorandum, (Braun Br. at 22), and in connection with the same element of the '328 patent, in supra Section III.A.1, the cradle element in the claims of the '556 patent is not governed by § 112, ¶ 6. Rayovac has presented no evidence to meet its heavy burden to overcome the strong presumption against application of § 112, ¶ 6 created by

the absence of the words "means for" in the claim element itself.  See Greenberg, 91 F.3d at

1584.  Because § 112, ¶ 6 does not apply, the claim element is not limited to the structures

disclosed in the specification and equivalents thereof.  Therefore, Rayovac's construction should

be rejected.[14]

> ### 2.  Rayovac's Alternative Construction Is Not Supported By The Claim Language, The Specification, Or The Prosecution History Of The '556 Patent.

Rayovac's alternative construction for the cradle structure element is equally flawed.  As

discussed in supra Section III.A.2, in connection with the same alternative construction put forth

by Rayovac in connection with the '328 patent, there is no support in the claim language for

Rayovac's proposed alternative construction of the cradle structure as "a trough that supports a

seated shaving head and that receives and retains fluid during the cleaning of the shaving head."

(Rayovac Br. at 22.)  In particular, the claim is silent as to the additional features that Rayovac

would attribute to the cradle structure element.  The claim element does not require a "trough"

that "supports" a "seated shaving head" and that "receives or retains fluid during the cleaning of

the shaving head."  Because the claim language governs its construction, Rayovac's construction

should be rejected.  See Fuji Photo Film Co., Ltd. v. Int'l Trade Comm'n, 386 F.3d 1095, 1099

(Fed. Cir. 2004) (claim language provides "clear direction" for construction of claim).

Moreover, Rayovac erroneously attempts to import limitations from the specification into

the claim element.  See Electro Med., 34 F.3d at 1054 ("[C]laims are not to be interpreted by

adding limitations appearing only in the specification.").  As discussed with regard to the cradle

element of the '328 patent, this is not a case where Braun has acted as its own lexicographer and

---

[14]  Because Rayovac's discussion of the prosecution history of the '556 patent does not in any way relate to Rayovac's assertion that the cradle structure element is governed by § 112, ¶ 6, Braun will address Rayovac's discussion of the prosecution history in connection with Rayovac's proposed alternative construction of cradle structure.

used the term cradle in a manner other than its ordinary meaning in the art as a "framework or other resting place for supporting or restraining objects." See Bell Atlantic, 262 F.3d at 1268 ("heavy presumption" in favor of adopting ordinary meaning in art to construe claim terms).

Nor does the prosecution history of the '556 patent support Rayovac's proposed alternative construction. Throughout the prosecution of the '556 patent, Braun consistently objected to the Examiner's use of nonanalogous art – that is, references unrelated to the cleaning of dry shavers. In addition, Braun also objected to the Examiner's failure to acknowledge that the claim element is not a "cradle structure" alone, but rather a "cradle structure adapted to receive therein the shaving head." (Braun Br. at Ex. 4, B000096, B000102-03.) Braun's present position is no different. Simply, the cradle structure element should be construed as a cradle structure able to receive a shaving head of a dry shaving apparatus. Thus, Braun's proposed construction does not encompass all "cradle structures." Rather it is a subset of cradle structures – that is, those adapted to receive a shaving head. The cradle structure is therefore not merely any framework for receiving anything. Instead, it is a framework or receiving part suitable for a specific use. That use is to receive a shaving head.

Thus, for example, claim 1 of the '556 patent was initially rejected as unpatentable over U.S. Patent No. 3,890,988 (the "Lee patent") because – according to the Examiner – the Lee patent disclosed "a cradle adapted to receive the article therein." (Id. at B000084.) The Lee patent (Figure 5 of which is reproduced below) discloses a receptacle 10, which is a metal sink



FIG. 5

into which cleaning fluid is pumped by pump assembly 14 for cleaning automobile parts.

(Rayovac Br. at Ex. 11, col. 3, ll. 37-42.)  In response to the Examiner's rejection, Braun first

and foremost distinguished the Lee patent as nonanalogous art.  (Braun Br. at Ex. 4, B000095.)

Rayovac conveniently ignores this portion of the prosecution history and instead suggests that

Braun distinguished the Lee patent on the ground that the Lee patent's metal sink was not a

"cradle structure" per se.  The suggestion is unfounded.  Indeed, Braun distinguished the Lee

automotive part cleaner on the basis that it did not contain a cradle adapted to receive a shaving

head.  (Id. at B000096.)  As Braun describes, the Lee device is "not adapted to 'cradle' anything

much less a shaving head.  The specification makes it quite clear that 'a cradle adapted to receive

therein a shaving head' is not an open basin into which the shaving apparatus can be tossed

without any means designed to particularly receive and/or cradle the shaving head."  (Id.)

These remarks do not amount to a limitation of the scope of the claim as they are

consistent with both the language of the claim itself and Braun's proposed construction of it.

First, claim 1 already included a limitation, in the form of a preamble, claiming the invention is a device for cleaning a shaving head of a dry shaver.[15]  Second, the claim itself and Braun's proposed construction of it make clear that the cradle structure is suitable for the specific use of receiving the shaving head of a shaving apparatus.  This is different from the metal sink or open basin of the Lee patent.[16]

Similarly, Braun's treatment of U.S. Patent No. 4,991,609 (the "Browning patent") and U.S. Patent No. 4,815,486 (the "Schinn patent") is consistent with Braun's present construction of the cradle structure element.  The Browning patent (Figure 1 of which is reproduced below)



concerns a cleaner with a "recessed portion" 44 that receives one end of an object, such as a toothbrush.  The toothbrush is cleaned by filling container 14 with tap water or mouthwash or a

---

[15] Braun and Rayovac agree that the preamble to claim 1 of the '556 patent is a limitation.  (Id. at Ex. 8.)

[16] Rayovac also argues that the use of the word "means" in the remarks demonstrates the intent to invoke § 112, ¶ 6.  However, an inventor does not trigger application of § 112, ¶ 6 merely by using the word "means" at any point during the prosecution of a patent.  Indeed, in the case relied upon by Rayovac, York Prods. Inc., v. Central Tractor Farm & Family Ctr., 99 F.3d 1568 (Fed. Cir. 1996), the term "means" was used in the claim itself.  Id. at 1574 (patent claims "'means formed on the…sidewall portions'").

combination thereof.  Then ultrasonic waves are activated followed by a heating cycle to clean

the toothbrush.  (Rayovac Br. at Ex. 14, col. 3, ll. 21-55.)  The Schinn patent (Figure 2 of which

is reproduced below) is a paint equipment cleaner wherein paint equipment is hung on hooks 18

or a wire basket 20.  Drum 14 is filled with solvent and then the entire drum is spun.  The solvent

is then pumped out of the drum 14 into a filtering cleaning tank.  (Id. at Ex. 15, col. 3, ll. 63-67,

col. 4, ll. 30-55.)  As with the Lee patent, Braun objected to the Schinn patent as nonanalogous

art.  (Braun Br. at Ex. 4, B000103-04.)  In addition Braun distinguished the Browning toothbrush



FIG 2

cleaner and the Schinn paint equipment cleaner on the ground that neither patent contained a

cradle adapted to receive a shaving head.  (Id. at B000103).  The Browning recessed portion 44

"is adapted to receive a toothbrush," and the Schinn devices hooks and wire baskets are adapted to receive paint equipment. (Id.) Therefore, nothing in the prosecution history prohibits Braun's consistent position that the cradle structure element must be a cradle structure able to receive a shaver head of a dry shaving apparatus.

Importantly, Rayovac's arguments concerning the prosecution history of the '556 patent do nothing to bolster its own proposed construction.

**B.    A Cleaning Fluid Container Separate From The Cradle Structure For Holding A Cleaning Fluid**

Consistent with its construction of the other claims, Braun proposed a simple construction of the "cleaning fluid container" element of claim 1, as a container holding cleaning fluid that is separate from the cradle structure. (Braun Br. at 22.) As Rayovac apparently understands, in the context of the element at issue, "separate" means distinct. (Rayovac Br. at 25.) Thus, Rayovac comprehends that Braun's straight forward claim construction requires that the cleaning fluid container be distinct from the cradle structure. (Id.) Indeed, as discussed in Braun's initial memorandum, (Braun Br. at 22-23), and acknowledged by Rayovac, (Rayovac Br. at 27), the specification and the prosecution history support Braun's construction.

Nonetheless, Rayovac strays from the plain meaning of the claim and puts forth a construction of the cleaning fluid container as "a removable and replaceable cartridge which holds cleaning fluid." (Id. at 25.) Yet, Rayovac points to nothing in the claim itself that requires a removable and replaceable cartridge. Indeed, as Braun pointed out in its initial memorandum, while one of the embodiments of the '556 patent consists of a cartridge-like cleaning fluid container, it is improper to limit the claim to this embodiment. (Braun Br. at 24.)

Rather than address Braun's arguments, Rayovac – surprisingly – asserts that the '556 patent "excludes the preferred embodiment of the alleged invention." (Rayovac Br. at 26.) As

Rayovac must acknowledge, a construction (such as Rayovac's) that excludes the preferred embodiment is "rarely, if ever, correct." Vitronics, 90 F.3d at 1583. To sustain such a construction requires "highly persuasive evidentiary support." Id. In this case, such support is wholly lacking.

In particular, Rayovac's argument that the claims of the '556 patent do not encompass the preferred embodiment is founded on a faulty analysis of Figure 6 of the patent. (Rayovac Br. at 6-7.) Rayovac argues that "[w]hile the removable and replaceable cartridge shown in Figure 6 is 'separate' and distinct from the cradle structure, the claim language does not fit the preferred embodiment because the cartridge is removable from the feed pump, not the cradle structure." (Id. at 6.) What Rayovac fails to comprehend is that Figure 6 (which is reproduced below) is, as

**Fig. 6**



the patent indicates, "a schematic representation of the fluid circuit of the cleaning device." (Braun Br. at Ex. 3, col. 3, ll. 64-67) (emphasis added).) As a schematic, therefore, the drawing does not purport to be a precise depiction of the cleaning device. Once one recognizes that

Figure 6 is a schematic, Rayovac's proffered construction – that reads out a preferred embodiment, must be rejected.  See Vitronics, 90 F.3d at 1583.

### C.  Fluid Feed Mechanism Which Feeds The Cleaning Fluid After It Passes Through The Filter To The Cradle Structure During Cleaning

#### 1.  The Claim Element Recites Structure And Is Not Governed By 35 U.S.C. § 112, ¶ 6.

Braun's proposed construction of this element of claim 1 is a mechanism or device that feeds cleaning fluid, after it passes through a filter, to a cradle structure during cleaning.  (Braun Br. at 24.)  Rayovac argues that this element is governed by § 112, ¶ 6 and construes the claim in an identical fashion as the "feed device" claim element of the claims of the '328 patent.  (Rayovac Br. at 27.)  Braun therefore incorporates herein by reference its discussion of that element of the claims of the '328 patent in supra Section III.B.  As before, Rayovac has not met its heavy burden to overcome the strong presumption that construction of an element, which does not invoke the traditional "means for" formulation, is not controlled by § 112, ¶ 6.  See Greenberg, 91 F.3d at 1583-84.  As such, Rayovac's construction must be rejected.

Because the "feed mechanism" element is not governed by § 112, ¶ 6, Rayovac's argument that the element is limited to the feed pump disclosed in the specification and equivalents thereof ought to be rejected.

#### 2.  Rayovac's Characterization Of The Specification And The Prosecution History Is Incorrect And Irrelevant To Construction Of The Claim.

Rather than interpret the claim in light of the specification and prosecution history, Rayovac again uses a discussion of these features to inappropriately advance its non-infringement argument.  See SRI Int'l, 775 F.2d at 1118 (claims should never be construed by reference to the accused product).  Because Rayovac's argument with regard to this element of the claims of the '556 patent largely mirror its arguments with the regard to the "feed device"

element of the claims of the '328 patent, Braun incorporates by reference its discussion in <u>supra</u> Section III.B.2. In particular, as it did with the "feed device" element of the '328 patent, Rayovac appears to argue that the "fluid feed mechanism" element of the '556 patent requires that fluid be fed <u>directly</u> to the cradle and <u>not to the shaving head within the cradle</u>. (Rayovac Br. at 29.)

    To begin, the claim reads a "fluid feed mechanism which feeds cleaning fluid after it passes through the filter to the cradle structure during cleaning." It does not contain the further limitation that the cleaning fluid be fed "directly" to the cradle structure and "not to the shaving head," as Rayovac proposes. <u>See</u> <u>Electro Med.</u>, 34 F.3d at 1054. Indeed, it is clear from the claim language that the cleaning fluid is feed first to the filter.

    Moreover, the specification indicates that the fluid feed mechanism element includes a mechanism that feeds cleaning fluid to the cradle or to the shaving head in the cradle. In either case, fluid is fed to the cradle. Thus, for example, the specification describes the advantage of the fact that the "<u>shaving apparatus</u> is receivable in a cradle structure that is open towards atmosphere and <u>is supplied with cleaning fluid</u> from the outwardly closed cleaning fluid container by means of the feed pump." (Braun Br. at Ex. 3, col. 3, ll. 21-25 (emphasis added).) The specification also states that "[i]t is another advantage that the <u>shaving apparatus is first supplied with cleaning fluid</u> from the cleaning fluid container integrated into the wall mount <u>by means of the feed pump</u> . . ." (<u>Id.</u> at col. 3, ll. 35-38 (emphasis added).) Discussing one embodiment, the specification states: "Operation of the switching means 9 causes the <u>feed pump</u> 23 to be driven which then <u>delivers cleaning fluid to the cradle 7 and to the shaving head 3</u> for a predetermined period of time . . . ." (<u>Id.</u> at col. 6, ll. 31-33 (emphasis added).) Thus, the specification does not differentiate between mechanisms that feed fluid directly to the cradle and

those that feed fluid to the shaving head within the cradle, as Rayovac would like. Instead, the specification acknowledges that when fluid is fed to the shaving head in the cradle, it is effectively fed to the cradle. Consistent with this acknowledgment, the "fluid feed mechanism" element is drafted broadly to include a mechanism for feeding cleaning fluid to the cradle structure or to the shaving head within that structure.

Nor does the prosecution history of the '556 patent support Rayovac's insistence that the "fluid feed mechanism" element be construed as requiring feeding cleaning fluid directly to the cradle and not to the shaving head within the cradle. In particular, in the first office action, the Examiner rejected claim 1 as unpatentable over the Browning and Schinn patents. (Id. at Ex. 4, B000099.) Subsequently, Braun amended claim 1 to include the limitation that the cleaning fluid container and the filter are separable from the cradle structure as a unit. (Id. at B000101-02.) As a result, the claim was distinguishable from the Browning and Schinn patents on the ground, inter alia, that those patents did not teach a container and filter that are separable from the cradle as a unit. (Id. at B000102.)

Braun also made some cosmetic amendments to the claim, reflecting good draftsmanship,[17] including amending the element "a fluid feed mechanism which feeds the cleaning fluid after it passes through the filter to the shaving head during cleaning" to read "a fluid feed mechanism which feeds the cleaning fluid after it passes through the filter to the cradle structure during cleaning." (Id. at B000101.) This cosmetic amendment, however, was not made to overcome the Examiner's rejection based on the Browning and Schinn patents. As such, Rayovac is incorrect in claiming that Braun is estopped by this prosecution history from claiming

---

[17] Indeed, the alteration of the claim, reflects good draftsmanship, rather than a relinquishment of scope. The change reflected a desire by Braun to claim an invention which was not tied to the shaver, thereby actually expanding the scope of the claim, rather than diminishing it.

that the fluid feed mechanism element includes not only devices that feed fluid to the cradle but also those that feed fluid to the shaving head within the cradle. See Festo, 535 U.S. at 736-37 (cosmetic amendments do not give rise to prosecution history estoppel); See also Omega Eng' g, Inc. v. Raytek Corp., 334 F.3d 1314, 1330-31 (Fed. Cir. 2003) (voluntary amendment of claim language without explanation for change not "clear and unmistakable disclaimer" giving rise to prosecution history estoppel); N. Telecom Ltd. v. Samsung Elecs. Co., 215 F.3d 1281, 1294-95 (Fed. Cir. 2000) (declining to narrow claim where not demonstrated that patentees "with reasonable clarity and deliberateness" disclaimed territory); Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1458 (Fed. Cir. 1998) (no limit to scope of claim language where prosecution history did not "clearly call for a narrower definition"). As such, Rayovac's arguments should be rejected.

### D.  Said Container And Filter Being Separable From The Cradle Structure As A Unit

Braun proposes that this element of the claim be construed to mean that the cleaning fluid container, together with the filter, are removable from the cradle structure as a unit. (Braun Br. at 26.) Rayovac argues that the claim element means that the container and filter are an integrally formed module which can be removed from the cradle structure. (Rayovac Br. at 30.) As set forth in Braun's initial memorandum, (Braun Br. at 26-27), Braun's construction draws support from the plain language of the claim, the specification, and the prosecution history. In contrast, Rayovac reaches beyond the plain import of the intrinsic evidence in an improper attempt to narrow the scope of Braun's claims.

Nothing in the cases or the dictionary definitions of the words "unit" and "integral" presented by Rayovac, (Rayovac Br. at 31), supports Rayovac's argument that the word "unit" is

synonymous with "integrally formed module."[18]  Indeed, the definitions illustrate the distinction.
A "unit" is a "group" or "assembly" whose individual components can either be integrally
formed or separable and removable individually.  In contrast, an "integrally formed module" is a
subset of the broader term "unit" wherein the assembly or group consists of individual
components that are not separable.[19]

  The specification also fails to aid Rayovac's construction.  Nothing in the specification's
statement that "it is <u>an</u> object of the present invention to improve upon the cleaning device such
as to allow ready replacement of the cleaning fluid container," (Braun Br. at Ex. 3, col. 1, ll. 60-
62 (emphasis added)), requires the limited construction advanced by Rayovac.  Moreover,
Rayovac's importation of the limitations from the preferred embodiment – which has a cartridge-
like cleaning fluid container – into the claim itself is an improper attempt to narrow the scope of
the claim.  <u>See</u> <u>SuperGuide Corp. v. DirectTV Enters., Inc.</u>, 358 F.3d 870, 875 (Fed. Cir. 2004)
(specification cannot be used to rewrite claim, especially where specification is narrower than
claim itself).  As discussed <u>supra</u>, the literal language of the claim, does not, as Rayovac argues,
exclude the preferred embodiment of the claimed invention under Braun's proposed claim
construction.  (Rayovac Br. at 31.)  Only under Rayovac's construction, which improperly
imports limitations into the claim itself, is this the case.

---

[18] Once again, Rayovac improperly references its accused product in the course of interpreting
the patented claims, accusing Braun of avoiding defining unit because it knows that Rayovac's
products do not have a unitary container/filter.  (Rayovac Br. at 30.)  This position is illogical.  If
"unit" and "integrally formed module" are synonymous as Rayovac suggests, then the Rayovac
products would similarly not have the requisite "unit."  Rayovac's insistence on limiting unit to
an integrally formed module, in and of itself, reflects a genuine distinction in the scope of the
constructions.

[19] Rayovac also ignores the plain import of the language by refusing without support to
acknowledge as meaningful, the difference in the words chosen to express claim 1 versus claim
8.  "Where claims use different terms, those differences are presumed to reflect a difference in
the scope of the claims."  <u>Forest Labs., Inc. v. Abbott Labs.</u>, 239 F.3d 1305, 1310 (Fed. Cir.
2001).

Similarly, the prosecution history fails to support Rayovac's proposed limitation to the scope of the claim. Claim 1 of the '556 patent originally read:

> 1.    A cleaning device (5) for cleaning <u>the</u> shaving head (3) of a dry shaving apparatus (1),with a cradle structure (7) adapted to receive therein the shaving head (3), a cleaning fluid container (61) holding a cleaning fluid, as well as a device (23) adapted to be driven by a motor (28) for feeding the cleaning fluid, characterized in that the cleaning fluid container (61) is separable from the cleaning device (5) and includes a filter means (24) integrally formed therewith.

(Braun Br. at Ex. 4, B000072 (emphasis added).)  This original claim was rejected by the Examiner on the grounds that it was indefinite because the phrase "<u>the</u> shaver head" lacked antecedent basis.[20]  (Braun Br. at Ex. 4, B000083-84 (emphasis added).)  Subsequently, Braun amended claim 1 to include proper antecedent basis for "shaver head" and made other amendments to the claim, reflecting good draftsmanship.  In particular, the amended claim 1 read:

> 1.    A cleaning device for cleaning <u>a</u> shaving head of a dry shaving apparatus, said cleaning device comprising:  a cradle structure adapted to receive therein the shaving head, a cleaning fluid container for holding a cleaning fluid, a filter, and a fluid feed mechanism which feeds the cleaning fluid after it passes through the filter to the shaving head during cleaning, said container and filter being separable from the cleaning device as a unit.

(<u>Id.</u> at B000088 (emphasis added).)

Subsequent amendment to the claim in order to distinguish Braun's invention from the Browning patent, did not, as Rayovac argues, amount to a public disclaimer of the scope of the patent which Braun now asserts.  Braun amended the language from "said container and filter being separable from the cleaning device as a unit," to read, as the final claim does, "said container and filter being separable from the cradle structure as a unit."  (<u>Id.</u> at B000101.)  As

---

[20]  There is no support in the prosecution history for Rayovac's statement that the Examiner rejected claim 1 because he recognized that the claim was "indefinite as to whether the filter means was 'integrally formed' with the cleaning fluid container or the cleaning device." (Rayovac Br. at 33.)

Braun explained to the Examiner, the Browning device's recessed portion 44 was part of the cleaning fluid container 14 and, therefore, Browning did not teach a container and filter separable from the cradle structure as a unit.  (Id. at B000102.)  Nothing in this history supports Rayovac's proposal to limit the claim element to an integrally formed module.  Because Rayovac's construction lacks support from the intrinsic evidence it should not be adopted by the Court.  Braun's construction of this term to mean that the cleaning fluid container together with the filter are removable from the cradle structure as a unit is the proper one.

### E.     Construction Of Claim 2

Claim 2 of the '556 patent is a dependent claim directed to a cleaning device as claimed in claim 1, wherein the "cleaning fluid container is comprised of two chambers, one chamber serving to hold the cleaning fluid, the other chamber being configured as the filter."  (Id. at Ex. 3, col. 11, ll. 27-30.)  Braun proposes a construction closely linked with the actual language used in the claim — that the cleaning fluid container consists of two chambers.  One chamber holds cleaning fluid.  The other chamber is a filter.  (Id. at 28)  Rayovac's proposed construction — that the cleaning fluid container has two enclosed compartments; one holds the cleaning fluid; the other compartment is configured as the filter (Rayovac Br. at 34) — strays from the plain language and is unsupported by the specification.

The phrase "enclosed compartments," the key portion of Rayovac's claim construction, does not appear in either the claim or the specification.  See Vitronics, 90 F.3d at 1582 (construct claims based on language of claim and specification).  Indeed, the specific sections of the specification that Rayovac cites adhere to the plain language of the claim, describe a chambers, and are entirely consistent with Braun's proposed claim construction.  As there is no basis in the intrinsic record for construing the term chambers to mean enclosed compartments, the Court should reject Rayovac's proposed claim construction and adopt Braun's.

F.    **Construction Of Claim 18**

Claim 18 of the '556 patent is a dependent claim directed to a cleaning device as claimed in claim 1 of the patent, wherein "the cradle structure is open towards atmosphere and is supplied with cleaning fluid from the cleaning fluid container by means of the fluid feed mechanism." (Braun Br. at Ex. 3, col. 12, ll. 42-45.)  Braun proposes construing this limitation to mean that the cradle structure is open towards atmosphere and is supplied with cleaning fluid from the cleaning fluid container by the fluid feed mechanism.  (Id. at 29.)  Rayovac's proposed construction is that the cradle structure is unsealed when it is supplied with cleaning fluid from the cleaning fluid container by means of the fluid feed mechanism.  (Rayovac Br. at 36.)

The difference between these proposed constructions echoes the different constructions offered regarding claim 14 of the '328 patent.  Braun herein incorporates by references supra Section III.D and again submits that there is a distinction between Braun's proposed construction of "open," and Rayovac's proposed construction of "unsealed."  However, as Rayovac has no objection to the literal language of the claim, it has no objection to Braun's proposed construction.  (Id. at 36.)  Therefore, the Court should construe claim 18 to mean that the cradle structure is open towards atmosphere and is supplied with cleaning fluid from the cleaning fluid container by the fluid feed mechanism.

V.    **CONCLUSION**

Based on the foregoing reasons, Braun respectfully requests that the Court adopt its proposed claim constructions for the claims at issue in this case.

BRAUN GmbH,


By its attorneys,


_____s/Lesley F. Wolf_____
William L. Patton (BBO #391640)
Dalila Argaez Wendlandt (BBO #639280)
Lesley F. Wolf (BBO #651199)
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
(617) 951-7000

Attorneys for Plaintiff

Dated: January 5, 2005