**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

_____ )
                                         )
**BRAUN GmbH,**                          )
                                         )
                      **Plaintiff,**     )
                                         )
        **v.**                           )        **CIVIL ACTION NO. 03-12428-WGY**
                                         )
**RAYOVAC CORPORATION,**                 )
                                         )
                      **Defendant.**     )
_____ )


**<u>RAYOVAC CORPORATION'S SURREPLY BRIEF ON CLAIM CONSTRUCTION</u>**

## TABLE OF CONTENTS

BACKGROUND ...............................................................................................................1

ARGUMENT ...................................................................................................................1

    I.    The Proper Construction of Claim 1 of the '556 Patent ...........................................1

        A.    "a cradle structure adapted to receive therein the shaving head" ...............1

            1.    There is no applicable plain and ordinary meaning in the relevant art. ...................................................................................2

            2.    Braun surrendered claim scope that would be encompassed by its proposed construction. ...........................................5

        B.    "a cleaning fluid container separate from the cradle structure for holding a cleaning fluid"................................................................6

        C.    "a fluid feed mechanism which feeds the cleaning fluid after it passes through the filter to the cradle structure during cleaning"...............7

        D.    "said container and filter being separable from the cradle structure as a unit." ...................................................................................9

    II.    The Proper Construction of The '328 Patent .......................................................12

        A.    "cradle structure adapted to receive a head of a shaving apparatus".........12

            1.    There is no applicable plain and ordinary meaning in the relevant art. ...............................................................................12

            2.    Braun surrendered claim scope that would be encompassed by its proposed construction. .........................................13

        B.    "feed device for feeding cleaning fluid from said cleaning fluid container to said cradle structure"............................................14

CONCLUSION .............................................................................................................17

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A1-Site Corp. v. VSI Int'l, Inc.*,
    174 F.3d 1308 (Fed. Cir. 1999).......................................................................................... 6

*Apple Computer, Inc. v. Articulate Sys., Inc.*,
    234 F.3d 14 (Fed. Cir. 2000)........................................................................................... 12

*Applera Corp. v. MJ Research Inc.*,
    297 F. Supp. 2d 453 (D. Conn. 2004)............................................................................... 8

*Arthur A. Collins, Inc. v. Northern Telecom Ltd.*,
    216 F.3d 1042 (Fed. Cir. 2000)......................................................................................... 3

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.*,
    73 F.3d 1573 (Fed. Cir. 1996)........................................................................................... 2

*Biodex Corp. v. Loredan Biomedical, Inc.*,
    946 F.2d 850 (Fed. Cir. 1991)........................................................................................... 8

*Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*,
    334 F.3d 1294 (Fed. Cir. 2003)......................................................................................... 2

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
    388 F.3d 858 (Fed. Cir. 2004)........................................................................................... 2

*Exxon Research & Eng'g Co. v. United States*,
    265 F.3d 1371 (Fed. Cir. 2001)......................................................................................... 5

*Festo Corp. v. Kinzoku Kogyo Kabushiki Co.*,
    535 U.S. 722 (2002).......................................................................................................... 8

*Gentile v. Franklin Sports, Inc.*,
    211 F. Supp. 2d 334 (D. Mass. 2002) .............................................................................. 8

*Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*,
    222 F.3d 951 (Fed. Cir. 2000)........................................................................................... 4

*Hoescht Celanese Corp. v. BP Chemicals, Ltd.*,
    78 F.3d. 1575 (Fed. Cir. 1996)......................................................................................... 3

*Hormone Research Found. v. Genentech, Inc.*,
    904 F.2d 1558 (Fed. Cir. 1990)....................................................................................... 12

*In re Watts*,
    354 F.3d 1362 (Fed. Cir. 2004)......................................................................................... 6

*Intel Corp. v. VIA Techs., Inc.*,
  319 F.3d 1357 (Fed. Cir. 2003)............................................................................5

*Johnson & Johnston Assoc. Inc. v. R.E. Serv. Co., Inc.*,
  285 F.3d 1046 (Fed. Cir. 2002).........................................................................15

*Knik Co. v. U.S. Int'l. Trade Comm'n*,
  362 F.3d 1359 (Fed. Cir. 2004).........................................................................14

*Lighting World, Inc. v. Birchwood Lighting, Inc.*,
  382 F.3d 1354 (Fed. Cir. 2004)...........................................................................2

*Linear Tech Corp. v. Impala Kinear Corp.*,
  379 F.3d 1311, (Fed. Cir. 2004)...........................................................................2

*Markman v. Westview Instruments, Inc.*,
  517 U.S. 370 (1996)...............................................................................................8

*Maxwell v. J. Baker, Inc.*,
  86 F.3d 1098 (Fed. Cir. 1996)............................................................................15

*Mitek Surgical Prods., Inc. v. Arthrex, Inc.*,
  21 F. Supp. 2d 1309 (D. Utah), *aff'd*, 230 F.3d 1383 (Fed. Cir. 2000) ............13

*Modine Mfg. Co. v. U.S. Int'l Trade Comm.*
  75 F.3d at 1551 (Fed. Cir. 1996).......................................................................10

*Rexnord Corp. v. Laitram Corp.*,
  274 F.2d 1336 (Fed. Cir. 2001).....................................................................9, 16

*Schumer v. Laboratory Computer Sys., Inc.*,
  308 F.3d 1304 (Fed. Cir. 2002).........................................................................15

*Southwall Tech., Inc. v. Cardinal IG Co.*,
  54 F.3d 1570 (Fed. Cir. 1995).............................................................................5

*Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378-79 (Fed. Cir. 1998) ........13

*Tanabe Seiyaku Co., Ltd. v. U.S. Intn'l. Trade Comm'n*,
  109 F.3d 726 (Fed. Cir. 1997).............................................................................4

*Toro Co. v. White Consolidated Indus., Inc.*,
  199 F.3d 1295 (Fed. Cir. 1999).............................................................................6

*Vanguard Prods. Corp. v. Parker Hannifin Corp.*,
  234 F.3d 1370 (Fed. Cir. 2000).............................................................................9

*Vectra Fitness, Inc. v. TNWK Corp.*,
  162 F.3d 1379 (Fed. Cir. 1998).............................................................................4

**Statutes**

35 U.S.C. § 112 ¶6.............................................................................................................. passim

35 U.S.C. § 119(a) ....................................................................................................................... 3

**Treatises**

*Dictionary of Engineering and Technology*,
    Vol. 1 German - English, (5th ed. 1989)............................................................................ 4

*Dictionary of Engineering and Technology*,
    Vol. 2 German - English, (4th ed. 1975)........................................................................... 4

McGraw-Hill Dictionary of Scientific & Technical Terms,
    at 2101............................................................................................................................. 10

## BACKGROUND

Rayovac submits this brief Surreply to address certain of the misstatements and distortions in Braun's Reply Memorandum of Law.[1]  While contending otherwise, it is clear that Braun's claim constructions are driven by the accused devices.  Braun desperately seeks to avoid construing the claims in order to preserve ambiguity and argue later that the claims read on the accused device.  In so doing, Braun argues without evidentiary support that terms had well known meanings in the art, and ignores the entire intrinsic record.  Rayovac's proposed claim constructions, in contrast, begin with the claim language and reflect the meanings compelled by the specification and the prosecution history.

## ARGUMENT

**I.      The Proper Construction of Claim 1 of the '556 Patent**

**A.      "a cradle structure adapted to receive therein the shaving head"**

Rayovac has provided the Court with two analytical paths that reach the same conclusion as to the proper construction of this term.  There is no dispute that the limitation is purely functional, and, lacking a plain and ordinary meaning (as Rayovac asserts), 35 U.S.C. § 112 ¶ 6 should thus be applied.[2]  Nor does Braun assert that Rayovac has inaccurately recited the structure described in the specification for performing the recited function.  If this term is construed as a means plus function term, it must thus be construed as Rayovac proposes.  If, however, the Court attempts to craft a structural definition based on the intrinsic record,

---

[1]    Rayovac presented the parties' claim constructions in its Opening Brief.  For the Court's convenience, Rayovac has attached as Ex. 1 a chart presenting the proposed claim constructions addressed herein.

[2]    Braun argues that claim language which is purely functional is not problematic.  For example, Braun points to the word "brake."  Brakes have existed for centuries, and technicians and lay people alike know what the word means.  A juror could easily imagine brakes for a modern sedan or for early 1900's bicycles and ferris wheels.  "Cradles" for shavers are not part of any common vocabulary even today.

1

Rayovac's alternative construction provides that definition.  Whichever analytical path the Court takes, Rayovac's proposed constructions are correct and consistent.  Above all, the Court cannot construe the disputed element by not construing it, as Braun suggests.

> **1.    There is no applicable plain and ordinary meaning in the relevant art.**

Braun has no evidence that the term "cradle structure" had a well understood meaning in the field of the invention in the early 1990's.[3]  Braun merely implies that, if a definition appears in the McGraw-Hill Dictionary, it is *per se* "plain and ordinary meaning."  (*See* Braun Reply Br. at 4.)  That flawed logic has been rejected by the Federal Circuit and, requires the Court to ignore an alternate McGraw-Hill definition of the term "cradle."[4]  *See C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862-63 (Fed. Cir. 2004) (reemphasizing that dictionaries "do not require, or even allow, [a court] to disregard the intrinsic record").  The word "cradle" had been used to describe components of **other products and technologies** by the early 1990's, and there were many disparate, non-applicable definitions in various texts.  (Rayovac Op. Br., at 14.)  Picking a definition that best suits a party's infringement theory does not suffice as evidence of a contemporaneous plain and ordinary meaning.  *See C.R. Bard*, 388 F.3d at 862-63; *see also Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1300 (Fed. Cir. 2003); *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1579 (Fed. Cir. 1996).  Braun offers **no**

---

[3]    Braun relies *Linear Tech Corp. v. Impala Kinear Corp.*, 379 F.3d 1311 (Fed. Cir. 2004) and *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354 (Fed. Cir. 2004) for the proposition that claim terms having an understood meaning in the art are not governed by § 112, ¶ 6.  (*See* Braun Reply Br., at 4-5.)  Braun's reliance is misplaced.  *Linear Tech.* held that § 112, ¶ 6 did not apply to the element that included the term "circuit" because the claim included further language defining the claimed "circuit."  379 F.3d at 1320.  Similarly, the term "connector assembly" was not governed by § 112, ¶ 6 where the claim included further language defining it.  382 F.3d at 1359.  There has been no argument that the "cradle structure" element includes any other language defining a structure.

[4]    Braun has, to date, not even acknowledged the second McGraw-Hill Dictionary definition.

*evidence* that its hand-picked definition is the single and correct meaning in the art, merely the self-serving conclusion that it does. *Hoescht Celanese Corp. v. BP Chemicals, Ltd.*, 78 F.3d. 1575, 1578 (Fed. Cir. 1996) ("A technical term used in a patent document is interpreted as having the meaning that it would be given by person experienced in the field of the invention…."). If the term "cradle" had a well understood meaning, Braun could have come forward with references or articles which used the term as Braun argues. *See Arthur A. Collins, Inc. v. Northern Telecom Ltd.*, 216 F.3d 1042, 1044-45 (Fed. Cir. 2000) (noting that the prior art may assist in ascertaining the meaning of a term to a person skilled in the art). Braun points to no such evidence.[5]

Indeed, documents produced by Braun clearly show that the term "cradle structure" did not have a plain and ordinary meaning in the field of the invention. When it filed the '556 patent application, Braun submitted its German Patent Application, No. P 44 02 237.9-23, filed a year earlier in the German patent office. (Ex. 2.) Braun claimed priority to its German application to receive a 1994 filing date in the United States rather than the January 1995 filing date of the U.S. application. To claim priority to a foreign application, the U.S. application must describe subject matter "for a patent for the same invention." *See* 35 U.S.C. § 119(a).[6] Through Braun's U.S. prosecution counsel, the listed inventor swore an oath that the written description of the U.S. patent application is *literally identical* to the German priority application. (Ex. 3.)

---

[5]  As discussed in Rayovac's Opening Brief, there are prior art cleaning systems that invalidate Braun's patents. However, none of those terms use the terminology that Braun suggests was well understood.

[6]  Rayovac does not assert that the '328 patent application and the German application disclosed the same invention. For purposes of the present claim construction analysis, Rayovac notes that Braun itself claimed that priority.

Although minimal discovery has been conducted, Braun has produced a translation of the German priority application that proves the term "cradle structure" did not have the same meaning as the McGraw-Hill Dictionary definition. *See Tanabe Seiyaku Co., Ltd. v. U.S. Intn'l. Trade Comm'n*, 109 F.3d 726 (Fed. Cir. 1997) (holding that foreign prosecution documents may constitute relevant evidence to claim construction). Specifically, the German patent application uses the term "receptacle part" for what Braun eventually called a "cradle structure 7" in original application claim 1 (*See* Ex. 4, B001239ENG - 1242ENG.) Not once does the term "cradle" or "cradle structure" appear in the translation produced by Braun.[7] The public is absolutely entitled to rely upon Braun's sworn oath to the PTO that the term "cradle structure" has a meaning identical to a "receptacle part." *See Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000) (stressing importance of the public notice function of a patent's prosecution history); *Vectra Fitness, Inc. v. TNWK Corp.*, 162 F.3d 1379, 1384 (Fed. Cir. 1998) ("The public is entitled to rely upon the public record of a patent in determining the scope of the patent's claims."). A "receptacle part" is clearly narrower than a "framework or other resting place for supporting or restraining objects." Thus, the McGraw-Hill Dictionary is not evidence of a plain and ordinary meaning.

---

[7] The word used by Braun in its German application for item 7 is "aufnahmeteil." The root of this term, "aufnahme," is defined as "acceptance," "seat," "receptacle" or "retainer." (Ex. 5, *Dictionary of Engineering and Technology*, Vol. 1 German - English, (5th ed. 1989), at 75-76). The German priority application does not use the word "cradle" to describe any portion of the subject matter claimed in the '328 patent. There are many German words for the English word "cradle." (Ex. 6, *Dictionary of Engineering and Technology*, Vol. 2 German - English, (5th ed. 1989), at 224)..

>        **2.     Braun surrendered claim scope that would be encompassed by its**
>                **proposed construction.**

Braun admits the McGraw-Hill Dictionary definition cannot apply in light of Braun's

clear and unmistakable surrender of claim scope over the Lee, Browning, and Schinn patents.

(See Rayovac Op. Br., at 17-22.)  Braun states:

> Braun's proposed construction ***does not*** encompass all "cradle
> structures."  Rather it is ***a subset*** of cradle structures[.]

(*See* Braun Reply Br., at 23 (emphasis added).)  The obvious flaw in Braun's proposed claim

construction (or, more appropriately, its lack of construction) is that it provides no definition for

the "subset."  Jurors do not know what a "cradle" for cleaning shavers is, and they certainly will

have no idea what is within the "subset."

Despite Braun's argument that it repeatedly emphasized the "adapted to …" language of

the disputed element to distinguish the prior art, Braun further broadens this limitation in arguing

that "nothing in the prosecution history prohibits Braun's consistent position that the cradle

structure element must be a cradle structure ***able to*** receive a shaver head of a dry shaving

apparatus."  (*See* Braun Reply Br. at 27.)  Braun attempts to gloss over the issue, instead only

highlighting its inconsistent position.  Braun cannot have it both ways.  "Adapted to" must be

given the same meaning that Braun itself chose to give it during prosecution.[8]  *See Southwall*

*Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("Claims may not be

---

[8]   Braun's argues incorrectly that *Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357 (Fed. Cir. 2003) does not establish
that the expression "adapted to" can be used to trigger application of § 112, ¶ 6 because that decision dealt with
the issue of claim indefiniteness.  (*See* Braun Reply Br., at 6-7.)  Indefiniteness, of course, is the other side of
the claim construction coin.  *See Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir.
2001).  More particularly, the issue in *Intel* was whether the specification disclosed corresponding structure for
an element held to be governed by § 112, ¶ 6.  By addressing that issue, the Federal Circuit had to first hold (at
least implicitly) that the district court properly applied § 112, ¶ 6 to the disputed language, which included the
expression "adapted to," ***but not*** "means for."  The Federal Circuit's silence as to the issue of claim construction
shows its agreement with the district court's application of § 112, ¶ 6.

construed one way in order to obtain their allowance and in a different way against accused infringers.").  One of Rayovac's proposed constructions must be adopted because Braun argued repeatedly that the claimed structure is ***adapted to*** -- not merely "able to" -- receive the shaving head of a dry shaving apparatus.[9]

### B.  "a cleaning fluid container separate from the cradle structure for holding a cleaning fluid"

Braun states that it "proposed a simple construction of the 'cleaning fluid container' element of claim 1[.]"[10]  (*See* Braun Reply Br., at 27.)  That may be true, but Braun's proposed construction is demonstrably wrong. Braun completely ignores the fact that there are important differences between the '328 patent and the '556 patent both in the written description and claim language, as fully discussed in Rayovac's Opening Brief.[11]  Pertinent to the present element, the following chart contrasts critical differences in the discussions of (1) Figures 1 and 12 and (2) Figure 6 in the two patents:

---

[9]    Braun misleadingly cites to *In re Watts*, 354 F.3d 1362 (Fed. Cir. 2004) and *A1-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308 (Fed. Cir. 1999) in arguing that the phrase "adapted to" does not suggest that a claim is governed by § 112, ¶ 6.  (*See* Braun Reply Br., at 6.)  In both cases, the expression "adapted to" was followed by additional claim language defining structure.  *See* 354 F.3d at 1364; 174, F.3d at 1317.  Neither case addresses the present situation, where the phrase "adapted to" is followed by purely functional language and was repeatedly stressed to overcome the prior art.

[10]   Incredibly, Braun accuses Rayovac of reading out the preferred embodiment of the claimed invention, (*see* Braun Reply Br., at 29.), and then later accuses Rayovac of reading in the preferred embodiment.  (*See* Braun Reply Br., at 33 ("Rayovac's importation of the limitations from the preferred embodiment -- which has a cartridge-like cleaning fluid container …") (emphasis added).)  Braun is wrong on both fronts, as explained in Rayovac's Opening Brief.  (*See* Rayovac Op. Br., at 26-27.)

[11]   Braun also asserts that one of ordinary skill in the art would recognize that Figure 6 is not an accurate representation of the claimed invention.  (*See* Braun Reply Br., at 28-29.)  Drawings are, of course, part of the written description, providing context for claim construction.  *See Toro Co. v. White Consolidated Indus., Inc.*, 199 F.3d 1295, 1302 (Fed. Cir. 1999).  Braun's unsubstantiated conjecture as to what the ordinary artisan would extrapolate highlights the need to carefully review the intrinsic record in construing the element.

|  | **Figures 1 and 12** | **Figure 6** |
|---|---|---|
| **Structure Described** | Cleaning fluid is held in a structure that is not removable from the cleaning device. | Cleaning fluid is held in a removable and replaceable cartridge. |
| **'556 Patent Definition of Structure** | "*collecting reservoir* 65" ('556 pat., col. 4, l. 48.) | "cleaning fluid container 61 is configured as a cartridge" ('556 pat., col. 8, ll. 14-15.) |
| **'328 Patent Definition of Structure** | "cleaning fluid container 6" ('328 pat., col. 6, l. 50.) | "cleaning fluid container 61 is configured as a cartridge" ('328 pat., col. 10, ll. 21-22) |

Braun ignores the fact that its two different patents use different terminology to describe an identical structure. The '556 patent starkly diverges from the '328 patent -- a structure that holds cleaning fluid but is not a removable and replaceable cartridge (the alleged invention of the '556 patent) *is not* a "cleaning fluid container" in the '556 patent. It *is* a "cleaning fluid container" in the '328 patent. In contrast to the broader description in the '328 patent, Braun explicitly defined the type of "cleaning fluid container" it claimed in the '556 patent. Braun's proposed construction -- "a container holding cleaning fluid that is separate from the cradle structure" -- must thus be rejected. The Court should instead adopt Rayovac's proposed claim construction, "a removable and replaceable cartridge which holds cleaning fluid."

      **C.**    **"a fluid feed mechanism which feeds the cleaning fluid after it passes through the filter to the cradle structure during cleaning"**

The parties agree in part as to this claim element. Rayovac and Braun agree that the claim language requires that cleaning fluid be fed from the fluid feed mechanism to the filter first and then to the cradle structure. (*See*, Braun Reply Br., at 30.) The parties disagree, however, as to (1) whether § 112, ¶ 6 applies to this claim element and (2) whether cleaning fluid must be fed to the cradle structure, rather than the exterior or, as in Rayovac's system, the interior of the shaver head. Rayovac further discusses the latter point in this Surreply.

Braun gets it backwards in arguing that Rayovac should not have presented its position at the claim construction stage. (See Braun Reply Br. at 32 (citing *Festo Corp. v. Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002)). The very purpose of the present exercise is to determine the literal scope of the claims. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). Braun's argument that feeding fluid to the shaver head (rather than the cradle structure) constitutes "effectively" feeding to the cradle structure is an argument for infringement under the doctrine of equivalents. It is ***that argument*** which is not appropriate at the *Markman* stage. *See Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850, 862 (Fed. Cir. 1991) (holding that prosecution history estoppel is "irrelevant" to the determination of literal claim scope); *Gentile v. Franklin Sports, Inc.*, 211 F. Supp. 2d 334, 337 (D. Mass. 2002) ("The limit on the range of equivalents that may be accorded a claim due to prosecution history is ***simply irrelevant*** to the interpretation of those claims.") (emphasis in original); *Applera Corp. v. MJ Research Inc.*, 297 F. Supp. 2d 453, 455 (D. Conn. 2004) (stating that, "*Warner* and *Festo* do not generally speak to claim construction but rather instruct on the role of prosecution history where a patentee asserts a claim for infringement under the doctrine of equivalents….").

To illustrate, during prosecution, first amended application claim 1 for the '556 patent read:

> a fluid feed mechanism which feeds the cleaning fluid after it passes through the filter **to the shaving head** during cleaning …

(*See*, Ex. 13 to Rayovac's Opening Br. at 1 [B000088] (emphasis added).) Braun tried to claim the process of feeding cleaning fluid to the exterior of the shaving head. The Examiner, however, rejected that claim as obvious. (*See*, Ex. 17 to Rayovac's Opening Br. at 2 [B000099].)

Braun then amended claim 1 to read in pertinent part:

> a fluid feed mechanism which feeds the cleaning fluid after it passes through the filter to the [shaving head] **cradle structure** during cleaning ...

(*See*, Ex. 16 to Rayovac's Opening Br. at 1 [B000101].)   This amendment was more than cosmetic.  Given the amount of briefing on the term "cradle structure," it should be clear that a "cradle structure" (whatever the term means) is something quite different than a "shaving head."[12]  The unmistakable change in the claim language during prosecution must be given the real meaning advocated by Rayovac.[13]  *See Rexnord Corp. v. Laitram Corp.*, 274 F.2d 1336, 1343 (Fed. Cir. 2001).

>    **D.    "said container and filter being separable from the cradle structure as a unit"**

The primary dispute in this element is what constitutes a "unit."  Braun admits that the claim language requires that the cleaning fluid container, ***together with*** the filter, are removable from the cradle structure as a unit.  Braun contends that the unit comprised of the cleaning fluid container and the filter is made up of two separable parts.  But, as Rayovac pointed out in its Opening Brief, this construction is impermissible for a number of reasons.

*First*, the Federal Circuit has found that "unit" and "integrally formed" are generally synonymous.  *See Vanguard Prods. Corp. v. Parker Hannifin Corp.*, 234 F.3d 1370, 1371-72 (Fed. Cir. 2000) (noting that "integral" means "***formed as a unit*** with another part.") (emphasis added).  Moreover, the definition from the McGraw-Hill Dictionary, Braun's dictionary of choice, defines a "unit" as "an assembly or device capable of independent operation, such as a radio receiver, cathode-ray oscilloscope, or computer subassembly that performs some inclusive

---

[12]    Braun could have, but did not, amend the claim language to allow the fluid to be fed to the shaving head or to the cradle structure.

[13]    Braun can try to present a doctrine of equivalents theory that feeding to the exterior of the shaving head is "effectively" feeding to the cradle structure and argue that prosecution history estoppel does not apply. Rayovac obviously disagrees.  But the task now is to interpret the literal scope of the claims, which is a legal inquiry.   Braun cannot seriously dispute that the scope of its claims changed as a result of its claim amendments.

operation or function." (McGRAW-HILL DICTIONARY OF SCIENTIFIC & TECHNICAL TERMS, at 2101, attached as Ex. 19 to Rayovac's Opening Br.) Nothing in this definition lends support for Braun's contention that a "unit" is comprised of "individual components [that] can either be integrally formed or separable and removable individually." (*See* Braun Reply Br. at 33.)

*Second*, the specification supports Rayovac's contention that the cleaning fluid container and filter must be a single, integrally formed unit. As discussed in Rayovac's Opening Brief (*see* Rayovac Opening Br. at Section I.B), the specification of the '556 patent unequivocally states that the alleged invention over the Simmons patent is an integrally formed container/filter that can be removed and replaced as a distinct component. "[W]hen the preferred embodiment is described in the specification as the invention itself, the claims are not necessarily entitled to a scope broader than that embodiment." *Modine Mfg. Co. v. U.S. Int'l Trade Comm.*, 75 F.3d 1545, 1551 (Fed. Cir. 1996). Here the specification confirms Rayovac's construction, stating, "it is an object of the present invention to improve upon the [Simmons cleaning system] such as to allow ready replacement of the cleaning fluid container." (*See*, '556 pat., at col. 1, ll. 60-62.) The only alleged invention is thus described:

> The invention is directed to a cleaning device 5 … wherein the cleaning fluid container 61 is separable from the cleaning device 5 and includes a ***filter means 24 integrally formed therewith***.
>
> ***
>
> [T]his object is accomplished in that the cleaning fluid container is separable from the cleaning device and includes a filter means ***integrally formed therewith***. Because ***the filter is made integrally with the cleaning fluid container***, the container is readily removable together with the cleaning fluid container after the cleaning fluid container is used up or after the filter is largely clogged with dirt particles, such replacement merely involves detaching the container from the feed pump. A new cleaning fluid container including a new filter can then be inserted …."

10

(*Id.* at Abstract & col. 1, ll. 63 - col. 2, ll. 5 (emphasis added).)   It is important that the specification states that the cleaning fluid container is integrally formed, and that therefore the container is removable either when the cleaning fluid has been used up, *or* after the filter is clogged.  The specification treats replacement of one as replacement of the other.

*Third*, amendments and arguments made during prosecution remove any doubt that Rayovac's is the proper construction.  As described fully in Rayovac's Opening Brief, Braun amended application claim 1 from "the cleaning fluid container (61) is separable from the cleaning device (5) and includes a filter means (24) ***integrally formed therewith***" to read "said container and filter being separable from the cleaning device as a ***unit***."  (*See* Rayovac Op. Br. at 32-33.)  Rayovac has argued that this amendment resulted from an indefiniteness rejection.  (*Id.*)

Braun responds that the amendment was cosmetic in nature, merely "reflecting good draftsmanship."   While Rayovac believes its reading of the prosecution history is correct, Braun's argument is that there is no substantive difference between the pertinent original language and amendment language.  If so, the original "integrally formed therewith" language must have the same meaning as a "unit."

Thus, under any interpretation of the prosecution history, Rayovac's proposed construction is the correct one.

## II.    The Proper Construction of The '328 Patent

### A.    "cradle structure adapted to receive a head of a shaving apparatus"

As with the '556 patent, Rayovac has presented the Court alternative constructions of this limitation, which, for the same or similar reasons as the '556 patent, are both consistent and correct.[14]

### 1.    There is no applicable plain and ordinary meaning in the relevant art.

*First*, Braun has no evidence of a plain and ordinary meaning of the term "cradle" in the field of the invention. Like the '556 patent, to obtain a 1994 priority date, the listed inventor swore an oath that German Patent Application No. 44 02 238.7 is literally identical to the U.S. patent application. (Ex. 7.)  Again, the translation of the German priority application is consistent with the German priority application for the '556 patent, using the terms "receptacle" and "receptacle part" rather than "cradle structure. (*See* B001123ENG ["receptacle"], Ex. 8; B001083ENG, B001096ENG, B001097ENG, B001208ENG-B001238ENG, B001259ENG-B001282ENG ["receptacle part"], Ex. 9; B001141ENG - B001145ENG [a "holder"], Ex. 10; B001171ENG-B001198ENG [a "retainer"], Ex. 11.)  For reasons set forth above, the translation produced by Braun shows that the structure described by Braun did not have the meaning Braun alleges as the plain and ordinary meaning of a "cradle."

---

[14]    While Rayovac need not reiterate its argument, Braun incorrectly argues that under *Apple Computer, Inc. v. Articulate Sys., Inc.*, 234 F.3d 14 (Fed. Cir. 2000), unasserted claim 1 should not be considered when construing the asserted claims since "each claim of a patent must be considered individually."  (*See* Braun Reply Br., at 7.)  *Apple Computer* dealt with patent invalidity, not claim construction.  234 F.3d at 24.  Claims are considered individually for an invalidity analysis; they ***are not*** considered individually for purposes of claim construction. *See Hormone Research Found. v. Genentech, Inc.*, 904 F.2d 1558, 1562 (Fed. Cir. 1990) ("Claim interpretation involves a review of the specification, the prosecution history, the claims (including unasserted as well as asserted claims) and, if necessary, other extrinsic evidence, such as expert testimony").

##### 2.     Braun surrendered claim scope that would be encompassed by its proposed construction.

Furthermore, any purported plain and ordinary meaning construction is absolutely forbidden to Braun. Unequivocal disclaimers in both the specification and the prosecution history regarding the "cradle structure" mandate that the Court actually define this limitation. *See Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378-79 (Fed. Cir. 1998) (holding that claim term will not carry its ordinary meaning if the intrinsic evidence shows that the patentee distinguished the term from the prior art.).

To evade statements made in the specification, Braun attempts to confuse the interplay between the '328 patent's discussion of the Simmons patent and the French patent. (*See* Rayovac Op. Br. at 39-42.) Rayovac is ***not*** arguing that Braun defined the term "cradle" as limited to the Simmons patent "cradle." Rather, Braun disclaimed a type of "cradle structure" through the '328 patent's comparison of the Simmons patent's "cradle" with the criticized French patent's "cleaning chamber" -- a structure clearly adapted to receive a shaving head. (*See* Rayovac Op. Br., at 40.)

Braun, in fact, understands why the '328 patent criticized the French patent, but then tries to escape the inevitable result:

> [T]he specification's criticism of the French patent relates to the lack of efficacy of the cleaning method. In particular, the French device ***uses air*** to attempt to blow or suction off debris from a shaver head.

(*See* Braun Reply Br., at 10 (emphasis added).) The criticism of cleaning with a gas (in a "cleaning chamber") as opposed bathing with a fluid (in a "cradle") results in a disclaimer. *See Mitek Surgical Prods., Inc. v. Arthrex, Inc.*, 21 F. Supp. 2d 1309, 1313-14 (D. Utah), *aff'd*, 230 F.3d 1383 (Fed. Cir. 2000) (unpublished) ("It is well established that the prior art as cited by the applicant is part of the intrinsic evidence upon which the court must reply to construe the

claims…. The prior art relied upon by the applicant 'gives clues as to what the claims do not cover.'"). Rayovac's constructions, either as a means plus function term or not, acknowledge the fact that a "cradle" must receive and retain fluid during cleaning. (*See* Rayovac Op. Br. at 23.) Simply put, Braun cannot tell the world that it is not using "cleaning chamber" that does not receive or retain fluid, and later try to recapture it as a "cradle structure." *See Knik Co. v. U.S. Int'l. Trade Comm'n*, 362 F.3d 1359, 1365 (Fed. Cir. 2004) ("Claims cannot be construed as encompassing the prior art that was distinguished in the specification [.]").

Next, despite Braun's protestations, there is no dispute that Braun disclaimed subject matter over the Cunningham patent, which discloses a structure "able" to receive shaving heads. (See Rayovac Opening Br., at 43.) Braun argues: "Nothing in Braun's current claim construction purports to recapture the Cunningham patent." (*See* Braun Reply, at 14.) Braun thus ***concedes*** that there is subject matter that the original application claims captured, but that is now forever lost to Braun. Despite Braun's concession, Braun's non-construction leaves the term "cradle structure" undefined, and actually broadens the limitation by substituting the word "adapted" with the broader term "able." As with the '556 patent, the element at issue does not have a plain and ordinary meaning in the first instance, and the intrinsic evidence further narrows it. The jury must therefore receive the real guidance provided by either of Rayovac's proposed constructions.

**B.    "feed device for feeding cleaning fluid from said cleaning fluid container to said cradle structure"**

As with the '556 patent, the parties disagree as to (1) whether § 112, ¶ 6 applies to this claim element and (2) whether cleaning fluid must be fed to the cradle structure, rather than the exterior or interior of the shaver head. Again, Braun incorrectly states that argument on the parties' real dispute over the latter point is "curiously out of place in a claim construction brief."

14

For reasons emphasized briefly below and in Rayovac's Opening Brief, the Court must hold Braun to its literal claim scope now.

*First*, the specification states: "[I]t is advantageous that the cradle ***or*** the shaving head are adapted to be supplied with cleaning fluid from the cleaning fluid container by means of the feed pump[.]"    (*See* '328 pat., col. 2, ll. 32-35) (emphasis added).)    Although disputing that it disclaimed an embodiment, Braun admits that the specification discloses two embodiments:

> [T]he specification indicates that the feed device element includes a mechanism
> that feeds cleaning fluid to the cradle ***or*** to the shaving head in the cradle.

(*See* Braun Reply Br., at 16 (emphasis added).)  To remain consistent with the explicit text of the written description, Braun could have tried to patent both disclosed embodiments.  *See Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1311 (Fed. Cir. 2002) (interpreting the word "or" between listed alternatives).  Braun instead chose to draft its claims to cover only feeding to "said cradle structure."  It is now too late to insert the word "effectively" before the phrase "feeding to said cradle structure," as Braun would like.  The patent claims have long since issued, and Braun unquestionably dedicated subject matter to the public through its choice of claim language.  *See Johnson & Johnston Assoc. Inc. v. R.E. Serv. Co., Inc.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002) ("[W]hen a patent drafter discloses but declines to claim subject matter . . . this action dedicates that unclaimed subject matter to the public."); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1106-07 (Fed. Cir. 1996) (subject matter disclosed but not claimed in a patent application is dedicated to the public).

*Second*, for reasons set forth in Rayovac's Opening Brief, Braun narrowed the claim element during prosecution, requiring that Rayovac's proposed construction must be adopted. (*See* Rayovac Op. Br. at 42-43.)  Braun's argument that the prosecution history simply reflects "elegance" and "cosmetics," however, actually supports Rayovac's proposed construction.

Original application claim 1 stated:

> a device (23) adapted to be driven by a motor (28) for feeding the cleaning fluid, characterized … in that the cradle structure (7) is ***adapted to be supplied*** with cleaning fluid from the cleaning fluid container …"

(*Id.* at 30 [B000252] (emphasis added).)   As discussed above, the term "adapted to" is significant.   The application claim language made it explicit that the "cradle structure" is specially designed to be supplied with cleaning fluid from the "device."   The cradle structure "effectively" receiving fluid after it is supplied to some other component of the device does not meet such language.

Braun amended application claim 1 to read in pertinent part:

> a <u>feed</u> device [(23) adapted to be driven by a motor (28)] for feeding [the] cleaning fluid ***to a said cradle structure*** ...

(*See*, Response to Office Action, dated 6/20/96, Ex. 12, at 1 [B000327] (emphasis added).)   The "feed device" thus no longer claimed feeding fluid to any component of the device as it had; rather, the structure of the claim narrowed to directly tie the feeding of cleaning fluid with the cradle structure.   That is not mere cosmetics.   Rayovac maintains that such amendment was made to overcome the prior art, further narrowing original application claim 1.   But under Braun's view of the prosecution history, the amended claim language has the ***identical meaning*** as original application claim 1.   No matter how the prosecution history is interpreted, the Court must thus adopt Rayovac's claim construction.   *See Rexnord*, 274 F.2d at 1343.

16

## CONCLUSION

For all the foregoing reasons, and for the reasons set forth in Rayovac's Opening Brief, Rayovac respectfully requests that the Court adopt its proposed claim construction.

**RAYOVAC CORPORATION**

By it attorneys,

  /s/ Joseph E. Haviland          
Joseph E. Haviland (BBO #643814)
**DWYER & COLLORA, LLP**
600 Atlantic Avenue
Boston, MA  02210-1122
(617) 371- 1000
Facsimile: (617) 371-1037

Mark A. Pals (admitted *pro hac vice*)
James A. Shimota (admitted *pro hac vice*)
Kevin S. Ueland (admitted *pro hac vice*)
James B. Coughlan (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
Aon Center
200 E. Randolph Dr.
Chicago, IL 60601
(312) 861-2000
Facsimile: (312) 861-2200

Attorneys for Defendant

DATED:  January 19, 2005

17