**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

BRAUN GmbH,<br>
Plaintiff,<br>
v.<br>
RAYOVAC CORPORATION,<br>
Defendant.

Civil Action No. 03-CV-12428-WGY

**RAYOVAC CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY**

Braun GmbH ("Braun") commenced this litigation over a year ago. In the Joint Proposal that the parties submitted to the Court regarding scheduling, Braun indicated that it was eager to move the case forward, representing to the Court that it believed fact discovery could be completed by March 2005. But since then Braun has taken a decidedly different approach, delaying depositions and providing partial responses—or in some cases no response at all—to Rayovac's written discovery requests. March is now over, and Rayovac is unable to obtain even basic facts from Braun. Despite Rayovac's attempts to reach agreement with Braun about the discovery issues that are the subject of this motion, Braun continues to stonewall and evade discovery, prejudicing Rayovac's ability to defend this action. Accordingly, Rayovac brings this motion to compel discovery.

## BACKGROUND

Braun brought this lawsuit against Rayovac in February 2004. Braun initially requested an extraordinarily fast schedule, proposing a scheduling order that would have concluded fact discovery on March 18, 2005. Braun's apparent willingness to proceed with discovery efficiently is belied by its actions. In particular, Braun's discovery abuses include:

- failing to provide meaningful infringement contentions;

- refusing to allow Rayovac any discovery as to Braun's damages theories;
- concealing evidence of Braun's own prior art;
- ignoring any interrogatory regarding Braun's translations;
- stonewalling Rayovac on the scheduling of depositions; and
- hiding the identity of third party documents commingled with Braun's production.

Such actions are facially improper and clearly prejudice Rayovac. The current deadline for expert reports is May 25, 2005 with rebuttal reports due on June 23, 2005. Both fact and expert discovery must be completed by July 22, 2005—a little over three months from now. Rayovac must be allowed to pursue ***timely*** discovery, process such information, and respond to it accordingly. Braun has consistently acted to thwart Rayovac's legitimate discovery requests in an apparent effort to run out the clock on discovery. Rayovac has no choice but to ask this Court to intervene.

## ARGUMENT

As the Court of Appeals for the First Circuit has noted, "[t]he purpose of the discovery rules is to provide for the 'fullest possible' pretrial disclosure of admissible evidence, to 'reduc[e] the possibility of surprise'…and to insure 'a fair contest.'" *Klonoski v. Mahlab, M.D.*, 156 F.3d 255, 271 (1st Cir. 1998) (citations omitted). Braun, in direct contravention of this stated purpose, has met Rayovac's requests with delay and obstinacy. Rayovac attempted to resolve its differences with Braun in a series of phone calls on March 21, 2005 and March 23, 2005, but was unsuccessful in reaching common ground. Rayovac thus moves to compel discovery pursuant to Federal Rule of Civil Procedure 37.

### I. Braun Has Refused to Provide Meaningful Infringement Contentions.

The Scheduling Order required that Braun disclose its infringement contentions to Rayovac on October 22, 2004. (*See* Scheduling Order, dated 10/25/04, Ex. 1, at 4.) On October

25, 2004, in response to Rayovac's Interrogatory No. 1, Braun provided what purported to be infringement contentions in the form of Charts 1 and 2. (*See* Braun GmbH's Answers to Remington's First Set of Interrogatories, attached as Ex. 2.) But these charts provided absolutely no factual analysis of Rayovac's accused products, instead merely repeating claim language and broadly concluding that Rayovac's products fit it. Braun still refuses to identify what structures in the accused products allegedly correspond to the claim limitations. The following chart is an example of the lack of factual information provided by Braun.

| **Claim Element of U.S. Patent No. 5,649,556** | **Braun's Infringement Contention** |
|---|---|
| A cleaning fluid container separate from the cradle structure for holding a cleaning fluid | "The Titanium Smart System -- Rotary Shaver contains a container for holding cleaning fluid that is separate from the cradle structure." |

It is Braun's burden to prove the alleged infringement of Rayovac's products with facts, ***not mere conclusions***. *Centricut, LLC v. Esab Group, Inc.*, 390 F.3d 1361, 1367 (Fed. Cir. 2004) ("The patentee has the burden of proving infringement by a preponderance of the evidence."). Pursuant to Federal Rule of Civil Procedure 11, the Federal Circuit has held that a patentee must form its factual infringement contentions prior to bring suit. *Anotnious v. Spalding & Evenflo Cos., Inc.*, 275 F.3d 1066 (Fed. Cir. 2002). Indeed, in the schedule it originally proposed to the Court, Braun represented that it was prepared to move for summary judgment ***on October 15, 2004***. (*See* Joint Statement of the Parties Pursuant to Local Rule 16.1(D), filed 9/7/04, Ex. 3.) Braun thus can (but refuses to) point to precisely what it contends constitutes "the cleaning fluid container separate from the cradle structure for holding a cleaning fluid" in Rayovac's accused products. Braun, of course, knows that infringement must be proved with evidence, and it presumably intends to offer expert testimony based upon some ***facts***. The purpose of fact

discovery, however, is for Rayovac to learn Braun's factual contentions well in advance of expert reports.[1]

Rayovac has produced to Braun schematics of Rayovac's accused product. *See* Ex. 20, Rayovac document Nos. R673-75. Braun should thus be ordered to supplement its infringement contentions to tie the claim elements of the patents-in-suit to ***specific structures*** identified on the schematic.[2]

## II. Braun Cannot "Decline" to Answer Rayovac Interrogatory No. 6 Regarding Damages.

In its Complaint Braun seeks monetary damages. Accordingly, Rayovac's Interrogatory No. 6 requested:

> Provide with particularity, the factual and legal bases for Braun's contentions as to the amount of damages due to Braun if [Rayovac] is found to infringe one or both of the Patents-in-Suit, including, but not limited to, the proper royalty rate, amount of lost profits due and/or increased damages for willfulness; further identify the evidentiary support (including all documents and identification of witnesses) for any facts identified.

On October 25, 2004, Braun responded:

> In addition to the General Objections set forth above, Braun objects to Interrogatory No. 6 on the ground that it is premature and seeks the bases for contentions at the beginning of the discovery period and before Defendant has responded to discovery requests. Subject to those objections and to later supplementation of this response in light of information obtained through discovery or otherwise, ***Braun declines to answer Interrogatory No. 6 at this time***.

---

1 Braun has suggested to Rayovac that it may supplement its infringement contentions in "due course." (*See* Ltr. from L. Wolf to K. Ueland, dated 3/23/05, Ex. 4.) Now six months after the Court ordered deadline for disclosure of infringement contentions, such vague promises are cold comfort to Rayovac. Expert disclosures are rapidly approaching, and Rayovac can wait no longer.

2 As evidenced by its silence on the issue, Braun apparently is not asserting infringement under any doctrine of equivalents theory. (*See* Braun GmbH's Answers to Remington's First Set of Interrogatories, Ex. 2; Ltr. from J. Shimota to L. Wolf, dated 3/16/05, Ex. 5; Ltr. from L. Wolf to J. Shimota, dated 3/21/05, Ex. 6.)

(*See* Braun GmbH's Answers to Remington's First Set of Interrogatories, at 8.)

Absent a legitimate privilege objection (and none was interposed), Braun cannot refuse a request for obviously relevant information. While discovery may have begun in October 2004, Braun should have ***at least*** told Rayovac (1) whether it was pursuing a lost profits theory, a reasonable royalty theory, or both; (2) the location of documents Braun intended to rely upon to support its damages theory(ies); and (3) the identities of Braun employees knowledgeable about Braun's damages theories.[3] Instead, Braun chose to stonewall, leaving Rayovac completely in the dark as to what theories Braun intended to pursue or how Rayovac could defend against them.

Six months after Braun's initial response (now well into fact discovery) and despite a request for supplementation, Braun still refuses to answer Interrogatory No. 6. Again, the deadline for expert disclosure is rapidly approaching, and Rayovac needs to be able to conduct fact discovery prior to working with its experts. At this time, in addition to the information identified above, Braun should be required to provide ***all*** the factual and legal support for its damages theories. It can be no answer that Braun may provide a damages expert report on May 25, 2005. Rayovac is required to provide a rebuttal report three weeks later, and it would be manifestly unfair to collapse damages discovery into a three week period. Accordingly, this Court should order Braun to answer Interrogatory No. 6.

---

3 Braun has produced little (if any) financial information regarding the products it contends are covered by the patents-in-suit. As Rayovac does not even know what witnesses to depose regarding financial information, Braun has effectively precluded Rayovac from even exploring what documents should have, but has failed to produce.

**III. Braun Is Concealing Gillette's Role In The Sales and Marketing Of The Patented Products.**

As it did with Interrogatory No. 6, Braun has flatly refused to respond to Rayovac's Interrogatory No. 19, which asks Braun to identify what role The Gillette Company ("Gillette"), Braun's parent company, has in the manufacturing, testing, sales, and marketing of products that employ the inventions of the patents-in-suit. (*See* Plaintiff's Answers to Defendant's Second Set of Interrogatories, Ex. 7, at 8.) Braun originally filed this action with Gillette as a co-plaintiff. Rayovac moved to dismiss Gillette because Gillette lacked standing to join Braun as a party. (*See* Memorandum in Support of Remington's Motion to Dismiss Gillette and Braun's Complaint in Part, Ex. 8.) In opposing Rayovac's motion to dismiss, Braun and Gillette argued that Gillette "shoulder[ed] the responsibility for the sales and marketing of Braun's products, including the products that employ the inventions disclosed by the patents-in-suit . . . ." (*See* Plaintiffs' Opposition to Defendant's Motion to Dismiss Plaintiffs' Complaint in Part, Ex. 9, at 2.)

While the Court properly dismissed Gillette, Gillette's role in "the sales and marketing of Braun's products" is directly relevant to at least two issues in the case. First, as an alleged secondary indicia of the non-obviousness, Braun has pointed to the commercial success of the products it contends are covered by the patents-in-suit. (*See* Ex. 2, Braun GmbH's Answers to Remington's First Set of Interrogatories, at 7.) Insofar as Gillette is responsible for the United States sales/marketing of Braun's products, Rayovac clearly must be allowed to explore what (if any) commercial success is allegedly enjoyed by such products. Second, to the extent that Braun is pursuing a lost profits damages theory, it is generally accepted that it must prove, *inter alia*, "the marketing capability to exploit the demand [for a patented product]." *Comair Rotron, Inc.*

*v. Nippon Densan Corp.*, 49 F.3d 1535, 1540 (Fed. Cir. 1995) (citations omitted). Plainly, Braun cannot conceal Gillette's marketing capabilities (or Braun's lack of marketing capabilities).

Rayovac thus served its Interrogatory No. 19 on 2/9/05, asking Braun to:

> Identify what role The Gillette Company ("Gillette") has in the manufacturing, testing, sales, marketing, distribution, and/or "the general business management" of the products that employ the inventions disclosed by the patents-in-suit and all facts supporting Braun's statement that Gillette "shoulders the responsibility for the sales and marketing of … the products that employ the inventions disclosed by the patents-in-suit." This Interrogatory includes, but is not limited to, (a) the money or other consideration paid by Gillette to Braun for the products that employ the inventions of disclosed by the patents-in-suit (from the first sale in the U.S. to the present); (b) Braun's method for accounting for the money or other consideration paid by Gillette to Braun for such products; (c) the gross and net profits made by Braun as a result of Gillette's sales and marketing of such products in the U.S.; (e) Braun's ability to shoulder the responsibility for the sale and marketing of such products in the U.S. without Gillette; (f) the amount of funds spent by Gillette annually on the sales and marketing of such products; and (g) the identification of documents by Bates Number of documents supporting Braun's contentions.

Braun responded:

> In addition to the General Objections set forth above, Braun objects to Interrogatory No. 19 on the ground that it is unlikely to lead to the discovery of admissible evidence insofar as it seeks information concerning a third party to this action. Furthermore, Braun objects to this interrogatory on the grounds that it is irrelevant as Braun seeks to recover only its own damages, and not those of Gillette, in this action.

(*See* Ex. 7, Plaintiff's Answers to Defendant's Second Set of Interrogatories, at 7-8).

Rayovac agrees with Braun that any damages allegedly suffered by Gillette are not recoverable in this action. *Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1311-12 (Fed. Cir. 2004). Rayovac argued that proposition in moving to dismiss Gillette from this action. (*See* Memorandum in Support of Remington's Motion to Dismiss Gillette and Braun's Complaint in Part, at 2.) The obvious flaw in Braun's response to Interrogatory No. 19 is that Braun refuses to tell Rayovac what ***Braun's damages*** are, making it impossible to determine whether Braun actually does intend to pursue ***Gillette's damages***. Moreover, Rayovac is

absolutely entitled to learn the facts underlying the marketing/sales/general business management functions Braun swore that Gillette performs. *See Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1346 (Fed. Cir. 2003) (holding that a court must determine the sales that would have occurred "but for" the alleged infringement); *McNeil-PPC, Inc. v. L. Perrigo Co.*, 337 F.3d 1362, 1370 (Fed. Cir. 2003) (probative value of plaintiff's asserted evidence of secondary indicia of nonobviousness discounted where plaintiff's "massive marketing and advertising campaign" obscured any nexus that might have existed between the merits of the product and its commercial success).

Braun's objection that Rayovac's request seeks information concerning a third party is without merit. First, Rayovac believes that all the information requested in Interrogatory No. 19 is in Braun's possession, custody, and control. Such information includes Braun's accounting practices and Braun's (not Gillette's) capability to market products in the United States. Second, even if certain information requested were solely in Gillette's possession (and it is not), Braun clearly intends to rely upon evidence from Gillette to demonstrate, for example, alleged commercial success. Braun has gathered a few documents from Gillette and produced them in this litigation. Since Braun can get evidence from Gillette when it suits Braun's purposes, Braun should not be heard to complain that Rayovac has asked about the relationship between Gillette and Braun.

The Court should therefore order Braun to answer Interrogatory No. 19.

## IV. Braun Is Hiding Evidence As To Its Own Prior Art.

To salvage the validity of its patents, Braun hopes to argue that, "prior to the patented inventions, cleaning of the shaving head of a dry shaver was accomplished by manually brushing debris from the shaver head or by disassembly of the shaver head and placement of the cutter in a

beaker, which could be shaken." (*See* Ex. 2, Braun GmbH's Answers to Remington's First Set of Interrogatories, at 7.) Such argument is rendered false by third party prior art.

Indeed, Braun's own documents reveal that Braun's argument is inaccurate. More particularly, Braun has produced a timeline generated on December 3, 2003 entitled "History 'how to clean a shaver.'" (Ex. 10, B002043-B002044.) In addition to referencing third party cleaning systems from Philips and Panasonic, the timeline also references research ***at Braun*** involving cleaning a shaver with water. For example, in approximately 1960, Braun apparently tested (and may have sold) "a water cleaning box/sink" for a shaver. (*Id.*) Braun's own prior art is obviously relevant to the validity of the patents-in-suit. *See* 35 U.S.C. § 102(b); *Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1107-08 (Fed. Cir. 2003) (noting that a patent owner's own products can be used as prior art to invalidate the patent). Moreover, if material prior art known to Braun was not disclosed to the PTO, such nondisclosure could constitute inequitable conduct, rendering the patents-in-suit unenforceable. *See* 37 C.F.R. § 1.56; *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995).

While Braun has produced the timeline, despite several requests from Rayovac, very little evidence as to the items listed on the timeline has been produced.[4] In fact, as the timeline was apparently generated by Jurgen Hoeser on December 3, 2003—a day after Braun filed the Complaint against Rayovac—and was presumably based upon evidence in Braun's control, Braun had a specific duty to preserve such evidence.

---

4 As an example, the timeline lists a prior art doctoral thesis pertaining to a "cleaning station" for a shaver. Rayovac had to specifically request production of this document from Braun because Braun had unilaterally decided that the thesis was "irrelevant."

Nevertheless, since such evidence either ceased to exist after December 3, 2003 or Braun has chosen to withhold it, Rayovac served Interrogatory No. 17:

> Identify all projects (formal or informal) conducted by or on behalf of Braun relating to systems for cleaning shavers, each individual who worked on each such project identified (whether or not a Braun employee), and the documents produced by Braun corresponding with each such project identified. ***By way of example, this interrogatory includes, but is not limited to***, "Cleaning with Water" at or near 1960 (B002043), "Cleaning with Water" at or near 1965 (B002043), "Cleaning with Water" at or near 1975 (B002044), "Market research cleaning habits" at or near 1982 (B002044), "Market research in Japan" at or near 1987 (B002044), Fresenius Hygiene studies (B002044), the "Thesis for Diploma" (B002044), the "shaking beaker for shaving heads" (B001071ENG), and all studies associated with Braun's Syncro System Smart Logic products.

(*See* Defendant's Second Set of Interrogatories to Plaintiff, Ex. 11, at 3.) Braun responded by merely referring to work done in connection with the current products it alleges are covered by the patents-in-suit.[5] (*See* Ex. 7, Plaintiff's Answers to Defendant's Second Set of Interrogatories at 6-7.)

Rayovac's Interrogatory called for such information, but it was not so limited. Indeed, while Interrogatory No. 17 specifically identified projects from the timeline as examples, it was clearly intended to cover all of Braun's prior art. Braun, however, will not even provide information as to the "shaking beaker for shaving heads" that it intends to malign as being an unsatisfactory cleaning system, let alone the substantial amount of additional prior art demonstrably in Braun's possession. Braun simply cannot be allowed to paint shaver cleaning systems as being in the stone ages prior to its alleged inventions while simultaneously burying

---

5 As with the doctoral thesis, Braun will presumably classify all of its earlier research and development as "irrelevant." A patentee, of course, has an incentive to classify all prior art as irrelevant, but that decision as to relevance cannot be left unilaterally to the patentee.

Braun's inconsistent evidence as to ***Braun's own research and development***. The Court should therefore order Braun to provide a complete answer to Interrogatory No. 17.

**V. Braun Has Refused To Answer Interrogatory No. 18 Regarding Translations.**

In their Joint Statement to the Court pursuant to Local Rule 16.1(D), the parties agreed that they would provide to each other "certified translations of all foreign language documents that the party translates for its own use." (*See* Revised Joint Statement to the Court, dated 9/21/04, Ex. 12, at 2.) In reviewing Braun's document production, Rayovac became concerned that Braun was not abiding by this agreement, as it appeared that documents in German had only select pages translated into English. Rayovac raised this concern with Braun on January 26, 2005. (*See* Ltr. from J. Shimota to L. Wolf, dated 1/28/05, Ex. 13.) Braun, however, never provided Rayovac with a coherent response.

Unsatisfied, Rayovac posed Interrogatory No. 18 to Braun asking it to identify by Bates number what documents Braun had translated into English and to identify the German documents to which the translations correspond. (*See* Ex. 11, Defendant's Second Set of Interrogatories to Plaintiff, at 4.) Braun, in its response failed to identify a single document by Bates number. (*See* Ex. 7, Plaintiff's Answers to Defendant's Second Set of Interrogatories, at 7.)

On March 16, 2005, Rayovac asked Braun to supplement its response. (*See* Ex. 5, Ltr. from J. Shimota to L. Wolf, dated 3/16/05.) Braun responded that it had produced all translations of non-privileged documents, consistent with the agreement set forth in the Joint Statement. (*See* Ex. 6, Ltr. from L. Wolf to J. Shimota, dated 3/21/05.) But the evidence is to the contrary. By way of example, Rayovac attaches as Exhibit 19 a copy of the translated pages

produced by Braun that are consecutively numbered B001123ENG-1125ENG, which are pages 3, 9 and 11 of a German document translated by Braun.[6]

Because of Braun's lack of candor, Rayovac is left to guess what, if any, German documents Braun hopes to offer as evidence at trial in English. If Braun intends to offer into evidence partially translated documents, Rayovac needs to know that so an appropriate motion *in limine* may be filed. If other documents have been ***completely*** translated, they may be admissible. Simply, Rayovac wants at least the beginning of a candid answer to the question why isolated pages of English translations are floating in Braun's production. Accordingly, Rayovac requests that Braun be ordered to answer Interrogatory No. 18 by identifying by Bates number German originals and corresponding translations.

## VI. Braun Has Refused to Make Witnesses Timely Available for Depositions in Boston.

As should be clear from the preceding discussion of Braun's Interrogatory Responses, Rayovac has had great difficulty obtaining even basic factual information from Braun through written discovery. Unfortunately, Rayovac has had the same difficulties obtaining discovery through depositions as well. Despite Rayovac's repeated attempts to schedule depositions this winter, the bottom line is that Braun is trying to force the following choice upon Rayovac—either (1) take all noticed depositions in Germany during a one week period at the end of April or (2) wait until undisclosed dates (perhaps) in May for depositions of Braun employees in the United States. The bargain that Braun is attempting to drive is contrary to the Scheduling Order

---

6 Indeed, the parties' agreement states that they will provide each other with certified translations of all ***documents*** that that party had translated for its own use. Braun's narrow interpretation of the word document cannot pass muster. Moreover, it is unclear how Braun is able to "use" a document that is comprised of both German and English pages.

and the law. It is also manifestly unfair in light of the facts. Rayovac must thus request relief from the Court.

Pursuant to the Scheduling Order, Braun agreed:

> Braun will make all of its witnesses who are employees of Braun available for deposition in the United States. With respect to foreign citizens and/or former employees of Braun, Braun will use its best efforts to make them available for deposition in the United States and/or without the need to resort to the formalities of the Hague Convention.

(*See* Ex. 1, Scheduling Order, dated 10/25/04, at 2). Despite making that agreement and choosing to file this case in Boston, Braun refuses to make any of its witnesses available for deposition in the United States in a reasonable timeframe. To date, Rayovac has requested depositions for Gebhard Braun, Dietrich Pahl, Jurgen Hoeser, Gilbert Greaves, Norbert Smetana, and a 30(b)(6) designee.[7] Nevertheless, Braun has steadfastly stalled in providing dates of availability for its witnesses in response to repeated requests by Rayovac, and now insists upon the "take it or leave it" approach to deposition scheduling discussed above. Rayovac requests an order directing Braun to provide dates of earliest availability of the noticed witnesses, in no event commencing later than April 25, 2005, for depositions in Boston.

Rayovac's efforts to take even a single deposition have involved the following:

- On January 26, 2005, Rayovac asked for deposition dates for Gebhard Braun, the named inventor of the patents-in-suit, and Dr. Dietrich Pahl, the individual Braun seeks to add as inventor.[8] (*See* Ex. 13, Ltr. From J. Shimota to L. Wolf, dated

---

7 Rayovac would like to notice depositions regarding Braun's damages theories. However, Braun's stonewalling on damages has precluded Rayovac from doing so yet.

8 Braun had offered deposition dates for Mr. Braun and Dr. Pahl in December 2004. Due to the holiday season, Rayovac was unable to take the dates offered. However, Rayovac indicated that it desired the depositions soon thereafter.

1/28/05.) In the same letter, Rayovac stated that it was agreeable to having the depositions take place in Germany in late February.[9] (*Id.*)

- Consistent with the parties' agreement, counsel for Rayovac also confirmed the parties' discussion that "it is likely to be most cost effective for both parties if depositions of Braun employees occur in the United States." (*Id.*)

- Braun then failed to provide deposition dates for Mr. Braun and Dr. Pahl in February as promised. Instead, Braun promised that it would provide dates for Mr. Braun and Dr. Pahl in late March or early April. (*See* Ltr. from J. Shimota to L. Wolf, dated 2/22/05, attached as Ex. 14.)

- On March 7, 2005, Rayovac served its First Notice of Rule 30(b)(6) Deposition and set the date for March 24, 2005 in Boston. (Ex. 15.)

- At the *Markman* Hearing on March 15, 2005, counsel for Braun asked Rayovac to postpone all depositions until the end of April.

- Rayovac responded by letter, indicting that such an approach was unacceptable, and in order to protect its rights, attached deposition notices for Mr. Braun, Dr. Pahl, Mr. Hoeser, and Mr. Greaves. (See Ex. 5, Ltr. from J. Shimota to L. Wolf, dated 3/16/05.) Rayovac also reiterated that deposition of Braun employees should take place in Braun's chosen forum. (*Id.*)

- Braun responded that the deposition of any witness would be "impossible" until April 28, 2005 due to a "two-week German Holiday around Easter."[10] (*See* Ex. 6, Ltr. from L. Wolf to J. Shimota, dated 3/21/05.)

- Braun then told Rayovac that, if the depositions were to occur at all in April, all the depositions had to take place in Germany. (See Email from L. Wolf to K. Ueland, dated 3/24/05, attached as Ex. 16.)

- Rayovac subsequently learned that there is no national two-week German Holiday around Easter. (See Ltr. from J. Shimota to L. Wolf, dated 3/24/05, attached as Ex. 17.) Rayovac requested confirmation that all noticed deponents are now on vacation.

- Braun responded on March 30, 2005, stating that it was mistaken in stating that Braun was closed for two weeks due to a national German Holiday. Without identifying any of the witnesses by name, Braun stated that "many of the witnesses" (but not all) were

---

9 Rayovac agreed to having the depositions in Germany in the false hope of receiving early dates and also because one of Mr. Braun or Dr. Pahl has a fear of flying.

10 In an effort to get depositions moving, Rayovac has agreed to dates for Mr. Braun and Dr. Pahl in Germany during the week of April 28.

unavailable during the two-week period, and continued to offer them beginning April 28, 2005—presumably in Germany. (*See* Ltr. from L. Wolf to J. Shimota, dated 3/30/05, Ex. 21.)

Having been strung along with false promises regarding the depositions of Mr. Braun and Dr. Pahl, Rayovac should not now be required to haggle with Braun over what is already set forth in the Scheduling Order. Pursuant to the Scheduling Order, Braun agreed that it would bring its employees to the United States for deposition.[11] Even if Braun had not so agreed, it would have been required to bring them to Boston. *See Minnesota Min. & Mfg. Co. v. Decar Chemical Prods. Co.*, 707 F. Supp. 793, 794-95 (W.D. Pa. 1989) ("First, as a rule depositions should be taken in the district where the action is being litigated…."); *Lexington Ins. Co. v. Commonwealth Ins. Co.*, No. C98-3477CRB(JCS), 1999 WL 33292943, at *9 (N.D. Cal. Sept. 17, 1999) (stating, as a general rule, "plaintiff will be required to make himself…available for examination in the district in which suit was brought."); *see also*, *Societe Internationale Pour Participations Industrielles Et Commerciales S.A. v. Clark*, 8 F.R.D. 565, 566 (D.D.C. 1948) (Court ordered that depositions of Plaintiff's managing agents be taken in the District of Columbia, where plaintiff filed suit, rather than in Switzerland where the agents resided). Braun's effort to further stonewall by refusing to bring its witnesses to the United States for at least 5 more weeks should be rejected by the Court.

Not only is the law against Braun, Braun's current position that Rayovac must take all of its depositions during the week of April 28th in Germany or wait even longer for uncertain dates

11 Braun has stated that Mr. Greaves no longer works for Braun. (See Ltr. from L. Wolf to J. Shimota, dated 3/21/05.) Nevertheless, Braun must use its "best efforts" to make him available for deposition in the United States. (*See* Scheduling Order, Ex. 1, at 2.)

is manifestly unfair.[12] Again, expert reports are due on May 25, 2005. It is unworkable to either jam Rayovac's deposition discovery into a single week or require Rayovac to risk not even deposing a single Braun employee prior to expert disclosures.[13] Indeed, insofar as Braun has indicated that its witnesses will require translators, it is likely not even possible to complete all of Rayovac's noticed depositions in a single week.

Surely Braun can make its employees available at some point in the next 3 weeks in the forum that Braun chose to instigate this lawsuit.[14] Accordingly, Rayovac requests that this Court order Braun to provide Rayovac with deposition dates for Mr. Hoeser, Mr. Smetana, and Braun's Rule 30(b)(6) designee(s) in Boston between now and April 25, 2005.

## VII. Braun Has Refused To Identify Third Party Documents Commingled With Its Production.

On November 22, 2004, Rayovac served a subpoena on Fish & Richardson, Braun's patent prosecution counsel, seeking documents related to the prosecution of the patents-in-suit. The same counsel for Braun responded on the behalf of Fish & Richardson, representing that "Fish & Richardson has previously provided plaintiff Braun GmbH ("Braun") with all relevant documents in its possession, custody and control." (*See* Fish & Richardson P.C.'s Response to Defendant's Rule 45 Subpoena For the Production of Documents, attached as Ex. 18, at 1.)

---

12 Braun has not yet requested any depositions. However, Rayovac suspects that Braun would complain mightily if Rayovac suggested the "efficiency" of Braun completing deposition discovery in a week.

13 Braun's response seems to be that the problem can be cured through rebuttal reports and supplementation of reports. That will only create a bigger mess, making another dispute over how to efficiently conduct expert discovery.

14 If all of Braun's employees were taking vacations in April, Braun should have told Rayovac that fact and scheduled at least some depositions in March (as Braun had, in fact, promised).

Counsel stated that Braun, in turn, had obtained documents from Fish & Richardson and produced them in Braun's initial response to document requests served on Braun. (*Id.*)

The issue is that counsel served Fish & Richardson's objections to the subpoena late on December 22, 2004. Accordingly, all of Fish & Richardson's objections to the subpoena are at least arguably waived. *See* FED. R. CIV. P. 45(c)(2)(B); *see also*, *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996) (stating that failure to file written objections to subpoena duces tecum within 14 days ordinarily results in waiver). Rayovac thus needs to know what Fish & Richardson produced in order to determine whether further action needs to be taken against them.

However, the documents ostensibly produced by Fish & Richardson bear the same bates label as all other Braun documents. Thus, Rayovac cannot determine what documents Fish & Richardson produced, much less what it may be holding back. Braun has refused Rayovac's simple request to identify by Bates number what documents were produced by Fish & Richardson. Accordingly, Rayovac requests that Braun be ordered to identify Bates Number (or location on Braun's Privilege Log) the documents Braun obtained from Fish & Richardson.

**CONCLUSION**

For the foregoing reasons, Rayovac respectfully requests that this Court grant its Motion to Compel on the terms and conditions set forth in this memorandum.

DATED: March 30, 2005

DWYER & COLLORA LLP

__/s/ Joseph E. Haviland________________
Joseph E. Haviland (BBO #643814)
DWYER & COLLORA LLP
600 Atlantic Avenue
Boston, MA 0210-1122
(617) 371- 1000
Facsimile: (617)371-1037

Mark A. Pals (admitted *pro hac vice*)
James A. Shimota (admitted *pro hac vice*)
Kevin S. Ueland (admitted *pro hac vice*)
James B. Coughlan (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
Aon Center
200 E. Randolph Dr.
Chicago, IL 60601
(312) 861-2000
Facsimile: (312) 861-2200
Attorneys for Defendant
Rayovac Corporation

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1

I, Kevin S. Ueland, hereby certify that I made a good faith attempt to meet and confer about the subject matter of the present motion with opposing counsel, but the parties were unable to reach agreement.

Respectfully Submitted,

/s/ Kevin Ueland_______________