## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRAUN GmbH, ) | Civil Action No. 03-CV-12428-WGY |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| REMINGTON PRODUCTS COMPANY, ) | |
| LLC, ) | |
| ) | |
| Defendant. ) | |

## BRAUN GMBH'S ANSWERS TO REMINGTON'S FIRST SET OF INTERROGATORIES

Pursuant to Federal Rule of Civil Procedure 33, plaintiff Braun GmbH ("Braun") answers and objects to defendant Remington Products Company, LLC's ("Remington") First Set of Interrogatories (the "Interrogatories") as follows:

## GENERAL OBJECTIONS

These general objections are hereby incorporated into each specific objection and response below and are not repeated therein.

1.      Braun objects to the Interrogatories and to each individual interrogatory, to the extent that they seek information protected from discovery by the attorney-client privilege, the attorney-work-product doctrine, or any other applicable privilege. Any reference to an attorney's name herein is not, and is not intended as, a waiver of any applicable attorney-client or work-product privilege.

9542468_1

2.     Braun objects to the Interrogatories and to each individual interrogatory, to the extent that they seek information that is outside the scope of Braun's own first-hand knowledge or the identification of documents that are not within Braun's possession, custody or control.

3.     Braun objects to the Interrogatories and to each individual interrogatory, to the extent that they seek to impose obligations or burdens upon Braun beyond those required and/or permitted by the applicable provisions of the Federal Rules of Civil Procedure.

4.     Braun objects to the Interrogatories and to each individual interrogatory, to the extent that they are vague, ambiguous, overly broad, unduly burdensome, lack sufficient particularity and seek identification of information and/or documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

5.     Braun objects to the Interrogatories and to each individual interrogatory, to the extent that they require the collection of information that is contained in public records or are otherwise generally available to the public, as this information is equally available to Remington.

6.     Braun objects to the Interrogatories and to each individual interrogatory, to the extent that they fail to define a relevant time period.

7.     The objections and responses herein are made without waiver of and with specific preservation of:

a.     All objections as to competency, relevancy, materiality, privilege and admissibility of the information or the subject matter thereof, as evidence for any purpose and any proceeding in this action (including trial) and in other actions;

b.      The right to object on any grounds at any time to a demand for further responses to these or any other discovery requests or other discovery proceedings involved or related to the subject matter of the discovery to which information or documents are provided; and

c.      The right at any time to review, correct, add to, supplement or clarify any of these responses.

## ANSWERS TO SPECIFIC INTERROGATORIES

### INTERROGATORY NO. 1:

For each Remington product that Braun alleges infringes either of the Patents-in-Suit, and for each of those Patents-in-Suit, provide the following information:

A.      specify each claim of the Patents-in-Suit alleged by Braun to be literally infringed, and provide a claim chart specifying the particular structure or part of each such product that allegedly corresponds to each element and limitation of each apparatus claim alleged to be infringed, or the specific step in the use of each such product that allegedly corresponds to each step of each method claim alleged to be infringed;

B.      specify each claim of the Patents-in-Suit alleged by Braun to be infringed under the doctrine of equivalents, and provide a claim chart specifying the particular structure or part of each such product that allegedly corresponds under the doctrine of equivalents to each element and limitation of each apparatus claim alleged to be infringed, or the specific step in the use of each such product that allegedly corresponds under the doctrine of equivalents to each step of each method claim alleged to be infringed. For each element that is alleged to be present under the doctrine of equivalents, Braun's explanation should include the bases for Braun's contention that the differences between the claim element and the accused product are insubstantial and that the element and the accused product perform substantially the same function in substantially the same way to achieve substantially the same result; and

C.      in a separate column of each of the preceding charts, for each claim element that Braun contends should be construed by the Court, specify the construction Braun contends attaches to each element, and identify all intrinsic and extrinsic evidence alleged by Braun to support each such construction.

## ANSWER TO INTERROGATORY NO. 1:

In addition to the General Objections set forth above, Braun objects to Interrogatory No. 1 on the ground that it is premature and seeks the bases for contentions at the beginning of the discovery period and before Defendant has responded to discovery requests. Braun further objects to Interrogatory No. 1 to the extent it seeks information protected from disclosure by the attorney-client privilege or the work product doctrine. In addition, to the extent that Interrogatory No. 1 calls for disclosure of experts, Braun objects on the ground that it is premature. Braun will make expert disclosures as required by the Federal Rules of Civil Procedure and all rulings by the Court at the appropriate time. Braun also objects to Interrogatory No. 1 on the ground that it seeks a legal conclusion. Subject to these objections and to later modification in light of information obtained through discovery or otherwise, the claim interpretation process that will be conducted by the court and other steps in the subsequent conduct of this action, Braun states that Remington has infringed at least the following claims: claim 1 of the '556 patent, and claims 11, 14, and 18 of the '328 patent. Claim charts for these claims are attached hereto as Exhibits 1 and 2.

## INTERROGATORY NO. 2:

For each of the asserted claims identified in response to Interrogatory No. 1, state:

A.     the earliest date of conception of the subject matter of each claim, the earliest date the subject matter of the claim was actually reduced to practice, the identity of all persons in possession of information or knowledge corroborating or supporting those dates of conception and reduction to practice; and

B.     identify all documents, including laboratory notebook pages, project and technical reports, memoranda, physical samples and devices or any other evidence corroborating or supporting such conception and such reduction to practice.

## ANSWER TO INTERROGATORY NO. 2:

In addition to the General Objections set forth above, Braun objects to Interrogatory No. 2 on the ground that it is premature. Braun further objects to Interrogatory No. 2 to the extent it seeks information protected from disclosure by the attorney-client privilege or the work product doctrine. Braun also objects to Interrogatory No. 2 on the ground that it seeks a legal conclusion. Subject to these objections and to later modification in light of information obtained through discovery or otherwise, Braun states as follows:

Claim 1 of the '556 patent was conceived on or before July 22, 1993 and reduced to practice on or before July 22, 1993. Claims 11 and 14 of the '328 patent were conceived on or before November 1992 and reduced to practice on or before November 1992. Claim 18 of the '328 patent was conceived on or before July 22, 1993, and reduced to practice on or before July 22, 1993.

Persons with knowledge of the aforementioned information include: Dr. Dietrich Pahl, Mr. Gebhard Braun, Wolfgang Vorbeck, and Peter Sartorius.

The documents will be produced as part of Braun's initial disclosures once the Court has entered the Stipulated Protective Order.

## INTERROGATORY NO. 3:

For each of the Patents-in-Suit, identify the earliest date upon which any embodiment of any asserted claim was: (1) offered for sale in the United States; (2) sold in the United States; (3) publicly used in the United States; (4) offered for sale anywhere in the world; (5) sold anywhere in the world; and (5) publicly used anywhere in the world. Further identify all documents evidencing the advertising and marketing efforts associated with the earliest offers for sale, sales, and public uses identified herein.

## ANSWER TO INTERROGATORY NO. 3:

In addition to the General Objections set forth above, Braun objects to Interrogatory No. 3 to the extent it seeks information protected from disclosure by the attorney-client privilege or

the work product doctrine. Braun also objects to Interrogatory No. 3 on the ground that it seeks a legal conclusion. Subject to these objections and to later modification in light of information obtained through discovery or otherwise, Braun states that embodiments of the claims listed in Response to Interrogatory No. 1 were (1) first offered for sale in the United States in June 2000; (2) first sold in the United States in July 2000; (3) first publicly used in the United States in January 2000; (4) first offered for sale anywhere in the world in September 1999; (5) first sold anywhere in the world in September 1999; and (5) first publicly used anywhere in the world in July 1999.

The documents the advertising and marketing efforts associated with the earliest offers for sale, sales, and public uses identified herein are: Gillette's internal marketing and sales reports, Braun's internal marketing and sales reports, Market Share Trend Reports, and market research studies.

**INTERROGATORY NO. 4:**

Identify each product developed, manufactured, sold or offered for sale by Braun that embodies any element of any asserted claims identified in response to Interrogatory No. 1, including without limitation, all models, prototypes, and modifications, including the name and version number of the product and the element and claim embodied.

**ANSWER TO INTERROGATORY NO. 4:**

In addition to the General Objections set forth above, Braun objects to Interrogatory No. 4 on the ground that it is unduly burdensome and unlikely to lead to the discovery of admissible evidence. Subject to these objections, Braun states that the products embodying elements of the asserted claims identified in response to Interrogatory No. 1 are listed on the attached Exhibit 3.

**INTERROGATORY NO. 5:**

State in detail Braun's contentions regarding the following, including all legal and factual bases for such contentions: (a) the level of ordinary skill in the art to which the subject matter of each of the Patents-in-Suit pertains and (b) any objective indicia of nonobviousness that Braun contends supports the validity of the Patents-in-Suit.

**ANSWER TO INTERROGATORY NO. 5:**

In addition to the General Objections set forth above, Braun objects to Interrogatory No. 5 on the ground that it is premature, unduly burdensome and unlikely to lead to the discovery of admissible evidence. Braun also objects to Interrogatory No. 5 on the ground that it seeks a legal conclusion. Subject to these objections, Braun states that the level of ordinary skill in the art to which the subject matter of each of the patents pertain is experience in design in the dry shaving industry. Braun further states that the long felt industry need for the patented inventions and the commercial success of Braun's products embodying these patents are objective indicia of nonobviousness, supporting the validity of the patents. With regard to the long felt need, no other commercial product existed in the dry shaver industry capable of easily cleaning the shaving head of a dry shaver. Prior to the patented inventions, cleaning of the shaving head of a dry shaver was accomplished by manually brushing debris from the shaver head or by disassembly of the shaver head and placement of the cutter in a beaker, which could be shaken. The patented inventions solved the problems associated with these and other methods. The commercial success of the products embodying these patents is further evidence of the nonobviousness of the inventions.

**INTERROGATORY NO. 6:**

Provide with particularity, the factual and legal bases for Braun's contentions as to the amount of damages due to Braun if Remington is found to infringe one or both of the Patents-in-Suit, including, but not limited to, the proper royalty rate, amount of lost profits due and/or increased damages for willfulness; further identify the evidentiary support (including all documents and identification of witnesses) for any facts identified.

## ANSWER TO INTERROGATORY NO. 6:

In addition to the General Objections set forth above, Braun objects to Interrogatory No. 6 on the ground that it is premature and seeks the bases for contentions at the beginning of the discovery period and before Defendant has responded to discovery requests. Subject to these objections and to later supplementation of this response in light of information obtained through discovery or otherwise, Braun declines to answer Interrogatory No. 6 at this time.

## INTERROGATORY NO. 7:

State whether Braun contends that the alleged infringement of the Patents-in-Suit by Remington is or was willful and, if so, describe the totality of the circumstances that Braun alleges support such a contention.

## ANSWER TO INTERROGATORY NO. 7:

In addition to the General Objections set forth above, Braun objects to Interrogatory No. 7 on the grounds that it seeks a response that cannot be fully articulated until the discovery process has been completed. Braun further objects to Interrogatory No. 7 to the extent it calls for confidential information. Braun will provide additional information once a protective order has been entered in this case. Subject to these objections and modifications in light of further discovery or otherwise, Braun states as follows: there are facts showing infringement described in Response to Interrogatory No. 1 and Braun notified Remington that its activities infringed the patents-in-suit in December 2003. On information and belief, Braun states that Remington is aware of Braun's patents, and in particular Braun's patents in the area of cleaning devices for dry shavers. Despite this awareness, Remington has entered the market with an infringing device in October 2003. Further in August 2004, after Braun filed the present action, Remington introduced a foil version of its infringing product as a further act of willful infringement.

**INTERROGATORY NO. 8:**

For each of the Patents-in-Suit, to the extent that Braun contends that Remington is liable for infringement under 35 U.S.C. §271(b) or (c), identify: (1) each and every third party Braun contends has directly infringed or is directly infringing; (2) for each third party identified, all facts Braun contends show a specific intent by Remington to induce infringement; (3) for each third party identified, all facts Braun contends show any affirmative step(s) taken by Remington to encourage infringement; (4) all facts Braun contends show that Remington especially made or adapted any product for use in a direct infringement; and (5) all facts Braun contends show the absence of substantial noninfringing uses for Remington Products.

**ANSWER TO INTERROGATORY NO. 8:**

In addition to the General Objections set forth above, Braun objects to Interrogatory No. 8 on the grounds that it seeks a response that cannot be fully articulated until the discovery process has been completed. Subject to these objections and modifications in light of further discovery or otherwise, Braun states as follows: Remington is selling, offering for sale, and manufacturing products that infringe Braun's patents. Retail sellers of these products as well as consumers of these products are also direct infringers of Braun's patents. By making these products available to these third parties, Remington is liable under 35 U.S.C. §271(b) or (c).

**INTERROGATORY NO. 9:**

For each of the Patents-in-Suit, identify all facts which Braun contends demonstrate compliance with the marking provisions of 35 U.S.C. §287.

**ANSWER TO INTERROGATORY NO. 9:**

Braun states that it does not mark its products pursuant to the marking provisions of 35 U.S.C. §287.

**INTERROGATORY NO. 10:**

Identify all licenses, covenants not to sue, releases, or any other agreements between Braun and any third party transferring any rights to any of the Patents-in-Suit.

## ANSWER TO INTERROGATORY NO. 10:

Braun state that there are no licenses, covenants not to sue, releases or any other agreements between Braun and any third party transferring any rights to any of Braun's patents at issue in this action.

Signed under the penalty of perjury this 25 day of October 2004.

for BRAUN GmbH

**ppa. U. Sievers**

Objections made by:

William L. Patton (BBO #391640)
Dalila Argaez Wendlandt (BBO #639280)
Lesley F. Wolf (BBO #651199)
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
(617) 951-7000

Attorneys for Plaintiff

Dated: October 25, 2004

9542468_1                              -11-

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2004, I caused a copy of the Response to Remington's First Set of Interrogatories to be served as follows:

> By Hand
> Thomas E. Dwyer, Jr.
> Dwyer & Collora, LLP
> 600 Atlantic Avenue
> Boston, MA 02110-1122
>
>
> Mark A. Pals
> Kirkland & Ellis, LLP
> Aon Center
> 200 E. Randolph Drive
> Chicago, IL 60601

_____
Lesley F. Wolf

**EXHIBIT 1**

| Claim 1 of the '556 Patent | Braun's Claim Construction | Remington Titanium Smart System – Rotary Shaver |
|---|---|---|
| A cleaning device for cleaning a shaving head of a dry shaving apparatus, said cleaning device comprising | A device for cleaning the shaving head of a dry shaving apparatus, comprising<br><br>Source: '556 Patent generally and col. 1, lines 5-10 ("This invention relates to a cleaning device for cleaning the shaving head of a dry shaving apparatus, with a cradle structure adapted to receive therein the shaving head, as well as a device adapted to be drive by a motor for feeding the cleaning fluid"), Figures 1-3 (device 5). | The Titanium Smart System – Rotary Shaver is a device for cleaning the shaving head of a dry rotary shaver. |
| A cradle structure adapted to receive therein the shaving head; | A cradle structure that receives the shaving head of the dry shaving apparatus;<br><br>Source: '556 Patent, col. 1, lines 6-7 ("a cradle structure adapted to receive therein the shaving head"); col. 3, lines 21-25 ("Still further it is advantageous that the shaving apparatus is receivable in a cradle structure that is open towards atmosphere and is supplied with cleaning fluid from the outwardly closed cleaning fluid container by means of the feed pump."); col. 4, lines 24-29 ("a cradle structure 7 which is configured as a cleaning dish, is slightly dished inwardly, thus conforming approximately to the outer counter of the shaving head 3 of the shaving apparatus 1, and holds only as much cleaning fluid as is necessary for the particular cleaning operation"), Figures 1-2, 6 (cradle 7). | The Titanium Smart System – Rotary Shaver includes a cradle structure which receives the shaving head of the dry rotary shaver. |
| A cleaning fluid container separate from the cradle structure for holding a cleaning fluid; | A container for holding cleaning fluid that is separate from the cradle structure;<br><br>Source: '556 Patent, col. 1, lines 7-8 ("a cleaning fluid container holding a cleaning fluid"); col. 3, lines 31-34 ("The remaining cleaning fluid is held in the cleaning fluid container which is closed relative to atmosphere, thus preventing the volatile substances admixed to the cleaning fluid from vaporizing too rapidly."); col. 4, lines 32-24 ("whilst a cleaning fluid container 61, as subsequently described with reference to the embodiment of FIG. 7, is closed"); col. 8, lines 14-25 ("A cleaning fluid container 61 is configured as a cartridge (FIGS. 7 to 9) and includes an outlet port 63 communicating with the cradle 7 through the conduit 64. In this manner, the cleaning circuit is closed. The container 61 inlet and outlet ports 62, 63 shown in FIG. 7 may also be provided at a bottom 67 of the cleaning fluid container 61, enabling the cleaning fluid container 61 to be connected to suitable conduits from above. It thereby [is] achieved that a permanent flow of cleaning fluid is delivered from the cleaning fluid container 61 to the intake means of the pump 23, causing the pump to draw | The Titanium Smart System – Rotary Shaver contains a container for holding cleaning fluid that is separate from the cradle structure. |

| Claim 1 of the '556 Patent | Braun's Claim Construction | Remington Titanium Smart System – Rotary Shaver |
|---|---|---|
| | only cleaning fluid, rather than air, when put into operation."); col. 8, lines 40-43 ("The cleaning fluid container 61 or cartridge shown in FIGS. 7 to 9 is comprised of a cylindrical casing 101 having a bottom 67 and a lid 72 in which the inlet port 62 and the outlet port 63 as well as the filter 24 are provided."); Figures 1-3, 6-7 (container 61); | |
| A filter, and | A filter; Source: '556 Patent, Figures 3, 6-7 (filter 24); | The Titanium Smart System – Rotary Shaver contains a filter. |
| A fluid feed mechanism which feeds the cleaning fluid after it passes through the filter to the cradle structure during cleaning, | A mechanism that feeds cleaning fluid, after it passes through a filter, to the cradle structure during cleaning. Source: '556 Patent, col. 1, lines 8-10 ("as well as a device adapted to be driven by a motor for feeding the cleaning fluid"); col. 3, lines 21-25 ("Still further it is advantageous that the shaving apparatus is receivable in a cradle structure that is open towards atmosphere and is supplied with cleaning fluid from the outwardly closed cleaning fluid container by means of the feed pump."); col. 3, lines 29-31 ("The cradle structure invariably contains only as much fluid as is necessary for cleaning the shaving head."); col. 4, lines 37-38 ("During the cleaning cycle, cleaning fluid 40 is continuously flushed through cradle 7."); col. 6, lines 13-17 ("As becomes apparent from FIG. 1, the connection means 19 is in communication with the collecting reservoir 65 to which an intake means 48 for the feed pump 23 is connected, the pump delivering the cleaning fluid through a conduit 50 to a filter means 24 according to FIG. 7."); col. 6, lines 30-34 ("Operation of the switching means 9 causes the feed pump 23 to be driven which then delivers cleaning fluid to the cradle 7 and to the shaving head 3 for a predetermined period of time, the fluid dislodging all of the hair dust 75 in the shaving head 3 (see segment 30 to 31 in FIG. 4)."); Figures 2-3, 6 (pump 23); | The Titanium Smart System – Rotary Shaver contains a pump that feeds cleaning fluid, after it passes through the filter, to the cradle structure during cleaning. |
| Said container and filter being separable from the cradle structure as a unit. | The cleaning fluid container and filter are separable from the cradle structure as a unit. Source: '556 Patent, col. 1, line 63 – col. 2, line 7 ("According to the present invention, this object is accomplished in that the cleaning fluid container is separable from the cleaning device and includes a filter means integrally formed therewith. Because the filter is made integrally with the cleaning fluid container, | The Titanium Smart System – Rotary Shaver contains a cleaning fluid container and filter that are separable from the cradle structure as a unit. |

956721_1

| Claim 1 of the '556 Patent | Braun's Claim Construction | Remington Titanium Smart System – Rotary Shaver |
|---|---|---|
| | the container is readily removable together with the cleaning fluid after the cleaning fluid is used up or after the filter is largely clogged with dirt particles, such replacement merely involving the step of detaching the container from the feed pump. A new cleaning fluid container including a new filter can then be inserted in the wall mount receiving the dry shaving apparatus and be connected with the feed pump."); col. 8, lines 59-63 ("When the filter 24 is no longer useable, the cleaning fluid container 61 is detached from the conduits 50, 64, and a new one is substituted."). | |

-3-

**EXHIBIT 2**

| Claim 11 of the '328 Patent | Braun's Claim Construction | Remington Titanium Smart System – Rotary Shaver |
|---|---|---|
| A cleaning device comprising | A cleaning device for use with an electric shaving apparatus, comprising<br><br>Source: '328 Patent generally and col. 1, lines 4-8 ("This invention relates to a cleaning device, with a cradle structure receiving the shaving head of a shaving apparatus, as well as at least one cleaning fluid container and a device adapted to be driven by a motor for feeding the cleaning fluid."); col. 4, lines 37-38 ("The cleaning device is designed for use with all electric shaving apparatus."); Figures 1-3 (device 5). | The Titanium Smart System – Rotary Shaver is a cleaning device for cleaning the shaving head of a dry rotary shaver. |
| A cradle structure adapted to receive a shaving head of a shaving apparatus, | A cradle structure able to receive the shaving head of a shaving apparatus<br><br>Source: '328 Patent, col. 1, lines 4-5 ("a cradle structure receiving the shaving head of a shaving apparatus"); col. 2, lines 11-15 ("According to the present invention, this object is accomplished in that the cradle structure receiving the shaving head is arranged separately from the cleaning fluid container, and that the cleaning fluid is fed from the container to perform the cleaning action."); col. 6, lines 17-21 ("Being slightly dished inwardly, the cradle 7 conforms approximately to the outer contour of the shaving head 3 of the shaving apparatus 1, and it holds only as much cleaning fluid as is necessary for the respective cleaning operation."); col. 6, lines 23-24 ("the cradle 7, is configured as a cleaning system open to atmosphere"); Figures 1-2, 6 (cradle 7). | The Titanium Smart System – Rotary Shaver contains a cradle structure which is designed to receive the shaving head of the dry rotary shaver. |
| A cleaning fluid container, | A container for holding cleaning fluid;<br><br>Source: '328 Patent, col. 6, lines 24-27 ("whilst the cleaning fluid container 6 may be either open or, as will be subsequently described with reference to an embodiment (FIG. 7), partially or entirely closed."); Figures 1-3 (container 6); Figures 6-7 (container 61). | The Titanium Smart System – Rotary Shaver contains a container for holding cleaning fluid. |
| A feed device for feeding cleaning fluid to said cradle structure, | A mechanism that feeds cleaning fluid to the cradle structure;<br><br>Source: '328 Patent, col. 2, lines 16-18 ("With the feed pump, a continuous supply of cleaning fluid can be fed to the shaving head received in the separate cradle until the shaving head is completely clean."); col. 2, lines 32-35 ("Further it is advantageous that the cradle or the shaving head are adapted to be supplied with cleaning fluid from the cleaning fluid container by means of a feed pump for a predetermined period of time . . . ."); col. 5, lines 9-14 ("and the feed pump | The Titanium Smart System – Rotary Shaver contains a pump that feeds cleaning fluid to the cradle structure. |

| Claim 11 of the '328 Patent | Braun's Claim Construction | Remington Titanium Smart System – Rotary Shaver |
|---|---|---|
| | for supplying cleaning fluid to the shaving head is turned on for a first period of time of between 3 and 20 seconds, during which time the cleaning fluid is continuously conveyed to the cradle through a filter means as the cleaning cycle proceeds"); col. 6, lines 30-34 ("During the cleaning cycle, cleaning fluid is continuously flushed through cradle 7."); col. 8, lines 23-27 ("Operation of the switching means 9 causes the feed pump 23 to be driven which then delivers cleaning fluid 40 to the cradle 7 and to the shaving head 3 for a predetermined period of time, the fluid dislodging all of the hair dust 75 in the shaving head 3 (see segment 30 to 31 in FIG. 4)"); Figures 2-3, 6 (pump 23); | |
| Said cradle structure being arranged above a fluid level of the cleaning fluid in said cleaning fluid container during the feeding of said cleaning fluid to said cradle structure, and | During cleaning, the cradle structure is above the fluid level of the fluid in the container;<br><br>Source: '328 Patent, col. 2, lines 44-49 ("It is still further advantage that the cradle is arranged outside the cleaning fluid and/or above the fluid level of the cleaning fluid held in the cleaning fluid container, and that at least the cradle and/or the cleaning fluid container are permanently open towards the outside; that is, to atmosphere."). | The Titanium Smart System – Rotary Shaver contains a cradle structure that is above the fluid level of the cleaning fluid in the cleaning fluid container. |
| A drying device. | A device to dry the shaver head;<br><br>Source: '328 Patent, col. 2, lines 39-343("It is another advantage that the cradle for receiving the shaving head is associated with an air-drying device adapted to be activated by an electric arrangement after the cleaning fluid has been drained from the cradle to the cleaning fluid container."); col. 5, lines 22-26 ("the drying device and/or the heating means of the drying device is turned on for the duration of the second and/or the third period of between 3 and 30 minutes, air being supplied to the shaving head to effect a drying action"); col. 34-39 ("The impeller 16 sits in an impeller casing 17 communicating through an opening 18 with the space above the cradle 7, and it directs a continuous stream of hot air heated by a heating means, not shown in the drawings, against the shaving head 3 to effect a drying action following the cleaning operation."); col. 9, lines 50-56 ("Being automatically inserted in the circuit at point 33, the impeller 16 is turned on with or without heating means and driven by the electric motor 13, thus delivering dry air to the shaving head 3 for a predetermined period of time (see segment d between points 33 and 34)."); Figure 1 (impeller 16, casing 17, and | The Titanium Smart System – Rotary Shaver contains a drying device to dry the shaving head of the electric shaver apparatus. |

| Claim 11 of the '328 Patent | Braun's Claim Construction | Remington Titanium Smart System – Rotary Shaver |
|---|---|---|
| | heating means not shown in the drawings). | |

| Claim 14 of the '328 Patent | Braun's Claim Construction | Remington Titanium Smart System – Rotary Shaver |
|---|---|---|
| A cleaning device comprising | A cleaning device for use with an electric shaving apparatus, comprising<br><br>Source: '328 Patent generally and col. 1, lines 4-8 ("This invention relates to a cleaning device, with a cradle structure receiving the shaving head of a shaving apparatus, as well as at least one cleaning fluid container and a device adapted to be driven by a motor for feeding the cleaning fluid."); col. 4, lines 37-38 ("The cleaning device is designed for use with all electric shaving apparatus"); Figures 1-3 (device 5). | The Titanium Smart System – Rotary Shaver is a cleaning device for cleaning the shaving head of a dry rotary shaver. |
| A cradle structure adapted to receive a shaving head of a shaving apparatus, said cradle structure being permanently open to atmosphere, | A cradle structure that is able to receive the shaving head of a shaving apparatus and is open to the atmosphere;<br><br>Source: '328 Patent, col. 1, lines 4-5 ("a cradle structure receiving the shaving head of a shaving apparatus"); col. 2, lines 11-15 ("According to the present invention, this object is accomplished in that the cradle structure receiving the shaving head is arranged separately from the cleaning fluid container, and that the cleaning fluid is fed from the container to perform the cleaning action"); col. 6, lines 17-21 ("Being slightly dished inwardly, the cradle 7 conforms approximately to the outer contour of the shaving head 3 of the shaving apparatus 1, and it holds only as much cleaning fluid as is necessary for the respective cleaning operation."); col. 6, lines 23-24 ("the cradle 7, is configured as a cleaning system open to atmosphere"); Figures 1-2, 6 (cradle 7). | The Titanium Smart System – Rotary Shaver contains a cradle structure which is designed to receive the shaving head of the dry rotary shaver and the cradle structure is permanently open to the atmosphere. |
| A cleaning fluid container, | A container for holding cleaning fluid;<br><br>Source: '328 Patent, col. 6, lines 24-27 ("whilst the cleaning fluid container 6 may be either open or, as will be subsequently described with reference to an embodiment (FIG. 7), partially or entirely closed."); Figures 1-3 (container 6); Figures 6-7 (container 61). | The Titanium Smart System – Rotary Shaver contains a container for holding cleaning fluid. |
| A feed device for feeding cleaning fluid to said cradle structure, | A mechanism that feeds cleaning fluid to the cradle structure;<br><br>Source: '328 Patent, col. 2, lines 16-18 ("With the feed pump, a continuous supply of cleaning fluid can be fed to the shaving head received in the separate cradle until the shaving head is completely clean."); col. 2, lines 32-35 ("Further it is advantageous that the cradle or the shaving head are adapted to be supplied | The Titanium Smart System – Rotary Shaver contains a pump that feeds cleaning fluid to the cradle structure. |

-4-

| Claim 14 of the '328 Patent | Braun's Claim Construction | Remington Titanium Smart System – Rotary Shaver |
|---|---|---|
| | with cleaning fluid from the cleaning fluid container by means of a feed pump for a predetermined period of time . . ."); col. 5, lines 9-14 ("and the feed pump for supplying cleaning fluid to the shaving head is turned on for a first period of time of between 3 and 20 seconds, during which time the cleaning fluid is continuously conveyed to the cradle through a filter means as the cleaning cycle proceeds"); col. 6, lines 30-34 ("During the cleaning cycle, cleaning fluid is continuously flushed through cradle 7."); col. 8, lines 23-27 ("Operation of the switching means 9 causes the feed pump 23 to be driven which then delivers cleaning fluid 40 to the cradle 7 and to the shaving head 3 for a predetermined period of time, the fluid dislodging all of the hair dust 75 in the shaving head 3 (see segment 30 to 31 in FIG. 4)"); Figures 2-3, 6 (pump 23); | |
| Said cradle structure being arranged above a fluid level of the cleaning fluid in said cleaning fluid container during the feeding of said cleaning fluid to said cradle structure. | During cleaning, the cradle structure is above the fluid level of the fluid in the container;<br><br>Source: '328 Patent, col. 2, lines 44-49 ("It is a still further advantage that the cradle is arranged outside the cleaning fluid and/or above the fluid level of the cleaning fluid held in the cleaning fluid container, and that at least the cradle and/or the cleaning fluid container are permanently open towards the outside; that is, to atmosphere."). | The Titanium Smart System – Rotary Shaver contains a cradle structure that is above the fluid level of the cleaning fluid in the cleaning fluid container. |

| Claim 18 of the '328 Patent | Braun's Claim Construction | Remington Titanium Smart System – Rotary Shaver |
|---|---|---|
| A cleaning device comprising | A cleaning device for use with an electric shaving apparatus, comprising<br><br>Source: '328 Patent generally and col. 1, lines 4-8 ("This invention relates to a cleaning device, with a cradle structure receiving the shaving head of a shaving apparatus, as well as at least one cleaning fluid container and a device adapted to be driven by a motor for feeding the cleaning fluid."); col. 4, lines 37-38 ("The cleaning device is designed for use with all electric shaving apparatus"); Figures 1-3 (device 5). | The Titanium Smart System – Rotary Shaver is a cleaning device for cleaning the shaving head of a dry rotary shaver. |
| A cradle structure adapted to receive a shaving head of a shaving apparatus, | A cradle structure able to receive the shaving head of a shaving apparatus and is open to the atmosphere;<br><br>Source: '328 Patent, col. 1, lines 4-5 ("a cradle structure receiving the shaving head of a shaving apparatus"); col. 2, lines 11-15 ("According to the present invention, this object is accomplished in that the cradle structure receiving the shaving head is arranged separately from the cleaning fluid container, and that the cleaning fluid is fed from the container to perform the cleaning action"); col. 6, lines 17-21 ("Being slightly dished inwardly, the cradle 7 conforms approximately to the outer contour of the shaving head 3 of the shaving apparatus 1, col. 6, lines 23-24 ("the cradle 7, is configured as a cleaning system open to atmosphere"); Figures 1-2, 6 (cradle 7). | The Titanium Smart System – Rotary Shaver contains a cradle structure which is designed to receive the shaving head of the dry rotary shaver. |
| A cleaning fluid container, | A container for holding cleaning fluid;<br><br>Source: '328 Patent, col. 6, lines 24-27 ("whilst the cleaning fluid container 6 may be either open or, as will be subsequently described with reference to an embodiment (FIG. 7), partially or entirely closed."); Figures 1-3 (container 6); Figures 6-7 (container 61) | The Titanium Smart System – Rotary Shaver contains a container for holding cleaning fluid. |
| A feed device for feeding cleaning fluid to said cradle structure, | A mechanism that feeds cleaning fluid to the cradle structure;<br><br>Source: '328 Patent, col. 2, lines 16-18 ("With the feed pump, a continuous supply of cleaning fluid can be fed to the shaving head received in the separate cradle until the shaving head is completely clean."); col. 2, lines 32-35 ("Further it is advantageous that the cradle or the shaving head are adapted to be supplied with cleaning fluid from the cleaning fluid container by means of a feed pump | The Titanium Smart System – Rotary Shaver contains a pump that feeds cleaning fluid to the cradle structure. |

-6-

| Claim 18 of the '328 Patent | Braun's Claim Construction | Remington Titanium Smart System – Rotary Shaver |
|---|---|---|
| | for a predetermined period of time . . . ."); col. 5, lines 9-14 ("and the feed pump for supplying cleaning fluid to the shaving head is turned on for a first period of time of between 3 and 20 seconds, during which time the cleaning fluid is continuously conveyed to the cradle through a filter means as the cleaning cycle proceeds"); col. 6, lines 30-34 ("During the cleaning cycle, cleaning fluid is continuously flushed through cradle 7."); col. 8, lines 23-27 ("Operation of the switching means 9 causes the feed pump 23 to be driven which then delivers cleaning fluid 40 to the cradle 7 and to the shaving head 3 for a predetermined period of time, the fluid dislodging all of the hair dust 75 in the shaving head 3 (see segment 30 to 31 in FIG. 4)"); Figures 2-3, 6 (pump 23); | |
| Said cradle structure being arranged above a fluid level of the cleaning fluid in said cleaning fluid container during the feeding of said cleaning fluid to said cradle structure, and | During cleaning, the cradle structure is above the fluid level of the fluid in the container; Source: '328 Patent, col. 2, lines 44-49 ("It is a still further advantage that the cradle is arranged outside the cleaning fluid and/or above the fluid level of the cleaning fluid held in the cleaning fluid container, and that at least the cradle and/or the cleaning fluid container are permanently open towards the outside; that is, to atmosphere."). | The Titanium Smart System – Rotary Shaver contains a cradle structure that is above the fluid level of the cleaning fluid in the cleaning fluid container. |
| A bracket for insertion of the shaving apparatus therein. | A bracket into which the shaving apparatus can be inserted. Source: '328 Patent, col.3, lines 60-63 ("Still further, it is advantageous that the shaving apparatus is insertable into a supporting structure configured as a bracket or a wall mount . . . ."); Figures 1-3 (bracket 10) | The Titanium Smart System – Rotary Shaver contains a bracket into which the rotary shaver apparatus is insertable. |

-7-

**EXHIBIT 3**

| Article No. | Type No. | Product Name and Description | Market Code | Valid from |
|---|---|---|---|---|
| 5301700 | 5301 | Clean&Charge for Syncro, black/h.blue | MN | 01.09.1999 |
| 5301745 | 5301 | Clean&Charge for Syncro, black/h.blue | NA | 01.07.2000 |
| 5301750 | 5301 | Clean&Charge for Syncro, black/h.blue | J | 01.09.1999 |
| 5301918 | 5301 | Clean&Charge for Syncro, black/d.blue | MN | 01.05.2002 |
|  |  |  |  |  |
| 5302800 | 5302 | Clean&Charge for Integral 5441 | MN | 01.09.2001 |
|  |  |  |  |  |
| 5325800 | 5325 | Clean&Charge for XP 5790 |  | 01.02.2003 |
|  |  |  |  |  |
| 5485700 | 5485 | 5441, black/silver, + Clean&Charge (5302) | MN | 01.05.2001 |
| 5485705 | 5485 | 5441, black/silver, + Clean&Charge (5302) Clamshell | MN | 01.09.2001 |
| 5485730 | 5485 | 5441, black/silver, + Clean&Charge (5302) | GB | 01.05.2001 |
| 5485746 | 5485 | 5441, black/silver, + Clean&Charge (5302) | NA | 01.07.2002 |
| 5485747 | 5485 | 5441, black/silver, + Clean&Charge (5302) | NA | 01.02.2002 |
| 5485750 | 5485 | 5441, black/silver, + Clean &Charge (5302) | J | 01.03.2001 |
| 5485751 | 5485 | 5442, silver/black, + Clean&Charge (5302) | J | 01.11.2001 |
| 5485773 | 5485 | 5441, black/silver, + Clean&Charge (5302) | KOR | 01.11.2001 |
|  |  |  |  |  |
| 5491700 | 5491 | 7570, silver, + Clean&Charge (5301) | MN | 01.09.1999 |
| 5491701 | 5491 | 7680, titanium, + Clean&Charge (5301918) | MN | 01.02.2002 |
| 5491703 | 5491 | 7564, silver, + Clean&Charge (5301) | F | 01.01.2001 |
| 5491704 | 5491 | 7664, titanium, + Clean&Charge (5301918) | F | 01.05.2002 |
| 5491705 | 5491 | 7690, titanium, + Clean&Charge (5301918) | MN | 01.09.2002 |
| 5491711 | 5491 | 7680, titanium, + Clean&Charge (5301918) | AMEE | 01.05.2002 |
| 5491712 | 5491 | 7570, silver + Clean&Charge (5301) | AMEE | 01.01.2001 |
| 5491730 | 5491 | 7570, silver + Clean&Charge (5301) | GB | 01.02.2000 |
| 5491731 | 5491 | 7680, titanium, + Clean&Charge (5301918) | GB | 01.11.2001 |
| 5491735 | 5491 | 7570, silver + Clean&Charge (5301) | AUS | 01.01.2001 |
| 5491736 | 5491 | 7680, titanium, + Clean&Charge (5301918) | AUS | 01.02.2003 |
| 5491745 | 5491 | 7570, silver + Clean&Charge (5301) | NA | 01.04.2000 |
| 5491746 | 5491 | 7680, titanium, + Clean&Charge (5301918) | NA | 01.04.2002 |

| Model No. | Type No. | description | Sold in | date |
|---|---|---|---|---|
| 5491747 | 5491 | 7680, titanium, + Clean&Charge (5301918) | NA | 01.05.2003 |
| 5491750 | 5491 | 7570, silver + Clean&Charge (5301) | J | 01.09.1999 |
| 5491751 | 5491 | 7680, titanium, + Clean&Charge (5301918) | J | 01.09.2001 |
| 5491773 | 5491 | 7570, silver + Clean&Charge (5301) | KOR | 01.01.2001 |
| 5491774 | 5491 | 7680, titanium, + Clean&Charge (5301918) | KOR | 01.02.2003 |
| 5491775 | 5491 | 7570, silver + Clean&Charge (5301) | RC | 01.01.2001 |
| 5491777 | 5491 | 7570, silver + Clean&Charge (5301) | CN | 01.07.2001 |
| 5491778 | 5491 | 7680, titanium, + Clean&Charge (5301918) | CN | 01.02.2003 |
| 5491790 | 5491 | 7680, titanium, + Clean&Charge (5301918) | KOR | 01.09.2003 |
| 5491792 | 5491 | 7680, titanium, + Clean&Charge (5301918) | AUS | 01.07.2003 |
| 5491793 | 5491 | 7680, titanium, + Clean&Charge (5301918) | NA | 01.05.2003 |
|  |  |  |  |  |
| 5492700 | 5492 | 7540, silver | MN | 01.10.1999 |
| 5492701 | 5492 | 7650, titanium + Clean&Charge (5301918) | MN | 01.02.2002 |
| 5492730 | 5492 | 7540 silver | GB | 01.02.2000 |
| 5492731 | 5492 | 7650, titanium + Clean&Charge (5301918) | GB | 01.11.2001 |
| 5492745 | 5492 | 7540, silver | NA | 01.04.2000 |
| 5492746 | 5492 | 7546, silver + Clean&Charge (5301) | NA | 01.04.2000 |
| 5492747 | 5492 | 7650, titanium + Clean&Charge (5301918) | NA | 01.02.2003 |
| 5492750 | 5492 | 7540, silver | J | 01.10.1999 |
| 5492751 | 5492 | 7497, black/silver/blue + Clean&Charge (5301918) | J | 01.06.2003 |
| 5492753 | 5492 | 7650, titanium + Clean&Charge (5301918) | J | 01.09.2001 |
| 5492754 | 5492 | 7640, titanium + Clean&Charge (5301918) | J | 01.11.2001 |
| 5492793 | 5492 | 7650, titanium + Clean&Charge (5301918) | NA | 01.06.2003 |
|  |  |  |  |  |
| 5493700 | 5493 | 7520, black/gray + Clean&Charge (5301) | MN | 01.10.1999 |
| 5493701 | 5493 | 7515, black/gray | MN | 01.01.2000 |
| 5493702 | 5493 | 7630, black/silver/blue + Clean&Charge (5301918) | MN | 01.02.2002 |
| 5493705 | 5493 | 7520, black/gray + Clean&Charge (5301) Clamshell | MN | 01.04.2000 |
| 5493706 | 5493 | 7630, black/silver/blue + Clean&Charge (5301918) | MN | 01.02.2002 |
| 5493707 | 5493 | 7630, black/silver/blue + Clean&Charge (5301918) | MN | 01.02.2003 |

-2-

9543079_1

| Material no. | Type no. | Product denomination | Sold in | Valid from |
|---|---|---|---|---|
| 5493710 | 5493 | 7630, black/silver/blue + Clean&Charge (5301918) | AMEE | 01.06.2002 |
| 5493730 | 5493 | 7520, black/gray + Clean&Charge (5301) | GB | 01.02.2000 |
| 5493731 | 5493 | 7515, black/gray | GB | 01.02.2000 |
| 5493732 | 5493 | 7630, black/silver/blue + Clean&Charge (5301918) | GB | 01.11.2001 |
| 5493736 | 5493 | 7630, black/silver/blue + Clean&Charge (5301918) | AUS | 01.02.2003 |
| 5493744 | 5493 | 7526, black/silver + Clean&Charge (5301918) | NA | 01.07.2002 |
| 5493745 | 5493 | 7526, black/silver + Clean&Charge (5301) | NA | 01.04.2000 |
| 5493746 | 5493 | 7526, black/silver + Clean&Charge (5301) | NA | 01.06.2001 |
| 5493747 | 5493 | 7526, black/silver + Clean&Charge (5301918) | NA | 01.06.2002 |
| 5493748 | 5493 | 7526, black/silver + Clean&Charge (5301) | NA | 01.02.2002 |
| 5493751 | 5493 | 7515, black/gray | J | 01.01.2000 |
| 5493752 | 5493 | 7526, black/silver + Clean&Charge (5301) | J | 01.01.2001 |
| 5493753 | 5493 | 7630, black/silver/blue + Clean&Charge (5301918) | J | 01.07.2001 |
| 5493754 | 5493 | 7511, black/gray + Clean&Charge (5301) | J | 01.07.2002 |
| 5493774 | 5493 | 7630, black/silver/blue + Clean&Charge (5301918) | KOR | 01.02.2003 |
| 5493777 | 5493 | 7630, black/silver/blue + Clean&Charge (5301918) | CN | 01.02.2003 |
| 5493790 | 5493 | 7630, black/silver/blue + Clean&Charge (5301918) | KOR | 01.05.2003 |
| 5493791 | 5493 | 7630, black/silver/blue + Clean&Charge (5301918) | CN | 01.08.2003 |
| 5493792 | 5493 | 7630, black/silver/blue + Clean&Charge (5301918) | AUS | 01.08.2003 |
| 5493793 | 5493 | 7526, black/silver + Clean&Charge (5301918) Clamshell | NA | 01.05.2003 |
| | | | | |
| 5494700 | 5494 | 7505, black | MN | 01.01.2000 |
| 5494701 | 5494 | 7505, silver | MN | 01.01.2001 |
| 5494702 | 5494 | 7505, silver Clamshell | MN | 01.02.2002 |
| 5494703 | 5494 | 7504, black | F | 01.01.2001 |
| 5494704 | 5494 | 7504, black Clamshell | F | 01.01.2001 |
| 5494705 | 5494 | 7505, black Clamshell | MN | 01.04.2000 |
| 5494706 | 5494 | 7510, black + Clean&Charge (5301) Clamshell | MN | 01.01.2001 |
| 5494707 | 5494 | 7514, gray + Clean&Charge (5301) Clamshell | F | 01.03.2001 |
| 5494708 | 5494 | 7516, silver + Clean&Charge (5301) Clamshell | MN | 01.01.2001 |
| 5494709 | 5494 | 7510, black + Clean&Charge (5301) | MN | 01.01.2001 |

-3-

9543079_1

| Item No. | Order No. | Product Name / Brief Description | Sold in | Version Date |
|---|---|---|---|---|
| 5494710 | 5494 | 7514, gray + Clean&Charge (5301) | F | 01.01.2001 |
| 5494711 | 5494 | 7516, silver + Clean&Charge (5301) | MN | 01.01.2001 |
| 5494712 | 5494 | 7505, black | AMEE | 01.01.2001 |
| 5494713 | 5494 | 7516, silver + Clean&Charge (5301) | AMEE | 01.01.2001 |
| 5494714 | 5494 | 7505, black | MN | 01.06.2002 |
| 5494715 | 5494 | 7505, silver | AMEE | 01.06.2002 |
| 5494716 | 5494 | 7510, black + Clean&Charge (5301) | MN | 01.02.2003 |
| 5494717 | 5494 | 7493, black + Clean&Charge (5301) | MN | 01.07.2003 |
| 5494718 | 5494 | 7493, black + Clean&Charge (5301) Clamshell | MN | 01.08.2003 |
| 5494720 | 5494 | 7504, black Clamshell | MN | 01.06.2003 |
| 5494734 | 5494 | 7505, black | AUS | 01.05.2002 |
| 5494735 | 5494 | 7510, black + Clean&Charge (5301) | GB | 01.03.2001 |
| 5494736 | 5494 | 7516, silver + Clean&Charge (5301) | GB | 01.04.2001 |
| 5494737 | 5494 | 7505, silver | GB | 01.03.2001 |
| 5494739 | 5494 | 7510, black + Clean&Charge (5301) | AUS | 01.04.2001 |
| 5494740 | 5494 | 7493, black + Clean&Charge (5301) | GB | 01.06.2003 |
| 5494745 | 5494 | 7505, silver | NA | 01.04.2000 |
| 5494746 | 5494 | 7505, silver Clamshell | NA | 01.06.2001 |
| 5494750 | 5494 | 7505, black | J | 01.01.2000 |
| 5494751 | 5494 | 7510, black + Clean&Charge (5301) | J | 01.09.2000 |
| 5494753 | 5494 | 7514, gray + Clean&Charge (5301) | J | 01.05.2002 |
| 5494772 | 5494 | 7505, silver | AIRL | 01.09.2002 |
| 5494773 | 5494 | 7516, silver + Clean&Charge (5301) | KOR | 01.03.2001 |
| 5494775 | 5494 | 7516, silver + Clean&Charge (5301) | RC | 01.01.2001 |
| 5494776 | 5494 | 7510, black + Clean&Charge (5301) | RC | 01.04.2001 |
| 5494777 | 5494 | 7505, black | CN | 01.07.2001 |
| 5494778 | 5494 | 7516, silver + Clean&Charge (5301) | CN | 01.07.2001 |
| 5494791 | 5494 | 7505, black | CN | 01.07.2003 |
| 5494792 | 5494 | 7505, black | AUS | 01.07.2003 |
| 5494793 | 5494 | 7505, silver Clamshell | NA | 01.06.2003 |
| 5494794 | 5494 | 7505, silver | AMEE | 01.09.2003 |

9543070_1

| Art. IPG No. | File No. | Product Name / Short Description | Origin | Version Date |
|---|---|---|---|---|
| 5494795 | 5494 | 7505, silver | MN | 01.06.2003 |
| 5494796 | 5494 | 7505, silver  Clamshell | MN | 01.10.2003 |
|  |  |  |  |  |
| 5643700 | 5643 | 8595, Activator + Clean&Charge (5648) | MN | 01.08.2003 |
| 5643712 | 5643 | 8595, Activator + Clean&Charge (5648) | AMEE | 01.08.2003 |
| 5643730 | 5643 | 8595, Activator + Clean&Charge (5648) | GB | 01.05.2003 |
| 5643735 | 5643 | 8595, Activator + Clean&Charge (5648) | AUS | 01.02.2004 |
| 5643745 | 5643 | 8595, Activator + Clean&Charge (5648) | NA | 01.04.2004 |
| 5643750 | 5643 | 8595, Activator + Clean&Charge (5648) | J | 01.08.2003 |
| 5643751 | 5643 | 8795, Activator + Clean&Charge (5648), refresh | J | 01.04.2004 |
| 5643773 | 5643 | 8595, Activator + Clean&Charge (5648) | KOR | 01.02.2004 |
| 5643777 | 5643 | 8595, Activator + Clean&Charge (5648) | CN | 01.11.2003 |
|  |  |  |  |  |
| 5644700 | 5644 | 8590, Activator + Clean&Charge (5648) | MN | 01.08.2003 |
| 5644730 | 5644 | 8590, Activator + Clean&Charge (5648) | GB | 01.05.2003 |
| 5644750 | 5644 | 8590, Activator + Clean&Charge (5648) | J | 01.08.2003 |
| 5644751 | 5644 | 8790, Activator + Clean&Charge (5648), refresh | J | 01.04.2004 |
|  |  |  |  |  |
| 5645701 | 5645 | 8585, Activator + Clean&Charge (5648) | MN | 01.08.2003 |
| 5645712 | 5645 | 8585, Activator + Clean&Charge (5648) | AMEE | 01.09.2003 |
| 5645730 | 5645 | 8585, Activator + Clean&Charge (5648) | GB | 01.05.2003 |
| 5645735 | 5645 | 8585, Activator + Clean&Charge (5648) | AUS | 01.03.2004 |
| 5645745 | 5645 | 8585, Activator + Clean&Charge (5648) | NA | 01.03.2004 |
| 5645750 | 5645 | 8585, Activator + Clean&Charge (5648) | J | 01.08.2003 |
| 5645751 | 5645 | 8785, Activator + Clean&Charge (5648), refresh | J | 01.04.2004 |
| 5645752 | 5645 | 8581, Activator + Clean&Charge (5648), refresh Yamada | J | 01.11.2003 |
| 5645753 | 5645 | 8785, Activator + Clean&Charge (5648), refresh | J | 01.04.2004 |
| 5645754 | 5645 | 8783, Activator + Clean&Charge (5648), refresh Kojima | J | 01.04.2004 |
| 5645773 | 5645 | 8585, Activator + Clean&Charge (5648) | KOR | 01.02.2004 |
| 5645777 | 5645 | 8585, Activator + Clean&Charge (5648) | CN | 01.11.2003 |

-5-

9543079_1

| Article No. | Class No. | Production Unit / Prod. Description | Sold in: | Version Date |
|---|---|---|---|---|
| 5648800 | 5648 | Clean&Charge for Activator | MN | 01.07.2003 |
| 5648802 | 5648 | Clean&Charge for Activator, refresh | J | 01.04.2004 |
| | | | | |
| 5722700 | 5722 | 5790, silver-graded + Clean&Charge (5325) | MN | 01.03.2003 |
| 5722745 | 5722 | 5790, silver-graded + Clean&Charge (5325) | NA | 01.07.2003 |
| 5722746 | 5722 | 5790, silver-graded + Clean&Charge (5325) Clamshell | NA | 01.02.2004 |
| 5722750 | 5722 | 5790, silver-graded + Clean&Charge (5325) | J | 01.03.2003 |
| 5722752 | 5722 | 5795, silver-graded + Clean&Charge (5325) | J | 01.03.2003 |
| 5722753 | 5722 | 5691, silver-galvanised + Clean&Charge (5325) | J | 01.11.2003 |
| | | | | |
| | | | | |
| | | | | |

Abbreviations:

| | | | | |
|---|---|---|---|---|
| AIRL: | Airline | | J: | Japan |
| AMEE: | Africa, Middle East, Eastern Europe | | KOR: | Korea |
| AUS: | Australia | | MN: | Multinational |
| CN: | China | | NA: | North America |
| F: | France | | RC: | Taiwan |
| GB: | Great Britain | | | |

-6-

9543079_1