IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRAUN GmbH,<br><br>                Plaintiff,<br><br>         v.<br><br>RAYOVAC CORPORATION,<br><br>              Defendant. | Civil Action No. 03-CV-12428-WGY |

**BRAUN GmbH'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT ON INVALIDITY**


Respectfully submitted,

BRAUN GmbH,

By its attorneys,


/s/ Dalila Argaez Wendlandt
William L. Patton (BBO #391640)
Dalila Argaez Wendlandt (BBO #639280)
Dalila. Wendlandt@ropesgray.com
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
(617) 951-7000

Stanley D. Liang (admitted *Pro Hac Vice*)
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY 10021


Dated: August 22, 2005

### *Preliminary Statement*

Undisputed facts and well-settled law establish that Plaintiff Braun GmbH's ("Braun")

U.S. Patent No. 5,711,328 (the "'328 Patent") is valid.  In its answer and expert reports, Rayovac

Corporation ("Rayovac") exhausts Chapter 35 of the United States Code and the Code of Federal

Regulations to create a laundry list of grounds that purportedly establish the invalidity of the

'328 Patent.  In particular, Rayovac asserts that the '328 Patent is invalid on the following

grounds:  (1) anticipation of claim 11;

(2) indefiniteness; (3) lack of an adequate written description; (4) inequitable conduct for

improper introduction of new matter and failure to bring a thesis (the "Zeischke thesis") to the

attention of the patent office; (5) failure to join an inventor; and (6) failure to disclose the best

mode.  See First Expert Report of Samual R. Phillips, PE ("Phillips 1st Rep.") at ¶17; First

Amended Answer And Counterclaim To The Amended Complaint ¶¶36-46, 68-71 and 76-83.

Because none of Rayovac's invalidity defenses have any basis in law or fact and to simplify the

issues for trial, Braun moves for partial summary judgment on invalidity.

### *Facts*[1]

The '328 Patent discloses an innovative cleaning system for electric shavers, which

allows consumers to clean the shaver by simply securing it in a cleaning center and pressing a

button.  Like many truly innovative inventions, the device is elegantly simple, requiring no

disassembly of the shaving head of the shaver.  In operation, after the consumer commences the

cleaning cycle, a pump circulates a fat-dissolving cleaning fluid from a cleaning fluid container

---

[1] Braun files herewith its Local Rule 56.1 Statement of Undisputed Material Facts.  This and the
following sections present those facts that Braun considers most critical, as well as facts that will
provide additional background.

to a structure that supports the fully-assembled shaving head of the shaver. After the cleaning process is complete, a dryer is activated to dry the shaver.

When Braun introduced its products embodying the patented technology in the market place (in 1999 in Japan and in 2000 in the United States) it was greeted with widespread commercial success, which did not go unnoticed by Rayovac. See, e.g., Deposition of James Doyle on June 3, 2005 ("Doyle Dep.") at 44:21 – 46:19, 47:12 – 48:6 (testimony of Rayovac's division vice president for all Remington products, describing study of the success of Braun's commercial cleaning products embodying the patented technology); Deposition of Alan Schoepp on May 12, 2005 ("Schoepp Dep.") at 167:12-19 (Rayovac's controller for North American marketing acknowledging that Rayovac considered Braun's products embodying the patented technology to be successful commercially at the time Rayovac entered the market with its accused products).

In a deliberate attempt to capitalize on Braun's success, Rayovac introduced the first of its three accused products -- a men's rotary system with product designation R-9500 -- in the Fall of 2003. See Schoepp Dep. at 18:12-17. After Braun commenced this action, Rayovac introduced two other products -- a men's foil system with product designations MS-5500 and MS-5700 and a women's foil system with product designation WDF-7000CS. Id. Each of these Rayovac products includes an electric shaver and a cleaning system.

### *Arguments*

## I.    GOVERNING STANDARDS

Federal Rule of Civil Procedure 56(c) entitles a moving to party to summary judgment when the evidence before the Courts shows "that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). "Summary judgment is as appropriate in a patent case as in any

other." <u>Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.</u>, 731 F.2d 831, 835 (Fed.

Cir. 1984). The Supreme Court has encouraged the district courts to use summary judgment to

effectuate the purposes of the Federal Rules of Civil Procedure to "secure the just, speedy and

inexpensive determination of every action." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986)

(citation omitted). As a result, the Federal Circuit has approved the granting of summary

judgment, which shortens trials by removing defenses that cannot be proven by "clear and

convincing evidence." <u>See</u>, <u>e.g.</u>, <u>Bayer AG & Bayer Corp. v. Schein Pharms., Inc.</u>, 301 F.3d

1306 (Fed. Cir. 2002) (affirming district court's grant of summary judgment that patent was not

invalid due to 35 U.S.C. 102(d) because its priority application disclosed the best mode).

A court considering summary judgment on the issue of invalidity must give "due weight

to a patent's presumed validity under 35 U.S.C. § 282 (2000), and an accused infringer must

show by clear and convincing evidence that a patent is invalid." <u>Geneva Pharms., Inc. v.</u>

<u>GlaxoSmithKline PLC</u>, 349 F.3d 1373, 1377 (Fed. Cir. 2003). An issued patent is presumed to

be valid and in compliance with the requirements of patentability. 35 U.S.C. § 282 (2001).

Rooted in "the presumption of administrative correctness," <u>Lannom Mfg. Co. v. United States</u>

<u>Int'l Trade Comm'n</u>, 799 F.2d 1572, 1575 (Fed. Cir. 1986), "[t]he presumption mandated by §

282 is applicable to all of the many bases for challenging a patent's validity," <u>Panduit Corp. v.</u>

<u>Dennison Mfg. Co.</u>, 810 F.2d 1561, 1570 (Fed. Cir. 1987); <u>see also</u> <u>Hybritech, Inc. v.</u>

<u>Monoclonal Antibodies, Inc.</u>, 802 F.2d 1367, 1375 (Fed. Cir. 1986). Thus, on a motion for

summary judgment, an accused infringer must introduce evidence from which a reasonable trier

of fact could find invalidity by clear and convincing evidence. <u>Abbott Labs. v. TorPharm, Inc.</u>,

300 F.3d 1367, 1379 (Fed. Cir. 2002); <u>ATD Corp. v. Lydall, Inc.</u>, 159 F.3d 534, 547 (Fed. Cir.

1998).

Because Rayovac bears the burden of proof of clear and convincing evidence, Braun does not have the burden of demonstrating a lack of merit in Rayovac's defense of invalidity. Instead, in response to this motion, Rayovac must come forward with admissible, clear and convincing evidence sufficient for a reasonable jury to find in its favor on the affirmative defense of invalidity. See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); Avia Group Int'l, Inc. v. L.A. Gear, 853 F.2d 1557, 1562 (Fed. Cir. 1988) (striking affirmative defense of invalidity when infringer failed to prove invalidity by clear and convincing evidence); Massey v. Del Labs., Inc., 118 F.3d 1568, 1573 (Fed. Cir. 1997) (explaining that to prevail on a motion for summary judgment of validity the patent holder "need not have presented any factual evidence").

## II.    THE PRIOR ART DOES NOT ANTICIPATE CLAIM 11 OF THE '328 PATENT

In its expert report, Rayovac asserts that three prior art patents – the MeKiney Patent, the Davies Patent and the Maatz Patent[2] – anticipate claim 11 of the '328 Patent, which is directed to a cleaning device comprising:

a cradle structure adapted to receive a shaving head of a shaving apparatus,

a cleaning fluid container,

a feed device for feeding cleaning fluid from said cleaning fluid container to said cradle structure,

said cradle structure being arranged above a fluid level of the cleaning fluid in said cleaning fluid container during the feeding of said cleaning fluid to said cradle structure, and

---

[2] The MeKinley Patent is U.S. Patent No. 3,365,267. The Davies Patent is U.S. Patent No. 3,478,758. And the Maatz Patent is U.S. Patent No. 3,500,840.

a drying device.

'328 Patent, col. 14, lines 12-23.

To anticipate a patent claim, a single prior art reference must disclose each and every element of the claimed invention. Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co., 730 F.2d 1452, 1458 (Fed. Cir. 1984).

> Invalidity for anticipation requires that all of the elements and limitations of the claim are found within a single prior art reference. There must be no difference between the claimed invention and the reference disclosure, as viewed by a person of ordinary skill in the field of the invention.

Scripps Clinic & Research Found. v. Genentech, Inc., 927 F.2d 1565, 1576 (Fed. Cir. 1991) (internal citations omitted). The absence of a claimed element from the prior art reference is enough to negate anticipation by that reference. Atlas Powder Co. v. E. I. du Pont De Nemours & Co., 750 F.2d 1569, 1574 (Fed. Cir. 1984). None of the prior art references relied upon by Rayovac discloses each and every element of claim 11.

### A.    None Of The Three Prior Art References Relied On By Rayovac Discloses The Cradle Structure Element Of Claim 11

The first element of claim 11 of the '328 Patent is "a cradle structure adapted to receive a shaving head of a shaving apparatus." See '328 Patent, col. 14, lines 13-14. The Court construed this element as a "structure adapted to support or receive a shaving head of a shaving apparatus and able to receive or retain fluid or both." Transcript of March 15, 2005 Hearing Before Judge Young ("Hearing Trans.") at 5, 11. None of the prior art references discloses the claimed cradle structure. In particular, none of the references has a structure that receives or supports the shaving head of a shaving apparatus.

As discussed in greater detail in the Declaration of Professor Samir Nayfeh In Support Of Braun GmbH's Motion For Partial Summary Judgment On Invalidity ("Nayfeh Decl."), each of

the references discloses a sterilizing apparatus for barber tools, including the cutter blades disassembled from hair clippers used by barbers. In the MeKiney device the cutter blades are held on a shelf on an upper container of that device by magnets. Nayfeh Decl. at ¶6; MeKiney Patent, col. 3, lines 27-40. In the Davies device, the cutter blades are placed between a pair of counter-rotating brushes mounted on a motor. See Nayfeh Decl. at ¶18; Davies Patent, col. 5, line 73 through col. 6, line 2. And, in the Maatz device the cutter blades are held on a rack or grid by means of magnets. See Nayfeh Decl. at ¶32; Maatz Patent, col. 2, lines 27-32.

Thus, to the extent one can consider a hair clipper a shaving apparatus, each prior art reference provides that cutter blades from a disassembled clipper head are supported by means of magnets against some surface of the device or by brushes. The clipper head itself is not supported by any mechanism or structure in any of these references. Thus, the references do not disclose the claimed cradle structure, and they do not anticipate claim 11. See Nayfeh Decl. at ¶¶7-10, 17-20 and 31-33.

### B.    The Davies Patent Does Not Disclose The Feed Device Element Of Claim 11

The third element of claim 11 is "a feed device for feeding cleaning fluid from said cleaning fluid container to said cradle structure." See '328 Patent, col. 14, lines 16-17. The Court has construed this element as "a mechanism that feeds cleaning fluid from the cleaning fluid container to the cradle structure." Hearing Trans. at 14.

The Davies Patent does not disclose this feed device element. Instead, in the Davies device, fluid is fed manually to the cleaning device through a tap and hose. See Davies Patent, col. 4, lines 66-69, col. 5, lines 4-6. There is no mechanism that feeds fluid from the cleaning

fluid container[3] to the cradle structure (which, as stated above, is not even disclosed in the Davies patent). Therefore, the Davies Patent does not disclose the claimed feed device element and does not anticipate claim 11. See Nayfeh Decl. at ¶¶25-28.

### C. The Davies Patent Does Not Disclose The Elevation Of The Cradle Structure Element

The fourth element of claim 11 is "said cradle structure being arranged above a fluid level of the cleaning fluid in said cleaning fluid container during the feeding of said cleaning fluid to said cradle structure." See '328 Patent, col. 14., lines 17-20. The Court construed this element to require that "during the feeding of said cleaning fluid to said cradle structure, the cradle structure is above the fluid level of the fluid in [the cleaning fluid] container." Hearing Trans. at 16-17.

The Davies Patent does not disclose this element. In particular, it is clear from the Davies Patent that the tray 74 -- Rayovac's purported cradle structure, see Phillips 1st Rep. at ¶114 -- is not above the fluid level of the cleaning fluid in the cleaning fluid container during the entire feeding operation. Specifically, during the feeding operation the cleaning fluid "level rises above the . . . tray." Davies Patent, col. 4, lines 74-75. Therefore, the Davies Patent does not disclose the claimed elevation of the cradle structure relative to the cleaning fluid level in the cleaning fluid container during feeding. See Nayfeh Decl. at ¶¶25-27. Thus, the Davies Patent does not anticipate claim 11.

---

[3] Moreover, according to Rayovac's expert the "cleaning fluid container" of the Davies Patent is container 12. See Phillips 1st Rep. at ¶115. And, there is no mechanism that feeds fluid from container 12 to any purported cradle structure. See Nayfeh Decl. at ¶23. Instead, cleaning fluid is fed manually via an external source to container 12. See Davies Patent, col. 4, lines 66-69.

**D.    The McKinley Patent And the Maatz Patent Fail to Disclose The Drying Device Element**

The final element of claim 11 is "a drying device," see '328 Patent, col. 14, line 23, for which the Court has adopted a literal construction – a "drying device of some sort." Hearing Trans. at 16. The MeKiney and Maatz Patents do not disclose a drying device. In the MeKiney device, Rayovac's expert has argued that siphon tube 24 is "a drying device." See Phillips 1st Rep. at ¶108. However, siphon tube 24 merely drains the sterilizing fluid from the upper tank to the lower tank. The tools then drip dry. See MeKiney Patent, col. 4, lines 12-14. The siphon tube 24 is not a drying device since it is not a mechanism for drying of the barber tools. See Nayfeh Decl. at ¶11-13.

In the Maatz device, Rayovac's expert has argued that drain hole 22 is "a drying device." See Phillips 1st Report at ¶127. However, drain hole 22 merely drains the sterilizing fluid from the cleaning tank to the storage tank. The tools then drip dry. See Maatz Patent, col. 3, lines 26-30. The drain hole 22 is not a drying device since it is not a mechanism for drying of the barber tools. See Nayfeh Decl. at ¶¶34-36. Therefore, the MeKiney and Maatz patents do not disclose the claimed drying device and do not anticipate claim 11.

In sum, the MeKiney, Davies and Maatz Patents do not anticipate claim 11 of the '328 Patent, because none of them discloses every element of this claim.[4] Therefore, claim 11 is valid over the prior art.

---

[4] Rayovac does not claim that claim 11 of the '328 Patent is obvious. Moreover, given the acknowledged commercial success of Braun's products embodying the patented invention, there can be no credible claim of obviousness. Litton Sys., Inc. v. Honeywell, Inc., 87 F.3d 1559, 1569-70 (Fed. Cir. 1996) (holding patent non-obvious, taking into account that both the patentee and the infringer enjoyed commercial success using the patented method).

### III.    THE '328 PATENT IS NOT INDEFINITE

Rayovac asserts that the "cradle structure" element of the asserted claims of the '328 Patent are "indefinite" because, according to Rayovac's expert, the Court's construction "does not distinguish the structures that Braun argued were not 'cradle structures' that met the limitations in the patent[s]."  Phillips 1st Rep. at ¶49.  The argument is without merit.

The definiteness requirement arises from 35 U.S.C. § 112, ¶2 (2001), which provides: "The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."  To assess whether a claim satisfies the definiteness requirement, the Court looks to the claim from the vantage point of one of ordinary skill in the art.  See Solomon v. Kimberly-Clark Corp., 216 F.3d 1372 (Fed. Cir. 2000) (noting that indefiniteness is tested according to the ordinary artisan, not statements of the inventors during litigation).

In this case, the Court has construed this element to be a structure adapted to support or receive a shaving head of a shaving apparatus and able to receive or retain fluid or both.  Hearing Trans. at 5, 11.  Contrary to Rayovac's suggestions, the prosecution histories of the '328 Patent and the U.S. Patent No. 5,649,556 (the "'556 Patent")[5] are not at odds with the Court's construction.  In particular, during the prosecution of the '556 patent, Braun distinguished the Lee Patent (U.S. Patent No. 3,890,988) – a cleaning device for automobile parts -- on the basis that its sink was not a cradle adapted to receive a shaving head, but rather designed to receive automotive parts.  See Declaration of Dalila Argaez Wendlandt In Support Of Braun GmbH's Motion For Partial Summary Judgment On Invalidity ("Wendlandt Decl."), Exhibit D at

---

[5] The '556 Patent, also owned by Braun, discloses a cleaning device for dry shavers with a cradle structure.  See '556 Patent, col. 11, lines 18-19.

B000096. Similarly, Braun distinguished the Schinn Patent (U.S. Patent No. 4,815,486) – a cleaning device for paint equipment – on the basis that its drum was not a cradle adapted to receive a shaving head, but rather <u>designed to hold painting equipment</u>. <u>See id.</u> at B000103. Finally, during the prosecution of the '328 patent, Braun distinguished the Cunningham Patent (U.S. Patent No. 5,335,394) – a device for cleaning eye glasses and dentures – on the basis that the structure that supported the eye glasses and dentures was not above the cleaning fluid level of the cleaning fluid in the cleaning fluid container during the cleaning operation. <u>See</u> Wendlandt Decl., Exhibit C at B000335.

The construction of the cradle structure element does not, as Rayovac asserts, recapture the structures of the Lee and Schinn patents. Rather the construction is clear that the claimed cradle structure is adapted to receive or support a shaving head, not automotive parts or paint equipment. <u>See</u> Nayfeh Decl. at ¶¶41-46. Nor does the construction of the cradle structure element recapture the Cunningham device whose wire basket for holding eyeglasses and dentures was submerged during cleaning within the cleaning fluid container, rather than being above the cleaning fluid container as required by the claims of the patents-in-suit. <u>See id.</u> at ¶¶47-48.

Therefore, Rayovac's indefiniteness defense lacks any merit, and the Court should strike the defense.

## IV.  THE '328 PATENT DOES NOT LACK AN ADEQUATE WRITTEN DESCRIPTION

The written description requirement is embodied in 35 U.S.C. § 112, ¶1 (2001), which provides: "[t]he specification shall contain a written description of the invention . . . ." <u>Regents of Univ. of Cal. v. Eli Lilly & Co.</u>, 119 F.3d 1559 (Fed. Cir. 1997). The test for written description is whether the skilled artisan would discern from the application that the inventors

had possession of the invention. <u>Moba, B.V. v. Diamond Automation</u>, 325 F.3d 1306, 1320-21 (Fed. Cir. 2003).

Rayovac's expert argues that the '328 Patent lack adequate written description for the cradle structure as construed by the Court because the preferred embodiment of the patent is a cradle that receives <u>and</u> retains cleaning fluid during the cleaning operation, rather than one that receives <u>or</u> retains cleaning fluid. <u>See</u> Phillips 1st Report at ¶¶50-54. In doing so, he ignores well-settled law that limitations from the preferred embodiment should not be read into the claims. <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, Nos. 03-1269, 03-1286, 2005 WL 1620331, at *15 (Fed. Cir. 2005) (en banc) ("[W]e have repeatedly warned against confining the claims to [specific] embodiments.") (citations omitted).

Limiting the claim by the preferred embodiment would also violate the doctrine of claim differentiation. <u>See</u> <u>Izumi Prod. v. Koninklijke Philips Electronics N.V.</u>, Nos. 04-1418, 04-1423, 2005 WL 1606952, at *11 (Fed. Cir. Jul. 7, 2005 (non-precedential op.) ("Under the doctrine of claim differentiation, '[t]here is presumed to be a difference in meaning and scope when different words or phrases are used in separate claims.'") (quoting <u>Tandon Corp. v. United States Int'l Trade Comm'n</u>, 831 F.2d 1017, 1023 (Fed. Cir. 1987)). In particular, claim 1 of the '328 Patent is directed to a cradle structure with an outlet port. Claim 2 then requires that the outlet port "is dimensioned such that during the cleaning operation the amount of cleaning fluid drained through the outlet port is smaller than the amount of cleaning fluid supplied to the cradle structure by the feeding device." <u>See</u> '328 Patent, col. 13, lines 37-42. If, as Rayovac argues, one of ordinary skill in the art would understand the cradle structure to be limited to structures that receive <u>and</u> retain cleaning fluid, then the further limitation of claim 2 would be superfluous.

Under the doctrine of claim differentiation, such a construction is improper and inconsistent with the understanding of the ordinary artisan.

Thus, Rayovac's written description defense is unsupported and should be striken.

## V.  THE '328 PATENT IS NOT INVALID FOR INEQUITABLE CONDUCT

Rayovac's inequitable conduct defense is rooted in three misconceptions.  First, that the Zeischke thesis was material to the issue of patentability.  See Rayovac's First Amended Answer And Counterclaim To the Amended Complaint at ¶44.  Second, that the translation of the German word "aufnahmeteil" in the original German priority application to "cradle" rather than to "receptacle" involved the addition of new matter and therefore inequitable conduct.  See Phillips 1st Rep. at ¶¶56-58.  And, third, that the translation of an edited version of the original German priority application, which contained a description of a French prior art reference, was known to the inventor and/or their counsel and that the translation of the edited version amounts to the addition of new matter and therefore inequitable conduct.  See id. at ¶59.  None of these grounds is valid; the defense should be striken.

Applicants for patents have a duty to prosecute patents in the PTO with candor and good faith, including a duty to disclose information known to the applicants to be material to patentability.  37 C.F.R. § 1.56(a)(2005); see also Molins PLC v. Textron, Inc., 48 F.3d 1172, 1178 (Fed. Cir. 1995).  "A breach of this duty may constitute inequitable conduct . . ."  Purdue Pharma L.P. v. Endo Pharms, Inc., 410 F.3d 690, 695 (Fed. Cir. 2005).  A party asserting that a patent is unenforceable due to inequitable conduct must prove, by clear and convincing evidence, that the information was material and that it was omitted with an intent to deceive or mislead the PTO.  Id. at 695-96 (citing Kingsdown Med. Consultants, Ltd. v. Hollister, Inc., 863 F.2d 867, 872 (Fed. Cir. 1988)).

To establish materiality, Rayovac must show that "'a reasonable examiner would have considered such prior art important in deciding whether to allow the parent application'" or that the information "establishes either 'a prima facie case of unpatentability' or 'refutes or is inconsistent with a position the applicant takes.'" Dayco Prods., Inc. v. Total Containment, Inc., 329 F.3d 1358, 1363-64 (Fed. Cir. 2003)(citations omitted).  Intent must also be established by clear and convincing evidence.  And, a greater evidenciary showing of intent will be required where the omitted information is less material.  See, e.g., N.V. Akzo v. E. I. Du Pont de Nemours & Co., 810 F.2d 1148, 1153 (Fed. Cir. 1987) (internal citations omitted).

### A.    There Is No Evidence That The Zeischke Thesis Was Material To The '328 Patent Or That Braun Had The Intent To Deceive The Patent Office

There is no evidence that the Zeischke thesis was either material or omitted with an intent to deceive the PTO.  The Zeischke thesis discloses a cleaning system for shavers employing brushes and a vacuum.  See Phillips 1st Rep. at ¶156; Wendlandt Decl., Exhibit Y & Z.  The thesis is not material information because it was cumulative of prior art already before the examiner, not as significant as the prior art already before the examiner, and not relevant to the claimed invention.  In particular, the thesis is cumulative of a prior art reference -- French Patent No. 2,568,111 (the "French Patent") -- already disclosed in the specification of the '328 Patent. See GFI, Inc. v. Franklin Corp., 265 F.3d 1268, 1274 (Fed. Cir. 2001) ("[A] patentee need not cite an otherwise material reference to the PTO if that reference is merely cumulative or is less material than other references already before the examiner.").  The French Patent describes a cleaning device that (like Zeischke's device) employs suction and brushes to clean a shaver.  See '328 Patent, col. 1, line 59 through col. 2, line 8.  Moreover, the '328 Patent does not claim a cleaning system using a vacuum or suction or even brushes.  Thus, the Zeischke thesis was not

relevant to those claims and thus not material to patentability.[6] <u>Kingsdown Med. Consultants,</u>

<u>Ltd. v. Hollister, Inc.</u>, 863 F.2d 867, 872 (Fed. Cir. 1988) ("Inequitable conduct resides in failure

to disclose material information . . ."); <u>see also</u> 37 C.F.R. § 1.56.

Further, there is not a scintilla of evidence that the Mr. Braun or his counsel intended to

deceive the PTO by not disclosing the Zeischke thesis to the patent office. <u>Id.</u> ("To be guilty of

inequitable conduct, one must have intended to act inequitably") (Internal citation omitted).

Indeed, Mr. Braun – the named inventor – was not aware of the Zeischke thesis at the time the

patent was prosecuted. <u>See</u> Deposition of Gebhard Braun on April 27, 2005 ("Braun Dep. Vol.

2") at pp. 178-179. The only person who may have been aware of the thesis was Braun's in-

house attorney.[7] <u>See</u> Deposition of Wolfgang Vorbeck on August 10, 2005 ("Vorbeck Dep.") at

54:10-13 (rough draft). And, there is absolutely no evidence that he withheld the thesis to

deceive the PTO. Thus, Rayovac's defense of inequitable conduct based on the Zeischke thesis

should be striken.

      **B.**      **There Is No Evidence That The Translation Of The German Word**
            **"Aufnahmeteil" As "Cradle" Rather Than "Receptacle" Constitutes**
            **Inequitable Conduct**

Rayovac next contends that the translation of the German word "aufnahmeteil" in the

original German priority application to "cradle" rather than to "receptacle" involved the addition

of new matter and therefore inequitable conduct. <u>See</u> Phillips 1st Rep. at ¶¶56-58. Rayovac

absurdly contends that there is a difference between a "receptacle" and a "cradle" because,

---

[6] Rayovac's expert asserts mistakenly that the Zeischke thesis discloses brackets for holding a
shaver in place. Claim 18 of the '328 Patent includes a bracket. As discussed by Professor
Nayfeh, however, the Zeischke thesis discloses only two distinct "park positions," which are not
brackets and do not hold the shaver in position for cleaning. <u>See</u> Nayfeh Decl. at ¶76-77.

[7] Braun's in-house attorney at the time that the '328 Patent was prosecuted has passed away.

according to Rayovac, receptacles receive <u>and</u> retain fluid, while cradles can either receive <u>or</u>

retain fluid. <u>Id.</u> The argument is baseless. <u>See</u> Nayfeh Decl. at ¶75 (noting that to one of

ordinary skill in the art, there is no such difference between a receptacle and a cradle). As such,

the Court should strike Rayovac's inequitable conduct defense based on the translation of the

German word "aufnahmeteil."

### C.    The Disclosure Of The French Patent Is Not Inequitable Conduct

Rayovac further contends that the translation of an edited version of the original German

priority application, which contained a description of the French Patent, was known to the named

inventor and/or their counsel and that the translation of the edited version amounts to the

addition of new matter and therefore inequitable conduct. <u>See</u> Phillips 1st Rep. at ¶59.

Rayovac's argument turns the duty of disclosure on its head. In this case, there was no material

omission; instead, Braun <u>disclosed more</u> prior art in its U.S. patent application than in its German

patent application.[8] To hold that such disclosure violates the duty of disclosure is nonsensical.

Thus, the Court should strike Rayovac's inequitable conduct defense based on the disclosure of

the French Patent.

### VI.    THE '328 PATENT IS NOT INVALID FOR FAILURE TO JOIN AN INVENTOR

Rayovac's next invalidity defense concerns inventorship. While Rayovac concedes that

Dr. Pahl is a co-inventor of the '328 Patent, it contends that Norbert Smetana, an engineer who

---

[8]  The addition of the French Patent to the original German patent application was made at the
request of the German Patent Office. <u>See</u> Vorbeck Dep. at 71:21 through 72:12 (rough draft).
When the U.S. application was filed, Braun inadvertently sent the edited German application to
be translated. <u>See id.</u> at  60:1 through 61:6 and 69:18 through 70:5 (rough draft). As a result, the
translation of the German priority application submitted to the PTO contained a discussion of the
French Patent. There is no evidence that Mr. Braun or his counsel committed this clerical error
in a deliberate attempt to deceive the PTO.

assisted Mr. Braun in the development of the geometry of the drying device for the cleaning center, and Helmut Kraus, a regulator with the VDE – the German regulatory agency comparable to Underwriters Laboratories, Inc. – are also co-inventors. See Phillips 1st Rep. at ¶¶ 67-80. The undisputed facts, however, do not support Rayovac's claim.

To be a co-inventor, a person needs to contribute to at least one element of one claim. See Fina Oil & Chem. Co. v. Ewen, 123 F.3d 1466, 1472 (Fed. Cir. 1997) . Rayovac contends that Mr. Smetana invented the "heater" element of dependent claim 13 of the '328 Patent, which provides "[a] device as claimed in claim 12, wherein the drying device further comprises a heater," '328 Patent, col. 14, lines 26-27. See Phillips 1st Rep. at ¶69. Rayovac contends that Mr. Kraus is a co-inventor for the interlock of dependent claim 19, which provides "[a] device as claimed in claim 18, further comprising a switch for interlocking the shaving apparatus to the bracket," '328 Patent, col. 15, lines 19-20. See Phillips 1st Rep. at 74.

Neither Mr. Smetana nor Mr. Kraus have come forward with a claim of inventorship. In fact, Mr. Smetana when asked whether he contributed the idea of the heater testified that he did not know who thought to add the heater to the drying device and that the addition of heat was well-known in the art at the time of his involvement with the cleaning device. Deposition of Norbert Smetana on April 29, 2005 ("Smetana Dep.") at 48:23 through 49:19. Moreover, Dr. Pahl's original prototype (which preceded Mr. Smetana's involvement in the cleaning center) already had a heater in the drying device. See Deposition of Dietrich Pahl on April 28, 2005 ("Pahl Dep.") at 110:5-11; 148:10-12; 197:17 through 198:7. Thus, there is no evidentiary basis upon which Rayovac can rely to support its claim that Mr. Smetana is a co-inventor. See Nayfeh Decl. at ¶¶65-69.

Rayovac's theory with regard to Mr. Kraus is equally flawed. It rests on a document which notes that Mr. Kraus observed during a regulatory meeting that the shaver of the cleaning device would need to be locked in place until dry to avoid harm to the operator of the device. Mr. Braun testified that he was already aware of the need for an interlock and testified that he invented the interlock. See Deposition of Gebhard Braun on April 26, 2005 ("Braun Dep. Vol. 1") at 75:18 through 77:9. Dr. Pahl confirmed Mr. Braun's testimony. Pahl Dep. at 111:9-18 (noting that Mr. Braun invented the interlock of claim 19). Thus, there is no basis for naming Mr. Kraus as a co-inventor. See Nayfeh Decl. at ¶¶70-73.

Thus, the Court should strike Rayovac's invalidity defense based on failure to join a co-inventor.

## VII.    THE BEST MODE REQUIREMENT WAS MET

Rayovac next contends that the '328 Patent is invalid for failure to disclose the composition of the cleaning fluid used by the original inventors in their prototype device; and that this alleged failure violates the best mode requirement.

Section 112 provides that the specification "shall set forth the best mode contemplated by the inventor of carrying out his invention." 35 U.S.C. § 112, ¶1 (2001). The best mode requirement creates "a statutory bargained-for-exchange by which a patentee obtains the right to exclude others from practicing the claimed invention for a certain time period, and the public receives knowledge of the preferred embodiments for practicing the claimed invention." Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 963 (Fed. Cir. 2001); see also Amgen, Inc. v. Chugai Pharm. Co., Ltd., 927 F.2d 1200, 1209-10 (Fed. Cir. 1991) ("The best mode requirement . . . is intended to ensure that a patent applicant plays 'fair and square' with the patent system.").

As an initial matter, the claims of the '328 patent are directed to <u>cleaning devices</u> for cleaning the shaving head of a dry shaver apparatus and are not directed to an improved <u>cleaning fluid</u> for such devices. Such unclaimed subject matter is generally "not subject to the disclosure requirements of § 112," including the best mode requirement. <u>Engel Indus., Inc. v. Lockformer Co.</u>, 946 F.2d 1528, 1531 (Fed. Cir. 1991); <u>see also</u> <u>Randomex v. Scopus Corp.</u>, 849 F.2d 585, 590 (Fed. Cir. 1988) (An invention directed to portable computer disk cleaning apparatus "neither added nor claimed to add anything to the prior art respecting cleaning fluid.").

Importantly, the inventors of the '328 patent, Mr. Gerhard Braun and Dr. Dietrich Pahl, have testified that they did not have in mind any particular composition of cleaning fluid. Mr. Braun testified that he did not know the composition of the cleaning fluid that he used for testing his prototype cleaning center. <u>See</u> Braun Dep. Vol. 1 at 87:8- 88:4. The fluid was given to him by Dr. Pahl, and he had no interest in its composition. <u>Id.</u> at 87:22 – 88:4. Dr. Pahl knew only that the cleaning fluid he preferred was the fluid made by a third party and marketed by Braun in a spray can for cleaning shaver parts. <u>See</u> Pahl Dep. at 168:23 – 169:7. Dr. Pahl did not know who manufactured the cleaning fluid, but he knew it contained alcohol (methyl alcohol, he believed). <u>Id.</u> at 165:16-21. Dr. Pahl testified that alcohol was the "primary thing" and that the cleaning fluid had a "[l]ittle bit of grease, of oil to lubricate the cutting elements, and a fragrance." <u>Id.</u> at 165:20-24. Dr. Pahl was not aware of the precise composition of alcohol, lubricant, or fragrance, but he preferred the commercially available spray bottle because it "had always the same mixture of oil and alcohol." <u>Id.</u> at 166:12-16 & 169:2-7. Moreover, it is clear that Braun continued to work to optimize the composition of the cleaning fluid long after the application for the '328 Patent was submitted to the PTO. <u>See</u> Deposition of Juergen Hoeser on May 12, 2005 ("Hoeser Dep. Vol. 2") at 192:12 through 193:16 (describing three binders

dedicated to correspondence with third party manufacturer involved in the continued

optimization of cleaning fluid).

The patent discloses that the cleaning fluid should be fat dissolving. See '328 Patent, col.

6, lines 14-16. One of ordinary skill in the art would understand, therefore, that the cleaning

fluid contained alcohol, which Dr. Pahl described as the primary ingredient of the cleaning fluid.

See Nayfeh Decl. at ¶61. The addition of a lubricant and fragrance would have been known to

anyone of ordinary skill in the art. See id. at ¶62. Hence, the application discloses the best mode

"in sufficient detail to allow a skilled artisan to practice it without undue experimentation."

Nobelpharma AB v. Implant Innovations, Inc., 141 F.3d 1059, 1064 (Fed. Cir. 1998); High

Concrete Structures, Inc, v. New Enterprise State and Lime Co., Inc., 377 F.3d 1379, 1383-84

(Fed. Cir. 2004) ("The best mode requirement … is not violated by unintentional omission of

information that would be readily known to person in the field of the invention.").

There is simply no evidence, let alone clear and convincing evidence, that the inventors

knew of and concealed what they considered to be a superior mode of carrying out the invention

than what they disclosed in the specification, as required for best mode. See Chemcast Corp. v.

Arco Indus. Corp., 913 F.2d 923, 927-28 (Fed. Cir. 1990). Additionally, given that the cleaning

fluid composition was continually being optimized after the U.S. application was filed and in

light of the express disclosure that the cleaning fluid be "fat dissolving," there can be no best

mode violation. See Bruning v. Hirose, 161 F.3d 681, 687 (Fed. Cir. 1998) (holding no best

mode violation when at time of filing, inventor knew several details of design being developed

by independent manufacturer, but design underwent testing and modification after filing date).[9]

---

[9] See also Atlas Powder Co. v. E.I. Du Pont de Nemours & Co., 588 F. Supp. 1455, 1467 (N.D. Tex. 1983) ("[the inventor] had not decided on a single preferred formulation at the time the

(Continued…)

Thus, to the extent there is a requirement for the inventors of the '328 patent to disclose the best mode of the composition of the cleaning fluid for the claimed cleaning devices, the inventors have disclosed it.  As such, Rayovac's best mode defense should be striken.

### *Conclusion*

WHEREFORE, partial summary judgment should be entered, striking Rayovac's affirmatives defenses of obviousness and anticipation with respect to claim 11 of the '328 patent, indefiniteness, lack of adequate written description, inequitable conduct, failure to join an inventor, and failure to disclose the best mode.

Respectfully submitted,

BRAUN GmbH,

By its attorneys,


/s/ Dalila Argaez Wendlandt
William L. Patton (BBO #391640)
Dalila Argaez Wendlandt (BBO #639280)
Dalila.Wendlandt@ropesgray.com
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
(617) 951-7000

Stanley D. Liang (admitted *Pro Hac Vice*)

---

(…Continued)
patent was filed, but rather believed that there were a number of characteristics that contributed to an effective explosive. He put examples in his patent to demonstrate these characteristics… Failure to cite the marketed version … did not violate the best mode requirement . . .")(citation omitted), aff'd, 750 F.2d 1569, (Fed. Cir. 1984); Honeywell, Inc. v. Minolta Camera Co., No. 87-4847, 88-1624, 1991 U.S. Dist. LEXIS 4222, at *16-18 (D.N.J. April 5, 1991) (determining evidence insufficient to show inventor was aware of so-called best mode because testing was incomplete at the time of filing)

ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY 10021

Dated: August 22, 2005