IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRAUN GmbH,<br><br>Plaintiff,<br><br>v.<br><br>RAYOVAC CORPORATION,<br><br>Defendant. | Civil Action No. 03-CV-12428-WGY |

**PLAINTIFF'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF BRAUN GMBH'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT ON INVALIDITY**

In support of its Motion For Partial Summary Judgment On Invalidity, Plaintiff Braun GmbH, pursuant to Local Rule 56.1, submits this statement of material undisputed facts.

Respectfully submitted,

Braun GmbH

By its attorneys,

/s/ Dalila Argaez Wendlandt
William L. Patton (BBO #391640)
Dalila Argaez Wendlandt (BBO #639280)
Dalila.Wendlandt@ropesgray.com
 ROPES & GRAY
 One International Place
 Boston, MA 02110
 Telephone: (617) 951-7000
 Facsimile: (617) 951-7050

Stanley D. Liang (admitted *Pro Hac Vice*)

9799575_1

ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY 10021
Telephone: (212) 596-9000
Facsimile: (212) 596-9500

August 22, 2005

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. On January 27, 1998, U.S. Patent No. 5,711,328 (the "'328 Patent") issued. See Declaration of Dalila Argaez Wendlandt In Support Of Braun GmbH's Motion For Partial Summary Judgment On Inventorship ("Wendlandt Decl."), Exhibit A. The '328 Patent has been duly assigned to Braun GmbH ("Braun"). See id., Exhibit AA.

2. Claim 11 of the '328 Patent is directed to a cleaning device comprising:

a cradle structure adapted to receive a shaving head of a shaving apparatus,

a cleaning fluid container,

a feed device for feeding cleaning fluid from said cleaning fluid container to said cradle structure,

said cradle structure being arranged above a fluid level of the cleaning fluid in said cleaning fluid container during the feeding of said cleaning fluid to said cradle structure, and

a drying device.

Wendlandt Decl., Exhibit A, col. 14, lines 12-23.

3. The MeKiney Patent (U.S. Patent No. 3,365,267) discloses a sterilizing device for barber tools. In the MeKiney device, cutter blades that have been disassembled from a hair clipper appliance may be held on a shelf on an upper tank of that device by magnets. Declaration Of Samir Nayfeh In Support Of Braun GmbH's Motion For Partial Summary Judgment On Invalidity ("Nayfeh Decl.") at ¶6; Wendlandt Decl., Exhibit E, col. 3, lines 27-40. The MeKiney device does not disclose a structure to receive or support the assembled cutter head of a hair clipper appliance. See Nayfeh Decl. at ¶¶7-10.

4. In the MeKiney device, a siphon tube drains sterilizing fluid from the upper tank to a lower tank, and the barber tools may drip dry. See Wendlandt Decl., Exhibit E, col. 4, lines 12-14.

5. The MeKiney Patent does not disclose the cradle structure and drying device elements of claim 11 of the '328 Patent. See the Nayfeh Decl. at ¶¶7-13.

6. The Davies Patent (U.S. Patent No. 3,478,758) discloses a sterilizing device for barber tools. In the Davies device, in order to sterilize cutter blades that have been disassembled from a hair clipper appliance, the blades may be placed between a pair of counter-rotating brushes mounted on a motor. See Nayfeh Decl. at ¶18; Wendlandt Decl., Exhibit F, col. 5, line 73 through col. 6, line 2. The Davies Patent does not disclose a structure to receive or support the assembled cutter head of a hair clipper appliance. See Nayfeh Decl. at ¶¶17-20.

7. In the Davies device, sterilizing fluid is fed manually to the cleaning device through a tap and hose from an external source. See Wendlandt Decl., Exhibit F, col. 4, lines 66-69, col. 5, lines 4-6. In the Davies device, there is no mechanism that feeds fluid from container 12. Id. at col. 4, lines 66-69; Nayfeh Decl. at ¶¶21-24.

8. In the Davies device, tray 74 is not above the fluid level of the cleaning fluid in the container 12 during the entire feeding operation. During the feeding operation, cleaning fluid rises above the tray. Wendlandt Decl., Exhibit F, col. 4, lines 74-75; Nayfeh Decl. at ¶¶25-27.

9.     The Davies Patent does not disclose the cradle structure, feed device, and elevation of the cradle structure relative to the cleaning fluid level in the cleaning fluid container elements of the '328 Patent. See the Nayfeh Decl. at ¶¶17-28.

10.     In the Maatz Patent (U.S. Patent No. 3,500,840) discloses a sterilizing device for barber tools. In the Maatz device, cutter blades that have been disassembled from a hair clipper appliance may be held on a rack or grid (located in a cleaning tank) by means of magnets. See Nayfeh Decl. at ¶32; Wendlandt Decl., Exhibit G, col. 2, lines 27-32. The Maatz Patent does not a structure to receive or support the assembled cutter head of a hair clipper appliance. See Nayfeh Decl. at ¶¶31-33.

11.     In the Maatz device, a drain hole drains sterilizing fluid from the cleaning tank to a storage tank, and the barber tools drip dry. See Wendlandt Decl., Exhibit G, col.3, lines 26-30; Nayfeh Decl. at ¶¶34-36..

12.     The Maatz Patent does not disclose the cradle structure and drying device elements of the '328 Patent. See Nayfeh Decl. at ¶¶31-36.

13.     During prosecution of the U.S. Patent No. 5,649,556 (the "'556 Patent"), Braun distinguished the Lee Patent (U.S. Patent No. 3,890,988) – a cleaning device for automobile parts -- on the basis that its sink was not a cradle adapted to receive a shaving head, but rather designed to receive automotive parts. See Wendlandt Decl., Exhibit D at B000096.

14.     During prosecution of the '556 Patent, Braun distinguished the Schinn Patent (U.S. Patent No. 4,815,486) – a cleaning device for paint equipment – on the basis

that its drum was not a cradle adapted to receive a shaving head, but rather designed to hold painting equipment. See id. at B000103.

15. During prosecution of the '328 Patent, Braun distinguished the Cunningham Patent (U.S. Patent No. 5,335,394) – a device for cleaning eye glasses and dentures – on the basis that the structure that supported the eye glasses and dentures was not above the cleaning fluid level of the cleaning fluid in the cleaning fluid container during the cleaning operation. See Wendlandt Decl., Exhibit C at B000335.

16. In the preferred embodiment of the invention, described in the specification of the '328 patent, the cradle 7 is a structure that supports and receives the shaving head of a shaving apparatus. The cradle 7 contains an outlet port and, thus, is able to receive fluid, retain fluid, or both receive and retain fluid. In the preferred embodiment, for example, the cradle is able to receive and retain fluid because the outlet port of the cradle is dimensioned such that the inflow of cleaning fluid from the pump is greater than the outflow of cleaning fluid. However, it would be clear to one of ordinary skill in the art that if the outlet port of the cradle were of a greater cross-sectional area, the inflow of cleaning fluid would be smaller than the outflow. In such a configuration, the cradle 7 would receive, but not retain cleaning fluid. See the Nayfeh Decl. at ¶53.

17. The Zeischke thesis discloses a cleaning system for shavers employing brushes and a vacuum. See Wendlandt Decl., Exhibit Y & Z. The Zeischke thesis does not disclose a bracket that holds the shaver in place during cleaning. Instead, it discloses two distinct "park positions," which are not brackets. See Nayfeh Decl. at ¶¶76-77.

18. Gebhard Braun, the named inventor of the '328 Patent, was not aware of the Zeischke thesis at the time the '328 Patent was prosecuted. See Wendlandt Decl., Exhibit P at 178-179.

19. During the development of the invention disclosed in the '328 Patent, Dr. Dietrich Pahl conceived of a cleaning system wherein cleaning fluid was not retained by the cradle, but was flushed through the shaver head. See Wendlandt Decl., Exhibit N at 80:2-14.

20. Mr. Norbert Smetana, an engineer who worked with Mr. Braun to optimize the drying device of the device for cleaning dry shaver, does not claim that he invented the addition of a heater to the drying device. He testified that he did not know who thought to add the heater to the drying device and that the addition of heat was well-known in the art at the time of his involvement with the cleaning device. See Wendlandt Decl., Exhibit U at 48:23 through 49:19.

21. Dr. Pahl testified that his original prototype (which preceded Mr. Smetana's involvement in the cleaning center) already had a heater in the drying device. See Wendlandt Decl., Exhibit N at 110:5-11; 148:10-12; 197:17 through 198:7.

22. Mr. Braun testified that he invented the interlock. See Wendlandt Decl., Exhibit O at 75:18 through 77:9. Mr. Braun was aware of the need to lock the shaver in place during cleaning based on his experience with electrical devices and fluids and his general knowledge of the dangers posed by such conditions. See id. Dr. Pahl confirmed that Mr. Braun invented the interlock. See Wendlandt Decl., Exhibit N at 111:9-18.

23. The claims of the '328 Patent are directed to cleaning devices for cleaning the shaving head of a dry shaver apparatus and are not directed to an improved cleaning fluid for such devices. See Wendlandt Decl., Exhibit A, col. 13, line 24 to col. 16, line 31.

24. The '328 patent discloses that the cleaning fluid should be fat dissolving. See Wendlandt Decl., Exhibit A at col. 6, lines 14-16.

25. Among the most widely used fat solvents (especially in consumer applications) are alcohols. See Nayfeh Decl. at ¶ 61.

26. Mr. Gebhard Braun testified that he did not know the composition of the cleaning fluid that he used for testing his prototype cleaning center. See Wendlandt Decl., Exhibit O at 87:8- 88:4.

27. Dr. Pahl knew that the cleaning fluid he preferred was the fluid made by a third party and marketed by Braun in a spray can for cleaning shaver parts. See Wendlandt Decl., Exhibit O at 168:23 – 169:7. Dr. Pahl did not know who manufactured the cleaning fluid, but he knew it contained alcohol (methyl alcohol, he believed). Id. at 165:16-21. Dr. Pahl testified that alcohol was the "primary thing" and that the cleaning fluid had a "[l]ittle bit of grease, of oil to lubricate the cutting elements, and a fragrance." Id. at 165:20-24. Dr. Pahl was not aware of the precise composition of alcohol, lubricant, or fragrance, but he preferred the commercially available spray bottle because it "had always the same mixture of oil and alcohol." Id. at 166:12-16 & 169:2-7.

28.     Mr. Juergen Hoeser, the engineer developed the cleaning device for dry shavers following Mr. Braun's retirement, testified that Braun continued to work to optimize the composition of the cleaning fluid long after the application for the '328 Patent was submitted to the PTO. <u>See</u> Wendlandt Decl., Exhibit T at 192:12 through 193:16 (describing three binders dedicated to correspondence with third party manufacturer involved in the continued optimization of cleaning fluid).