IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BRAUN GmbH,

              Plaintiff,

          v.

RAYOVAC CORPORATION,

              Defendant.

Civil Action No. 03-CV-12428-WGY

**BRAUN GmbH'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT TO CORRECT INVENTORSHIP**

## *Preliminary Statement*

After filing the present action, Braun GmbH ("Braun") – a German corporation – discovered that there is an error in the inventorship as listed in its U.S. Patent Nos. 5,711,328 (the "'328 Patent"). In particular, Braun has discovered that, as a result of an honest mistake as to the inventorship requirements of United States patent law, which differ from those under German patent law, and without deceptive intent, Dr. Dietrich Pahl was inadvertently not named as a co-inventor with Mr. Gebhard Braun – the named inventor – on the '328 Patent.

## *Facts*[1]

The '328 Patent discloses a innovative cleaning system for dry shavers. The invention solves the problems associated with prior dry shaver cleaners and the cleaning challenges posed by the increasingly intricate and complex shaver heads of current and future dry shavers. See '328 Patent, col.1, line 9 through col. 2, line 10. Most prior devices were ineffective at cleaning debris from the shaver head, often requiring a sealed environment to clean the cutter portion of the shaving head or manual brushing of debris from the shaver head. See id. Many were cumbersome, requiring separate cleaning and storage of the shaver or even disassembly of the shaver. The invention solves these problems by providing a device that allows a dry shaver to be cleaned, charged, and dried virtually automatically.

The invention is described in greater detail in the memoranda filed in connection with the Markman ruling rendered by this Court. Dr. Pahl has described the history of the invention and his contributions to the invention in his declaration dated July 21, 2004, and in his deposition.

---

[1] Braun files herewith its Local Rule 56.1 Statement of Undisputed Material Facts. This section presents those facts that Braun considers most critical, as well as facts that will provide additional background.

See Declaration of Dietrich Pahl dated July 21, 2004 ("Pahl Decl.") at ¶¶ 5-18; Transcript of Deposition of Dietrich Pahl on April 28, 2005 ("Pahl Dep.") at 116:19 through 118:23; 120:11 through 121:5; 130:18-131:8; 128:17-20; 135:9-17; 128:21 through 129:4; 129:13-24; 137:5-21. This is corroborated by the declaration and deposition of Mr. Braun. See Declaration of Gebhard Braun dated July 14, 2004 ("Braun Decl.") at ¶¶5, 13; Transcript of Deposition of Gebhard Braun on April 26, 2005 ("Braun Dep. Vol. 1") at 50:24 through 51:20; 53:1-18; Transcript of Deposition of Gebhard Braun on April 27, 2005 ("Braun Dep. Vol. 2") at 158:1-9. There is no dispute that Dr. Pahl is an inventor of the '328 Patent. Rayovac so concedes. See First Expert Report of Samual R. Phillips, PE ("Phillips 1st Rep.") at ¶¶ 67-68.

There was no deceptive intent by Dr. Pahl in not listing himself as an inventor on the '328 Patent. Dr. Pahl did not benefit in any way; indeed, he passed up the opportunity for inventor compensation in favor of Mr. Braun. Dr. Pahl approved of Mr. Braun as the sole inventor of the cleaning device because, consistent with his general policy, he wanted to motivate Mr. Braun to take ownership of the cleaning device project. See Pahl Decl. at ¶23; see also Pahl Dep. at 116:23 through 117:24, 121:2-4, 127:22 through 128:16. Additionally, Dr. Pahl did not want his position as the "boss" to influence decisions by Braun as to whether to invest the resources to commercialize the product. See Pahl Decl. at ¶23. Thus, the internal invention disclosure named Mr. Braun as the sole inventor. See Mr. Braun Decl. ¶7, Exhibits A & B.

Dr. Pahl understood that, under German law, a patent is not rendered invalid by incomplete disclosure of the inventors. See Dr. Pahl Decl. ¶25. Dr. Pahl was not familiar with the inventorship disclosure requirements of United States patent law. Id. at ¶¶25-26; see also Pahl Dep. at 129:5-10 and 139:6-8.

Indeed, neither Mr. Braun nor Dr. Pahl had a clear understanding of inventorship law in the United States. See Mr. Braun Decl. ¶11; Pahl Decl. ¶26; see also Pahl Dep. at 129:5-10 and 139:6-8; Braun Dep. Vol. 2 at 158:1-9. And, Mr. Braun, having lawfully been named as the sole inventor on the German patent application, did not believe that there was any reason to question the inventorship designation in the United States counterpart application. See Mr. Braun Decl. ¶10; Declaration of Wolfgang Vorbeck dated July 8, 2004 ("Vorbeck Decl.") ¶4. Dr. Pahl was not involved in the United States patent application process. See Pahl Decl. ¶17. By that time, he had developed serious medical problems and had been moved to a research group with a reduced workload where he remained until his retirement in October 1998. See Pahl Decl. ¶3.

Mr. Braun does not object to the correction of inventorship on the '328 Patent. See Mr. Braun Decl. ¶13. Braun, the assignee of the '328 Patent, also does not object. See Vorbeck Decl. ¶4. And, Rayovac has acknowledged that Dr. Pahl is a coinventor.

### *Argument*

Summary judgment is appropriate in a patent case to correct inventorship. See Stark v. Advanced Magnetics, Inc., 119 F.3d 1551, 1553 (Fed. Cir. 1997) ("Section 256[2] permits

------

[2] Section 256 provides, in part:

> Whenever … through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Commissioner may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

> The error of omitting inventors … shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

35 U.S.C. § 256.

correction by application to the Commissioner or in federal court."). In this case, summary judgment is particularly appropriate since the named inventor (Mr. Braun), the nonjoined inventor (Dr. Pahl), the assignee (Braun), and Rayovac agree that Dr. Pahl is a coinventor. See MCV, Inc. v. King-Seeley Thermos Co., 870 F.2d 1568, 1570 (Fed. Cir. 1989) (Section 256 "prescribes only one prerequisite to judicial action: all parties must be given notice and an opportunity to be heard."); accord Stark, 119 F.3d at 1553-1554.

I.     DR. PAHL IS A CO-INVENTOR OF THE '328 PATENT

Inventorship is determined on a "claim-by-claim basis." Trovan Ltd. v. Sokymat SA, Irori, 299 F.3d 1292, 1302 (Fed. Cir. 2002). To be an inventor, making "[a] contribution to one claim is enough." Ethicon, Inc. v. United States Surgical Corp., 135 F.3d 1456, 1460 (Fed. Cir. 1998); see also 35 U.S.C. § 116 (2004).[3] There is "no [minimum] on the quantum or quality of inventive contribution required for a person to qualify as a joint inventor." Fina Oil & Chem. Co. v. Ewen, 123 F.3d 1466, 1473 (Fed. Cir. 1997). Rather, "to be a joint inventor, an individual must make a contribution to the conception of the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention." Id.

In this case, Dr. Pahl conceived of and developed a cleaning device for dry shavers in mid-1992 and beginning of 1993. In a preferred embodiment, his cleaning device included at least the following features: (1) a cradle open to the atmosphere with a concave surface contoured to receive and conform to the outer surface of the shaving head of a dry shaver; (2) a

---

[3] 35 U.S.C. § 116 provides, in part:

> Inventors may apply for a patent jointly even though (1) they did not physically work together or at the same time, (2) each did not make the same type or amount of contribution, or (3) each did not make a contribution to the subject matter of every claim of the patent.

cleaning fluid container positioned such that the cleaning fluid level is below the cradle; (3) a

feed device, or pump, for feeding cleaning fluid from the cleaning fluid container to the cradle;

(4) a filter to remove hair and other debris from the cleaning fluid being delivered to the cradle;

(5) an outlet port on the cradle dimensioned such that the amount of cleaning fluid drained from

the cradle is smaller than the amount of cleaning fluid fed to the cradle from the pump; (6) an

overflow device on the cradle, allowing cleaning fluid to drain into the cleaning fluid container;

(7) a dryer, consisting of an impeller and heater, to dry the shaving head following the cleaning

operation; and (6) a wall mount.  Dr. Pahl's cleaning device was illustrated in technical

drawings, and, under Dr. Pahl's direction, functional models and a prototype of his cleaning

device were created.

Based on his work on the cleaning device, Dr. Pahl is a co-inventor on, at least,

independent claims 1, 9, 11, and 14 of the '328 patent because his cleaning device contained all

of the elements of each of these independent claims.  All parties to the '328 Patent, named

inventor Mr. Braun, omitted inventor Dr. Pahl, and the assignee of the '328 Patent – Braun –

agree that Dr. Pahl is a co-inventor. See Pahl Decl. ¶1, Mr. Braun Decl. ¶1, and Vorbeck Decl.

¶4.  Rayovac also agrees that Dr. Pahl is a co-inventor of the '328 Patent.  See Phillips 1st Rep.

at ¶¶ 67-68.

## II.    THERE IS NO EVIDENCE THAT DR. PAHL WAS OMITTED AS AN INVENTOR OF THE '328 PATENT WITH DECEPTIVE INTENT ON HIS PART

A court may correct the omission, or nonjoinder, of an inventor "upon a showing that the

error occurred without any deceptive intent on the part of the unnamed inventor." Pannu v.

Iolab, 155 F.3d 1344, 1350 (Fed. Cir. 1998); accord Stark, 119 F.3d 1551, 1555 (Fed. Cir. 1997)

("Section 256 merely precludes any deceptive intention in the inventor that seeks to be restored

to a rightful place in the patent.").  Section 256 is a "savings provision," Pannu, 155 F.3d at

1350, with "broad remedial purposes," <u>Dee v. Aukerman</u>, 625 F. Supp. 1427, 1428 (S.D. Ohio 1986) (adopted by the Federal Circuit in <u>MCV, Inc.</u>, 870 F.2d at 1570). As such, correction should be allowed where "no one has been harmed and the integrity of the patent system has not been compromised." <u>Akiebolag v. Wankesha Cutting Tools, Inc.</u>, 1 U.S.P.Q. 2d 2002, 2004 (E.D. Wis. 1986). Moreover, where patent rights have been assigned, inventorship defects are especially "harmless" and easily correctable. <u>A.F. Stoddard & Co. v. Dann</u>, 564 F.2d 556, 565 (D.C. Cir. 1977).

Consistent with this broad remedial purpose, the Federal Circuit has directed that, when determining the intent of an omitted inventor, "good faith is presumed in the absence of a persuasive showing of deceptive intent." <u>Pannu</u>, 155 F.3d at 1350, n.4; <u>see, e.g.</u>, <u>C.R. Bard, Inc. v. M3 Sys., Inc.</u>, 157 F.3d 1340, 1365 (Fed. Cir. 1998) (finding of lack of deceptive intent where "evidence points to good faith"); <u>Winbond Elec. Corp. v. International Trade Comm'n</u>, 262 F.3d 1363, 1374 (Fed. Cir. 2001) (affirming the Commission's decision not to find deceptive intent on the part of the omitted inventor on the basis of plaintiff's statement that the omission was in good faith); <u>PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.</u>, 12 F. Supp. 2d 69, 70 (D. Mass. 1998) (vacating earlier denial of section 256 motion to correct inventorship where no evidence as to the intent of the omitted inventors was presented); <u>Akiebolog</u>, 1 U.S.P.Q. 2d at 2005 (granting motion to correct inventorship where opposing party failed to show "some sort of fraud"). Moreover, deceptive intent is lacking in instances where there is no "attempt to purloin another's invention, to misstate the true state of the art to advance their application, to obtain a more favorable filing date, or to conceal material facts and circumstances going to the patentability of the claimed invention." <u>Akiebolag</u>, 1 U.S.P.Q. 2d at 2004.

Importantly, the Federal Circuit has held that foreign inventors did not act with deceptive intent when they acted "in ignorance of United States [patent law] requirements." See, e.g., Ajinomoto Co. v. Archer-Daniels-Midland Co., 228 F.3d 1338, 1344 (Fed. Cir. 2000) (rejecting defense of inequitable conduct even though not all Russian inventors were named because there is no deceptive intent when "the inventors authorized others to sign the documents in ignorance of United States requirements.").

Thus, for example, in C.R. Bard, Inc., 157 F.3d at 1353, the Federal Circuit affirmed the grant of a petition to correct inventorship where omission of inventor "was due to differences between United States and Swedish patent law." In that case, a Swedish team collaborated on a series of biopsy device patents; the named and omitted inventors declared the omissions inadvertent and attributed them to differences in Swedish and United States law. Part of the dispute focused on the contributions of a third, omitted inventor. The defendant argued the court should infer that the failure to add this inventor constituted deceptive intent. The Federal Circuit explained: "Deceptive intent is not inferred simply because information was in existence that was not presented to the examiner." C.R. Bard, 157 F.3d at 1365. Accord E-Z Bowz, L.L.C. v. Professional Prod. Research Co., No. 00 Civ. 8670(LTS)GWG, 2003 WL 22068573 1, at *18 (S.D.N.Y. Sept. 5, 2003) (quoting the same language in a discussion about nonjoinder of an inventor). To be deceptive, the court explained, the omission must have been "intended to and did mislead the examiner into taking favorable action that would not otherwise have been taken." C.R. Bard, 157 F.3d at 1365.

Similarly, in Akiebolag, 1 U.S.P.Q.2d 2002, 2005 (E.D. Wis. 1986), the district court allowed correction under section 256 where Japanese father and son co-inventors that first filed patents in Japan and subsequently filed a patent in the United States signed only by the father –

but in his son's name.  1 U.S.P.Q.2d at 2003.  The father did not clearly understand United States

patent law.  The district court allowed correction under section 256, emphasizing that the

Japanese father and son[4] "did not attempt to purloin another's invention, to misstate the true state

of the art to advance their application, to obtain a more favorable filing date, or to conceal

material facts and circumstances going to the patentability of the claimed invention."  Id. at

2004.  The court explained that the Japanese father and son "did not seek to secure any

advantage for themselves by way of the irregularity."  Id.

    Moreover, the courts have held that, where both foreign co-inventors have assigned their

rights to the invention to an assignee, correction should be allowed.  The holding in A.F.

Stoddard, 564 F.2d at 564 is instructive.  In that case, Belgian inventors who assigned patents to

their Belgian employer acted without deceptive intent where the United States patents named the

director of the Belgian company as the sole inventor because the director mistakenly believed

that only he, as a representative of the owner of the assigned patents, could sign United States

patent documents.  Id.  The Court allowed the correction, noting that "to permit the requested

[correction] would … harm no one" and to deny correction would, instead, "frustrate the

constitutional objective, would exalt form over substance, and would punish [the Belgian

company's] commendable candor."  Id.

    In the instant case, Dr. Pahl's omission on the '328 Patent occurred without deceptive

intent.  In particular, as in C.R. Bard and Akiebolag, Dr. Pahl's omission occurred as a result of a

misunderstanding of the requirements of United States patent law, which differ from German law

---

[4]  The district court in Akiebolag looked at the intent of both the named and omitted inventors.
Stark now requires that the courts limit the deceptive intent inquiry to the intent of the omitted
inventor.  199 F.3d at 1555

– where the failure to name an inventor does not affect a patent's validity.  See Vorbeck Decl.

¶4; Pahl Decl. ¶25.  Dr. Pahl did not attempt to purloin another's invention.  He did not act to

misstate the true state of the prior art or to conceal material facts going to patentability of the

claimed invention.  Instead, because inventorship is not material to the validity of a German

patent, Dr. Pahl approved the naming of Mr. Braun as the sole inventor on Braun's internal

invention disclosure to foster inventiveness and encourage Mr. Braun.  This decision not to come

forward with his role in the invention at the time Braun's internal Patent Department received

Mr. Braun's internal disclosure statement does not constitute deceptive intent.  The omission of

Dr. Pahl did not cause the examiner to take favorable action he might not otherwise have taken.

And, the patent would have still been assigned to Braun, regardless.

### *Conclusion*

WHEREFORE, partial summary judgment should be entered ordering that the Director of

the United States Patent and Trademark Office issue a Certificate of Correction to add Dr. Pahl

as a co-inventor of the '328 Patent.

<div style="margin-left:40%">

Respectfully submitted,
BRAUN GmbH,
By its attorneys,

/s/ Dalila Argaez Wendlandt
Dalila.Wendlandt@ropesgray.com
William L. Patton (BBO #391640)
Dalila Argaez Wendlandt (BBO #639280)
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
(617) 951-7000

Stanley D. Liang (admitted *Pro Hac Vice*)
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY 10021

</div>

9799681_3                                    - 9 -

Dated: August 22, 2005