**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| BRAUN GmbH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 03-CV-12428-WGY |
| | ) | |
| RAYOVAC CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**RAYOVAC CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT DECLARING U.S. PATENT NO. 5,711,328 INVALID FOR
LACK OF WRITTEN DESCRIPTION AND ANTICIPATION**

### TABLE OF CONTENTS

INTRODUCTION..........................................................................................................1

I.    THE '328 PATENT LACKS ADEQUATE WRITTEN DESCRIPTION. .............1

        1.    The '328 patent does not describe a "cradle structure" that receives, but does not retain cleaning fluid..........................................................................................2

        2.    Braun cannot create an issue of fact as to the invalidating lack of written description. ...........................4

II.    NEW EVIDENCE AND LAW REQUIRES THE COURT TO REVISE ITS TENTATIVE "CRADLE STRUCTURE" CONSTRUCTION.......................7

III.    THE PRIOR ART ANTICIPATES THE '328 PATENT.....................................10

    A.    U.S. Patent No. 3,365,267 ("the MeKiney Patent") ...................................10

        1.    The parties do not dispute that the MeKiney Patent discloses many elements of claims 11, 14, and 18. ...........10

        *Claim 11*...............................................................................................*11*

        2.    "a cradle structure adapted to receive a shaving head of a shaving apparatus" ...............................................11

        3.    "a drying device" .............................................................13

        *Claim 14*...............................................................................................*14*

        4.    "a cradle structure adapted to receive a shaving head of a shaving apparatus" ...............................................14

        *Claim 18*...............................................................................................*14*

        5.    "a cradle structure adapted to receive a shaving head of a shaving apparatus" ...............................................14

        6.    "a bracket for insertion of the shaving apparatus therein"...............................................................................14

    B.    U.S. Patent No. 2,976,552 ("the Loeffler Patent") ...................................15

        1.    The parties do not dispute that the Loeffler Patent discloses many elements of claim 14................................15

        2.    "a cleaning fluid container" ..............................................15

        3.    "a feed device for feeding cleaning fluid from said cleaning fluid container to said cradle structure" .............16

        4.    "said cradle structure being arranged above a fluid level of the cleaning fluid in said cleaning fluid container during the feeding of said cleaning fluid to said cradle structure" ................................................17

    C.    U.S. Patent No. 3,478,758 ("the Davies Patent") ....................................18

        1.    The parties do not dispute that the Davies Patent discloses many elements of claims 11 and 12. .................18

        2.    "a cradle structure adapted to receive a shaving head of a shaving apparatus" ...............................................18

i

3.  "a feed device for feeding cleaning fluid from said cleaning fluid container to said cradle structure" ..............19

4.  "said cradle structure being arranged above a fluid level of the cleaning fluid in said cleaning fluid container during the feeding of said cleaning fluid to said cradle structure" ....................................................20

IV.    CONCLUSION........................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Biogen, Inc. v. Bertex Labs., Inc.*,
    318 F.3d 1132, 1141 (Fed. Cir. 2003) ................................................... 23

*Dayco Prods. Inc. v. Total Containment, Inc.*,
    329 F.3d 1358, 1368 (Fed. Cir. 2003) ................................................... 15

*Fiers v. Revel*,
    984 F.2d 1164, 1169 (Fed. Cir. 1993) ..................................................... 9

*Gentry Gallery, Inc. v. Berkline Corp.*,
    134 F.3d 1472, 1479 (Fed. Cir. 1998) ................................................ 7, 9

*In re Benno*,
    768 F.2d 1340, 1346 (Fed. Cir. 1985) ................................................... 12

*In re Gosteli*,
    872 F.2d 1008, 1012 (Fed. Cir. 1998) ..................................................... 7

*In re King*,
    801 F.2d 1324, 1327 (Fed. Cir. 1986) ................................................... 22

*In re Schreiber*,
    128  F.3d 1473, 1477 (Fed. Cir. 1997) ................................................... 15

*Lockwood v. Am. Airlines, Inc.*,
    107 F.3d 1565, 1572 (Fed. Cir. 1997) ............................................. 7, 11

*Novo Indus., L.P. v. Micro Molds Corp.*,
    350 F.3d 1348, 1353 (Fed. Cir. 2003) ................................................... 12

*Pfaff v. Wells Elecs., Inc.*,
    525 US 55, 63 (1998) ............................................................................. 13

*Phillips v. AWH Corp.*,
    415 F.3d 1303, at 7 (Fed. Cir. 2005) ................................... 13, 14, 17

*Regents of the Univ. of Cal. v. Eli Lilly & Co.*,
    119 F.3d 1559, 1568 (Fed. Cir. 1997) ..................................................... 8

*Schering Corp. v. Amgen, Inc.*,
    25 F. Supp. 2d 293, 299 ....................................................................... 13

*Smith v. Snow*,
    294 U.S. 1, 14 (1935) ..................................................................... 14, 15

*Texas Digital Systems, Inc. v. Telegenix, Inc.*,
    308 F.3d 1193 (Fed. Cir. 2002) ........................................................................ 13

*Vas-Cath Inc. v. Mahurkar*,
    935 F.2d 1555, 1563 (Fed. Cir. 1991) ......................................................... 6, 12

**Statutes**

**35 U.S.C. § 102** ........................................................................................ 15, 20, 23

**35 U.S.C. § 112** ................................................................................................... 12

## INTRODUCTION

Plaintiff Braun GmbH ("Braun") claims that Defendant Rayovac Corporation ("Rayovac") infringes U.S. Patent No. 5,711,328 ("the '328 patent"). The '328 patent is generally directed at cleaning systems for shavers.[1] At the outset of this litigation (most particularly in the *Markman* proceedings), Braun overreached to stretch the '328 patent claims far beyond anything Gebhard Braun (or Dietrich Pahl) allegedly invented. Braun reversed field once expert reports were served. Rayovac's expert Samuel Phillips opined, *inter alia*, that (1) the '328 patent lacked adequate written description to support the "cradle structure" limitation, as construed by the Court; and (2) all asserted patent claims are anticipated by the prior art.

In response to the undisputed lack of written description, Braun's expert Dr. Samir Nayfeh retreats to what would have been allegedly "obvious" to the ordinary artisan in an attempt to bridge the gap between what the alleged inventors (named and unnamed) invented and what Braun now tries to claim. At best for Braun, the undisputed record requires the Court to modify its tentative "cradle structure" construction. Dr. Nayfeh likewise "construes" the Court's tentative claim constructions to avoid the prior art, reading in limitations or concocting them out of thin air. But Braun, by and through Dr. Nayfeh, cannot have its cake and eat it too. Its initial overreaching invalidated the '328 patent. Consequently, summary judgment must be granted.

## I.      THE '328 PATENT LACKS ADEQUATE WRITTEN DESCRIPTION.

A patent claim is invalid if it fails to provide written description for the claimed invention. 35 U.S.C. § 112, ¶ 1. The adequacy of a patent's written description is a question of fact. *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991) ('Our cases also provide that compliance with the 'written description' requirement of § 112 is a question of fact.").

---

[1]    Braun has asserted, but agreed to voluntarily dismiss with prejudice its claim that Rayovac infringed U.S. Patent No. 5,649,556 ("the '556 patent").

Satisfaction of the written description requirement mandates that the patent specification "must clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1472, 1479 (Fed. Cir. 1998) (quoting *In re Gosteli*, 872 F.2d 1008, 1012 (Fed. Cir. 1998)) (alteration in original). There is no compliance with the written description requirement unless the applicant describes "the invention with all of its claimed limitations." *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997).

> 1.    **The '328 patent does not describe a "cradle structure" that receives, but does not retain cleaning fluid.**

The Court has tentatively construed the "cradle structure" limitation to mean "a structure adapted to receive or support a shaving head and able to receive or retain fluid or both." There is no dispute, however, that the sole explicit written description in the patent specification corresponds with a structure that receives *and* retains fluid, as confirmed by Mr. Phillips. ¶¶ 68-78. The specification of the '328 patent clearly provides:

- "[T]he outlet port 27 is dimensioned such that the cradle 7, when supplied with cleaning fluid from a pump 23 described in the following, rather than being allowed to run empty, is at all times kept filled to the rim, with excess cleaning fluid being mainly discharged over the rim of the cradle 7 in the direction of the arrow, collecting in the cleaning fluid container underneath. In this manner, a sufficient amount of cleaning fluid is at all times available for the cleaning cycle. (Ex. 1, at col. 6, ll. 44-52.)

While written description is generally a question of fact, here there is only a question of law. That is, is written description corresponding only with a structure that *must* receive *and* retain cleaning fluid to function sufficient to support a broader claim to a structure that merely receives cleaning fluid (which the inventor(s) never conceived). The answer to that question invalidates the '328 patent.

Although description of a single species does not generally "compel the conclusion" that there is adequate written description of a claim directed to the entire genus, s*ee Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1568 (Fed. Cir. 1997), here, neither the named inventor (Gebhard Braun) nor the unnamed inventor (Dietrich Pahl) ever conceived of a "cradle structure" that received, but did not retain cleaning fluid.[2]  ¶¶ 70-78.  Mr. Braun admitted that fact at his deposition:

> Q:    Did you ever create a shaver cleaning system in which the trough did not retain fluid.
>
> ***
>
> A:    Do you mean this was only like — spray?  One could imagine it was only spray.  No, we did not do such a thing.  **It was always immersed in fluid**.
>
> Q:    And why was it always immersed in fluid?
>
> A:    Because this showed this fantastic cleaning effect.  We found that this especially was the reason why the device could clean itself so fast and the fluid could enter through the falls through these small openings and we felt this could not have been achieved by spraying.
>
> Q:    So you considered — well, in your work did you ever attempt to develop a cleaning system in which the shaver was sprayed with cleaning fluid as opposed to being bathed?
>
> A:    No.
>
> ***
>
> Q:    [D]id you ever think of pumping fluid directly into the shaver head to flush out hair?
>
> ***
>
> A:    What we found out that if the trough was not filled high enough, if the level of the fluid was too low to cover the cutting head the result was not so good.

---

[2]   The deposition testimony of Juergen Hoeser confirms that fact.  Mr. Hoeser took over the work on the cleaning device from Braun/Pahl in July 1995.  ¶ 79.  At that time, he described the work of Mr. Braun and Dr. Pahl as a "chicken trough" based upon his recollection of a tub filled to the rim with water on a farm to feed chickens.  ¶ 80.  Mr. Hoeser testified that he is the only individual at Braun to think of a cleaning device in which a "cradle structure" does not retain fluid.  ¶ 81.

Q:      [D]id you ever test the cleaning system in a situation where there was no fluid retained in the cradle structure?

A:      This was like if I just turned the razor with the head down and I just operate it. *How should this cleaning system work?* This would mean we would not need a cleaning system. This would mean we just had to turn the razor and run it.

(Ex. K, Braun Dep., at 73-75 (emphasis added).) An inventor obviously cannot describe what he did not conceive. *Fiers v. Revel*, 984 F.2d 1164, 1169 (Fed. Cir. 1993).

The truth is that, when Mr. Braun and Dr. Pahl developed their cleaning device, they believed that a cleaning device having a "cradle structure" that received, but did not retain fluid would not function. ¶¶ 70-78. Mr. Braun stated unequivocally that a cleaning system having a "cradle structure" that does not retain fluid is equivalent to no cleaning system at all.[3] ¶ 76. If Mr. Braun and Dr. Pahl invented anything, it must be, as they contend, a device that actually cleans something. Thus, "one skilled in the art would clearly understand that [the receipt *and* the retention of fluid] was not only important, but essential to [Braun's alleged] invention." *See Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1480 (Fed. Cir. 1998). Summary judgment must be granted to Rayovac.

### 2.    Braun cannot create an issue of fact as to the invalidating lack of written description.

Desperately searching for actual evidence, Dr. Nayfeh asserts that "Dr. Pahl testified that he conceived of a cleaning system wherein liquid was not retained by the cradle, but was flushed through the shaver head." (Ex. 15, at 27.) Dr. Nayfeh's citation to Dr. Pahl's deposition borders on misrepresentation because his testimony proves *Rayovac's point, not Braun's*. Specifically, Dr. Pahl testified:

---

[3]    Additionally, Mr. Braun described his alleged invention internally at Braun as "a specially configured trough (1) into which the shaver (2) is immersed upside down." ¶ 77.

Q:      I want to know why you see the spraying of fluid in a dishwasher as different from the operation of the cleaning center[?]

A:      Let's put that way we once consider whether we could spray stuff in, but I personally feel it's much more efficient if you immerse the shaver head, especially cutter blocks …

Q:      Spray, spray liquid into the cradle?

A:      Well, when we pump the liquid in it's basically also spraying, call it spray, you can pump it.  You can call it pumping.  Don't really — as long as you have a cradle.  ***How you feed in the liquid into the cradle is irrelevant for my opinion. The main thing is that the cutter block is immersed in the liquid***.

Q:      When you say the main thing, what do you mean the main thing?

A:      The ***most important thing*** for good cleaning result is that cutter block is ***immersed into the liquid***.  The liquid level is — put that way.  That the cutter blocks are in liquid, operating in the liquid.  And this you can from my opinion only ensure if you have the whole head in the cradle.

Q:      And so the whole cradle would be then filled with liquid, is that correct?

A:      Correct.

***

Q:      Well, what other ways did you consider to operate your cleaning system? What other ways did you consider for cleaning the shaver head in your cleaning center?

A:      I think it was, simply that thing.  Fill up a cradle with liquid, put the shaver in it, let the cutter blocks operate.

Q:      That's the idea you thought of, right?

A:      Yes.

(Ex. J, Pahl Dep., at 80-81 (emphasis added).)  Contrary to Dr. Nayfeh's opinion, Dr. Pahl's testimony is identical to Mr. Braun's.  Regardless of how cleaning fluid reaches the "cradle structure" (be it pumping or spraying), it is essential that the "cradle structure" receive ***and*** retain cleaning fluid for the cleaning device to work.

5

Aside from his mischaracterization of testimony, the remainder of Dr. Nayfeh's opinions can be disposed of as a matter of law.  Dr. Nayfeh actually does not disagree with Mr. Phillips' opinion that the '328 patent fails to describe a "cradle structure" that only receives (*i.e.*, does not also retain) cleaning fluid.  ¶ 69.  Rather, he opines that a "cradle structure" that merely receives fluid would have been "obvious" to the ordinary artisan.   Specifically, Dr. Nayfeh states: "[I]t would be clear to one of ordinary skill in the art that if the outlet port of the cradle were of a greater cross sectional area, the inflow of cleaning fluid would be smaller than the outflow.  In such a configuration, the cradle 7 would receive, but not retain cleaning fluid."  (Ex. 15, at 27.) Dr. Nayfeh's opinion is legally erroneous.

*First*, unlike the enablement requirement, written description for a claimed invention cannot be satisfied by what would have been allegedly "obvious" to one of ordinary skill in the art at the time of the alleged invention.  *Lockwood*, 107 F.3d at 1572 ("One shows that one is 'in possession' of the *invention* by describing *the invention*, with all its claimed limitations, not that which makes it obvious.").  Dr. Nayfeh's conjecture — and it is nothing more than that — as to what would have been "clear" to the ordinary artisan is legally irrelevant.

*Second*, given the fact that Mr. Braun and Dr. Pahl testified that the cleaning device would not work without the retention of cleaning fluid in the "cradle structure," it defies credulity that the "ordinary artisan" would modify the device disclosed in the '328 patent as Dr. Nayfeh suggests.  Mr. Braun and Dr. Pahl certainly did not think the suggested modification was "clear."

Dr. Nayfeh also argues that unasserted dependent claim 2 of the '328 patent provides written description for the "cradle structure" limitation.[4]    It is bedrock law that written description is judged as of the effective filing date of the '328 patent — here January 1995. *Vas-Cath Inc.*, 935 F.2d at 1564-64.  Braun amended dependent claim 2 during prosecution of the '328 patent.  ¶ 89.  Claim 2 also depends from unasserted claim 1, and Braun substantially amended claim 1 during prosecution.  ¶¶ 87 & 90.  Dependent claim 2, which came to exist in its final form in ***1997***, obviously could not supply written description in ***1995***.  *See In re Benno*, 768 F.2d 1340, 1346 (Fed. Cir. 1985) ("The scope of a patent's claims determines what infringes the patent; it is no measure of what it discloses.")

Not only is dependent claim 2 legally irrelevant, it provides ***no description*** of a "cradle structure" that only receives cleaning fluid.  Dependent claim 2 is merely (and unremarkably) a species of "cradle structure" that retains cleaning fluid.  *See id.*

## II.    NEW EVIDENCE AND LAW REQUIRES THE COURT TO REVISE ITS TENTATIVE "CRADLE STRUCTURE" CONSTRUCTION.

It should come as no surprise to the Court that Rayovac respectfully believes that the Court's tentative claim construction of the "cradle structure" limitation is problematic.  In the context of the deficiencies of the '328 patent pursuant to 35 U.S.C. § 112, it is appropriate to discuss claim construction, especially in light of new law and evidence.[5]  See *Phillips v. AWH*

---

[4]    "A device as claimed in claim 1, wherein a cross-sectional area of the outlet port is dimensioned such that during the cleaning operation the amount of cleaning fluid drained through the outlet port is smaller than the amount of cleaning fluid supplied to the cradle structure by the feeding device."

[5]    Mr. Phillips has opined that the '328 patent is indefinite pursuant to 35 U.S.C. § 112, ¶ 2. *See Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1353 (Fed. Cir. 2003) ("If the court determines that a claim is no 'amenable to construction,' then the claim is invalid as indefinite under 35 U.S.C. § 112, ¶ 2.").  More particularly, it is his opinion that one of ordinary skill in the art could not reconcile the Court's tentative claim construction with the '328 patent prosecution history.  ¶¶ 91-92.

*Corp.*, 415 F.3d 1303, at 7 (Fed. Cir. 2005) (*en banc*) (noting that § 112 "frame[s] the issue of claim interpretation").[6]

The parties have briefed the issue previously, and Rayovac still maintains that the alternative claim constructions presented are correct.[7]  Here, Rayovac briefly presents evidence that was not available to the Court at the *Markman* Hearing and proposes a slight modification to the Court's construction.  As suggested by Mr. Phillips, the Court's construction would be more appropriate if it read "a structure adapted to support or receive a shaving head of a shaving apparatus and able to receive *and* retain fluid."[8]  ¶ 93.

Beyond the new evidence presented here, an *en banc* panel of the Federal Circuit recently discussed claim construction in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*), further requiring re-analysis of the Court's tentative claim construction.[9]  In *Phillips*, the Federal Circuit reaffirmed the unexceptional proposition that "[t]he patent system is based on the proposition that claims *cover only the invented subject matter*."  415 F.3d at 15 (emphasis added).  The touchstone of our patent system is the actual conception of a new and useful idea.  *See Pfaff v. Wells Elecs., Inc.*, 525 US 55, 63 (1998) ("[T]he patent system . . . encourages both the creation and the public disclosure of new and useful advances in technology. . . .").  The

---

[6]  As official page numbers were not available, pin cites of *Phillips* throughout refer to the page numbers of the copy attached as Ex. 31.

[7]  If necessary, Rayovac, of course, reserves the right to subsequently challenge on appeal any claim constructions to which it did not agree at the *Markman* Hearing.

[8]  Mr. Phillips' opinions were not available to the Court at the *Markman* Hearing.  It is appropriate for the Court to consider his opinion for the purposes of claim construction.  *Schering Corp. v. Amgen, Inc.*, 25 F. Supp. 2d 293, 299 ("[N]ewly discovered evidence can only serve as a basis for reargument if it were truly unobtainable at the time of the *Markman* hearing.").

[9]  Particularly, in *Phillips*, the Federal Circuit rejected the importance of dictionaries to claim constrction expressed in cases such as *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002).  In its briefing, Braun relied upon a definition of the word "cradle" in the McGraw-Hill Dictionary of Scientific and Technical Terms.  ¶ 94.  "There is no guarantee that a term is used in the same way in a treatise as it would be by the patentee."  415 F.3d at 15.

problem with the Court's tentative claim construction, however, is that it embraces subject matter which neither Mr. Braun nor Dr. Pahl conceived (and which Braun explicitly disclaimed). Both individuals were asked about their allegedly inventive "cradle structure." As discussed above in connection with written description, both testified that their allegedly inventive cleaning device would only work, *i.e*, to actually clean a shaver, if the "cradle structure" received *and* retained cleaning fluid.[10] ¶¶ 70-75. Undeniably, retention of fluid in the "cradle structure" is essential to the Braun/Pahl invention (if there is an invention at all). As recognized by the Supreme Court, "if the claim were fairly susceptible of two constructions, that should be adopted which will secure to the patentee his *actual invention*." *See Smith v. Snow*, 294 U.S. 1, 14 (1935) (emphasis added). The Court's claim construction should thus at least be modified as suggested by Mr. Phillips.

"It is … entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims." 415 F.3d at 12. To be clear, Rayovac is not suggesting here that the Court interpret the "cradle structure" limitation as limited to the sole embodiment disclosed in the patent (or unasserted dependent claim 2).[11] That the "cradle structure" must receive and retain cleaning fluid does not imply any requirement of an outlet port, its dimensions, or any other component of the "cradle structure."[12]

---

[10] While self-serving inventor testimony may not be used to expand claim scope, it is entirely appropriate for a court to consider inventor testimony as to what he or she actually invented to arrive at the true and proper claim construction. *Phillips*, 415 F.3d at 12 ("Although we have emphasized the importance of intrinsic evidence in claim construction, we have also authorized district courts to rely on extrinsic evidence, which [includes] inventor testimony.")

[11] In the '328 patent, the cradle (7) is referred to as the "wet portion." ¶ 95. The cradle includes an overflow device (26) which prevents fluid from exceeding a defined level and ensures that the shaving head is immersed in cleaning fluid. ¶ 96. The outlet port is dimensioned such that the cradle, when supplied with cleaning fluid from the pump, is at all times kept filled to the rim during the cleaning operation. ¶ 97.

[12] For example, a "cradle structure" using the siphon tube of the MeKiney Patent (discussed below in connection with anticipation) to evacuate fluid would fall within the construction suggested by Mr. Phillips.

Simply, as the inventors have testified and as set forth in the specification, the receipt and the retention of cleaning fluid in the "cradle structure" is essential to the alleged invention:

> [T]he cradle 7 conforms approximately to the outer contour of the shaving head 3 of the shaving apparatus 1, and it holds only as much cleaning fluid as is necessary for the respective cleaning operation.

(Ex. 1, at col. 6, ll. 18-22.)  Accordingly, Rayovac respectfully suggests that the Court at least modify its claim construction as suggested by Mr. Phillips to reflect Mr. Braun's and Dr. Pahl's actual invention.  *Snow*, 294 U.S. at 14.

## III.    THE PRIOR ART ANTICIPATES THE '328 PATENT.

A patent is invalid where its claims can be found in the prior art.  35 U.S.C. § 102. Anticipation is found where each and every element of a claim is disclosed, either expressly or inherently, in a single prior art reference.  *See Dayco Prods. Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1368 (Fed. Cir. 2003) ("the dispositive question regarding anticipation [i]s whether *one skilled in the art* would reasonably understand or infer from the [prior art reference's] teaching that every claim element was disclosed in that single reference"); *In re Schreiber*, 128 F.3d 1473, 1477 (Fed. Cir. 1997) (same).

### A.    U.S. Patent No. 3,365,267 ("the MeKiney Patent")

The MeKiney Patent issued on January 23, 1968.  ¶ 99.  It is thus prior art pursuant to 35 U.S.C. § 102(b).[13]  The MeKiney Patent discloses a liquid cleaning system for barber's tools including hair clippers and razors that anticipated nearly all asserted claims three decades before the '328 patent issued.

### 1.    The parties do not dispute that the MeKiney Patent discloses many elements of claims 11, 14, and 18.

---

[13]    Braun has asserted that the '328 patent was conceived in the 1992-93 time frame.  ¶ 98.

Mr. Phillips has opined, and Dr. Nayfeh does not disagree that the MeKiney Patent discloses many elements of claim 11.  ¶ 100.  The undisputed elements are set forth at Paragraphs 101-103 of Rayovac's Statement of Undisputed Facts.  In addition to the undisputed elements, for the reasons set forth below, the Court should hold that the MeKiney Patent discloses the disputed elements of claims 11, 14, and 18.

## Claim 11

### 2.    "a cradle structure adapted to receive a shaving head of a shaving apparatus"

The MeKiney Patent discloses "a cradle structure adapted to receive a shaving head of a shaving apparatus."  The Court has tentatively construed the limitation to mean "a structure adapted to support or receive a shaving head of a shaving apparatus and able to receive or retain fluid or both."  As discussed above, the MeKiney Patent discloses a cleaning system for barber's tools, and that cleaning system contains at least two "cradle structures," as tentatively construed by the Court.

First, the tank 12 in the MeKiney Patent is plainly a structure.  ¶ 105.  As illustrated in Figure 3 of the MeKiney Patent above, tank 12 both receives and supports razor 42, a type of shaving apparatus.  ¶¶ 106-107.  During cleaning, tank 12 is filled with cleaning fluid, and it thus is able to both receive and retain cleaning fluid.  ¶¶ 108-109.

That tank 12 is a "cradle structure," as tentatively construed by the Court, is, not only the opinion of Mr. Phillips, it was also the opinion of the United States Patent and Trademark Office ("the USPTO").  During prosecution of what became unasserted claim 1 of the '328 patent, the Patent Examiner found that tank 12 of the MeKiney Patent is a "cradle structure" in rejecting application claim 1.  ¶ 110.  Braun never disputed that argument, and instead substantially

amended the "cradle structure" limitation in application claim 1.[14]  ¶ 111.  For all asserted claims of the '328 patent, however, the original "cradle structure" language remained.  There can be no dispute that the MeKiney Patent discloses a "cradle structure."

Second, the MeKiney Patent also discloses shelf 44, a part of tank 12.  ¶ 113.  The MeKiney Patent states "shelf [44] is **specifically adapted** to support clipper blades such as 48 which will be retained and held on the shelf 44 by means of magnets 46."  ¶ 114.  The clipper blades, which are bathed on shelf 44, are the head of electric hair clipper, a type of dry shaving apparatus.  ¶¶ 115-116

Dr. Nayfeh cannot distinguish the MeKiney Patent by reading in limitations inconsistent with Braun's claim construction.  Looking to the specification, not the claim, he first asserts that "the cradle structure of claim 11 is adapted to receive the shaving head of a **dry** shaving apparatus, **without disassembly of the shaving head into its cutter and foil components**."  (Ex. 15, at 4 (emphasis added).)  At the *Markman* Hearing, Braun agreed to the Court's tentative construction of the "cradle structure" limitation.  Dr. Nayfeh cannot renege now.

Nothing in claim 11 requires that the cradle structure receive a "dry shaving apparatus"; all that it is necessary is a "shaving apparatus."  Before dismissing its claim with prejudice, Braun had asserted the '556 patent which does require a **dry** shaving apparatus.  ¶ 117.  The claims of the '328 patent do not.  Braun chose to claim more broadly in the '328 patent than in the '556 patent, and it cannot escape the prior art by reading a limitation in now.  *Phillips*, 415 F.3d at 12.  The '328 patent covers all types of shaving apparatus, not just dry shaving apparatus.  ¶¶ 118-119.  In its *Markman* briefing and at the Hearing, Braun never argued that a "cradle structure" is limited to "cradles" that receive an assembled shaving head.  Nothing in the claim

---

[14]  Braun specifically changed the "cradle structure" limitation to require a "concave surface for receiving a shaving head of a shaving apparatus."

language requires that result. Indeed, the words "assembled" or "disassembled" do not even appear in the '328 patent. ¶ 120. Dr. Nayfeh's effort to revise the Court's tentative claim construction is wrong as a matter of law.

Dr. Nayfeh next asserts that tank 12 "does not support or receive the head of a hair clipper." (Ex. 15, at 4.) This argument is, of course, premised on the legally erroneous proposition that the '328 patent is limited to a dry shaving apparatus. Dr. Nayfeh does not (and cannot) dispute that tank 12 is shown in Figure 3 receiving and supporting razor 42, a shaving apparatus. ¶¶ 106-107.

Dr. Nayfeh next argues that shelf 44 "is not adapted to support or receive anything." (*Id.*, at 3.) Dr. Nayfeh is directly contradicted by the MeKiney Patent's statement that "[shelf 44] is specifically adapted to support clipper blades[.]" ¶ 114.

Finally, Dr. Nayfeh asserts that shelf 44 "cannot be properly called a 'cradle structure adapted to receive a shaving head of a shaving apparatus,' which one of skill in the art would understand to require a ***structure of form and dimensions to 'cradle'*** the shaving head." (Ex. 15, at 4 (emphasis added).) But nothing in the Court's tentative claim construction requires that the structure have particular "form and dimensions." Indeed, with respect to the '328 patent, Braun previously that "[t]he language in the claim ***says nothing*** about the form of the cradle structure …" (Braun Markman Br., at 7 (emphasis added).) Braun's prior argument to the Court is dispositive.

### 3.    "a drying device"

At the *Markman* Hearing, the parties agreed that the limitation "a drying device" means "a device to dry the shaver head." The MeKiney Patent cleaning device includes a siphon tube 24, as illustrated in Figure 3. Following cleaning, the siphon tube 24 acts as a device that drains

the fluid from the tank 12 and the shelf 44, thereby drying both the razor 42 and the clipper blades.  ¶¶ 121-122.

Dr. Nayfeh argues that siphon tube 24 is not a "drying device" because it "is not a *mechanism* for *active* drying of the barber tools."  (Ex. 15, at 4 (emphasis added).)  Nothing in the agreed claim construction requires (1) a mechanism or (2) "active" drying.  Simply, Braun agreed that the limitation covers devices that act to both actively and passively dry.  It cannot be disputed that the siphon tube 24 dries the razor and clipper blades.  Otherwise, a user would need to hand dry the tools after removing them from the cleaning fluid.  Consequently, summary judgment must be granted on claim 11.

## Claim 14

### 4.    "a cradle structure adapted to receive a shaving head of a shaving apparatus"

For claim 14, the experts only dispute that the "cradle structure" limitation is not present in the MeKiney Patent.  For reasons set forth above, the Court should thus grant summary judgment on claim 14.

## Claim 18

### 5.    "a cradle structure adapted to receive a shaving head of a shaving apparatus"

The "cradle structure" limitation is identical in both claims 11 and 18.  For reasons set forth above, the Court should hold that the MeKiney Patent discloses the "cradle structure" limitation.

### 6.    "a bracket for insertion of the shaving apparatus therein"

14

The Court has tentatively construed the term "bracket" to mean "a bracket or projecting support." As illustrated in Figure 1, shelf 34 and slot 38 function to support the razor 42 received in tank 12.[15] ¶ 123.

Dr. Nayfeh concedes that a shelf "may be considered a bracket or projecting support," and that shelf 34 supports the razor 42. (Ex. 15, at 13.) He argues, however, that the shelf 34 "is not a projecting support or bracket for insertion of a hair clipper apparatus." (*Id.*) It is true that a hair clipper is not supported by shelf 34. But that is irrelevant. As discussed above, the '328 patent is not limited to a dry shaving apparatus. Because there is no dispute that the shelf 34 supports razor 42, the limitation is met.

**B.    U.S. Patent No. 2,976,552 ("the Loeffler Patent")**

The Loeffler Patent issued on March 28, 1961. ¶ 127. It is thus prior art pursuant to 35 U.S.C. § 102(b). In the Loeffler Patent, a hair clipper is held in a "cradle" and cleaned, *inter alia*, by a sterilizing fluid held in a spray can. ¶ 128.

> **1.    The parties do not dispute that the Loeffler Patent discloses many elements of claim 14.**

Mr. Phillips has opined, and Dr. Nayfeh does not disagree that the Loeffler Patent discloses many elements of claim 14. ¶ 129. The undisputed elements are presented at Paragraph 130 of Rayovac's Statement of Undisputed Facts. In addition to the undisputed elements, for the reasons set forth below, the Court should hold that the Loeffler Patent discloses the disputed elements of claim 14.

> **2.    "a cleaning fluid container"**

---

[15]    Mr. Phillips also asserts that magnets 46 included with shelf 44 function as a bracket ¶ 124.

The parties have agreed that the limitation a "cleaning fluid container" means "a container for holding cleaning fluid." The Loeffler Patent discloses this limitation, providing for "a conventional spraying can 60, containing the sterilizing fluid." ¶ 131.

Dr. Nayfeh argues that the limitation is not met because the Loeffler Patent calls the fluid in the can "sterilizing fluid" rather than "cleaning fluid." (Ex. 15, at 11.) This argument is incredible on its face. It is ridiculous insofar as Dr. Nayfeh uses the terms "sterilizing fluid" and "cleaning fluid" synonymously in *his own report*. (*Id.*, at 3 ("The *sterilizing fluid* then builds up in the upper tank, soaking the barber tools in *cleaning fluid*.") (emphasis added).) Dr. Nayfeh's word game aside, washing by spraying is obviously a cleaning process.[16] ¶ 133.

Dr. Nayfeh also states: "As is clear from Figure 1 of the Loeffler Patent …, there is no provision to catch or contain the contaminated fluid that would drain from the shaving head in a fluidic cleaning operation." (*Id.*, at 11.) All that is required, however, is a container holding cleaning fluid, rendering Dr. Nayfeh's opinion an error of law.

### 3. "a feed device for feeding cleaning fluid from said cleaning fluid container to said cradle structure"

The Loeffler Patent discloses "a feed device for feeding cleaning fluid from said cleaning fluid container to said cradle structure." More specifically, the Loeffler Patent discloses: "The spraying can 60 is at the top thereof provided with a conventional, depressible valve 75 having the usual spray opening at one side thereof." ¶ 135. As recognized by Mr. Phillips, the valve 75 is a feed device. When the valve 75 is depressed, the "cradle structure" and clipper head are sprayed with fluid. ¶ 136.

---

[16] The cleaning fluid that Mr. Braun and Dr. Pahl originally used in developing their cleaning device, in fact, came from Braun spray cans. ¶ 134.

Dr. Nayfeh asserts that valve 75 cannot "rightly be called" a "feed device."  (Ex. 15, at 12.)  He says a valve is an allegedly distinct "flow control device."  Braun, of course, never attempted to so restrict the "feed device" limitation.  To the contrary, Braun previously stated that a "feed device" is merely "a mechanism for moving fluids … from one location to another." (Braun Markman Br., at 11.)  Valve 75 does just that, "forcing a powerful spray of disinfectant against the clipper head[.]"  ¶ 137.  Dr. Pahl testified that spraying fluid and pumping fluid are effectively the same thing.  Simply, "forcing" a spray of fluid is obviously moving fluid from the can to the cradle structure.

### 4.    "said cradle structure being arranged above a fluid level of the cleaning fluid in said cleaning fluid container during the feeding of said cleaning fluid to said cradle structure"

As illustrated in Figure 1, before the clipper head is cleaned, spraying can 60 is tilted downward.  ¶ 140.  By tilting the can, the level of cleaning fluid in the can would be below the "cradle structure" during feeding.  ¶ 141.  The Loeffler Patent also discloses that over time the amount of fluid in the can will decrease, and the spray can will need to be replaced.  ¶ 142. Accordingly, in the Loeffler Patent, the level of cleaning fluid in the spray can would be below the "cradle structure" during at least some of the device's operation.  ¶ 143.

Dr. Nayfeh disagrees with Mr. Phillips that the level of cleaning fluid in the can would always be below the "cradle structure" during feeding in the Loeffler Patent.  (Ex. 15, at 12.) He, however, concedes that "the fluid level in the Loeffler device's sterilizing fluid container is not below the cradle structure until the spray can has been partially emptied."  (*Id.*)  Dr. Nayfeh thus admits that the fluid level in the "sterilizing fluid container" *is* below the cradle structure once the spray can has been partially emptied.  There is thus no issue of fact that the Loeffler Patent discloses the element at least some of the time, and that is all the law requires.  *See In re King*, 801 F.2d 1324, 1327 (Fed. Cir. 1986) (finding anticipation when claims from a previously

17

patented structure would perform in the same manner when placed in a certain environment); *see also Biogen, Inc. v. Bertex Labs., Inc.*, 318 F.3d 1132, 1141 (Fed. Cir. 2003) ("[I]nefficient infringement is still infringement.")

    **C.**    **U.S. Patent No. 3,478,758 ("the Davies Patent")**

The Davies Patent issued on November 18, 1969. ¶ 144. It is thus prior art pursuant to 35 U.S.C. § 102(b). The Davies Patent is entitled "Washing and Sterilizing Device." In particular, it discloses an impeller for drying cleaned items.

    **1.**    **The parties do not dispute that the Davies Patent discloses many elements of claims 11 and 12.**

Mr. Phillips has opined, and Dr. Nayfeh does not disagree that the Davies Patent discloses many elements of claims 11 and 12. ¶ 145. The undisputed elements are presented at Paragraphs 159-161 of Rayovac's Statement of Undisputed Facts. In addition to the undisputed elements, for the reasons set forth below, the Court should hold that the Davies Patent discloses the disputed elements of claims 11 and 12.

    **2.**    **"a cradle structure adapted to receive a shaving head of a shaving apparatus"**

The Davies Patent discloses "a cradle structure adapted to receive a shaving head of a shaving apparatus" where it provides: "[I]mplement positioning means 20 comprises a perforated tray 74 for holding an implement to be washed and sterilized and locating the instrument in its aforementioned washing and sterilizing positions." ¶ 146. As recognized by Mr. Phillips, "while the Davies Patent cleaning system describes cleaning many 'implements,' the one object to be cleaned explicitly disclosed is hair clippers, a type of dry shaving apparatus." ¶ 147.

Dr. Nayfeh argues that, because the Davies Patent *also* discloses the use of rotating brushes for cleaning at col. 5, ll. 73-75, the implement positioning means 20 cannot be a "cradle structure." (Ex. 15, at 5-6.) This argument is irrelevant. Rayovac does not dispute that the

brushes in the Davies Patent can be used to clean the clippers.  However, the Davies Patent cleaning device is primarily focused on washing "implements," the only implement specifically named being a hair clipper.  ¶ 147.  That the Davies Patent discloses multiple cleaning methods has no bearing on whether implement positioning means 20 (and its component parts) is a "cradle structure."[17]

Dr. Nayfeh admits that "tray 74 is a basket," ignoring the consequences:

> The tray 74 could provide a surface onto which clipper blades that have been disassembled from the head of a hair clipper apparatus can be support[ed] [sic] by means such as magnets.  Such a surface **cannot be properly called a 'cradle structure'** and is not adapted to receive the shaving head of a shaving apparatus.

(*Id.*, at 5-6 (emphasis added).)  Dr. Nayfeh's importation of a "no disassembly" limitation is wrong as a matter of law.

Moreover, there is no dispute that the basket of the Davies Patent is (1) a structure and (2) at least receives cleaning fluid.  ¶¶ 150-151.  As Dr. Nayfeh concedes, the basket can both receive and support the clipper blades.  ¶ 152.  There is thus no issue of fact that tray 74 is a "cradle structure."

### 3.   "a feed device for feeding cleaning fluid from said cleaning fluid container to said cradle structure"

The Davies Patent discloses "a feed device for feeding cleaning fluid from said cleaning fluid container to said cradle structure."  In the Davies Patent, fluid rises from container up to the tray 74 for cleaning.  ¶ 154.  This occurs by water being fed from an external source through fitting 80 into container 12 (illustrated in Figure 3).  ¶ 155.

Dr. Nayfeh asserts that a hose and water tap are not "properly considered" a "feed device."  (Ex. 15, at 6.)  This opinion ignores the statement in the Davies Patent that "[t]he liquid

---

[17]   Braun has, in fact, argued that brushes are often  not suitable for cleaning the head of a shaving apparatus. ¶ 148.  One of skill in the art would thus necessarily recognize the need to wash the clippers.

14 is initially fed to the container 12, through the fitting 80[.]" ¶ 155. As recognized by Mr. Phillips, "both the ordinary artisan and lay people regularly use a hose and water tap to 'feed' water[.]" ¶ 157.

Dr. Nayfeh also argues that, because "cleaning fluid is fed manually via an external source to container 12," there is "no mechanism for feeding cleaning fluid from container 12 to tray 74." (Ex. 15, at 6.) There can be no dispute that fluid flows to (1) the fitting 80 (from the "feed device") then (2) the container 12 and then (3) to the tray 74. The claim language requires no more than that.

> **4.    "said cradle structure being arranged above a fluid level of the cleaning fluid in said cleaning fluid container during the feeding of said cleaning fluid to said cradle structure"**

The Davies Patent discloses that the tray 74, the "cradle structure," is above the level of cleaning fluid in the container 12 prior to cleaning. In particular, the Davies Patent states: "The implement tray 74 is supported in its elevated position of FIGURE 3, and the liquid 14 is initially fed to the container 12, through the fitting 80, until the liquid level rises above the implement on the tray." ¶¶ 154-155. Once the liquid reaches the tray, the implement is cleaned. *Id.*

Dr. Nayfeh's only response is that "[i]t is clear from this description that the tray 74 is not above the fluid level of the cleaning fluid in the cleaning fluid container during the ***entire*** feeding operation." (Ex. 15, at 7 (emphasis added).) The word "during" encompasses both all of an event and some of an event. (Ex. 30.) There is thus no issue of fact.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant Rayovac's summary judgment motion and hold all asserted claims of the '328 patent invalid.

DATED:  August 22, 2005                     DWYER & COLLORA LLP


By:  ___ /s/ Kevin S. Ueland _____
Mark A. Pals (admitted *pro hac vice*)
James A. Shimota (admitted *pro hac vice*)
Kevin S. Ueland (admitted *pro hac vice*)
James B. Coughlan (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
Aon Center
200 E. Randolph Dr.
Chicago, IL 60601
(312) 861-2000
Facsimile: (312) 861-2200

Joseph E. Haviland (BBO #643814)
Dwyer & Collora LLP
600 Atlantic Avenue
Boston, MA  0210-1122
(617) 371- 1000
Facsimile: (617)371-1037