**BRAUN**

in Aktiengesellschaft

- 23 -                          05838/PT2/Hi
                               20.01.1994

In der in Figur 11 dargestellten Position liegen die beiden Klinken 83 mit einem äußeren Ende 85 jeweils gegen die Zahnflanken 86 des mit dem Lüfterrad 16 verbundenen Zahnkranzes 105 an und stellen auf diese Weise rechtsdrehend eine Antriebsverbindung zwischen dem Motor 28 und dem Lüfterrad 16 her. Die Schenkel 112 der Feder 84 drücken über ein Widerlager den Hebelarm 108 mit seinem Ende 85 gegen die Zahnflanke 86.

Wird die Motorausgangswelle 79 entgegengesetzt zum Uhrzeigerdrehsinn angetrieben, dann werden die Klinken 83 über die Zahnflanken 86 nach außen gedrückt und bei einer Mindestdrehzahl aufgrund ihrer exzentrischen Anordnung auf der Klinkenachse 82 gegen die Wirkung der Feder 84 im Uhrzeigerdrehsinn auf der Klinkenachse 82 nach außen geschwenkt, bis sie gegen einen Anschlag 89 der Langlochöffnung 88 zur Anlage gelangen. Das wird dadurch erreicht, daß der Gewichtsanteil des Hebelarms 108 größer ist als der mit Bezug auf die Klinkenachse 82 andere Hebelarm 109 der Klinke 83. Hierdurch wird das Lüfterrad 16 von der Motorausgangswelle 79 abgekuppelt. Diese Stellung bleibt so lange bestehen, bis sich durch Drehzahlverringerung das Fliehkraftmoment so weit reduziert, daß das Federkraftmoment überwiegt und die Klinken 83 wieder in die Einrastposition gemäß Figur 11 zurückkehren (vergl. die mit ausgezogenen Linien dargestellte Position der Klinke 83).

Durch den Antrieb der Motorausgangswelle 79, ähnlich der Wirkungsweise gemäß Figur 11, jedoch entgegengesetzt zum Uhrzeigerdrehsinn, werden nun zwei weitere, unterhalb des Mitnehmerflansches 81 angeordnete Klinken 90 ebenfalls mittels der Feder 84 auf den Klinkenachsen 82 verschwenkt

...

B000030

BRHUN

n Aktiengesellschaft

- 24 -                                                05838/PT2/Hi
                                                      20.01.1994

und rasten mit ihren Enden 85 in die Zahnflanken 86 ein,
so daß nun die Pumpe 23 über den gleichen Motor 28 und
über eine auf der Motorausgangswelle 79 angeordnete Hohl-
welle 107 betätigt wird, während die beiden oberen Klin-
ken 83 außer Wirkung bleiben. Zu Beginn des Reinigungs-
prozesses wird nur die Pumpe 23 gemäß Figur 11 angetrie-
ben und das Lüfterrad 16 gemäß Figur 5 freigegeben.

Die beiden unteren Klinken 90 verlassen ihre Rastposition
erst wieder und lösen dadurch die Antriebsverbindung
zwischen Motor 18 und Förderpumpe 23 auf, wenn die Dreh-
richtung des Motors 28 geändert wird. Da die äußeren
Enden der Klinken 83, 90 nicht über die Zahnflanken 86
rutschen, treten bei Freilauf der Klinken 83, 90 keine
Antriebsgeräusche und kein Verschleiß auf.

Durch die vorteilhafte Antriebsverbindung zum wahlweisen
Antrieb von Förderpumpe 23 und Lüfterrad 16 kann auf
einen zweiten Antriebsmotor für den getrennten Antrieb
von Förderpumpe 23 und Lüfterrad 16 verzichtet werden, so
daß Kosten eingespart werden können.

Der Motor 28 und das Lüfterrad 16, sowie die in den Figu-
ren 5, 10 und 11 nicht dargestellte Pumpe 23 und eventu-
ell der Reinigungsflüssigkeitsbehälter 61 können koaxial
untereinander angeordnet sein, so daß die Getriebeteile
zwischen Motor 28, Pumpe 23 und Lüfterrad 16 auf ein
Minimum reduziert werden können und dadurch das Gehäuse
4 der Reinigungseinrichtung 5 kleiner ausgelegt werden
kann (vergleiche hierzu Fig. 12).

Ein weiteres Ausführungsbeispiel einer Antriebsvorrich-
tung für die Pumpe 23 und die Trockenvorrichtung mit dem

                                                           ...

Braun Form 10 407/1 9/86

BRHUN

in Aktiengesellschaft

- 25 -

05838/PT2/Hi
20.01.1994

Lüfterrad 16 ist in Figur 12 dargestellt.

Ein Freilauf 78, ähnlich der Freilaufeinrichtung gemäß
Figur 11 besteht hier aus nur zwei Klinken 83 oder ande-
ren Kupplungselementen. Die Kupplungseleme se stellen
eine Antriebsverbindung zwischen Motor 13 und Pumpe 23
her bzw. verhindern bei Drehrichtungsumkehr des Motors 13
das Mitdrehen der Pumpe 23. Anstelle der in Figur 11
dargestellten Freilaufeinrichtung kann auch eine anders
ausgebildete Freilaufeinrichtung eingesetzt werden.

Stellt der Freilauf eine Antriebsverbindung zwischen
Motor 13 - z. B. dreht der Motor im Gegenuhrzeigersinn -
und der Pumpe 23 her, wird die Pumpe 23 gemeinsam mit dem
Lüfterrad 16 angetrieben und die Pumpe 23 kann Reini-
gungsflüssigkeit zum Aufnahmeteil 7 leiten.

Das Lüfterrad 16 kann keine Luft aus dem Aufnahmeteil 7
absaugen, da ein Lamellenverschluß 149 in der Öffnung 18
durch den vom Lüfterrad 16 erzeugten Unterdruck ver-
schlossen bleibt.

Der Elektromotor 13 treibt aufgrund der sehr einfach aus-
gebildeten Freilaufeinrichtung das Lüfterrad 16 ständig
in beiden Richtungen an, so daß beim Antrieb des Motors
13 im Uhrzeigerdrehsinn der Luftstrom des Lüfterrads 16
den in der Öffnung 18 vorgesehenen Lamellenverschluß 149
öffnet und dem Scherkopf 3 Luft für den Trockenprozeß
zuführt.

Wird der Motor 13 entgegengesetzt zum Uhrzeigerdrehsinn
angetrieben, erzeugt der Luftstrom des ständig angetrie-
benen Lüfterrads 16 einen Unterdruck im Bereich der Öff-

...

B000032

**BRHUN**

n Aktiengesellschaft

- 26 -                                05838/PT2/Hi
                                      20.01.1994


nung 18, so daß der Lamellenverschluß 149 wieder ge-
schlossen wird bzw. geschlossen bleibt.

. . .

Braun Form ID 407/1-8/66

. . .

B000033

**BRHUN**

ın Aktiengesellschaft

- 27 -                                    05838/PT2/Hi
                                          20.01.1994


Patentansprüche

1.    Reinigungsvorrichtung (5) zur Reinigung des Scher-
      kopfs (3) eines Trockenrasierapparats (1) mit
      einem Aufnahmeteil (7), in das der Scherkopf (3)
      einsetzbar ist, einem Reinigungsflüssigkeit auf-
      weisenden Reinigungsflüssigkeitsbehälter (61),
      sowie einer von einem Motor (28) antreibbaren För-
      dereinrichtung für die Reinigungsflüssigkeit,
      dadurch gekennzeichnet, daß der Reinigungsflüssig-
      keitsbehälter (61) von der Reinigungsvorrichtung
      (5) trennbar ist und einen integrierten Filter
      (24) aufweist.


2.    Reinigungsvorrichtung nach Anspruch 1, dadurch
      gekennzeichnet, daß der Reinigungsflüssigkeits-
      behälter (61) aus zwei Kammern gebildet ist, wobei
      die eine Kammer zur Aufnahme der Reinigungsflüs-
      sigkeit dient und die andere Kammer als Filter
      (24) ausgebildet ist.


3.    Reinigungsvorrichtung nach Anspruch 2, dadurch
      gekennzeichnet, daß die Kammern nach außen ver-
      schlossen und mittel- oder unmittelbar an Leitun-
      gen (50, 64) der Förderpumpe (23) und des Aufnah-
      meteils (7) lösbar angeschlossen sind.


4.    Reinigungsvorrichtung nach Anspruch 1, dadurch
      gekennzeichnet, daß der Reinigungsflüssigkeits-
      behälter (61) oder die Kammern Öffnungen (62, 63)
      oder lösbare Verbindungs- oder Kupplungselemente
      aufweisen, die in entsprechende Gegenstücke ein-
      steck- und/oder festklemmbar und abdichtbar sind.


                                                 ...

Braun Form 10.4071-8/86

B000034

BRAUN

.in Aktiengesellschaft

- 28 -

05838/PT2/Hi
20.01.1994

5.    Reinigungsvorrichtung nach Anspruch 1 oder 2,
dadurch gekennzeichnet, daß zumindest einer der
Leitungen (50, 64) endseitig eine Spitze (103)
aufweist und der Reinigungsflüssigkeitsbehälter
(61) und/oder die Öffnungen (62, 63) mittels einer
Folie bzw. eines Laminats (74) verschließbar sind,
durch die die Leitungen (50, 64) einsteckbar sind.

6.    Reinigungsvorrichtung nach Anspruch 4, dadurch
gekennzeichnet, daß in den Öffnungen (62, 63) des
Reinigungsflüssigkeitsbehälters (61) je ein Dicht-
element vorgesehen ist, das von den Endstücken der
Leitungen durchstechbar ist.

7.    Reinigungsvorrichtung nach Anspruch 1, dadurch
gekennzeichnet, daß der Reinigungsflüssigkeits-
behälter (61) stirnseitig mit Zentrierelementen
(73) versehen ist, über die der Filter (24) im
Reinigungsflüssigkeitsbehälter (61) ausgerichtet
bzw. seitlich abgestützt wird.

8.    Reinigungsvorrichtung nach Anspruch 7, dadurch
gekennzeichnet, daß die Zentrierelemente (73) als
im Deckel (72) des Reinigungsflüssigkeitsbehälters
(61) vorgesehene Stege ausgebildet sind.

9.    Reinigungsvorrichtung nach Anspruch 7, dadurch
gekennzeichnet, daß der Filter (24) fest und koa-
xial im Gehäuse (101) des Reinigungsflüssigkeits-
behälters (61) zwischen der koaxial angeordneten
Einlaßöffnung (62) und dem Boden (67) des Gehäuses
(101) angeordnet ist.

. . .

Braun Form 10.40/71-B/86

**BRHUN**

un Aktiengesellschaft

- 29 -                                    05838/PT2/Hi
                                          20.01.1994

10.  Reinigungsvorrichtung nach Anspruch 7, dadurch
     gekennzeichnet, daß der Filter (24) aus einem ein
     Gewebe bzw. einen Vlieswerkstoff aufweisenden
     Filterrohr besteht, das sich über die gesamte Höhe
     des Gehäuses (101) erstreckt.

11.  Reinigungsvorrichtung nach Anspruch 7, dadurch
     gekennzeichnet, daß der Filter (24) an seinen
     beiden Enden durch die Zentrierelemente (73) koa-
     xial im Gehäuse (101) gesichert ist.

12.  Reinigungsvorrichtung nach Anspruch 7, dadurch
     gekennzeichnet, daß der Filter (24) an seinem
     anderen Ende in einer am Boden (67) des Gehäuses
     (101) vorgesehenen Ringnut (68) zentriert und fest
     aufgenommen ist.

13.  Reinigungsvorrichtung nach Anspruch 12, dadurch
     gekennzeichnet, daß die Ringnut (68) aus einer
     rechtwinklig am Boden (67) des Gehäuses (101)
     angeordneten Wand bzw. Aufbörtelung (69, 71) be-
     steht.

14.  Reinigungsvorrichtung nach Anspruch 7, dadurch
     gekennzeichnet, daß das eine Ende der mit dem
     Auslaßstutzen der Förderpumpe (23) verbundenen
     Leitung (50) in die im Deckel (72) koaxial ange-
     ordnete Einlaßöffnung (62) und den sich daran
     anschließenden, ebenfalls koaxial angeordneten,
     Filter (24) und die zweite im Reinigungsflüssig-
     keitsbehälter (61) vorgesehene, mit dem Aufnahme-
     teil (7) oder mittelbar mit dem Saugstutzen der
     Förderpumpe (23) verbundene Leitung (64) in die

                                          ...

B000036

**BRAUN**

in Aktiengesellschaft

- 30 -

05838/PT2/Hi
20.01.1994

Auslaßöffnung (63) des Deckels (72) dichtend ein-
setzbar sind.

15.    Reinigungsvorrichtung nach einem oder mehreren der
vorhergehenden Ansprüche, dadurch gekennzeichnet,
daß der Reinigungsflüssigkeitsbehälter (61) in
einem Wandhalter (38) integrier- und fixierbar
ist, in den der Rasierapparat (1) von der Seite
her einsetzbar und über ein Schaltelement (9)
mechanisch und/oder elektrisch verriegelbar ist.

16.    Reinigungsvorrichtung nach einem oder mehreren der
vorhergehenden Ansprüche, dadurch gekennzeichnet,
daß der Rasierapparat (1) in ein zur Atmosphäre
hin offenes Aufnahmeteil (7) einsetzbar ist, das
mittels der Förderpumpe (23) mit Reinigungsflüs-
sigkeit aus dem nach außen hin verschlossenen
Reinigungsflüssigkeitsbehälter (61) versorgt wird.

17.    Reinigungsvorrichtung nach einem oder mehreren der
vorhergehenden Ansprüche, dadurch gekennzeichnet,
daß der Rasierapparat (1) aus dem im Wandhalter
(38) integrierten Reinigungsflüssigkeitsbehälter
(61) über die Förderpumpe (23) zuerst mit Reini-
gungsflüssigkeit versorgt und anschließend mittels
eines in der Reinigungsvorrichtung (5) integrier-
ten Lüfterrads (16) getrocknet wird, wobei die
Förderpumpe (23) und das Lüfterrad (16) über einen
einzigen Motor (28) mittels einer Freilaufeinrich-
tung (104) wahlweise rechts- bzw. linksdrehend
antreibbar sind.

. . .

Braun Form N3.4077/1-8/86

B000037

**BRHUN**

n Aktiengesellschaft

- 37 -

05838/PT2/Hi
20.01.1994

18.    Reinigungsvorrichtung nach einem oder mehreren der
vorhergehenden Ansprüche, dadurch gekennzeichnet,
daß die Förderpumpe (23), der Motor (28) und/oder
das Lüfterrad (16) und der Reinigungsflüssigkeits-
behälter (61) ganz oder zumindest annähernd koaxi-
al zueinander ausgerichtet und/oder im Gehäuse (4)
des Wandhalters (38) bzw. der Reinigungsvorrich-
tung (5) eingebaut sind.

. . .

B000038

BRAUN

un Aktiengesellschaft

- 32 -                                           05838/PT2/Hi
                                                 20.01.1994

Zusammenfassung (Figur

Die Erfindung bezieht sich auf eine Reinigungsvorrichtung
5 zur Reinigung des Scherkopfs 3 eines Trockenrasierappa-
rats 1 mit einem Aufnahmeteil 7, in das der Scherkopf 3
einsetzbar ist, einem Reinigungsflüssigkeit aufweisenden
Reinigungsflüssigkeitsbehälter 61, sowie einer von einem
Motor 28 antreibbaren Fördereinrichtung für die Reini-
gungsflüssigkeit, wobei der Reinigungsflüssigkeitsbehäl-
ter 61 von der Reinigungsvorrichtung 5 trennbar ist und
einen integrierten Filter 24 aufweist.

B000039

08/370681

# Declaration and Power of Attorney For Patent Application
## *Erklärung Für Patentanmeldungen Mit Vollmacht*
### German Language Declaration

Als nachstehend benannter Erfinder erkläre ich hiermit an Eides Statt:

As a below named inventor, I hereby declare that:

dass mein Wohnsitz, meine Postanschrift, und meine Staatsangehörigkeit den im Nachstehenden nach meinem Namen aufgeführten Angaben entsprechen,

My residence, post office address and citizenship are as stated below next to my name,

dass ich, nach bestem Wissen der ursprüngliche, erste und alleinige Erfinder (falls nachstehend nur ein Name angegeben ist) oder ein ursprünglicher, erster und Miterfinder (falls nachstehend mehrere Namen aufgeführt sind) des Gegenstandes bin, für den dieser Antrag gestellt wird und für den ein Patent beantragt wird für die Erfindung mit dem Titel:

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled

Reinigungsvorrichtung zur Reinigung des

Scherkopfes eines Trockenrasierapparates

Cleaning Device for Cleaning the Shaving

Head of a Dry Shaving Apparatus

deren Beschreibung

the specification of which

(zutreffendes ankreuzen)

(check one)

[X] hier beigefügt ist.

[X] is attached hereto.

[ ] am _____ unter der

[ ] was filed on _____ as

Anmeldungsseriennummer _____

Application Serial No. _____

eingereicht wurde und am _____
abgeändert wurde (falls tatsächlich abgeändert).

and was amended on _____
(if applicable)

'ch bestätige hiermit, dass ich den Inhalt der obigen Patentanmeldung einschliesslich der Ansprüche durchgesehen und verstanden habe, die eventuell durch einen Zusatzantrag wie oben erwähnt abgeändert wurde.

I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment referred to above.

Ich erkenne meine Pflicht zur Offenbarung irgendwelcher Informationen, die für die Prüfung der vorliegenden Anmeldung in Einklang mit Absatz 37, Bundesgesetzbuch, Paragraph 1.56(a) von Wichtigkeit sind, an.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, §1.56(a).

Ich beanspruche hiermit ausländische Prioritätsvorteile gemäss Abschnitt 35 der Zivilprozessordnung der Vereinigten Staaten, Paragraph 119 aller unten angegebenen Auslandsanmeldungen für ein Patent oder eine Erfinderurkunde, und habe auch alle Auslandsanmeldungen für ein Patent oder eine Erfinderurkunde nachstehend gekennzeichnet, die ein Anmeldedatum haben, das vor dem Anmeldedatum der Anmeldung liegt, für die Priorität beansprucht wird.

I hereby claim foreign priority benefits under Title 35, United States Code. §119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

Page 1 of 3

Patent and Trademark Office-U.S. DEPARTMENT OF COMMERCE

B000040

## ...erman Language Declaration...

Prior foreign applications
Priorität beansprucht

Priority Claimed

| P 44 02 237.9-23 | DE | 26th January 1994 | |
|---|---|---|---|
| (Number) (Nummer) | (Country) (Land) | (Day/Month/Year Filed) (Tag/Monat/Jahr eingereicht) | ☒ Yes Ja   ☐ No Nein |
| (Number) (Nummer) | (Country) (Land) | (Day/Month/Year Filed) (Tag/Monat/Jahr eingereicht) | ☐ Yes Ja   ☐ No Nein |
| (Number) (Nummer) | (Country) (Land) | (Day/Month/Year Filed) (Tag/Monat/Jahr eingereicht) | ☐ Yes Ja   ☐ No Nein |

Ich beanspruche hiermit gemäss Absatz 35 der Zivilprozess-ordnung der Vereinigten Staaten, Paragraph 120, den Vorzug aller unten aufgeführten Anmeldungen und falls der Gegen-stand aus jedem Anspruch dieser Anmeldung nicht in einer früheren amerikanischen Patentanmeldung laut dem ersten Paragraphen des Absatzes 35 der Zivilprozessordnung der /ereinigten Staaten, Paragraph 112 offenbart ist, erkenne ich gemäss Absatz 37, Bundesgesetzbuch, Paragraph 1.56(a) meine Pflicht zur Offenbarung von Informationen an, die zwi-schen dem Anmeldedatum der früheren Anmeldung und dem nationalen oder PCT internationalen Anmeldedatum dieser Anmeldung bekannt geworden sind.

I hereby claim the benefit under Title 35, United States Code, §120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States appli-cation in the manner provided by the first paragraph of Title 35, United States Code, §112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, §1.56(a) which occurred between the filing date of the prior application and the national or PCT international filing date of this application:

| (Application Serial No.) (Anmeldeseriennummer) | (Filing Date) (Anmeldedatum) | (Status) (patentiert, anhängig, aufgegeben) | (Status) (patented, pending, abandoned) |
|---|---|---|---|
| (Application Serial No.) (Anmeldeseriennummer) | (Filing Date) (Anmeldedatum) | (Status) (patentiert, anhängig, aufgegeben) | (Status) (patented, pending, abandoned) |

Ich erkläre hiermit, dass alle von mir in der vorliegenden Erklärung gemachten Angaben nach meinem besten Wissen und Gewissen der vollen Wahrheit entsprechen, und dass ich diese eidesstattliche Erklärung in Kenntnis dessen ab-gebe, dass wissentlich und vorsätzlich falsche Angaben ge-mäss Paragraph 1001, Absatz 18 der Zivilprozessordnung der Vereinigten Staaten von Amerika mit Geldstrafe belegt und/oder Gefängnis bestraft werden koennen, und dass de-rartig wissentlich und vorsätzlich falsche Angaben die Gül-tigkeit der vorliegenden Patentanmeldung oder eines darauf erteilten Patentes gefährden können.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on infor-mation and belief are believed to be true; and further that these statements were made with the knowledge that wilful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such wilful false statements may jeopardize the validity of the application or any patent issued thereon.

Form PTO-FB-240 (8-83)                    Patent and Trademark Office-U.S. DEPARTMENT OF COMMERCE

B000041

# German Language Declaration

VERTRETUNGSVOLLMACHT: Als benannter Erfinder beauftrage ich hiermit den nachstehend benannten Patentanwalt (oder die nachstehend benannten Patentanwälte) und/oder Patent-Agenten mit der Verfolgung der vorliegenden Patentanmeldung sowie mit der Abwicklung aller damit verbundenen Geschäfte vor dem Patent-und Warenzeichenamt: *(Name und Registrationsnummer anführen)*

POWER OF ATTORNEY: As a named inventor, I hereby appoint the following attorney(s) and/or agent(s) to prosecute this application and transact all business in the Patent and Trademark Office connected therewith. *(list name and registration number)*

Willis M. Ertman, Reg. No. 18,658
Timothy A. French, Reg. No. 30,175
John M. Skenyon, Reg. No. 27,468
Peter J. Devlin, Reg. No. 31,753
Barry E. Bretschneider, Reg. No. 28,055
Ralph A. Mittelberger, Reg. No. 33,195
Donal B. Tobin, Reg. No. 25,711
Eric L. Prahl, Reg. No. 32,590

| | |
|---|---|
| Telefongespräche bitte richten an:<br>*(Name und Telefonnummer)* | Direct Telephone Calls to: *(name and telephone number)* |

Willis M. Ertman  at  (617) 542-5070

stanschrift:

Send Correspondence to:
Willis M. Ertman, Esq.
Fish & Richardson
225 Franklin Street
Boston, MA 02110-2804

| | |
|---|---|
| Voller Name des einzigen oder ursprünglichen Erfinders:<br>Gebhard Braun | Full name of sole or first inventor |
| Unterschrift des Erfinders     Datum<br>*Gebhard Braun* Dec. 21, 1994 | Inventor's signature     Date |
| Wohnsitz<br>Spessartstraße 18, D-65779 Kelkheim | Residence |
| Staatsangehörigkeit<br>German          DE X | Citizenship |
| Postanschrift<br>Spessartstraße 18, D-65799 Kelkheim,<br><br>Federal Republic of Germany | Post Office Address |
| Voller Name des zweiten Miterfinders (falls zutreffend) | Full name of second joint inventor, if any |
| Unterschrift des Erfinders     Datum | Second Inventor's signature     Date |
| Wohnsitz | Residence |
| Staatsangehörigkeit | Citizenship |
| Postanschrift | Post Office Address |
| | |

*(Bitte entsprechende Informationen und Unterschriften im Falle von dritten und weiteren Miterfindern angeben).*

(Supply similar information and signature for third and subsequent joint inventors.)

Form PTO-FB-240 (8-83)                                                    Patent and Trademark Office-U.S. DEPARTMENT OF COMMERCE

B000042

970-101                                    370681



# FISH & RICHARDSON P.C.

225 FRANKLIN STREET
BOSTON, MASSACHUSETTS 02110-2804

TELEPHONE 617/542-5070
FAX:617/542-8906
TELEX:200154

601 THIRTEENTH STREET, N.W.
WASHINGTON, D.C. 20005
202/783-5070

ONE RIVERWAY, SUITE 1200
HOUSTON, TEXAS 77056
713/629-5070

2200 SAND HILL ROAD, SUITE 100
MENLO PARK, CALIFORNIA 94025
415/322-5070

120 SOUTH SIXTH STREET, SUITE 2500
MINNEAPOLIS, MINNESOTA 55402
612/335-5070

January 10, 1995

Attorney Docket No.: 02894/285001

BOX PATENT APPLICATION
Commissioner of Patents and Trademarks
Washington, DC 20231

Presented for filing is a new original patent application of:

Applicant: GEBHARD BRAUN
Title    : CLEANING DEVICE FOR CLEANING THE SHAVING HEAD OF A DRY SHAVING
APPARATUS

Enclosed are the following papers, including all those required
for a filing date under 37 CFR §1.53(b):

| | |
|---|---|
| Pages of Specification | 26 |
| Pages of Claims | 5 |
| Pages of Abstract | 1 |
| Pages of Declaration | 3 |
| Sheets of Drawing | 8 |
| Pages of English Translation | 29 |

Under 35 USC §119, this application claims the benefit of a
foreign priority application filed in Germany, serial number P 44 02 237.9-23,
filed January 26, 1994. A certified copy of the priority application is
enclosed.

| | |
|---|---|
| Basic filing fee | 730.00 |
| Total claims in excess of 20 times $22.00 | 0.00 |
| Independent claims in excess of 3 times $76.00 | 0.00 |
| Multiple dependent claims | 240.00 |
| Total filing fee: | $ 970.00 |

A check for the filing fee is enclosed. Please charge any other
required fees, or apply any credits, to Deposit Account No. 06-1050,
referencing the Attorney Docket number shown above.

If this application is found to be INCOMPLETE, or if it appears
that a telephone conference would helpfully advance prosecution, please
telephone the undersigned at 617/542-5070.

"EXPRESS MAIL" Mailing Label Number RB656234876US

Date of Deposit January 10, 1995
I hereby certify under 37 CFR 1.10 that this correspondence
is being deposited with the United States Postal Service as
"Express Mail Post Office To Addressee" with sufficient
postage on the date indicated above and is addressed to the
Commissioner of Patents and Trademarks, Washington, D.C.
20231.

Richard Sanders

B000043

FISH & RICHARDSON

BOX PATENT APPLICATION
January 10, 1995
Page 2

     Kindly acknowledge receipt of this application by returning the enclosed postcard.

Respectfully submitted,

Eric L. Prahl
Reg. No. 32,590

Enclosures

B000044



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 08/370,811 | 01/10/95 | BRAUN | G | 02894/285001 |

0381/0302

WILLIS M ERTMAN
FISH AND RICHARDSON
225 FRANKLIN STREET
BOSTON MA 02110-2804

0006
**DATE MAILED:**

### NOTICE TO FILE MISSING PARTS OF APPLICATION  03/02/95
### FILING DATE GRANTED

An Application Number and Filing Date have been assigned to this application. However, the items indicated below are missing. The required items and fees identified below must be timely submitted **ALONG WITH THE PAYMENT OF A SURCHARGE** for items 1 and 3-6 only of $ *130* ⁰⁰ for large entities or $ *65* ⁰⁰ for small entities who have filed a verified statement claiming such status. The surcharge is set forth in 37 CFR 1.16(e).

If all required items on this form are filed within the period set below, the total amount owed by applicant as a / ☒ large entity, ☐ small entity (verified statement filed), is $ *130* ⁰⁰.

> Applicant is given **ONE MONTH FROM THE DATE OF THIS LETTER, OR TWO MONTHS FROM THE FILING DATE** of this application, **WHICHEVER IS LATER,** within which to file all required items and pay any fees required above to avoid abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

1. ☐ The statutory basic filing fee is: ☐ missing ☐ insufficient. Applicant as a ☐ large entity ☐ small entity, must submit $_____to complete the basic filing fee.

2. ☐ Additional claim fees of $_____as a ☐ large entity, ☐ small entity, including any required multiple dependent claim fee, are required. Applicant must submit the additional claim fees or cancel the additional claims for which fees are due.

3. ☐ The oath or declaration:
   ☐ is missing.
   ☐ does not cover items omitted at time of execution.

   An oath or declaration in compliance with 37 CFR 1.63, identifying the application by the above Application Number and Filing Date is required.

4. ☐ The oath or declaration does not identify the application to which it applies. An oath or declaration in compliance with 37 CFR 1.63, identifying the application by the above Application Number and Filing Date, is required.

5. ☐ The signature(s) to the oath or declaration is/are: ☐ missing; ☐ by a person other than the inventor or a person qualified under 37 CFR 1.42, 1.43, or 1.47. A properly signed oath or declaration in compliance with 37 CFR 1.63, identifying the application by the above Application Number and Filing Date, is required.

6. ☐ The signature of the following joint inventor(s) is missing from the oath or declaration:

   _____ An oath or declaration listing the names of all inventors and signed by the omitted inventor(s), identifying this application by the above Application Number and Filing Date, is required.

7. ☒ The application was filed in a language other than English. Applicant must file a verified English translation of the application and a fee of $ *130* ⁰⁰ under 37 CFR 1.17(k), unless this fee has already been paid.

8. ☐ A $_____processing fee is required since your check was returned without payment. (37 CFR 1.21(m)).

9. ☐ Your filing receipt was mailed in error because your check was returned without payment.

10. ☐ The application does not comply with the Sequence Rules. See attached Notice to Comply with Sequence Rules 37 CFR 1.821-1.825.

11. ☐ Other.

_____Samuel Duncan_____

Direct the response and any questions about this notice to, Attention: Application Processing Division, /TC/
Special Processing and Correspondence Branch (703) 308-1202.

***A copy of this notice MUST be returned with the response.***   B000045
FORM PTO-1533 (REV. 11-48)      **OFFICE COPY**

PATENT
ATTORNEY DOCKET NO. 02894/285001

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant : Gebhard Braun
Serial No.: 08/370,681
Filed    : January 10, 1995
Title    : CLEANING DEVICE FOR THE SHAVING HEAD OF A DRY SHAVER

Art Unit:
Examiner:

Commissioner of Patents and Trademarks
Washington, DC 20231

<u>RESPONSE TO NOTICE TO FILE MISSING PARTS</u>

On March 2, 1995, the Patent Office issued a Notice to File Missing Parts of Application in this matter. The Notice indicated that "[t]he application was filed in a language other than English."

We note, however, that we did in fact submit a verified translation of the application when the application was originally filed in the U.S. Patent Office on January 10, 1995. We have enclosed herewith a copy of the verified translation which was provided at that time.

As further evidence that a verified translation was previously submitted, we also enclose: (1) a copy of the cover letter which accompanied the original filing; and (2) a copy of the return post card including the stamp of the Mail Room dated January 10, 1995. The cover letter indicates that 29 pages of translation were enclosed and the post card indicates that 30 pages of English translation were enclosed (note that the count

Date of Deposit *March 27, 1995*
I hereby certify under 37 CFR 1.8(a) that this correspondence is being deposited with the United States Postal Service as first class mail with sufficient postage on the date indicated above and is addressed to the Commissioner of Patents and Trademarks, Washington, D.C. 20231.

*Mary C. Elizabeth Bouzzer*

B00046

on the post card includes the translation of the attached figure sheet).

Since the application was complete when originally filed, we believe that neither a surcharge or a fee for submitting the translation late is required.

Please apply any charges not covered, or any credits, to Deposit Account No. 06-1050.

Respectfully submitted,

Date: March 29, 1995

Eric L. Prahl
Reg. No. 32,590

Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110-2804

Telephone: 617/542-5070
Facsimile: 617/542-8906
117962.B11

B000047





A/N B #B

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 08/370,681 | 01/10/95 | BRAUN | G | 02894/285001 |

03B17/0302

WILLIS M ERTMAN
FISH AND RICHARDSON
225 FRANKLIN STREET
BOSTON MA  02110-2804

0000
DATE MAILED:

## NOTICE TO FILE MISSING PARTS OF APPLICATION  03/02/95
## FILING DATE GRANTED

An Application Number and Filing Date have been assigned to this application. However, the items indicated below are missing. The required items and fees identified below must be timely submitted **ALONG WITH THE PAYMENT OF A SURCHARGE** for items 1 and 3-6 only of $ _____ for large entities or $ _____ for small entities who have filed a verified statement claiming such status. The surcharge is set forth in 37 CFR 1.16(e).

If all required items on this form are filed within the period set below, the total amount owed by applicant as a ☒ large entity, ☐ small entity (verified statement filed), is $ _____.

> Applicant is given **ONE MONTH FROM THE DATE OF THIS LETTER, OR TWO MONTHS FROM THE FILING DATE** of this application, **WHICHEVER IS LATER,** within which to file all required items and pay any fees required above to avoid abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

1. ☐ The statutory basic filing fee is: ☐ missing. ☐ insufficient. Applicant as a a ☐ large entity ☐ small entity, must submit $ _____ to complete the basic filing fee.

2. ☐ Additional claim fees of $ _____ as a ☐ large entity, ☐ small entity, including any required multiple dependent claim fee, are required. Applicant must submit the additional claim fees or cancel the additional claims for which fees are due.

3. ☐ The oath or declaration:
    ☐ is missing.
    ☐ does not cover items omitted at time of execution.

    An oath or declaration in compliance with 37 CFR 1.63, identifying the application by the above Application Number and Filing Date is required.

4. ☐ The oath or declaration does not identify the application to which it applies. An oath or declaration in compliance with 37 CFR 1.63, identifying the application by the above Application Number and Filing Date, is required.

5. ☐ The signature(s) to the oath or declaration is/are: ☐ missing; ☐ by a person other than the inventor or a person qualified under 37 CFR 1.42, 1.43, or 1.47. A properly signed oath or declaration in compliance with 37 CFR 1.63, identifying the application by the above Application Number and Filing Date, is required.

6. ☐ The signature of the following joint inventor(s) is missing from the oath or declaration:

    _____ An oath or declaration listing the names of all inventors and signed by the omitted inventor(s), identifying this application by the above Application Number and Filing Date, is required.

7. ☒ The application was filed in a language other than English. Applicant must file a verified English translation of the application and a fee of $ _____ under 37 CFR 1.17(k), unless this fee has already been paid.

8. ☐ A $ _____ processing fee is required since your check was returned without payment. (37 CFR 1.21(m)).

9. ☐ Your filing receipt was mailed in error because your check was returned without payment.

10. ☐ The application does not comply with the Sequence Rules. See attached Notice to Comply with Sequence Rules 37 CFR 1.821-1.825.

11. ☐ Other.
    _____

Direct the response and any questions about this notice to, Attention: Application Processing Division, Special Processing and Correspondence Branch (703) 308-1202.

HM11077 04/05/95 00370681    06-1050  110 105    130.00CH

***A copy of this notice MUST be returned with the response.***

B000048

44 02 237.9-23
05838

- 1 -

## Cleaning Device for Cleaning the Shaving Head of a Dry Shaving Apparatus

This invention relates to a cleaning device for cleaning the shaving head of a dry shaving apparatus, with a cradle structure adapted to receive therein the shaving head, a cleaning fluid container holding a cleaning fluid, as well as a device adapted to be driven by a motor for feeding the cleaning fluid.

From prior U.S. Pat. No. 3,172,416 a cleaning device for the cutter portion of a dry razor is known, comprising a cleaning casing in the upper area of which a seat is provided for receiving therein the cutter portion of an electric razor. According to a first embodiment, the individual components of the cutter portion are cleaned by a continuous stream of air directed to the cutter portion through an impeller means and filter elements. However, in cases where the cutter portion is severely contaminated carrying, for example, sebum, that is, grease particles, cleaning the cutter portion by means of an air stream is not accomplishable to the desired degree. The entire casing of the cleaning device through which air is blown is required to be sealed tight relative to atmosphere to prevent the swirled up hair dust from penetrating to the outside.

The same applies also to the cleaning device according to another embodiment (U.S. Pat. No. 3,172,416) in which the cutter portion is cleaned by a cleaning fluid directed for this purpose through fluid channels provided in the casing. For the full duration of the cleaning cycle, the cutter portion is seated in a cradle which is provided in the upper part of the casing and is at all times filled to capacity with cleaning fluid circulating

. . .

B000049

P 44 02 237.9-23
05838

- 2 -

therethrough.  To accomplish this, a feed pump is pro-
vided in the casing.  Because the cleaning fluid is not
filtered during the cleaning operation, hair particles
enter the cradle again and again, thus reaching the area
of the cutter portion, so that this cleaning operation is
equally not suited to accomplish satisfactory results,
the less so since after deactivation of the pump device
cleaning fluid with hair particles remain in the cradle,
being thus prevented from being completely removed from
the cutter portion.  On termination of the cleaning
cycle, it is necessary for the razor to be removed from
its cradle to allow the cutter portion to drain and to be
subsequently dried in the air.  In this arrangement, the
hair particles entrained with the cleaning fluid continue
to adhere to the components of the cutter portion, so
that ultimately a perfect cleaning action of the cutter
portion is not achievable.  The chamber provided in the
lower part of the casing for collecting the cleaning
fluid and the dirt particles must remain closed during
recirculation of the cleaning fluid to prevent the dirt
particle sediment accumulated therein from being agitated
again.  Yet it is not possible to prevent unfiltered
cleaning fluid from being continuously directed against
the cutter portion during circulation of the cleaning
fluid.

Because the container receiving the cleaning fluid
is fixedly integrated into the casing of the cleaning de-
vice, replacement of the cleaning fluid is a very complex
procedure.

Accordingly, it is an object of the present inven-
tion to improve upon the cleaning device such as to allow
ready replacement of the cleaning fluid container.

. . .

B000050

P 44 02 237.9-23
05838

- 3 -

According to the present invention, this object is accomplished in that the cleaning fluid container is separable from the cleaning device and includes a filter means integrally formed therewith. Because the filter is made integrally with the cleaning fluid container, the container is readily removable together with the cleaning fluid after the cleaning fluid is used up or after the filter is largely clogged with dirt particles, such replacement merely involving the step of detaching the container from the feed pump. A new cleaning fluid container including a new filter can then be inserted in the wall mount receiving the dry shaving apparatus and be connected with the feed pump. In this manner, the cleaning device is fully operable again and can be utilized for cleaning the dry shaving apparatus for a prolonged period of time without requiring any intervention for maintenance.

Further, it is advantageous that the cleaning fluid container is comprised of two chambers, one chamber serving to hold the cleaning fluid, the other chamber being configured as the filter means.

According to a further feature of the cleaning fluid container of the present invention, an additional possibility is afforded in that the chambers are closed relative to the outside and are directly or indirectly connected to conduits of the feed pump and the cradle structure in a releasable manner. The coupling members for the releasable connection between the feed pump and the chambers may also be provided at the respective ends of the conduit between the feed pump and the cleaning fluid container or be formed integral with the conduit.

B000051

P 44 02 237.9-23
05838

- 4 -

Advantageously, the cleaning fluid container or the chambers include ports or releasable connecting or coupling members which are adapted to be inserted in and/or clamped and sealed relative to mating members, at least one of the conduits has a tip at its end, and the cleaning fluid container and/or the ports are closable by means of a foil or a laminate through which the conduits are insertable.

It is a further advantage that a sealing member each is provided in the ports of the cleaning fluid container, which sealing members are adapted to be pierced by the respective ends of the conduits. Because the connection conduits may be provided with a tip or a sharp edge in the area of their respective ends, the ends of the connection conduits are readily insertable into the mating member which may be covered, for example, with a foil, a metal or plastic laminate. This completely dispenses with the need for assembly tools. By inserting the conduits into the associated inlet and outlet ports of the cleaning fluid container, a perfect seal is obtained between the conduits and the ports, thereby obviating the provision of additional sealing means.

In a further feature of the present invention it is advantageous that the cleaning fluid container has at its end locating means for aligning and laterally supporting the filter in the interior of the cleaning fluid container. The provision of locating means enables the filter to be accurately aligned for mounting in the cleaning fluid container, because the locating means force the filter into the proper position.

It is of particular importance to the present invention that the locating means are configured as rib means

. . .

B000052

P 44 02 237.9-23
05838

- 5 -

provided in the lid of the cleaning fluid container, and
that the filter is fixedly and coaxially arranged within
the casing of the cleaning fluid container between the
coaxially arranged inlet port and the bottom of the
casing. By virtue of the coaxial arrangement of the fil-
ter in the casing of the cleaning fluid container, it is
ensured that the entire filter surface is well utilized.

In connection with the configuration and arrangement
of the present invention, it is advantageous that the
filter is comprised of a filter tube including a fabric
or a mat material and extending along the full height of
the casing.

It is a further advantage that the filter is co-
axially secured in the casing at both its ends by the
locating means, and that at one end the filter is
centrally located and fixedly received in an annular
groove provided at the bottom of the casing. Still fur-
ther, it is advantageous that the annular groove is com-
prised of a wall or hem flange disposed at the bottom of
the casing at right angles thereto, that the one end of
the conduit connected to the outlet means of the feed
pump is sealingly insertable into the inlet port co-
axially arranged in the lid and the adjoining filter
equally coaxially arranged, and that the second conduit
provided in the cleaning fluid container and connected to
the cradle structure or indirectly to the intake means of
the feed pump is sealingly insertable into the outlet
port of the lid. With the rectangular annular groove
formed by means of wall portions, it is ensured that the
filter is fixedly located in the casing of the cleaning
fluid container in a simple and perfect fashion. In

...

B000053

? 44 02 237.9-23
05838

- 6 -

addition, this arrangement lends itself to mechanization
readily.

To this effect, it is advantageous that the cleaning
fluid container is adapted to be integrated and fixedly
secured in a wall mount in which the shaving apparatus is
insertable from the side and is mechanically and/or elec-
trically interlockable by a switching means.

Still further it is advantageous that the shaving
apparatus is receivable in a cradle structure that is
open towards atmosphere and is supplied with cleaning
fluid from the outwardly closed cleaning fluid container
by means of the feed pump.  This results in an open sys-
tem for the cleaning device, enabling the shaving appara-
tus to be inserted laterally from outside into the
cleaning device at any time, without the need to remove
components or covers from the cleaning device.   The
cradle structure invariably contains only as much fluid
as is necessary for cleaning the shaving head.  The re-
maining cleaning fluid is held in the cleaning fluid con-
tainer which is closed relative to atmosphere, thus pre-
venting the volatile substances admixed to the cleaning
fluid from vaporizing too rapidly.

It is another advantage that the shaving apparatus
is first supplied with cleaning fluid from the cleaning
fluid container integrated into the wall mount by means
of the feed pump, and is subsequently dried by means of
an impeller integrated into the cleaning device, with the
feed pump and the impeller being adapted to be driven
selectively in a clockwise or counterclockwise direction'
by means of a single motor using an overrunning device.

B000054

P 44 02 237.9-23
05838

- 7 -

Another advantage is that the feed pump, the motor
and/or the impeller and the cleaning fluid container are
disposed in coaxial alignment with each other wholly or
at least approximately and/or are mounted in the casing
of the wall mount or the cleaning device.

Further advantages and details of the present inven-
tion will become apparent from the subsequent description
and the accompanying drawings illustrating some preferred
embodiments.

An embodiment of the present invention is shown in
the Figures by way of example without being limited to
this particular embodiment.  In the drawings,

FIG. 1 is a partial sectional view of a cleaning de-
vice in which a shaving apparatus is received;

FIG. 2 is a front view of the cleaning device of
FIG. 1;

FIG. 3 is a top plan view of the cleaning device of
FIG. 2;

FIG. 4 is a schematic diagram depicting the individ-
ual cleaning stages as a function of time;

FIG. 5 is a sectional view taken along the line B-B
of FIG. 10;

FIG. 6 is a schematic representation of the fluid
circuit of the cleaning device, in particular between the
cradle structure, the filter means and the cleaning fluid
container configured as a cartridge;

· · ·

B000055

P 44 02 237.9-23
05838

- 9 -

apparatus 1, and holds only as much cleaning fluid as is
necessary for the particular cleaning operation.

The cleaning device 5, in particular the wet portion
thereof, that is, the cradle 7, is configured as a clean-
ing system open to atmosphere, whilst a cleaning fluid
container 61, as subsequently described with reference to
the embodiment of FIG. 7, is closed.

With its shaving head 3 in an inverted position, the
shaving apparatus 1 is seated in the upwardly open cradle
7 configured as wet portion.  During the cleaning cycle,
cleaning fluid 40 is continuously flushed through the
cradle 7.  At a particular level of contamination, the
cleaning fluid may be drained through a closable conduit
76, and fresh fluid may be substituted.

The cradle 7 includes an overflow device 26 which
prevents the cleaning fluid in the cradle 7 from exceed-
ing a defined level and ensures that only the shaving
head 3 or the lower part of the shaving head is immersed
in cleaning fluid.  Further, the bottom of the cradle 7
includes an outlet port 27 allowing the cleaning fluid
with hair particles to be completely drained into the
collecting reservoir 65 after the cleaning cycle is com-
pleted.  The capacity of the collecting reservoir 65 is
substantially smaller compared with the capacity of the
cleaning fluid container 61 of FIG. 7.  However, the out-
let port 27 is dimensioned such that the cradle 7, when
supplied with cleaning fluid from a pump 23 described in
the following, rather than being allowed to run empty, is
at all times kept filled to the rim, with excess cleaning
fluid being mainly discharged over the rim of the cradle
7 in the direction of the arrow over the overflow device
26, collecting in the reservoir 65 underneath.  In this

. . .

P 44 02 237.9-23
05838

- 10 -

manner, a sufficient amount of cleaning fluid is at all
times available for the cleaning cycle.  Arranged below
the cradle 7 is a collecting dish 77 conformed to the
contour of the cradle 7, which dish is connected to the
overflow device 26 or is a part of said overflow device
26.  As becomes apparent from FIG. 1, the shaving head 3
rests in the cradle 7 by means of supporting means 8
serving to avoid damage to the shaving apparatus as it is
placed down in the cradle 7 and to cushion the shaving
apparatus during vibration.

Further, by means of a switching means 9 mounted in
a bracket 10 the shaving apparatus 1 (FIG. 1) is mechan-
ically and/or electrically interlocked.  The bracket 10
is fixedly connected with a wall mount 38 enabling the
complete cleaning device 5 with the shaving apparatus 1
to be mounted on a wall or, alternatively, to be kept in
a stand for storage.

The switching means 9 which may be configured as a
start button is arranged so as to be displaceable in the
direction of a longitudinal center line 11 of the shaving
apparatus 1 and is connected, by means of an electric
control device 29, to timing elements serving to control
the cleaning cycle.

The wall mount 38 and the bracket 10 open to the
right when viewing FIG. 1 as well as the cradle 7 with
the collecting reservoir 65 combine to form the cleaning
device 5 which is a unit of U-shaped cross-section.  The
shaving apparatus 1 may continue to be stored in the wall
mount 38 also upon completion of the cleaning cycle, be-
cause all cleaning fluid is drained from the wet portion
or the cradle 7 after cleaning is terminated.  The shav-
ing apparatus 1 may also remain in the wall mount 38 for

. . .

B000057

P 44 02 237.9-23
05838

- 11 -

recharging.  The cleaning device 5 is suitable for uti-
lization with any type of electric shaving apparatus.

The switching means 9 has at its lower end two rela-
tively spaced contact pins 12 for supplying current to
the shaving apparatus 1, which contact pins, on depres-
sion of the switching means 9, cooperate with correspond-
ing contact means of the shaving apparatus 1.  In this
manner, the shaving apparatus 1 can be set in operation
when the switching means 9 is depressed and a power cord,
not shown, of the cleaning device 5 is connected to an
electrical outlet.

·  Adjacent to the shaving apparatus 1 in the casing 4
of the cleaning device 5 is an electric motor 13 having
two electrical contact lugs 14 for connection to the
electricity supply.  Provided at the lower end of the
electric motor 13 is a motor output shaft 15 on which an
impeller or impeller wheel 16 is arranged serving in par-
ticular for drying the cleaned shaving head 3 of the
shaving apparatus 1 following termination of the cleaning
cycle of the shaving head 3 described in more detail in
the following.  The impeller 16 sits in an impeller cas-
ing 17 communicating through an opening 18 with the space
above the cradle 7, and it directs a continuous stream of
hot air heated by a heating means, not shown in the draw-
ings, against the shaving head 3 to effect a drying
action following the cleaning operation.

As mentioned in the foregoing, the bracket 10 com-
bines with its vertically extending leg, a vertically ex-
tending leg of the wall mount 38 and the cradle 7 to form
the U-shaped casing 4 when viewing the cleaning device 5
from the side, in which casing the shaving apparatus 1 is

· · ·

B000058

P 44 02 257.9-23
05838

- 12 -

readily insertable from the side by imparting to it a
lateral tilting motion, to be kept therein for storage.

According to FIG. 1, the cradle 7 extends into the
collecting reservoir 65 which is filled with cleaning
fluid to two thirds, maximum.  Adjoining the underside of
the cradle 7 is a connection means 19.

The connection means 19 is fixedly connected with an
opening 91, the collecting dish 77 and the overflow de-
vice 26, and it is immersed in the cleaning fluid at all
times.  According to FIG. 1, the cradle 7 is arranged
above the collecting reservoir 65 which is filled with
some cleaning fluid 40.

The collecting reservoir 65 may be provided with a
fluid level indicating means 39 enabling the fluid level
to be monitored at all times.  According to FIG. 1, the
fluid level indicating means 39 may be configured as a
small viewing window.  In lieu of the viewing window, it
is also possible to provide an electronic indicating
means comprising suitable sensors indicating the fluid
level or also the degree of contamination of the cleaning
fluid 40.  For example, when the fluid is contaminated to
a degree which must not be exceeded, this condition may
be indicated by the sensors, thus informing the operator
of the need to drain the cleaning fluid 40 through the
conduit 76 for replacement.  Depending on the embodiment,
the sensors may also be used for de-activating the elec-
tric control electrodes, thereby automatically inter-
rupting the cleaning cycle and compelling the operator to
replace the cleaning fluid.

As becomes apparent from FIG. 1, the connection
means 19 is in communication with the collecting

. . .

B000059