P 44 02 237.9-23
05838

- 13 -

reservoir 65 to which an intake means 48 for the feed pump 23 is connected, the pump delivering the cleaning fluid through a conduit 50 to a filter means 24 according to FIG. 7.   Further details will be explained with reference to FIGS. 7 and 8.

To perform the cleaning cycle, the shaving apparatus 1 to be cleaned is introduced into the cleaning device 5 from the side and subsequently locked in place by the switching means 9 which, initially occupying its upper position, is for this purpose displaced downwards into a second position until the two contact lugs engage the contact pins 12 provided in the shaving apparatus 1.   The shaving apparatus 1 is thereby interlocked electrically and mechanically, allowing the operator to withdraw the shaving apparatus 1 not until after the cleaning and the subsequent drying cycle have been completed, canceling the interlock.

Operation of the switching means 9 causes the feed pump 23 to be driven which then delivers cleaning fluid to the cradle 7 and to the shaving head 3 for a predetermined period of time, the fluid dislodging all of the hair dust 75 in the shaving head 3  (see segment 30 to 31 in FIG. 4).

The cleaning fluid with the hair dust 75 is then passed through the outlet port 27 to the cradle 7 and over the overflow device 26 to the collecting reservoir 65, and onwards directly to the feed pump 23 through the intake means 48 and back to the filter 24.   This has the advantage that the cleaning fluid with the complete hair dust 75 from the shaving apparatus 1 is delivered in concentrated form to the filter 24 in which the cleaning fluid is completely cleaned.

. . .

B000060

P 44 02 237.9-23
05838

– 14 –

FIG. 3 shows schematically in top plan view the
arrangement of the essential parts of the cleaning device
5 including, for example, the collecting reservoir 65 and
a motor 28 which is turned on by the switching means 9.
When viewing this Figure, there is shown to the right of
the bracket 10 supporting the shaving apparatus 1 the
electric control device 29 including timing elements, not
shown, for controlling the individual stages of the
cleaning cycle.  Further arranged in the area of the
bracket 10 is the motor 28 adapted to drive directly the
impeller 16 which is operatively associated with a heat-
ing means for heating the air used for drying the shaving
apparatus 1.

To be able to step the line voltage down to the
requisite operating voltage, the cleaning device 5 is
provided with a transformer 36.

FIG. 4 is a schematic diagram depicting the individ-
ual stages of the cleaning cycle as a function of time.
The individual segments between points 30 to 34 show the
individual cyclic stages of the cleaning operation.

When, as initially mentioned, the switching means 9
is actuated at point 30 of FIG. 4 by downward displace-
ment (control button depressed), this has the concurrent
effect of causing oscillation of the inner cutters, not
shown, of the shaving apparatus 1, thereby producing in
the shaving head 3 a flow with partially occurring cavi-
tation which dislodges hair dust 75 and also grease par-
ticles from the inner cutters of the shaving head com-
pletely.  Owing to the fluid being agitated, the fluid
level in the cradle 7 is temporarily increased, while at
the same time splashes are produced in the area of the
shaving head 3 performing a thorough cleaning function on

. . .

B000061

P 44 02 237.9-23
05838

- 15 -

the shaving head 3 as well as the inner cutters although
the level of the cleaning fluid reaches only part of the
shaving head 3.  Depending on the type of cleaning fluid
utilized and the degree of contamination of the shaving
head, the cleaning action lasts between 3 and 60 seconds
(see segment a between points 30 and 31).  When the shav-
ing apparatus 1 is not cleaned at regular intervals, the
cleaning cycle (segment a between points 30 and 31) is
extended correspondingly.  To accomplish this, the clean-
ing device may be provided with a two-step switch not
shown in the drawings, the first step being intended for
a regular cleaning cycle and the second step for an in-
tensive cleaning cycle.

On completion of the cleaning cycle, the feed pump
23 is automatically turned off at point 31 (end of the
cleaning cycle) of FIG. 4.  This then enables the clean-
ing fluid to be drained completely through the outlet
port 27, thus causing the wet portion or the cradle 7 to
be evacuated.  The level in the collecting reservoir 65
rises a small amount.  The outlet port 27 may also be
closable by a valve, not shown in the drawings, which
opens automatically when point 31 is reached.  After
about 30 seconds, the cradle 7 is completely emptied (see
segment b between points 31 and 32, draining the cradle
7).

After the cradle 7 is drained at point 32, the shav-
ing head 3 continues oscillating for some time, shaking
off any cleaning fluid that may still adhere to the shav-
ing head 3.  After the set time has elapsed, the shaving
apparatus 1 is turned off, and the inner cutter of the
shaving head 3 stops moving at point 33 (end of the
vibratory cycle).  The turn-on and turn-off operations

. . .

B000062

P 44 02 237.9-23
05838

- 16 -

are accomplished by means of an electromagnetic reed
switch 95 shown schematically which, according to FIG. 1,
is accommodated in the housing 2 of the shaving apparatus
1. When the reed switch 95 is opened automatically on
completion of the vibratory cycle, operation of the shav-
ing apparatus 1 is also discontinued, initiating at point
33 the drying cycle described in the following (segment
d).

Being automatically inserted in the circuit at point
33, the impeller 16 is turned on with or without heating
means and driven by the electric motor 13, thus deliver-
ing dry air to the shaving head 3 for a predetermined
period of, for example, 15 seconds (see segment d between
points 33 and 34). Then the interlock of the shaving
apparatus 1 is deactivated at the control button 9.

FIG. 6 shows schematically the fluid circuit of the
cleaning fluid of the cleaning device 5 which incorpo-
rates the cradle 7 in which the shaving apparatus 1 is
inserted in an inverted position so that the shaving head
3 is at least partially immersed in the cleaning fluid.

The cleaning device 5 further incorporates (FIG. 6)
the feed pump 23 and the motor 28 connected to a supply
of electricity through electrical lines and activatable
by the switching means 9. The feed pump 23 is driven by
the motor 28 adapted to bear against supporting means in
the casing 4 of the cleaning device 5.

A drive shaft 43 projecting from the motor 28 drives
the feed pump 23 provided in a pump casing.

As becomes further apparent from FIG. 6, the
collecting reservoir 65 for receiving the cleaning fluid

B000063

P 44 02 237.9-23
05838

- 17 -

40 is smaller than in the first embodiment of FIG. 1.
The collecting reservoir 65 has a bottom 47 arranged at
an inclination, for example, at an angle of between 20°
and 40° to prevent hair particles from collecting at the
bottom 47. An intake means 48 of the feed pump 23 is
attached to the lower area of the bottom 47, so that the
cleaning fluid discharged over the overflow device 26 is
conveyed, through the collecting reservoir 65, the intake
means 48 of the feed pump 23 as well as a conduit 50, di-
rectly to the filter 24 illustrated in greater detail in
FIGS. 7, 8 and 9. The hair dust 65 collecting in the
reservoir 65 is agitated in the cleaning fluid such that
it is fed to the filter 24 and retained thereby, rather
than being allowed to settle at the bottom 47 of the col-
lecting reservoir 65. The filtered cleaning fluid is
then circulated back to the cradle 7 through a conduit
64.

A cleaning fluid container 61 is configured as a
cartridge (FIGS. 7 to 9) and includes an outlet port 63
communicating with the cradle 7 through the conduit 64.
In this manner, the cleaning circuit is closed. The con-
tainer 61 inlet and outlet ports 62, 63 shown in FIG. 7
may also be provided at a bottom 67 of the cleaning fluid
container 61, enabling the cleaning fluid container 61 to
be connected to suitable conduits from above. It is
thereby achieved that a permanent flow of cleaning fluid
is delivered from the cleaning fluid container 61 to the
intake means of the pump 23, causing the pump to draw
only cleaning fluid, rather than air, when put into oper-
ation.

According to this embodiment (FIG. 6), the switching
means 9 activates the feed pump 23 configured as a vane-

. . .

B000064

P 44 02 237.9-23
05838

- 18 -

type pump drawing air at the beginning of the cleaning
cycle and forcing this air through the conduit 50 into
the cleaning fluid container 61 so that the cleaning
fluid flows from the cleaning fluid container 61 through
the outlet port 63 and the conduit 64 to the drained
cradle 7, refilling it until the cleaning fluid is dis-
charged to the collecting reservoir 65 over the overflow
device 26. Part of the fluid is continuously drained
through the outlet port 27. Considering, however, that
the feed pump 23 delivers more fluid to the cradle 7 than
can be drained through the outlet port 27, it is ensured
that during the cleaning cycle the cradle 7 remains
filled with fluid to the level of the overflow device 26.

The cleaning fluid container 61 or cartridge shown
in FIGS. 7 to 9 is comprised of a cylindrical casing 101
having a bottom 67 and a lid 72 in which the inlet port
62 and the outlet port 63 as well as the filter 24 are
provided.

The lid 72 is sealed relative to the upper rim of
the cleaning fluid container 61 by hemming such as to
prevent it from being pulled off the casing 101. The
conduit 50 arriving from the pump 23 is connected to the
inlet port 62, while the conduit 64 leading to the cradle
7 is connected to the outlet port 63. Quick-release
coupling members, not shown in the drawings, may be pro-
vided in the area of the inlet and outlet ports 62, 63 to
allow ready replacement of the cleaning fluid container
61 when it is necessary to renew the cleaning fluid or
when the filter 24 provided in the cleaning fluid con-
tainer 61 has become clogged.

The degree of contamination or the hair dust 75 re-
tained in the filter 24 may be determined by means of an

. . .

B000065

P 44 02 237.9-23
05838

- 19 -

indicating device not shown in the drawings. The indi-
cating device may include a pressure sensor and a tell-
tale light indicating the degree of contamination or the
pressure status. When the filter 24 is no longer usable,
the cleaning fluid container 61 is detached from the con-
duits 50, 64, and a new one is substituted.

In the embodiment of FIGS. 7 to 9, the filter means
24 is configured as a cylindrical paper filter arranged
coaxially in the casing 101.

According to FIG. 8, the filter 24 is forced with a
lower end 70 thereof into engagement with an annular
groove 68 provided at the bottom 67 of the casing 101
coaxially therewith. The annular groove 68 is comprised
of two relatively spaced parallel annular walls or hem
flanges 69, 71 projecting from the bottom 67 so that the
lower end 70 of the filter 24 is clampingly engaged
within the annular groove 68. The filter 24 forms a
first chamber receiving the hair dust, while the remain-
ing part of the casing forms a second chamber for holding
filtered cleaning fluid.

As becomes apparent from FIG. 9, the upper lid 72 of
the casing 101 of the cleaning fluid container 61 in-
cludes four relatively spaced locating means 73 arranged
in cross shape and serving to locate the filter within
the cleaning fluid container 61.

The lid 72 (FIGS. 7, 9) further includes a foil 74
which is pierced by the conduits 50, 64 as the cleaning
fluid container 61 is inserted in the casing 4, thereby
establishing the coupling engagement with the inlet and
outlet ports 62 and 63, respectively. Conveniently, the
two conduits 50, 64 may be provided with a sharp edge or

...

B000066

P 44 02 237.9-23
05838

- 20 -

tip 103 at their respective ends to facilitate piercing
of a foil sealing the ports 62, 63.  It is also possible
to seal the ports 62, 63 by means of a pull-off strap
under which sealing members capable of being pierced may
be provided into which the conduits 50, 64 are inserted.

FIGS. 5, 10 and 11 illustrate a mechanism 78 for
driving the impeller 16 and the feed pump 23.  Since it
is not desirable to drive the feed pump 23 and the im-
peller 16 at the same time, they may be driven selec-
tively by the single motor 28.  The drive mechanism 78
which also includes the motor 28 is provided with a de-
vice reversing the direction of rotation which includes
one (FIG. 12) or, according to FIGS. 5 and 11, two over-
running devices 104, one driving the impeller 16 in a
clockwise direction, the other driving the feed pump 23
in a direction opposite thereto.

The device reversing the direction of rotation, to-
gether with the upper and the lower overrunning device
104, is seated on a motor output shaft 79 of the motor 28
on which also the impeller 16 is arranged.  The overrun-
ning device 104 may be provided with a clamp-type locking
mechanism including for this purpose a one-way coupling
with self-locking frictional engagement.  Further, clamp-
ing rollers or clamping plates may be provided as
coupling means.  In the embodiment of FIGS. 11 and 12,
the overrunning devices 104 are comprised of internal
gear rings 105, 106 having an upper and a lower tooth
flank 86.  The two internal gear rings 105, 106 are
mounted on the motor output shaft 79 so as to rotate
freely.  The motor output shaft 79 drives a driving
flange 81 which includes two diametrically opposite pawl
axles 82 receiving each an upper and a lower crescent-

. . .

P 44 02 237.9-23
05838

- 21 -

shaped pawl 83, 90.  The pawls 83, 90 include each two
lever arms 108, 109 of different length (FIG. 11), with
the longer lever arm 108 being guided in a slotted hole
88 by means of a pin 96, while the other lever arm 109
bears against a spring 84.  FIGS. 5 and 11 show each one
slotted hole 88.

The pawl 83 (FIG. 11) is pivotal on the pawl axle 82
in the direction of the inner periphery of the impeller
16 between a position shown in solid lines and a position
shown in broken lines by means of the spring 84 bent
twice in V-shape.  The spring 84 includes a U-shaped mem-
ber 110 by means of which it is seated on a hub 97 of the
driving flange 81.  The U-shaped member 110 is formed of
two legs 111 which, each in combination with a further
adjoining leg 112, form a double V.

In the position illustrated in FIG. 11, the two
pawls 83 have an outer end 85 thereof in engagement with
the tooth flanks 86 of the gear ring 105 connected to the
impeller 16, thus establishing a driving relationship, in
a clockwise direction, of the motor 28 to the impeller
16.  The legs 112 of the spring 84 urge, through an abut-
ment means, the end 85 of the lever arm 108 into engage-
ment with the tooth flank 86.

When the motor output shaft 79 is driven in a coun-
terclockwise direction, the pawls 83 are urged outwardly
by the tooth flanks 86 and, at a minimum rotational fre-
quency, are pivoted on the pawl axle 82 outwardly in a
clockwise direction in opposition to the action of the
spring 84 owing to their eccentric arrangement on the
pawl axle 82, until they engage a stop 89 of the slotted
hole 88.  This is accomplished in that the weight
component of the lever arm 108 is greater than that of

. . .

B000068

P 44 02 237.9-23
05838

- 22 -

the other lever arm 109 of the pawl 83 relative to the
pawl axle 82. As a result, the impeller 16 is disengaged
from the motor output shaft 79.   This position is
maintained until the centrifugal moment has diminished
due to a reduced rotational frequency to a level at which
the spring moment prevails and the pawls 83 return to
their engaged positions according to FIG. 11   (see the
position of pawl 83 shown in solid lines).

By driving the motor output shaft 79 in a manner
similar to the mode of operation of FIG. 11, yet in a
counterclockwise direction, two further pawls 90 arranged
below the driving flange 81 are then equally pivoted on
the pawl axles 82 by means of the spring 84, their ends
85 engaging the tooth flanks 86, so that the pump 23 is
operated by the same motor 28 and by a hollow shaft 107
disposed on the motor output shaft 79, whereas the two
upper pawls 83 are maintained disengaged.   At the begin-
ning of the cleaning operation, only the pump 23 is
driven according to FIG. 11, and the impeller 16 is re-
leased according to FIG. 5.

The two lower pawls 90 do not leave their engaged
positions, thereby canceling the driving relationship of
the motor 18 to the feed pump 23, until the direction of
rotation of the motor 28 is changed.   Because the outer
ends of the pawls 83, 90 do not slip over the tooth
flanks 86, noise and wear are prevented from occurring
with the pawls 83, 90 running freely.

Owing to the advantageous driving relationship for
selectively driving the feed pump 23 and the impeller 16,
the requirement of having to provide a second drive motor
for driving feed pump 23 and impeller 16 separately is
obviated, so that cost savings may be realized.

. . .

B000069

P 44 02 237.9-23
05838

- 23 -

The motor 28 and the impeller 16 as well as the pump
23 not shown in FIGS. 5, 10 and 11 and, if desired, the
cleaning fluid container 61 may be arranged vertically on
a common axis, which enables the number of gear parts be-
tween the motor 28, the pump 23 and the impeller 16 to be
reduced to a minimum and, in consequence, allows the cas-
ing 4 of the cleaning device 5 to be built to smaller
dimensions (see FIG. 12).

A further embodiment of a drive mechanism for the
pump 23 and the drying device incorporating the impeller
16 is illustrated in FIG. 12.

In this embodiment, an overrunning arrangement 78
similar to the overrunning device of FIG. 11 comprises
only two pawls 83 or some other coupling means.    The
coupling means establish a driving relationship between
the motor 13 and the pump 23 or prevent the pump 23 from
following the motor 13 in rotation when its direction of
rotation is reversed.    It will be understood that an
overrunning arrangement configured in a manner different
from the one shown in FIG. 11 may also be utilized.

When the overrunning arrangement establishes a driv-
ing connection between the motor 13 - rotating, for
example, in a counterclockwise direction - and the pump
23, the pump 23 is driven jointly with the impeller 16,
and the pump 23 is in a position to direct cleaning fluid
to the cradle 7.

The impeller 16 is prevented from drawing air from
the cradle 7 because a louvered shutter 149 provided in
the opening 18 remains closed as a result of the vacuum
produced by the impeller 16.

P 44 02 237.9-23
05838

- 24 -

Because of the very simple configuration of the overrunning arrangement, the electric motor 13 invariably drives the impeller 16 in either direction, so that with the motor 13 driven in a clockwise direction the air stream produced by the impeller 16 opens the louvered shutter 149 provided in the opening 18, feeding air to the shaving head 3 for drying.

When the motor 13 is driven in a counterclockwise direction, the stream of air produced by the then equally driven impeller 16 generates a vacuum in the area of the opening 18, causing the louvered shutter 149 to be closed again or to remain closed.

B000071

P 44 02 237.9-23
05838

- 25 -



Patent Claims

1.    A cleaning device (5) for cleaning the shaving head (3) of a dry shaving apparatus (1), with a cradle structure (7) adapted to receive therein the shaving head (3), a cleaning fluid container (61) holding a cleaning fluid, as well as a device (23) adapted to be driven by a motor (28) for feeding the cleaning fluid, characterized in that the cleaning fluid container (61) is separable from the cleaning device (5) and includes a filter means (24) integrally formed therewith.

2.    A cleaning device as claimed in claim 1, characterized in that the cleaning fluid container (61) is comprised of two chambers, one chamber serving to hold the cleaning fluid, the other chamber being configured as the filter means (24).

3.    A cleaning device as claimed in claim 2, characterized in that the chambers are closed relative to the outside and are directly or indirectly connected to conduits (50, 64) of the feed pump (23) and the cradle structure (7) in a releasable manner.

4.    A cleaning device as claimed in claim 1, characterized in that the cleaning fluid container (61) or the chambers include ports (62, 63) or releasable connecting or coupling members which are adapted to be inserted in and/or clamped and sealed relative to mating members.

5.    A cleaning device as claimed in claim 1 or claim 2, characterized in that at least one of the conduits (50, 64) has a tip (103) at its end, and that the cleaning fluid container (61) and/or the ports (62, 63)

. . .

B000072

P 44 02 237.9-23
05838

- 26 -

are closable by means of a foil or a laminate (74) through which the conduits (50, 64) are insertable.

6. A cleaning device as claimed in claim 4, characterized in that a sealing member each is provided in the ports (62, 63) of the cleaning fluid container (61), said sealing members being adapted to be pierced by the respective ends of the conduits.

7. A cleaning device as claimed in claim 1, characterized in that the cleaning fluid container (61) has at its end locating means (73) for aligning and laterally supporting the filter means (24) in the interior of the cleaning fluid container (61).

8. A cleaning device as claimed in claim 7, characterized in that the locating means (73) are configured as rib means provided in the lid (72) of the cleaning fluid container (61).

9. A cleaning device as claimed in claim 7, characterized in that the filter means (24) is fixedly and coaxially arranged within the casing (101) of the cleaning fluid container (61) between the coaxially arranged inlet port (62) and the bottom (67) of the casing (101).

10. A cleaning device as claimed in claim 7, characterized in that the filter means (24) is comprised of a filter tube including a fabric or a mat material and extending along the full height of the casing (101).

P 44 02 237.9-23
05838

- 27 -

11. A cleaning device as claimed in claim 7, characterized in that the filter means (24) is coaxially secured in the casing (101) at both its ends by the locating means (73).

12. A cleaning device as claimed in claim 7, characterized in that at one end the filter means (24) is centrally located and fixedly received in an annular groove (68) provided at the bottom (67) of the casing (101).

13. A cleaning device as claimed in claim 12, characterized in that the annular groove (68) is comprised of a wall or hem flange (69, 71) disposed at the bottom (67) of the casing (101) at right angles thereto.

14. A cleaning device as claimed in claim 7, characterized in that the one end of the conduit (50) connected to the outlet means of the feed pump (23) is sealingly insertable into the inlet port (62) coaxially arranged in the lid (72) and the adjoining filter means (24) equally coaxially arranged, and that the second conduit (64) provided in the cleaning fluid container (61) and connected to the cradle structure (7) or indirectly to the intake means of the feed pump (23) is sealingly insertable into the outlet port (63) of the lid (72).

15. A cleaning device as claimed in one or several of the preceding claims, characterized in that the cleaning fluid container (61) is adapted to be integrated and fixedly secured in a wall mount (38) in which the shaving apparatus (1) is insertable from the side and is mechanically and/or electrically interlockable by a switching means (9).

. . .

B000074

P 44 02 237.9-23
05838

- 28 -

16. A cleaning device as claimed in one or several
of the preceding claims, characterized in that the shav-
ing apparatus (1) is receivable in a cradle structure (7)
that is open towards atmosphere and is supplied with
cleaning fluid from the outwardly closed cleaning fluid
container (61) by means of the feed pump (23).

17. A cleaning device as claimed in one or several
of the preceding claims, characterized in that the shav-
ing apparatus (17) is first supplied with cleaning fluid
from the cleaning fluid container (61) integrated into
the wall mount (38) by means of the feed pump (23), and
is subsequently dried by means of an impeller (16) inte-
grated into the cleaning device (5), with the feed pump
(23) and the impeller (16) being adapted to be driven
selectively in a clockwise or counterclockwise direction
by means of a single motor (28) using an overrunning de-
vice (104).

18. A cleaning device as claimed in one or several
of the preceding claims, characterized in that the feed
pump (23), the motor (28) and/or the impeller (16) and
the cleaning fluid container (16) are disposed in coaxial
alignment with each other wholly or at least approxi-
mately and/or are mounted in the casing (4) of the wall
mount (38) or the cleaning device (5).

*add A²>*

B000075



P 44 02 237.9-23
05838

- 29 -

08/37068

## Abstract of the Disclosure

The invention is directed to a cleaning device 5 for
cleaning the shaving head 3 of a dry shaving apparatus 1,
with a cradle structure 7 adapted to receive therein the
shaving head 3, a cleaning fluid container 61 holding a
cleaning fluid, as well as a device adapted to be driven
by a motor 28 for feeding the cleaning fluid, wherein the
cleaning fluid container 61 is separable from the clean-
ing device 5 and includes a filter means 24 integrally
formed therewith.

(FIG. 1)


08 Dec 94/BH.

B000076



BIRGIT HUBATSCH

staatl. gepr. Übersetzerin für Englisch (BDÜ)
allgem. vereidigt für Gerichte und Notare im Lande Hessen

Elisabethenstraße 33a  .  D-64390 Erzhausen  .  Telefon/Telefax  (06150) 7438

05838

IN  THE  MATTER OF
German Patent Application
Serial No. P 44 02 237.9-23
Braun Aktiengesellschaft

## DECLARATION

I, Birgit Hubatsch, of Elisabethenstr. 33a, D-64390
Erzhausen, Federal Republic of Germany, hereby declare that I
am conversant with the English and German languages and am a
competent translator thereof, duly sworn for the Law Courts
and Public Notaries of Land Hesse.  I also declare that I am
the translator of the documents attached and certify that the
following is a true and accurate translation from the German
original into the English language to the best of my
knowledge and belief.

Dated this 8th day of December 1994

Birgit Hubatsch
Sworn Translator

B000077

00370681

#4
6·28·95

# BUNDESREPUBLIK DEUTSCHLAND



### Bescheinigung

Die Braun Aktiengesellschaft in 60326 Frankfurt hat eine
Patentanmeldung unter der Bezeichnung

"Reinigungsvorrichtung zur Reinigung des Scherkopfs
eines Trockenrasierapparats"

am 26. Januar 1994 beim Deutschen Patentamt eingereicht.

Die angehefteten Stücke sind eine richtige und genaue
Wiedergabe der ursprünglichen Unterlagen dieser Patent-
anmeldung.

Die Anmeldung hat im Deutschen Patentamt vorläufig die
Symbole A 45 D 27/46, A 45 D 27/48, B 26 B 19/40,
F 04 B 23/02 und B 01 D 35/027 der Internationalen
Patentklassifikation erhalten.

München, den 18. Oktober 1994
Der Präsident des Deutschen Patentamts
Im Auftrag

Röske

Aktenzeichen    P 44 02 237.9

3161

B000078

*34A*
*030*
*6/29/95*

*LOC/0220*
*5-9-95*
*#5*
*AN*

PATENT

ATTORNEY DOCKET NO. 02894/285001

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE  *3405*

Applicant : Gebhard Braun
Serial No.: 08/370,681
Filed    : January 10, 1995
Title    : CLEANING DEVICE FOR CLEANING THE SHAVING HEAD OF A
           DRY SHAVING APPARATUS

Art Unit:
Examiner: Stinson

Commissioner of Patents and Trademarks
Washington, DC  20231

## INFORMATION DISCLOSURE STATEMENT

Applicant submits the references listed on the attached form PTO 1449, copies of which are enclosed.

This statement is being filed before the receipt of a first Office action on the merits.  I, the undersigned, hereby certify that each item of information contained in this statement was cited in a communication from a foreign patent office in a counterpart foreign application, dated March 23, 1995, which is not more than three months prior to the filing of this statement.

Date of Deposit ___MAY 8, 1995___
I hereby certify under 37 CFR 1.8(a) that this correspondence is being deposited with the United States Postal Service as first class mail with sufficient postage on the date indicated above and is addressed to the Commissioner of Patents and Trademarks, Washington, D.C. 20231.

___LINDA VEGA___

___Linda Vega___

B000079

Please apply any charges or credits to Deposit Account No. 06-1050.

Respectfully submitted,

Date: May 8, 1995

Eric L. Prahl
Reg. No. 32,590

Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110-2804

Telephone: 617/542-5070
Facsimile: 617/542-8906
124905.B11

2

B000080

Sheet ___1_(A)___ of ___1___

| SUBSTITUTE FORM PTO-1449 (MODIFIED) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | ATTY. DOCKET NO. 02894/285001 | | SERIAL NO. 08/370,681 |
|---|---|---|---|---|
| INFORMATION DISCLOSURE STATEMENT BY APPLICANT (Use several sheets if necessary) | | APPLICANT Gebhard Braun | | |
| (37 CFR 1.98) | | FILING DATE January 10, 1995 | | GROUP |

### U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | PATENT NUMBER | ISSUE DATE | PATENTEE | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| JLS | AA | 5 0 6 4 5 2 1 | 11/21/91 | Stepanenko, et al. | 204 | 224 M | |
| | AB | | | | | | |
| | AC | | | | | | |
| | AD | | | | | | |
| | AE | | | | | | |
| | AF | | | | | | |
| | AG | | | | | | |
| | AH | | | | | | |
| | AI | | | | | | |
| | AJ | | | | | | |
| | AK | | | | | | |

### FOREIGN PATENT OR PUBLISHED FOREIGN PATENT APPLICATION

| | | DOCUMENT NUMBER | PUBLICATION DATE | COUNTRY OR PATENT OFFICE | CLASS | SUBCLASS | TRANSLATION YES | TRANSLATION NO |
|---|---|---|---|---|---|---|---|---|
| JLS | AL | GB-A-0 337 132 | 11/20/30 | United Kingdom | | | | |
| | AM | GB-A-2 129 732 | 05/23/84 | United Kingdom | | | | |
| | AN | GB-A-1 206 791 | 09/30/70 | United Kingdom | | | | |
| JLS | AO | GB-A-1 206 792 | 09/30/70 | United Kingdom | | | | |
| | AP | | | | | | | |

### OTHER DOCUMENTS (Including Author, Title, Date, Place of Publication)

| | | |
|---|---|---|
| JLS | AQ | A copy of a European Search Report dated March 23, 1995 |
| | AR | |
| | AS | |

| EXAMINER | FRANKIE L. STINSON PRIMARY EXAMINER | DATE CONSIDERED 9/14/95 |
|---|---|---|
| | GROUP 3400 | |

EXAMINER: Initial citation considered. Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

Substitute Disclosure Form (PTO-1449)

B000081



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 08/370,681 | 01/10/95 | BRAUN | G | 02894/285001 |

| | EXAMINER |
|---|---|
| | STINSON, |

34M1/1027

| ART UNIT | PAPER NUMBER |
|---|---|
| 3405 | 6 |

WILLIS M ERTMAN
FISH AND RICHARDSON
225 FRANKLIN STREET
BOSTON MA  02110-2804

DATE MAILED:  10/27/95

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☒ This application has been examined.  ☐ Responsive to communication filed on _____  ☐ This action is made final.

A shortened statutory period for response to this action is set to expire  **3**  month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I  THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☒ Notice of References Cited by Examiner, PTO-892.
2. ☒ Notice of Draftsman's Patent Drawing Review, PTO-948.
3. ☒ Notice of Art Cited by Applicant, PTO-1449.
4. ☐ Notice of Informal Patent Application, PTO-152.
5. ☒ Information on How to Effect Drawing Changes, PTO-1474.
6. ☐ _____

**Part II  SUMMARY OF ACTION**

1. ☐ Claims  1 – 18  are pending in the application.

Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☒ Claims  1 – 5 and 7 – 13  are rejected.

5. ☒ Claims  6, 14 – 18  are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings are ☐ acceptable; ☐ not acceptable (see explanation or Notice of Draftsman's Patent Drawing Review, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____, has (have) been ☐ approved by the examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).

12. ☒ Acknowledgement is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☒ been received ☐ not been received ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appeears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

B000082

Serial Number: 08/370,681                          -2-

Art Unit: 3405

A.    Claims 1-18 are rejected under 35 U.S.C. § 112, second

paragraph, as being indefinite for failing to particularly point

out and distinctly claim the subject matter which applicant

regards as the invention.. Re claim 1, lines 1-2, the phrase "the

shaving head" is without proper antecedent basis. This is also

applicable to the phrase "the feed pump" in claim 3, line 4.

B.    Claims 15-18 are objected to under 37 C.F.R. § 1.75(c) as

being in improper form because a multiple dependent claim cannot

depend from any other multiple dependent claim.  See M.P.E.P.

§ 608.01(n).  Accordingly, these claims have not been further

treated on the merits.

C.    As for what was understood, the following is provided.

D.    The following is a quotation of 35 U.S.C. § 103 which forms
the basis for all obviousness rejections set forth in this Office
action:

> A patent may not be obtained though the invention is not
> identically disclosed or described as set forth in section
> 102 of this title, if the differences between the subject
> matter sought to be patented and the prior art are such that
> the subject matter as a whole would have been obvious at the
> time the invention was made to a person having ordinary
> skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which
> the invention was made.
>
> Subject matter developed by another person, which qualifies
> as prior art only under subsection (f) or (g) of section 102
> of this title, shall not preclude patentability under this
> section where the subject matter and the claimed invention
> were, at the time the invention was made, owned by the same
> person or subject to an obligation of assignment to the same
> person.

E.    Claims 1-5 and 7-13 are rejected under 35 U.S.C. § 103 as

being unpatentable over Lee. Re claim 1, the patent to Lee is

B000083

Serial Number: 08/370,681                    -3-

Art Unit: 3405

cited disclosing a cleaning device for cleaning an article

comprising a cradle adapted to receive the article therein, a

cleaning fluid container for holding cleaning fluid, a driven

device for feeding cleaning fluid and a cleaning device being

separable from the fluid container that differs from the claim

only in the recitation of the cleaning of a shaving head.

Nonetheless, the intended use is not deemed to structurally

define over Lee. Re claim 2, Lee discloses the two chambers. Re

claim 3, Lee discloses the chambers as being closed. Re claim 4,

Lee discloses the releasable coupling means. Re claim 5, Lee

discloses the container as being closed. To have it closed with

foil or a laminate is deemed to be an obvious matter of design.

Re claim 7, Lee discloses the aligning means. To have the

aligning means in the form of rib means, is an obvious matter of

design. No new nor unobvious result are seen. Re claims 9, 11 and

12, Lee discloses the filter as being fixed and coaxial. As for

the material of the filter as claimed in claim 10, to employ

filter material as instantly claimed is an obvious matter of

design. This is also applicable to the groove as claimed in claim

13.

F.    Claims 6 and 14 are objected to as being dependent upon a

rejected base claim, but would be allowable if rewritten in

independent form including all of the limitations of the base

claim and any intervening claims.

B000084

Serial Number: 08/370,681                                    -4-

Art Unit: 3405

G.   The prior art made of record and not relied upon is

considered pertinent to applicant's disclosure.   In Riolo,

Browning, Schinn, Dewitt, Swiss'936, Beech, Elledge, Otzen and

Plourde, note the containers.

H.   Any inquiry concerning this communication or earlier
communications from the examiner should be directed to
F.L.Stinson whose telephone number is (703) 308-0861.

     Any inquiry of a general nature or relating to the status of
this application should be directed to the Group receptionist
whose telephone number is (703) 308-0861.

fls                                    Frankie L. Stinson

                                       Primary Examiner

                                       ART UNIT 3405

B000085

Form PTO-948 (Rev. 10-94)     U.S. DEPARTMENT OF COMMERCE - Patent and Trademark Office     Application No. 370681

## NOTICE OF DRAFTSPERSON'S PATENT DRAWING REVIEW

PTO Draftpersons review all originally filed drawings regardless of whether they are designated as formal or informal. Additionally, patent Examiners will review the drawings for compliance with the regulations. Direct telephone inquiries concerning this review to the Drawing Review Branch, 703-305-8404.

The drawings filed (insert date) 11 0 95 , are
____ not objected to by the Draftsperson under 37 CFR 1.84 or 1.152.
____ objected to by the Draftsperson under 37 CFR 1.84 or 1.152 as indicated below. The Examiner will require submission of new, corrected drawings when necessary. Corrected drawings must be submitted according to the instructions on the back of this Notice.

1. DRAWINGS. 37 CFR 1.84(a): Acceptable categories of drawings:
   Black ink. Color.
   ____ Not black solid lines. Fig(s)_____
   ____ Color drawings are not acceptable until petition is granted.
   Fig(s)_____
   ____ PHOTOGRAPHS. 37 CFR 1.84(b)
   ____ photographs are not acceptable until petition is granted.
   Fig(s)_____
   ____ photographs may require submission of a duplicate crystal of such photographs.
   ____ photographs are not properly mounted (must use brystol board or photographic double weight paper). Fig(s)_____
   ____ poor quality (half-tone). Fig(s)_____
3. TYPE OF PAPER. 37 CFR 1.84(e)
   ____ Paper not flexible, strong, white, smooth, nonshiny, and durable.
   Sheet(s)_____
   ____ Erasures, alterations, overwritings, interlineations, cracks, creases, and folds copy machine marks not accepted. Fig(s)_____
   ____ Mylar, velum paper is not acceptable (too thin). Fig(s)_____
4. SIZE OF PAPER. 37 CFR 1.84(f): Acceptable sizes:
   21.6 cm. by 35.6 cm. (8 1/2 by 14 inches)
   21.6 cm. by 34 cm. (8 1/2 by 13 inches)
   21.6 cm. by 27.9 cm. (8 1/2 by 11 inches)
   21.0 cm. by 29.7 cm. (DIN size A4)
   ____ All drawing sheets not the same size. Sheet(s)_____
   ____ Drawing sheet not an acceptable size. Sheet(s)_____
5. MARGINS. 37 CFR 1.84(g): Acceptable margins:

   Paper size

   | | | | |
   |---|---|---|---|
   | 21.6 cm. X 35.6 cm | 21.6 cm X 33.1 cm. | 21.6 cm. X 27.9 cm. | 21.0 cm. X 29.7 cm. |
   | (8 1/2 X 14 inches) | (8 1/2 X 13 inches) | (8 1/2 X 11 inches) | (DIN Size A4) |
   | T 5.1 cm. (2") | 2.5 cm. (1") | 2.5 cm. (1") | 2.5cm. |
   | L .64 cm. (1/4") | .64 cm. (1/4") | .64 cm (1/4") | 2.5 cm. |
   | R .64 cm. (1/4") | .64 cm. (1/4") | .64 cm. (1/4") | 1.5 cm. |
   | B .64 cm. (1/4") | .64 cm. (1/4") | .64 cm. (1/4") | 1.0 cm. |

   Margins do not conform to chart above.
   Sheet(s)_____
   ____ Top (T)____ Left (L)____ Right (R)____ Bottom (B)
7. VIEWS. 37 CFR 1.84(h)
   REMINDER: Specification may require revision to correspond to drawing changes.
   ____ All views not grouped together. Fig(s)_____
   ____ Views connected by projection lines or lead lines.
   Fig(s)_____
   ____ Partial views. 37 CFR 1.84(h) 2

____ View and enlarged view not labeled separately or properly.
Fig(s)_____
____ Sectional views. 37 CFR 1.84 (h) 3
____ Hatching not indicated for sectional portions of an object.
Fig(s)_____
____ Cross section not drawn same as view with parts in cross section with regularly spaced parallel oblique strokes. Fig(s)_____
8. ARRANGEMENT OF VIEWS. 37 CFR 1.84(i)
   ____ Words do not appear on a horizontal, left-to-right fashion when page is either upright or turned so that the top becomes the right side, except for graphs. Fig(s)_____
9. SCALE. 37 CFR 1.84(k)
   ____ Scale not large enough to show mechanism with crowding when drawing is reduced in size to two thirds in reproduction.
   Fig(s)_____
   ____ Indication such as "actual size" or scale 1/2" not permitted.
   Fig(s)_____
10. CHARACTER OF LINES, NUMBERS, & LETTERS. 37 CFR 1.84(l)
    ✓ Lines, numbers & letters not uniformly thick and well defined, clean, durable, and black (poor line quality). Fig(s) 1,2
11. SHADING. 37 CFR 1.84(m)
    ____ Solid black shading areas not permitted.
    Fig(s)_____
    ____ Shade lines, pale, rough and blurred. Fig(s)_____
12. NUMBERS, LETTERS, & REFERENCE CHARACTERS. 37 CFR 1.84(p)
    ____ Numbers and reference characters not plain and legible. 37 CFR 1.84(p)(1) Fig(s)_____
    ____ Numbers and reference characters not oriented in same direction as the view. 37 CFR 1.84(p)(1) Fig(s)_____
    ○ English alphabet not used. 37 CFR 1.84(p)(2)
    Fig(s)_____
    ____ Numbers, letters, and reference characters do not measure at least .32 cm. (1/8 inch) in height. 37 CFR(p)(3)
    Fig(s)_____
13. LEAD LINES. 37 CFR 1.84(q)
    ____ Lead lines cross each other. Fig(s)_____
    ____ Lead lines missing. Fig(s)_____
14. NUMBERING OF SHEETS OF DRAWINGS. 37 CFR 1.84(t)
    ____ Sheets not numbered consecutively, and in Arabic numerals, beginning with number 1. Sheet(s)_____
15. NUMBER OF VIEWS. 37 CFR 1.84(u)
    ____ Views not numbered consecutively, and in Arabic numerals, beginning with number 1. Fig(s)_____
    ____ View numbers not preceded by the abbreviation Fig.
    Fig(s)_____
16. CORRECTIONS. 37 CFR 1.84(w)
    ____ Corrections not made from prior PTO-948.
    Fig(s)_____
17. DESIGN DRAWING. 37 CFR 1.152
    ____ Surface shading shown not appropriate. Fig(s)_____
    ____ Solid black shading not used for color contrast.
    Fig(s)_____

COMMENTS:

ATTACHMENT TO PAPER NO._____     REVIEWER _____     DATE 6 8 95

B000086

110 - 115          GP 3405

PATENT
ATTORNEY DOCKET NO. 02894/285001

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant : Gebhard Braun                Art Unit: 3405
Serial No.: 08/370,681                   Examiner: F. Stinson
Filed     : January 10, 1995
Title     : CLEANING DEVICE FOR CLEANING THE SHAVING HEAD OF A
            DRY SHAVING APPARATUS

Commissioner of Patents and Trademarks
Washington, DC  20231

## PETITION FOR EXTENSION OF TIME

Pursuant to 37 C.F.R. §1.136, applicant hereby

petitions that the period for response to examiner's action

mailed October 27, 1995, be extended for one month to and

including February 27, 1996.

Enclosed is a check for $110.00 for the required fee.

Please apply any other charges or any credits to our deposit

account number 06-1050.

Respectfully submitted,

Date: <u>February 26, 1996</u>

Eric L. Prahl
Reg. No. 32,590
Frank R. Occhiuti
Reg. No. 35,306

Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110-2804

Telephone: 617/542-5070
Facsimile: 617/542-8906
155234.B11

Date of Deposit · · February 26, 1996
I hereby certify under 37 CFR 1.8(a) that this correspondence
is being deposited with the United States Postal Service as
first class mail with sufficient postage on the date indicated
above and is addressed to the Commissioner of Patents and
Trademarks, Washington, D.C. 20231.

Megan O'Meara
Megan O'Meara

BO00087



PATENT
ATTORNEY DOCKET NO. 02894/285001

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant : Gebhard Braun                    Art Unit: 3405
Serial No.: 08/370,681                       Examiner: F. Stinson
Filed    : January 10, 1995
Title    : CLEANING DEVICE FOR CLEANING THE SHAVING HEAD OF A
           DRY SHAVING APPARATUS

Commissioner of Patents and Trademarks
Washington, DC  20231

<u>RESPONSE</u>

In response to the Examiner's action mailed October 27,
1995, please amend the application, as follows:

<u>In the claims:</u>

1.    (Once Amended)  A cleaning device [(5)] for
cleaning <u>a</u> [the] shaving head [(3)] of a dry shaving apparatus
[(1)], <u>said cleaning device comprising:</u> [with] a cradle structure
[(7)] adapted to receive therein the shaving head<u>,</u> [(3),] a
cleaning fluid container [(61)] <u>for</u> holding a cleaning fluid, [as
well as a device (23) adapted to be driven by a motor (28) for
feeding the cleaning fluid, characterized in that the] <u>a filter,
and a fluid feed mechanism which feeds the cleaning fluid after
it passes through the filter to the shaving head during cleaning,
said container and filter being</u> [is] separable from the cleaning
device [(5) and] <u>as a unit</u> [includes a filter means (24)
integrally formed therewith].

Date of Deposit ____February 26, 1996____
I hereby certify under 37 CFR 1.8(a) that this correspondence
is being deposited with the United States Postal Service as
first class mail with sufficient postage on the date indicated
above and is addressed to the Commissioner of Patents and
Trademarks, Washington, D.C. 20231.

_____
                Megan O'Meara

B0000088

2.    (Once Amended)  A cleaning device as claimed in claim 1, [characterized in that] <u>wherein</u> the cleaning fluid container [(61)] is comprised of two chambers, one chamber serving to hold the cleaning fluid, the other chamber being configured as the filter [means (24)].

3.    (Once Amended)  A cleaning device as claimed in claim 2, [characterized in that] <u>further comprising a first conduit which releasably couples the chamber holding the cleaning fluid to the cradle structure and a second conduit which releasably couples the chamber configured as the filter to the fluid feed mechanism, and wherein</u> the chambers are closed relative to the outside <u>of the cleaning fluid container with fluid communication to and from the container provided through the conduits</u> [and are directly or indirectly connected to conduits (50, 64) of the feed pump (23) and the cradle structure (7) in a releasable manner].

6.    (Once Amended)  A cleaning device as claimed in claim 1, [characterized in that] <u>wherein</u> the cleaning fluid container <u>includes</u> [(61) or the chambers include] ports <u>through which cleaning fluid passes in and out of the cleaning fluid container</u> [(62, 63) or releasable connecting or coupling members which are adapted to be inserted in and/or clamped and sealed relative to mating members].

2

B000089