4
5. (Once Amended)  A cleaning device as claimed in
claim 3 wherein [1 or claim 2, characterized in that] at least
one of the conduits [(50, 64)] has a tip [(103)] at its end, and
[that] the cleaning fluid container [(61) and/or the] ports [(62,
63)] are [closable by means of] closed with a foil or a laminate
[(74)] through which the conduits [(50, 64)] are inserted
[insertable].

7
8. (Once Amended)  A cleaning device as claimed in
6
claim 7, [characterized in that] wherein each of said ports
includes a sealing member [each is provided in the ports (62, 63)
of the cleaning fluid container (61)], said sealing members being
adapted to be pierced by the respective ends of the conduits.

8
9. (Once Amended)  A cleaning device as claimed in
claim 1, [characterized in that] wherein the cleaning fluid
container [(61)] has at its end, a locating member which aligns
[means (73) for aligning] and laterally supports [supporting] the
filter [means (24)] in the interior of the cleaning fluid
container [(61)].

9
10. (Once Amended)  A cleaning device as claimed in
8
claim 9, [characterized in that] wherein the cleaning fluid
container comprises a lid and the locating members [means (73)]
are configured as rib members [means provided in] disposed on the
lid [(72) of the cleaning fluid container (61)].

3

B000090

9. (Once Amended)  A cleaning device as claimed in claim 7, [characterized in that] <u>wherein the cleaning fluid container comprises a casing and</u> the filter [means (24)] is fixedly and coaxially arranged within the casing [(101) of the cleaning fluid container (61)] between <u>a</u> [the] coaxially arranged inlet port [(62)] and <u>a</u> [the] bottom <u>portion</u> [(67)] of the casing [(101)].

10. (Once Amended)  A cleaning device as claimed in claim 7, [characterized in that] <u>wherein</u> the filter <u>comprises</u> [means (24) is comprised of] a filter tube including a [fabric or a] mat material [and] extending along the full height of the casing [(101)].

11. (Once Amended)  A cleaning device as claimed in claim 7, [characterized in that] <u>wherein the cleaning fluid container comprises a casing and</u> the filter [means (24)] is coaxially secured in the casing [(101)] at both its ends by the locating <u>members</u> [means (73)].

12. (Once Amended)  A cleaning device as claimed in claim 7, [characterized in that at one end] <u>wherein the cleaning fluid container comprises a casing having an annular groove disposed at the bottom of the casing,</u> the filter [means (24) is] <u>being</u> centrally located and fixedly received <u>at one of its ends</u> in [an] <u>the</u> annular groove [(68) provided at the bottom (67) of the casing (101)].

4

B000091

13. (Once Amended)  A cleaning device as claimed in claim 12, [characterized in that] <u>wherein</u> the annular groove [(68)] is comprised of a <u>pair of walls</u> [wall or hem flange (69, 71)] disposed at the bottom [(67)] of the casing [(101)] at right angles thereto.

14. (Once Amended)  A cleaning device as claimed in claim 3, [7, characterized in that] <u>wherein the cleaning fluid</u> <u>container comprises a lid having an inlet port coaxially arranged</u> <u>in the lid and an outlet port and</u> [the] one end of the <u>second</u> conduit<u>, coupled</u> [(50) connected] to the outlet means of the <u>fluid</u> feed <u>mechanism</u> [pump (23)] is sealingly insertable into the inlet port [(62) coaxially arranged in the lid (72)] and the [adjoining] filter [means (24) equally coaxially arranged], and [that] the second conduit [(64)] provided in the cleaning fluid container [(61)] and <u>coupled</u> [connected] to the cradle structure (7) [or indirectly to the intake means of the feed pump (23)] is sealingly insertable into the outlet port [(63)] of the lid [(72)].

15. (Once Amended)  A cleaning device as claimed in <u>claim 1,</u> [one or several of the preceding claims, characterized in that] <u>further comprising</u> [the cleaning fluid container (61) is adapted to be integrated and fixedly secured in] a wall mount [(38)] in which the shaving apparatus [(1)] is insertable from the side and [is mechanically and/or electrically interlockable by a [switching means (9)] <u>a switch connected to the wall mount</u>

5

B000092

to interlock said shaving apparatus to the wall mount, said cleaning fluid container adapted to be integrated and fixedly secured within the wall mount.

18
16.  (Once Amended)  A cleaning device as claimed in claim 1, [one or several of the preceding claims, characterized in that] wherein the [shaving apparatus (1) is receivable in a] cradle structure [(7) that] is open towards atmosphere and is supplied with cleaning fluid from the [outwardly closed] cleaning fluid container [(61)] by means of the fluid feed mechanism [pump (23)].

19
17.  (Once Amended)  A cleaning device as claimed in claim 1, [one or several of the preceding claims, characterized in that] further comprising a motor which drives said fluid feed mechanism and an impeller which dries the shaving head after cleaning, wherein [the shaving apparatus (17) is first supplied with cleaning fluid from the cleaning fluid container (61) integrated into the wall mount (38) by means of the feed pump (23), and is subsequently dried by means of an impeller (16) integrated into the cleaning device (5)], with the fluid feed mechanism [pump (23)] and the impeller [(16)] being adapted to be driven selectively in at least one of a clockwise and [or] counterclockwise direction using said [by means of a single] motor [(28) using an overrunning device (104)].

6

B000093

18. (Once Amended)  A cleaning device as claimed in claim 17. [one or several of the preceding claims, characterized in that] wherein the feed pump [(23)], the motor, [(28) and/or] the impeller, [(16)] and the cleaning fluid container [(16)] are substantially disposed in coaxial alignment with each other [wholly or at least approximately and/or are mounted] in the [casing (4) of the wall mount (38) or the] cleaning device [(5)].

Please add the following claims:

--19. A cleaning device as claimed in claim 15 wherein said switch mechanically interlocks said shaving apparatus to the wall mount.--

--20. A cleaning device as claimed in claim 15 wherein said switch electrically interlocks said shaving apparatus to the wall mount.--

REMARKS

We have amended the claims to overcome the Examiner's § 112 rejections and to correct the multiple dependencies problems.

We acknowledge the Examiner's indication that claims 6 and 14 would be allowable if rewritten in independent form to include the limitations of the base and intervening claims.

The Examiner rejected claims 1-5 and 7-13 as being unpatentable over Lee.  The Examiner argues that even though the

7

B000094

intended use of the invention recited in the claims is different
than Lee's, it does not structurally distinguish Lee's assembly.

We believe, however, that the relationship between the
claimed shaving head cleaning device and Lee's automobile part
cleaning assembly is so remote that the Lee patent constitutes
nonanalogous art and does not provide a legitimate basis for
rejecting claims to the present invention.  The Federal Circuit
in In re Clay, 23 USPQ2d 1058 (Fed. Cir. 1992) set forth the
standard for determining whether art was analogous:

> "Two criteria have evolved for determining
> whether prior art is analogous: (1) whether
> the art is from the same field of endeavor,
> regardless of the problem being solved, and
> (2) if the reference is not within the field
> of the inventor's endeavor, whether the
> reference is still reasonably pertinent to
> the particular problem with which the
> inventor is involved". Id. at 1060.

In the first place, a cleaning assembly for automotive parts is
simply not in the same field of endeavor as a cleaning device for
the shaving head of a shaving apparatus.  Secondly, Lee's
cleaning assembly is not pertinent to the problem of cleaning a
shaving head of a dry shaving apparatus.  One of skill in the art
would not reasonably expect to solve the problem of cleaning a
shaving head by considering a reference dealing with cleaning
automobile parts.  The person of skill in the art seeking to
design a shaving head cleaning device, therefore, would not even
be presumed to be aware of the Lee patent.  Thus, we believe that
the Lee patent is nonanalogous art and should not be used as
prior art against the claimed invention.

8

Even if, however, one of skill in the art would somehow be motivated to look to Lee's automobile part cleaning device for designing a shaving head cleaning device, he or she still would not arrive at the claimed invention. Lee provides nothing like a cradle structure adapted to receive a shaving head of a dry shaving apparatus, as recited in amended claim 1. Lee's sink provides an open into which any number of different sized and shaped parts can be tossed, but other than providing an open basin into which such parts can be placed, is not adapted to "cradle" anything, much less a shaving head.

The specification makes it quite clear that "a cradle adapted to receive therein a shaving head" is not the same as an open basin into which the shaving apparatus can be tossed without any means designed to particularly receive and/or cradle the shaving head. For example, as described in applicant's specification, one example of a cradle structure adapted to receive a shaving head is configured as a cleaning dish which conforms approximately to the outer contour of the shaving head (see page 8, lines 26-29 and Fig. 1). Lee's sink has no such structure.

We believe that for the foregoing reasons, all of the claims are in condition for allowance, which action is requested.

9

B000096

Please apply any charges not covered, or make any
credits, to Deposit Account No. 06-1050.

Respectfully submitted,

Date: February 26, 1996

Eric L. Prahl
Reg. No. 32,590
Frank R. Occhiuti
Reg. No. 35,306

Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110-2804

Telephone: 617/542-5070
Facsimile: 617/542-8906
155234.B11

10

B000097



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/370,681 | 01/10/95 | BRAUN | 02894/285001 |

G

WILLIS M ERTMAN
FISH AND RICHARDSON
225 FRANKLIN STREET
BOSTON MA  02110-2804

34M1/0821

| EXAMINER |
|---|
| STINSON, F |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3405 | 8 |

DATE MAILED:    08/21/96

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☒ This application has been examined    ☒ Responsive to communication filed on _2/28/96_    ☐ This action is made final.

A shortened statutory period for response to this action is set to expire ___3___ month(s). _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☐ Notice of References Cited by Examiner, PTO-892.
2. ☐ Notice of Draftsman's Patent Drawing Review, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.
4. ☐ Notice of Informal Patent Application, PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.
6. ☐ _____

**Part II    SUMMARY OF ACTION**

1. ☒ Claims _1 - 20_ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☒ Claims _1, 2, 4, 7, 10, 11 and 16_ are rejected.

5. ☒ Claims _3, 5, 6, 8, 9, 12-15 and 17-20_ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
   are ☐ acceptable; ☐ not acceptable (see explanation or Notice of Draftsman's Patent Drawing Review, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____, has (have) been ☐ approved by the
   examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).

12. ☐ Acknowledgement is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☐ been received ☐ not been received
   ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
   accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

PTOL-326 (Rev. 2/93)

B000098

Serial Number: 08/370,681                    -2-

Art Unit: 3405

A.    The following is a quotation of 35 U.S.C. § 103 which forms
the basis for all obviousness rejections set forth in this Office
action:

> A patent may not be obtained though the invention is not
> identically disclosed or described as set forth in section
> 102 of this title, if the differences between the subject
> matter sought to be patented and the prior art are such that
> the subject matter as a whole would have been obvious at the
> time the invention was made to a person having ordinary
> skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which
> the invention was made.

> Subject matter developed by another person, which qualifies
> as prior art only under subsection (f) or (g) of section 102
> of this title, shall not preclude patentability under this
> section where the subject matter and the claimed invention
> were, at the time the invention was made, owned by the same
> person or subject to an obligation of assignment to the same
> person.

B.    Claims 1, 2, 4, 7, 10, 11 and 16 are rejected under 35

U.S.C. § 103 as being unpatentable over either Browing or Schinn.

Re claim 1, Browing and Schinn are cited disclosing a cleaning

device for cleaning an article comprising a cradle adapted to

receive the article therein, a cleaning fluid container for

holding cleaning fluid, a driven device for feeding cleaning

fluid and a cleaning device being separable from the fluid

container that differs from the claim only in the recitation of

the cleaning of a shaving head. Nonetheless, the intended use is

not deemed to structurally define over Lee. Re claim 2, Browing

and Schinn disclose the two chambers. Re claim 4, Browing

discloses the releasable coupling means. Re claim 7, Browing

discloses the aligning means. Also note that to have the aligning

means in the form of rib means, is deemed to be an obvious matter

B000099

Serial Number: 08/370,681                                    -3-

Art Unit: 3405

of design, as claimed no new nor unobvious results are seen. Re

claim 10, To have the filter shaped as instantly claimed is

deemed to be an obvious matter of design, as claimed, no new nor

unobvious results are seen. This is also applicable to the casing

and filter as claimed in claim 11. Re claim 16, Schinn discloses

the cradle open to the atmosphere.

C.    Claims 3, 5, 6, 8, 9, 12-15 and 17-20 are objected to as

being dependent upon a rejected base claim, but would be

allowable if rewritten in independent form including all of the

limitations of the base claim and any intervening claims.

D.    Any inquiry concerning this communication or earlier
communications from the examiner should be directed to F.L.
Stinson whose telephone number is (703) 308-0861.

      Any inquiry of a general nature or relating to the status of
this application should be directed to the Group receptionist
whose telephone number is (703) 308-0861.

fls                                    Frankie L. Stinson

                                       Primary Examiner

                                       ART UNIT 3405

B000100



99999 U.S. PTO

11/25/96

PATENT

ATTORNEY DOCKET NO. 02894/285001

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant : Gebhard Braun        Art Unit: 3405
Serial No.: 08/370,681           Examiner: F. Stinson
Filed     : January 10, 1995
Title     : CLEANING DEVICE FOR CLEANING THE SHAVING HEAD OF A
            DRY SHAVING APPARATUS

Commissioner of Patents and Trademarks
Washington, DC  20231

<u>RESPONSE</u>

In response to the Examiner's action mailed August 21, 1996, please amend the application as follows.

<u>In the claims</u>:

1.    (Twice Amended) A cleaning device for cleaning a shaving head of a dry shaving apparatus, said cleaning device comprising:

a cradle structure adapted to receive therein the shaving head[,]<u>;</u>

a cleaning fluid container <u>separate from the cradle structure</u> for holding a cleaning fluid[,]<u>;</u>

a filter[,]<u>;</u> and

a fluid feed mechanism which feeds the cleaning fluid after it passes through the filter to the [shaving head] <u>cradle structure</u> during cleaning, said container and filter being separable from the [cleaning device] <u>cradle structure</u> as a unit.

Date of Deposit _NOV. 21, 1996_
I hereby certify under 37 CFR 1.8(a) that this correspondence
is being deposited with the United States Postal Service as
first class mail with sufficient postage on the date indicated
above and is addressed to the Commissioner of Patents and
Trademarks, Washington, D.C. 20231.

_Rita a LeBl_

B000101

<u>REMARKS</u>

        We acknowledge the Examiner's indication that claims 3, 5, 6, 8, 9, 12-15 and 17-20 would be allowable if rewritten in independent form to include the limitations of the base and intervening claims.

        The Examiner has rejected claims 1, 2, 4, 7, 10, 11 and 16 under 35 U.S.C. § 103 as unpatentable over either Browning, U.S. Patent No.4,991,609, or Schinn, U.S. Patent No. 4,815,486.

        Claim 1 relates to a cleaning device for cleaning a shaving head of a dry shaving apparatus. The cleaning device includes a cradle structure adapted to receive therein the shaving head; a cleaning fluid container separate from the cradle structure for holding a cleaning fluid; a filter; and a fluid feed mechanism which feeds the cleaning fluid after it passes through the filter to the cradle structure during cleaning. The container and filter are separable from the cradle structure as a unit.

        Browning relates to an ultrasonic cleaning device in which an ultrasonic wave causes fluid circulation in a container 14. Browning's cleaner includes a well 16 from which a container 14 is separable. A recessed portion 44 for receiving a toothbrush is located within container 14. Browning's recessed portion 44 is part of container 14, and, therefore, Browning does not teach or suggest a container and filter that are <u>separable from a cradle structure</u> as a unit, as claimed. Furthermore, contrary to the Examiner's assertion that claim 1 differs from Browning only in the recitation of the cleaning of a shaving

2

B000102

head, claim 1 includes the limitation of a cradle structure adapted to receive a shaving head which structurally defines the cradle structure of the invention over Browning's recessed portion 44 which is adapted to receive a toothbrush, not a shaving head.

Schinn relates to a device for simultaneously cleaning a large quantity of painting equipment. Schinn's device includes a drum 14 substantially filled with a paint thinner or solvent having hooks 18 and wire baskets 20 for retaining paint equipment. As discussed above, claim 1 includes the limitation of a cradle structure adapted to receive a shaving head which structurally defines the cradle structure of the invention over Schinn's hooks and baskets.

Furthermore, we submit that Schinn is non-analogous art and therefore is not prior art.

> Two criteria have evolved for determining
> whether prior art is analogous: (1) whether
> the art is from the same field of endeavor,
> regardless of the problem addressed, and (2)
> if the reference is not within the field of
> the inventor's endeavor, whether the
> reference still is reasonably pertinent to
> the particular problem with which the
> inventor is involved. In re Clay, 23 USPQ2d
> 1058, 1060 (Fed. Cir. 1992).

Schinn's invention addresses an apparatus for cleaning painting equipment. We submit that an apparatus for cleaning painting equipment is not from the same field of endeavor as a cleaning device for a shaving head.

Regarding criterion no. 2, the Court set forth the following standard:

3

B000103

> [T]he purposes of both the invention and the prior art are important in determining whether the reference is reasonably pertinent to the problem the invention attempts to solve. If a reference disclosure has the same purpose as the claimed invention, the reference relates to the same problem, and that fact supports use of that reference in an obviousness rejection. An inventor may well have been motivated to consider the reference when making his invention. If it is directed to a different purpose, the inventor would accordingly have had less motivation or occasion to consider it. <u>In re Clay</u> at 1061.

Schinn does not have the same purpose as the present invention and is not reasonably pertinent to the particular problem with which the inventor is involved. A person having ordinary skill in the art would not reasonably solve the problem of cleaning a shaving head by considering a reference dealing with cleaning paint equipment. The purpose of Schinn's invention is to clean paint equipment. The purpose of applicant's invention, on the other hand, is to clean a shaving head.

Furthermore, Schinn's invention addresses the problem of simultaneously cleaning a large quantity of paint equipment. Applicant's invention, on the other hand, addresses the problem of removing hair and other particles from a single shaving head. Therefore, we submit that Schinn is not prior art.

Applicant submits that all of the claims are now in condition for allowance, which action is requested.

4

B000104

Please charge any fees, or make any credits, to Deposit
Account No. 06-1050.

Respectfully submitted,

Date: _Nov. 21, 1996_

_Phyllis Keister_ Reg. no. 39,524
Eric L. Prahl
Reg. No. 32,590

Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110-2804

Telephone: 617/542-5070
Facsimile: 617/542-8906
201833.B11

5

B000105



pertinent question is if the asserted claims of the '445 and '062 patents are interpreted broadly enough to cover the New Striker, would they have been allowed by the Patent Examiner over the prior art. "If not, then it would be improper to permit [the patent holder] to obtain that coverage in an infringement suit under the doctrine of equivalents." *Id.* The burden is upon the patent holder to prove that the range of equivalents it propounds would not ensnare the relevant prior art. *Id.* at 685.

The second limitation on equitable infringement is prosecution history estoppel. Such estoppel prevents a plaintiff in an action for infringement, under the doctrine of equivalents, from interpreting claims so as to include subject matter that the inventor disclaimed to obtain allowance of the claim before the Patent Office while prosecuting the application. *Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448 [227 USPQ 293] (Fed. Cir. 1985). Not all disclaimers result in an estoppel, however. Rather, an estoppel will be found only when the patent holder's disclaimer was required in response to an examiner's rejection. *Mannesmann Demag Corp. v. Engineered Metal Prod.*, 793 F.2d 1279, 1284-85 [230 USPQ 45] (Fed. Cir. 1986).

[3] The court is not satisfied that the New Striker and Rawl Spike perform substantially the same function, in substantially the same way, to achieve substantially the same result. Contrary to Rawlplug's assertions, the evidence indicates that the New Striker's holding power does not result from a three point pressure system centered around a peak and two bases. Rather, it results from a combination of four points of pressure against the hole wall and a mechanical interlock between the serrations and the wall. This is in contrast to the Rawl Spike, whose two base pressure points are equal in force to that of its peak.

The mere fact that a competing device uses a pressure point system, in and of itself, would not be an infringement of Rawlplug's patents. Instead, it is the way the pressure system is employed that would determine whether infringement exists. Here the New Striker employs a different pressure system than the Rawl Spike. Indeed, the New Striker functions like a combination of the *Katou* and *Carroll*, both of which Giannuzzi distinguished from his invention during the prosecution process. To interpret the New Striker's use of pressure and mechanical interlock as infringing the '445 and '062 patents would be impermissible in light of this relevant prior art.

The complaint is dismissed, and judgment shall be entered in favor of the defendant. So Ordered.

---

**Court of Appeals, Federal Circuit**

In re Clay

No. 91-1402

Decided June 10, 1992

**PATENTS**

**1. Patentability/Validity — Obviousness — Relevant prior art — In general (§115.0903.01)**

**JUDICIAL            PRACTICE            AND PROCEDURE**

**Procedure — Judicial review — Standard of review — Patents (§410.4607.09)**

Board of Patent Appeals and Interferences' decision as to whether reference in prior art is "analogous" to invention under consideration is reviewed under clearly erroneous standard, since question is one of fact; resolution of question requires determination of whether reference is from same field of endeavor as invention, regardless of problem addressed, and if not, whether reference is nonetheless reasonably pertinent to particular problem with which inventor is involved.

**PATENTS**

**2. Patentability/Validity — Obviousness — Relevant prior art — Particular inventions (§115.0903.03)**

Patent which discloses process for reducing permeability of hydrocarbon-bearing formations, and thus improving oil production, by using gel to plug formation anomalies is not in same field of endeavor as invention of application, which uses gel to fill dead volume of tank for storing refined liquid hydrocarbon product, even though reference and application relate to petroleum industry, since reference teaches use of gel in unconfined and irregular volumes within natural oil-bearing formations in order to channel flow in desired direction, whereas application teaches use of gel in confined dead volume of storage tank, since process of reference operates in extreme conditions, whereas application process operates at ambient pressures and temperatures, and since application thus relates to storage of refined



Patent 4,664,294 (Hetherington), which discloses an apparatus for displacing dead space liquid using impervious bladders, or large bags, formed with flexible membranes; and U.S. Patent 4,683,949 (Sydansk), also assigned to Clay's assignee, Marathon Oil Company, which discloses a process for reducing the permeability of hydrocarbon-bearing formations and thus improving oil production, using a gel similar to that in Clay's invention.

The Board agreed with the examiner that, although neither reference alone describes Clay's invention, Hetherington and Sydansk combined support a conclusion of obviousness. It held that one skilled in the art would glean from Hetherington that Clay's invention "was appreciated in the prior art and solutions to that problem generally involved filling the dead space with *something.*" Opinion at 3 (emphasis in original).

The Board also held that Sydansk would have provided one skilled in the art with information that a gelation system would have been impervious to hydrocarbons once the system gelled. The Board combined the references, finding that the "cavities" filled by Sydansk are sufficiently similar to the "volume or void space" being filled by Hetherington for one of ordinary skill to have recognized the applicability of the gel to Hetherington.

## DISCUSSION

The issue presented in this appeal is whether the Board's conclusion was correct that Clay's invention would have been obvious from the combined teachings of Hetherington and Sydansk. Although this conclusion is one of law, such determinations are made against a background of several factual inquiries, one of which is the scope and content of the prior art. *Graham v. John Deere Co.*, 383 U.S. 1, 17, 148 USPQ 459, 467 (1966).

A prerequisite to making this finding is determining what is "prior art," in order to consider whether "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C § 103. Although § 103 does not, by its terms, define the "art to which [the] subject matter [sought to be patented] pertains," this determination is frequently couched in terms of whether the art is analogous or not, *i.e.*, whether the art is "too remote to be treated as prior art." *In re Sovish*, 769 F.2d 738, 741, 226 USPQ 771, 773 (Fed. Cir. 1985).

[1] Clay argues that the claims at issue were improperly rejected over Hetherington and Sydansk, because Sydansk is nonanalogous art. Whether a reference in the prior art is "analogous" is a fact question. *Panduit Corp. v. Dennison Mfg.*, 810 F.2d 1561, 1568 n.9, 1 USPQ2d 1593, 1597 n.9 (Fed. Cir.), *cert. denied*, 481 U.S. 1052 (1987). Thus, we review the Board's decision on this point under the clearly erroneous standard.

Two criteria have evolved for determining whether prior art is analogous: (1) whether the art is from the same field of endeavor, regardless of the problem addressed, and (2) if the reference is not within the field of the inventor's endeavor, whether the reference still is reasonably pertinent to the particular problem with which the inventor is involved. *In re Deminski*, 796 F.2d 436, 442, 230 USPQ 313, 315 (Fed. Cir. 1986); *In re Wood*, 599 F.2d 1032, 1036, 202 USPQ 171, 174 (CCPA 1979).

The Board found Sydansk to be within the field of Clay's endeavor because, as the Examiner stated, "one of ordinary skill in the art would certainly glean from [Sydansk] that the rigid gel as taught therein would have a number of applications within the manipulation of the storage and processing of hydrocarbon liquids . . . [and that] the gel as taught in Sydansk would be expected to function in a similar manner as the bladders in the Hetherington patent." These findings are clearly erroneous.

[2] The PTO argues that Sydansk and Clay's inventions are part of a common endeavor — "maximizing withdrawal of petroleum stored in petroleum reservoirs." However, Sydansk cannot be considered to be within Clay's field of endeavor merely because both relate to the petroleum industry. Sydansk teaches the use of a gel in unconfined and irregular volumes within generally underground natural oil-bearing formations to channel flow in a desired direction; Clay teaches the introduction of gel to the confined dead volume of a man-made storage tank. The Sydansk process operates in extreme conditions, with petroleum formation temperatures as high as 115°C and at significant well bore pressures; Clay's process apparently operates at ambient temperature and atmospheric pressure. Clay's field of endeavor is the *storage* of refined liquid hydrocarbons. The field of endeavor of Sydansk's invention, on the other hand, is the *extraction* of crude petroleum. The Board clearly erred in considering Sydansk to be within the same field of endeavor as Clay's.

[3] Even though the art disclosed in Sydansk is not within Clay's field of endeavor, the reference may still properly be combined

230-126    *Return to*
*Examiner #10*

PATENT
ATTORNEY DOCKET NO. 02894/285001

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

Applicant  : Gebhard Braun                    Art Unit: 3405
Serial No. : 08/370,681                       Examiner: F. Stinson
Filed      : January 10, 1995
Title      : CLEANING DEVICE FOR CLEANING THE SHAVING HEAD OF A
             DRY SHAVING APPARATUS

Commissioner of Patents and Trademarks
Washington, DC  20231

<u>INFORMATION DISCLOSURE STATEMENT</u>

Applicant submits the references listed on the attached
form PTO 1449, copies of which are enclosed.  This statement is
being filed after a first Office action on the merits, but before
receipt of a final Office action or a Notice of Allowance.  A
check for $230 in payment of the late submission fee of §1.17(p)
is enclosed.  Please apply any additional charges or credits to
Deposit Account No. 06-1050.

Respectfully submitted,

Date: *Nov. 22, 1996*

Eric L. Prahl    *Reg. no. 38,524*
Reg. No. 32,590

Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110-2804

Telephone: 617/542-5070
Facsimile: 617/542-8906
201833.B11

Date of Deposit *Nov 22, 1996*
I hereby certify under 37 CFR 1.8(a) that this correspondence
is being deposited with the United States Postal Service as
first class mail with sufficient postage on the date indicated
above and is addressed to the Assistant Commissioner for
Patents, Washington, D.C. 20231

B000108

Sheet __1 (A)__ of __1__

TUTE FORM PTO-1449
OIFIED)

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

ATTY. DOCKET NO.
02894/285001

SERIAL NO.
08/370,681

INFORMATION DISCLOSURE
STATEMENT BY APPLICANT
(Use several sheets if n_____)

APPLICANT

(37 CFR 1.98(b))

| FILING DATE | GROUP |

MAILROOM
NOV 26 64
PATENT & TRADEMARK OFF.

### U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | PATENT NUMBER | | | | | | | ISSUE DATE | PATENTEE | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| JHS | AA | 1 | 1 | 0 | 5 | 0 | 4 | 5 | | Shipherd | 134 | 111 | |
| | AB | 2 | 4 | 8 | 5 | 9 | 6 | 8 | 10/49 | Hilliker | 134 | 111 | |
| | AC | 2 | 5 | 9 | 5 | 8 | 3 | 8 | 5/52 | Fuglie | 134 | 111 | |
| | AD | 2 | 6 | 7 | 5 | 0 | 1 | 2 | 4/54 | Scales | 134 | 111 | |
| | AE | 3 | 1 | 7 | 2 | 4 | 1 | 6 | 3/65 | Simmons | | | |
| | AF | 3 | 3 | 6 | 5 | 2 | 6 | 7 | 1/68 | Mekiney et al. | 134 | 111 | |
| | AG | 3 | 4 | 8 | 0 | 0 | 2 | 2 | 11/69 | Richardson et al. | 134 | 135 | |
| | AH | 3 | 8 | 7 | 6 | 6 | 4 | 9 | 4/75 | Schimke | 134 | 95 | |
| | AI | 3 | 9 | 0 | 8 | 6 | 8 | 1 | 9/75 | Schimke et al. | 134 | 95.2 | |
| | AJ | 4 | 0 | 5 | 4 | 9 | 6 | 3 | 10/25 | Taylor | | | |
| | AK | 4 | 4 | 4 | 2 | 9 | 5 | 6 | 4/84 | Nasu | 30 | 41.5 | |
| | AL | 4 | 5 | 4 | 9 | 3 | 5 | 2 | 10/85 | Ochiai et al. | 30 | 41.5 | |
| | AM | 4 | 6 | 3 | 1 | 8 | 2 | 5 | 12/86 | Kuriama et al. | 30 | 43.92 | |
| | AN | 5 | 1 | 1 | 8 | 3 | 5 | 7 | 6/92 | Sabatka | 134 | 64R | |
| | AO | 5 | 1 | 4 | 3 | 1 | 0 | 1 | 9/92 | Mor | 134 | 108 | |
| | AP | 5 | 1 | 5 | 6 | 8 | 1 | 3 | 10/92 | Calhoun | 134 | 186 | |
| | AQ | 5 | 1 | 7 | 9 | 8 | 9 | 0 | 1/93 | Reuveni et al. | 134 | 64R | |
| | AR | 5 | 3 | 1 | 8 | 3 | 5 | 6 | 6/94 | Shelton | 312 | 223.1 | |
| | AS | 5 | 3 | 3 | 5 | 3 | 9 | 4 | 8/94 | Cunninchan et al. | 134 | 135 | |
| JHS | AT | 5 | 4 | 5 | 6 | 2 | 7 | 5 | 10/95 | Barish | 134 | 275 | |

### FOREIGN PATENT OR PUBLISHED FOREIGN PATENT APPLICATION

| | | DOCUMENT NUMBER | PUBLICATION DATE | COUNTRY OR PATENT OFFICE | CLASS | SUBCLASS | TRANSLATION YES | NO |
|---|---|---|---|---|---|---|---|---|
| JHS | AU | 87,679 | 10/36 | Sweden | 134 | 116 | | |
| | AV | FR A 2568111 | 7/31/86 | France | | | | |
| | AW | JP A 06178876 | 6/28/94 | Japan-Abstract | | | | |
| JHS | AX | DE A 2429372 | 8/1/76 | Germany | | | | |

### OTHER DOCUMENTS (Including Author, Title, Date, Place of Publication)

| | | |
|---|---|---|
| | AY | |

| EXAMINER | DATE CONSIDERED |
|---|---|
| J.H.Simmo | 1/16/97 |

EXAMINER: Initial citation considered. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

Substitute Disclosure Form (PTO-1449)



**UNITED STATES D. ARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address:    COMMISSIONER OF PATENTS AND TRADEMARKS
            Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/370,681 | 01/10/95 | BRAUN | G | ...001 |

34M2/0124

WILLIS M ERTMAN
FISH AND RICHARDSON
225 FRANKLIN STREET
BOSTON MA 02110-2804

| EXAMINER |
|---|
| STINE |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2405 | |

01/24/97

DATE MAILED:

**Please find below and/or attached an Office communication concerning this application or proceeding.**

Commissioner of Patents and Trademarks

B000110

PTO-90C (REV. 2/95)                                                                                    1 - File Copy

| *Notice of Allowability* | Application No.<br>08/370,681 | Applicant(s)<br>BRAUN |
| --- | --- | --- |
| | Examiner<br>Frankie L. Stinson | Group Art Unit<br>3405 |

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance and Issue Fee Due or other appropriate communication will be mailed in due course.

☒ This communication is responsive to *amd't B, filed 11/25/96*

☒ The allowed claim(s) is/are *1-20*

☐ The drawings filed on _____ are acceptable.

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

    ☐ All  ☐ Some*  ☐ None   of the CERTIFIED copies of the priority documents have been

        ☐ received.

        ☐ received in Application No. (Series Code/Serial Number) _____.

        ☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    *Certified copies not received: _____

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE **THREE MONTHS** FROM THE "DATE MAILED" of this Office action. Failure to timely comply will result in ABANDONMENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

☐ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.

☒ Applicant MUST submit NEW FORMAL DRAWINGS

    ☐ because the originally filed drawings were declared by applicant to be informal.

    ☒ including changes required by the Notice of Draftsperson's Patent Drawing Review, PTO-948, attached hereto or to Paper No. _6_.

    ☐ including changes required by the proposed drawing correction filed on _____, which has been approved by the examiner.

    ☐ including changes required by the attached Examiner's Amendment/Comment.

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the reverse side of the drawings. The drawings should be filed as a separate paper with a transmittal lettter addressed to the Official Draftsperson.**

☐ Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

Any response to this letter should include, in the upper right hand corner, the APPLICATION NUMBER (SERIES CODE/SERIAL NUMBER). If applicant has received a Notice of Allowance and Issue Fee Due, the ISSUE BATCH NUMBER and DATE of the NOTICE OF ALLOWANCE should also be included.

Attachment(s)

    ☐ Notice of References Cited, PTO-892

    ☒ Information Disclosure Statement(s), PTO-1449, Paper No(s). _10_

    ☐ Notice of Draftsperson's Patent Drawing Review, PTO-948

    ☐ Notice of Informal Patent Application, PTO-152

    ☐ Interview Summary, PTO-413

    ☐ Examiner's Amendment/Comment

    ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

    ☐ Examiner's Statement of Reasons for Allowance

**FRANKIE L. STINSON**
**PRIMARY EXAMINER**
**GROUP 3400**



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**

Address:  Box ISSUE FEE
COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

## NOTICE OF ALLOWANCE
## AND ISSUE FEE DUE

☐ Note attached communication from the Examiner
☐ This notice is issued in view of applicant's communication filed _____

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | DATE MAILED |
|---|---|---|---|---|
|  |  |  |  |  |

| First Named Applicant | | | | |
|---|---|---|---|---|

| TITLE OF INVENTION | | | | |

| ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |

**THE APPLICATION IDENTIFIES ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT.**
**_PROSECUTION ON THE MERITS IS CLOSED._**

**THE ISSUE FEE MUST BE PAID WITHIN _THREE MONTHS_ FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED.  THIS STATUTORY PERIOD CANNOT BE EXTENDED.**

### HOW TO RESPOND TO THIS NOTICE:

I. Review the SMALL ENTITY Status shown above.
   If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

   A. If the status is changed, pay twice the amount of the FEE DUE shown above and notify the patent and Trademark Office of the change in status, or
   B. If the Status is the same, pay the FEE DUE shown above.

If the SMALL ENTITY is shown as NO:
A. Pay FEE DUE shown above, or
B. File verified statement of Small Entity Status before, or with, pay of 1/2 the FEE DUE shown above.

II. Part B of this notice should be completed and returned to the Patent and Trademark Office (PTO) with your ISSUE FEE.
    Even if the ISSUE FEE has already been paid by charge to deposit account, Part B should be completed and returned.
    If you are charging the ISSUE FEE to your deposit account, Part C of this notice should also be completed and returned.

III. All communications regarding this application must give series code (or filing date), serial number and batch number.
    Please direct all communication prior to issuance to Box ISSUE FEE unless advised to contrary.

**IMPORTANT REMINDER: Patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees.  It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

PTOL-85 (REV. 12-93) (0851-0033)                    4. PATENT AND TRADEMARK OFFICE COPY                    B000112



PATENT
ATTORNEY DOCKET NO. 02894/285001

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant : Gebhard Braun
Serial No.: 08/370,681
Filed    : January 10, 1995
Title    : CLEANING DEVICE FOR CLEANING THE SHAVING HEAD OF A
            DRY SHAVING APPARATUS

Art Unit: 3405
Examiner: Stinson

BOX ISSUE FEE
Commissioner of Patents and Trademarks
Washington, DC  20231

RESPONSE TO NOTICE OF ALLOWANCE

In response to the Notice of Allowance mailed January
24, 1997, enclosed are completed issue fee transmittal form PTOL-
85b and 85c, transmittal of 8 sheets of formal drawings, and a
check for $1,320.00 for the required fee, including patent
copies.  Just as a reminder, we have not yet received an
initialed copy of the PTO 1449 that we submitted via fax on
February 21, 1997.

Please apply any other charges or credits to our
deposit account no. 06-1050.

RECEIVED
Publishing Division

Respectfully submitted MAR 1 4 1997

UI

Date: Match 10, 1997

Eric L. Prahl
Reg. No. 32,590

Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110-2804

Telephone: 617/542-5070
Facsimile: 617/542-8906
231306.B11

Date of Deposit  March 10, 1997
I hereby certify under 37 CFR 1.8(a) that this correspondence is being
deposited with the United States Postal Service as first class mail
with sufficient postage on the date indicated above and is addressed to
the Assistant Commissioner for Patents, Washington, D.C. 20231.

LINDA WEBB

B000113

5649556

Fig. 1



B000114



Fig. 2

Fig. 3



Fig. 4

B000116



Fig.11

Fig.5

B000117

Fig. 6





**Fig. 10**

B000119