EXHIBIT V

031505a

<pre>
 1                 UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MASSACHUSETTS
 2
                                        Civil Action
 3                                      No. 03-12428-WGY

 4

 5     * * * * * * * * * * * * * * * *
                                     *
 6     BRAUN GmbH,                   *
                                     *
 7              Plaintiff,           *
                                     *
 8     v.                           * MARKMAN HEARING
                                     *
 9     RAYOVAC CORPORATION,          *
                                     *
10              Defendant.           *
                                     *
11     * * * * * * * * * * * * * * * *

12              BEFORE:  The Honorable William G. Young,
                              District Judge
13

14
       APPEARANCES:
15

16              ROPES & GRAY, LLP (By William L. Patton,
         Esq., Dalila Argaez Wendlandt, Esq. and Lesley F.
17       Wolf, Esq.) One International Place, Boston,
         Massachusetts 02110, on behalf of the Plaintiff
18
                DWYER & COLLORA, LLP (By Joseph Ernest
19       Haviland, Esq.), 600 Atlantic Avenue, 12th Floor,
         Boston, Massachusetts 02210
20                   - and -
                KIRKLAND & ELLIS (By Mark Pals, Esq. and
21       James A. Shimota, Esq.), 200 E. Randolph Drive,
         Chicago, Illinois 60601, on behalf of the
22       Defendant

23                                     1 Courthouse Way
                                       Boston, Massachusetts
24
                                       March 15, 2005
25
</pre>

2

<pre>
 1          THE CLERK:  All rise.  Court is now in session,

 2     please be seated.
</pre>

031505a

3      Calling Matter Number 03-12428, Braun v. Rayovac.

4      THE COURT:  Good afternoon and welcome.  Would

5      counsel identify themselves.

6      MR. PATTON:  Your Honor, Bill Patton from the firm

7      of Ropes and Gray on behalf of Braun, and with me are my

8      colleagues, Dalila Wendlandt and Lesley Wolf.

9      And, your Honor, if I might, I would like to

10     introduce to the Court Don Tobin, the chief patent counsel

11     at Gillette, and Dr. Wolfgang Vorbeck who's the director of

12     patents at Braun.  Dr. Vorbeck is a member of the European

13     Union and German patent bar, and this is his first time in

14     an American courtroom.  So, we want to make sure he's

15     introduced.

16     THE COURT:  He is certainly welcome.  We have much

17     to learn from the European patent process.

18     Counsel.

19     MR. HAVILAND:  Good afternoon, your Honor.  Joseph

20     Haviland of Dwyer and Collora appearing on behalf of

21     defendant Rayovac Corporation.  With me are Mark Pals and

22     James Shimota from Kirkland & Ellis both of whom have been

23     admitted pro hac vice and they will be handling the argument

24     this afternoon with your Honor's permission.

25     THE COURT:  And of course they are certainly

3

1      welcome to the bar of this Court.

2      Let me try to tee this up.  Here's how I've

3      prepared for this.  I've read the briefs and I commend

4      counsel for their briefs.  They're thorough and they address

5      the relevant issues.  I've read the patents.  I've read a

6      comprehensive memorandum prepared by my law clerk with

031505a

7    respect to this case.  I have consulted but I do not claim
8    to have read in detail the file wrapper.
9         I could have wished that you people had, I don't in
10   any way impugn your professionalism, but I could have wished
11   that you had been more cooperative in limiting the matters
12   to be construed.  And I wonder whether we will get through
13   everything this afternoon.  If we do not, I have some time
14   tomorrow and maybe we can get through it then.
15        I have this question.  Is this a jury case?  A
16   jury?
17        MR. PALS:  Yes, your Honor.
18        THE COURT:  That's what I thought.
19        So, understand that what we are trying to capture
20   now is the patent language in readily understandable English
21   which will be read to the jury in my precharge at the outset
22   of the case.
23        Now, I recognize that this translation problem is
24   difficult because under the law -- and this is a hearing to
25   construe matters as matters of law.  As somebody, I think it

4

1    was Marilyn Hall Patel of the Northern District of
2    California, once said, what this is all about is
3    substituting one set of words for another set, what the
4    person skilled in the art would understand for what the
5    patent drafters had to say.  But if that's so there's yet a
6    second translation and that's to go from what one skilled in
7    the art would understand to what a jury will understand,
8    substituting yet a third set of words, and I'm going to try
9    and collapse the two.
10        The last point, and we'll get right to it, is this.

Page 3

031505a

11 Everything I say here this afternoon is tentative.  It's

12 tentative because I follow what I think is the appropriate

13 prudential approach to things and that is to refrain from

14 taking any look at all at the accused device.  I'm not going

15 to.  And I'll give you my best shot during the course of

16 this proceeding.  But I cannot under the constitution give

17 advisory opinions.  And this is not the final claim

18 construction, what is it, the EDS case out of the Southern

19 District that now you go and settle this but it may have

20 issue preclusive effects.  I'm here to say I don't intend

21 that today from this afternoon's proceeding.  The time where

22 it will have issue preclusive effects is when one side or

23 the other, after you've heard what I say today, brings a

24 motion for summary judgment, of course a motion which I will

25 bend over backwards to deny because all intendments have to

0

5

1 be drawn against the party making the motion.  But to be

2 intellectually honest I rather doubt, unless I am persuaded

3 and can explain why I'm persuaded, the things I express

4 today and perhaps tomorrow are wrong, that the construction

5 is going to stick and it's going to stick throughout the

6 trial.  But when it's used to resolve something important as

7 to the case, rather than just talk to you, then it gets

8 preclusive effect.

9    Last question and we can start.  When is this going

10 to trial?

11    MS. WENDLANDT:  October.

12    THE COURT:  Thank you.

13    All right.  Okay.  I propose to proceed in the

14 following fashion because I think it makes for the most

Page 4

031505a

15    effective hearing.  I'll call out what, what seem to be the

16    basic differences.  It's the discussion about claim 11 of

17    the '328 patent and claim, excuse me, claim 1 of the '556

18    patent.  I have read this.  And so to, to make your

19    arguments make sense, I think that in most cases I'll

20    either, I'm going to propose a construction, and once you've

21    heard my construction you may ask me any questions about it,

22    and then we'll hear argument, why isn't that construction

23    right, why doesn't it make sense.  And once, once we've gone

24    through these first two then I don't particularly care the

25    order that we go in.  I'll go back and forth.  I'll let

6

1    Braun pick one and then we'll let Rayovac pick one.  We'll

2    get the idea as we work through.

3          Okay.  Now, it seems to me that claim 11 and claim

4    1, at least this challenged part, this bit about cradle, a

5    cradle structure adapted to receive a shaving head of a

6    shaving apparatus, I think you're in agreement that that

7    must mean the same thing under both these patents.  And I

8    propose the same construction under both patents and here's

9    my proposed construction.

10          A framework or other resting place adapted to

11    support or receive a shaving head of a shaving apparatus and

12    able to receive or retain fluid or both.

13          Mr. Patton, I imagine you would go for that.

14          MR. PATTON:  Your Honor, Ms. Wendlandt is going to

15    speak to the patents.

16          THE COURT:  I don't care who does it.  Ms.

17    Wendlandt, go ahead.

18          MS. WENDLANDT:  Yes, your Honor, we would agree

Page 5

031505a

19     with that construction.

20          THE COURT:  Fine.

21          What do you folks say?  Well, I'm really, I have to

22     tell you, you make this interesting argument about

23     means-plus-function.  But you can pretty much understand

24     I've rejected that.  The word means is not used.  The

25     presumption is strong against that.  Let's talk about

7

1     what -- and I'm certainly not saying to the jury, oh, we've

2     got a limitation governed by 35 U.S.C., Section 112,

3     Paragraph 6.  We're talking to a jury here.

4          So what should I say?  Or maybe you'll go with

5     that.  We'll move along right smartly then.

6          MR. PALS:  Your Honor, with all due respect, I

7     think what's happened here is you've given quite a bit of

8     credence to the word cradle.  And the word cradle, with all

9     due respect, appears in this application only as new matter.

10     It's not a word that appears in the German priority filing.

11     Obviously, the German priority filing is in German.  But on

12     translation, accurate translation of the German priority

13     filing, the word cradle doesn't exist.

14          So what's happened here is a new word has been

15     inserted into the claim language and weight is being given

16     to that word to broaden the construction.

17          THE COURT:  To broaden it?  Well, that's why I put

18     in the business about fluid.  If it was just, if it was just

19     cradle there would be something to what you say.  But given

20     what this patent is about, the word framework or other

21     resting place able to receive or retain fluid or both,

22     that's a limitation.  And then I think an infringing device

Page 6

031505a

23    would have to meet that limitation.  That's what this is

24    about.  It's not just the stand that you put your shaver in.

25    So, I hear what you say, but it doesn't dissuade me from

8

1    what seems to me to make sense here.

2            MR. PALS:  I think, your Honor, perhaps I'm

3    focusing more on the word framework in the language.

4    Resting place, I think in fairness to what is shown in

5    there, is some sort of a resting place.  It's a particular

6    structure and a particular shape to that resting place, and

7    particular attributes are given to what's shown.

8            THE COURT:  Adapted to support or receive a shaving

9    head of a shaving apparatus.

10            MR. PALS:  But a framework other than in the

11    context of this trough-like or dish-like embodiment isn't

12    described.  And that, the framework language is only

13    creeping into this because of a definition of the 2003

14    dictionary of the term cradle.  And it's --

15            THE COURT:  How does it -- what difference -- I

16    gather I will come to see what difference it makes

17    downstream.  It just seems to capture the idea about what a

18    cradle is.

19            When I hear cradle, I think of two things.  I

20    suppose now just having grandchildren who are young, I

21    suppose I think of cradles.  And it used to be that cradles

22    had slat sides, things got flung out of cradles and the like

23    and could get into them, I guess.  But they got flung out.

24    Now you look at the new Graco cradles and they're virtually

25    enclosing.  They've got pads all around.  Might retain

031505a

9

1    fluids without any additional language.

2        But another thing that I think of is if you look at

3    the, the etymology of the word, ships were held in cradles.

4    And that's, that's really what we're talking about here.

5    We're talking about something that's going to receive

6    something.

7        Now, what is a ship's cradle? It's the framework.

8    It's blocks and the, how you hold a ship when she's in dry

9    dock. An analogy that sort of commends itself to me here

10   where we're talking about fluids and the like.

11       MR. PALS: For one thing, if the word cradle is

12   construed to cover something more than what is otherwise

13   described in the specification they've inserted new matter

14   and the claims are invalid. That's the problem we have

15   here.

16       THE COURT: Well, if --

17       MR. PALS: They've said --

18       THE COURT: Wait a second.

19       MR. PALS: I'm sorry.

20       THE COURT: I start with the claims. I guess I'm

21   not following you as matter of law. I thought what I was

22   supposed to do was figure out what this language meant. Am

23   I mistaken?

24       MR. PALS: Of course in a claim construction the

25   exercise of the idea is to find out what the language meant.

10

1    But of course there's the old adage that the claim should be

2    construed to be valid.

3        THE COURT: Right.

Page 8

031505a

4      MR. PALS:  And looking at what we have there in

5      front of us, we have the German priority filings in which

6      the German equivalent to the word cradle is not used.  We

7      have U.S. applications that are filed and represented to be

8      accurate translations of the German applications but now

9      contain the word cradle.  Whether or not the translations

10     are accurate or were incorrect for some purpose is an issue

11     for later.  But they represented that they were accurate

12     translations.  In other words, they're not adding anything

13     to these applications that wasn't in the German application.

14     Therefore, the word cradle can't bring in a bunch of

15     independent meaning to what is otherwise described.

16         THE COURT:  I guess I -- forget cradle, though

17     cradle certainly has informed my view of things.  Suppose it

18     just said structure.  Do you -- will you go for a structure

19     adapted, et cetera, et cetera, and able to receive or retain

20     fluid.

21         MR. PALS:  Well, as I looked at this claim actually

22     I looked at it and thought what if the word cradle, which is

23     an adjective as it's used here and the prosecution history

24     shows that, but what if the word cradle is not in there.

25         THE COURT:  I'm going --


                                                           11


1      MR. PALS:  Now we're talking means-plus-function.

2      Because we've got a structure with no specified structure

3      whatsoever.

4          THE COURT:  I'm not, I'm sorry, I'm not going for

5      means-plus-function.  We need not waste time here.  I've

6      read the briefs.  I reject that as matter of law.  That's

7      not what it is.  It's plain.  If we want to use the word

                        Page 9

031505a

8    structure, you think that makes your means-plus-function

9    argument better, well, then good luck to you, with the

10    Federal Circuit, because I'm not going for it.

11         We'll see how -- what if I go back to, I just say a

12    cradle structure, et cetera, this means a structure adapted,

13    blah, blah, blah, and able to receive or retain fluid or

14    both.  You're okay with that?

15         MS. WENDLANDT:  Yes, we see no difference between

16    that and what you proposed initially.

17         THE COURT:  I don't either.  And if you're more

18    comfortable with the word structure, I'll do structure.

19         MR. PALS:  The problem we have is we've given the

20    jury no real guidance as to what this structure is supposed

21    to be.  I'm okay with, your Honor, to take, go back to your

22    definition, resting place, I think that's a fair description

23    of what they were disclosing and what they were talking

24    about.  Adapted to support or receive a shaving head, I'm

25    fine with that.  Able to retain fluid, I'm fine with that.

☐

12

1    It's receiving fluid, I'm a little ambiguous as to what it

2    means to receive fluid.

3         THE COURT:  It's not ambiguous to me.  Because --

4         MR. PALS:  Well, does a hose receive fluid, for

5    example?

6         THE COURT:  What's that?

7         MR. PALS:  Does a hose -- if we have a bathtub and

8    a hose going into the bathtub, is the hose receiving the

9    fluid or is the tub receiving the fluid?

10        THE COURT:  I don't know, but I imagine both are.

11   I mean, fluid comes from a faucet somewhere, runs through

031505a

12    the hose, it receives the fluid, yes. As opposed, for

13    instance, to a closed container which doesn't get the fluid

14    into it. Given what this is about, I want the words receive

15    or retain fluid or both is the way I said it.

16         Okay, I think I'm going to go with a structure

17    adapted. Okay.

18         Now, where do you want to go from there? And we'll

19    let the, we'll let the proponent of the patent take its next

20    pick.

21         Let me speak with the clerk a minute.

22         (Whereupon the Law Clerk and the Court conferred.)

23         MS. WENDLANDT: Your Honor, if we're construing

24    claim 11, which I've projected there on the board, I think

25    the next claim language in order is cleaning fluid container

                                                              13

1    as to which I think there is no dispute is a container for

2    holding fluid.

3         THE COURT: That's right, isn't it?

4         MR. PALS: In the context of the '328 patent

5    there's no dispute, your Honor; there is as to the '556

6    patent.

7         THE COURT: I think her comments are limited to the

8    '328. So would you -- let's go through the '328. I was

9    trying to save time. But specifically as to '328 there's no

10   dispute.

11        MS. WENDLANDT: That's right.

12        THE COURT: And your proposed, or the proposed

13   construction is adopted by the Court.

14        Go ahead. You're doing fine.

15        MS. WENDLANDT: The next claim element is a feed

                              Page 11

031505a

16    device for feeding cleaning fluid from the cleaning fluid

17    container to the cradle.  And we propose a relatively

18    straightforward construction of a mechanism that feeds

19    cleaning fluid from the cleaning fluid container to the

20    cradle structure.  Rayovac proposes that this be construed

21    again as a means-plus-function element.

22          THE COURT:  Well, I reject that as matter of law.

23    And with all respect, and I have reviewed the briefs, I

24    don't think it makes time to make that, take time on that.

25          The specific language, let me look at the patent

14

1     here, the specific language is found in claim 11.  All

2     right.  Give me the line, would you?

3           MS. WENDLANDT:  It is the -- oh, the line number of

4     the patent?

5           THE COURT:  Yes.

6           MS. WENDLANDT:  It is column 13.

7           THE COURT:  A feed device.

8           MS. WENDLANDT:  Yes.  Line 32.

9           THE COURT:  Now you've lost me.  It's line 17,

10    isn't it?  Column 14, line 17?

11          MS. WENDLANDT:  Yes.  I'm sorry.  Yes.

12          THE COURT:  Yes.  All right.

13          MS. WENDLANDT:  Yes.  I'm sorry.

14          THE COURT:  Give me a moment.

15          Yes, what's the matter, if I reject

16    means-plus-function, what's the matter with her proposal

17    there?

18          MR. PALS:  Your Honor, Mr. Shimota will be handling

19    the argument on behalf of the '328 issues.

Page 12

031505a

20          THE COURT:  Yes, all right, Mr. Shimota.

21          MR. SHIMOTA:  The problem with it is, your Honor,

22    actually the dispute we have is precisely where the cleaning

23    fluid is fed to.  The dispute then is whether --

24          THE COURT:  Yes.

25          MR. SHIMOTA:  -- it actually needs to be fed to the

                                                              15

1    cradle structure or whether it can be fed to the shaving

2    head and then to the cradle structure.  We think that the

3    claim language is explicit with regard to the order in which

4    the cleaning fluid is fed from the feed device and that

5    claim, that explicit claim language should control, as

6    required by the claim language itself.

7          THE COURT:  And you think it says what?

8          MR. SHIMOTA:  It says that the, that the feed

9    device feeds cleaning fluid from the cleaning fluid

10   container to said cradle structure.  It doesn't say --

11         THE COURT:  Oh, I think I'm with you.  But I

12   thought that's what she said.  Here's the language I think

13   we're settling on, for line 17, column 14:  A mechanism that

14   feeds cleaning fluid from the cleaning fluid container to

15   the cradle structure.

16         Isn't that what you said?

17         MS. WENDLANDT:  That's right, your Honor, that's

18   what we propose.

19         THE COURT:  And that's what you said.

20         MR. SHIMOTA:  I believe if to the cradle structure

21   means what it literally means then we would agree with that.

22   But actually if you read the briefs there is a dispute on

23   what that language to the cradle structure means, whether it

                              Page 13

031505a

24    means actually to the cradle structure or effectively to the
25    cradle structure. We say that at least with respect to what

16

1     the literal claim language means that it means directly to
2     the cradle structure, it doesn't mean effectively to the --
3            THE COURT: Well, I haven't put in the word
4     directly. And I don't know as I'll be anymore detailed at
5     least for now than I am. I hear the argument. But I'm
6     adopting that construction. I'll say it again. It's a
7     mechanism that feeds cleaning fluid from the cleaning fluid
8     container to the cradle structure.
9            All right. Go ahead, let's let them have a chance.
10    But maybe the logic of what you're doing makes sense. Since
11    you're going to handle the '328 let's stick with the '328
12    and you move us along.
13            MS. WENDLANDT: Sure. The next claim element is
14    said cradle structure being arranged above a fluid level of
15    the cleaning fluid in the cleaning fluid container during
16    feeding of the cleaning fluid to the cradle structure.
17            THE COURT: We've got a --
18            MS. WENDLANDT: Which is at column 14, lines --
19            THE COURT: No, I see it.
20            MS. WENDLANDT: Okay. Sure.
21            THE COURT: We've got a dispute about that?
22            MS. WENDLANDT: Your Honor, actually we, we propose
23    the construction that during cleaning the cradle structure
24    is above the fluid level of the fluid in the container, and
25    Rayovac did not propose an alternative construction.

17

031505a

1    Therefore, we propose that this construction be adopted and
2    it is the straightforward meaning of the claim itself.
3        THE COURT:  Any objection to that?
4        MR. SHIMOTA:  No.
5        THE COURT:  All right.
6        MR. SHIMOTA:  We have no objection to that.
7        THE COURT:  Thank you.
8        MR. SHIMOTA:  To the extent that it's not departing
9    what actually is written in the literal language, we have no
10   objection to that.
11       THE COURT:  Well, I'm going to be guided
12   significantly by the transcript of what we say here.  I
13   think we're in agreement, but I don't want anyone to be
14   blindsided.  You've got a proposed construction.  During the
15   cleaning operation the cradle structure is above the fluid
16   level of the fluid in the container.  That's the cleaning
17   fluid container, correct?
18       MS. WENDLANDT:  Correct, your Honor.
19       THE COURT:  Yes.  And there's no objection to that.
20   As I understand this that makes sense to me.
21       MR. SHIMOTA:  Yes, it does appear to, I mean, there
22   are differences and I don't think there's any intent to
23   depart from the spirit of the actual language and to the
24   extent there isn't we have no disagreement.
25       THE COURT:  Thank you.

18

1        MS. WENDLANDT:  And again there is, the final claim
2    element is a drying device and there is no dispute I think
3    on that issue which is a device to dry the shaver head.

031505a

 4          THE COURT:  I don't know as that's described.  I
 5     mean, I don't know as that's described, device to dry it.
 6          MS. WENDLANDT:  I'm sorry, I didn't understand
 7     your --
 8          THE COURT:  Well, I'm saying, I don't know that
 9     that's described in this claim.  It's just part of it,
10     there's got to be a drying device of some sort.
11          MS. WENDLANDT:  That's right.
12          THE COURT:  And you're all right with that?
13          MR. SHIMOTA:  I believe so.
14          Your Honor, if I may make one point of
15     clarification going back --
16          THE COURT:  Please.
17          MR. SHIMOTA:  -- to the prior limitation.
18          The opening preamble to their construction says
19     during cleaning operation.  I don't think that is as
20     entirely accurate and matches with the claim language, it
21     actually says during feeding of said cleaning fluid to said
22     cradle structure.  And the feeding of the fluid doesn't
23     necessarily have to mean the cleaning, I wouldn't think.  It
24     could be independent of that.  So I think it would be more
25     accurate to say during the feeding of said cleaning fluid to

□

                                                              19

 1     said cradle structure, comma, the cradle structure is above
 2     the fluid level of the fluid in a container.
 3          THE COURT:  You're okay with that, during feeding?
 4          MS. WENDLANDT:  That's fine.
 5          THE COURT:  Fine.  All right, I will modify it.  It
 6     does seem to be more accurate, during feeding the cradle
 7     structure is above the fluid level of the fluid in the fluid

                              Page 16

031505a

8      container.

9              All right.  Go ahead.

10             MS. WENDLANDT:  Your Honor, as far as the '328

11     patent, I think claim 11 is exemplary of the disputed claim

12     elements between the parties.

13             THE COURT:  So we can move on.

14             MS. WENDLANDT:  And I think we can move on to the

15     '556.

16             THE COURT:  Thank you.  Then we'll let your side

17     propose.

18             MR. SHIMOTA:  I think there are a few additional

19     terms, one of which is impeller which is --

20             THE COURT:  Yes, in the dependent claim 12, fine,

21     before we get done with '326 let's, let's do that.

22             I, I thought we ought to explain what an impeller

23     is.  But my explanation is not Rayovac's.  So let me try

24     mine and see what's the matter with it.

25             An impeller, which is a rotating device or member

                                                          20

1      of a turbine, blower, fan, axial or centrifugal pump.  Isn't

2      that what it is?  Since you're taking the lead here.  Do you

3      have any problem with that?

4              MR. SHIMOTA:  I don't believe we do, your Honor.

5              THE COURT:  And do you?

6              MS. WENDLANDT:  Your Honor, we don't have a problem

7      with that.

8              THE COURT:  All right, so we'll adopt that.

9              Anything else on '326 and we'll follow your lead.

10             MR. SHIMOTA:  We additionally have the element

11     bracket which is also disputed.

                        Page 17

031505a

12          THE COURT:  Bracket?

13          MR. SHIMOTA:  Yes, bracket.  I believe it's in

14    claim 18.  Yes.  Claim 18 of the '328 patent.

15          THE COURT:  Just one second.  Yes.  Yes.

16          MR. SHIMOTA:  And there is on that patent a

17    disagreement between the parties.  Rayovac proposes a

18    specific construction for that term which is geared towards

19    the intrinsic evidence and the plain and ordinary meaning of

20    the term.  Braun, on the other hand, proposes no

21    construction for the term.

22          THE COURT:  Yes.  Well, to -- how about this.

23    Because bracket -- you sort of have to explain what these

24    things are in a Markman hearing.  How about bracket, I just

25    repeat it and say a bracket or projecting support.  That's

21

1     what a bracket is.  How's that?

2          MR. SHIMOTA:  Well, I believe that definition is

3     based upon the McGraw-Hill Dictionary which is provided by

4     Braun.  And that's taken in the civil engineering context

5     and we don't think that that is appropriate.  If you look at

6     other civil engineering definitions, for example, the term

7     cradle, or in the context of the '556 patent, chamber, they

8     don't make sense.  So --

9          THE COURT:  But I'm not likely to go for a

10    definition which requires vertical surface and projecting

11    horizontally to support a weight as a shape, an L-shaped

12    structure.  There's lots of different brackets, it seems to

13    me.

14          The clerk points out that the 1996 Dictionary of

15    Mechanical Engineering includes this support language.

Page 18

031505a

16          There's all -- that's -- let me hear you further.
17    Why -- what's the matter with the projecting support?
18    That's simple and straightforward.  It will include the
19    L-shaped bracket that will support a shelf, but it would
20    also include a clip-type bracket to force something into,
21    that type of thing.
22          MR. SHIMOTA:  Well, I guess I would ask what weight
23    is being supported and what orientation.  Because any
24    projecting support, in some sense I could argue that a chair
25    is a projecting support when I sit down on it.  And I don't

                                                        22

1     think that would be what is meant.  So I guess in terms
2     of --
3           THE COURT:  That's a good point.  I mean, I don't
4     encompass chair in the universe of things that I think of as
5     brackets.
6           MR. SHIMOTA:  And I think that's the problem with
7     that definition, and perhaps a mechanical engineer when they
8     see projecting support they might say I know what that
9     means.  But I think as you rightly pointed out in addition
10    to explaining what this means to one of ordinary skill in
11    the art, we also need to translate this to a jury and
12    perhaps we may not agree --
13          THE COURT:  But your proposal is too limited --
14    limiting, I think.  Brackets do, do project these, these
15    little, I don't know as these shelves have them, but you
16    know the adjustable bookshelf cylinders.
17          MR. SHIMOTA:  Yes, certainly, I've installed those
18    at college.  I know what those look like.
19          THE COURT:  Right.  But wouldn't you call those

031505a

20    brackets?

21        MR. SHIMOTA:  They are.  And I think the problem

22    then with the projecting support notion is, again, is what

23    is, you know, what is being supported in this particular

24    device and where is it being supported from.  How is this

25    bracket operating to support.

23

1        THE COURT:  All right, that's well put.  So let's

2    look at the language here in claim 18.

3        Well, what you say resonates in some respects in

4    this sense.  It perhaps warns me off the use of the term

5    framework which I got away from in claim 1.  Because with a

6    shaving bracket, some sort of plastic thing that will hold

7    it in some sort of condition.  In some sort of condition's

8    the wrong word.  The bracket holds the shaver, secures the

9    shaver, in the language of the patent the shaving apparatus.

10        MR. SHIMOTA:  Well, I think in that regard, too,

11    and I think that you're right to point out, I mean, there

12    needs to be some structural differentiation between the

13    cradle structure of the '328 patent and the bracket.

14        THE COURT:  I see it as different.  I mean, for one

15    thing here's this dependent claim.  So, it's an added, in 18

16    there's an added limitation.  We've got the structure that

17    we've talked about up here and then down at the bottom this

18    one requires a bracket.  And the question is just what word

19    will we use for bracket.

20        I have to tell you I like projecting support.

21    That's what holds --

22        MR. SHIMOTA:  Well, if I may interject, your Honor.

23    Respectfully, claim 18 is not a dependent claim, it actually

Page 20

031505a

24    is a separate independent claim.

25         THE COURT:  You're, you're absolutely right.  But

1    it repeats the language.

2         MR. SHIMOTA:  Certainly.

3         THE COURT:  And I will construe cradle structure in

4    18 the same way as I'm going to construe it in 11.  But

5    what's different is the bracket.  The bracket has to be an

6    additional limitation.  I'm right on that?

7         MR. SHIMOTA:  Oh, that's exactly right.

8         THE COURT:  Sure.

9         MR. SHIMOTA:  And within this device there must be

10    additional structure in addition to --

11         THE COURT:  Yes.  So the question is how shall we

12    describe it.  And their answer a bracket is a bracket I

13    don't think is good enough.  Your answer that a bracket is

14    an L-shaped thing like something that holds up a shelf is

15    too limiting.  My middle ground, if it is a middle ground,

16    is it's a projecting support.  We don't think of brackets as

17    the thing that you lock into.  That's not a bracket.  A

18    brackets projects.  Something rests on it or it grips.  It

19    snaps in.  That's a bracket.  I just like projecting

20    support.

21         MR. SHIMOTA:  I mean, there was some discussion of

22    what is fluid as bearing the load and if I could elaborate.

23         The construction which you have proposed with a

24    structure which supports the shaving head, so there's

25    already one structure supporting it.  And then if you have

031505a

1    the bracket as an additional projecting support it's really

2    difficult in some sense there to tell what is the, what is

3    the cradle structure and what is the bracket, or more

4    particularly what is providing the support.

5            THE COURT:  I don't think so.  I suppose it's just

6    an additional support.  I clip my cell phone when I charge

7    it into something.  It rests.  I don't think it's got, in my

8    simplistic mind it doesn't have a bracket on it, I clip it.

9            Now, I've got one of these, I think it uses Rayovac

10   batteries, one of these flashlights down in my basement.

11   And it clips into a thing that separates the two batteries

12   which is rather elegant and I can pull it off the shelf.

13   Not shelf.  I can pull it off the bracket and the batteries

14   snap together and the light will go on.  But it keeps the

15   batteries from running down.  Well, that's just a two-prong

16   thing and there's a hole in the side of the flashlight, the

17   prongs go in and separate the batteries.  I call that a

18   bracket.  I don't call what I rest my cell phone on a

19   bracket.

20           MR. SHIMOTA:  I guess then the problem with that is

21   that there is, to my mind, too much ambiguity there.  And, I

22   mean, you could say that where your cell phone rests there

23   is no bracket therein.  I could also envision a circumstance

24   where any number of experts would come and say the device in

25   which your cell phone is charged there is some type of

26

1    support there which would constitute a bracket.

2            THE COURT:  Well, there is a support.  But that's

3    why I like the word projected.

4            Then I've got a, then I've got a phone in another

Page 22

031505a

5    room where -- well, I guess nothing supports that, it just

6    sort of stands there upright.  But if you needed some

7    support, if it had an arm around, it came up and grabbed it,

8    I would call that a bracket.

9            I like, I guess I'm wedded to projecting support.

10   I'm not hearing anything that, that gives me any definition

11   of bracket that's any better.  Yours is an adequate

12   definition, it's just too narrow.

13           MR. SHIMOTA:  One thing I might propose, your

14   Honor, with respect to the Rayovac battery definition.  If,

15   for example, the flashlight was connected to a wall, the

16   bracket --

17           THE COURT:  It is.

18           MR. SHIMOTA:  -- was fixed into a wall.

19           THE COURT:  It is.

20           MR. SHIMOTA:  I mean, if that's --

21           THE COURT:  That's the whole idea.

22           MR. SHIMOTA:  If that's, if that's what you are

23   thinking of as a bracket as what projects from a wall or

24   something like a wall, we would be in agreement with that.

25   But I guess the question then I'm asking is, projecting from

27

1    where.  If it is projecting from either in the patent as

2    they talk about a wall mount, either indirectly or directly,

3    something in a wall, we would, we would agree with that

4    construction.

5            THE COURT:  Well, I don't know that it has to be

6    projecting from the wall.  It could be -- your point is if

7    you had something that the weight bearing of the shaver, the

8    head of the shaver was on, I know you don't like the word

Page 23

031505a

```
 9    cradle, but was on a structure, and just to keep the thing
10    from wobbling about for whatever reason, it's got an arm
11    that comes up and supports it, but the weight's on the
12    structure, you wouldn't, you would read that arm, that arm
13    couldn't be a bracket.
14            MR. SHIMOTA:  No, I would not view that arm as a
15    bracket.
16            THE COURT:  That's all the cradle structure.
17            MR. SHIMOTA:  No.  Well, it really depends.  I
18    mean, if you look, I guess -- I would, I would say it
19    depends on what that L-shaped arm is doing.
20            THE COURT:  Well, it's supporting it from falling
21    over if you bump against it or something.
22            MR. SHIMOTA:  Well, say, for example, I mean, if
23    that L-shaped arm was being used for some other purpose, not
24    for support but for some, maybe charging, at the rear end,
25    and instead of, and the structure, there were latches or
```

                                                              28

```
 1    some kind of, holding the shaving head in the device, so, in
 2    some sense that top portion wasn't providing support, then I
 3    wouldn't say that that is a bracket.
 4            THE COURT:  Yes, if you have to latch it, I agree
 5    if you have to latch it in that's not a support.  And that's
 6    why I like projecting support.
 7            However, your point about -- you were so strong
 8    against framework.  If I left framework in in my claim 11,
 9    what I'm envisioning as holding the shaver from falling over
10    would all be part of the framework, what did I say,
11    framework or structure.
12            Well, for now, until I look at it further, a
```
                            Page 24

031505a

13    bracket is going to be a bracket or projecting support

14    because I can understand that at least.

15         All right.  Anything else on '326?

16         MR. SHIMOTA:  I don't believe so, your Honor, from

17    Rayovac.

18         THE COURT:  Let me just see.

19         The clerk reminds me and I was prepared,

20    permanently open towards the atmosphere, an issue in claim

21    14.  Is this a, is this, is it disputed?  You don't seem to

22    have much of a dispute here.

23         MR. SHIMOTA:  No, I think this is one where the

24    briefing revealed that there really wasn't much of a

25    dispute.  I don't think we disagree on what the atmosphere

29

1    means.  And once we know what open --

2         THE COURT:  Atmosphere is open air.

3         MR. SHIMOTA:  That's what I had always thought, as

4    long as it's open to the air.

5         MS. WENDLANDT:  We agree with that.

6         THE COURT:  All right.  So that resolves the

7    matters on '326.  And we'll stick with Rayovac to take us

8    through '556.

9         MR. PALS:  Your Honor, I'll be handling these on

10    the '556 patent.

11         THE COURT:  Yes.

12         MR. PALS:  We actually have a binder with some

13    slides in it, if I could hand that up to help with what I

14    think should be the next point which is cleaning fluid

15    container.

16         THE COURT:  The next point is what?

031505a

17          MR. PALS:  I believe the place to go is cleaning

18    fluid container, your Honor, in claim 1 of the '556 patent

19    which is at column 11 beginning at line, it looks like line

20    20.

21          THE COURT:  Just a minute.  All right.  Just --

22    you're in column 11?

23          MR. PALS:  Yes, sir, line 20.

24          THE COURT:  Thank you.  Just a moment.

25          MR. PALS:  Where the cleaning fluid container

0

30

1    phrase first appears in the '556 patent.

2          THE COURT:  Yes.  A cleaning fluid container

3    separate from the cradle construction for holding cleaning

4    fluid.

5          MR. PALS:  And, your Honor, we've handed up a

6    binder entitled Rayovac Corporation's Markman Hearing

7    Exhibits binder.  There are a number of documents in there,

8    there's a table of contents at the beginning.

9          THE COURT:  Yes.  Well, how about this.

10          MR. PALS:  If we could just look at a couple of

11    slides because it shows the particular parts of the

12    disclosure that are relevant to this limitation.

13          THE COURT:  But let's work from, let's work from

14    something though.  They propose a container for holding

15    cleaning fluid separate from the cradle structure.  And, I

16    mean, that's the language of the patent.

17          So, trying to come up with something a little more

18    understandable, I propose a separate cleaning fluid

19    container, that is, a cartridge that holds cleaning fluid,

20    such container or cartridge being separate and separable

Page 26

031505a

21      from the cradle structure.

22              You're okay with that?

23              MR. PALS:  Yes, sir.

24              THE COURT:  All right.  Now, how about, how about

25      Braun on that?


                                                        31

1               MS. WENDLANDT:  Your Honor, we think that limiting

2       the cleaning fluid container to a cartridge -- I'm sorry,

3       your Honor, can I ask you to repeat your -- thank you.

4               THE COURT:  Of course.

5               I propose this, for the term cleaning fluid

6       container separate from the cradle structure or holding

7       cleaning fluid, this:  A separate cleaning fluid container,

8       that is, a cartridge that holds cleaning fluid such

9       container or cartridge being separate and separable from the

10      cradle structure.

11              I'm using the term container and cartridge pretty

12      much indistinguishable.

13              So now what's the matter with that?

14              MS. WENDLANDT:  Well, your Honor, a cartridge

15      denotes something that is --

16              THE COURT:  Closed.

17              MS. WENDLANDT:  Well, that is closed.  And I guess

18      in the sense, in that sense it would be not such a bad

19      construction for us.  But in terms of -- I mean, there's

20      nothing in the claim language that requires a cartridge,

21      it's just a cleaning fluid container that's not the cradle.

22              THE COURT:  Well, I hear you.  But trying to make

23      sense of this --

24              MS. WENDLANDT:  Right.
                        Page 27

031505a

25          THE COURT:  -- and not trying to limit you, you

32

1    know, by the specifications, but reading the specifications,
2    I mean, you use the word cartridge there in the
3    specifications.
4          If what you're troubled by is -- when I look --
5    again, I may be going far afield, but in a simplistic way
6    when I open the hood to my car now there's various, the
7    various fluid levels are in various containers.  In my car
8    they're, and this is an advance, they're not, they're
9    transparent, or roughly transparent in a plastic, so you can
10   see that your, especially your windshield cleaner is down.
11   And so you fill it.
12         Now, I don't commonly think of that as a cartridge.
13   I think of it as a container.  But I don't think of, for
14   example, a trough as a container.  I mean, a trough is a
15   container, but you don't carry things around in a trough.  A
16   trough just holds the fluid for its use.  The horse trough
17   in the western movies, the horses come up and they drink at
18   the trough.  A container, by contradistinction, is -- a five
19   gallon can is a container.
20         Now, cartridge to me imports something smaller but
21   also closed.  And if I'm going to use it roughly, if I use
22   cartridge as small container you're all right with that?
23         MS. WENDLANDT:  Yes, I would have no problem with
24   that.  The issue I guess I would have with cartridge is that
25   generally cartridges I think are thought of by the public

33

031505a

1   and certainly by the ordinary artisan in mechanical

2   engineering as something that is replaceable. You throw it

3   away after one use. which is why Rayovac --

4           THE COURT: I see. Like your, like your ink

5   cartridge or the cartridge in a loaded round of ammunition,

6   the cartridge is expelled and then --

7           MS. WENDLANDT: That's right. And so to the extent

8   there was a connotation that the container had to be one

9   that was replaceable by use of a cartridge, we would be, we

10  would say that there's actually no support for that in the

11  claim itself.

12          THE COURT: For the use of the word cartridge. No,

13  I think there's something to that. But I want to hear him.

14          But let's try and modify it and see -- it means --

15  let me try this now. A separate, a separate cleaning fluid

16  container, that is, a container that holds cleaning fluid

17  which container is separate and separable from the cradle

18  structure.

19          Now, you're okay with that?

20          MS. WENDLANDT: Yes, your Honor.

21          THE COURT: How about Rayovac, are you okay with

22  that?

23          MR. PALS: No, we're not, your Honor.

24          THE COURT: Okay. Where am I going awry here?

25          MR. PALS: The '556 patent is extremely specific

34

1   about what a cleaning fluid container is. And what it says

2   it is is a removable and replaceable cartridge. It is

3   crystal clear. If you look at Figure 1 of the '556 patent

4   you will see as number 65, it's down in the lower right hand