031505a

5    corner of Figure 1 of the '556 patent in number 65 --

6         THE COURT:  Yes.

7         MR. PALS:  -- that is something that is clearly

8    containing cleaning fluid.  It is very carefully specified

9    as a reservoir, a collecting reservoir.  It is not a

10   cleaning fluid container.  There's a difference, there are a

11   number of differences between the '556 patent and the '328

12   patent.  This is one of them.  In the '328 patent that is

13   called a cleaning fluid container.  In the '556 patent it's

14   very, it's numbered differently and it's called a collecting

15   reservoir, not a cleaning fluid container.

16        THE COURT:  Well, that's what it's called in the,

17   in the figure.  And also in the, if we look at column 1,

18   lines 58 and 62, I do see that it talks about it is a ready

19   replacement there.

20        MR. PALS:  Yes.

21        THE COURT:  But don't you -- their argument would

22   be, of course, that I'm reading a limitation in.  How do you

23   answer that?

24        MR. PALS:  I would answer that, your Honor, by

25   saying you're not reading a limitation in, you are

                                                    35

1    interpreting the term according to the way they use them in

2    their patent.  They specifically define, not an embodiment

3    or a preferred embodiment, but the invention as the cleaning

4    fluid container with an integral filter that is separable

5    from the device.  The abstract in the patent says the

6    invention is directed to a cleaning device wherein the

7    cleaning fluid container 61 -- 61 you'll see in Figure 6 as

8    the cartridge -- is separable from cleaning device 5.  The

031505a

9    whole shebang, the whole device, includes a filter means 24

10    integrally formed therewith.

11        THE COURT:  All right.

12        MR. PALS:  The abstract to the '328 patent

13    interestingly refers to the cleaning device in different

14    terms and a cleaning fluid container which it identifies as

15    being either 6 or 61.  In the '328 patent 6 is what became

16    65 in Figure 1.  So, in the '328 patent they're saying the

17    cleaning fluid container can be either this cartridge or the

18    body of the device.  In the '556 patent they're very clear

19    that cleaning fluid container means the cartridge, not the

20    body of the device.

21        THE COURT:  I follow that.  What do you say to

22    that?

23        MS. WENDLANDT:  Your Honor, I think looking at

24    Figure 1, it is true that cleaning fluid container in the

25    '328 patent is different than cleaning fluid container in

36

1    the '556 patent.  But I think looking at Figure 1 is

2    actually misleading.  What one should look at is Figure 2 of

3    both patents, which I have projected on the screen.

4        What I've highlighted in yellow at the bottom is

5    the cleaning fluid container of the '328 patent.  The 5 5 --

6    which you'll notice is not separable as a unit with the

7    filter.

8        THE COURT:  All right.

9        MS. WENDLANDT:  And therefore does not fall under

10    the limitations of the '556 patent.  The filter being number

11    24.

12        When we go to the '556 patent the cleaning fluid

Page 31

031505a

13    container along with the filter is now separable from the,

14    from the cradle.  So --

15            THE COURT:  You said is now separable --

16            MS. WENDLANDT:  That's right.

17            THE COURT:  -- from the cradle.

18            MS. WENDLANDT:  Because what, what happened in the

19    '556 patent is that the cleaning fluid container and the

20    filter were assembled as a unit in that space that I've

21    highlighted over on the right side.

22            THE COURT:  That's helpful.  But I don't know as

23    we're that far part.  Let me try this.  This is the Court's

24    proposed construction.

25            A separate cleaning fluid container, that is, a

                                                          37

1    removable and replaceable cartridge which holds cleaning

2    fluid.

3            Isn't that fair?

4            MS. WENDLANDT:  Your Honor, I would disagree with

5    the word replaceable.  Again, I think that connotates --

6            THE COURT:  You use it in, not in the claims, but

7    you use it as you explain that as you, as it's explained in

8    the patent and indeed as you explain it to me.  That's

9    what's significant about it.

10            MS. WENDLANDT:  Well, I don't think -- I mean, if I

11    used the word replaceable it really was an accident.  It is

12    just separate from the cradle structure.  Separable from the

13    cradle structure.  That doesn't mean that you throw it away

14    at the end, you know, that you throw it away when you, when

15    you have used up all the cleaning fluid or when the filter's

16    clogged you --

                          Page 32

031505a
17          THE COURT:  What do you do with it?
18          MS. WENDLANDT:  Well, you can fill it up with more
19     cleaning fluid or replace the filter.
20          THE COURT:  Do you?
21          MS. WENDLANDT:  What do you mean?
22          THE COURT:  And I suppose, I suppose I'm sliding
23     over into what's the preferred embodiment.
24          MS. WENDLANDT:  That's right.
25          THE COURT:  Which I must be cautious not to do.

                                                              38

1          MS. WENDLANDT:  I mean, there's no question that in
2     the '556 patent the preferred embodiment is a cartridge with
3     a filter that's integrally formed.  I don't think that
4     there's any quarrel between the parties as to that.  The
5     question is if the claims --
6          THE COURT:  So what you're straining on is the word
7     replaceable.  Let's try again.  If I defined it like this.
8     A separate cleaning fluid container that is a removable
9     cartridge which holds cleaning fluid, and struck out the
10    concept of whether it's, it's replaceable.  Save that that
11    might inhere in the word cartridge itself.
12          MS. WENDLANDT:  That's right.
13          THE COURT:  Which I think, I think Rayovac
14    persuaded me of.  But if I knock out the word replaceable
15    are you all right?
16          MS. WENDLANDT:  We would still quarrel with the
17    word cartridge because it does connote being replaceable.
18          THE COURT:  I think, again, I think I'm going to
19    knock out replaceable but stick with cartridge.  How do you
20    feel about that?

                        Page 33

031505a
21          MR. PALS:  Your Honor, as long as it's clear that

22     that's not picking up the collecting reservoir in the Figure

23     1 drawing, I'm okay with that, and that it's only picking up

24     the cleaning fluid container 61 as shown in Figure 2 which

25     is a removable and as written in the patent replaceable

39

1      cartridge.

2           THE COURT:  That is my intention the way I read the

3      patent.  At this, you people of course are far more into

4      this than I, and so I'm saying it on the record the way I

5      read the patent.  But I think it would be confusing further

6      to define it and for the moment I'm not going to.

7           All right.  Let's go ahead, what else on '556?

8           MR. PALS:  Your Honor, the next limitation which

9      has been at least partially addressed in the previous

10     discussion is in claim 1 of the '556 patent which is at

11     column 11 beginning at line, it looks like 23.  Fluid feed

12     mechanism which feeds the cleaning fluid after it passes

13     through the filter to the cradle structure during cleaning.

14          I'll stop there because I think the rest of it is a

15     different, a different discussion.

16          THE COURT:  Yes, I had thought we had been over it

17     but let me see if I've got it.

18          A mechanism that feeds cleaning fluid from the

19     cleaning fluid container to the cradle structure.

20          Now, I hear the argument as, you would like to say

21     it's got to be directly to the cradle structure, but I'm

22     pretty set on the definition as far as I've gone here.  It

23     seems to capture the idea of this patent.

24          MR. PALS:  There's a slight difference here, your

Page 34

031505a

25    Honor.

 

                                                                40

1          THE COURT:  I'll hear you.

2          MR. PALS:  And I understand the comments from the

3    '328 patent discussion, you didn't, you didn't interpret it

4    with the word directly, you didn't interpret it with the

5    word effectively.  The difference here is that it also

6    requires feeding fluid after it passes through the filter.

7    I think we're actually in agreement that it has to go from

8    the pump to the filter and then to the cradle.

9          THE COURT:  Let's stop.  We are in agreement on

10    that?

11          MS. WENDLANDT:  We are in agreement.

12          THE COURT:  Thank you.  That's helpful.  All right.

13          MR. PALS:  Okay.  Then we can turn, your Honor, to

14    the last clause I skipped over at the very end of that

15    provision in claim 1, said container and filter being

16    separable from the cradle structure as a unit.  And the

17    discussion here really focuses on the word unit.

18          THE COURT:  Yes.

19          MR. PALS:  Rayovac's position is that unit means

20    integrally formed module.  Braun says unit means unit but

21    wants to argue that unit encompasses separate components

22    that are removable individually rather than as a module.

23          THE COURT:  Let me try and then you can pick mine

24    apart.

25          The way I read this is, as follows.  The container

 

                                                               41

1    and filter are integrally formed or assembled as a unit, and
Page 35

031505a

2    the unit -- or let me try again because I didn't have an and

3    here.  The container and filter are integrally formed or

4    assembled as a unit, comma, such unit being removable from

5    the cleaning device.

6                How do you feel?

7                MR. PALS:  We're okay with that.

8                THE COURT:  Braun?

9                MS. WENDLANDT:  Your Honor, we're fine with that as

10   well.

11               THE COURT:  All right.  Fine.  Good.

12               Is that it?  You people have done excellent.  My

13   giving short shrift to the means-plus-function does not mean

14   I have not thought carefully about it, and of course

15   Rayovac's rights are saved in every regard.

16               Go ahead, counsel.

17               MR. PALS:  Your Honor, the next term of discussion

18   would be the word chambers as it appears in claim 2 of the

19   '556 patent.

20               THE COURT:  Yes.

21               MR. PALS:  Column 11.

22               THE COURT:  Yes, I think I'm with you.

23               MR. PALS:  Okay.

24               THE COURT:  Here's what I propose.  The cleaning

25   fluid container consists of two enclosed chambers.  One

                                                            42

1    chamber holds cleaning fluid, the other chamber is a filter.

2                How do you feel about that?

3                MR. PALS:  We agree with that, your Honor.

4                THE COURT:  And Braun?

5                MS. WENDLANDT:  Could you give me a second, your
                                    Page 36

031505a

6      Honor.

7            THE COURT:  Oh, of course.

8            I really have varied yours only by adding the word

9      enclosed.  The cleaning fluid container consists of two

10     enclosed chambers.  One holds cleaning fluid, one chamber

11     holds cleaning fluid, the other chamber is a filter.

12           MS. WENDLANDT:  There, your Honor, the only, the

13     only issue I have is with the word enclosed.  Because --

14           THE COURT:  Because the rest of it is yours.

15     What's the matter with that?

16           MS. WENDLANDT:  I just -- there's no support in the

17     claim language for something that's enclosed.  Because I

18     guess by enclosed if you mean closed.

19           THE COURT:  I mean enclosed.  Because this is

20     cleaning fluid.  And this is a small, personal device.

21     These things tip over, carried, moved and the like.  It

22     means the stuff isn't going to come out of it.  That's what

23     enclosed means.

24           MS. WENDLANDT:  Yes, your Honor, there is no

25     support in the claims for the enclosed addition.

                                                         43

1            THE COURT:  It won't work unless it's enclosed.

2            MS. WENDLANDT:  Well, I don't know if that --

3            THE COURT:  To have that fluid there and get out

4      all over you.

5            MS. WENDLANDT:  I don't think that that is

6      necessarily true.  It's probably true that an enclosed

7      chamber would work better because you wouldn't get fluid all

8      over you, but it's not necessarily true.  In fact, although

9      I know that your Honor is not inclined to look at any

                              Page 37

031505a

10    devices in construing things, the Rayovac device actually

11    works without a completely enclosed container.

12            THE COURT:  Beats me how.  And I don't care now.

13            MS. WENDLANDT:  Right.

14            THE COURT:  But, again, I know I'm not to limit you

15    to the specifications.  But as the clerk so aptly points

16    out, you've got lots of reference to closed chambers here.

17    The chambers are closed.  That's what you describe.

18            MS. WENDLANDT:  That's right, your Honor, and we

19    would say that that's the preferred embodiment, but other

20    embodiments are possible and the claims are broader than the

21    preferred embodiment.

22            THE COURT:  We're going to stick with enclosed, for

23    now.  At least tentatively that's what I think.

24            All right.  Let's go on.

25            MR. PALS:  Your Honor, I apologize.  The other, the

                                                            44

1    other phrase was open --

2            THE COURT:  No apology is necessary.  Everyone's

3    doing very well.

4            MR. PALS:  Open towards the atmosphere was the

5    other provision which I'm not seeing right now.

6            MS. WENDLANDT:  It's in claim 18.

7            MR. PALS:  Claim 18.  Thank you very much.

8            So it's claim 18, the '556 patent, which is column

9    12, line --

10            THE COURT:  We were okay with that the last time

11    round.  The cradle structure is open towards the atmosphere.

12            MR. PALS:  Yes.  We're actually fine with the

13    words, your Honor.

031505a

14          THE COURT:  Fine.  Thank you.  How about dependent
15    claim 6?  The clerk has called that out.  Is there a dispute
16    there?
17          (Whereupon the Law Clerk and the Court conferred.)
18          THE COURT:  Oh, she points out to me there's no
19    real dispute there.  All right.  And I appreciate it.
20          Anything else?
21          MR. PALS:  I think those are the issues in the '556
22    patent, your Honor.
23          THE COURT:  Thank you.  All right.  What -- well, I
24    tried to structure this so that now that we've done this --
25    and believe me, I'm so grateful for your focused advocacy

                                                           45

1    here.  On our side a fair amount of work has gone into this,
2    but it, it has been ably assisted by your fine advocacy and
3    the focus of this afternoon's hearing is very much
4    appreciated by the Court.  And so now I'm just trying to get
5    a handle on where we are.
6          When -- the way we did this, and I think you're
7    wise, now we can get our expert reports out and everyone can
8    see about that.  And then come the motions for summary
9    judgment, if motions for summary judgment there will be.
10          When's the last date for the filing of those
11    motions; do you recall?
12          MS. WOLF:  Late August.
13          MR. SHIMOTA:  Yes, late August.
14          MS. WOLF:  Late August, your Honor.
15          THE COURT:  And that actually makes sense given my
16    personal schedule because I'll be getting back from vacation
17    and get to it.
                        Page 39

031505a

18          If this case were to resolve a simple phone call to
19    Ms. Smith is all that's required.  Just don't make that call
20    unless it's really resolved.
21          I say again, but now I'm going over things I've
22    already said, these are tentative but reflect a significant
23    amount of work.  And I do not intend them to be issue
24    preclusive.  But if we make motions for summary judgment and
25    I rule on them, though the matter is not settled at the

                                                        46

1    Federal Circuit level that's when the written opinion comes.
2    And the written opinion will explain why or why not I grant
3    summary judgment.  And as Professor Miller so aptly
4    characterizes it in his NYU Law Review, I am not for the
5    pretrial rush to judgment.  It's one thing to declare the
6    law, because that's what I think I'm doing subject to de
7    novo review by the Federal Circuit.  No problem with that.
8    This is tentative legal construction of what the Patent
9    Office gave Braun.  Summary judgment, I will bend over
10    backwards to avoid summary judgment so the facts will be
11    determined by the jury.  Beyond that, I don't know how else
12    I can assist you.  But I do thank you.
13          We'll stand in recess.
14          THE CLERK:  All rise.
15          MS. WENDLANDT:  Thank you, your Honor.
16          (whereupon the matter concluded.)
17
18
19
20
21

031505a

22
23
24
25

[]

47

1                 C E R T I F I C A T E

2

3

4          I, Donald E. Womack, Official Court Reporter for

5     the United States District Court for the District of

6     Massachusetts, do hereby certify that the foregoing pages

7     are a true and accurate transcription of my shorthand notes

8     taken in the aforementioned matter to the best of my skill

9     and ability.

10

11

12

13

14
                 _____
15                    DONALD E. WOMACK
                    Official Court Reporter
16                      P.O. Box 51062
                 Boston, Massachusetts 02205-1062
17                    womack@megatran.com

18

19

20

21

22

23

24

25
                          Page 41

031505a

## EXHIBITS W-X
## FILED UNDER SEAL