**EXHIBIT 6**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRAUN GmbH,<br><br>        Plaintiff,<br><br>        v.<br><br>REMINGTON PRODUCTS COMPANY, LLC,<br><br>        Defendant. | Civil Action No. 03-CV-12428 (WGY) |

### DECLARATION OF DIETRICH PAHL

I, DIETRICH PAHL, declare under penalty of perjury of the laws of the United States of America as follows:

1. I submit this Declaration in support of Braun GmbH's Motion to Correct Inventorship.

2. I am currently retired and reside in Hofheim, Germany. Until my retirement in October 1998, I was an employee of Braun GmbH and its predecessor Braun Aktiengesellschaft. For purposes of this declaration, I will simply refer to these entities as "Braun."

3. I began working at Braun in October 1973 after graduating from the Technical University of Aachen with Diplom Ingenieur and Doktor Ingenieur degrees in mechanical engineering. I worked for Braun for twenty-five years, and at the time of my retirement, I was a head of Braun's shaver research group – a position I assumed in January 1995, after serving as Director of Research and Development for shavers in Braun's Product Development Group from 1981 through 1994. I transferred to the research group in 1995, when I developed a medical condition that required me to reduce my workload.

9485748

4. Among my duties as Director of Research and Development for shavers, I supervised and collaborated with Mr. Gebhard Braun in the development of a device for cleaning dry shavers.

5. I began working on the device by mid-1992 at a Braun Research and Development facility in Lyon, France. From 1990 to mid-1993, I was -- parallel to my function as Director Research and Development of shavers in Kronberg – Head of the Research and Development facility in Lyon. Starting in 1992 and through the beginning of 1993, I developed a basic idea and design concept for a device for cleaning dry shavers. I shall refer to one example of this concept as the "cleaning center."

6. I commissioned technical drawings, one of which I attach to this declaration as Exhibit A, and functional models and a prototype of the cleaning center.

7. This cleaning center had many components, including a trough or cradle in which the shaving head of a dry shaver could be placed. See Ex. A (showing the cradle as P204). The cradle was concave or dished inwardly to conform approximately to the outer contour of the shaving head of the dry shaver.

8. The cleaning center also had a container for cleaning fluid, which was positioned below the cradle. See Ex. A (showing the container as P203).

9. During the cleaning operation, an electrical circuit (shown in the A.A view of the drawing) activated a pump to feed the cleaning fluid from the cleaning fluid container to the cradle. See Ex. A (showing the pump as P241 and P242). During cleaning, the cradle remained above the fluid level of the cleaning fluid in the container.

10. The electrical circuit also activated the dry shaver. The oscillatory motion of the shaving head of the dry shaver aided the cleaning function.

11. The cradle had an outlet port (not labeled in the drawing) connecting it to the cleaning fluid container. See Ex. A (showing the outlet port in the B.B cross-sectional view). The outlet port allowed hair, debris and used cleaning fluid to drain from the cradle and into the cleaning fluid container. The outlet port was dimensioned such that, during the cleaning operation, the amount of cleaning fluid drained through the outlet port was smaller than the amount of cleaning fluid supplied to the cradle by the pump.

12. The cradle also had an overflow device (not labeled in the drawing), which allowed excess cleaning fluid from the cradle to be drained directly into the cleaning fluid container. See Ex. A (showing the overflow device in the E.E view).

13. The cleaning center also had a filter, through which the cleaning fluid passed to eliminate debris. See Ex. A (showing the filter as P256). The filter was located between the pump and the cradle to ensure that the cleaning fluid fed to the cradle during the cleaning operation was clean.

14. Once the cleaning operation was finished, the pump was deactivated and the cleaning fluid was drained from the cradle. Thereafter, the shaver head could remain in the cradle to dry and for storage.

15. The functional model of the cleaning center also included a dryer, consisting of an impeller and a heater, to aid in the drying function.

16. The parts of the cleaning device are also illustrated in a November 1992 presentation, titled "R&D Shavers – Future," which I made internally at Braun. I attached this presentation to this declaration as Exhibit B, as well as a certified translation as Exhibit C. The presentation also shows that the cleaning center can be used with a wall mount and a dryer.

17. As Exhibits A and B show, the cradle was open to the atmosphere, such that the dry shaver could be inserted from the top into the cleaning device, without the need to disassemble the dry shaver or remove components or covers from the cleaning center.

18. The November 1992 presentation described the various cleaning steps of the device, including turning the dry shaver (labeled "R" on Exhibit B) on for a predetermined period – during which time, cleaning liquid was pumped by a pump (labeled "P") driven by motor (labeled "M") to a cradle (labeled "T") and filtered by filter (labeled "F") – and then drying the shaver in the device.

19. The Lyon facility closed in June 1993.

20. In 1992, as part of my duties as Director of Research and Development for shavers, I began to supervise Mr. Braun and asked him to develop further the cleaning center that I had begun developing in France. I described the idea and design concept of a device to clean dry shavers to Mr. Braun and shared with him the technical drawings and functional models and prototype that I had developed in France. Thereafter, I supervised and collaborated with Mr. Braun in his development of this device.

21. In 1993, Mr. Braun wrote an internal invention disclosure for Braun's Patent Department. The internal invention disclosure described the cleaning device I had developed in France as well as improvements to that system developed by Mr. Braun.

22. As Mr. Braun's supervisor, I reviewed the invention disclosure statement and approved the naming of Mr. Braun as the sole inventor on the internal invention disclosure. Although I had developed parts of the cleaning device disclosed in the internal invention disclosure, I had no desire to be named as an inventor on any patents based on the cleaning device.

23. As Director of Research and Development, my policy was generally to allow my supervisees to take full credit for the devices or inventions that they developed during their work, including taking full credit on any internal invention disclosures describing their work. I believed this policy fostered a sense of ownership in my supervisees that motivated them to devote the time and resources needed to develop their projects. The policy also ensured that my position as the "boss" did not influence the decision whether to develop a particular invention into a commercial product.

24. I neither informed Mr. Braun nor Braun's Patent Department that I was inventor of portions of the invention disclosed in the internal invention disclosure submitted by Mr. Braun that described the device for cleaning dry shavers.

25. I understand that, based on Mr. Braun's internal invention disclosure, Braun filed German patent applications on the cleaning device. I understand that, under German patent law, a German patent is valid even if it fails to name all inventors.

26. I also understand that, based on Mr. Braun's internal invention disclosure and the corresponding German patent applications, Braun filed corresponding patent applications on the cleaning device in the United States. I was not involved in the prosecution of these patent applications.

27. I have reviewed the claims in U.S. Patent Nos. 5,711,328 (the "'328 Patent") and 5,649,556 (the "'556 Patent," together with the '328 Patent, the "patents-in-suit"). Based on my development of the cleaning device in France as well as my collaboration with Mr. Braun thereafter, I believe that I am a co-inventor with Mr. Braun on the patents-in-suit.


-6-

28.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July [21], 2004
Hofheim, Germany

_____
Dr. Dietrich Pahl
Quellenweg 39, D-65719
Hofheim, Germany

A

Exhibit A to the Declaration of Dietrich Pahl has already been filed in connection with Braun's Motion to Correct Inventorship.

B



Case 1:03-cv-12428-WGY   Document 135   Filed 08/22/2005   Page 10 of 14

R & D - SHAVERS    "FUTURE"    M 192

(A) BEKANNTE NACHTEILE / LÖSUNGSANSÄTZE

3. REINIGUNG



FUNKTIONEN:
- HANDHALTER MIT LADE-STATION UND REINIGUNGS-EINRICHTUNG

FUNKTIONEN:
• RASIERER "EIN", NACH 1 MIN "AUS"
• PUMPEN U. FILTERN D. FLÜSSIGK.
• TROCKNEN

BRAUN

C

Case 1:03-cv-12428-WGY    Document 135    Filed 08/22/2005    Page 12 of 14

                                                                                 **BRAUN**

R & D Shavers           "Future"           11/92

A <u>Known Disadvantages</u>  /  <u>Methods</u> <u>of</u> <u>resolution</u>

      <u>3. Cleaning</u>            -- Wall mount with charging - station and <u>cleaning - device</u>

                                              <u>Functions</u>:
- Shaver "on", then "off" after 1 minute
- Pumping and filtering by means of liquid
- Drying

[see source for figure, numbers]

[handwritten in French]

*Direct drive motor*

*Filter?*
↓

*Clearance* [illegible]
↗
*To reduce the Volume of the liquid?*



TRANSPERFECT | TRANSLATIONS

## AFFIDAVIT OF ACCURACY

This is to certify the attached document, *R&D-Shavers "Future" 11/92 / 11/92 Presentation Razor-Future*, has been translated from German into English by staff members of TransPerfect Translations familiar with both the German and English languages and is to the best of our knowledge, ability and belief, a true and accurate translation.

*Susan Christian* (signature)

Susan Christian
TransPerfect Translations, Inc.
15 Broad St., Suite 305
Boston, MA 02109

Sworn to before me this
1st day of July 2004

_____
Signature, Notary Public

NICOLE P. VOLIN
Notary Public
Commonwealth of Massachusetts
Commission Expires Aug 14, 2009

_____
Stamp, Notary Public

ATLANTA
BOSTON
BRUSSELS
CHICAGO
DALLAS
FRANKFURT
HONG KONG
HOUSTON
LONDON
LOS ANGELES
MIAMI
MINNEAPOLIS
NEW YORK
PARIS
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
SEATTLE
WASHINGTON, DC

15 BROAD STREET, SUITE 305, BOSTON, MA 02109 | TEL 617 523-6936  FAX 617 523-0595  WWW.TRANSPERFECT.COM