IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRAUN GmbH,<br><br>                Plaintiff,<br><br>v.<br><br>RAYOVAC CORPORATION,<br><br>                Defendant. | Civil Action No. 03-12428-WGY |

**PLAINTIFF'S SUPPLEMENTAL ANSWERS TO DEFENDANT'S
INTERROGATORIES 17, 18, AND 19**

Pursuant to Federal Rule of Civil Procedure 33, plaintiff Braun GmbH ("Braun") answers and objects to defendant Rayovac Corporation's ("Rayovac") Second Set of Interrogatories (the "Interrogatories") as follows:

**GENERAL OBJECTIONS**

These general objections are hereby incorporated into each specific objection and response below and are not repeated therein.

1.   Braun objects to the Interrogatories and to each individual interrogatory, to the extent that they seek information protected from discovery by the attorney-client privilege, the attorney-work-product doctrine, or any other applicable privilege. Any reference to an attorney's name herein is not, and is not intended as, a waiver of any applicable attorney-client or work-product privilege.

2. Braun objects to the Interrogatories and to each individual interrogatory, to the extent that they seek information that is outside the scope of Braun's own first-hand knowledge or the identification of documents that are not within Braun's possession, custody or control.

3. Braun objects to the Interrogatories and to each individual interrogatory, to the extent that they seek to impose obligations or burdens upon Braun beyond those required and/or permitted by the applicable provisions of the Federal Rules of Civil Procedure.

4. Braun objects to the Interrogatories and to each individual interrogatory, to the extent that they are vague, ambiguous, overly broad, unduly burdensome, lack sufficient particularity and seek identification of information and/or documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

5. Braun objects to the Interrogatories and to each individual interrogatory, to the extent that they require the collection of information that is contained in public records or are otherwise generally available to the public, as this information is equally available to Rayovac.

6. Braun objects to the Interrogatories and to each individual interrogatory, to the extent that they fail to define a relevant time period.

7. The objections and responses herein are made without waiver of and with specific preservation of:

    a. All objections as to competency, relevancy, materiality, privilege and admissibility of the information or the subject matter thereof, as evidence for any purpose and any proceeding in this action (including trial) and in other actions;

    b.  The right to object on any grounds at any time to a demand for further responses to these or any other discovery requests or other discovery proceedings involved or related to the subject matter of the discovery to which information or documents are provided; and

    c.  The right at any time to review, correct, add to, supplement or clarify any of these responses.

## ANSWERS TO SPECIFIC INTERROGATORIES

### INTERROGATORY NO. 17:

Identify all projects (formal or informal) conducted by or on behalf of Braun relating to systems for cleaning shavers, each individual who worked on each such project identified (whether or not a Braun employee), and the documents produced by Braun corresponding with each such project identified. By way of example, this interrogatory includes, but is not limited to, "Cleaning with Water" at or near 1960 (B002043), "Cleaning with Water" at or near 1965 (B002043), "Cleaning with Water" at or near 1975 (B002044), "Market research cleaning habits" at or near 1982 (B002044), "Market research in Japan" at or near 1987 (B002044), Frensenius Hygiene studies (B002044), the "Thesis for Diploma" (B002044), the "shaking beaker for the shaving heads" (B001071ENG), and all studies associated with Braun's Syncro System Smart Logic products.

### ANSWER TO INTERROGATORY NO. 17:

Braun hereby incorporates its previous answer and objections to this interrogatory. To supplement its answer, Braun renews its objection to this interrogatory as vague, in so far as it fails to define "projects" and on the grounds that it is unduly burdensome and unlikely to lead to the discovery of admissible evidence, in so far as it calls for "all projects" and "each individual," without regard to the scope of the project or the amount of work performed on such project. Notwithstanding this objection and incorporating those above Braun states that the development of the Cleaning Center was a single project at Braun. Those involved in this project include Dietrich Pahl, Gebhard Braun, George Gabion, Aime Cleyet, Robert Roger, Juergen Hoeser,

Walter Schaefer, Ludwig Littman, Peter Schneider, Juergen Greubel, Roland Ullmann, Gilbert Greaves, Matt Parker, Thomas Bubenicek, Alf Jahn, Norbert Kreutz, Thomas Schamberg, Michael Steghaus, Raoul Bader, Marc Oertel, Martin Ring, Norbert Smetana, Andreas Larscheid, Hans-Dieter Klauer, Walter Haegele, Juergen Wolf, Christof Kleemann, Hartmut Landmann, Richard Ebner, Helmut Faulstich, Alex Stiegler, Michael Petretty, Jochen Cimbal, Lutz Zdarsky, Gerhard Finger, Petra Allef, Valentin Cepus, Sabine Langhoff, Karl-Heinz Schadt, Juergen Schoen, Dieter Seuwen, John Egan, Horst Schaefner, Svat Krumnikl, Juergen Pierau, Dan Augney, Carpendale, Erich Mueller, Jerry Tobin, Ulrich Pfeifer, Michael Henke, Dieter Grosse, Dario Lukacevic, Christian Haltenberger, Gerald Goerich; Volker Emde, Andreas Hillenmeier, Frank Wohlrabe, Michael Franke, Rolf Knippler, Heinrich Klems, Paul Watson, Erwin Wieffering, Dietmar Giljohann, Richard Stich, and Joerg Buechs. Documents produced by Braun corresponding with this project include B000001 – B004093; B004205 – B004222; B004614 – B005219; B005278 – B007149; B007190 – B007234; and B007236 – B008372.

The shaking beaker for shaving heads was a product manufactured and sold by Braun during the 1970s and 1980s. The shaking beaker was a small canister in which a user could place the cutter parts of a dry shaver along with a liquid to then seal and shake in order to clean the cutter parts. Documents produced by Braun corresponding with this project include B007658 – B007659. In addition, Rayovac had the opportunity to inspect and photograph the shaking beaker at Braun's headquarters in Kronberg, Germany on April 28, 2005.

The Thesis For Diploma was the independent work of Stefan Zeischke. The work was not completed on behalf of Braun. Zeischke received support for his project from the individuals at Braun included in his acknowledgement section found at B 005277. Documents produced by Braun corresponding with this project include B005220 - B005277.

In 1982, Braun conducted market research among users of Braun devices to understand the cleaning habits of dry shaver consumers, and the satisfaction of those consumers with their cleaning results. Three years later, additional research conducted by Braun showed that a Phillips device had significantly higher ratings for cleaning than Braun's devices. In 1987, Braun conducted a test in Japan to determine how users clean their dry shavers. Since 1965, Braun investigated methods of cleaning the shaving head by rinsing and studies other methods including suction, ultrasound, electrostatic, chemicals, and anti-adhesion coating. None of these results were deemed satisfactory. A new concept for cleaning the new rounded blade system was also developed, which yielded positive results for easier cleaning. Cumulatively, this research and consideration of cleaning methods dating back to the 1960s demonstrated that no economical and effective method was developed for cleaning dry shavers as of 1987. Documents produced by Braun corresponding with this research include B002043 – B002044; B002096 – B002099; and B007150 – B007189; B007191 – B007233; and B007369 – B007394.

On June 4, 1993, Braun made a presentation to VDE, the Association of German Electrical Engineers. Individuals involved in this presentation include Mr. Steigler and Mr. Petretty of Braun and Mr. Kraus of VDE. Documents produced by Braun corresponding with this presentation include B004617.

Fresenius performed hygiene studies for Braun in 1994, 1998, and 2000. These tests included an examination of results with special bacteria, considered skin-changes while using the Clean & Charge system, and looked at the changes in smell during the cartridge life. Additionally, these studies compared hygiene results of various cleaning methods such as brushing, wet cleaning, and the Clean & Charge system, looked at cleaning performance, as well as the correlation between cleaning performance and hygiene. In 1997 Fresenius performed a

study on Braun's behalf examining the composition of shaving dirt. In 1998, Fresenius examined the composition of used cleaning fluid. Documents produced by Braun corresponding with these projects include B001008; B001011; B002239; B002324; B002368 – B002369; B002395 – B002396; and B002410.

On October 26, 1998, TÜV Rhineland issued a report on behalf of Braun entitled "Investigation of Waste Disposal Paths in Selected Markets for Braun AG." Individuals involved in this report include Brigitte Fey and Gerd Weyrauther. Documents produced by Braun corresponding with this study include B004666 – B004680.

At various points, Braun conducted or proposed to conduct "Concept Discussions" or "Group Discussions" in relation to the washable shaver. Individuals involved in this project include Thomas Bubenicek. Documents produced by Braun corresponding with these discussions include B001012 – B001032. Consumer research and user testing were also conducted by and on behalf of Braun. Documents produced by Braun corresponding with these projects include B002128 – B002165; B002254 – B002255; B002447 – B002456; B002461; B002463; B002497; B002973; B004683; B004739 – B004740; B004771; and B007832 – B007942.

On September 23, 1999, Underwriters Laboratories, Inc. issued a Report on Hair Clipping and Shaving Appliances for Braun. Documents produced by Braun corresponding with this report include B004091 – B004093.

During 1999 and 2000, the University of Karlsruhe conducted ignition energy testing on behalf of Braun. Individuals involved in this project include Juergen Hoeser and Dr. Bockhorn

Documents produced by Braun corresponding with this project include B002324; and B004692 – B004693.

**INTERROGATORY NO. 18:**

Does Braun contend that it has produced all "Affidavits of Accuracy," "Declarations," or "Verifications" obtained by Braun for translation of documents relevant to this litigation? To the extent that Braun contends that all such documents have been produced, identify them by Bates Number. For each Affidavit of Accuracy, Declaration, or Verification, identify: (1) what document was translated by Bates Number and confirm that the complete translation of such document was produced by Braun; (2) when the party responsible for the translation came to possess the referenced document, the employer of the party responsible for the translation, and how the referenced document came into the possession of the party responsible for the translation; (3) whether there were drafts of the translations; (4) all individuals responsible for the translation, including any drafts identified in sub-part 3; (5) who at Braun is most knowledgeable about the translation. This Interrogatory includes, but is not limited to, the Declarations of Birgit Hubatsch filed in connection with the prosecution of both of the patents-in-suit.

**ANSWER TO INTERROGATORY NO. 18:**

Braun hereby incorporates its previous answer and objections to this interrogatory. To supplement its answer Braun additionally states that the following documents have been translated from German to English for this litigation: B00856 – B00861, B001012 – B001032; B001065 – B001104; B001107 – B001198; B001207 – B001218; B001226 – B001291; B002060 – B002103; B002166 – B002243; B002273 – B002444; B002447 – B002456; B002976 – B003072; B004625 – B004661; B004663 – B005143; B005191 – B005277; and B007112 – B007149. As previously stated, Braun has produced the complete translation of those documents. The parties responsible for the translation of these documents are TransPerfect Translations, Inc. for documents Bates numbered through B003072 and InTransCo, Inc. for documents Bates numbered B004625 – B007149. Counsel for Braun provided these documents to these companies who then sent them to appropriate translators.

Additional documents within the production are translations acquired by Braun GmbH during the prosecution of patent applications and are included among the multiple prosecution histories and file wrappers from the U.S. Patent and Trademark Office produced by Braun. These translations and certifications include documents Bates numbered B000049 – B000077, completed on December 8, 1994; B000140 – B000173, completed on December 5, 1994; B000182; B000222 – B000256; B001318 – B001355, completed in 1999; B001410 – B001416; B001595 – B001632, completed in 1999; B001678 – B001713, completed on December 5, 1994; B001765 – B001793, completed in 1999; B002011 – B002039, completed in 1999; B002041; B 003243 – B003273, completed on December 12, 1994; B003317 – B003344, completed in 1999; B003392 – B003393; B003552 – B003579, completed in 1999; B003637 – B003672, completed on December 5, 1994; B003721 – B003722; B003768 – B003798, completed on December 12, 1994; B003935 – B003965, completed on December 8, 1994; B004014 – B004043, completed on December 8, 1994; B005609 – B005610; B005693 – B005728, completed on December 5, 1994; B005792 – B005827, completed on December 5, 1994; and B006299 – B006329, completed on December 12, 1994. All drafts have been produced.

These translations were done by Frau Birgit Hubatsch. Frau Hubatsch, who is self-employed as a translator, received the documents directly from the patent department at Braun. H.D. Klauer, as the individual in Braun's patent department responsible for the patents-in-suit, arranged for these translations. Uwe Sievers in Braun's patent department is familiar with the process by which Frau Hubatsch's services are engaged and utilized. Documents produced by Braun related to the requests for translation include B007103 – B007107.

In addition on March 3, 1997, Phyllis Kristal of Fish & Richardson faxed a letter to William Grimes of Grimes & Leonard in Watertown, Massachusetts, requesting translation of

German patent No. 412981. Documents produced by Braun related to this request include B005543 – B005546 and B005609 – B005610.

**INTERROGATORY NO. 19:**

Identify what role The Gillette Company ("Gillette") has in the manufacturing, testing, sales, marketing, distribution, and/or "the general business management" of the products that employ the inventions disclosed by the patents-in-suit and all facts supporting Braun's statement that Gillette "shoulders the responsibility for the sales and marketing of ... the products that employ the inventions disclosed by the patents-in-suit." This Interrogatory includes, but is not limited to, (a) the money or other consideration paid by Gillette to Braun for the products that employ the inventions disclosed by the patents-in-suit (from the first sale in the U.S. to the present); (b) Braun's method for accounting for the money or other consideration paid by Gillette to Braun for such products; (c) the gross and net profits made by Braun as a result of Gillette's sales and marketing of such products; (d) the reason that Gillette shoulders the responsibility for the sale and marketing of such products in the U.S.; (e) Braun's ability to shoulder the responsibility for the sale and marketing of such products in the U.S. without Gillette; (f) the amount of funds spent by Gillette annually on the sales and marketing of such products; and (g) the identification of documents by Bates Number of documents supporting Braun's contentions.

**ANSWER TO INTERROGATORY NO. 19:**

Braun hereby incorporates its previous answer and objections to this interrogatory. Gillette has no role in the manufacturing or testing of the products that employ the inventions disclosed by the patents in suit. Gillette Commercial Operations North America ("CONA") does have the responsibility for the sales, marketing, and distribution of the products in the United States since April 2000, under a Distributorship Agreement (B007818 – B007824) by which CONA is the exclusive distributor of the products in the United States. The money paid by CONA to Braun for the products is shown in the financial records of Braun produced to Rayovac (including B007958 – B007995; B008325 – B008331) and are derived through the methodology described in the Intercompany Pricing Manual (B007668 – B007794).

As to the profits made by Braun, see the expert report of Jesse David.

CONA is the exclusive distributor of the products in the United States. Braun does not distribute the products in the United States except through CONA. It is not possible to determine precisely the amount of funds spent by Gillette annually on the sales and marketing of the products because the products are distributed by CONA, a division which distributes all Braun products in the United States since April 2000. Braun is seeking to determine whether there is additional information available regarding the costs of the sales and marketing and if such information is available, Braun will supplement its response.

BRAUN GmbH.
ppa. [signature]

May 27, 2005

As to Objections:

*[signature]*
_____
William L. Patton (BBO #391640)
Dalila Argaez Wendlandt (BBO #639280)
Lesley F. Wolf (BBO #651199)
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
(617) 951-7000

Attorneys for Plaintiff

Dated: May 27, 2005

- 12 -

## CERTIFICATE OF SERVICE

     I hereby certify that on May 27, 2005, I served a copy of the Plaintiff's Supplemental Response to Defendant's Second Set of Interrogatories on:

<u>By Facsimile</u>:
James A. Coughlan
Kirkland & Ellis, LLP
Aon Center
200 E. Randolph Drive
Chicago, IL 60601
Fax: (312) 861-2200

_____
Lesley F. Wolf

05/27/2005 14:57 FAX                                                                    ☒001/015



**ROPES & GRAY LLP**
ONE INTERNATIONAL PLACE    BOSTON, MA 02110-2624    617-951-7000    F 617-951-7050
BOSTON    NEW YORK    SAN FRANCISCO    WASHINGTON, DC

## FAX TRANSMITTAL LETTER

**IMPORTANT:** PLEASE DELIVER THIS DOCUMENT IMMEDIATELY!
IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL: (617) 951-7000
TOTAL NUMBER OF PAGES INCLUDING THIS TRANSMITTAL LETTER: 15

| | **Name** | **Firm/Company** | **Fax Number** | **Phone Number** |
|---|---|---|---|---|
| To: | James B. Coughlan | Kirkland & Ellis LLP | (312) 861-2200 | (312) 861-7259 |

From:    Lesley F. Wolf

Comments:

---

**PLEASE COMPLETE WHEN SUBMITTING TO FAX DEPARTMENT**

Date: May 27, 2005                         Time: 2:50 PM
File Symbol: GSR-629                       Personal ID Number: 28939
Submitted By: Lesley F. Wolf               Phone: (617) 951-7597

---

THIS FAX MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE. IT IS INTENDED FOR USE ONLY BY THOSE TO WHOM IT IS ADDRESSED. IF THIS FAX IS NOT ADDRESSED TO YOU, OR IF YOU RECEIVED IT IN ERROR, YOU MAY NOT DISCLOSE, DISTRIBUTE, COPY OR USE THIS FAX OR ANY INFORMATION IN IT. INSTEAD, PLEASE CALL US COLLECT AT (617) 951-7000 TO ARRANGE FOR ITS DESTRUCTION OR RETURN.



**ROPES & GRAY LLP**
ONE INTERNATIONAL PLACE   BOSTON, MA 02110-2624   617-951-7000   F 617-951-7050
BOSTON   NEW YORK   PALO ALTO   SAN FRANCISCO   WASHINGTON, DC   www.ropesgray.com

May 27, 2005

Lesley F. Wolf
(617) 951-7597
lwolf@ropesgray.com

**BY FACSIMILE**

James B. Coughlan
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601

Re:   *Braun v. Rayovac*

Dear Jim:

Pursuant to Judge Young's order, attached please find supplemental answers to Interrogatories 17, 18, and 19.

Very truly yours,

Lesley F. Wolf

cc:   Dalila Argaez Wendlandt
      Stanley D. Liang