**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| BRAUN GmbH, )<br>)<br>        Plaintiff, )<br>)<br>        v. )<br>)<br>RAYOVAC CORPORATION, )<br>)<br>        Defendant. ) | Civil Action No. 03-CV-12428-WGY |

**RAYOVAC CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT DECLARING U.S. PATENT NO. 5,711,328 INVALID FOR LACK OF WRITTEN DESCRIPTION**

**TABLE OF CONTENTS**

**INTRODUCTION**..................................................................................................................1
    I.    THE '328 PATENT LACKS ADEQUATE WRITTEN DESCRIPTION. ..............1
        1.    The '328 patent lacks adequate written description.............1
        2.    Braun creates no issues of fact on the lack of written description............................................................................3
    II.   NEW EVIDENCE AND LAW REQUIRES THE COURT TO REVISE ITS TENTATIVE "CRADLE STRUCTURE" CONSTRUCTION.........................5
    III.  CONCLUSION.............................................................................................6

# TABLE OF AUTHORITIES

**Cases**

*Fiers v. Revel*,
　　984 F.2d 1164, 1169 (Fed. Cir. 1993) .................................................................................. 3

*Gentry Gallery, Inc. v. Berkline Corp.*,
　　134 F.3d 1472, 1479 (Fed. Cir. 1998) ............................................................................. 1, 3

*In re Benno*,
　　768 F.2d 1340, 1346 (Fed. Cir. 1985) .................................................................................. 5

*In re Gosteli*,
　　872 F.2d 1008, 1012 (Fed. Cir. 1998) .................................................................................. 1

*Key Pharms. V. Hercon Labs. Corp.*,
　　161 F.3d 709, 716 (Fed. Cir. 1998) ...................................................................................... 6

*Lockwood v. Am. Airlines, Inc.*,
　　107 F.3d 1565, 1572 (Fed. Cir. 1997) ............................................................................. 1, 4

*Pfaff v. Wells Elecs., Inc.*,
　　525 US 55, 63 (1998) ............................................................................................................ 6

*Phillips v. AWH Corp.*,
　　415 F.3d 1303, at 7 (Fed. Cir. 2005) ............................................................................... 5, 6

*Regents of the Univ. of Cal. v. Eli Lilly & Co.*,
　　119 F.3d 1559, 1568 (Fed. Cir. 1997) .................................................................................. 2

*Smith v. Snow*,
　　294 U.S. 1, 14 (1935) ....................................................................................................... 6, 7

*Texas Digital Systems, Inc. v. Telegenix, Inc.*,
　　308 F.3d 1193 (Fed. Cir. 2002) ............................................................................................ 6

**Statutes**

U.S.C. § 112 ................................................................................................................................ 1

## INTRODUCTION

Braun claims that Rayovac infringes U.S. Patent No. 5,711,328 ("the '328 patent").[1] Braun originally overreached to stretch the '328 patent claims far beyond anything Gebhard Braun (or Dietrich Pahl) allegedly invented. Braun reversed field when Rayovac's expert Samuel Phillips opined, *inter alia*, that the '328 patent lacked adequate written description to support the "cradle structure" limitation. Braun's expert Dr. Samir Nayfeh then erred, retreating to what was allegedly "obvious" to bridge the gap between what was essential to the alleged invention and what Braun now tries to claim.[2]

### I.   THE '328 PATENT LACKS ADEQUATE WRITTEN DESCRIPTION.

A patent claim is invalid if its specification fails to provide written description for the claimed invention. 35 U.S.C. § 112, ¶ 1. A patent's written description "must clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1472, 1479 (Fed. Cir. 1998) (quoting *In re Gosteli*, 872 F.2d 1008, 1012 (Fed. Cir. 1998)); *see also Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997).

#### 1.   The '328 patent lacks adequate written description.

The Court has tentatively construed the "cradle structure" limitation to mean "a structure adapted to receive or support a shaving head and able to receive or retain fluid or both." Undeniably, the written description in the patent specification only corresponds with a structure that receives *and* retains fluid. ¶¶ 68-78. The '328 specification provides:

---

[1]   Braun has agreed to voluntarily dismiss its claim that Rayovac infringed the '556 patent.

[2]   At best for Braun, the Court must at least modify its tentative "cradle structure" construction.

>[T]he outlet port 27 is dimensioned such that the cradle 7, when supplied with cleaning fluid from a pump 23 …, rather than being allowed to run empty, is at all times kept filled to the rim[.]  (Ex. 1, at col. 6, ll. 44-52.)

While the written description defense is a question of fact, here there is only a question of law. Is written description corresponding only with a structure that *must* receive *and* retain cleaning fluid to function sufficient to support a broader claim to a structure that merely receives fluid?

Although description of a single species does not "compel the conclusion" that there is description of a claim to the entire genus, s*ee Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1568 (Fed. Cir. 1997), here, neither Mr. Braun nor Dr. Pahl conceived of a "cradle structure" that received, but did not retain fluid.  ¶¶ 70-78.  Mr. Braun concedes:

>Q: Did you ever create a shaver cleaning system in which the trough did not retain fluid.
>
>***
>
>A: [N]o, we did not do such a thing. *It was always immersed in fluid*.
>
>Q: And why was it always immersed in fluid?
>
>A: Because this showed this fantastic cleaning effect….
>
>Q: [I]n your work did you ever attempt to develop a cleaning system in which the shaver was sprayed with cleaning fluid as opposed to being bathed?
>
>A: No.
>
>***
>
>Q: [D]id you ever test the cleaning system in a situation where there was no fluid retained in the cradle structure?
>
>A: *[H]ow should this cleaning system work?  This would mean we would not need a cleaning system.*

(Ex. K, at 73-75 (emphasis added).)  An inventor obviously cannot describe what he did not conceive.  *Fiers v. Revel*, 984 F.2d 1164, 1169 (Fed. Cir. 1993).

2

Undeniably, Mr. Braun and Dr. Pahl knew that a cleaning device having a "cradle structure" that did not retain fluid would not function. ¶¶ 70-78. To Mr. Braun, a cleaning system having a "cradle structure" that does not retain fluid was equivalent to no cleaning system. ¶ 76. Thus, "one skilled in the art would clearly understand that [the receipt *and* the retention of fluid] was not only important, but essential to [Braun's alleged] invention." *See Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1480 (Fed. Cir. 1998).

    **2.**    **Braun creates no issues of fact on the lack of written description.**

Dr. Nayfeh asserts "Dr. Pahl testified that he conceived of a cleaning system wherein liquid was not retained by the cradle[.]" (Ex. 15, at 27.) But Dr. Pahl's testimony proves ***Rayovac's point, not Braun's***:

> Q: I want to know why you see the spraying of fluid in a dishwasher as different from the operation of the cleaning center[?]
>
> A: Let's put that way we once consider whether we could spray stuff in, but I personally feel it's much more efficient if you immerse the shaver head, especially cutter blocks …. Well, when we pump the liquid in it's basically also spraying, call it spray, you can pump it. You can call it pumping. …. ***How you feed in the liquid into the cradle is irrelevant for my opinion. The main thing is that the cutter block is immersed in the liquid***.
>
> Q: When you say the main thing, what do you mean the main thing?
>
> A: The ***most important thing*** for good cleaning result is that cutter block is ***immersed into the liquid***….
>
> Q: And so the whole cradle would be then filled with liquid, is that correct?
>
> A: Correct.
>
>                                 \*\*\*
>
> Q: [W]hat other ways did you consider for cleaning the shaver head in your cleaning center?
>
> A: I think it was, simply that thing. Fill up a cradle with liquid, put the shaver in it, let the cutter blocks operate.
>
> Q: That's the idea you thought of, right?

3

A:    Yes.

(Ex. J, at 80-81 (emphasis added).)  According to Dr. Pahl, regardless of how cleaning fluid fills the "cradle structure," receipt *and* retention to essential to the alleged invention.

Dr. Nayfeh's remaining opinions fare no better.  Dr. Nayfeh agrees that the '328 patent fails to describe a "cradle structure" does not retain cleaning fluid.  ¶ 69.  But he then errs as a matter of law, opining: "[I]t would be clear to one of ordinary skill in the art that if the outlet port of the cradle were of a greater cross sectional area, the inflow of cleaning fluid would be smaller than the outflow.  In such a configuration, the cradle 7 would receive, but not retain cleaning fluid." (Ex. 15, at 27.)

*First*, the written description requirement cannot be satisfied by what was "obvious." *Lockwood*, 107 F.3d at 1572 ("One shows that one is 'in possession' of the *invention* by describing *the invention*, with all its claimed limitations, not that which makes it obvious."). What was allegedly "clear" to the ordinary artisan is thus legally irrelevant.  *Second*, given Mr. Braun's and Dr. Pahl's clear testimony, the "ordinary artisan" would *not* modify the cleaning device as Dr. Nayfeh suggests.  There can be no dispute that Mr. Braun and Dr. Pahl thought the modification was useless (and unclear).

Dr. Nayfeh also argues that claim 2 of the '328 patent is written description for the "cradle structure."[3]  *First*, written description is judged as of the 1995 filing date of the '328 patent.  *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1564-65 (Fed. Cir. 1991) .  Braun amended dependent claim 2 during prosecution.  ¶ 89.  Claim 2 depends from claim 1, and Braun also amended claim 1 during prosecution.  ¶¶ 87 & 90.  Claim 2, which came to exist in *1997*, was not written description in *1995*.  *See In re Benno*, 768 F.2d 1340, 1346 (Fed. Cir. 1985)  *Second*,

---

[3]    Claim 2 recites additional limitations as to the outlet port of dependent claim 1.  ¶ 88.

4

not only is dependent claim 2 irrelevant, it provides *no description* of a "cradle structure" that only receives cleaning fluid. Dependent claim 2 is unremarkably a species of "cradle structure" that retains cleaning fluid. *See id.* Summary judgment must therefore be granted.

## II. NEW EVIDENCE AND LAW REQUIRES THE COURT TO REVISE ITS TENTATIVE "CRADLE STRUCTURE" CONSTRUCTION.

The Court's tentative construction of the "cradle structure" limitation is respectfully problematic. It is appropriate to discuss claim construction here, especially in light of new law and evidence. *See Phillips v. AWH Corp.*, 415 F.3d 1303, at 7 (Fed. Cir. 2005) (*en banc*) (noting that § 112 "frame[s] the issue of claim interpretation").[4]

Rayovac's original proposed claim constructions remain correct. Here, Rayovac briefly presents new evidence and a slight modification to the Court's construction. As suggested by Mr. Phillips, the construction would be more appropriate as "a structure adapted to support or receive a shaving head of a shaving apparatus and able to receive *and* retain fluid."[5] ¶ 93.

An *en banc* Federal Circuit treated claim construction in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*).[6] In *Phillips*, the Federal Circuit held that "[t]he patent system is based on the proposition that claims *cover only the invented subject matter*." 415 F.3d at 15 (emphasis added). The touchstone of our patent system is the actual conception of an invention. *See Pfaff v. Wells Elecs., Inc.*, 525 US 55, 63 (1998)  The Court's construction, however, embraces subject matter which Mr. Braun and Dr. Pahl believed they did not invent. Both individuals testified unambiguously that their cleaning device would only work if the "cradle

---

[4] Pin cites for *Phillips* throughout refer to the page numbers of the copy attached as Ex. 31.

[5] It is appropriate for the Court to consider Mr. Phillips' opinion for the purposes of claim construction. *See Key Pharms. V. Hercon Labs. Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998).

[6] In *Phillips*, the Federal Circuit rejected the importance of dictionaries to claim constrction expressed in cases such as *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002). Braun has relied upon a definition of the word "cradle" in the McGraw-Hill Dictionary of Scientific and Technical Terms. ¶ 94.

structure" received *and* retained cleaning fluid.[7] ¶¶ 70-75. "[I]f [a] claim [is] fairly susceptible of two constructions, that should be adopted which will secure to the patentee his *actual invention*." See *Smith v. Snow*, 294 U.S. 1, 14 (1935) (emphasis added).

"It is … entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims." 415 F.3d at 12. Rayovac is not suggesting here that the "cradle structure" be limited to the sole embodiment disclosed in the patent (or claim 2). That the "cradle structure" must retain fluid does not imply an outlet port, its dimensions, or any other component of sole embodiment.[8] Rather, as set forth in the specification, the alleged invention will not function without the receipt and the retention of cleaning fluid:

> [T]he cradle 7 conforms approximately to the outer contour of the shaving head 3 of the shaving apparatus 1, and it holds only as much cleaning fluid as is necessary for the respective cleaning operation.

(Ex. 1, at col. 6, ll. 18-22.) The Court's construction should reflect that fact. *Snow*, 294 U.S. at 14.

### III. CONCLUSION

For the foregoing reasons, the Court should grant Rayovac's summary judgment motion.

---

[7] A court should consider inventor testimony as to what he or she actually invented to arrive at the correct construction. *Phillips*, 415 F.3d at 12 ("[W]e have also authorized district courts to rely on extrinsic evidence, which [includes] inventor testimony.")

[8] For example, a "cradle structure" using the siphon tube 24 of U.S. Patent No. 3,365,267 (attached as Ex. 5) to evacuate fluid would have no "outlet port," but the "cradle structure" would still retain fluid.

6

DATED:  August 22, 2005                              DWYER & COLLORA LLP


By:  __ /s/ Kevin S. Ueland _____
Mark A. Pals (admitted *pro hac vice*)
James A. Shimota (admitted *pro hac vice*)
Kevin S. Ueland (admitted *pro hac vice*)
James B. Coughlan (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
Aon Center
200 E. Randolph Dr.
Chicago, IL 60601
(312) 861-2000
Facsimile: (312) 861-2200

Joseph E. Haviland (BBO #643814)
Dwyer & Collora LLP
600 Atlantic Avenue
Boston, MA  0210-1122
(617) 371- 1000
Facsimile: (617) 371-1037

7