**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| BRAUN GmbH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 03-CV-12428-WGY |
| ) | |
| RAYOVAC CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**RAYOVAC CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT DECLARING U.S. PATENT NO. 5,711,328 INVALID AND UNENFORCEABLE**

**TABLE OF CONTENTS**

**BACKGROUND** ..................................................................................................................2

**ARGUMENT**......................................................................................................................8

    **I.**    **BRAUN ADMITS THAT THE '328 PATENT NAMES THE WRONG INVENTOR.**......................................................................................8

    **II.**   **BRAUN IS NOT ENTITLED TO CORRECT THE FALSE STATEMENTS IT ASSERTED REGARDING INVENTORSHIP.**................8

        **A.**    **Dr. Pahl Knowingly and Deliberately Directed Mr. Braun to Falsify the Inventorship Disclosure.**..........................................................9

        **B.**    **Braun Cannot Show That Dr. Pahl Acted Without Deceptive Intent.**.........................................................................................................10

    **III.**  **IN ADDITION, BRAUN'S INEQUITABLE CONDUCT IN SUBMITTING FALSE STATEMENTS TO THE UNITED STATES PATENT AND TRADEMARK OFFICE RENDERS THE '328 PATENT UNENFORCEABLE.**............................................................................11

**CONCLUSION** ................................................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*Burroughs Wellcome Co. v. Barr Lab., Inc.*,
  40 F.3d 1915, 1918 (Fed. Cir. 1994) .................................................................... 12

*John Blue Co. v. Dempster Mill Mfg. Co.*,
  172 F. Supp. 23, 29-30 (D. Neb. 1958) ................................................................ 10

*Kraftco Corp. v. Beatrice Foods Co.*,
  342 F. Supp. 1361, 1372 (D.N.J. 1971) ............................................................... 11

*Pannu v. Iolab Corp.*,
  155 F.3d 1344, 1349 (Fed. Cir. 1998) ............................................................... 8, 9

*Perseptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*,
  225 F.3d 1315, 1318 (Fed. Cir. 2000) .................................................................. 12

*Rohm & Haas Co. v. Crystal Chem. Co.*,
  722 F.2d 1556, 1571 (Fed. Cir. 1983) .................................................................. 13

*Stark v. Advanced Magnetics, Inc.*,
  119 F.3d 1551, 1555 (Fed. Cir. 1997) ............................................................. 9, 15

*United States v. Kabat*,
  797 F.2d 580, 588 (8th Cir. 1986) ........................................................................ 10

*University of Colorado Foundation, Inc. v. American Cyanamid*,
  880 F. Supp. 1387, 1399 (D. Colo., 1995) ........................................................... 10

**Statutes**

19 C.F.R. § 1.56 ............................................................................................................ 15

35 U.S.C. § 102(f) ............................................................................................... 7, 8, 15

35 U.S.C. § 115 ............................................................................................................ 14

35 U.S.C. § 256 ......................................................................................................... 8, 9

37 C.F.R. § 1.56 ...................................................................................................... 6, 14

The web of deception that Braun GmbH ("Braun") used in prosecuting U.S. Patent No. 5,711,328 (the "'328 patent" or "patent-in-suit") began to unravel on August 2, 2004. After filing this action against Rayovac Corporation ("Rayovac"), Braun brought a Motion to Correct Inventorship. It sought to add Dr. Dietrich Pahl as a co-inventor, claiming that the failure to name him originally was "a result of an honest mistake [a misunderstanding] as to the requirements of United States patent law…[and] German patent law." But, as uncovered in discovery, there was no mistake. There were secret arrangements, knowing misstatements, and fraudulent oaths to the United States Government. These actions constitute inequitable conduct, and render the '328 patent unenforceable.

More particularly, Rayovac has uncovered the following undisputed facts:

- *First*, Dr. Dietrich Pahl, who was not originally named as an inventor and whom Braun belatedly seeks to add as a co-inventor, was in fact the individual who conceived of the alleged invention claimed by the '328 patent. While working in Lyon, France, Dr. Pahl developed the first working prototype and drafted detailed drawings of the alleged invention.

- *Second*, Dr. Pahl made two inter-company presentations of his alleged invention. The first presentation, entitled "The Future of Shavers," was for Braun's Research & Development team. In the second presentation, Dr. Pahl separately showed his drawings and prototype to Braun businessmen Gilbert Greaves and Jacquac LaGarde, respectively.

- *Third*, after the internal presentations, Dr. Pahl enlisted Gebhard Braun to assist him in further refining Dr. Pahl's alleged invention.

- *Fourth*, in 1993, Mr. Braun filled out Braun's Invention Disclosure form, an internal document used by Braun to evaluate the details of new projects. In the section regarding inventorship details, on the direct orders of his supervisor, Dr. Pahl, Mr. Braun lied in stating that he was the sole inventor of the alleged invention claimed by the '328 patent.

- *Fifth*, in the United States Patent Application for what ultimately issued as the '328 patent, Mr. Braun knowingly perjured himself by swearing that he was the sole inventor of the alleged invention claimed by the '328 patent in his Inventorship Oath.

There is no question that each of the acts described above were knowing and deliberate, and that Mr. Gebhard Braun and Braun have benefited from them. And they constitute material and knowing violation of the Patent Act sufficient to invalidate the '328 patent based on the fraud.

## BACKGROUND

Braun had investigated various methods for cleaning dry shavers since at least as early as the 1950's. *See* ¶ 20.[1] The project that ultimately resulted in the development and commercialization of Braun's Clean & Charge System — the device that embodies the alleged invention claimed by the '328 patent — began in the early 1990's. In 1992, Dr. Pahl conceived the idea for a device that automatically cleaned the head of a dry shaver. *See* ¶ 21. Under Dr. Pahl's direction, engineers at Braun's facilities in Lyon, France, began drafting detailed drawings and putting together a working prototype of Dr. Pahl's idea. *See* ¶ 22. Importantly, the drawings and prototype that Dr. Pahl developed in France included almost all of the elements claimed in the '328 patent, including each element of the claims asserted against Rayovac in this action. *See* ¶ 23.

| Asserted Elements | Dr. Pahl's 1992 Prototype |
|---|---|
| A cradle structure adapted to receive a shaving head of a shaving apparatus, ('328 patent, Claim 11). | "This cleaning center had many components, including a trough or cradle in which the shaving head of a dry shaver could be placed." (¶ 23). |
| A cleaning fluid container, ('328 patent, Claim 11); said cradle structure being arranged above a fluid level of the cleaning fluid in said cleaning fluid container… (*Id.*) | "The cleaning center also had a container for cleaning fluid, which was positioned below the cradle." (*Id.*) |
| A feed device for feeding cleaning fluid to said cradle structure, ('328 patent, Claim 11). | "During the cleaning operation, an electrical circuit…activated a pump to feed the cleaning |

---

[1] All citations in this, and all of Rayovac's Supporting Memoranda are to undisputed facts are to the numbered paragraphs in Rayovac's Statement of Undisputed Facts.

| | fluid from the cleaning fluid container to the cradle." (*Id.*) |
|---|---|
| A drying device (and a drying device comprising an impeller), ('328 patent, Claim 11 and 12) | "The functional model of the cleaning center also included a dryer, consisting of a fan and a heater, to aid in the drying function." (*Id.*) |
| Said cradle structure being permanently open to the atmosphere, ('328 patent, Claim 14) | "As Exhibits A and B show, the cradle was open to the atmosphere, such that the dry shaver could be inserted from the top into the cleaning device…." (*Id.*) |
| A bracket for insertion of the shaving device therein ('328 patent, Claim 18) | See Pahl Dep. Tr. 148:13-149:3., ¶ 23. |

Dr. Pahl presented drawings detailing his invention internally at Braun in November 1992. ¶ 24. After this meeting, Dr. Pahl also presented his prototype to the head of Braun's Men's Hair Removal Unit, Gilbert Greaves, as well as Jacquac LaGarde, Braun's CEO. *See* ¶ 25.

At some point in 1993, Dr. Pahl, the Director of Research and Development at Braun, enlisted the assistance of Mr. Gebhard Braun, one of his subordinate engineers, to further refine the alleged invention that Dr. Pahl had designed. *See* ¶ 26; Pahl Dep. Tr. 60:2-11. Dr. Pahl showed Mr. Braun the drawings and prototype, which revealed the elements claimed in the '328 patent listed above. *See* ¶ 27. Indeed, as Mr. Braun freely admitted, nearly all of the elements of the alleged invention (and certainly those asserted against Rayovac) were completed ***before*** Dr. Pahl enlisted Mr. Braun to help refine it. *See* ¶ 28; Braun Dep. Tr. 113:5-17.

Over the next several months Mr. Braun made minor adjustments to the alleged invention. *See* ¶ 29. Specifically, Mr. Braun devised a method for using a single motor to drive both the impeller and the pump of the cleaning device. *Id.*, Braun Dep. Tr. 81:3-8. During the time that Mr. Braun refined Dr. Pahl's alleged invention, Mr. Braun was directed by Braun's Patent Department to complete an Invention Disclosure form describing it. *See* ¶ 30.

3

The Invention Disclosure was a form used by Braun's Patent Department internally to gather information regarding potential inventions. Wolfgang Vorbeck, Braun's 30(b)(6) designee regarding the prosecution of the '328 patent, testified that it is Braun's expectation and policy that Braun employees complete the Invention Disclosure honestly. *See* ¶ 30, Vorbeck Dep. Tr. 88:11-89:3. Hans Dieter Klauer, Braun's in-house patent counsel, was aware of Dr. Pahl's contributions to the alleged invention and assisted Mr. Braun in preparing his response to the Invention Disclosure form. *See* ¶ 31, Braun Dep. Tr. 113:18-116:5. This form included a section for the identification of inventors. Both Dr. Pahl and Mr. Braun knew that Dr. Pahl was the inventor of the invention described in the Invention Disclosure. Indeed, Mr. Braun and Dr. Pahl discussed whether Dr. Pahl should be included on the form as a co-inventor. But, instead, Dr. Pahl instructed Mr. Braun to identify himself as the sole inventor. Mr. Braun testified:

> Q: My question is: Did you discuss with Dr. Pahl whether he was an inventor of any aspect of the shaver cleaning system?
>
> A: I think so, yes.
>
> Q: And what did Dr. Pahl say to you regarding whether he was an inventor of any aspect of the shaver cleaning system?
>
> A: He categorically rejected this, and he even told me that I should be the sole inventor.

Braun Dep. Tr. 105:13-21, ¶ 32. Mr. Braun felt uneasy about Dr. Pahl's order:

> Q: And did you read the statement above your signature at the time you signed this document?
>
> A: You mean all these points that are listed here?
>
> Q: There is the statement above your signature, "It is hereby assured that all information was provided to the best of my knowledge and that no additional inventors participated in creation of the invention."

4

> A: Right. I for sure had not absolutely -- very -- absolutely good feeling in this respect. But I'm sure that I informed Mr. Klauer that in my opinion Dr. Pahl was a co-inventor, but he did not want to be mentioned. Dr. Pahl did not want to.
>
> Q: So you are certain that you informed Mr. Klauer that Dr. Pahl should be listed as a co-inventor, and that is why you didn't feel good about this?
>
> (Objection to Form)
>
> A: If it is about whether I am sure whether I informed Mr. Klauer, I am not sure in this respect.
>
> If Dr. Pahl told me and he said he was very determined in telling me that I should apply for it, this was binding for me.
>
> Mr. Patton: Would you reread the preceding answer, I want to make sure I'm not stating anything necessary.
>
> (answer read)
>
> Q: Well, let me just ask this question then: Why did you have a bad feeling when you signed the document?
>
> A: Because I found something that was part of the invention which I did not invent.

See ¶ 34, Braun Dep. Tr. 122:22-123:24. Dr. Pahl directed Mr. Braun to lie because it was supposedly his "policy" to allow his employees to take credit for his inventions to motivate them. *See* Pahl Dep. Tr. 117:9-14. Somewhat more plausible, however, Dr. Pahl also testified that he thought that by lying about the true inventor he could avoid internal jealousy amid Braun Directors and push his alleged invention toward commercialization.. *Id.* at 117:15-24.

Regardless of Dr. Pahl's motives (which are irrelevant), with full knowledge of Dr. Pahl's true status as an inventor, and despite feeling "bad" about doing so, Mr. Braun did as his superior directed, and falsely stated that he was the sole inventor of the alleged invention claimed by the '328 patent. *See* ¶ 34.

5

Both Dr. Pahl and Gilbert Greaves reviewed and approved the Invention Disclosure form despite knowing that the inventor details were incorrect.[2] *See* ¶ 35. In a separate form, Dr. Pahl represented that the "inventor information" on the Inventorship Disclosure form was correct. *See* ¶ 36. Mr. Vorbeck testified that the form Dr. Pahl signed was the method by which Braun ensured that inventorship information was accurate. *See* ¶ 36, Vorbeck Dep. Tr. 100:4-101:7. He also testified that it was an "exceptional case" for a Braun Director such as Dr. Pahl to lie about inventorship. *See* ¶ 37, Vorbeck Dep. Tr. 104:20-106:17.

Based on the pattern of deception within Braun, Braun then submitted a patent application to the German patent office, falsely listing Mr. Braun as the sole inventor. *See* ¶ 38. Mr. Klauer assisted in the German prosecution of what ultimately issued as DE 44 02 238.7. *See* ¶ 44. Critically, Mr. Klauer also assisted in the prosecution of the U.S. application that resulted in the '328 patent (*see* ¶ 45), and thus had a duty of candor to pursuant to 37 C.F.R. § 1.56. Moreover, Mr. Klauer was aware of the duty of disclosure in the United States. *See* ¶ 40, Vorbeck Dep. Tr. 46:1-8. Mr. Klauer knew of the importance of ascertaining the true inventors of a patent, and he, in fact, instructed at least one Braun employee, Juergen Hoeser, to that effect. *See* Hoser Dep. Tr. 224:8-17.

As required by U.S. statute, Mr. Braun signed an oath when the '328 patent application was filed with the United States Patent and Trademark Office ("USPTO"). The oath, read and signed by Mr. Braun, stated, in relevant part:

> I believe I am the original, first and sole inventor … of the subject matter which is claimed and for which a patent is sought …

---

[2] Dr. Pahl testified that he showed his prototype to Gilbert Greaves. *See* Pahl Decl. ¶ 22. Therefore Mr. Greaves would know that the idea for the cleaning system was Dr. Pahl's. For his part, Mr. Greaves does not recall seeing Dr. Pahl's prototype. Greaves Dep. Tr. 148:17-151:13.

> I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, § 1.56(a).
>
> \*   \*   \*
>
> I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

*See* ¶ 46.

What was the motive for Mr. Braun's deceit? As is so often the case, the answer is "follow the money." Under German law, an inventor is entitled to compensation in the form of a royalty for the sales of a patented invention. *See* ¶ 49. For co-inventors, the compensation is divided approximately based upon the percentage contribution of the inventors. *See* ¶ 50. Having lied that he was the sole inventor of the '328 patent, Mr. Braun has to date been paid roughly € 40,000 by Braun. *See* ¶ 51. He will continue to profit from his deceit for many years to come.

Supported by Mr. Braun's false oath, the '328 patent issued on January 27, 1998. *See* ¶ 48. Only now, nearly a decade later, and after filing this action against Rayovac has Braun brought to light what it has known for years. But this eleventh hour confessional is too little and comes much too late. Accordingly, this Court should enter judgment against Braun finding that the '328 patent is invalid pursuant to 35 U.S.C. § 102(f), and unenforceable as a result of the patter of egregious inequitable conduct.

# ARGUMENT

To save the '328 patent from invalidity,[3] Braun must show that Dr. Pahl's decision to keep the details of inventorship secret was made "without deceptive intent." Because Dr. Pahl has admitted the contrary, Braun cannot meet this burden. Dr. Pahl lied. Mr. Braun lied. Braun cannot be allowed to profit from their deception.

## I. BRAUN ADMITS THAT THE '328 PATENT NAMES THE WRONG INVENTOR.

Pursuant to 35 U.S.C. § 102(f), the '328 patent is invalid. *See Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998). ("[S]ection 102(f)…makes the naming of the correct inventor or inventors a condition of patentability; failure to name them renders a patent invalid."). There is no dispute that the '328 patent fails to name the correct inventor. Braun, through its Motion to Correct Inventorship, had admitted as much. To be sure, Braun could hardly contend otherwise in light of the facts detailed above.

## II. BRAUN IS NOT ENTITLED TO CORRECT THE FALSE STATEMENTS IT ASSERTED REGARDING INVENTORSHIP.

Braun can only avoid invalidity of the '328 patent under the savings provision set forth in 35 U.S.C. § 256. Under § 256, a patent can be corrected to cure errors in inventorship[4] but only

---

[3] Braun has admitted that the patent is invalid under 35 U.S.C. § 102(f), which provides that a person shall not be entitled to a patent if "he did not himself invent the subject matter sought to be patentable."

[4] 35 U.S.C. § 256 states:

> Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error. The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order

(Continued…)

if the error occurred "without any deceptive intention." *See* 35 U.S.C. § 256; *Pannu*, 155 F.3d at 1350 ("Nonjoinder may be corrected…upon a showing that the error occurred without any deceptive intent on the part of the unnamed inventor.'"); *Stark v. Advanced Magnetics, Inc.*, 119 F.3d 1551, 1555 (Fed. Cir. 1997) ("[T]he statute allows correction…in those nonjoinder cases where the unnamed inventor is free of deceptive intent."). In this case, Dr. Pahl has ***admitted*** that he deliberately directed Mr. Braun to falsify the inventorship details and tried to keep his inventorship a secret. ¶ 33. In response to these damning admissions of deliberate fraud, Braun attempts to excuse Dr. Pahl's actions by claiming a misunderstanding as to the differences between U.S. patent law and German patent law. But this argument, suspect on its face, is contradicted by the objective facts. Simply stated, Braun cannot establish that Dr. Pahl's actions were an error or were innocent.

    **A.    Dr. Pahl Knowingly and Deliberately Directed Mr. Braun to Falsify the Inventorship Disclosure.**

Dr. Pahl admitted that he knew he was an inventor of the cleaning system, and that his decision to direct Mr. Braun to omit Dr. Pahl's name as an inventor was a deliberate choice, having noting to do with German or U.S. patent laws. Dr. Pahl testified:

> Q: So your choice -- your decision not to name yourself as an inventor on the shaver cleaning system, that was a deliberate choice, correct?
>
> A: Totally.
>
> Q: And when you made that choice you did recognize that you were actually an inventor of the shaver cleaning system?

---

    correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

9

    A: Sure, yeah.

*See* ¶ 33, Pahl Dep. Tr. 128:9-16. Dr. Pahl's deliberate actions are clearly not error; and that seals the fate of the '328 patent, regardless of whether he thought he was cheating, being "generous" to his subordinates, or avoiding the jealousies of his peers.[5] *See John Blue Co. v. Dempster Mill Mfg. Co.*, 172 F. Supp. 23, 29-30 (D. Neb. 1958), *aff'd on other grounds by*, 275 F.2d 668, (8th Cir. 1960) ("This Court concludes that the deliberate action…was not an omission by errors such as can be corrected under Section 256. It is therefore unnecessary to pass upon whether the omission was without any deceptive intent…."); *see also University of Colorado Foundation, Inc. v. American Cyanamid*, 880 F. Supp. 1387, 1399 (D. Colo., 1995) (§ 256 inapplicable where plaintiffs seek correction based on alleged fraud and deception of defendant); *Kraftco Corp. v. Beatrice Foods Co.*, 342 F. Supp. 1361, 1372 (D.N.J. 1971) (refusing to allow correction of inventorship because the omission "was not done through error, but was a deliberate and calculated determination made after a complete investigation of the inventorship….").

  **B.** **Braun Cannot Show That Dr. Pahl Acted Without Deceptive Intent.**

Braun's alibi for Dr. Pahl, that he misunderstood the differences between U.S. patent law and German patent law, is a red herring — both legally irrelevant and factually unsupported. His claimed confusion regarding the requirements between U.S. patent law and German patent law, is immaterial to whether Dr. Pahl's action was deliberate, which he admits it was.

---

[5] In everyday life, white lies are told for arguably innocent or altruistic reasons. For example, if a friend receives a bad haircut, one might very well lie to make them feel better. That the lie was for an altruistic purpose does not change the fact that it was an intentional lie. And that is true under the law as well. Where, as here, it is clear that the lie was intentional, motive is irrelevant. *United States v. Kabat*, 797 F.2d 580, 588 (8th Cir. 1986) ("The 'end' of stealing money still could be just a means to another more valued consequence, such as giving to the poor; that ultimate goal, however, would not replace or negate the intent of stealing and would still be a 'motive,' while the intent to steal would still provide the 'specific intent' required by the statute.").

Ignorance of the law does not excuse the ***deliberate*** naming of the wrong inventor of the '328 patent. Section 256 allows the correction only if the error was an error in the inventorship contributions, not error in what the law requires. *See*, *e.g.*, *Kraftco Corp.*, 342 F. Supp. at 1372. And Dr. Pahl was not a stranger to U.S. patent law — he is a named inventor on four other U.S. patents, two of which were filed earlier than the '328 patent. *See* ¶ 42, Pahl Dep. Tr. 121:6-127:17.

Because Braun cannot credibly argue that Dr. Pahl's deliberate choice to not name himself as an inventor on the '328 patent was made free of deceptive intent, Braun is not now entitled to correct inventorship. Accordingly, this Court should order that the '328 patent is invalid under § 102(f).

### III. IN ADDITION, BRAUN'S INEQUITABLE CONDUCT IN SUBMITTING FALSE STATEMENTS TO THE UNITED STATES PATENT AND TRADEMARK OFFICE RENDERS THE '328 PATENT UNENFORCEABLE.

While Dr. Pahl's actions are the heart of Braun's deception, he is hardly the only party guilty of fraud. Gebhard Braun was a knowing and willing accomplice in Dr. Pahl's plan to hide the true details regarding inventorship. Mr. Braun filed a false oath to the USPTO, claiming to be the sole inventor of the '328 patent. *See* ¶ 46. Braun's internal patent counsel, Mr. Klauer, was a knowing and complicit conspirator in covering up Mr. Braun's false oath. *See* ¶¶ 39, 40, 45. The actions of Mr. Braun and Mr. Klauer, separately and in concert, constitute inequitable conduct that renders the '328 patent unenforceable.

"Inequitable conduct includes affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *See Perseptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1318 (Fed. Cir. 2000). There is no argument that information regarding inventorship is material. *Id.*

at 1321 ("Furthermore, the intentional falsehoods and omissions [regarding inventorship] found by the district court easily meet our oft-stated test for materiality….").

To be sure, the Federal Circuit has affirmed finding a patent unenforceable for inequitable conduct where, as is the case here, a party knowingly submits falsehoods and omissions "calculated to 'obfuscate the threshold issue of inventorship.'" *See Perseptive*, 225 F.3d at 1321; *Burroughs Wellcome Co. v. Barr Lab., Inc.*, 40 F.3d 1915, 1918 (Fed. Cir. 1994) (patent may be unenforceable for inequitable conduct when any co-inventors are omitted with deceptive intent). Mr. Braun's false statement was in the form of an affidavit to the United States Government. *Rohm & Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556, 1571 (Fed. Cir. 1983) ("[T]here is no room to argue that the submission of false affidavits is immaterial.").

There is no question that Mr. Braun knew at the time he read and signed the Inventorship Oath for the '328 patent, that the inventorship information he was attesting was false. The Oath states:

> I believe I am the original, first and sole inventor … of the subject matter which is claimed and for which a patent is sought …
>
> I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, § 1.56(a).

¶ 46. Mr. Braun admits that at the time he signed the Inventor's Oath, he knew that he was not the sole inventor, and that, in fact, Dr. Pahl was the original inventor:

> Q: But you, in December, '94, you didn't believe that [Dr. Pahl] was a co-inventor?
>
> A: Of course he was one, but he renounced to be stated there and that's why I entered my name as the sole inventor.
>
> \*    \*    \*
>
> Q: …The question is this: Do you believe that Dr. Pahl is a co-inventor with you on the patents in suit?

12

> A: I have read it. I don't need to read it.
>
> I'm especially of the view that he was a prior inventor.
>
> Q: What do you mean by prior inventor?
>
> A: That was what was already there. What was lying before me, that is not what I invented. This can only have been him or other people who worked this out.

*See* ¶ 47, Braun Dep. Tr. 157:20-24; 112:7-15.

Thus, Mr. Braun, in his Inventorship Oath, purposefully filed false information with the USPTO, and in so doing, violated the "duty of candor and good faith in dealing with the [USPTO], which includes a duty to disclose to the [USPTO] all information known to that individual to be material to patentability as defined in this section." 37 C.F.R. § 1.56. In addition, Mr. Braun violated 35 U.S.C. § 115, which states, in relevant part, "[t]he applicant shall make oath that he believes himself to be the original and first inventor of…[that] for which he solicits a patent…." Braun cannot argue that these intentional misrepresentations are not material.[6]

Mr. Klauer, Braun's in-house patent counsel, knowingly assisted Mr. Braun in preparing and submitting his oath, and thus, also violated the duty of disclosure. *See* 37 C.F.R. § 1.56 ("Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office…."). *See* ¶ 45. There is no question that Mr. Klauer also knew that Dr. Pahl was an inventor. Mr. Klauer regularly met with Jurgen Hoser, the project manager in charge of the cleaning system project, and in fact provided Mr. Hoser with documents evidencing Dr. Pahl's inventorship. *See* ¶ 39, Hoser Dep. Tr. 110:14-19.

---

[6] Any argument that Mr. Braun was confused by the Inventorship Oath is at odds with the facts. Mr. Braun is a named inventor on several other U.S. Patents, including patents on which he was named as a co-inventor. *See* Braun Dep. Tr. 149:8-150:9.

Indeed, Mr. Klauer told Mr. Hoser that Dr. Pahl had developed the cleaning system. Mr. Klauer was aware of the duty of disclosure in the U.S. *See* ¶ 40, Vorbeck Dep. Tr. 46:1-8. Moreover, Mr. Klauer was familiar with the importance of the inventorship oath, having himself been named as an inventor on at least three U.S. patents.[7] *See* ¶ 41.

As noted above, Mr. Braun had ample incentive to lie. Under German law, if a patented invention is commercialized, it is required that the inventor be compensated commensurate with the sales of the patented product. *See* ¶ 49, Pahl Dep. Tr. 118:24-119:17; Braun Dep. Tr. 121:9-122:14. Additionally, a sole inventor is entitled to more money from a successful invention than if they have to share credit with a co-inventor. *See* ¶ 50, Vorbeck Dep. Tr. 88:11-89:22. To date, Mr. Braun has received between € 20,000 – €40,000. *See* ¶ 51, Vorbeck Dep. Tr. 36:7-11.

The simple fact is this: Mr. Braun knowingly submitted an oath falsifying the inventorship status. The Federal Circuit has stated that it will not countenance such actions. *See Stark*, 119 F.3d at 1555 ("This Court notes as well that its reading of the statute is not likely to allow an avowedly deceptive inventive entity to correct misjoinder without any penalty for its deception."). This Court should declare that the '328 patent is unenforceable as a matter of law.

## CONCLUSION

For all of the foregoing reasons, the '328 Patent is invalid for failure to name the proper inventor as required by 35 U.S.C. § 102(f) and unenforceable due to the false oath submitted to the USPTO by the inventor, Gebhard Braun, in violation of the duty of candor imposed by 19 C.F.R. § 1.56. Accordingly, Rayovac respectfully submits that it is therefore entitled to summary judgment as a matter of law.

---

[7] *See* U.S. Patent Nos. 3,989,071 (filed May 1974), 4,015,151 (filed October 1975), and 5,704,126 (filed September 1995).

DATED: August 23, 2005                          DWYER & COLLORA LLP


By: _/s/ Kevin S. Ueland_____
Mark A. Pals (admitted *pro hac vice*)
James A. Shimota (admitted *pro hac vice*)
Kevin S. Ueland (admitted *pro hac vice*)
James B. Coughlan (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
Aon Center
200 E. Randolph Dr.
Chicago, IL 60601
(312) 861-2000
Facsimile: (312) 861-2200

Joseph E. Haviland (BBO #643814)
Dwyer & Collora LLP
600 Atlantic Avenue
Boston, MA  0210-1122
(617) 371- 1000
Facsimile: (617) 371-1037

15