IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BRAUN GmbH,

                Plaintiff,

          v.

RAYOVAC CORPORATION,

                Defendant.

Civil Action No. 03-CV-12428-WGY

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTIONS FOR
PARTIAL SUMMARY JUDGMENT OF
<u>INFRINGEMENT, FOR CORRECTION OF INVENTORSHIP AND ON
INVALIDITY</u>**

**TABLE OF CONTENTS**

Preliminary Statement......................................................................................1

I.  RAYOVAC INFRINGES THE '328 PATENT........................................1

    A.  The Court Has Already Construed the Five Elements of Claim 11 of the'328 Patent.....................................................................................2

    B.  Rayovac's Products Meet All Five Elements of '328 Patent's Claim 11, And Therefore Infringes Braun's Patent.................................................3

        1.  The Cradle Structure Element Reads on Rayovac's Products...............3

        2.  The Feed Device Element Reads on Rayovac's Products.....................5

II.  INVENTORSHIP SHOULD BE CORRECTED IN THE '328 PATENT...........5

III.  THE '328 PATENT IS VALID AND ENFORCEABLE.............................8

    A.  The Prior Art Does Not Anticipate Claim 11 of the '328 Patent..................9

        1.  None of the Three Prior Art References Discloses the Cradle Structure Element of Claim 11...........................................................10

        2.  The Davies Patent Does Not Disclose the Feed Device Element of Claim 11..............................................................................10

        3.  The Davies Patent Does Not Disclose the Elevation of the Cradle Structure Element...........................................................11

        4.  The MeKiney and Maatz Patents Fail to Disclose the Drying Device Element..................................................................11

    B.  The '328 Patent Is Not Indefinite.................................................11

    C.  The '328 Patent Does Not Lack an Adequate Written Description............12

    D.  The '328 Patent Is Not Invalid For Inequitable Conduct........................13

        1.  There Is No Evidence That the Zeischke Thesis Was Material To the '328 Patent Or That Braun Had the Intent To Deceive The Patent Office......14

2.  There Is No Evidence That the Translation of the German Word "Aufnahmeteil" As "Cradle" Rather Than "Receptacle" Constitutes Inequitable Conduct..............................................................15

3.  The Disclosure of the French Patent Is Not Inequitable Conduct..........15

E.  The '328 Patent Is Not Invalid For Failure To Join An Inventor...............16

F.  The Best Mode Requirement Was Met..........................................16

Conclusion.......................................................................................17

## TABLE OF AUTHORITIES

Abbot Labs v. TorPharm, Inc., 300 F.3d 1367 (Fed. Cir. 2002)………...……………...9

Ajinomoto Co. v. Archer-Daniels-Midland Co., 228 F.3d 1338 (Fed. Cir. 2000)………..8

Akiebolag v. Wankesha Cutting Tools, Inc., 1 U.S.P.Q.2d 2002 (E.D. Wis. 1986) ……..7

Amhil Enters., Ltd. v. Wawa, Inc., 81 F.3d 1554 (Fed. Cir. 1996)………………………3

Atlas Powder Co. v. E.I. Du Pont de Nemours & Co., 588 F.Supp. 1455 (N.D. Tex. 1983)………………………………………………………………………………………18

Bruning v. Hirose, 161 F.3d 681 (Fed. Cir. 1998)………………………………………17

Chemcast Corp. v. Arco Indus. Corp., 913 F.2d 923 (Fed. Cir. 1990)…………………17

C.R. Bard, Inc. v. M3 Sys., Inc., 157 F.3d 1340 (Fed. Cir. 1998)………………………7,8

Dayco Prods., Inc. v. Total Containment, Inc., 329 F.3d 1358 (Fed. Cir. 2003)………..14

Engel Indus., Inc. v. Lockformer Co., 946 F.2d 1528 (Fed. Cir. 1991)…………………17

Honeywell, Inc. v. Minolta Camera Co., Nos. 87-4847, 88-1624, 1991 U.S. Dist. LEXIS 4222 (D. N.J. April 5, 1991)………………………………………………………………18

Izumi Prod. v. Koninklijke Philips Electronics N.V., Nos. 04-1418, 04-1423, 2005 WL 1606952 (Fed. Cir. Jul. 7, 2005)…………………………………………………………13

Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995)…………………2

MCV, Inc. v. King-Seely Thermos Co., 870 F.2d 1568 (Fed. Cir. 1989)………………...7

Neutrino Devel. Corp. v. Sonosite, Inc., 337 F.Supp.2d 937 (S.D. Tex. 2004) …………3

N.V. Akzo v. E.I. Du Pont de Nemours & Co., 810 F.2d 1148 (Fed. Cir. 1987)………..14

Panduit Corp. v. Dennison Mfg. Co., 810 F.2d 1561 (Fed. Cir. 1987)……………….....9

Pannu v. Iolab, 155 F.3d 1344 (Fed. Cir. 1998)……………………………...…………6,7

Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005)…………………………………12

Randomex v. Scopus Corp., 849 F.2d 585 (Fed. Cir. 1988)……………………………17

Stark v. Advanced Magnetics, Inc., 119 F.3d 1551 (Fed. Cir. 1997)……………………7

Tandon Corp. v. United States Int'l Trade Comm'n, 831 F.2d 1017 (Fed. Cir. 1987)....13

### *Preliminary Statement*

Plaintiff Braun GmbH ("Braun") brings three motions for partial summary judgment. Deposition testimony, expert reports, responses to written discovery, and marketing literature show:  first, that three of Rayovac Corporation's ("Rayovac") dry shaver cleaning products infringe at least claim 11 of Braun's United States Patent No. 5,711,328 (the "'328 Patent"); second, that Braun's Motion to Correct Inventorship should be allowed; and, third, that the '328 patent is valid and enforceable.  Rayovac can present no evidence, and has proffered no arguments, that raise a genuine issue of material fact as to any of Braun's motions.  Summary judgment is therefore appropriate.

## I.    **RAYOVAC INFRINGES THE '328 PATENT**

Claim 11 comprises five elements.  During discovery and the submission of expert reports, Rayovac has contested infringement by denying the accused products[1] meet two of them – the Cradle Structure Element[2] and the Feed Device Element[3] – while conceding the accused products meet the rest.  The undisputed evidence shows conclusively, however, that the accused products meet all of claim 11's elements.

### *Facts[4]*

In its deposition testimony and product literature, Rayovac describes how its accused products work.  The shaver and cleaning system "kind of go hand-in-hand."  May 5, 2005 Transcript of Deposition of James Chasen ("Chasen Dep.") at 52:5-6.  The operating manual

---

[1]  There are three accused products – a men's rotary cleaning system, a men's foil cleaning system, and a women's foil cleaning system.

[2]  The "Cradle Structure Element" is "a cradle structure adapted to receive a shaving head of a shaving apparatus." See '328 Patent, col. 14, lines 13-14.

[3]  The "Feed Device Element" is "a feed device for feeding cleaning fluid from said cleaning fluid container to said cradle structure."  See '328 Patent, col. 14, lines 16-17.

[4]  Braun files herewith its Local Rule 56.1 Statement of Undisputed Material Facts in Support of its Motion for Partial Summary Judgment of Infringement.  This section presents those facts that Braun considers most critical, as well as facts that will provide additional background.

instructs consumers to "[p]lace the shaver into the [cleaning] unit, head side down, and slide its 'tail' toward the 'neck' of the base until it clicks into place [in] . . . the cleaning base." See Declaration of Dalila Argaez Wendlandt in Support of Motion for Partial Summary Judgment of Infringement ("Wendlandt Decl."), Exhibit J at 8.[5] The "cleaning base" then supports the shaver while conducting a 25 minute "cleaning cycle." Id.

Specifically, in the men's rotary cleaning system, the three "pins" or ports in the fluid "manifold" and a "post in the bottom of the basin" support the shaving head. Chasen Dep. at 85-86. During the cleaning operation, the manifold and its ports receive and retains cleaning fluid and "inject[]" that fluid into the shaver head; the fluid then flows into the basin and eventually to the cleaning base, where it is stored. Id. at 85-86, 90.[6]

### *Argument*

#### A. The Court Has Already Construed The Five Elements Of Claim 11 Of The '328 Patent

The Court has already completed step one of the two-step summary judgment process. Markman v. Westview Instruments, Inc., 52 F.3d 967, 976, 979 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996) (holding that in deciding a summary judgment motion, the court first construes the claims as a matter of law, and then compares the construed claims to the accused product, which is a question of fact). The Court construed the first disputed element of claim 11 – the Cradle Structure Element – as a "structure adapted to support or receive a shaving head of a shaving apparatus and able to receive or retain fluid or both." Transcript of March 15, 2005 Hearing Before Judge Young ("Hearing Trans.") at 5, 11. The Court construed the second – the Feed Device Element – as "a mechanism that feeds cleaning fluid from the cleaning fluid container to the cradle structure," and declined to "put in the word directly." Id. at 14. Having

---

[5] Unless otherwise noted, all exhibits referenced in Section I are attached to the Wendlandt Decl., filed herewith.
[6] The operation of the men's and women's foil cleaning systems is, in all material respects, identical.

construed claim 11's elements, the Court must now determine only whether the accused products

infringe Braun's patent.  See, e.g., Neutrino Devel. Corp. v. Sonosite, Inc., 337 F.Supp.2d 937

(S.D. Tex. 2004) (trial court first issued claim construction, then awarded summary judgment for

literal infringement in separate opinion).

### B. Rayovac's Products Meet All Five Elements of the '328 Patent's Claim 11, And Therefore Infringes Braun's Patent

Braun's properly construed claim "reads on the accused device exactly." Amhil Enters.,

Ltd. v. Wawa, Inc., 81 F.3d 1554, 1562 (Fed. Cir. 1996) (Infringement occurs "when the

properly construed claim reads on the accused device exactly.").  Indeed, Rayovac has not

argued, nor proffered any evidence to suggest, that its products do not have three of claim 11's

five elements – "a cleaning fluid container," "said cradle being arranged above a fluid level of

the cleaning fluid in said cleaning fluid container during feed of said cleaning fluid to said

cradle," and "a drying device."[7]  The parties only disagree as to whether the Cradle Structure

Element and the Feed Device Element read on the accused devices.  Irrefutably, they do;

Rayovac's products plainly meet both elements, leaving no genuine issue of fact that would

entitle Rayovac to a trial.

### 1. The Cradle Structure Element Reads On Rayovac's Products

The accused products clearly contain a structure adapted to support or receive a shaving

head of a shaving apparatus and able to receive or retain fluid or both.  First, the Rayovac

cleaning systems admittedly contain a structure designed to support a shaving head of a shaving

apparatus.  The manifold 3a, ports 3b and supporting surfaces 3c receive and support the shaver

---

[7] It is undisputed, first, that each Rayovac cleaning system has a container for holding cleaning fluid.  Chasen Dep. at 86:14-17.  Secondly, in each Rayovac cleaning system, the cradle structure is above the cleaning fluid level in the cleaning fluid container during cleaning.  Chasen Dep. at 67-68 (discussing importance of cleaning fluid draining down at a certain rate).  In particular, the cradle structure 3a, 3b and 3c is located above the cleaning fluid level in the container 5 during the feeding of cleaning fluid.  Exhibits B (Figure 1a); C (Figure2a); D (Figure 3a).  Lastly, Rayovac's cleaning products have a drying device.  Chasen Dep. at 87:9-11.

head. See Exhibits B (Figure 1a); C (Figures 2a-c); D (Figures 3a-c); see also Declaration of Professor Samir Nayfeh In Support Of Braun GmbH's Motion For Partial Summary Judgment Of Infringement ("Nayfeh Decl.") at ¶9; Chasen Dep. at 85:21 – 86:12. Together, these components form the supportive part of the "cleaning base" that, as Rayovac puts it, the shaver head "clicks into." Exhibit J at 8.

Rayovac's expert asserts that the manifolds do not support the shaver head; rather, he claims that it is only the "exterior surfaces of the injection nozzles" (that is, ports 3b) and the supporting surfaces 3c that support the shaving head. Second Expert Report of Samuel R. Phillips ("Phillips 2nd Rep.") at ¶33. This strained distinction does not describe an actual difference. The manifold 3a, the ports 3b, and the supporting surfaces 3c together secure the shaver head in place when the consumer inserts the shaver into the cleaning system. See Nayfeh Decl. at ¶9. A "structure" includes not only the surfaces of that structure that make direct contact with the shaving head, but the whole structure in its entirety. See id. at ¶12. The ports are integrally formed with the manifold. Id. One of ordinary skill in the art would recognize that the manifold, ports, and supporting surfaces together constitute "a structure adapted to support or receive a shaving head of a shaving apparatus." See id. at ¶13.[8]

Moreover, the accused products' cradle is able to receive or retain fluid or both. Rayovac acknowledges that the pump in its accused device "circulate[s] the fluid from the lower housing to the manifold" during the cleaning operation. Chasen Dep. at 87:3-8. The manifold thus receives and/or retains fluid or both during cleaning. The ports 3b in the manifold also receive

---

[8] Indeed, as deposition testimony shows, that appears to be the understanding of James Chasen, the Rayovac engineer primarily responsible for developing the accused products. Chasen Dep. at 10. According to Mr. Chasen, the "pins" or ports, upon which the shaver head "rests," are "in the manifold." Id. at 86 (emphasis added). Together, Mr. Chasen testified, the manifold, ports and supporting surfaces form the "unit" that you "put it [the shaver head] into." Id. at 85. Mr. Chasen's understanding of the accused products' cradle structure as a single, supportive "unit" plainly refutes the contention of Rayovac's expert.

and/or retain fluid or both during cleaning since they receive fluid from the manifold throughout the cleaning process and then direct fluid to the shaving head.  See id.; Nayfeh Decl. at ¶9.  The first element of claim 11 thus reads on the accused products.

### 2.   The Feed Device Element Reads On Rayovac's Product

The accused products clearly contain a mechanism – a pump and conduit – that feeds cleaning fluid from the cleaning fluid container to the cradle structure.  See Nayfeh Decl. at ¶9.  As noted supra, Rayovac acknowledges that the accused products have a mechanism that feeds cleaning fluid from the cleaning fluid container to the manifold 3a and ports 3b.  See Chasen Dep. at 87:3-8.  Rayovac's expert attempts to differentiate its products only by asserting that the products do not contain a "cradle structure" and thus, no mechanism that feeds to a "cradle structure."  Phillips 2nd Rep. at ¶¶69-70, 47-48.  As discussed supra, however, the Rayovac products contain a cradle structure (consisting of manifold 3a, ports 3b, and supporting surfaces 3c).  Rayovac concedes that the cleaning center feeds fluid to the supporting manifold and ports during the cleaning operation.  Thus, the Court's construction of claim 11's third element precisely describes the accused products' operation. The third element of claim 11 thus reads on the accused products.

Because the accused products meet each element of claim 11, as construed by the Court, and because the complete overlap between the accused products and claim 11 does not raise a genuine issue of material fact, Braun is entitled to partial summary judgment.

## II.   INVENTORSHIP SHOULD BE CORRECTED IN THE '328 PATENT

Dr. Pahl has described his contributions to the invention in his declaration dated July 21, 2004, and in his deposition.[9]  See July 21, 2004 Declaration of Dietrich Pahl ("Pahl Decl.") ¶¶ 5-

---

[9]  Braun files herewith its Local Rule 56.1 Statement of Undisputed Material Facts in Support of its Motion for Partial Summary Judgment To Correct Inventorship.

18; April 28, 2005 Transcript of Deposition of Dietrich Pahl ("Pahl Dep."), 116:19 to 118:23;

120:11 to 121:5; 130:18-131:8; 128:17-20; 135:9-17; 128:21 to 129:4; 129:13-24; 137:5-21.  The

declaration and deposition of Gebhard Braun corroborate Dr. Pahl's testimony.  See July 14,

2004 Declaration of Gebhard Braun ("Braun Decl.") ¶¶5, 13; April 26, 2005 Transcript of

Deposition of Gebhard Braun ("Braun Dep. Vol. 1"), 50:24 to 51:20; 53:1-18; April 27, 2005

Transcript of Deposition of Gebhard Braun ("Braun Dep. Vol. 2"), 158:1-9.[10]  Dr. Pahl, as

Rayovac concedes, is an inventor of the '328 Patent.  See First Expert Report of Samuel R.

Phillips, PE ("Phillips 1st Rep.") ¶¶ 67-68.

A court may correct the omission of an inventor "upon a showing that the error occurred

without any deceptive intent on the part of the unnamed inventor."  Pannu v. Iolab, 155 F.3d

1344, 1350 (Fed. Cir. 1998).  Dr. Pahl had no deceptive intent when he omitted himself as an

inventor on the '328 Patent.  Dr. Pahl did not benefit from this omission – indeed, quite the

opposite.  He deliberately declined to take any credit for the invention.  Dr. Pahl's purposes were

thus entirely admirable; consistent with his general policy, he wished to motivate Mr. Braun to

take ownership of the cleaning device project.  See Pahl Decl. ¶23; see also Pahl Dep., 116:23 to

117:24, 121:2-4, 127:22 to 128:16.  And, Dr. Pahl did not want his position as the "boss" to

influence decisions by Braun as to whether to invest the resources to commercialize the product.

See Pahl Decl. ¶23.  Accordingly, the internal invention disclosure named Mr. Braun as the sole

inventor.  See Braun Decl. ¶7, Exhibits A & B.

Other facts reveal Dr. Pahl's lack of deceptive intent and indicate that it is appropriate to

correct inventorship.  Dr. Pahl understood that, under German law, a patent is not rendered

invalid by incomplete disclosure of the inventors.  See Pahl Decl. ¶25.  Dr. Pahl was not familiar

---

[10]  The exhibits cited in Section II are included in the Declaration of Dalila Argaez Wendlandt In Support Of Braun GmbH's Motion For Partial Summary Judgment To Correct Inventorship ("Wendlandt Decl. 2"), filed herewith.

with the inventorship disclosure requirements of U.S. patent law.  Id. at ¶¶25-26; see also Pahl

Dep., 129:5-10 and 139:6-8.  Further, Mr. Braun does not object to the correction of inventorship

on the '328 Patent.  See Braun Decl. ¶13.  Braun, the assignee of the '328 Patent, also does not

object.  See July 8, 2004 Declaration of Wolfgang Vorbeck ("Vorbeck Decl.") ¶4.  And,

Rayovac has acknowledged that Dr. Pahl is a coinventor.

Summary judgment is appropriate in a patent case to correct inventorship.  See Stark v.

Advanced Magnetics, Inc., 119 F.3d 1551, 1553 (Fed. Cir. 1997) ("Section 256 permits

correction by application to the Commissioner or in federal court.").  It is particularly appropriate

here, since the named inventor (Mr. Braun), the nonjoined inventor (Dr. Pahl), the assignee

(Braun), and Rayovac agree that Dr. Pahl is a coinventor.  See MCV, Inc. v. King-Seeley

Thermos Co., 870 F.2d 1568, 1570 (Fed. Cir. 1989) (Section 256 "prescribes only one

prerequisite to judicial action:  all parties must be given notice and an opportunity to be heard.")

The Federal Circuit has directed that, when determining the intent of an omitted inventor,

"good faith is presumed in the absence of a persuasive showing of deceptive intent."  Pannu, 155

F.3d at 1350, n.4; see, e.g., C.R. Bard, Inc. v. M3 Sys., Inc., 157 F.3d 1340, 1365 (Fed. Cir.

1998) (finding of lack of deceptive intent where "evidence points to good faith").  Moreover,

deceptive intent is lacking in instances where there is no "attempt to purloin another's invention,

to misstate the true state of the art to advance their application, to obtain a more favorable filing

date, or to conceal material facts and circumstances going to the patentability of the claimed

invention."  Akiebolag v. Wankesha Cutting Tools, Inc., 1 U.S.P.Q. 2d 2002, 2004 (E.D. Wis.

1986).

Importantly, the Federal Circuit has held that foreign inventors did not act with deceptive

intent when they acted "in ignorance of United States [patent law] requirements."  See, e.g.,

Ajinomoto Co. v. Archer-Daniels-Midland Co., 228 F.3d 1338, 1344 (Fed. Cir. 2000) (rejecting defense of inequitable conduct even though not all Russian inventors were named because there is no deceptive intent when "the inventors authorized others to sign the documents in ignorance of United States requirements."); see also C.R. Bard, Inc., 157 F.3d at 1353 (affirming correction of inventorship where omission of inventor "was due to differences between United States and Swedish patent law").

Here, Dr. Pahl's omission on the '328 Patent occurred without deceptive intent. In particular, as in C.R. Bard, Dr. Pahl's omission occurred as a result of a misunderstanding of the requirements of U.S. patent law. Those requirements differ from German law, which holds that the failure to name an inventor does not affect a patent's validity. All of the evidence thus "points to good faith." C.R. Bard, 157 F.3d at 1365. Dr. Pahl did not attempt to purloin another's invention, did not act to misstate the true state of the prior art, and did not conceal material facts going to patentability of the claimed invention. Instead, because inventorship is immaterial to the validity of a German patent, Dr. Pahl approved the naming of Mr. Braun as the sole inventor on Braun's internal invention disclosure to foster inventiveness and to encourage Mr. Braun. Braun should not be penalized for Dr. Pahl's generosity. His decision not to come forward with his role in the invention at the time Braun's internal Patent Department received Mr. Braun's internal disclosure statement does not constitute deceptive intent.[11]

## III.    THE '328 PATENT IS VALID AND ENFORCEABLE

In its answer and expert reports, Rayovac exhausts Chapter 35 of the United States Code and the Code of Federal Regulations to create a laundry list of grounds that purportedly

---

[11] In any event, the omission of Dr. Pahl did not cause the examiner to take favorable action he might not otherwise have taken. The patent would have been assigned to Braun, regardless.

invalidates Braun GmbH's ("Braun") U.S. Patent No. 5,711,328 (the "'328 Patent"). In particular, Rayovac asserts that the '328 Patent is invalid on the following grounds: (1) anticipation of claim 11; (2) indefiniteness; (3) lack of an adequate written description; (4) inequitable conduct for improper introduction of new matter and failure to bring a thesis (the "Zeischke thesis") to the attention of the patent office; (5) failure to join an inventor; and (6) failure to disclose the best mode.

Each ground must be considered in light of the following principles: The '328 Patent, like all issued patents, is presumed to be valid and this presumption extends ". . . to all of the many bases for challenging a patent's validity." Panduit Corp. v. Dennison Mfg. Co., 810 F.2d 1561, 1570 (Fed. Cir. 1987); 35 U.S.C. 5282. Accordingly, Rayovac has the burden of proof on its defenses, and, on a motion for summary judgment, it must offer evidence from which a reasonable trier of fact could find invalidity by clear and convincing evidence. See, e.g., Abbott Labs v. TorPharm, Inc., 300 F.3d 1367, 1379 (Fed. Cir. 2002). This, Rayovac cannot do. Its defenses are numerous, but none are meritorious.

***Arguments***

## A. THE PRIOR ART DOES NOT ANTICIPATE CLAIM 11 OF THE '328 PATENT

Rayovac asserts that three prior art patents – the MeKiney Patent, the Davies Patent and the Maatz Patent,[12] anticipate claims 11 of the '328 Patent. In order to anticipate a patent claim, a single prior art reference must disclose each and every element of the claimed invention.

---

[12] The MeKiney Patent is U.S. Patent No. 3,365,267. The Davies Patent is U.S. Patent No. 3,478,758. And, the Maatz Patent is U.S. Patent No. 3,500,840.

Linderman Maschinenfabrik GmbH v. Am. Hoist & Derrick Co., 730 F.2d 1452, 1458 (Fed. Cir.

1984).  None of the prior art references disclose each and every element of claim 11.[13]

### 1.    None Of The Three Prior Art References Discloses The Cradle Structure Element Of Claim 11

The first element of claim 11 of the '328 Patent is "a cradle structure adapted to receive a

shaving head of a shaving apparatus."  See '328 Patent, col. 14, lines 13-14.  The Court

construed this element as a "structure adapted to support or receive a shaving head of a shaving

apparatus and able to receive or retain fluid or both."  Hearing Trans. at 5, 11.  As discussed in

greater detail in the Declaration of Professor Samir Nayfeh In Support Of Braun GmbH's Motion

For Partial Summary Judgment On Invalidity ("Nayfeh Decl. 2"), each of the references

discloses a sterilizing apparatus for barber tools, including the cutter blades disassembled from

hair clippers used by barbers.  None of the prior art references discloses the claimed cradle

structure -- that is, a structure that receives or supports the shaving head of a shaving apparatus.

See Nayfeh Decl. 2 at ¶¶7-10, 17-20, 31-33.

### 2.    The Davies Patent Does Not Disclose The Feed Device Element Of Claim 11

The third element of claim 11 is "a feed device for feeding cleaning fluid from said

cleaning fluid container to said cradle structure."  See '328 Patent, col. 14, lines 16-17.  The

Court has construed this element as "a mechanism that feeds cleaning fluid from the cleaning

fluid container to the cradle structure."  Hearing Trans. at 14.

The Davies Patent does not disclose this feed device element.  Instead, in the Davies

device, fluid is fed manually to the cleaning device through a tap and hose.  See Davies Patent,

---

[13]  Braun files herewith its Local Rule 56.1 Statement of Undisputed Material Facts in Support of its Motion for Partial Summary Judgment On Invalidity.  The Exhibits cited in Section III are included in the Declaration of Dalila Argaez Wendlandt In Support of Braun GmbH's Motion For Partial Summary Judgment On Invalidity ("Wendlandt Decl. 3").

col. 4, lines 66-69, col. 5, lines 4-6. There is no mechanism that feeds fluid from the cleaning

fluid container to the cradle structure (which, as stated above, is not even disclosed in the Davies

patent). Therefore, the Davies Patent does not disclose the claimed feed device element and does

not anticipate claim 11. See Nayfeh Decl. 2 at ¶¶25-28.

### 3. The Davies Patent Does Not Disclose The Elevation Of The Cradle Structure Element

The fourth element of claim 11 is "said cradle structure being arranged above a fluid

level of the cleaning fluid in said cleaning fluid container during the feeding of said cleaning

fluid to said cradle structure." See '328 Patent, col. 14., lines 17-20. The Court construed this

element to require that "during the feeding of said cleaning fluid to said cradle structure, the

cradle structure is above the fluid level of the fluid in [the cleaning fluid] container." Hearing

Trans. at 16-17.

The Davies Patent does not disclose this element. Specifically, during the feeding

operation the cleaning fluid "level rises above the . . . tray." Davies Patent, col. 4, lines 74-75.

Therefore, the Davies Patent does not disclose the claimed elevation of the cradle structure

relative to the cleaning fluid level in the cleaning fluid container during feeding. See Nayfeh

Decl. 2 at ¶¶25-27. Thus, the Davies Patent does not anticipate claim 11.

### 4. The MeKiney And Maatz Patents Fail to Disclose The Drying Device Element

The final element of claim 11 is "a drying device," see '328 Patent, col. 14, line 23, for

which the Court has adopted a literal construction – a "drying device of some sort." Hearing

Trans. at 16. The MeKiney and Maatz Patents do not disclose a drying device. In both devices,

the tools drip dry. See MeKiney Patent, col. 4, lines 12-14; Maatz Patent, col. 3, lines 26-30;

Nayfeh Decl. 2 at ¶¶11-13, 34-36.

- 11 -

## B. THE '328 PATENT IS NOT INDEFINITE

Rayovac asserts that the "cradle structure" element of the asserted claims of the '328 Patent are "indefinite" because, according to Rayovac's expert, the Court's construction "does not distinguish the structures that Braun argued were not 'cradle structures' that met the limitations in the patent[s]." Phillips 1st Rep. at ¶49.

The argument is simply incorrect. During prosecution of the '328 Patent and U.S. Patent No. 5,649,556 (the "'556 Patent"), Braun distinguished certain prior art on the ground that it was not a cradle adapted to receive a shaving head, but rather painting equipment (the Schinn Patent, U.S. Patent No. 4,815,486), or automobile parts (the Lee Patent, U.S. Patent No. 3,890,988). See Wendlandt Decl. 3, Exhibit D at B000096, B000103. The Cunningham Patent was distinguished because the wire basket that held eyeglasses and dentures is submerged rather than being above the cleaning fluid container as required by the patents in suit. Exhibit C at B000335. None of this prior art is captured by the Court's construction of the '328 Patent. As such, Rayovac's indefiniteness defense should be stricken.

## C. THE '328 PATENT DOES NOT LACK AN ADEQUATE WRITTEN DESCRIPTION

Rayovac's expert argues that the '328 Patent lack adequate written description for the cradle structure as construed by the Court because the preferred embodiment of the patent is a cradle that receives and retains cleaning fluid during the cleaning operation, rather than one that receives or retains cleaning fluid. See Phillips 1st Report at ¶¶50-54. In doing so, he ignores well-settled law holding that limitations from the preferred embodiment should not be read into the claims. Phillips v. AWH Corp., 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc) ("[W]e have repeatedly warned against confining the claims to [specific] embodiments.") (citations omitted).

Limiting the claim by the preferred embodiment would also violate the doctrine of claim differentiation. See Izumi Prod. v. Koninklijke Philips Electronics N.V., Nos. 04-1418, 04-1423, 2005 WL 1606952, at *11 (Fed. Cir. Jul. 7, 2005) ("Under the doctrine of claim differentiation, '[t]here is presumed to be a difference in meaning and scope when different words or phrases are used in separate claims.'") (quoting Tandon Corp. v. United States Int'l Trade Comm'n, 831 F.2d 1017, 1023 (Fed. Cir. 1987)).  In particular, claim 1 of the '328 Patent is directed to a cradle structure with an outlet port.  Claim 2 then requires that the outlet port "is dimensioned such that during the cleaning operation the amount of cleaning fluid drained through the outlet port is smaller than the amount of cleaning fluid supplied to the cradle structure by the feeding device." See '328 Patent, col. 13, lines 37-42.  Depending on the dimension of the outlet port, claim 1 includes a structure that cannot retain fluid.  If, as Rayovac argues, one of ordinary skill in the art would understand the cradle structure to be limited to structures that receive and retain cleaning fluid, then the further limitation of claim 2 would be superfluous.

### D.  THE '328 PATENT IS NOT INVALID FOR INEQUITABLE CONDUCT

Rayovac's inequitable conduct defense is rooted in three misconceptions.  First, that the Zeischke thesis[14] was material to the issue of patentability.  See Rayovac's First Amended Answer And Counterclaim To the Amended Complaint at ¶44.  Second, that the translation of the German word "aufnahmeteil" in the original German priority application to "cradle" rather than to "receptacle" involved the addition of new matter and therefore inequitable conduct.  See Phillips 1st Rep. at ¶¶56-58.  And, third, that the translation of an edited version of the original German priority application, which contained a description of a French prior art reference, was known to the inventor and/or their counsel and that the translation of the edited version amounts

---

[14] The Zeischke thesis is a June 14, 1991 thesis written by Stefan Zeischke, a Diplom degree candidate at the University of Applied Sciences of Frankfurt am Main, who interned at Braun.  Wendlandt Decl. 3, Exhibits Y & Z.

to the addition of new matter and therefore inequitable conduct. See id. at ¶59.  None of these

grounds is valid; the defense should be stricken.

      To establish materiality, Rayovac must show that "'a reasonable examiner would have

considered such prior art important in deciding whether to allow the parent application" or that

the information "establishes either 'a prima facie case of unpatentability' or 'refutes or is

inconsistent with a position the applicant takes.'"  Dayco Prods., Inc. v. Total Containment, Inc.,

329 F.3d 1358, 1363-64 (Fed. Cir. 2003)(citations omitted).  Intent must also be established by

clear and convincing evidence.  And, a greater evidentiary showing of intent will be required

where the omitted information is less material.  See, e.g., N.V. Akzo v. E. I. Du Pont de Nemours

& Co., 810 F.2d 1148, 1153 (Fed. Cir. 1987) (internal citations omitted).

      **1.**    **There Is No Evidence That The Zeischke Thesis Was Material To The '328 Patent Or That Braun Had The Intent To Deceive The Patent Office**

      There is no evidence that the Zeischke thesis was either material or omitted with an intent

to deceive the PTO.  The Zeischke thesis discloses a cleaning system for shavers employing

brushes and a vacuum.  See Phillips 1st Rep. at ¶156; Wendlandt Decl. 3, Exhibit Y & Z.  The

thesis is not material information because it was cumulative of prior art already before the

examiner, not as significant as the prior art already before the examiner, and not relevant to the

claimed invention.  In particular, the thesis is cumulative of a prior art reference – French Patent

No. 2,568,111 (the "French Patent")[15] – already disclosed in the specification of the '328 Patent.

Moreover, the '328 Patent does not claim a cleaning system using a vacuum or suction or even

---

[15] See Wendlandt Decl. 3, Exhibits H & I.

brushes. Thus, the Zeischke thesis was not relevant to those claims and thus not material to patentability.[16]

Further, there is not a scintilla of evidence that the Mr. Braun or his counsel intended to deceive the PTO by not disclosing the Zeischke thesis to the patent office. Indeed, Mr. Braun – the named inventor – was not aware of the Zeischke thesis at the time the patent was prosecuted. See Braun Dep. Vol. 2 at pp. 178-179.

### 2. There Is No Evidence That The Translation Of The German Word "Aufnahmeteil" As "Cradle" Rather Than "Receptacle" Constitutes Inequitable Conduct

Rayovac next contends that the translation of the German word "aufnahmeteil" in the original German priority application to "cradle" rather than to "receptacle" involved the addition of new matter and therefore inequitable conduct. See Phillips 1st Rep. at ¶¶56-58. Rayovac absurdly contends that there is a difference between a "receptacle" and a "cradle" because, according to Rayovac, receptacles receive and retain fluid, while cradles can either receive or retain fluid. Id. The argument is baseless. See Nayfeh Decl. 2 at ¶75 (noting that to one of ordinary skill in the art, there is no such difference between a receptacle and a cradle). The Court should strike Rayovac's inequitable conduct defense based on the translation of the German word "aufnahmeteil."

### 3. The Disclosure Of The French Patent Is Not Inequitable Conduct

Rayovac further contends that the translation of an edited version of the original German priority application, which contained a description of the French Patent, was known to the named inventor and/or their counsel and that the translation of the edited version amounts to the

---

[16] Rayovac's expert asserts mistakenly that the Zeischke thesis discloses brackets for holding a shaver in place. Claim 18 of the '328 Patent includes a bracket. As discussed by Professor Nayfeh, however, the Zeischke thesis discloses only two distinct "park positions," which are not brackets and do not hold the shaver in position for cleaning. See Nayfeh Decl. 2 at ¶76-77.

addition of new matter and therefore inequitable conduct. See Phillips 1st Rep. at ¶59.

Rayovac's argument turns the duty of disclosure on its head. In this case, there was no material

omission; instead, Braun disclosed more prior art in its U.S. patent application than in its German

patent application.[17] To hold that such disclosure violates the duty of disclosure is nonsensical.

Thus, the Court should strike Rayovac's inequitable conduct defense based on the disclosure of

the French Patent.

### E. THE '328 PATENT IS NOT INVALID FOR FAILURE TO JOIN AN INVENTOR

Rayovac's next invalidity defense concerns inventorship. While Rayovac concedes that

Dr. Pahl is a co-inventor of the '328 Patent, it contends that Norbert Smetana, an engineer who

assisted Mr. Braun in the development of the geometry of the drying device for the cleaning

center, and Helmut Kraus, a regulator with the VDE – the German regulatory agency comparable

to Underwriters Laboratories, Inc. – are also co-inventors. See Phillips 1st Rep. at ¶¶ 67-80. The

undisputed facts, however, do not support Rayovac's claim.

Mr. Smetana has denied that he was a co-inventor, and the "heater" element that Rayovac

ascribes to him was already present in the original prototype of the invention. See April 29,

2005 Transcript of Deposition of Norbert Smetana ("Smetana Dep.") at 48:23 through 49:19;

Pahl Dep. at 110:5-11; 148:10-12; 197:17 through 198:7; Nayfeh Decl. 2 at ¶ 65-69. Mr. Kraus

simply pointed out the safety requirement of an interlock. Mr. Braun was already aware of the

need and designed a particular interlock. See Braun Dep. Vol. 1 at 75:18 through 77:9; Pahl

Dep. 111:9-18; Nayfeh Decl. 2 ¶ 70-73.

---

[17] The addition of the French Patent to the original German patent application was made at the request of the German Patent Office. See Vorbeck Dep. at 71:21 through 72:12 (rough draft). When the U.S. application was filed, Braun inadvertently sent the edited German application to be translated. See id. at 60:1 through 61:6 and 69:18 through 70:5 (rough draft). As a result, the translation of the German priority application submitted to the PTO contained a discussion of the French Patent. There is no evidence that Mr. Braun or his counsel committed this clerical error in a deliberate attempt to deceive the PTO.

## F.  THE BEST MODE REQUIREMENT WAS MET

Rayovac next contends that the '328 Patent is invalid for failure to disclose the composition of the cleaning fluid used by the original inventors in their prototype device; and that this alleged failure violates the best mode requirement.

As an initial matter, the claims of the '328 patent are directed to <u>cleaning devices</u> for cleaning the shaving head of a dry shaver apparatus and are not directed to an improved <u>cleaning fluid</u> for such devices.  Such unclaimed subject matter is generally "not subject to the disclosure requirements of § 112," including the best mode requirement.  <u>Engel Indus., Inc. v. Lockformer Co.</u>, 946 F.2d 1528, 1531 (Fed. Cir. 1991); <u>see also</u> <u>Randomex v. Scopus Corp.</u>, 849 F.2d 585, 590 (Fed. Cir. 1988) (An invention directed to portable computer disk cleaning apparatus "neither added nor claimed to add anything to the prior art respecting cleaning fluid.").

Of course, inventors are not required to have a "best mode" and the inventors of the '328 patent, Mr. Gerhard Braun and Dr. Dietrich Pahl, have testified that they did not have in mind any particular composition of cleaning fluid.  <u>See</u> Braun Dep. Vol. 1 at 87:8 through 88:4; Pahl Dep. at 168:23 through 169:7; 165:16-24; 166:12-16.  There is simply no evidence, let alone clear and convincing evidence, that the inventors knew of and concealed what they considered to be a superior mode of carrying out the invention than what they disclosed in the specification.  <u>See</u> <u>Chemcast Corp. v. Arco Indus. Corp.</u>, 913 F.2d 923, 927-28 (Fed. Cir. 1990).  Additionally, given that the cleaning fluid composition was continually being optimized after the U.S. application was filed[18] and in light of the express disclosure that the cleaning fluid be "fat dissolving," there can be no best mode violation.  <u>See</u> <u>Bruning v. Hirose</u>, 161 F.3d 681, 687 (Fed. Cir. 1998) (holding no best mode violation when at time of filing, inventor knew several

---

[18] <u>See</u> May 12, 2005 Deposition of Juergen Hoeser ("Hoeser Dep. Vol. 2) at 192:12 through 193:16.

details of design being developed by independent manufacturer, but design underwent testing

and modification after filing date).[19]

### *Conclusion*

WHEREFORE, partial summary judgment should be entered that the accused products

infringe claim 11 of the '328 Patent.  Partial summary judgment should also be entered,

correcting the inventorship of the '328 Patent to add Dr. Pahl as a coinventor and striking

Rayovac's affirmatives defenses of obviousness and anticipation with respect to claim 11 of the

'328 patent, indefiniteness, lack of adequate written description, inequitable conduct, failure to

join an inventor, and failure to disclose the best mode.

Braun GmbH

By its attorneys,

/s/ Dalila Argaez Wendlandt
William L. Patton (BBO #391640)
Dalila Argaez Wendlandt (BBO #639280)
Dalila.Wendlandt@ropesgray.com
 ROPES & GRAY
 One International Place
 Boston, MA  02110
 Telephone:  (617) 951-7000
 Facsimile:  (617) 951-7050

Stanley D. Liang (admitted *Pro Hac Vice*)
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY 10021

August 24, 2005

---

[19] See also Atlas Powder Co. v. E.I. Du Pont de Nemours & Co., 588 F. Supp. 1455, 1467 (N.D. Tex. 1983) ("[the inventor] had not decided on a single preferred formulation at the time the patent was filed, but rather believed that there were a number of characteristics that contributed to an effective explosive. He put examples in his patent to demonstrate these characteristics... Failure to cite the marketed version ... did not violate the best mode requirement . . .")(citation omitted), aff'd, 750 F.2d 1569, (Fed. Cir. 1984); Honeywell, Inc. v. Minolta Camera Co., No. 87-4847, 88-1624, 1991 U.S. Dist. LEXIS 4222, at *16-18 (D. N.J. April 5, 1991) (determining evidence insufficient to show inventor was aware of so-called best mode because testing was incomplete at the time of filing)