**FACT NO. 82**

Dr. Nayfeh asserts that "Dr. Pahl testified that he conceived of a cleaning system wherein liquid was not retained by the cradle, but was flushed through the shaver head." (Ex. J, Second Nayfeh Report, at 27.)

**RESPONSE TO FACT NO. 82**

Undisputed. It should be noted that the Second Nayfeh Report is Rayovac Ex. 15.

**FACT NO. 83**

Dr. Pahl never testified that he conceived of a cleaning system in which fluid is flushed through the shaver head. (Ex. J, Pahl Dep., at 80-81.)

**RESPONSE TO FACT NO. 83**

Braun disputes Rayovac's Fact No. 83 because Rayovac misrepresents the facts. Dr. Pahl testified that: "[l]et's put that way we once considered whether we could spray the stuff in" (Rayovac Ex. J, Pahl Dep., at 80:5-6). Thus, it is undisputed that he conceived such an embodiment of his invention.

**FACT NO. 84**

Regardless of how cleaning fluid reaches the "cradle structure" in the '328 patent (be it pumping or spraying), it is essential that the "cradle structure" retain cleaning fluid for the cleaning device to work. (Ex. J, Pahl Dep., at 80-81.)

**RESPONSE TO FACT NO. 84**

Braun disputes Rayovac's Fact No. 84 because Rayovac distorts the facts. The specification of the '328 patent describes embodiments of the invention in which the cradle structure does not retain fluid (the '328 patent at col. 2, lines 56-66). Moreover, claim 1 of the patent (as well as the original claim 1 of the '328 patent application) also describes a cradle structure that can receive or retain cleaning fluid or both.

**FACT NO. 85**

Dr. Nayfeh does not disagree with Mr. Phillips' opinion that the '328 patent does not describe a "cradle structure" that receives (but does not retain) cleaning fluid. (Ex. 15, Second Nayfeh Report.)

**RESPONSE TO FACT NO. 85**

Braun disputes Rayovac's Fact No. 85 because Rayovac misrepresents the facts. In his Second Report, Professor Nayfeh disagrees with Mr. Phillips's opinion that the Court's construction of a cradle structure as a structure adapted to support or receive a shaving head of a shaving apparatus and able to receive or retain fluid or both is inconsistent with the written description of the '328 patent. (Rayovac Ex. 15, Second Nayfeh Report at pp. 26-28). Professor Nayfeh notes that the preferred embodiment of the invention includes a cradle structure that receives and retains cleaning fluid, but notes that, depending on the dimension of the outlet port to the cradle structure, the cradle structure could receive or retain cleaning fluid. Professor Nayfeh notes further that claim 2 of the patent (which corresponds to claim 9 of the originally filed application) includes the limitation that the outlet port be dimensioned such that cleaning fluid is retained in the cleaning fluid. Such a limitation would be superfluous if the cradle structure included only those structures that received and retained cleaning fluid.

**FACT NO. 86**

The '328 patent was filed in January 1995. (Ex. 1, '328 patent.)

**RESPONSE TO FACT NO. 86**

It is undisputed that United States patent application no. 08/376,849, which issued as the '328 patent, was filed in January 1995.

**FACT NO. 87**

Dependent claim 2 of the '328 patent depends from independent claim 1. (Ex. 1, '328 patent.)

**RESPONSE TO FACT NO. 87**

Undisputed.

**FACT NO. 88**

Unasserted dependent claim 2 provides: "A device as claimed in claim 1, wherein a cross-sectional area of the outlet port is dimensioned such that during the cleaning operation the amount of cleaning fluid drained through the outlet port is smaller than the amount of cleaning fluid supplied to the cradle structure by the feeding device." (Ex. 1, '328 patent.)

**RESPONSE TO FACT NO. 88**

Undisputed.

**FACT NO. 89**

Braun amended dependent claim 2 — application claim 9 — of the '328 patent during prosecution of the '328 patent. (Ex. 23, '328 patent prosecution history, 6/24/96 Response.)

**RESPONSE TO FACT NO. 89**

Undisputed. The facts recited in "Rayovac's Fact No. 89" are not material

to the issues that are the subject of Rayovac's motions for partial summary judgment.

This is so because during prosecution of the application that issued as the '328 patent, the

Patent Office did not object to this amendment to application claim 9 (issued claim 2) of

the '328 as not being supported by the written description.

**FACT NO. 90**

Braun amended claim 1 of the '328 patent during prosecution. (Ex. 24, '328 patent prosecution history, 8/14/97 Response.)

**RESPONSE TO FACT NO. 90**

Undisputed. The facts recited in "Rayovac's Fact No. 90" are not material

to the issues that are the subject of Rayovac's motions for partial summary judgment.

**FACT NO. 91**

Mr. Phillips has opined that the '328 patent is indefinite pursuant to 35 U.S.C. § 112, ¶ 2. (Ex. A, First Phillips Report, at ¶¶ 41-49.)

**RESPONSE TO FACT NO. 91**

The facts recited in "Rayovac's Fact No. 91" are not material to the issues that are the subject of Rayovac's motions for partial summary judgment, as Mr. Phillips, Rayovac's technical expert, has not been shown to be competent to render a legal opinion.

**FACT NO. 92**

It is Mr. Phillips' opinion that one of ordinary skill in the art could not reconcile the Court's tentative claim construction with the '328 patent prosecution history. (Id., at ¶¶ 41, 42, 49.)

**RESPONSE TO FACT NO. 92**

Undisputed.

**FACT NO. 93**

Mr. Phillips has opined that the Court's construction of the "cradle structure" limitation should be modified to read "a structure adapted to support or receive a shaving head of a shaving apparatus and able to receive and retain fluid." (Ex. B, Second Phillips Report, at ¶ 32, n. 4.)

**RESPONSE TO FACT NO. 93**

Undisputed, except the correct citation to the Second Phillips Report is ¶ 27 and ¶ 66.

**FACT NO. 94**

In its *Markman* Briefing, Braun relied upon a definition of the word "cradle" in the McGraw-Hill Dictionary of Scientific and Technical Terms.

**RESPONSE TO FACT NO. 94**

Disputed. The facts recited in "Rayovac's Fact No. 94" are not material to the issues that are the subject of Rayovac's motions for partial summary judgment. It is undisputed that Braun <u>cited</u> such a definition in that Dictionary, among other things, in support of its construction of the claim element -- a cradle structure adapted to receive a shaving head of a shaving apparatus. It is also undisputed that in its *Markman* Briefing,

Braun also relied on, among other things, the intrinsic evidence (the specification and the prosecution history) in support of its construction of this claim element.

**FACT NO. 95**

In the '328 patent, the cradle (7) is referred to as the "wet portion." (Ex. 1, '328 patent, at col. 6, ll. 29-30.)

**RESPONSE TO FACT NO. 95**

Braun disputes Rayovac's Fact No. 95 because Rayovac distorts the facts. The specification of the '328 patent does describe this element in the context of a preferred embodiment of this invention in such a manner.

**FACT NO. 96**

In the '328 patent, the cradle includes an overflow device (26) which prevents fluid from exceeding a defined level and ensures that the shaving head is immersed in cleaning fluid. (Ex. 1, '328 patent, at col. 6, ll. 35-38.)

**RESPONSE TO FACT NO. 96**

Braun disputes Rayovac's Fact No. 96 because Rayovac distorts the facts. The specification of the '328 patent does describe this element in the context of a preferred embodiment of this invention in such a manner.

**FACT NO. 97**

In the '328 patent, the outlet port is dimensioned such that the "cradle," when supplied with cleaning fluid from the pump, is at all times filled to the rim during the cleaning operation. (Ex. 1, '328 patent, at col. 6, ll. 44-50.)

**RESPONSE TO FACT NO. 97**

Braun disputes Rayovac's Fact No. 97 because Rayovac distorts the facts. The specification of the '328 patent does describe this element in the context of a preferred embodiment of this invention in such a manner.

## Anticipation[1]

### FACT NO. 98

Braun has asserted that the '328 patent was conceived and reduced to practice in the 1992-93 time frame. (Ex. 8, Braun Response to Rayovac Interrogatory No. 2.)

### RESPONSE TO FACT NO. 98

It is undisputed that Braun has stated that claim 11 and 14 of the '328 patent were conceived on or before November 1992 and reduced to practice on or before November 1992 and claim 18 of the '328 patent was conceived on or before July 22, 1993 and reduced to practice on or before July 22, 1993.

### FACT NO. 99

U.S. Patent No. 3,365,267 ("the MeKiney Patent") issued on January 23, 1968. (Ex. 5, '267 patent.)

### RESPONSE TO FACT NO. 99

Undisputed. The facts recited in "Rayovac's Fact No. 99" are not material as the MeKiney Patent does not disclose at least the following elements of claim 11 of the '328 patent: "a cradle structure adapted to receive a shaving head of a shaving apparatus," and "a drying device" and is thus not anticipatory prior art to that claim.

---

[1] Rayovac initially submitted four motions for partial summary judgment. The memoranda in support of those motions exceeded the twenty (20) page limit allowed by the Local Rules. Rayovac subsequently submitted two memoranda in support of its motions on the issues of written description and inventorship/inequitable conduct. Braun understands that Rayovac has withdrawn is motions with regard to the issues of price erosion, the doctrine of equivalents, and anticipation. Thus, Braun does not understand that any of Rayovac's asserted facts with regard to its "anticipation" argument are material to any of its pending motions. Nonetheless, to preserve its rights, Braun submits the following responses to those facts.

**FACT NO. 100**

Mr. Phillips has opined, and Dr. Nayfeh does not disagree that the MeKiney Patent discloses many elements of claim 11 of the '328 patent. (Ex. A, First Phillips Report, at ¶¶ 1-2-108; Ex. 15, Second Nayfeh Report; Ex. C, Third Phillips Report, at ¶¶ 90-96.)

**RESPONSE TO FACT NO. 100**

Disputed. Dr. Nayfeh did not agree that the MeKiney Patent discloses

many elements of claim 11 of the '328 patent (Ex. 15, Second Nayfeh Report). Rather, it

is undisputed that Dr. Nayfeh opines that the MeKiney Patent does not disclose every

element of claim 11 of the '328 patent (Rayovac's Ex. 15, Second Nayfeh Report at pp.

1-4). It should noted that the correct citation to the First Phillips Report should at ¶¶ 102-

108.

**FACT NO. 101**

The MeKiney Patent discloses a "cleaning fluid container," as tentatively construed by the Court. (Ex. 5, '267 patent, at col. 2, 1. 43, Figs. 1 & 3; Ex. A, First Phillips Report, at ¶ 105.)

**RESPONSE TO FACT NO. 101**

Undisputed. The facts recited in "Rayovac's Fact No. 101" are not

material as the MeKiney Patent does not disclose at least the following elements of claim

11 of the '328 patent: "a cradle structure adapted to receive a shaving head of a shaving

apparatus," and "a drying device" and is thus not anticipatory prior art to that claim.

**FACT NO. 102**

The MeKiney Patent discloses a "feed device for feeding cleaning fluid from said cleaning fluid container to said cradle structure," as tentatively construed by the Court. (Ex. 5, '267 patent, at Figs. 1 & 3; Ex. A, First Phillips Report, at ¶ 106.)

**RESPONSE TO FACT NO. 102**

Disputed. Dr. Nayfeh opined that the MeKiney Patent does not disclose at

least the following elements of claim 11 of the '328 patent: "a cradle structure adapted to

receive a shaving head of a shaving apparatus," and "a drying device" (Rayovac Ex. 15,

Second Nayfeh Report at p. 2).

The alleged "facts" recited in "Rayovac's Fact No. 102" are not material

as the MeKiney Patent does not disclose every element of claim 11 of the '328 patent and

is thus not anticipatory prior art to that claim.

## FACT NO. 103

The MeKiney Patent discloses a "cleaning fluid container," as tentatively
construed by the Court.  (Ex. 5, '267 patent, at Figs. 1 & 3; Ex. A, First Phillips Report,
at ¶ 105.)

## RESPONSE TO FACT NO. 103

Undisputed.  The facts recited in "Rayovac's Fact No. 101" are not

material as the MeKiney Patent does not disclose at least the following elements of claim

11 of the '328 patent: "a cradle structure adapted to receive a shaving head of a shaving

apparatus," and "a drying device" and is thus not anticipatory prior art to that claim.

## FACT NO. 104

Tank 12 and shelf 44 of the MeKiney Patent are both arranged above a
fluid level of the cleaning fluid in said cleaning fluid during feeding of said cleaning fluid
to the tank 12 and shelf 44.  (Ex. 5, '267 patent, at Figs. 1-3; Ex. A, First Phillips Report,
at ¶¶ 102-108.)

## RESPONSE TO FACT NO. 104

It is undisputed that tank 12 and shelf 44 of the MeKiney Patent are both

arranged above the fluid level of the cleaning fluid in tank 14 during feeding of the

cleaning fluid to tank 12.

## FACT NO. 105

Tank 12 in the MeKiney Patent is a structure.  (Ex. 5, '267 patent, at Figs.
1-3; Ex. A, First Phillips Report, at ¶¶ 102-108.)

**RESPONSE TO FACT NO. 105**

        Disputed.  It is undisputed that tank 12 of the MeKiney sterilizer is a structure; however, it is not a structure adapted to support or receive a shaving head of a shaving apparatus (Rayovac Ex. 15, Second Nayfeh Report at p. 3).  The facts recited in "Rayovac's Fact No. 105" are not material as MeKiney Patent does not disclose <u>at least the following elements</u> of claim 11 of the '328 patent: "a cradle structure adapted to receive a shaving head of a shaving apparatus," and "a drying device" and is thus not anticipatory prior art to that claim.

**FACT NO. 106**

        Tank 12 in the MeKiney Patent both receives and supports razor 42.
(Ex. 5, '267 patent, at Figs. 1 & 3; Ex. A, First Phillips Report, at ¶¶ 109-112.)

**RESPONSE TO FACT NO. 106**

        Disputed.  It is undisputed that tank 12 in the MeKiney Patent receives and supports razor 42.  However, tank 12 in the MeKiney Patent is not a "a cradle structure adapted to receive a shaving head of a shaving apparatus" (Rayovac Ex. 15, Second Nayfeh Report at pp. 2-3).  Tank 12 is a large rectangular tub that holds liquid for sterilizing barber tools.  (<u>Id.</u>).  The facts recited in "Rayovac's Fact No. 106" are not material as the MeKiney Patent does not disclose <u>at least the following elements</u> of claim 11 of the '328 patent: "a cradle structure adapted to receive a shaving head of a shaving apparatus," and "a drying device" and is thus not anticipatory prior art to that claim.

**FACT NO. 107**

        Razor 42 in the MeKiney Patent is a shaving apparatus.  (Ex. 5, '267 patent, at Fig. 3; Ex. A, First Phillips Report, at ¶ 104.)

**RESPONSE TO FACT NO. 107**

Braun disputes Rayovac's Fact No. 107 because Rayovac distorts the facts. It is undisputed that razor 42 is a shaving apparatus (Ex. 5, '267 patent, at col. 1, title of patent). However, razor 42 is not a dry "shaving apparatus" and does not have a "shaving head" as those terms are used in the '328 patent.

The alleged "facts" recited in "Rayovac's Fact No. 107" are not material as the MeKiney Patent does not disclose <u>at least the following elements</u> of claim 11 of the '328 patent: "a cradle structure adapted to receive a shaving head of a shaving apparatus," and "a drying device" and is thus not anticipatory prior art to that claim.

**FACT NO. 108**

During cleaning, tank 12 of the MeKiney Patent is filled with cleaning fluid. (Ex. 5, '267 patent, at col. 2,1. 43; Ex. A, First Phillips Report, at ¶ 105.)

**RESPONSE TO FACT NO. 108**

Braun disputes Rayovac's Fact No. 108 because Rayovac distorts the facts. The MeKiney Patent discloses that "[t]he sterilizing fluid is adapted to be disposed in the lower tank 14 and pumped to the upper tank 12 wherein it will perform its sterilizing function before returning once again to the lower tank" (Rayovac Ex. 5, '267 patent, at col. 2, 1l. 42-44). This passage of the MeKiney Patent does not disclose that tank 12 of the MeKiney Patent is filled with cleaning fluid during cleaning.

The alleged "facts" recited in "Rayovac's Fact No. 108" are not material as the MeKiney Patent does not disclose <u>at least the following elements</u> of claim 11 of the '328 patent: "a cradle structure adapted to receive a shaving head of a shaving apparatus," and "a drying device" and is thus not anticipatory prior art to that claim.

**FACT NO. 109**

Tank 12 of the MeKiney Patent is able to both receive and retain cleaning fluid. (Ex. 5, '267 patent, at Figs. 1-3; Ex. A, First Phillips Report, at ¶¶ 102-112.)

**RESPONSE TO FACT NO. 109**

Undisputed.  However, tank 12 in the MeKiney Patent is not a "a cradle structure adapted to receive a shaving head of a shaving apparatus" (Rayovac Ex. 15, Second Nayfeh Report at pp. 2-3).  Tank 12 is a large rectangular tub that holds liquid for sterilizing barber tools; it is not adapted to support or receive the shaving head of a shaving apparatus (Id.).

The facts recited in "Rayovac's Fact No. 109" are not material as the MeKiney Patent does not disclose at least the following elements of claim 11 of the '328 patent: "a cradle structure adapted to receive a shaving head of a shaving apparatus," and "a drying device" and is thus not anticipatory prior art to that claim.

**FACT NO. 110**

During prosecution of what became unasserted claim 1 of the '328 patent, the Patent Examiner found that tank 12 of the MeKiney Patent is a "cradle structure" in rejecting application claim 1. (Ex. 24, '328 patent prosecution history, 5/15/97 Office Action.)

**RESPONSE TO FACT NO. 110**

Undisputed.

**FACT NO. 111**

Braun never disputed that argument, and instead amended the "cradle structure" limitation in application claim 1.  (Ex. 25, '328 patent prosecution history, 7/18/97 Interview Summary; Ex. 20, '328 patent prosecution history, 8/14/97 Response.)

**RESPONSE TO FACT NO. 111**

Although it is undisputed that Braun amended claim 1 during prosecution, Braun disputes that Braun admitted during prosecution of the '328 patent that it agreed

with the Examiner that tank 12 of the MeKiney Patent is a cradle structure adapted to receive the shaving head of a shaving apparatus.  There is no evidence that Braun made such an admission during prosecution of the '328 patent and is thus not estopped from making this argument in this or any other action.

## FACT NO. 112

Shelf 44 of the MeKiney Patent is a part of tank 12.  (Ex. 5, '267 patent, at Fig. 3; Ex. A, First Phillips Report, at ¶ 84.)

## RESPONSE TO FACT NO. 112

Disputed.  It is undisputed that shelf 44 is secured to one of the end walls of tank 12.  Shelf 44 and upper tank 12 of the MeKiney sterilizer do not constitute a structure adapted to support or receive a shaving head of a shaving apparatus (Rayovac Ex. 15, Second Nayfeh Report at p. 3).

The alleged " facts" recited in "Rayovac's Fact No. 112" are not material as the MeKiney Patent does not disclose <u>at least the following elements</u> of claim 11 of the '328 patent: "a cradle structure adapted to receive a shaving head of a shaving apparatus," and "a drying device" and is thus not anticipatory prior art to that claim.

## FACT NO. 113

Shelf 44 of the MeKiney Patent is a structure.  (Ex. 5, '267 patent, at Fig. 3; Ex. A, First Phillips Report, at ¶ 84.)

## RESPONSE TO FACT NO. 113

Disputed.  It is undisputed that shelf 44 is a structure; however, shelf 44 of the MeKiney sterilizer do not constitute a structure adapted to support or receive a shaving head of a shaving apparatus (Rayovac Ex. 15, Second Nayfeh Report at p. 3).  The alleged "facts" recited in "Rayovac's Fact No. 113" are not material as the MeKiney Patent does not disclose <u>at least the following elements</u> of claim 11 of the '328 patent: "a

cradle structure adapted to receive a shaving head of a shaving apparatus," and "a drying device" and is thus not anticipatory prior art to that claim.

## FACT NO. 114

Shelf 44 of the MeKiney Patent is specifically adapted to support clipper blades. (Ex. 5, '267 patent, at Fig. 3; Ex. A, First Phillips Report, at ¶ 84.)

## RESPONSE TO FACT NO. 114

Undisputed.

## FACT NO. 115

The clipper blades in the MeKiney Patent are the head of an electric hair clipper. (Ex. 5, '267 patent, at Fig. 3; Ex. A, First Phillips Report, at ¶¶ 83-84.)

## RESPONSE TO FACT NO. 115

Disputed. To clean the clipper blades in the MeKiney Patent, they must first be disassembled from the hair clipper apparatus. The clipper blades are not the "shaving head of a shaving apparatus."

The alleged "facts" recited in "Rayovac's Fact No. 115" are not material as the MeKiney Patent does not disclose at least the following elements of claim 11 of the '328 patent: "a cradle structure adapted to receive a shaving head of a shaving apparatus," and "a drying device" and is thus not anticipatory prior art to that claim.

## FACT NO. 116

The electric hair clipper of the MeKiney Patent is a shaving apparatus. (Ex. 5, '267 patent, at Figs. 1 & 3; Ex. A, First Phillips Report, at ¶ 84.)

## RESPONSE TO FACT NO. 116

Disputed. The electric hair clipper is not a shaving apparatus.

The alleged "facts" recited in "Rayovac's Fact No. 116" are not material as MeKiney Patent does not disclose at least the following elements of claim 11 of the

'328 patent: "a cradle structure adapted to receive a shaving head of a shaving apparatus," and "a drying device" and is thus not anticipatory prior art to that claim.

### FACT NO. 117

The claims of U.S. Patent No. 5,649,556 ("the '556 patent") explicitly require a "dry shaving apparatus."  (Ex. 5, '556 patent.)

### RESPONSE TO FACT NO. 117

Undisputed.

### FACT NO. 118

The claims of the '328 patent do not explicitly require a "dry shaving apparatus."  (Ex. 1, '328 patent.)

### RESPONSE TO FACT NO. 118

Undisputed.  The facts recited in "Rayovac's Fact No. 118" are not material to the issues that are the subject of Rayovac's motions for partial summary judgment.

### FACT NO. 119

The claims of the '328 patent only explicitly require a "shaving apparatus."  (Ex. 1, '328 patent.)

### RESPONSE TO FACT NO. 119

Undisputed.  The facts recited in "Rayovac's Fact No. 119" are not material to the issues that are the subject of Rayovac's motions for partial summary judgment.

### FACT NO. 120

The words "assembled," "disassembled," "assembly," and "disassembly" do not even appear in the '328 patent.  (Ex. 1, '328 patent.)

### RESPONSE TO FACT NO. 120

Braun disputes Rayovac's Fact No. 120 because Rayovac distorts the facts.  "Disassembled" appears in col. 2, ll. 7-8 of Rayovac Ex. 1, the '328 patent.  It is

40

also clear that in describing a preferred embodiment, the shaving apparatus was not

disassembled (Rayovac Ex. 1, the '328 patent, col. 6, ll. 13-14). Moreover, Mr. Phillips –

Rayovac's expert – admitted during his deposition that the '328 patent requires that the

shaving head of the shaving apparatus be assembled during the cleaning operation. Mr.

Phillips cited to several portions of the '328 patent in support for his conclusion

(Deposition of Samuel Phillips on August 30, 2005 Rough Draft of Transcript at 120:22

to 127:10).

**FACT NO. 121**

The MeKiney Patent discloses a siphon tube 24. (Ex. 5, '267 patent, at
Fig. 3; Ex. A, First Phillips Report, at ¶ 108.)

**RESPONSE TO FACT NO. 121**

Undisputed. The facts recited in "Rayovac's Fact No. 121" are not

material as the MeKiney Patent does not disclose at least the following elements of claim

11 of the '328 patent: "a cradle structure adapted to receive a shaving head of a shaving

apparatus," and "a drying device" and is thus not anticipatory prior art to that claim.

**FACT NO. 122**

Following the cleaning of barbers' tools, the siphon tube 24 of the
MeKiney Patent acts as device that drains fluid from tank 12 and shelf 44. (Ex. 5, '267
patent, at Fig. 3; Ex. A, First Phillips Report, at ¶ 108.)

**RESPONSE TO FACT NO. 122**

Disputed. Siphon tube 24 of the MeKiney sterilizer unit for barber tools

merely drains the sterilizing fluid from the upper tank to the lower tank. The tools then

drip dry. See Rayovac Ex. 5, MeKiney Patent, col. 4, lines 13. The siphon tube 24 is not

a drying device since it is not a mechanism for active drying of the barber tools.

Therefore, the MeKiney Patent does not disclose the claimed drying device. Rayovac Ex.

15, Second Nayfeh Report, p. 4.

**FACT NO. 123**

In Figure 1 of the MeKiney Patent, shelf 34 and slot 38 function to support the razor 42 received in tank 12.  (Ex. 5, '267 patent, at col. 3, ll. 37-37; Ex. A, First Phillips Report, at ¶ 112.)

**RESPONSE TO FACT NO. 123**

Disputed.  It is undisputed that shelf 34, among other things, includes slot 38 which functions to support razor 42.  Shelf 34 of the MeKiney sterilizer is designed to hold scissors and wet razors.  See MeKiney Patent at col. 3, lines 27-32.

The alleged "facts" recited in "Rayovac's Fact No. 123" are not material as claim 11 of the '328 patent does not have a "bracket' limitation and thus the MeKiney patent does not invalidate claim 11 of the '328 patent on that basis.

**FACT NO. 124**

Mr. Phillips opines that magnets 46 in the MeKiney Patent function as a bracket.  (Ex. A, First Phillips Report, at ¶¶ 11-112.)

**RESPONSE TO FACT NO. 124**

Braun disputes this "fact" because Rayovac misquotes its technical expert's opinion.  At Ex. A, First Phillips Report, at ¶ 112, Mr. Phillips opines that shelf 34, slot 38, and magnets 46 of the MeKiney sterilizer are "brackets for insertion of the shaver apparatus therein."   He did not opine that magnets 46 alone function as a bracket. Rayovac Ex. 15, Second Nayfeh Report, p. 13.

The alleged "facts" recited in "Rayovac's Fact No. 124" are not material as claim 11 of the '328 patent does not have a "bracket" limitation and thus the MeKiney patent does not invalidate claim 11 of the '328 patent on that basis.

**FACT NO. 125**

Dr. Nayfeh concedes that a "shelf may be considered a bracket or a projecting support." (Ex. 15, Second Nayfeh Report, at 13.)

**RESPONSE TO FACT NO. 125**

Braun disputes Rayovac's Fact No. 125. Dr. Nayfeh made no concession that all shelves may be considered a bracket or a projecting support. Dr. Nayfeh's opinion is: "while a shelf may in certain circumstances be considered a bracket or projecting support . . . shelf 34 is designed to hold scissors and wet razors." See MeKiney Patent at col. 3, lines 27-32." Ex. 15, Second Nayfeh Report, at 13.

The alleged "facts" recited in "Rayovac's Fact No. 125" are not material as claim 11 of the '328 patent does not have a "bracket' limitation and thus the MeKiney patent does not invalidate claim 11 of the '328 patent on that basis.

**FACT NO. 126**

Dr. Nayfeh concedes that shelf 34 supports razor 42. (Ex. 15, Second Nayfeh Report, at 13.)

**RESPONSE TO FACT NO. 126**

Braun disputes Rayovac's Fact No. 126. Dr. Nayfeh's opinion is: "shelf 34 is designed to <u>hold</u> scissors and wet razors" (emphasis added)( Ex. 15, Second Nayfeh Report, at 13.)

The alleged "facts" recited in "Rayovac's Fact No. 126" are not material as claim 11 of the '328 patent does not have a "bracket' limitation and thus the MeKiney patent does not invalidate claim 11 of the '328 patent on that basis.

**FACT NO. 127**

U.S. Patent No. 2,976,552 ("the Loeffler Patent") issued on March 28, 1961. (Ex. 7, '552 patent.)

**RESPONSE TO FACT NO. 127**

Undisputed. The facts recited in "Rayovac's Fact No. 127" are not material to the issues that are the subject of Rayovac's motions for partial summary

judgment as Rayovac does not assert that the Loeffler patent anticipates (and invalidates) claim 11 of the '328 patent.

## FACT NO. 128

In the Loeffler Patent, a hair clipper is held in a "cradle" and cleaned, *inter alia*, by a sterilizing fluid held in a spray can. (Ex. 7, '552 patent; Ex. A, First Phillips Report, at ¶¶ 134-140.)

## RESPONSE TO FACT NO. 128

Undisputed. The facts recited in "Rayovac's Fact No. 128" are not material to the issues that are the subject of Rayovac's motions for partial summary judgment as Rayovac does not assert that the Loeffler patent anticipates (and invalidates) claim 11 of the '328 patent.

## FACT NO. 129

Mr. Phillips has opined, and Dr. Nayfeh does not disagree that the Loeffler Patent discloses many elements of claim 14 and 18. (Ex. A, First Phillips Report, at ¶¶ 134-140; Ex. C, Third Phillips Report, at ¶¶ 29-139; Ex. 15, Second Nayfeh Report.)

## RESPONSE TO FACT NO. 129

Disputed. Dr. Nayfeh did not agree that the Loeffler Patent discloses many elements of claims 14 and 18 of the '328 patent (Ex. 15, Second Nayfeh Report). Rather, it is undisputed that Dr. Nayfeh opines that the Loeffler Patent does not disclose every element of claim 14 or 18 of the '328 patent (Id.).

The alleged "facts" recited in "Rayovac's Fact No. 129" are not material to the issues that are the subject of Rayovac's motions for partial summary judgment as Rayovac does not assert that the Loeffler patent anticipates (and invalidates) claim 11 of the '328 patent.

**FACT NO. 130**

The Loeffler Patent discloses "a cradle structure adapted to receive a shaving head of a shaving apparatus, said cradle structure being permanently open atmosphere." (Ex. 7, '552 patent, at Fig. 1; Ex. A, First Phillips Report, at ¶¶ 132-140.)

**RESPONSE TO FACT NO. 130**

Disputed. A hair clipper is not a shaving apparatus. The alleged "facts" recited in "Rayovac's Fact No. 130" are not material to the issues that are the subject of Rayovac's motions for partial summary judgment as Rayovac does not assert that the Loeffler patent anticipates (and invalidates) claim 11 of the '328 patent.

**FACT NO. 131**

The Loeffler Patent discloses a conventional spraying can 60 containing sterilizing fluid. (Ex. 7, '552 patent, at Fig. 1; Ex. A, First Phillips Report, at ¶¶ 132-140.)

**RESPONSE TO FACT NO. 131**

Undisputed. Braun notes that Rayovac admits and concedes that the conventional spraying bottle 60 contains sterilizing fluid. The facts recited in "Rayovac's Fact No. 131" are not material to the issues that are the subject of Rayovac's motions for partial summary judgment as Rayovac does not assert that the Loeffler patent anticipates (and invalidates) claim 11 of the '328 patent.

**FACT NO. 132**

Dr. Nayfeh uses the terms "sterilizing fluid" and "cleaning fluid" synonymously in his Second Expert Report. (Ex. 15, Second Nayfeh Report, at 11.)

**RESPONSE TO FACT NO. 132**

Braun disputes Rayovac's Fact No. 132 because Rayovac distorts the facts. Dr. Nayfeh is very clear that conventional spray bottle (60) of the Loeffler sterilizing device contains sterilizing fluid and that "[t]he fluid in spray can 60 of the Loeffler device sterilizes the shaver; it does not clean it. (Ex. 15, Second Nayfeh Report,

at 11.)"  Dr. Nayfeh then stated that "[i]n the Loeffler device, the brushing operation

cleans the shaving head, and then a small amount of fluid is applied to the shaving head

to sterilize it. This is only enough to coat the surfaces of the shaving head and then dry by

evaporation. As is clear from Figure 1 of the Loeffler Patent . . . , there is no provision to

catch or contain the contaminated fluid that would drain from the shaving head in a

fluidic cleaning operation" (Id.).

The alleged "facts" recited in "Rayovac's Fact No. 132" are not material

to the issues that are the subject of Rayovac's motions for partial summary judgment as

Rayovac does not assert that the Loeffler patent anticipates (and invalidates) claim 11 of

the '328 patent.

## FACT NO. 133

Washing by spraying in the Loeffler Patent is a cleaning process.  (Ex. C,
Third Phillips Report, at ¶¶ 132-140.)

## RESPONSE TO FACT NO. 133

Disputed.  In the Loeffler device, the brushing operation cleans the

shaving head, and then a small amount of fluid is applied to the shaving head to sterilize

it.  This is only enough to coat the surfaces of the shaving head and then dry by

evaporation.  Ex. 15, Second Nayfeh Report, at 11.  Thus, there is no washing by

spraying in the Loeffler Patent and the fluid applied to the shaving head is to sterilize it

and not to clean it.

The alleged "facts" recited in "Rayovac's Fact No. 133" are not material

to the issues that are the subject of Rayovac's motions for partial summary judgment as

Rayovac does not assert that the Loeffler patent anticipates (and invalidates) claim 11 of

the '328 patent.

**FACT NO. 134**

The cleaning fluid that Gebhard Braun and Dietrich Pahl used in the development of their cleaning device came from Braun spray cans. (Ex. J, Pahl Dep., at 36.)

**RESPONSE TO FACT NO. 134**

Braun disputes Rayovac's Fact No. 134 because Rayovac distorts the facts. Dr. Pahl testified that one of the cleaning fluids that he used in the development of the patented cleaning device was the fluid contained in spray cans marketed by Braun and made by a third party (Pahl Dep. at 167-169).

The alleged "facts" recited in "Rayovac's Fact No. 134" are not material to the issues that are the subject of Rayovac's motions for partial summary judgment as Rayovac does not assert that the Loeffler patent anticipates (and invalidates) claim 11 of the '328 patent.

**FACT NO. 135**

The Loeffler Patent discloses that spraying can 60 is at the top thereof provided with a conventional, depressible valve 75 having the usual spray opening at one side thereof. (Ex. 7, '552 patent, at Fig. 1; Ex. A, First Phillips Report, at ¶¶ 132-140.)

**RESPONSE TO FACT NO. 135**

Undisputed. It is also undisputed that the valve 75 is a flow control device (Ex. 15, Second Nayfeh Report, at 12). The facts recited in "Rayovac's Fact No. 135" are not material to the issues that are the subject of Rayovac's motions for partial summary judgment as Rayovac does not assert that the Loeffler patent anticipates (and invalidates) claim 11 of the '328 patent.

**FACT NO. 136**

When valve 75 is depressed, the "cradle structure" and clipper head are sprayed with fluid. (Ex. 7, '552 patent, at Fig. 1; Ex. A, First Phillips Report, at ¶¶ 132-40.)

**RESPONSE TO FACT NO. 136**

Disputed. Valve 75 and opening 76 at the top of the conventional spray can 60 do not constitute a mechanism that feeds cleaning fluid from the cleaning fluid container to the cradle structure. Valve 75 and opening 76 cannot rightly be called fluid feed devices. The valve 75 is a flow control device, and the opening 76 is a port. Moreover, the Loeffler device applies <u>sterilizing</u> fluid, not cleaning fluid. Rayovac Ex. 15, Second Nayfeh Report, at 12.

The alleged "facts" recited in "Rayovac's Fact No. 136" are not material to the issues that are the subject of Rayovac's motions for partial summary judgment as Rayovac does not assert that the Loeffler patent anticipates (and invalidates) claim 11 of the '328 patent.

**FACT NO. 137**

The Loeffler Patent states that depressing valve 75 "force[s] a powerful spray of disinfectant against the clipper head[.]" (Ex. 7, '552 patent, at col. 3, ll. 15-18; Ex. A, First Phillips Report, at ¶¶ 132-140.)

**RESPONSE TO FACT NO. 137**

Undisputed. Rayovac has conceded that the Loeffler device applies sterilizing fluid and not cleaning fluid.

The facts recited in "Rayovac's Fact No. 137" are not material to the issues that are the subject of Rayovac's motions for partial summary judgment as Rayovac does not assert that the Loeffler patent anticipates (and invalidates) claim 11 of the '328 patent.

**FACT NO. 138**

Dr. Pahl testified that spraying fluid and pumping fluid are effectively the same thing. (Ex. J, Pahl Dep., at 80.)

**RESPONSE TO FACT NO. 138**

Disputed. Rayovac takes Dr. Pahl's testimony out of context. Dr. Pahl did not testify with respect to the Loeffler device.

The alleged "facts" recited in "Rayovac's Fact No. 138" are not material to the issues that are the subject of Rayovac's motions for partial summary judgment as Rayovac does not assert that the Loeffler patent anticipates (and invalidates) claim 11 of the '328 patent.

**FACT NO. 139**

Forcing a spray of fluid in the Loeffler Patent constitutes moving fluid from the can 60 to the cradle. (Ex. C, Third Phillips Report, at ¶¶ 129-139.)

**RESPONSE TO FACT NO. 139**

Disputed. In the Loeffler device, the brushing operation cleans the shaving head, and then a small amount of fluid is applied to the shaving head to sterilize it. This is only enough to coat the surfaces of the shaving head and then dry by evaporation. Ex. 15, Second Nayfeh Report, at 11. Thus, there is no washing by spraying in the Loeffler Patent and the fluid applied to the shaving head is to sterilize it and not to clean it.

The alleged "facts" recited in "Rayovac's Fact No. 139" are not material to the issues that are the subject of Rayovac's motions for partial summary judgment as Rayovac does not assert that the Loeffler patent anticipates (and invalidates) claim 11 of the '328 patent.

**FACT NO. 140**

In the Loeffler Patent, before the clipper head is cleaned, spraying can 60 is tilted downward. (Ex. 7, '552 patent, at Fig. 3; Ex. A, First Phillips Report, at ¶¶ 132-140.)

**RESPONSE TO FACT NO. 140**

Undisputed.

The alleged "facts" recited in "Rayovac's Fact No. 140" are not material to the issues that are the subject of Rayovac's motions for partial summary judgment as Rayovac does not assert that the Loeffler patent anticipates (and invalidates) claim 11 of the '328 patent.

**FACT NO. 141**

By tilting the can in the Loeffler Patent, the level of cleaning fluid in the can would be below the "cradle structure" during feeding. (Ex. A, First Phillips Report, at ¶¶ 132-140.)

**RESPONSE TO FACT NO. 141**

Disputed. There is no cleaning fluid container in the Loeffler device. The Loeffler device contains a sterilizing fluid container. And the fluid level in the Loeffler device's sterilizing fluid container is not below the cradle structure until the spray can has been partially emptied. Ex. 15, Second Nayfeh Report, at 11.

The alleged "facts" recited in "Rayovac's Fact No. 141" are not material to the issues that are the subject of Rayovac's motions for partial summary judgment as Rayovac does not assert that the Loeffler patent anticipates (and invalidates) claim 11 of the '328 patent.

**FACT NO. 142**

The Loeffler Patent discloses that over time the amount of fluid in the can will decrease, and the spray can will need to be replaced. (Ex. 7, '552 patent, at Fig. 1; Ex. A, First Phillips Report, at ¶¶ 132-140.)

**RESPONSE TO FACT NO. 142**

Disputed.  It is undisputed that the Loeffler Patent discloses that after the spray can is spent, it can be replaced.  See Rayovac Ex. 7, '552 patent at col. 3, lines 23-41.

The alleged "facts" recited in "Rayovac's Fact No. 142" are not material to the issues that are the subject of Rayovac's motions for partial summary judgment as Rayovac does not assert that the Loeffler patent anticipates (and invalidates) claim 11 of the '328 patent.

**FACT NO. 143**

In the Loeffler Patent, the level of cleaning fluid in the spraying can 60 would be below the "cradle structure" during at least some of the device's operation. (Ex. 7, '552 patent, at Fig. 1; Ex. A, First Phillips Report, at ¶¶ 132-140.)

**RESPONSE TO FACT NO. 143**

Disputed.  There is no cleaning fluid container in the Loeffler device. And the fluid level in the Loeffler device's sterilizing fluid container is not below the cradle structure until the spray can has been partially emptied.  Therefore, the Loeffler Patent does not disclose the claimed elevation of the cradle structure relative to the cleaning fluid level in the cleaning fluid container during feeding.  Rayovac Ex. 15, Second Nayfeh Report, p. 12.

The alleged "facts" recited in "Rayovac's Fact No. 143" are not material to the issues that are the subject of Rayovac's motions for partial summary judgment as Rayovac does not assert that the Loeffler patent anticipates (and invalidates) claim 11 of the '328 patent.

**FACT NO. 144**

U.S. Patent No. 3,478,758 ("the Davies Patent") issued on November 18, 1969.  (Ex. 6, '758 patent.)

**RESPONSE TO FACT NO. 144**

Undisputed.  the facts recited in "Rayovac's Fact No. 144" are not

material as the Davies patent does not anticipate (and therefore does not invalidate) claim

11 of the '328 patent.  This is so because the Davies Patent does not disclose <u>at least the</u>

<u>following elements</u> of claim 11 of the '328 patent: "a cradle structure adapted to receive a

shaving head of a shaving apparatus," "a feed device for feeding cleaning fluid from said

cleaning fluid container to said cradle structure," and "said cradle structure being

arranged above a fluid level of the cleaning fluid in said cleaning fluid container during

the feeding of said cleaning fluid to said cradle structure."

**FACT NO. 145**

Mr. Phillips has opined, and Dr. Nayfeh does not disagree that the Davies

Patent discloses many elements of claims 11 and 12.  (Ex. A, First Phillips Report, at

¶¶ 113-121; Ex. 15, Second Nayfeh Report; Ex. C, Third Phillips Report, at ¶¶ 102-117.)

**RESPONSE TO FACT NO. 145**

For purpose of its answer, Braun assumes the claims 11 and 12 stated in

Fact No. 144 are claims 11 and 12 of the '328 patent.

Disputed.  Dr. Nayfeh did not agree that the Davies Patent discloses many

elements of claims 11 and 14 of the '328 patent (Ex. 15, Second Nayfeh Report).  Rather,

it is undisputed that Dr. Nayfeh opines that the Davies Patent does not disclose every

element of claim 11 or claim 12 of the '328 patent (<u>Id</u>.).

Also, the alleged "facts" recited in "Rayovac's Fact No. 145" are not

material as the Davies patent does not anticipate (and therefore does not invalidate) claim

11 of the '328 patent.  This is so because the Davies Patent does not disclose <u>at least the</u>

<u>following elements</u> of claim 11 of the '328 patent: "a cradle structure adapted to receive a

shaving head of a shaving apparatus," "a feed device for feeding cleaning fluid from said

cleaning fluid container to said cradle structure," and "said cradle structure being

arranged above a fluid level of the cleaning fluid in said cleaning fluid container during

the feeding of said cleaning fluid to said cradle structure."

### FACT NO. 146

The Davies Patent discloses that "implement positioning means 20 comprises a perforated tray 74 for holding an implement to be washed and sterilized and locating the instrument in its aforementioned washing and sterilizing positions." (Ex. 6, '758 patent, at col. 4, ll. 34-36; Ex. A, First Phillips Report, at ¶¶ 113-121.)

### RESPONSE TO FACT NO. 146

Undisputed.

### FACT NO. 147

While the Davies Patent cleaning system describes cleaning many "implements," the one object to be cleaned explicitly disclosed is a hair clipper. (Ex. 6, '758 patent, at col. 5,1. 75; Ex. A, First Phillips Report, at ¶ 114.)

### RESPONSE TO FACT NO. 147

Undisputed. The facts recited in "Rayovac's Fact No. 147" are not

material as the Davies patent does not anticipate (and therefore does not invalidate) claim

11 of the '328 patent. This is so because the Davies Patent does not disclose <u>at least the</u>

<u>following elements</u> of claim 11 of the '328 patent: "a cradle structure adapted to receive a

shaving head of a shaving apparatus," "a feed device for feeding cleaning fluid from said

cleaning fluid container to said cradle structure," and "said cradle structure being

arranged above a fluid level of the cleaning fluid in said cleaning fluid container during

the feeding of said cleaning fluid to said cradle structure.

### FACT NO. 148

Braun has argued that brushes are often not suitable for cleaning the head of a shaving apparatus. (Ex. 8, Braun Response to Remington's First Set of Interrogatories.)

**RESPONSE TO FACT NO. 148**

Braun disputes Rayovac's Fact No. 148 because Rayovac distorts the facts. In answering Rayovac's Interrogatory No. 5, Braun stated that "[p]rior to the patented inventions, cleaning of the shaving head of a dry shaver was accomplished by manually brushing debris from the shaver head . . . (Rayovac Ex. 8, Braun Response to Remington's First Set of Interrogatories at p. 7). It is apparent that Braun did not represent that "brushes are often not suitable for cleaning the head of a shaving apparatus."

The alleged "facts" recited in "Rayovac's Fact No. 148" are not material as the Davies patent does not anticipate (and therefore does not invalidate) claim 11 of the '328 patent. This is so because the Davies Patent does not disclose <u>at least the following elements</u> of claim 11 of the '328 patent: "a cradle structure adapted to receive a shaving head of a shaving apparatus," "a feed device for feeding cleaning fluid from said cleaning fluid container to said cradle structure," and "said cradle structure being arranged above a fluid level of the cleaning fluid in said cleaning fluid container during the feeding of said cleaning fluid to said cradle structure.

**FACT NO. 149**

Dr. Nayfeh admits that tray 74 of the Davies Patent is a basket. (Ex. 15, Second Nayfeh Report, at 5.)

**RESPONSE TO FACT NO. 149**

Braun disputes Rayovac's Fact No. 149 because Rayovac distorts the facts. Dr. Nayfeh stated that "tray 74 is a basket that is not adapted to receive a shaving head of a shaving apparatus" (Rayovac Ex. 15, Second Nayfeh Report, at 5).

The alleged "facts" recited in "Rayovac's Fact No. 149" are not material as the Davies patent does not anticipate (and therefore does not invalidate) claim 11 of