# EXHIBIT
# 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRAUN GmbH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 03-12428-WGY |
| ) | |
| RAYOVAC CORPORATION, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## RAYOVAC CORPORATION'S BRIEF ON CLAIM CONSTRUCTION

## TABLE OF CONTENTS

I.    **BACKGROUND** ...............................................................................................1
     A.    The Patents-In-Suit Allegedly Improve Upon A Prior Art Cleaning System
         Long In The Public Domain. ..................................................................1
     B.    The Patents-In-Suit Resulted From Unrelated Patent Applications With
         Different Written Description. ................................................................5
     C.    Level Of Ordinary Skill In The Art. ......................................................9
     D.    Rayovac's Accused Product. ..................................................................10

II.    **RAYOVAC'S CONSTRUCTIONS FOR THE '556 PATENT** .....................11
     A.    Construction of Claim 1 .........................................................................12
         1.    "a cradle structure adapted to receive therein the shaving head" .............12
             *(a)*    *The disputed element is governed by 35 U.S.C. § 112, ¶ 6...........12*
                 (i)    The Claim Language..........................................................13
                 (ii)    The Specification ..............................................................16
                 (iii)    The Prosecution History .....................................................17
         2.    In the alternative, the "cradle structure" limitation should be
             construed as "a trough that supports a seated shaving head and that
             receives and retains fluid during the cleaning of the shaving head.".........22
                 (i)    The Claim Language..........................................................22
                 (ii)    The Specification ..............................................................23
                 (iii)    The Prosecution History .....................................................24
         2.    "a cleaning fluid container separate from the cradle structure for
             holding a cleaning fluid"........................................................................24
                 (i)    The Claim Language..........................................................25
                 (ii)    The Specification ..............................................................25
                 (iii)    The Prosecution History .....................................................26
         3.    "a fluid feed mechanism which feeds the cleaning fluid after it
             passes through the filter to the cradle structure during cleaning"..............27
                 (i)    The Claim Language..........................................................27
                 (ii)    The Specification ..............................................................28
                 (iii)    The Prosecution History .....................................................28
         4.    "said container and filter being separable from the cradle structure
             as a unit" ...............................................................................................30
                 (i)    The Claim Language..........................................................30
                 (ii)    The Specification ..............................................................31
                 (iii)    The Prosecution History .....................................................32
     B.    Construction of Claim 2 .........................................................................34
         1.    "The cleaning fluid container is comprised of two chambers, one
             chamber to hold the cleaning fluid, the other chamber being
             configured as the filter" ..........................................................................34
                 (i)    The Claim Language..........................................................34
                 (ii)    The Specification ..............................................................35
     C.    Construction of Claim 18 .......................................................................35

i

1.    "The cradle structure is open towards atmosphere and is supplied with cleaning fluid from the cleaning fluid container by means of the fluid feed mechanism" ............................................................... 36

III.   **RAYOVAC'S CONSTRUCTION OF THE '328 PATENT** ........................................ **36**
1.    "cradle structure adapted to receive the head of a shaving apparatus" (claims 11, 12, 14, and 18) ................................................ 37
    (a)   *The disputed element is governed by 35 U.S.C. § 112, ¶ 6* ............ *37*
        (i)    The Claim Language .......................................... 38
        (ii)   The Specification ............................................ 38
        (iii)  The Prosecution History .................................... 42
2.    Alternately, the "cradle structure" limitation should be construed as "a trough that supports a seated shaving head and that receives and retains fluid during the cleaning of the shaving head." ...................... 44
        (i)    The Claim Language .......................................... 44
        (ii)   The Specification ............................................ 44
        (iii)  The Prosecution History .................................... 45
2.    "feed device for feeding cleaning fluid from said cleaning fluid container to said cradle structure" ................................................ 46
        (i)    The Claim Language .......................................... 46
        (ii)   The Specification ............................................ 46
        (iii)  The Prosecution History .................................... 47
3.    "an impeller" ....................................................................... 48
4.    "said cradle structure being permanently open to atmosphere" ................. 49
5.    "bracket" ............................................................................ 49

IV.   **CONCLUSION** .......................................................................... **51**

# TABLE OF AUTHORITIES

**Cases**

*Arthur A. Collins, Inc. v. Northern Telecom, Ltd.,*
    216 F.3d 1042 (Fed. Cir. 2000) ....................................................................... 8

*Astrazeneca AB v. Mutual Pharm. Co., Inc.,*
    384 F.3d 1333, 1340 (Fed. Cir. 2004) ........................................................... 51

*BBA Nonwovens Simpsonville, Inc. v. Superior Nonwovens, LLC,*
    303 F.3d 1332, 1344 (Fed. Cir. 2002) ........................................................... 22

*Bell Atl. Network Servs., Inc. v. Covad Communications Group, Inc.,*
    262 F.3d 1258, 1268 (Fed. Cir. 2001) ........................................................... 30

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.,*
    145 F.3d 1303, 1309 (Fed. Cir. 1998) ........................................................... 19

*Cole v. Kimberly-Clark Corp.,*
    102 F.3d 524, 531 (Fed. Cir. 1996) ............................................................... 19

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.,*
    246 F.3d 1336, 1339 (Fed. Cir. 2001) ........................................................... 34

*Electro Scientific Industries, Inc. v. Dynamics Details, Inc.,*
    307 F.3d 1343, 1349-50 (Fed. Cir. 2002) ...................................................... 33

*Elkay Mfg. Co. v. Ebco Mfg. Co.,*
    192 F.3d 973, 976-77 (Fed. Cir. 1999) ............................................................ 7

*Environmental Designs, Ltd. v. Union Oil Co.,*
    713 F.2d 693, 696 (Fed. Cir. 1983) ............................................................... 15

*Gaus v. Conair Corp.,*
    363 f.3d 1284, 1288-90 (Fed. Cir. 2004) ...................................................... 51

*Intel Corp. v. Via Technologies, Inc.,*
    319 F.3d 1357, 1365 (Fed. Cir. 2003) ........................................................... 23

*Irdeto Access, Inc. v. Echostar Satellite Corp.,*
    383 F.3d 1295, 1300 (Fed. Cir. 2004) ........................................................... 21

*Ishida Co. v. Taylor,*
    221 F.3d 1310, 1316-17 (Fed. Cir. 2000) ...................................................... 23

*Johnson & Johnston Assoc. Inc. v. R.E. Serv. Co., Inc.,*
    285 F.3d 1046, 1054 (Fed. Cir. 2002) ........................................................... 56

*Kimberly-Clark Corp. v. Johnson & Johnson,*
    745 F.2d 1437, 1453 (Fed. Cir. 1984) ............................................................. 11

*Kumar v. Ovonic Battery Co., Inc.,*
    351 F.3d 1364, 1368 (Fed. Cir. 2003) ............................................................... 8

*Lighting World, Inc. v. Birchwood Lighting, Inc.,*
    382 F.3d 1354, 1358 (Fed. Cir. 2004) ............................................................. 20

*Linear Tech. Corp. v. Impala Linear Corp.,*
    379 F.3d 1311, 1320 (Fed. Cir. 2004) ............................................................. 20

*Markman v. Westview Instruments, Inc.,*
    52 F.3d 967, 979 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996) ......................... 7

*Modine Mfg. Co. v. U.S. Int'l Trade Comm'n,* 75 F.3d 1545, 1551 (Fed Cir. 1996) ............... 34

*Multiform Desiccants, Inc. v. Medzam Ltd.,* 133 F.3d 1473, 1480 (Fed. Cir. 1998) ............... 40

*Pall Corp. v. PTI Technologies Inc.,*
    259 F.3d 1383, 1390-91 (Fed. Cir. 2001) ......................................................... 39

*Rexnord Corp. v. Laitram Corp.,*
    274 F.3d 1336, 1342 (Fed. Cir. 2001) ............................................................. 23

*Seal-Flex, Inc. v. Athletic Track & Court Const.,*
    172 F.3d 836, 848 (Fed. Cir. 1999) ................................................................. 19

*Southwall Technologies, Inc. v. Cardinal IG Co.,*
    54 F.3d 1570, 1576 (Fed. Cir. 1995) ................................................... 24, 30, 42

*SRI Int'l v. Matsushita Elec. Corp. of Am.,*
    775 F.2d 1107, 1118 (Fed. Cir. 1985) ............................................................. 16

*Standard Oil Co. v. American Cynamid Co.,* 774 F.2d 448, 452 (Fed. Cir. 1985) ................... 24

*Toro Co. v. White Consolidated Indus., Inc.,* 1999 F.3d 1295, 1302 (Fed. Cir. 1999) ............. 40

*Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n,*
    366 F.3d 1311, 1321 (Fed. Cir. 2004) ............................................................. 21

*Vanguard Prods. Corp. v. Parker Hannifin Corp.,*
    234 F.3d 1370, 1371-72 (Fed. Cir. 2000) ......................................................... 39

*Vitronics Corp.,*
    90 F.3d at 1584 (Fed. Cir. 1996) ..................................................................... 22

*W.E. Hall Co. v. Atlanta Corrugating, LLC,* 370 F.3d 1343, 1350 (Fed. Cir. 2004) ................ 44

iv

*Watts v. XL Sys., Inc.*,
　　232 F.3d 877, 880-81 (Fed. Cir. 2000)............................................................ 20

*York Prods. Inc. v. Central Tractor Farm & Family Ctr.*,
　　99 F.3d 1568, 1574 (Fed. Cir. 1996) ............................................................ 27

**Statutes**

35 U.S.C. § 103............................................................................................ 23, 25

35 U.S.C. § 112............................................................................................ 18, 33

Defendant Rayovac Corporation ("Rayovac") submits this Brief in Support of its proposed construction of the claims of U.S. Patent Nos. 5,649,556 and 5,711,328 ("the '556 and '328 patents") asserted by Braun GmBH ("Braun"). Claim construction is an issue of law that is primarily decided based upon three "intrinsic" sources of evidence: (1) the claims; (2) the specification; and (3) the prosecution history. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996); *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 976-77 (Fed. Cir. 1999).

The common characteristic of Braun's claim construction contentions is that they are not constructions at all. In a vacuum, Braun largely repeats claim language that is generally unfamiliar to lay jurors, but substitutes subtly different terms in an attempt to change the meaning of the claims. What Braun ignores is that its patents, relating generally to devices for bathing shavers, represent technology in the public domain for at least 20 years. To salvage any possible infringement case, Braun tries to escape the actual words of the only claims the United States Patent and Trademark Office ("the PTO") would allow among the crowded prior art. Rayovac's proposed constructions, on the other hand, are compelled by the intrinsic record and provide far more clarity to the jury than Braun's non-constructions. For the reasons set forth in more detail below, the Court should adopt Rayovac's proposed constructions.

## I.    BACKGROUND

### A.    The Patents-In-Suit Allegedly Improve Upon A Prior Art Cleaning System Long In The Public Domain.

1

The patents-in-suit generally relate to devices for cleaning shavers, allegedly improving upon a prior art shaver U.S. Patent No. 3,172,416 ("the Simmons patent") filed in 1963.[1] (*See generally* '328 pat., at col. 1, ll. 9-22; 59-67, Ex. 1 (describing prior art) & col. 2, ll. 9-10 ("Accordingly, it is an object of the present invention to improve the cleaning device."); '556 pat., at col. 1, ll. 11-59, Ex. 2 (describing the prior art) & col. 1, ll. 60-62 (Accordingly, it is an object of the present invention to improve upon the cleaning device such as to allow ready replacement of the cleaning fluid container.") The Simmons patent thus provides context to the disputed claim elements. *See Kumar v. Ovonic Battery Co., Inc.*, 351 F.3d 1364, 1368 (Fed. Cir. 2003) (quoting *Arthur A. Collins, Inc. v. Northern Telecom, Ltd.*, 216 F.3d 1042 (Fed. Cir. 2000) ("When prior art sheds light on the meaning of a term is cited by the patentee, it can have particular value as a guide to the proper construction of the term, because it may indicate not only the meaning of the term to person skilled in the art, but also that the patentee intended to adopt that meaning.").

The Simmons patent generally describes a compact appliance that washes an electric razor with cleaning fluid. (*See*, Simmons cleaning system, at col. 1, ll. 29-37, Ex. 3.) Braun admits it is:

> [A] cleaning device … in which the cutter portion [of a dry razor] is cleaned by a cleaning fluid directed for this purpose through fluid channels provided in the casing. For the full duration of the cleaning cycle, the cutter portion *is seated in a cradle* which is provided in the upper part of the casing and is at all times *filled to capacity with cleaning fluid* circulating therethrough. To accomplish this, a feed pump is provided in the casing.

---

[1] The Simmons patent itself anticipates and/or renders obvious all patent claims that Braun has asserted. Numerous other prior art references not described in the specifications of the patents-in-suit anticipate or render obvious all asserted claims. 35 U.S.C. §§ 102, 103.

2

(*See* '328 pat., at col. 1, ll. 24-32 (emphasis added).)  As reflected in the claims of the '328 and

'556 patents as well, fluid is fed directly into the "cradle" of the Simmons patent (illustrated as

No. 4 (opening) No. 9 (walls) in Figs. 1 and 2 immediately below), and the shaver is then given a

bath.





According to the '556 patent, disadvantages of the Simmons patent were (1) that its cleaning fluid container was not removable and replaceable and (2) the cleaning fluid container did not include a filter. (*See* '556 pat., at col. 1, ll. 34-59.) "[I]t is an object of the present invention to improve upon the cleaning device such as to allow ready replacement of the cleaning fluid container. According to the present invention, this object is accomplished in that

the cleaning fluid container is separable from the cleaning device and includes a filter means integrally formed therewith."[2]  (*Id.*, at col. 1, ll. 60-66.)

According to the '328 patent, an additional disadvantage of the Simmons patent was that the razor had to be removed from the cleaning device to dry following cleaning. (*See* '328 patent, at col. 1, ll. 54-56.) To overcome the purported disadvantage of the Simmons patent, "the cradle is configured as a cleaning dish, a drying dish, and/or a storage device and/or is provided in the cleaning device." (*Id.*, at col. 2, ll. 28-31.) In other words, the "object of the invention" is drying during storage.

Braun's present claim that it developed the first device for washing shavers is absurd. Rather, Braun simply altered the Simmons cleaning device, and it cannot now argue that its patent claims cover subject matter long dedicated to public. *See Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1453 (Fed. Cir. 1984) (stating that it is a "basic principle...that no patent should be grated which withdraws from the public domain technology already available to the public.").

## B.    The Patents-In-Suit Resulted From Unrelated Patent Applications With Different Written Description.

Braun filed the patents-in-suit as separate, unrelated patent applications. The written description for each patent differs in critical respects, as discussed immediately below and in connection with particular claim elements. Thus, it is necessary to construe the claims of the '556 patent in light of the intrinsic evidence for that patent, and the claims of the '328 patent in light of the intrinsic evidence for that patent.

---

[2]    When he submitted his original Invention Disclosure Record, named inventor Gebhard Braun stated that the purported disadvantage of the Simmons patent was "the continuous circulation of the increasingly contaminated liquid for cleaning[.]" (*See*, Invention Disclosure Record, Ex. 4.) This is consistent with the object of the alleged invention of the '556 patent.

For example although the asserted claims in both the '328 patent and the '556 patent use the term "cleaning fluid container," the intrinsic evidence corresponding to each of the patents requires those terms to be construed differently. The two different improvements claimed by the '556 patent and the '328 patent are represented by (1) Figure 6 and (2) Figures 1 and 12, respectively, all of which are attached to both specifications.

Independent claim 1 of the '556 patent requires a cleaning fluid container that is ***both*** (1) "separate" from the cradle structure and (2) "separable" from the cradle structure. Even Braun concedes that the latter limitation means that the "cleaning fluid container" must be removable from the "cradle structure." *See*, Braun Br. at 22. Figure 6 shows a cleaning device including a "cleaning fluid container 61 ... configured as a cartridge." (*See* '556 pat., at col. 8, ll. 14-15.) While the removable and replaceable cartridge shown in Figure 6 is "separate" and distinct from the cradle structure, the claim language does not fit the preferred embodiment because the cartridge is removable from the feed pump, not the cradle structure. (*See, e.g.*, '556 pat., at col. 1, l. 66 - col. 2, l. 4.) Figure 6 is reproduced immediately below.

## Fig. 6



In contrast, in Figure 1 (reproduced immediately below and corresponding with Figure 12), the cleaning fluid is held in what is called a "collecting reservoir 65" in the '556 patent that is not removable from the cradle or the cleaning device. (*See*, '556 pat., at col. 4, ll. 49-50.) The "collecting reservoir 65" of the '556 patent is called a "cleaning fluid container 6" in the '328 patent because the '328 patent claims do not require a "separable" cleaning fluid container. (*See* '328 pat., at col. 6, l. 41.)

7

Fig. 1



### C.    Level Of Ordinary Skill In The Art.

Claims are to be construed as they would have been understood by one of ordinary skill in the art at the time of the alleged invention -- here in the early 1990's.  (*See,* Braun GmBH's Answers to Remington's First Set of Interrogatories, Ex. 5, at 5.)  Braun proposes that the level of ordinary skill would have been "experience in the dry shaving industry."  (*Id.* at 7.)  Rayovac proposes a Bachelor of Science Degree in Mechanical Engineering and 3-5 years of experience designing devices involving fluid processes.

Braun's proposal is wrong for at least two reasons.  First, Braun's articulation is unacceptably vague.[3]  A Braun marketing or accounting executive has "experience in the dry shaving industry," but is unlikely to be the type of person involved in designing cleaning systems. *See, Environmental Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 696 (Fed. Cir. 1983) ("Factors that may be considered in determining level of ordinary skill in the art include (1) the educational level of the inventor; (2) type of problems encountered in the art; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; (5) sophistication of the technology; and (6) educational level of active workers in the field.").  Second, Braun's alleged invention is not a shaver; it is a cleaning system.  Accordingly, experience designing, for example, shaving blades would be of little assistance in designing a cleaning system with the pumps, motors, and electronic circuitry, etc. mentioned in the patent specifications. *Id.*

In contrast, Rayovac's proposal is right.  Although discovery is still in its initial stages, it is clear that alleged inventor Dietrich Pahl had a PhD (or the European equivalent) and

---

[3]    Any alleged clarification of Braun's proposal should be rejected by the Court.  Rayovac previously requested that Braun supplement its interrogatory response as to the level of skill in the art.  (*See* Ltr. from J. Coughlan to L. Wolf, dated 11/3/04, Ex. 6.)  Braun refused.  (*See* Ltr. from L. Wolf to J. Coughlan, dated 11/4/04, *Id.*.)  It is too late for Braun to supplement its position.

substantial design experience when he worked on the alleged inventions of the patents-in-suit. (*See*, Decl. of Dietrich Pahl, Ex. 7.)  Rayavac's design engineers likewise have mechanical engineering degrees and industry experience as well.   The Court should therefore adopt Rayovac's proposal.

### D.    Rayovac's Accused Product.

Braun begins its argument with an unsubstantiated and false allegations that Rayovac copied its technology.  (Braun Br., at 1.)  Indeed, it is the need to support its infringement allegations that drive Braun's proposed claim constructions.  Of course, claims may never be construed with reference to the accused device. *See SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985) (*en banc*) ("A claim is construed in the light of the claim language, the other claims, the prior art, the prosecution history, and the specification, not in light of the accused device.").  Because Braun struggles in its proposed claim constructions to actually *not* define any of the disputed claim elements, apparently hoping to confuse the jury with the vagaries of its claim language, Rayovac briefly discusses its accused to products to give context to Braun's strategy.

Rayovac's accused product, the Titanium SmartSystem, is a device for cleaning shavers. Rather than giving the shaver a bath like the devices in the '556 and '328 patents, in the Titanium SmartSystem, a shaver is cleaned from the inside out.  Fluid is fed to the interior of the shaver head via several manifolds to which the shaver head is connected.  The cleaning fluid proceeds through the shaver head, draining into and through a distinct filter and then into the base of the device (both the below the shaver head).  Like the Simmons patent, the base is manually filled with cleaning fluid initially from a bottle and drained after the fluid is spent.

10

Rayovac's accused product does not infringe any asserted patent claim for many reasons. The following examples underscore the intentional ambiguity of Braun's proposed constructions, which it, apparently, hopes to exploit in its infringement allegations:

- There is no structure like the "cradle" described in the patents-in-suit (1) which receives and retains cleaning fluid and (2) in which an immersed shaver head is seated during the cleaning process. Rather, multiple points on Rayovac's shaving head are connected to manifolds;

- Not only is there no "cradle structure," cleaning fluid is fed to the interior of Rayovac's shaving head through the manifolds, not to anything resembling a "cradle"; and

- There is no unitary cleaning fluid container/filter "separate" from a cradle structure. Nor is the cleaning fluid container/filter removable from anything resembling a "cradle structure." Rayovac's product is like the Simmons patent insofar as cleaning fluid from a bottle is poured into the non-replaceable base of the cleaning device.

Braun's proposed constructions do not provide clarity as to the scope of its claims. As demonstrated below, Braun's positions are wrong and should be rejected.

## II.    RAYOVAC'S CONSTRUCTIONS FOR THE '556 PATENT

Braun has asserted claims 1, 2, 6, and 18 of the '556 patent against Rayovac. The parties disagree with respect to the proper construction of the following elements:

- "a cradle structure adapted to receive therein the shaving head" (claim 1);

- "a cleaning fluid container separate from the cradle structure for holding a cleaning fluid" (claim 1);

- "a fluid feed mechanism which feeds the cleaning fluid after it passes through the filter to the cradle structure during cleaning" (claim 1);

- "said container and filter being separable from the cradle structure as a unit" (claim 1);

- "the cleaning fluid container is comprised of two chambers, one chamber to hold the cleaning fluid, the other chamber being configured as the filter" (claim 2); and

- "the cradle structure is open towards atmosphere and is supplied with cleaning fluid from the cleaning fluid container by means of the fluid feed mechanism" (claim 18).

11

The parties do not disagree on the remainder of the claim elements presented in Braun's Opening

Brief. Accordingly, there is no need to address them here.

### A.    Construction of Claim 1

Claim 1 is the only independent claim of the '556 patent.  Rayovac addresses each

disputed claim limitation in order below.

#### 1.    "a cradle structure adapted to receive therein the shaving head"

**Rayovac's Proposed Construction:**  This element is governed by 35 U.S.C. § 112, ¶ 6.  The recited function is receiving and cradling a shaving head of a shaving apparatus.  The specification discloses a specific structure in the shape of a trough that conforms to the shape of a shaver head and has an overflow device and a lower supporting surface.

**Rayovac's Alternative Proposed Construction:**  If it is determined that § 112, ¶ 6 does not apply, then the term "cradle structure" should be construed as "a trough that supports a seated shaving head and that receives and retains fluid during the cleaning of the shaving head."

**Braun's Proposed Construction:**  A cradle structure that is able to receive the shaving head of the dry shaving apparatus.

This Court should adopt Rayovac's proposed construction because:

- There was no plain and ordinary meaning for a "cradle structure" in the context of cleaning shavers in the early 1990's.

- The claim language merely recites function, i.e. – receiving and cradling a shaving head – without reciting a sufficient structure for performing that function.

- The specification and prosecution history compel Rayovac's proposed construction.

- Braun's construction would broaden the claim by expanding "adapted to receive" to "able to receive," encompassing disclaimed embodiments.

#### (a)    The disputed  element is governed by 35 U.S.C. § 112, ¶ 6.

At the threshold, Braun's vague construction repeats the language of the claim except that

it changes the word "adapted" into "able."  Repeating the language of the claim will be unhelpful

to a jury that is familiar with cradles for babies or telephones, but not shavers.  *Any structure*

that is larger than a shaver is "able" to receive it.  Braun attempts to read out the "cradle

12

structure" as a limitation, even refusing to give words "*adapted* to" any meaning. As such, its construction must be rejected.

### (i)    The Claim Language

The first dispute is whether this element is drafted in means-plus-function form. A "means-plus-function" claim recites a function to be performed rather than a definite structure. Section 112, ¶ 6 "rules out the possibility that any and every means which performs the functions specified in the claim literally satisfies that limitation." *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1309 (Fed. Cir. 1998). Such a limitation covers only "the corresponding structure, material, or acts described in the specification and equivalents thereof." *Id.* at 1307-08. "[B]ecause an element does not include the word 'means' does not automatically prevent that element from being construed as a means-plus-function element." *Seal-Flex, Inc. v. Athletic Track & Court Const.*, 172 F.3d 836, 848 (Fed. Cir. 1999) (quoting *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 531 (Fed. Cir. 1996)). "The presumption that a limitation lacking the term 'means' is not subject to section 112, ¶ 6 can be overcome if it is demonstrated that the claim terms fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *See Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1358 (Fed. Cir. 2004) (quotations omitted).[4] "To help determine whether a claim term recites sufficient structure, [courts] examine whether it has an understood meaning in the art." *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1320 (Fed. Cir. 2004); *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880-81 (Fed. Cir. 2000).

---

[4]    Braun's argument that there are few cases in which the Federal Circuit applied § 112, ¶ 6 to "non-means" language is misdirected. Every patent has unique intrinsic evidence, and every case must be analyzed on its own facts. Here Rayovac has rebutted the presumption with extensive intrinsic evidence showing that this term lack structure and thus, must be construed in accordance with § 112, ¶ 6.

"Cradle structure" does not have a well understood meaning in the art. Indeed, "cradle" has a number of specialized meanings for particular applications. One definition of the term "cradle" is a "boxlike device furnished with rockers, used for washing gold-bearing dirt." (*See,* WEBSTER'S NEW COLLEGE DICTIONARY at 263, Ex. 8.) Other dictionary definitions for cradle include:

- "a small low bed for an infant, often furnished with rockers" [Child Care]

- "the part of a telephone containing the connecting switch on which the receiver and mouthpiece unit is supported." [Telecommunications]

- "a framework of metal or wood used to support something, as a ship undergoing construction or repair." [Ship Building]

- "a frame projecting above a scythe for catching grain as it is cut so that it can be laid flat." [Agriculture]

(*Id.*) The preceding definitions obviously have nothing to do with washing shavers, and they should not be used as a proxy for establishing plain and ordinary meaning.

While there may be a "heavy presumption" in favor of a plain and ordinary meaning construction if one exists, there is ***no presumption*** unless the patentee links a proposed dictionary definition to the field of the alleged invention. Otherwise, general purpose dictionaries provide little (if any) guidance as to claim scope. *Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295, 1300 (Fed. Cir. 2004). The MCGRAW-HILL DICTIONARY OF SCIENTIFIC & TECHNICAL TERMS ("2003 McGraw-Hill Dictionary") definition as a "framework or other resting place for supporting or restraining objects" is thus of no assistance. (Braun Br. at 8.) There is no absolutely no evidence linking that definition to the application claimed by Braun. *Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n*, 366 F.3d 1311, 1321 (Fed. Cir. 2004). ("[A] general-usage dictionary cannot overcome credible art-specific evidence of the meaning or lack of meaning of a claim term.") (citation omitted). More importantly, Braun's

14

definition does not specify a structure, instead redefining the term in circular fashion by the function that it performs. This supports Rayovac's construction.[5]

An inventor's understanding of the alleged invention can assist the Court in determining whether there exists a well understood meaning. *Vitronics Corp.*, 90 F.3d at 1584 (Fed. Cir. 1996) (holding that inventor testimony may be used to "help the court come to the proper understanding of the claims."). Named inventor Gebhard Braun submitted an Invention Disclosure Record to Braun's Patent Department that stated in pertinent part:

> The variant according to the invention proposes to conduct the cleaning process in a specially configured trough (1) into which the shaver (2) is immersed upside down.
>
> [C]leaning liquid is pumped from the integrated supply vessel (6) through a filter into the cleaning trough in which the running shaver is cleaned in the described manner. A correspondingly dimensioned overflow (7) ensures the necessary filling level after a short pump running time and small outlet holes (8) on the bottom of the trough permit discharge of the remaining liquid after cleaning is completed.

(*See*, Invention Disclosure Record, Ex. 4.) Significantly, the Invention Disclosure Record nowhere uses the term "cradle," speaking instead of a "cleaning trough." If the term "cradle" had a well-established meaning in the field, one might expect that it would have been used.

Analysis of the element itself supports Rayovac's construction. By modifying the generic noun "structure," with the adjective "cradle" Braun indicated its intention to claim a structure that performs a function, "cradling." *See BBA Nonwovens Simpsonville, Inc. v. Superior Nonwovens, LLC*, 303 F.3d 1332, 1344 (Fed. Cir. 2002) (rejecting a proposed claim construction that reads a limitation out of the claims). The word "structure" is, by definition, a

---

[5]  This deficiency is made even more stark considering that the shaving heads come in a variety of types, shapes and sizes. Indeed, with respect to the '328 patent, Braun itself has taken the position that "[t]he language in the claim *says nothing about the form* of the cradle structure . . ." (*See* Braun Br. at 7.)

15

"general structural term," that "lacks a clear meaning." *Personalized Media,* 161 F.3d at 704. And, the language "adapted to" confirms that §112, ¶6 applies. *See Intel Corp. v. Via Technologies, Inc.*, 319 F.3d 1357, 1365 (Fed. Cir. 2003) (construing the phrase "a selection adapted to determine whether data is available to be written directly to said peripheral device" as a means-plus-function limitation); *Ishida Co. v. Taylor*, 221 F.3d 1310, 1316-17 (Fed. Cir. 2000); *Application of Lundberg*, 244 F.2d 543, 544-45 (C.C.P.A. 1979); *see also*, Manual of Patenting and Examining Procedure § 2181 (2004) (attached hereto as Exhibit 9.).

**(ii)    The Specification**

A court must always consult the specification when construing claims. *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001) (holding that if there are several possible ordinary meanings, the court should look to the specification to ascertain the correct meaning in the context of the patent.). Here, the '556 patent specification informs the Court as to what the disputed element means in the context of the patent and supplies the corresponding structure for the recited function:

- "The cradle structure invariably contains only as much fluid as is necessary for cleaning the shaving head." (*See*, '556 pat., at col. 3, ll. 29-31.)

- "[A] cradle structure 7 which is configured as a cleaning dish, is slightly dished inwardly, thus conforming approximately to the outer contour of the shaving head 3 of the shaving apparatus 1 and holds only as much cleaning fluid as is necessary for the particular cleaning operation." (*Id.* at col. 4, ll. 24-29.)

- "The cradle 7 includes an overflow device which prevents the cleaning fluid in the cradle 7 from exceeding a defined level and ensures that only the shaving head 3 or the lower part of the shaving head is immersed in cleaning fluid." (*Id.* at col. 4, ll. 42-45.)

- "Further the bottom of the cradle 7 includes an outlet port 27 allowing the cleaning fluid with hair particles to be completely drained into the collecting reservoir 65 after the cleaning cycle is complete. (*Id.* at col. 4, ll. 46-49.)

16

It is therefore clear that the specification only discloses a single embodiment of a "cradle structure" that performs the function of receiving and cradling a shaving head of a shaving apparatus; specifically, a cleaning dish, which is slightly dished inward, with a lower supporting surface, and includes an overflow device and outlet port.

**(iii)    The Prosecution History**

The prosecution history may limit the interpretation of claims "to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance." *Standard Oil Co. v. American Cynamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985); *see also Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution."). During prosecution, Braun explicitly defined the "cradle structure" limitation in arguments to overcome the prior art.

*First*, original application claim 1 recited the identical language at issue here:

> A cleaning device (5) for cleaning the shaving head (3) of a dry shaving apparatus (1), with *a cradle structure (7) adapted to receive therein the shaving head* (3) ...

(*See*, U.S. Patent Application No. 08/390681, Ex. 10, at 30 [B000072].) In its first Office Action, the Examiner rejected application claims 1-5 and 7-13 under 35 U.S.C. § 103 as unpatentable over U.S. Patent No. 3,890,988 (the "Lee patent," attached as Ex. 11).[6] The Examiner stated that the Lee patent disclosed, among other things, "a cradle adapted to receive the article therein." (*See* Ex.12, Office Action, dated 10/27/95, at 3 [B000084]) (the structure

---

6    The Lee Patent discloses a metal sink as a part of a device for washing automobile parts. (*See*, Abstract in Lee patent, Ex 11; *see also*, Response to Office Action, dated 2/26/96, Ex. 13, at 8-9 [B000095-96].)

identified as the "cradle" in the Lee patent is illustrated as No. 10 in Fig. 5 immediately below).

The cleaning system of the Lee patent is reproduced immediately below:



**FIG. 5**

18

In response, Braun argued unequivocally that the cradle structure disclosed in the Lee patent differed from the cradle structure disclosed in its application[7]:

> Lee provides nothing like a cradle structure adapted to receive a shaving head of a dry shaving apparatus, as received in amended claim 1. Lee's sink provides an open [sic] into which any number of different sized and shaped parts can be tossed, but other than providing an open basin in which such parts can be placed, *is not adapted to "cradle" anything,* much less a shaving head. The specification makes it quite clear that "a cradle adapted to receive therein a shaving head" is not the same as an open basin into which the shaving apparatus can be tossed *without any means designed to particularly receive and/or cradle the shaving head.*

(*See,* Response to Office Action, dated 2/26/96, Ex. 13, at 9 [B000096] (emphasis added).) The applicants thus explicitly referred the Examiner and the public to the specification to ascertain the meaning of the disputed language. Braun also clearly admitted that the term "cradle structure" connoted a *means* for particularly receiving and/or cradling a shaving head. *York Prods. Inc. v. Central Tractor Farm & Family Ctr.,* 99 F.3d 1568, 1574 (Fed. Cir. 1996) ("[T]he use of the word 'means' triggers a presumption that the inventor used the term advisedly to invoke the statutory mandates for means-plus-function clauses.").

In the second Office Action, the Examiner again rejected application claim 1 under 35 U.S.C. § 103 as unpatentable over either U.S. Patent No. 4,991,609 (the "Browning patent," attached as Ex. 14)[8] or U.S. Patent No. 4,815,486 (the "Schinn patent," attached as Ex. 15).[9]

---

[7]  Braun acknowledges the clear disclaimer over the Lee patent, but provides absolutely no explanation why Lee's sink or open basin is not a "cradle structure."

[8]  The Browning patent related to an ultrasonic cleaning device for toothbrushes and disclosed a recessed groove for insertion of the toothbrush. (*See,* Abstract in Browning patent, Ex. 14; *see also,* Response to Second Office Action, Ex. 16 dated 11/21/96, at 2 [B000102].)

[9]  The Schinn patent related to a device for cleaning painting equipment and disclosed an open drum with hooks and basket in which the painting equipment was washed. (*See,* Abstract to Schinn patent, Ex. 15; *see also,* Response to Second Office Action, dated 11/21/96, Ex. 16, at 3 [B000103].)

19

(*See*, Second Office Action, dated 8/21/96, Ex. __, at 2 [B000099].)  The cleaning systems of the

Browning and Schinn patents are reproduced immediately below (Browning first).



*Fig. 1.*

**Not a "Cradle Structure"**



**FIG 2**

To secure patent claims, Braun first clearly stated that "the limitation of a cradle structure adapted to receive a shaving head ... structurally *defines* the cradle structure of the invention over Browning's recessed portion 44[.]"   (*See*, Response to Second Office Action, dated

21

11/21/96, Ex. 16, at 3 [B000103] (emphasis added).)  This is a clear admission that the cradle structure of the invention is defined more narrowly than what Braun argues is its plain and ordinary meaning.  Braun also unequivocally argued that the "limitation of a cradle structure adapted to receive a shaving head … structurally *defines* the cradle structure of the invention over Schinn's hooks and baskets." (*Id.* (emphasis added).)  Thus, Braun specifically disavowed any construction of "cradle structure" that would include (1) Browning's recessed groove (represented as Item 44 in Figure 1 above) or (2) Schinn's open drum including hooks and baskets (represented as Items 14 and 18 in Figure 2 above). *Southwall Technologies*, 54 F.3d at 1576 (Fed. Cir. 1995).  Braun thus cannot now argue (as it does by saying nothing) that "cradle structure" should be construed so broadly as to cover the structures from Lee, Browning, and Schinn.

### 2. In the alternative, the "cradle structure" limitation should be construed as "a trough that supports a seated shaving head and that receives and retains fluid during the cleaning of the shaving head."

"Cradle structure" does not have a plain and ordinary meaning in the context of the alleged invention.  Nevertheless, even if it did, the '556 patent claims and specification define the term more narrowly.  "[T]erms may be redefined away from their ordinary meaning by their consistent use in the specification." *Irdeto Access, Inc.*, 383 F.3d at 1301-02.  "Thus, when a patentee uses a claim term throughout the entire patent specification, in a manner consistent with only a single meaning, he has defined that term 'by implication.'" *Bell Atl. Network Servs., Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1268 (Fed. Cir. 2001); *see also Irdeto Access, Inc.*, 383 F.3d at 1301-02 (construing the term "group" narrowly even though nothing in the ordinary meaning, as set forth in various dictionary definitions, so limited the term).

#### (i) The Claim Language

22

The term "cradle structure adapted to receive therein the shaving head" is repeatedly referred to in the claims and the specification, including the drawings, as a trough that supports a seated shaving head and that receives and retains fluid during the cleaning of the shaving head. Moreover, the claim begins with the phrase "adapted to receive therein the shaving head." Thus, it is clear that the cradle structure must be shaped in a manner so as to receive the head of the shaving apparatus. The asserted claims also recite the following language:

> a feed mechanism which feeds the cleaning fluid after it passes through the filter after it passes through the filter *to the cradle during cleaning*.

Claim 1 thus specifies that cleaning fluid is fed into the cradle structure during operation of the device, supporting the second portion of Rayovac's proposed claim construction.

### (ii)    The Specification

The specification requires a structure fitting Rayovac's proposed construction precisely:

- "The *cradle structure invariably contains only as much fluid as is necessary* for cleaning the shaving head. (*See* '556 pat., at col. 3, ll. 29-31. (emphasis added).)

- "a cradle structure 7 *which is configured as a cleaning dish,* is slightly dished inwardly, thus conforming approximately to the outer contour of the shaving head 3 of the shaving apparatus 1, and *holds only as much of the cleaning fluid as is necessary* for the particular cleaning operation. (*Id.* at col. 4, ll. 24-29. (emphasis added).)

- "The cleaning device 5, *in particular the wet portion* thereof, that is, the cradle 7, is configured as a cleaning system open to atmosphere whilst a cleaning fluid container 61, as subsequently described with reference to the embodiment of Fig. 7, is closed. (*Id.* at col. 4, ll. 30-34. (emphasis added).)

- "With its shaving head 3 in an inverted position, the shaving apparatus 1 is seated in the *upwardly open cradle 7 configured as wet portion*. During the cleaning cycle, *cleaning fluid 40 is continuously flushed through the cradle 7*." (*Id.* at col. 4, ll. 35-38. (emphasis added).)

- "Operation of the switching means 9 causes the feed pump 23 to be driven which then *delivers cleaning fluid to the cradle 7* ... for a predetermined period of time, the fluid dislodging all of the hair dust 75 in the shaving head 3 ...." (*Id.* at col. 6, ll. 30-34. (emphasis added).)

23

As the highlighted text indicates, the cradle structure is clearly described as a being configured so that it "supports a seated shaving head and retains fluid while the shaving head is cleaned."

### (iii)    The Prosecution History

Finally, as discussed above, the prosecution history of the '556 patent also supports Rayovac's construction. Because Braun specifically argued that certain prior art -- Lee, Cunningham, and Schinn -- did not disclose a "cradle structure," the Court cannot adopt Braun's purported plain and ordinary meaning of the claim element.

### 2.    "a cleaning fluid container separate from the cradle structure for holding a cleaning fluid"

**Rayovac's Proposed Construction:**  A removable and replaceable cartridge which holds cleaning fluid.

**Braun's Proposed Construction:**  A container for holding cleaning fluid that is separate from the cradle structure.

This Court should adopt Rayovac's proposed construction because:

- The language of the claim 1 as a whole dictates Rayovac's proposed construction.

- The specification requires a removable and replaceable cartridge as that is the object of Braun's alleged invention.

- Braun's proposed construction ignores the fact that it was forbidden by the PTO from claiming a generic "cleaning fluid container;" the "separate from the cradle structure" language must therefore have real meaning.

As stated above in the Background Section, the applications for the patents-in-suit were filed in the same month, but with different specifications. Contrary to Braun's assertion, because the patents are not from the same patent family, they can and do have terms that must be construed differently. The "cleaning fluid container" is one such limitation. Indeed, the fact that the '328 patent uses the term "cleaning fluid container" to describe structure that is *not* called a "cleaning fluid container" in the '556 patent shows that the terms unequivocally have different meanings in the two patents.

24

### (i)    The Claim Language

Unlike the generic "cleaning fluid container" limitation in the '328 patent, claim 1 of the '556 patent specifies that the cleaning fluid container must be "separate from the cradle structure." This must have some meaning. *See Electro Scientific Industries, Inc. v. Dynamics Details, Inc.*, 307 F.3d 1343, 1349-50 (Fed. Cir. 2002) (holding that the plain and ordinary meaning of "separate" is narrower than the term "multiple"). Braun, of course, dodges the question of what constitutes a "cradle structure," making its position on the present element even less clear since the "cradle structure" *does hold cleaning fluid* at least some of the time. Because claim 1 also recites that "said container and filter being separable from the cradle structure as a unit," it must be the case that the cradle structure and the cleaning fluid container are physically connected prior to separation. That proposition is proven by dependent claim 3 which recites:

> A cleaning device as claimed in claim 1, further comprising a first conduit which releasably couples the chamber *holding the cleaning fluid container to the cradle structure* ...

Accordingly, in the context of the element at issue, "separate" must mean distinct. (*See*, WEBSTER'S NEW COLLEGE DICTIONARY, at 1006, Ex. 18.) Consistent with this, Rayovac has proposed constructions which supply structure to both the "cradle structure" and "cleaning fluid container," two distinct mechanical components.

### (ii)    The Specification

Moreover, the specification discloses at best a *single embodiment* allegedly distinguishing the patent claims from the Simmons patent. (*See* Section I. B., infra). "[W]hen the preferred embodiment is described in the specification as the invention itself, the claims are not necessarily entitled to a scope broader than that embodiment." *Modine Mfg. Co. v. U.S. Int'l Trade Comm'n*, 75 F.3d 1545, 1551 (Fed Cir. 1996). The removable and replaceable cleaning

fluid container ("a cartridge") *is* what Braun supposedly invented. (*See*, '556 pat., cols. 1-2, ll. 60-67, 1-7.) Indeed, the '556 patent specification nowhere describes a cleaning fluid container that is separate from and, at the same time, separable (removable) from the cradle structure (as opposed to some other component of the overall device). The '556 patent is thus an aberration insofar as its literal claim language excludes the preferred embodiment of the alleged invention. *See Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1339 (Fed. Cir. 2001) (holding that claims rarely exclude the preferred embodiment). Given the unequivocal statements in the written description as to Braun's alleged invention, the manifest inconsistency between the claims and the specification thus compels the Court to make the patent a coherent document (to the extent possible). Rayovac's construction supplies that coherence.

### (iii)    The Prosecution History

Even if one might argue that removing a cleaning fluid container set apart from the cradle structure from the overall device meets the literal language of the claims, the prosecution history forbids that argument. First amended application claim 1 recited in pertinent part:

> A cleaning device [5] for cleaning a shaving head [(3)] of a dry shaving apparatus [(1)], said cleaning device comprising ... a cleaning fluid container [(61)] for holding a cleaning fluid ...

(*See*, Response to Office Action, dated 2/26/96, Ex. 13, at 1 [B000088].) As noted above, the Examiner rejected this claim as obvious over the Browning and Schinn patents. (*See*, Second Office Action, dated 8/21/96, Ex. 17, at 2 [B000099].)

Braun was thus forced narrow claim 1:

> A cleaning device for cleaning a shaving head of a dry shaving apparatus, said cleaning device comprising:
>
> \*\*\*
>
> a cleaning fluid container separate from the cradle structure for holding a cleaning fluid.

26

(*See*, Response to Second Office Action, dated 11/21/96, Ex. 16, at 1 [B000101].)    To support

the alleged patentability of that claim, Braun argued that "Browning's recessed portion 44 is *part*

of container 14[.]"   (*See id.* at 2 [B000102] (emphasis added).)    Item Nos. 14 and 44 of the

Browning patent are illustrated above.    *See* infra, at page 21.    Braun plainly conceded to the

Examiner and the public through its amendment and argument that it was only claiming a

cleaning system where the "cradle structure" and "cleaning fluid container" are distinct

mechanical parts.   In light of the prosecution history, the language "separate from" is manifestly

important, begging clarification as to the "cradle structure" and the "cleaning fluid container."

The Court should therefore adopt Rayovac's proposed construction.

### 3.    "a fluid feed mechanism which feeds the cleaning fluid after it passes through the filter to the cradle structure during cleaning"

**Rayovac's Proposed Construction:**   This element is governed by 35 U.S.C. § 112, ¶ 6.   The recited function is feeding the cleaning fluid after it passes through the filter to the cradle structure during cleaning.  The structure disclosed in the specification is a pump.

**Braun's Proposed Construction:**   A mechanism or device that feeds cleaning fluid after it passes through a filter, to the cradle structure during cleaning.

This Court should adopt Rayovac's proposed construction because:

- There was no plain and ordinary meaning for a "fluid feed mechanism" in the context of cleaning shavers in the early 1990's.

- The claim language merely recites function, i.e. -- feeding cleaning fluid -- without reciting a sufficient structure for performing that function.

- Braun's construction ignores that the prosecution history unequivocally establishes that the recited function can only be feeding cleaning fluid to the cradle structure.

### (i)    The Claim Language

Braun merely concludes, without offering any support, that "fluid feed mechanism" "has

a plain meaning, well understood meaning in the art." (Braun Br. at 25.) Braun offers no

definition for the term other than to re-state the function the "fluid feed mechanism" is to

27

perform. *Id.* ("It is a mechanism for moving fluids from one location to (through a filter, in this case) to another location."). That is not surprising as the claim element would not be substantively different it if read "a mechanism that feeds cleaning fluid...." By its very terms Braun's functional definition does not describe a structure. "Fluid feed mechanism" is merely "a verbal construct that is not recognized as the name of structure and is simply a substitute for the term 'means for.'" *See Lighting World, Inc.*, 382 F.3d at 1360.

Analysis of dependent claims can inform a Court as to the meaning of disputed claim elements. *Vitronics Corp.*, 90 F.3d at 1582. Dependent claim 20 recites:

> A cleaning device as claimed in claim 19, wherein *the feed pump*, the motor, the impeller, and the cleaning fluid container are substantially disposed in coaxial alignment with each other in the cleaning device.

"Feed pump" (modified by the word "the") does not appear in the two claims from which it depends (1 and 19), and it thus lacks an antecedent basis. *See, e.g., Application of Altenpohl*, 500 F.2d 1151, 1156 (C.C.P.A. 1974). Rayovac's proposed construction which includes the structure ("a feed pump") is thus consistent with all the claims of the '556 patent.

### (ii)    The Specification

While Braun disputes the applicability of § 112, ¶ 6, there can be no dispute that the only structure disclosed in the written specification for performing the recited function is a pump:

> • "Still further it is advantageous that the shaving apparatus is receivable in a cradle structure that is open towards the atmosphere and is supplied with cleaning fluid from the outwardly closed cleaning fluid container *by means of the feed pump*. (*See*, '556 pat., at col. 3, ll. 21-25 (emphasis added)

*(See also, Id.* at col. 6, ll 30-34.)

### (iii)    The Prosecution History

The real dispute between the parties is wholly ignored in Braun's Opening Brief. To be clear, it is Rayovac's position that the recited function of the "fluid feed mechanism" is feeding

cleaning fluid to the cradle structure, ***rather than the shaving head***. As noted above, in Rayovac's products, fluid is fed to the interior of the shaving head, not to anything arguably constituting a "cradle structure."[10] The language of the claims is perfectly clear, and, if there were room for any doubt, the prosecution history makes it undeniable.

During prosecution, first amended application claim 1 for the '556 patent read:

> A cleaning device [(5)] for cleaning <u>a</u> [the] shaving head [(3)] of a dry shaving apparatus [(1)], <u>said cleaning device comprising:</u> ... <u>a fluid feed mechanism which feeds the cleaning fluid after it passes through the filter **to the shaving head** during cleaning</u> ...

(*See*, Response to Office Action, dated 2/26/96, Ex. __, at 1 [B000088] (emphasis added).) As the highlighted text indicates, Braun tried to claim the process of feeding cleaning fluid to the exterior of the shaving head -- the shaving head takes a shower. The Examiner, however, rejected that claim as obvious. (*See*, Second Office Action, dated 8/21/96, Ex. 17, at 2 [B000099].)

Braun then amended claim 1 to read in pertinent part:

> A cleaning device for cleaning the head of a dry shaving apparatus, said cleaning device comprising:
>
> ***
>
> a fluid feed mechanism which feeds the cleaning fluid after it passes through the filter to the [shaving head] **cradle structure** during cleaning ...

(*See*, Response to Second Office Action, dated 11/21/96, Ex. 16, at 1 [B000101].) Braun thus unequivocally changed the claim scope to require the feeding of fluid to the cradle structure -- the shaving head takes a bath. Accordingly, the Court must adopt Rayovac's construction.

---

[10] No part of the '556 patent specification mentions, let alone teaches feeding cleaning fluid to the interior of a shaving head.

29

*Southwall Technologies, Inc.*, 54 F.3d at 1576 ("The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution.").

### 4. "said container and filter being separable from the cradle structure as a unit"

**Rayovac's Proposed Construction:**  The container and filter are an integrally formed module which can be removed from the cradle structure.

**Braun's Proposed Construction:**  The cleaning fluid container together with the filter are removable from the cradle structure as a unit.

This Court should adopt Rayovac's proposed construction because:

- Rayovac's proposed construction explicitly acknowledges the plain and ordinary meaning of a "unit."

- The "object of the invention" of the '556 patent is only accomplished by a removable and replaceable module.

- Braun surrendered any possible contrary claim construction during prosecution.

The plain and ordinary language of this element requires that the cleaning fluid container and filter are integrally formed to comprise a single module that is removable from the cradle structure. Even Braun concedes that this element means that the cleaning fluid container and the filter are "removable" from the cradle structure. (Braun Br. at 26.) Braun takes exception, however, to an explicit definition of a "unit" because Braun knows there is no unitary container/filter in Rayovac's accused product. But, Braun cannot ignore the actual words of its claim.

#### (i)    The Claim Language

The Federal Circuit has confirmed that "unit" and "integrally formed" are generally synonymous. *See Vanguard Prods. Corp. v. Parker Hannifin Corp.*, 234 F.3d 1370, 1371-72 (Fed. Cir. 2000) (noting that "integral" means "***formed as a unit*** with another part.") (emphasis added). Similarly, a unit is defined as "[a]n individual group, structure, or other entity regarded

30

as an elementary structural or functional constituent of a whole." (*See id.*, at 1206.) Another definition of unit is "a mechanical part or module." (*Id.*) Indeed, Braun's preferred McGraw Hill Dictionary defines a "unit" as "an assembly or device capable of independent operation, such as a radio receiver, cathode-ray oscilloscope, or computer subassembly that performs some inclusive operation or function." (MCGRAW-HILL DICTIONARY OF SCIENTIFIC & TECHNICAL TERMS, at 2101, Ex. 19.) Likewise, the plain and ordinary meaning of integral is "a complete unit; a whole." (*See*, WEBSTER'S NEW COLLEGE DICTIONARY at 575, Ex. 20.) Rayovac's construction is simply all the scope the word "unit" can sustain. *See Pall Corp. v. PTI Technologies Inc.*, 259 F.3d 1383, 1390-91 (Fed. Cir. 2001) (discussing what constitutes a "unitary structure"); *Toro Co. v. White Consolidated Indus., Inc.*, 1999 F.3d 1295, 1302 (Fed. Cir. 1999) (construing claim consistently with specification's discussion of the importance of a unitary structure).

Contrary to Braun's argument, the doctrine of claim differentiation does not affect Rayovac's proposed construction. *See Multiform Desiccants, Inc. v. Medzam Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998) (cautioning that "the doctrine of claim differentiation cannot broaden claims beyond their correct scope, determined in light of the specification and the prosecution history and any relevant extrinsic evidence"). To be sure, dependent claim 8 is a species of an integrally formed module, but Rayovac's proposed construction includes the entire genus.

### (ii)    The Specification

Contrary to Braun's assertion that its construction is consistent with the specification (Braun Br. at 26), the word "unit" is never used in the specification to describe removal of the container/filter from the cradle structure. Indeed, as discussed above, the literal claim language excludes the preferred embodiment of the claimed invention. At best, the specification confirms

31

Rayovac's construction, stating, "it is an object of the present invention to improve upon the

[Simmons cleaning system] such as to allow ready replacement of the cleaning fluid container."

(*See*, '556 pat., at col. 1, ll. 60-62.) The only alleged invention is thus described:

> [T]his object is accomplished in that the cleaning fluid container is separable from the cleaning device and includes a filter means *integrally formed therewith*. Because *the filter is made integrally with the cleaning fluid container*, the container is readily removable together with the cleaning fluid container after the cleaning fluid container is used up or after the filter is largely clogged with dirt particles, such replacement merely involves detaching the container from the feed pump. A new cleaning fluid container including a new filter can then be inserted ...."

(*Id.* at col. 1, ll. 63 - col. 2, ll. 5 (emphasis added).) There is no escaping the fact that Braun's

purported invention was adding a replaceable container/filter unit to the Simmons patent --

nothing more.

### (iii)    The Prosecution History

Further, Braun unmistakably surrendered any argument that it did not intend the cleaning

fluid container and filter to be construed as a unitary part of a greater whole during prosecution.

As originally filed, application claim 1 stated in pertinent part:

> A cleaning device (5) for cleaning the shaving head (3) of a dry shaving apparatus (1) ... characterized in that the cleaning fluid container (61) is separable from the cleaning device (5) and includes a filter means (24) *integrally formed therewith*.

(*See*, U.S. Patent Application No. 08/370681, Ex.10, at 25 [B000072] (emphasis added).) The

Examiner rejected that claim as indefinite and anticipated by the Lee patent. (*See*, Office Action

dated 10/27/95, Ex. 12, at 2-3 [B000083-84].) The Examiner recognized that application claim 1

32

was indefinite as to whether the filter means was "integrally formed" with the cleaning fluid container or the cleaning device.[11]

To clarify, Braun amended application claim 1:

> A cleaning device [(5)] for cleaning <u>a</u> [the] shaving head [(3)] of a dry shaving apparatus [(1)], <u>said cleaning device comprising:</u> ... **said container and filter being** [is] **separable from the cleaning device** [(5) and] **as a unit** [includes a filter means (24) integrally formed therewith.].

(*See*, Response to Office Action, dated 2/26/96, Ex. 13, at 1 [B000088] (emphasis added).) While Braun was able to overcome the indefiniteness rejection, the Examiner again rejected application claim 1 as obvious in light of the Browning patent and the Schinn patent. Specifically, the Examiner noted that the cited references disclosed "a cleaning device being separable from the fluid container...." (*See*, Second Office Action, dated, 8/21/96, Ex. 17, at 2 [B000099].) In response, Braun again amended application claim 1 to read:

> A cleaning device for cleaning the head of a dry shaving apparatus, said cleaning device comprising:

> ***

> ... said **container and filter being separable from the** [cleaning device] **cradle structure as a unit**.

(*See*, Response to Second Office Action, dated 11/21/96, Ex. 16, at 1 [B000101] (emphasis added).) Braun then argued that "Browning does not teach or suggest a container and a filter that are <u>separable from a cradle structure</u> as a unit, as claimed." (*Id.* at 2 [B000102]) (emphasis in original).) To obtain a patent, Braun unmistakably represented to the public that claim 1 did not cover (1) a removable filter and (2) a removable container ***separately*** removed from ***any*** part of

---

[11] Pursuant to 35 U.S.C. § 112, ¶ 1, a patent applicant must draft definite claims such that the scope of the invention would be clear to one of ordinary skill in the art.

the cleaning device. Because Browning taught a removable container, Braun could only patent a *unitary* container/filter removable from a specific part -- the "cradle structure" -- of the claimed cleaning system. *Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution."). Accordingly, the Court must adopt Rayovac's proposed construction.

### B.    Construction of Claim 2

#### 1.    "The cleaning fluid container is comprised of two chambers, one chamber to hold the cleaning fluid, the other chamber being configured as the filter"

**Rayovac's Proposed Construction:**    The cleaning fluid container has two enclosed compartments; one holds the cleaning fluid, the other compartment is configured as the filter.

**Braun's Proposed Construction:** The cleaning fluid container consists of two chambers. One chamber holds cleaning fluid. The other chamber is a filter.

This Court should adopt Rayovac's proposed construction because:

- Braun is clearly trying to avoid the plain and ordinary meaning of a "chamber."

- The intrinsic evidence is consistent with a plain and ordinary meaning construction.

#### (i)    The Claim Language

A chamber is defined, in pertinent part, as "an enclosed space or compartment." (*See*, WEBSTER'S NEW COLLEGE DICTIONARY at 185, Ex. 21.) Braun does not appear to disagree that the "chambers" in the context of the patent claims are "compartments." Rather, Braun's proposed construction is yet another example of Braun attempting to keep its patent claims vague

34

and ambiguous.[12]   In contrast, Rayovac's proposed construction is the broadest possible plain and ordinary meaning of the term -- all that Braun could possibly hope its patent claim covers.

**(ii)      The Specification**

Contrary to Braun's assertion that "[t]here is no support for such a construction in the claim language itself or the specification" (Braun Br. at 28), the specification makes clear that the chambers disclosed are consistent with the plain and ordinary meaning of "an *enclosed* space or compartment." The following excerpts from the specification are illustrative:

- "According to a further feature of the cleaning fluid container of the present invention, an additional possibility is afforded in that the chambers are closed relative to the outside and are directly or indirectly connected to conduits of the feed pump and the cradle structure in a releasable manner." (*See*, '556 pat., at col. 2, ll. 15-20.)

- "Still further it is advantageous that the shaving apparatus is receivable in a cradle structure that is open towards atmosphere and is supplied with cleaning fluid from the outwardly closed cleaning fluid container by means of the feed pump." (*Id.* at col. 3, ll. 21-25.)

- "The cradle structure invariably contains only as much fluid as is necessary for cleaning the shaving head.  The remaining cleaning fluid is held in the cleaning fluid container which is closed relative to the atmosphere...." (*Id.* at col. 3, ll. 29-32.)

It is thus clear from the specification that the chambers of the "cleaning fluid container" are enclosed compartments so that the volatile cleaning fluid will not evaporate into the atmosphere. (*See* '556 pat., col. 3, ll. 31-34.)  Because Rayovac's proposed construction is consistent with all the intrinsic evidence, the Court should adopt it.

**C.      Construction of Claim 18**

---

[12]  Because there is no container/filter unit in Rayovac's accused products, there likewise is no filter corresponding with an enclosed space or compartment.

35

1.    **"The cradle structure is open towards atmosphere and is supplied with cleaning fluid from the cleaning fluid container by means of the fluid feed mechanism"**

**Rayovac's Proposed Construction:**  The cradle structure is unsealed when it is supplied with cleaning fluid from the cleaning fluid container by means of the fluid feed mechanism.

**Braun's Proposed Construction:**  The cradle structure is open towards atmosphere and is supplied with cleaning fluid from the cleaning fluid container by the fluid feed mechanism.

Contrary to Braun's assertion, there appears to be no real dispute between the parties. The Federal Circuit's ruling in another case would apply here --"open" standing alone means "not shut, confined, lidded [or] covered." (Braun Br. at 30 (*citing W.E. Hall Co. v. Atlanta Corrugating, LLC*, 370 F.3d 1343, 1350 (Fed. Cir. 2004)). It is indisputable that the claim language compels that no part of the cradle structure may be "shut, confined, lidded or covered" to fall within the scope of claim 18.

Rayovac assumes that Braun will not disagree that the "atmosphere" is the gaseous mass -- nitrogen, oxygen, etc. -- encompassing the earth. (*See*, WEBSTER'S NEW COLLEGE DICTIONARY, at 71, Ex. 22.) Thus, "the cradle structure open towards atmosphere" means that *no part* of the cradle structure may be "shut, confined, lidded or covered" towards "the atmosphere," as that term is commonly understood. A "seal" is an "airtight or watertight closure."[13] (*Id.* at 994, Ex. 23.) Rayovac's construction thus only tried to make explicit the plain and ordinary meaning of the term. But, if there is no real dispute between the parties over claim scope (as appears to be the case), Rayovac has no objection to the literal language of the claim.

**III.    RAYOVAC'S CONSTRUCTION OF THE '328 PATENT**

---

[13]  The specification, in fact, shows only one unsealed cradle structure, confirming Rayovac's plain and ordinary meaning construction. (*See* '556 pat., col. 3, ll. 21-34.)  The cradle structure can be open to the atmosphere because it retains volatile fluids only during the cleaning cycle.  The container, on the other hand, includes numerous seals so that it is "closed relative to the atmosphere." (*See id.*, at col. 9, ll. 14-24.)

Braun has asserted claims 11, 12, 14, and 18 against Rayovac. The parties disagree with respect to the proper construction of the following elements:

- "a cradle structure adapted to receive a shaving head of a shaving apparatus" (claims 11, 14, and 18);

- "a feed device for feeding cleaning fluid from said cleaning fluid container to said cradle structure" (claims 11, 14, and 18);

- "an impeller" (claim 12);

- "said cradle structure being permanently open to atmosphere" (claim 14); and

- "bracket" (claim 18)

The parties do not disagree on the remainder of the claim elements presented in Braun's Opening Brief. Accordingly, there is no need to address them here.

### 1. "cradle structure adapted to receive the head of a shaving apparatus" (claims 11, 12, 14, and 18)

**Rayovac's Proposed Construction:** This limitation is governed by § 112, ¶ 6. The recited function is receiving and cradling a shaving head of a shaving apparatus. The structure that performs that function is trough-shaped to conform to a shaver head and has an overflow device and a lower supporting surface.

**Rayovac's Alternative Proposed Construction:** If it is determined that § 112, ¶ 6 does not apply, then the term "cradle structure" should be construed as "a trough that supports a seated shaving head and that receives and retains fluid during the cleaning of the shaving head."

**Braun's Proposed Construction:** "Cradle structure able to receive the shaving head of a shaving apparatus"

#### (a) The disputed element is governed by 35 U.S.C. § 112, ¶ 6.

This Court should adopt Rayovac's proposed construction because:

- There was no plain and ordinary meaning for a "cradle structure" in the context of cleaning shavers in the early 1990's.

- The claim language merely recites function, i.e. -- receiving and cradling a shaving head -- without reciting a sufficient structure for performing that function.

- Braun's proposed construction ignores clear disavowals of claim scope in both the specification and the prosecution history.

37

### (i)    The Claim Language

The disputed element is essentially identical to the "cradle structure" element in the '556 patent. Accordingly, Rayovac incorporates by reference its discussion of the claim language at Section II. A. Unlike other terms, the intrinsic evidence as to this limitation compels the same construction for both patents.

Moreover, the claim language of non-asserted claim 1 proves that the claim element is governed by § 112, ¶ 6. Asserted claims 11, 14, and 18 do not include any specific information regarding the shape or other structural characteristics of the cradle. On the other hand, claim 1 recites "a cradle structure including a concave surface for receiving a shaving head of a shaving apparatus." Braun, of course, argues that "[t]he language in the claim *says nothing about the form of the cradle structure*, whether or not trough-like." (Braun Br. at 7 (emphasis added)). But that is the precisely the point. Claim 1 provides some, albeit minimal, structure. In stark contrast, the asserted claims are purely functional, "saying nothing" as to the structure that Braun claimed.

### (ii)    The Specification

As did the specification of the '556 patent, the '328 patent specification informs the Court as to what the disputed element means in the context of the patent and supplies the corresponding structure for the recited function:

- "[T]he cradle is configured as a cleaning dish, a drying dish and/or a storage device and/or is provided in the cleaning device." (*See* '328 pat., col. 2, ll. 29-31.)

- "[T]he cradle is provided with an overflow device and/or at least one outlet port through which the cleaning fluid can be conveyed to a cleaning fluid container." (*Id.* at col. 2, lines 56-59.)

- "The overflow device which constitutes part of the cradle ensures that the cradle is at all times filled with a sufficient amount of cleaning fluid, remaining filled to the upper rim area of the cradle." (*Id.* at col. 2, lines 63-67.)

38

- "[C]radle structure 7 [is] configured as a cleaning dish, a drying dish and *a storage means*." (*Id.* at col. 6, lines 16-17. (emphasis added).)

- "[T]he shaving head 3 rests in the cradle 7 by *means of elastic supporting means* 8 serving to avoid damage to the shaving apparatus as it is placed down in the cradle 7 and to cushion the shaving apparatus during vibration." (*Id.* at col. 6, ll. 56-60. (emphasis added).)

Thus, the structure disclosed in the specification that performs the claimed function of receiving and cradling a shaving head of a shaving apparatus is "a structure in the shape of a trough that conforms to the shape of a shaver head and has an overflow device and a lower supporting apparatus."

Moreover, Braun clearly disavowed claim scope in the '328 patent specification. In addition to the Simmons patent, the '328 patent specification explicitly notes prior art French Patent No. 2,568,111 ("the French '111 patent," Ex. 24.) which is also a shaver cleaning system.[14] The cleaning system of the French '111 patent is reproduced immediately below.

---

[14]  The '556 patent does not mention the French '111 patent.



FIG.1

40



**Not a "Cradle Structure"**

FIG. 2

While the '328 patent calls the structure serving to seat and bathe the shaving head in the Simmons patent a "cradle," (*see* '328 pat., at col. 1, l. 29), the structure of the French '111 patent is defined differently by Braun:

> [A] device for cleaning a shaving head of a dry shaving apparatus is known, in which the shaving head is introduced through a wall configured as a membrane into a cleaning chamber, being subsequently held in a cleaning position by a wall of a lid.

(*Id.*, at col. 1, ll. 59-63.)  Braun then criticized the French '111 patent for not being able to thoroughly clean a shaver because it used air, rather than liquid.  (*Id.*, at col. 2, ll. 1-8.)  The

41

"cleaning chamber" (illustrated as No. 5 in Figs. 2 above) of the French '111 patent is clearly "able" to receive a shaving head and meets the purported plain and ordinary meaning of a "cradle." But, by unambiguously defining the Simmons patent's "cradle" in which a shaver receives a bath against the French '111 patent's criticized air "cleaning chamber." Braun conceded that the term "cradle structure" should be construed as Rayovac suggests, requiring some structure accommodating a shaver bath. *See Astrazeneca AB v. Mutual Pharm. Co., Inc.*, 384 F.3d 1333, 1340 (Fed. Cir. 2004) ("Where the ... description of the invention describes a feature of the invention ... and criticizes other products ... that lack the same feature, this operates as a clear disavowal of these other products[.]"); *see also Gaus v. Conair Corp.*, 363 f.3d 1284, 1288-90 (Fed. Cir. 2004) (same).

### (iii)    The Prosecution History

Moreover, like the '556 patent, the prosecution history for the '328 patent demonstrates that Braun's position that "cradle structure" means "cradle structure" cannot be right. Original application claim 1 was substantively no different than Braun's proposed claim construction:

> A cleaning device (5), with a cradle structure (7) receiving the shaving head (3) of a shaving apparatus ....

(*See*, U.S. Patent App. No. 08/376849, Ex. 25, at 30 [B000251].) Dependent application claim 3, which ultimately became claim 11, recited the additional element of a "drying device." Likewise, dependent application claims 5, 8, and 16 ultimately became claims 12, 14, and 18, respectively. Arguments disclaiming subject matter with respect to a claim term apply with equal force to all instances of that term in the issued patent claims. *See Southwall Tech.*, 54 F.3d at 1579 ("Whether [the asserted claim] derived from any application claim discussed in the prosecution history is irrelevant to our interpretation of [the asserted claim] in light of that history.").

The Examiner rejected application claim 1 as anticipated by the Simmons patent and application claim 3 as obvious in view of the Simmons patent in combination with U.S. Patent No. 5,335,394 ("the Cunningham patent," attached as Ex. 26.).[15]  (*See*, Office Action dated 3/22/96, Ex. 27, at 2 [B000322].)

In response, Braun amended Claim 1 to read in pertinent part:

> A cleaning device [(5), with] comprising a cradle structure adapted to receive [(7) receiving the] a a shaving head [(3)] of a shaving apparatus ...

(*See*, Response to Office Action, dated 6/20/96, Ex. 28, at 1 [B000327].)  In support of its amendment, Braun argued:

> Cunningham does not teach a cradle structure adapted to receive an object to be cleaned and to which cleaning fluid is fed arranged above a fluid level of the cleaning fluid in a cleaning fluid container, as claimed.

(*Id.* at 9 [B000335].)  Significantly, Braun ***did not*** attempt to distinguish the Cunningham patent on the grounds that it was not specifically directed to cleaning shavers.   Rather, Braun unequivocally stated that there is no "cradle structure" in the Cunningham patent despite the fact that Cunningham discloses a "chamber containing cleaning fluid." (illustrated as No. 18 in Figs. 2 and 5 above) (*Id.*)  The "chamber" of the Cunningham patent clearly meets the 2003 McGraw Hill Dictionary Definition of "cradle" and would be "able" to receive a shaving head of a shaving apparatus (if appropriately sized).    Accordingly, Braun's proposed construction improperly attempts to recapture subject matter it explicitly disclaimed.

---

[15]   The Cunningham patent discloses a device for cleaning eyeglasses which included a U-shaped opening, acknowledged by Braun to be a "chamber containing cleaning fluid" that held the eyeglasses during cleaning. (*See*, Cunningham patent, Ex. __, at col. 3, ll. 16-22.)

43

2.    **Alternately, the "cradle structure" limitation should be construed as "a trough that supports a seated shaving head and that receives and retains fluid during the cleaning of the shaving head."**

(i)    **The Claim Language**

All asserted claims begin with the phrase "adapted to receive the head of a shaving apparatus." Thus, it is clear that the cradle structure must be shaped in a manner so as to receive the head of the shaving apparatus. The asserted claims also recite the following language

> a feed device *for feeding cleaning fluid from said cleaning fluid container to said cradle structure*, said cradle structure being arranged above a fluid level of the cleaning fluid in said cleaning fluid container *during the feeding of said cleaning fluid to said cradle structure*"

As noted by the language highlighted, cleaning fluid must be fed into the cradle structure during operation of the device, supporting the second portion of Rayovac's proposed claim construction.

Dependent claims 2 and 10 also support Rayovac's proposed construction, reciting respectively:

- "A device as claimed in claim 1, wherein a cross-sectional area of the outlet port is dimensioned such that during the cleaning operation the amount of cleaning fluid drained through the outlet port is smaller than the amount of cleaning fluid supplied to the cradle structure by the feeding device.

- "A device as claimed in claim 9, further comprising a drying device, the drying device being associated with the cradle structure and adapted to be activated by the electric arrangement after the cleaning fluid has been drained from the cradle structure."

Both dependent claims clearly illustrate that the claimed "cradle structure" both receives and retains fluid during the cleaning of the shaving head. *Vitronics Corp.*, 90 F.3d at 1582.

(ii)    **The Specification**

The '328 patent specification also supports Rayovac's claim construction, stating:

- "To this effect, *it is advantageous to configure the cradle as a storage device for the shaving apparatus*, which is associated with an electric arrangement for operating the shaving apparatus and the cleaning device, or the shaving apparatus,

44

the cleaning device and an air-drying device. Rather than being required to be removed from the cradle as has been necessary in prior arrangements, the shaving apparatus may be dried *and then stored therein*." (*See*, '328 pat., at col. 2, lines 21-28 (emphasis added).)

- "Further it is advantageous that the cradle or the shaving head are *adapted to be supplied with cleaning fluid from the cleaning fluid container* by means of the feed pump for a predetermined period of time, and that the cradle is subsequently available for the drying process without this involving the need for the shaving apparatus to be removed from the cleaning device." (*Id.* at col. 2, lines 32-38 (emphasis added).)

- "The cleaning device 5 is comprised of a cleaning fluid container 6 containing a fat-dissolving cleaning fluid 40 and of a *cradle structure 7 configured as a cleaning dish, a drying dish and a storage means*. Being slightly dished inwardly, the cradle 7 conforms approximately to the outer contour of the shaving head 3 of the shaving apparatus 1, and *it holds only as much cleaning fluid as is necessary* for the respective cleaning operation." (*Id.* at, col. 6, lines 14-21 (emphasis added).)

- "The overflow device which constitutes part of the cradle ensures that *the cradle is at all times filled with a sufficient amount of cleaning fluid, remaining filled to the upper rim area of the cradle*." (*Id.* at col. 2, lines 63-67 (emphasis added).)

- "With its shaving head 3 in an inverted position, *the shaving apparatus 1 is seated in the upwardly open cradle 7* configured as wet portion." (*Id.* at col. 6, lines 28-30 (emphasis added).)

As the highlighted text indicates, the cradle structure is consistently described as a being configured so that it "supports a seated shaving head and retains fluid while the shaving head is cleaned."

For reasons set forth above, the clear disavowal of claim scope over the French '111 patent also supports Rayovac's alternative claim construction.

### (iii)    The Prosecution History

Finally, for reasons expressed at Section II. A. 1., the prosecution history proves that Braun's "cradle structure" construction cannot be correct. Thus, assuming the Court does not

45

construe this term as governed by § 112, ¶ 6, the Court should adopt Rayovac's alternative construction

### 2.    "feed device for feeding cleaning fluid from said cleaning fluid container to said cradle structure"

**Rayovac's Proposed Construction:**  The term "feed device" is governed by § 112, ¶ 6.  The recited function is feeding cleaning fluid after it passes through the filter to the cradle structure during cleaning.  The structure that performs that function is a pump.

**Braun's Proposed Construction:**  "Mechanism that feeds cleaning fluid from the cleaning fluid container to the cradle structure."

This Court should adopt Rayovac's proposed construction because:

- The language of all the '328 patent claims dictates Rayovac's proposed construction.

- The claim language merely recites function, i.e. -- feeding fluid -- without reciting a sufficient structure for performing that function.

- Braun's proposed construction ignores the prosecution history.

#### (i)    The Claim Language

As with the '556 patent, Braun merely concludes, without offering any support, that the term "feed device" has a well understood meaning in the art.  The claim element would be no different if it simply read "a device for feeding cleaning fluid from said cleaning fluid container to said cradle structure."  "Feed device" is merely "a verbal structure that is not recognized as the name of structure and is simply a substitute for the term 'means for.'"  *See Lighting World, Inc.*, 382 F.3d at 1360.  There is no well understood meaning a "feed device" in the art, thus, this element fails to recite a sufficiently definite structure for performing the described function of feeding cleaning fluid to the cradle structure during cleaning.

#### (ii)    The Specification

While Braun disputes the applicability of § 112, ¶ 6, there is no dispute that the only structure disclosed in the written specification for performing the recited function is a pump:

46

- "Further, it is advantageous that the cradle or the shaving head are adapted to be supplied with cleaning fluid from the cleaning fluid container *by means of the feed pump* for a predetermined period of time. (*See*, '328 pat., at col. 3, ll. 21-25. (emphasis added).)

Accordingly, the Court should adopt Rayovac's proposed construction.

As with the '556 patent, Braun hides from the real dispute between the parties. Again, it is Rayovac's position that the recited function of the "feed device" is feeding cleaning fluid to the cradle structure, *not the shaving head*. As noted above, in Rayovac's products, fluid is fed to the interior of the shaving head via manifolds.

The specification proves that the literal language of the recited function controls, stating: "Further it is advantageous that the *cradle or the shaving head* are adapted to be supplied with cleaning fluid from the cleaning fluid container by means of the feed pump for a predetermined period of time[.]" (*See* '328 pat., at col. 2, ll. 32-35.) As discussed above, the specification contemplates (1) the exterior of the shaving head receiving a shower or (2) the shaving head being immersed in a bath.[16] But, the actual claim language is only directed to the latter option. By not claiming the former, Braun dedicated that option to the public. *Johnson & Johnston Assoc. Inc. v. R.E. Serv. Co., Inc.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002) ("[W]hen a patent drafter discloses but declines to claim subject matter . . . this action dedicates that unclaimed subject matter to the public.").

### (iii)    The Prosecution History

---

[16]  This brief statement in the '328 specification is clearly not adequate written description or an enabling disclosure of a cleaning system in which fluid is fed to the interior of the shaving head via manifolds. Braun makes a similar statements in the '556 specification. (*See, e.g.*, '556 pat., col. 4, ll. 42-45.)

Not only does the literal claim language and the specification demand that the recited function be construed to mean what it says, the prosecution history forbids any argument by Braun to the contrary.

As discussed above, all asserted patent claims originally depended from '328 patent application claim 1. (*See*, U.S. Patent App. No. 08/376849, Ex. __, at 30-33 [B000251-254].) Original application claim 1 stated:

> A cleaning device (5), with a cradle structure (7) receiving the shaving head (3) of a shaving apparatus, as well as at least one cleaning fluid container (6, 61) and ***a device (23) adapted to be driven by a motor (28) for feeding the cleaning fluid*** ...

(*Id.* at 30 [B000252] (emphasis added).) As previously discussed, the Examiner rejected application claim 1 as anticipated by the Simmons patent. (*See*, Office Action, dated 3/22/96, Ex. __, at 2 [B000322].) In response, Braun amended Claim 1 to read in pertinent part:

> A cleaning device [(5), with] <u>comprising</u> a cradle structure <u>adapted to receive</u> [(7) receiving the] <u>a</u> shaving head [(3)] of a shaving apparatus, [as well as]
>
> ***
>
> a <u>feed</u> device [(23) adapted to be driven by a motor (28)] for feeding [the] cleaning fluid ***to a said cradle structure*** ...

(*See*, Response to Office Action, dated 6/20/96, Ex. __, at 1 [B000327] (emphasis added).)

Braun thus chose to disclaim the option of showering the exterior of the shaving head in order to obtain a narrower patent rather than nothing at all. *Kimberly-Clark Corp.*, 745 F.2d at 1453 (stating that it is a "basic principle…that no patent should be grated which withdraws from the public domain technology already available to the public."). Accordingly, all intrinsic evidence compels that the literal recited function in Braun's claims cannot be expanded through claim construction arguments.

3.    "an impeller"

**Rayovac's Proposed Construction**: "a rotating device for forcing a gas in a given direction under pressure"

**Braun's Proposed Construction**: "an impeller"

The plain and ordinary meaning of the word "impeller" is "a rotating device for forcing a gas in a given direction under pressure." (*See*, WEBSTER'S NEW COLLEGE DICTIONARY, at 554, Ex. 28.) Braun offers a definition from the 2003 McGraw-Hill Dictionary which is purportedly different from the Webster's definition. While the words may not be identical, Rayovac can discern no substantive difference between the two, and there is no effort to narrow the plain and ordinary meaning of an "impeller." Rayovac simply believes that the jurors likely will not know what an impeller is and suggests that the Court adopt either of the two definitions.

### 4.    "said cradle structure being permanently open to atmosphere"

**Rayovac's Proposed Construction**: The cradle structure is permanently unsealed.

**Braun's Proposed Construction**:    The cradle structure is permanently open towards atmosphere.

For reasons discussed at Section IV. A., insofar as neither party defines the word "permanently," Rayovac believes that there is no real dispute between the parties. As above, if the parties are in agreement as to claim scope, Rayovac has no objection to the literal claim language.[17]

### 5.    "bracket"

**Rayovac's Proposed Construction**: "a simple, rigid L-shaped structure, one arm of which is fixed to a vertical surface, the other projecting horizontally to support a weight, as a shelf.

**Braun's Proposed Construction**: "a bracket"

---

[17]  The written description as to the alleged improvement over the Simmons patent confirms that Rayovac's plain and ordinary meaning construction is accurate. (*See*, '328 pat., at col. 2, ll. 47-53.) Such description shows that the patentee was well aware that "open to atmosphere" means unsealed and, conversely, "closed to atmosphere" means sealed.

49

This Court should adopt Rayovac's proposed construction because:

- It is the plain and ordinary meaning of the term.

- It is consistent with the specification.

- Braun's proffered dictionary definition is taken out of context.

## The Claim Language

The plain and ordinary meaning of a "bracket" is "a simple, rigid L-shaped structure, one arm of which is fixed to a vertical surface, the other projecting horizontally to support a weight, as a shelf." (*See*, WEBSTER'S NEW COLLEGE DICTIONARY, at 133, Ex. __.) Braun argues that the 2003 McGraw-Hill Dictionary definition "a projecting support" is more appropriate, but it is explicitly noted as being used in the context of civil engineering. (*See*, MCGRAW-HILL DICTIONARY OF SCIENTIFIC & TECHNICAL TERMS at __, Ex. __.) While civil engineers might talk about "brackets" when they are designing towers and highways, their terminology is plainly an ill fit applied to a device for cleaning shavers. Indeed, the 2003 McGraw-Hill Dictionary has an obviously inappropriate Civil Engineering definition for "cradle" that Braun neglects to mention to the Court. (Ex. 29.) Rayovac is not, as Braun suggests, trying to improperly narrow the term.

## The Specification

Indeed, the written description of the '328 patent uses the term "bracket" precisely in accord with the plain and ordinary meaning proposed by Rayovac:

- "Still further, it is advantageous that the shaving apparatus is insertable into a supporting structure configured as a bracket or a wall mount ..." (*See*, '328 pat., at col. 3, ll. 60-62.)

- "An additional possibility according to a further feature of the device of the present invention is afforded in that the bracket combines with its vertically extending leg ..." (*Id.*, at col. 4, ll. 60-62.)

50

The drawing of the bracket, item 10, in Figure 1 is indisputably L-shaped. (*See also Id.*, at col. 7, l.1.) The vertical arm is fixed to another vertical surface, "the wall mount 38," also shown in Figure 1. (*Id.*) The horizontal arm rests above the base of the shaver, bearing at least part of the load from the shaver. Given that Rayovac's proposed construction fits perfectly the only embodiment of a "bracket" shown in the patent, the Court should adopt Rayovac's plain and ordinary meaning construction.

## IV.    CONCLUSION

For all of the foregoing reasons, this Court should adopt the claim constructions proposed by Rayovac.

DATED: December 22, 2004              DWYER & COLLORA LLP


By:  _/s/ Joseph E. Haviland_____
Joseph E. Haviland (BBO #643814)
Dwyer & Collora LLP
600 Atlantic Avenue
Boston, MA  0210-1122
(617) 371- 1000
Facsimile: (617)371-1037

Mark A. Pals (admitted *pro hac vice*)
James A. Shimota (admitted *pro hac vice*)
Kevin S. Ueland (admitted *pro hac vice*)
James B. Coughlan (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
Aon Center
200 E. Randolph Dr.
Chicago, IL 60601
(312) 861-2000
Facsimile: (312) 861-2200
**Attorneys for Defendant**
**Remington Products Company, LLC**

51

## Certificate of Service

I, Joseph E. Haviland, hereby certify that a true copy of the above document was served by hand upon William L. Patton, Esquire, Dalila Argaez Wendlandt, Esquire and Lesley F. Wolf, Esquire, all of Ropes & Gray, LLP, One International Place, Boston, MA 02110 on December 22, 2004.

  /s/ Joseph E. Haviland  
Joseph E. Haviland
