# EXHIBIT
# 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BRAUN GmbH,

Plaintiff,

v.

REMINGTON PRODUCTS COMPANY,
LLC,

Defendant.

Civil Action No. 03-CV-12428-WGY

## BRAUN GmbH'S *MARKMAN* MEMORANDUM OF LAW
## IN SUPPORT OF ITS CLAIM CONSTRUCTION

BRAUN GmbH

By its attorneys,

William L. Patton (BBO #391640)
Dalila Argaez Wendlandt (BBO #639280)
Lesley Frieder Wolf (BBO #651199)
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
(617) 951-7000
(617) 951-7050 (facsimile)

Dated:   December 1, 2004

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................... i

TABLE OF AUTHORITIES .............................................................................. iii

I.      INTRODUCTION ............................................................................... 1

II.     LEGAL STANDARDS GOVERNING CLAIM CONSTRUCTION ................. 2

III.    PROPOSED CLAIM CONSTRUCTIONS .............................................. 3

    A.    Claim 11 of the '328 Patent ....................................................... 4

        1.    A Cleaning Device ............................................................ 4

        2.    Cradle Structure Adapted To Receive A Shaving Head Of A Shaving Apparatus ...................................................... 5

        3.    Cleaning Fluid Container ................................................... 9

        4.    Feed Device For Feeding Cleaning Fluid From Said Cleaning Fluid Container To Said Cradle Structure ....................... 10

        5.    Said Cradle Structure Being Arranged Above A Fluid Level Of The Cleaning Fluid In Said Cleaning Fluid Container During The Feeding Of Said Cleaning Fluid To Said Cradle Structure ..................................... 11

        6.    Drying Device .................................................................. 12

    B.    Claim 12 of the '328 Patent ..................................................... 13

    C.    Claim 14 of the '328 Patent ..................................................... 14

        1.    A Cleaning Device ........................................................... 14

        2.    Cradle Structure Adapted to Receive A Shaving Head Of A Shaving Apparatus, Said Cradle Structure Being Permanently Open To Atmosphere ................................... 15

        3.    Cleaning Fluid Container ................................................... 16

        4.    Feed Device For Feeding Cleaning Fluid From Said Cleaning Fluid Container To Said Cradle Structure ....................... 16

        5.    Said Cradle Structure Being Arranged Above A Fluid Level Of The Cleaning Fluid In Said Cleaning Fluid Container During The Feeding Of Said Cleaning Fluid To Said Cradle Structure ..................................... 16

D.    Claim 18 of the '328 Patent ...................................................................17

    1.    A Cleaning Device...........................................................................17

    2.    Cradle Structure Adapted To Receiver A Shaving Head Of A Shaving
          Apparatus ....................................................................................17

    3.    Cleaning Fluid Container.................................................................18

    4.    Feed Device For Feeding Cleaning Fluid From Said Cleaning Fluid
          Container To Said Cradle Structure..................................................18

    5.    Said Cradle Structure Being Arranged Above A Fluid Level Of The
          Cleaning Fluid In Said Cleaning Fluid Container During The Feeding
          Of Said Cleaning Fluid To Said Cradle Structure ..................................18

    6.    Bracket For Insertion Of The Shaving Apparatus ..................................18

E.    Claim 1 of the '556 Patent ...................................................................19

    1.    A Cleaning Device For Cleaning A Shaving Head Of A Dry Shaving
          Apparatus ....................................................................................19

    2.    Cradle Structure Adapted To Receive Therein The Shaving Head..........21

    3.    Cleaning Fluid Container Separate From The Cradle Structure For
          Holding Cleaning Fluid ...................................................................22

    4.    Filter............................................................................................24

    5.    Fluid Feed Mechanism Which Feeds The Cleaning Fluid After It
          Passes Through The Filter To The Cradle Structure During Cleaning .....24

    6.    Said Container And Filter Being Separable From The Cradle Structure
          As A Unit......................................................................................26

F.    Claim 2 of the '556 Patent ...................................................................27

G.    Claim 6 of the '556 Patent ...................................................................28

H.    Claim 18 of the '556 Patent .................................................................29

IV.    CONCLUSION............................................................................................31

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 339 F.Supp.2d 202 (D. Mass. 2004) .......................2

*Astrazeneca AB v. Mutual Pharm. Co.*, 384 F.3d 1333 (Fed. Cir. 2004) ........................................3

*Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615
    (Fed. Cir. 1995) ..................................................................................................................20

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801
    (Fed. Cir. 2002) ............................................................................................................ passim

*Control Resources, Inc. v. Delta Elecs., Inc.*, 133 F.Supp.2d 121 (D. Mass. 2001) .......................2

*Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251 (Fed. Cir. 1989) ...........4, 20

*Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048
    (Fed. Cir. 1994) ............................................................................................................ passim

*Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998) ..............................7

*Forest Labs., Inc. v. Abbott Labs.*, 239 F.3d 1305 (Fed. Cir. 2001) ..............................................27

*Fuji Photo Film Co., Ltd. v. Int'l Trade Comm'n*, 386 F.3d 1095
    (Fed. Cir. 2004) ............................................................................................................ passim

*Giese v. Pierce Chem. Co.*, 43 F.Supp.2d 98 (D. Mass. 1999) ..................................................3, 27

*Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580 (Fed. Cir. 1996) ............................ passim

*Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 330 F.Supp.2d 865
    (E.D. Mich. 2004) .................................................................................................................3

*IPXL Holdings, L.L.C. v. Amazon.Com, Inc.*, 333 F.Supp.2d 513 (E.D. Va. 2004) ........................3

*Innova/Pure Water, Inc. v. Safari Water Filtration System, Inc.*, 381 F.3d 1111
    (Fed. Cir. 2004) ................................................................................................................9, 27

*Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354 (Fed. Cir. 2004) .............. passim

*Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311 (Fed. Cir. 2004) ...........................8, 22

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) .......................................................3

*Mass. Inst. of Tech. v. Lockheed Martin Global Telecomm., Inc.*, 242 F.Supp.2d 58 (D. Mass. 2003)......................................................................................................................2

*MediaCom Corp. v. Rates Tech., Inc.*, 4 F.Supp.2d 17 (D. Mass. 1998) ........................3

*Phillips v. AWH Corp.*, 376 F.3d 1382 (Fed. Cir. 2004) ..................................................3

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298 (Fed. Cir. 1999)............5, 19

*Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303 (Fed. Cir. 2004)..........4, 5

*SuperGuide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870 (Fed. Cir. 2004) .................27

*Texas Digital System, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002) ...............8

*Vision Biosys. (USA) Trading, Inc. v. Ventana Med. Sys., Inc.*, No. 03-10391-GAO, 2004 WL 2387284 (D. Mass. Sept. 30, 2004) ...........................................................3

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996)................3, 19, 28

*W.E. Hall Co., Inc. v. Atlanta Corrugating, LLC*, 370 F.3d 1343 (Fed. Cir. 2004)...............16, 30

## FEDERAL STATUTES

35 U.S.C. § 112, ¶ 6.................................................................................................passim

## OTHER AUTHORITIES

McGraw-Hill Dictionary of Scientific & Technical Terms (6th ed. 2003)..........................8, 14, 19

## I.    INTRODUCTION

In the early 1990s, engineers at Braun GmbH ("Braun") developed a revolutionary device

to clean an electric or dry shaver.  In broad terms, the invention consists of a cradle that receives

the shaving head of a dry shaver, a container – separate from the cradle – that holds cleaning

fluid, and a feed device that feeds cleaning fluid from the container to the cradle for cleaning the

shaving head.  Because the container is separate from the cradle, any fluid remaining in the

cradle after the cleaning cycle can be drained to the container.  As a result, the shaver can remain

in the cradle after the cleaning cycle to allow for drying, charging, and storage of the shaver in

the cradle.

Prior to Braun's invention, cleaning of dry shavers required cumbersome disassembly of

the shaving head, a brush that might damage the increasingly intricate cutter portion of the

shaver, placement of the cutter portion of the shaver in a sealed compartment, or other methods

each of which resulted in a less than satisfactory cleaning of the shaver.  Braun's invention

solved the widely recognized and long felt problems of prior art methods of cleaning dry shavers.

Indeed, since its introduction in 1999, Braun's invention has enjoyed widespread commercial

success in the United States and abroad.  Braun applied for and was granted patents covering

different aspects of its invention, including the two patents at issue in this case – U.S. Patent No.

5,711,328 (the "'328 patent") and U.S. Patent No. 5,649,556 (the "'556 patent," together with the

'328 patent, "Braun's patents").[1]

In an attempt to capitalize on Braun's successful invention, Remington Products

Company ("Remington") deliberately began to offer and sell, in the United States, a cleaning

device for its rotary shavers – marketed under the name Titanium Smart System – that manifestly

---

[1] The '328 patent and '556 patent are filed herewith for the Court's convenience as Exhibits 1
and 3, respectively.

infringes Braun's patents. In response to the introduction of the Titanium Smart System in the United States, Braun filed a patent infringement action against Remington on December 3, 2003. In August 2004, more than eight months after Braun filed an infringement action in this Court, Remington (now operating as Rayovac[2]) began offering yet another cleaning product for dry shavers. This time, the Remington device (also marketed under the name Titanium Smart System) was designed to clean its foil shavers. Like the rotary version of the product, this product infringes Braun's patents. In particular, both products infringe claims 1, 2, 6, and 18 of the '556 patent and claims 11, 12, 14, and 18 of the '328 patent.

On October 14, 2004, Braun filed an amended complaint to cover, among other things, the foil version of Rayovac's cleaning device. On October 25, 2004, the Court entered a Scheduling Order (the "Order") that required the parties to file proposed claim constructions for the claims at issue. Pursuant to the Order, therefore, Braun respectfully submits the following proposed claim construction and sets forth, as an initial matter, the legal standards that govern claim construction.[3]

## II.    LEGAL STANDARDS GOVERNING CLAIM CONSTRUCTION

The legal standards governing claim construction are well known and have been applied by this Court in numerous cases. See, e.g., Amgen, Inc. v. Hoechst Marion Roussel, Inc., 339 F. Supp.2d 202 (D. Mass. 2004); Mass. Inst. of Tech. v. Lockheed Martin Global Telecomm., Inc., 242 F. Supp.2d 58 (D. Mass. 2003); Control Res., Inc. v. Delta Elecs., Inc., 133 F. Supp.2d 121

---

[2] Effective March 29, 2004, Remington merged with and into Rayovac Corporation. For clarity, Braun will use "Rayovac" to refer both to Remington prior to the merger and the current entity. Braun understands that counsel for Rayovac will be making a motion to the court to correct the caption in this matter.

[3] Braun has filed herewith as Exhibits 5 and 6 claim charts, which summarize Braun's proposed claim construction for the claims of the '328 patent and '556 patent, respectively. For the Court's convenience, Rayovac's proposed constructions are set forth on these charts as well.

(D. Mass. 2001); Giese v. Pierce Chem. Co., 43 F. Supp.2d 98 (D. Mass. 1999). MediaCom

Corp. v. Rates Tech., Inc., 4 F. Supp.2d 17 (D. Mass. 1998).

Those standards require only summary discussion. Claim construction is of course a

question for the Court alone and proceeds according to a methodology that begins (and often

ends) with intrinsic evidence – that is, the claim language, the specification, and the prosecution

history. If, and only if, there is ambiguity after consulting the intrinsic evidence, the Court may

look to extrinsic evidence but the extrinsic evidence cannot contradict the claim language,

specification, or prosecution history. Here there is no need to resort to extrinsic evidence. See,

e.g., Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996); Vitronics Corp. v.

Conceptronic, Inc., 90 F.3d 1576 (Fed. Cir. 1996).[4]

## III.    PROPOSED CLAIM CONSTRUCTIONS

Like many truly innovative inventions, the Braun cleaning device is elegantly simple. As

a result, the claims that define the invention are set forth in simple, straightforward language.

The plain meaning of the terms is supported by the written description of the specification and

the prosecution history. Indeed, there is relatively little disagreement about the terms of the

claims.

Instead, Rayovac seeks to avoid the plain meaning by importing limitations into the

claims that are nowhere justified. On one hand, Rayovac invokes the rubric of "means-plus-

---

[4] As the Court is aware, the Federal Circuit will hear en banc a case in which several Markman
issues are posed. See Phillips v. AWH Corp., 376 F.3d 1382 (Fed. Cir. 2004). None of these
issues are implicated by this case, and there is no reason to await the outcome. Courts, including
the Federal Circuit, have continued to decide cases with Markman issues during the pendency of
Phillips. See e.g., Astrazeneca AB v. Mutual Pharm. Co., 384 F.3d 1333 (Fed. Cir. 2004);
Vision Biosys. (USA) Trading, Inc. v. Ventana Med. Sys., Inc., No. 03-10391-GAO, 2004 WL
2387284 (D. Mass. Sept. 30, 2004); IPXL Holdings, L.L.C. v. Amazon.Com, Inc., 333 F.
Supp.2d 513 (E.D. Va. 2004); Honeywell Int'l, Inc. v. ITT Indus., Inc., 330 F. Supp.2d 865 (E.D.
Mich. 2004).

function" and on the other imports limitations of the specification and the preferred embodiment of the invention as a limitation of the claims. Neither approach is sound.

The foregoing analysis will be bourne out by consideration of the claims to which we now turn.

### A.    Claim 11 of the '328 Patent

Claim 11 of the '328 patent is directed to a cleaning device comprising:

a cradle structure adapted to receive a shaving head of a shaving apparatus,

a cleaning fluid container,

a feed device for feeding cleaning fluid from said cleaning fluid container to said cradle structure, said cradle structure being arranged above a fluid level of the cleaning fluid in said cleaning fluid container during the feeding of said cleaning fluid to said cradle structure, and

a drying device.

Ex. 1 at col. 14, ll. 12-23.

### 1.    A Cleaning Device

The parties are in agreement that the preamble to claim 11 of the '328 patent – "a cleaning device" – is not a limitation to the claim. The relevant case law supports this conclusion. To determine whether a preamble limits the scope of a claim, the Court must consider the patent as a whole to understand what was actually invented and is encompassed by the claim. See Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 808 (Fed. Cir. 2002); see also Corning Glass Works v. Sumitomo Elec. U.S.A., Inc., 868 F.2d 1251, 1257 (Fed. Cir. 1989). If the remainder of the claim following the preamble "defines a structurally complete invention ... [the inventor] uses the preamble only to state a purpose or intended use for the invention," it is not a limitation of the claim. Poly-America, L.P. v. GSE Lining Tech., Inc., 383 F.3d 1303, 1310 (Fed. Cir. 2004). Where the preamble is "merely extolling the benefits or

features of the claimed invention," it does not limit the scope of the claim unless there is a clear

reliance on those features to be "patentably significant." Catalina Mktg., 289 F.3d at 809.

The preamble's statement that the claim is for a "cleaning device," Ex. 1, col. 14, I. 12,

adds little to the elements of the claim that follow, and it is unnecessary "to give life, meaning,

and vitality to the claim." Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1305

(Fed. Cir. 1999). The remainder of the claim "defines a structurally complete invention," and the

preamble describes only the "purpose or intended use for the invention," and therefore the

preamble is not a limitation of the claim. Poly-America, 383 F.3d at 1310.

Rayovac agrees that the preamble to claim 11 of the '328 patent is not a limitation. See

Ex. 7[5] at 1.

### 2.    Cradle Structure Adapted To Receive A Shaving Head Of A Shaving Apparatus

Both the plain language of the claim and the specification support the construction of the

claimed "cradle structure" as a cradle structure able to receive the shaving head of a shaving

apparatus. The specification describes a "cradle structure receiving the shaving head of a

shaving apparatus." Ex. 1 at col. 1, ll. 4-5. In the preferred embodiment (shown below as Figure

1), the cradle 7 is "slightly dished inwardly, [it] conforms approximately to the outer contour of

the shaving head 3 of the shaving apparatus 1, and it holds only as much cleaning fluid as is

necessary for the respective cleaning operation." Id. at col. 6, ll. 17-21. See also FIG. 6 (cradle

7).

---

[5] Rayovac's '328 Patent Claim Construction Contentions are filed herewith as Exhibit 7.

Fig. 1



Rayovac erroneously construes the "cradle structure" element of claim 11 as a means-plus-function element governed by 35 U.S.C. § 112, ¶ 6. See Ex. 7 at 1. Under § 112, ¶ 6, an element in a claim can be expressed as a means for performing a specified function without reciting a particular structure within the claim. Such means-plus-function elements "shall be construed to cover the corresponding structure . . . described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6. The history and language of § 112, ¶ 6 make it clear that the statute affords an option to the patentee to express his invention as a means for performing a function. Greenberg v. Ethicon Endo-Surgery, Inc., 91 F.3d 1580, 1584 (Fed. Cir. 1996). "The question then is whether, in the selection of claim language, the patentee must be taken to have exercised that option." Id.

The use of the word "means" in a claim creates a rebuttable presumption that the patentee invoked the option provided by § 112, ¶ 6. See Ethicon, Inc. v. United States Surgical Corp., 135 F.3d 1456, 1463 (Fed. Cir. 1998). It follows that the failure to use the word "means" creates a presumption that § 112, ¶ 6 option was not invoked. Indeed, "the use of the term 'means' has come to be so closely associated with 'means-plus-function' claiming that it is fair to say that the use of the term 'means' (particularly as used in the phrase 'means for') generally invokes section 112(6) and that the use of a different formulation generally does not." Greenberg, 91 F.3d at 1584 (holding that claim element "detent mechanism" did not invoke § 112, ¶ 6 because, in part, it did not use the word "means"). The Federal Circuit has made it clear "that the presumption flowing from the absence of the term 'means' is a strong one that is not readily overcome." Lighting World, Inc. v. Birchwood Lighting, Inc., 382 F.3d 1354, 1358 (Fed. Cir. 2004). So much so that only once since 1996, has the Federal Circuit found that a limitation lacking the term "means" was in means-plus-function form. Id. at 1362.

In the absence of the term "means," Rayovac faces a heavy burden to overcome the presumption and show that the claim is nonetheless governed by § 112, ¶ 6. See Lighting World, 382 F.3d at 1358. Rayovac cannot satisfy its burden.

In particular, although the mechanism "cradle structure" takes its name from the function it performs – receiving or supporting an object – it has a well understood meaning in the art. In such a case, "the fact that a particular mechanism . . . is defined in functional terms is not sufficient to convert a claim element containing that term into a 'means for performing a specified function' within the meaning of section 112(6). Many devices take their names from the functions they perform. The examples are innumerable, such as 'filter,' 'brake,' clamp,' 'screwdriver,' or 'lock.'" Greenberg, 91 F.3d at 1583. What is important is not whether a

particular mechanism is defined in terms of what it does, "but that the term, as the name for

structure, has a reasonably well understood meaning in the art." Id. In this case, the term cradle

structure has a reasonably well understood meaning in the art. Thus, for example, the MCGRAW-

HILL DICTIONARY OF SCIENTIFIC & TECHNICAL TERMS (6th ed. 2003), defines "cradle" as a

"framework or other resting place for supporting or restraining objects."[6] As such, the element

"cradle structure" is not governed by § 112, ¶ 6.

   This conclusion is bolstered by the prosecution history, which is void of any suggestion

that the patentee intended to claim in the fashion allowed by § 112, ¶ 6. See, e.g., Greenberg, 91

F.3d at 1583 (looking to the absence of any discussion in the prosecution history of means-plus-

function form in concluding that element "detent mechanism" was not expressed in "means-plus-

function" form). Thus, Rayovac cannot overcome the presumption – apparent from the absence

of the conventional "means" language in the claim itself – that that the cradle structure element is

not subject to § 112, ¶ 6. See Linear Tech. Corp. v. Impala Linear Corp., 379 F.3d 1311, 1319

(Fed. Cir. 2004).

   Recognizing the flaws in its means-plus-function construction, Rayovac offers an

alternative construction, claiming that the "cradle structure" should be construed as a "trough

that supports a seated shaving head and that receives and retains fluid during the cleaning of the

shaving head." See Ex. 7 at 1. This construction finds no support in the claim language itself.

As such, Rayovac's claim construction must be rejected. "The claim is a statutory requirement,

prescribed for the very purpose of making the patentee define precisely what his invention is;

and it is unjust to the public, as well as an evasion of the law, to construe it in a manner different

---

[6] "[D]ictionaries, encyclopedias and treatises are particularly useful resources to assist the Court in determining the ordinary and customary meaning of claim terms." Texas Digital Sys., Inc. v. Telegenix, Inc., 308 F.3d 1193, 1202 (Fed. Cir. 2002).

from the plain import of its terms." See Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1117 (Fed. Cir. 2004); see also Fuji Photo Film Co., Ltd. v. Int'l Trade Comm'n, 386 F.3d 1095, 1099 (Fed. Cir. 2004) (interpreting claim based on "clear direction" provided by "plain meaning of claim language"); Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc., 34 F.3d 1048, 1054 (Fed. Cir. 1994) (construction of a claim does not permit limits stated only in a specification to be imported into claim itself).

In this case, the claim language provides only that the cradle structure be adapted to receive the shaving head of a shaving apparatus. The claim language does not support limitation of the "cradle structure" to a "trough" that "supports" a "seated shaving head" or that "receives and retains fluid during the cleaning of the shaving head." The claim says nothing about the form of the cradle structure, whether or not trough-like. It says nothing about supporting a seated shaving head. It says nothing about cleaning fluid at all. Therefore, Rayovac's alternative proposed construction must (like its means-plus-function construction) be rejected.

### 3.    Cleaning Fluid Container

The cleaning fluid container claimed in claim 11 of the '328 patent is plainly a container for holding cleaning fluid. The specification supports this plain meaning construction, stating that "the cleaning fluid container 6 may be open or, as will be subsequently described with reference to an embodiment (FIG. 7), partially or entirely closed." Ex. 1 at col. 6, ll. 24-27. Figures 1, 6, and 7 illustrate the cleaning fluid container. Ex. 1 at FIG. 1 (cleaning fluid container 6); FIGS. 6-7 (cleaning fluid container 61).

Rayovac apparently agrees with Braun's claim construction of this element. See Ex. 7 at 1 (construing cleaning fluid container as "that which contains cleaning fluid"); see also Greenberg, 91 F.3d at 1583 (noting that "container" is a "commonplace structural term" that is

well understood in the art despite the fact that it "does not call to mind a single well-defined structure.").

### 4. Feed Device For Feeding Cleaning Fluid From Said Cleaning Fluid Container To Said Cradle Structure

The "feed device for feeding cleaning fluid from said cleaning fluid container to the said cradle structure" is a mechanism that feeds cleaning fluid from the cleaning fluid container to the cradle structure. The specification supports this construction, stating that "[w]ith the feed pump, a continuous supply of cleaning fluid can be fed to the shaving head received in the separate cradle until the shaving head is completely clean," Ex. 1 at col. 2, ll. 16-18, and that "it is advantageous that the cradle or the shaving head are adapted to be supplied with cleaning fluid from the cleaning fluid container by means of a feed pump for a predetermined period of time." Id. at col. 2, ll. 32-35. This construction is further supported by the specification's explanation that during operation of the device, "the feed pump for supplying cleaning fluid to the shaving head is turned on for a first period of time between 3 and 20 seconds, during which time the cleaning fluid is continuously conveyed to the cradle through a filter means as the cleaning cycle proceeds," id. at col. 5, ll. 9-14, and "[d]uring the cleaning cycle, cleaning fluid is continuously flushed through cradle 7." Id. at col. 6, ll. 30-34. The specification further states that "[o]peration of the switching means 9 causes the feed pump 23 to be driven which then delivers cleaning fluid 40 to the cradle 7 and to the shaving head 3 for a predetermined period of time, the fluid dislodging all of the hair dust 75 in the shaving head 3 (see segment 30 to 31 in FIG. 4)." Id. at col. 8, ll. 23-27. Figures 2, 3, and 6 all demonstrate this mechanism. Id. at FIGS. 2-3, 6 (feed pump 23).

The prosecution history of the '328 patent supports this construction. In particular, in response to a December 13, 1996 office action, the claim was amended to specify that the feed

device fed cleaning fluid "from said cleaning fluid container" to the cradle structure. See Ex. 2[7]

at B000362. This, among other things, distinguished the invention of the '328 patent from prior

art reference – a German patent No. 412981 (the "German Patent") – which lacked this feature.

See id. at B000363.

Rayovac erroneously claims that this element invokes § 112, ¶ 6. See Ex. 7 at 1. As with

Rayovac's construction of the "cradle structure" element, Rayovac bears the burden of showing

that the "feed device" element invokes § 112, ¶ 6 even though it is not in conventional "means-

plus-function" language. See Lighting World, 382 F.3d at 1358. Rayovac cannot meet this

burden.

In particular, the absence of the means-plus-function language indicates the claim is not

governed by § 112, ¶ 6. See Greenberg, 91 F.3d at 1583-84. Moreover, the term "feed device"

though functional has a well understood meaning in the art. See id.; Lighting World, 382 F.3d at

1358 (finding that "connector assembly" though functional has a well understood meaning and

therefore is not governed by § 112, ¶ 6). It is a mechanism for moving fluids (in this case,

cleaning fluid) from one location to another. Additionally, nothing in the prosecution history

indicates that the patentee opted to claim the invention in terms of a means for performing

something. As such, application of § 112, ¶ 6 is improper. Greenberg, 91 F.3d at 1584.

> ### 5. Said Cradle Structure Being Arranged Above A Fluid Level Of The Cleaning Fluid In Said Cleaning Fluid Container During The Feeding Of Said Cleaning Fluid To Said Cradle Structure

The element "said cradle structure being arranged above a fluid level of the cleaning fluid

in said cleaning fluid container during the feeding of said cleaning fluid to said cradle structure"

means that, during the cleaning operation, the cradle structure is above the fluid level of the fluid

in the container. The specification supports this construction. It states that the invention

---

[7] The prosecution history of the '328 patent is filed herewith as Exhibit 2.

improves the cleaning of the shaving apparatus "in that the cradle structure receiving the shaving head is arranged separately from the cleaning fluid container, and that the cleaning fluid is fed from the container to perform the cleaning action." Ex. 1 at col. 2, ll. 11-15. The specification also states that it is "still [of] further advantage that the cradle is arranged outside the cleaning fluid and/or above the fluid level of the cleaning fluid held in the cleaning fluid container, and that at least the cradle and/or the cleaning fluid container are permanently open towards the outside; that is, to atmosphere." Ex. 1 at col. 2, ll. 44-49.

The prosecution history of the '328 patent supports this construction. In particular, in response to a December 13, 1996 office action, the claim was amended to specify that cradle structure was arranged above a fluid level of the cleaning fluid in the container "during the feeding of said cleaning fluid to said cradle." See Ex. 2 at B000362. This, among other things, distinguished the invention of the German Patent, which lacked this feature. See id. at B000363.

Rayovac has not provided a separate claim interpretation for this element of claim 11. See Ex. 7 at 1.

### 6.    Drying Device

The claim 11 of the '328 patent includes a "drying device" which is a device to dry the shaver head. The specification supports this construction, stating that "[i]t is another advantage that the cradle for receiving the shaving head is associated with an air-drying device adapted to be activated by an electric arrangement after the cleaning fluid has been drained from the cradle to the cleaning fluid container." Ex. 1 at col. 2, ll. 39-43. The specification also describes the function of the drying device as drying the shaver head, stating that "the drying device and/or heating means of the drying device is turned on for the duration of the second and/or third period of between 3 and 30 minutes, air being supplied to the shaving head to effect a drying action." Id. at col. 5, ll. 22-26. That the drying device dries the shaver head is further evidenced by the

descriptions of the preferred embodiment that "[t]he impeller 16 sits in an impeller casing 17 communicating through an opening 18 with the space above the cradle 7, and it directs a continuous stream of hot air heated by a heating means, not shown in the drawings, against the shaving head 3 to effect a drying action following the cleaning operation," id. at col. 7, ll. 34-39, and "[b]eing automatically inserted in the circuit at point 33, the impeller 16 is turned on with or without heating means and driven by the electric motor 13, thus delivering dry air to the shaving head 3 for a predetermined period of time (see segment d between points 33 and 34)." Id. at col.9, ll. 50-56. Figure 1 shows the impeller and impeller casing of the preferred embodiment. Id. at FIG. 1 (impeller 16, impeller casing 17).

Rayovac believes that this claim element does not require construction. See Ex. 7 at 1.

**B.    Claim 12 of the '328 Patent**

Claim 12 of the '328 patent is a dependent claim directed to a cleaning device as claimed in claim 11, wherein the drying device comprises an impeller. The additional claim element "wherein the drying device comprises an impeller" should be construed to mean that the drying device includes an impeller. The specification supports this construction. See, e.g., Ex. 1 at col. 7, ll. 29-39 ("Provided at the lower end of the electric motor 13 is a motor output shaft 15 on which an impeller or impeller wheel 16 is arranged serving in particular for drying the cleaned shaving head 3 of the shaving apparatus 1 following termination of the cleaning cycle of the shaving head 3 described in more detail in the following. The impeller 16 sits in an impeller casing 17 communicating through an opening 18 with the space above the cradle 7, and it directs a continuous stream of hot air heated by a heating means, not shown in the drawings, against the shaving head 3 to effect a drying action following the cleaning operation."); id. at col. 8, ll. 59-62 ("Further arranged in the area of the bracket 10 is the motor 28 adapted to drive directly the impeller 16 which is operatively associated with a heating means for heating the air used for

drying the shaving apparatus 1."); id. at col. 9, ll. 50-54 ("Being automatically inserted in the circuit at point 33, the impeller 16 is turned on with or without heating means and driven by the electric motor 13, thus delivering dry air to the shaving head 3 for a predetermined period of time (see segment d between points 33 and 34)."); id. at FIG. 1 (impeller 16).

Rayovac's claim construction of this element would limit the impeller to a "rotating device for forcing a gas in a given direction under pressure." See Ex. 7 at 2. No such limitations appear in the words of the claim or the specification. As such, Rayovac's construction is improper. See e.g., Electro Med., 34 F.3d at 1054 (construction of a claim does not permit limits stated only in a specification to be imported into claim itself). Indeed, "impeller" is understood broadly in the art as the "rotating member of a turbine, blower, fan, axial or centrifugal pump, or mixing apparatus." MCGRAW-HILL DICTIONARY OF SCIENTIFIC & TECHNICAL TERMS (6th ed. 2003). Rayovac's attempts to import other limitations – unsupported by the claim language itself – should be rejected.

### C.    Claim 14 of the '328 Patent

Claim 14 of the '328 patent is directed to a cleaning device comprising:

a cradle structure adapted to receive a shaving head of a shaving apparatus, said cradle structure being permanently open to atmosphere,

a cleaning fluid container, and

a feed device for feeding cleaning fluid from said cleaning fluid container to said cradle structure, said cradle structure being arranged above a fluid level of the cleaning fluid in said cleaning fluid container during the feeding of said cleaning fluid to said cradle structure.

Ex. 1 at col. 14, ll. 28-38.

### 1.    A Cleaning Device

The preamble to claim 14 is identical to the preamble to claim 11 and is also not a claim limitation. Braun refers the Court to its earlier discussion concerning the preamble to claim 11

and incorporates that reasoning herein.  As with claim 11, Rayovac concurs with Braun's

interpretation that the preamble to claim 14 is not a limitation.  See Ex. 7 at 2.

> **2.    Cradle Structure Adapted to Receive A Shaving Head Of A Shaving Apparatus, Said Cradle Structure Being Permanently Open To Atmosphere**

Both the plain language of the claim and the specification support the construction of the

claimed "cradle structure" as a cradle structure that is able to receive the shaving head of a

shaving apparatus and that is open to the atmosphere.  As is clear from the plain language of the

claim itself, the cradle structure of claim 14 differs from the cradle structure of claim 11 only

insofar as the cradle structure of claim 14 has a further limitation – it must be open to the

atmosphere.

The specification further supports construction of the cradle structure as open to the

atmosphere.  In particular, the specification provides that "at least the cradle and/or the cleaning

fluid container are permanently open towards the outside, that is, to atmosphere.  This enables

the shaving apparatus to be inserted in the cradle without any effort and to be withdrawn

therefrom without the need to utilize any parts closing the cradle.  "  Ex. 1 at col. 2, ll. 47-55.

Furthermore, in the preferred embodiment, "the cradle 7, is configured as a cleaning system open

to the atmosphere."  Id. at col. 6, ll. 23-24.  Figure 1 and Figure 6 illustrate the cradle, able to

receive the shaving head and open to the atmosphere.  Id. at FIG. 1 (cradle 7); FIG. 6 (same).

Rayovac construes "permanently open to the atmosphere" as "permanently unsealed."

Ex. 7 at 2.  This construction, however, draws no support from either the language of the claim

or the specification.  The specification does reference prior art cleaning devices that required an

"elaborate seal" as having certain disadvantages that are addressed by the Braun invention.  Ex. 1

at col. 2, ll.47-55 ("[T]he cradle... [is] permanently open towards the outside, that is, to

atmosphere....this arrangement obviates the provision of an elaborate seal, enabling an

economical cleaning device to be built affording substantially greater operating comfort than the cleaning system know in the art."). However, nothing in the specification limits the invention to "unsealed" cradle structures. Instead, the specification (like the claim itself) supports a construction which contemplates an invention "permanently open to the atmosphere," including a range of possibilities such as things not shut, confined, lidded, covered, or sealed. See, e.g., W.E. Hall Co., Inc. v. Atlanta Corrugating, LLC, 370 F.3d 1343, 1350 (Fed. Cir. 2004) (rejecting attempt to redefine "open" in contravention of its ordinary meaning as "not shut or confined, not surrounded by barriers") (citing 10 OXFORD ENGLISH DICTIONARY 835 (2d ed. 1989)). Therefore, the claim should be construed in accordance with its plain meaning – a cradle structure that is able to receive the shaving head of a shaving apparatus and that is open to the atmosphere.

### 3.    Cleaning Fluid Container

The cleaning fluid container element of claim 14 mirrors the same element in claim 11. As such, it should be construed as a container for holding cleaning fluid.

### 4.    Feed Device For Feeding Cleaning Fluid From Said Cleaning Fluid Container To Said Cradle Structure

The element "feed device for feeding cleaning fluid from said cleaning fluid container to the said cradle structure" of claim 14 is identical to the element in claim 11. As such, it should be construed as a mechanism that feeds cleaning fluid from the cleaning fluid container to the cradle structure.

### 5.    Said Cradle Structure Being Arranged Above A Fluid Level Of The Cleaning Fluid In Said Cleaning Fluid Container During The Feeding Of Said Cleaning Fluid To Said Cradle Structure

The element "said cradle structure being arranged above a fluid level of the cleaning fluid in said cleaning fluid container during the feeding of said cleaning fluid to said cradle structure"

of claim 14 mirrors that in claim 11. As such, the element means that during the cleaning operation, the cradle structure is above the fluid level of the fluid in the container.

### D.   Claim 18 of the '328 Patent

Claim 18 of the '328 patent is directed to a cleaning device comprising:

a cradle structure adapted to receive a shaving head of a shaving apparatus,

a cleaning fluid container,

a feed device for feeding cleaning fluid from said cleaning fluid container to said cradle structure, said cradle structure being arranged above a fluid level of the cleaning fluid in said cleaning fluid container during the feeding of said cleaning fluid to said cradle structure, and

a bracket for insertion of the shaving apparatus therein.

Ex. 1 at col. 15, ll. 7-18.

### 1.   A Cleaning Device

The preamble to claim 18 is identical to the preamble to claim 11. As with claim 11, the preamble to claim 18 is not a limitation. Braun refers the court to its earlier discussion concerning the preamble to claim 11 and incorporates that reasoning herein. As with claim 11, Rayovac concurs with Braun's interpretation that the preamble to claim 18 is not a limitation. See Ex. 7 at 2.

### 2.   Cradle Structure Adapted To Receiver A Shaving Head Of A Shaving Apparatus

The "cradle structure" element of claim 18 mirrors that in claim 11. As such, it should be construed to be a cradle structure that is able to receive the shaving head of a shaving apparatus, and Rayovac's proposed constructions to the contrary, see Ex. 7 at 2-3, should be rejected as meritless, as discussed above.

### 3.    Cleaning Fluid Container

The "cleaning fluid container" of claim 18 mirrors that in claims 11 and 14. As such, it should be construed as a container for holding cleaning fluid.

### 4.    Feed Device For Feeding Cleaning Fluid From Said Cleaning Fluid Container To Said Cradle Structure

The "feed device for feeding cleaning fluid from said cleaning fluid container to the said cradle structure" of claim 18 is identical to that in claims 11 and 14. As such, the element should be construed as a mechanism that feeds cleaning fluid from the cleaning fluid container to the cradle structure, and Rayovac's proposed construction to the contrary, see Ex. 7 at 3, should be rejected as meritless, as discussed above.

### 5.    Said Cradle Structure Being Arranged Above A Fluid Level Of The Cleaning Fluid In Said Cleaning Fluid Container During The Feeding Of Said Cleaning Fluid To Said Cradle Structure

The element "said cradle structure being arranged above a fluid level of the cleaning fluid in said cleaning fluid container during the feeding of said cleaning fluid to said cradle structure" of claim 18 mirrors the same element in claims 11 and 14, and should be construed accordingly. As such, the element means that during the cleaning operation, the cradle structure is above the fluid level of the fluid in the container.

### 6.    Bracket For Insertion Of The Shaving Apparatus

The element – "a bracket for insertion of the shaving apparatus therein" – of claim 18 should be construed as a bracket into which the shaving apparatus can be inserted. The specification supports this construction, stating that "it is advantageous that the shaving apparatus is insertable into a supporting structure configured as a bracket or a wall mount." Ex. 1 at col. 3, ll. 60-63. Figures 1, 2, and 3 illustrate the bracket and the shaving apparatus inserted therein. Id. at FIGS. 1-3 (bracket 10).

Rayovac urges a limited construction of bracket to mean "a simple, rigid L-shaped structure of which is fixed to a vertical surface, the other projecting horizontally to support a weight, as a shelf." See Ex. 7 at 3. Such a construction is unduly narrow and is not supported by the claim language or the specification. See Vitronics, 90 F.3d at 1582. It is well understood that brackets can be of a variety of shapes and sizes. A bracket is any of a variety of "projecting support[s]." MCGRAW-HILL DICTIONARY OF SCIENTIFIC & TECHNICAL TERMS (6th ed. 2003). Therefore, Rayovac's unduly narrow construction should be rejected by the Court.

E.    **Claim 1 of the '556 Patent**

Claim 1 of the '556 patent is directed to a cleaning device for cleaning a shaving head of a dry shaving apparatus, said cleaning device comprising:

> a cradle structure adapted to receive therein the shaving head;
>
> a cleaning fluid container separate from the cradle structure for holding a cleaning fluid;
>
> a filter; and
>
> a fluid feeding mechanism which feeds the cleaning fluid after it passes through the filter to the cradle structure during cleaning, said container and filter being separable from the cradle structure as a unit.

Ex. 3 at col. 11, ll. 16-26.

1.    **A Cleaning Device For Cleaning A Shaving Head Of A Dry Shaving Apparatus**

Braun and Rayovac agree that unlike the preamble in the infringed claims of the '328 patent, which merely identifies the purpose of the claimed inventions, the preamble to claim 1 of the '556 patent is a limitation to the claim itself. This construction is well supported by precedent. A preamble serves as a limitation if it is "necessary to give life, meaning, and vitality to the claim." Pitney Bowes, 182 F.3d at 1305. If a preamble is used in a claim element as an antecedent basis, it is generally construed as a limitation because it demonstrates reliance on both

the preamble and the body of the claim to define the scope of the invention.  See Bell

Communications Research, Inc. v. Vitalink Communications Corp., 55 F.3d 615, 620 (Fed. Cir.

1995).  Additionally, when the written description is limited to a particular application of the

invention which is reflected in the preamble, the preamble is properly construed as a limitation.

See Corning Glass Works, 868 F.2d at 1257.

     In this case, the preamble – a "cleaning device for cleaning a shaving head of a dry

shaving apparatus" – is a limitation as it animates the remaining elements of the claim.  Unlike

the preamble of the '328 patent claims, the elements of the claim following the preamble of

claim 1 of the '556 patent underscore the significance of the specific function of the invention –

namely, that it is a cleaning device especially for cleaning the shaving head of a dry shaving

apparatus.  Without this limitation, elements such as "a cradle structure adapted to receive

therein the shaving head," Ex. 1 at col. 11, ll. 18-19, (emphasis added), which depend on the

preamble for antecedent basis, have little meaning.  See Catalina Mktg., 289 F.3d at 808

("[D]ependence on a particular disputed preamble phrase for antecedent basis may limit claim

scope because it indicates a reliance on both the preamble and claim body to define the claimed

invention.")  Moreover, the limitation of the invention to cleaning the shaving head of a dry

shaver is underscored by the specification, which discusses the problem with prior art devices for

cleaning the shaving head of a dry shaver.  See id. ("[W]hen reciting additional structure or steps

[is] underscored as important by the specification, the preamble may operate as a claim

limitation.").  Additionally, the prosecution history supports the significance of the preamble as

the purpose of this invention was used to distinguish it from prior art, including U.S. Patent No.

3,890,988 (the "Lee Patent") for automobile part cleaning assembly, as nonanalogous.  See Ex.

4[8] at B000095; see also Catalina Mktg., 289 F.3d at 808-09 ("[R]eliance on the preamble during prosecution to distinguish the claimed invention from the prior art transforms the preamble into a claim limitation.").

Rayovac agrees that this preamble is a limitation. See Ex. 8[9] at 1.

### 2.    Cradle Structure Adapted To Receive Therein The Shaving Head

As is clear from the claim language and the specification of the '556 patent, the claimed "cradle structure" is a cradle structure that receives the shaving head of the dry shaving apparatus. The specification describes "a cradle structure adapted to receive therein the shaving head." Ex. 3 at col. 1, ll. 6-7. The specification also notes that "[s]till further it is advantageous that the shaving apparatus is receivable in a cradle structure that is open towards atmosphere and is supplied with cleaning fluid from the outwardly closed cleaning fluid container by means of the feed pump." Id. at col. 3, ll. 21-25. In the preferred embodiment (shown supra as Figure 1[10]), "a cradle structure 7 . . . is configured as a cleaning dish, is slightly dished inwardly, thus conforming approximately to the outer contour of the shaving head 3 of the shaving apparatus 1, and holds only as much cleaning fluid as is necessary for the particular cleaning operation." Ex. 3 at col. 4, ll. 24-29.   Figures 1, 2, and 6 illustrate the cradle 7 that receives the shaving head of the dry shaving apparatus. Id. at FIGS. 1-2, 6 (cradle 7).

The prosecution history of the '556 patent supports this claim construction.   In particular, in response to the October 27, 1995 office action, a prior art reference – the Lee Patent – was distinguished on the ground, inter alia, that the cradle adapted to receive therein a shaving head was not the same as the sink or "open basin" of the Lee Patent into which automotive parts were tossed for cleaning. See Ex. 4 at B000096.  The sink of the Lee Patent "is not adapted to 'cradle'

---

[8] The prosecution history of the '556 patent is filed herewith as Exhibit 4.
[9] Rayovac's '556 Patent Claim Construction Contentions are filed herewith as Exhibit 8.
[10] Figure 1 of the '556 patent is the same as Figure 1 of the '328 patent.

anything, much less a shaving head." Id.; see also id. at B000103 (distinguishing prior art references relating to cleaning toothbrushes and painting equipment on the ground that the cradles structure of claim 1 is adapted to receive a shaving head).

Rayovac erroneously contends that this element is governed by 35 U.S.C. § 112, ¶ 6. See Ex. 8 at 1. Like the '328 patent, the plain language of the claim belies Rayovac's position. The absence of the word "means" in the language of the claim itself creates a strong presumption that the claim is not in means-plus-function form. See Lighting World, 382 F.3d at 1358; Greenberg, 91 F.3d at 1584. Moreover, as discussed supra in connection with claim 11 of the '328 patent, the claim element "cradle structure" has a well understood meaning in the art. Finally, nothing in the prosecution history suggests that the patentee opted to draft the claim in means-plus-function form. Id. Thus, as with claim 11 of the '328 patent, Rayovac cannot satisfy its heavy burden to show that application of § 112, ¶ 6 is warranted in this case. See Linear Tech., 379 F.3d at 1319.

Recognizing, perhaps, that its attempts to force application of § 112, ¶ 6 are futile, Rayovac offers an identical (and equally flawed) construction of the "cradle structure" element of claim 1 of the '556 patent as it did with claim 11 of the '328 patent. For all of the reasons stated supra in connection with claim 11 of the '328 patent, Rayovac's alternative construction should be rejected by the Court.

### 3. Cleaning Fluid Container Separate From The Cradle Structure For Holding Cleaning Fluid

The "cleaning fluid container separate from the cradle structure for holding cleaning fluid" of claim 1 means a container for holding cleaning fluid that is separate from the cradle structure. The specification supports this construction. In particular, the specification describes "a cleaning fluid container holding a cleaning fluid," Ex. 3 at col. 1, ll. 7-8, and further states that

the "remaining cleaning fluid is held in the cleaning fluid container which is closed relative to

atmosphere, thus preventing the volatile substances admixed to the cleaning fluid from

vaporizing too rapidly." Id. at col. 3, ll. 31-34.  In the preferred embodiment, the cleaning fluid

container 61 is closed and separate from the cradle structure.  See id. at FIGS. 1, 7.  Indeed, in

the preferred embodiment, the:

> cleaning fluid container 61 is configured as a cartridge (FIGS. 7 to 9) and
> includes an outlet port 63 communicating with the cradle 7 through the
> conduit 64.  In this manner, the cleaning circuit is closed.  The container
> 61 inlet and outlet ports, 62, 63 shown in FIG. 7 may also be provided at a
> bottom 67 of the cleaning fluid container 61 to be connected to suitable
> conduits from above.  It thereby [is] achieved that a permanent flow of
> cleaning fluid is delivered from the cleaning fluid container 61 to the
> intake means of the pump 23, causing the pump to draw only cleaning
> fluid, rather than air, when put into operation.

Id. at col. 8, ll. 14-25.  It also provides that the "cleaning fluid container 61 or cartridge shown in

FIGS. 7 to 9 is comprised of a cylindrical casing 101 having a bottom 67 and a lid 72 in which

the inlet port 62 and outlet port 63 as well as the filter 24 are provided."  Id. at col. 8, ll. 40-43.

Figures 2, 3, 6, and 7 are illustrative.  See id. at FIG. 2 (container 61); FIG. 3 (same); FIG. 6

(same); FIG. 7 (same).

The limitation that the cleaning fluid container is "separate from the cradle structure" was

added as an amendment to the original claim 1 in response to an August 21, 1996 office action.

See Ex. 4 at B000101.  The prosecution history explains that this limitation, among other things,

distinguished the claimed invention from a prior art reference — U.S. Patent No. 4,991,609 (the

"Browning Patent").  As set forth in the prosecution history, the Browning Patent relates to an

ultrasonic cleaning device for cleaning toothbrushes, wherein a "recessed portion 44 for

receiving a toothbrush is located within container 14.  Browning's recessed portion 44 is part of

container 14, and therefore, Browning does not teach or suggest a container and filter that are

separable from a cradle structure as a unit, as claimed."  Id. at B000102.

Rayovac erroneously contends that the "cleaning fluid container" element should be construed as "a removable and replaceable cartridge which holds cleaning fluid." See Ex. 8 at 1. While one of the preferred embodiments disclosed in the specification discusses a cartridge-like cleaning fluid container, it is improper to import limitations from the specification that are not supported by the clear claim language. "Claims are not to be interpreted by adding limitations appearing only in the specification." Electro Med., 34 F.3d at 1054. Thus, while the cleaning fluid container element includes a cartridge-like container, it is not limited to such containers.

### 4.      Filter

The "filter" element of claim 1 of the '556 patent, "filter," (Ex. 3 at col. 11, l. 22) is a self-defining term well known in the art. Greenberg, 91 F.3d at 1583 (noting that "filter" is a self-defining word well known in the art). It is shown in Figures 3, 6, and 7. See Ex. 3 at FIGS. 3-5. Rayovac agrees that this element of the claim does not require construction. See Ex. 8 at 1.

### 5.      Fluid Feed Mechanism Which Feeds The Cleaning Fluid After It Passes Through The Filter To The Cradle Structure During Cleaning

The "fluid feed mechanism which feeds the cleaning fluid after it passes through the filter to the cradle structure during cleaning" element of claim 1 is a mechanism or device that feeds cleaning fluid, after it passes through a filter, to the cradle structure during cleaning. The specification supports this construction. In particular, the specification describes "a device adapted to be driven by a motor for feeding the cleaning fluid," Ex. 3 at col. 1, ll. 8-10, and states that "it is advantageous that the shaving apparatus is receivable in a cradle structure that is open towards atmosphere and is supplied with cleaning fluid from the outwardly closed cleaning fluid container by means of the feed pump." Id. at col. 3, ll. 21-25.

As described in the specification, "cleaning fluid 40 is continuously flushed through cradle 7" during the cleaning cycle of the preferred embodiment. Id. at col. 4, ll. 37-38.

Describing the preferred embodiment, the specification further states: "As becomes apparent from FIG. 1, the connection means 19 is in communication with the collecting reservoir 65 to which intake means 48 for the feed pump 23 is connected, the pump delivering the cleaning fluid through a conduit 50 to a filter means 24 according to FIG. 7." Id. at col. 6, ll. 13-17. The "[o]peration of the switching means 9 causes the feed pump 23 to be driven which then delivers cleaning fluid to the cradle 7 and to the shaving head 3 for a predetermined period of time, the fluid dislodging all of the hair dust 75 in the shaving head 3 (see segment 30 to 31 in FIG. 4) ." Id. at col. 6, ll. 30-34. Figures 2, 3, and 6 illustrate the fluid feed mechanism of the preferred embodiment. See id. at FIGS. 2-3 (pump 23).

Rayovac erroneously contends that the "fluid feed mechanism" element of claim 1 invokes § 112, ¶ 6. See Ex. 8 at 1-2. As with Rayovac's construction of the "cradle structure" element of claim 1, Rayovac bears the burden of showing that the "fluid feed mechanism" element invokes § 112, ¶ 6 even though it is not in conventional "means-plus-function" language. See Lighting World, 382 F.3d at 1358. Rayovac cannot meet this burden. In particular, the term "fluid feed mechanism" though functional has a plain meaning, well understood meaning in the art. See Greenberg, 91 F.3d at 1583-84. It is a mechanism for moving fluids from one location (through a filter, in this case) to another location. Moreover, nothing in the prosecution history indicates that the patentee opted to claim the invention in terms of a means for performing something. Greenberg, 91 F.3d at 1584 (noting that § 112, ¶ 6 is an option that a patentee can choose to elect and looking to prosecution history in determining that patentee did not elect the option).

As such, Rayovac's proposed construction must be rejected.

6.    **Said Container And Filter Being Separable From The Cradle Structure As A Unit**

The claim limitation – "said container and filter being separable from the cradle structure as a unit" – should be construed to mean that the cleaning fluid container together with the filter are removable from the cradle structure as a unit. The specification supports this construction, stating:

> According to the present invention, this object is accomplished in that the cleaning fluid container is separable from the cleaning device and includes a filter means integrally formed therewith. Because the filter is made integrally with the cleaning fluid container, the container is readily removable together with the cleaning fluid after the cleaning fluid is used up or after the filter is largely clogged with dirt particles, such replacement merely involving the step of detaching the container from the feed pump. A new cleaning fluid container including a new filter can then be inserted in the wall mount receiving the dry shaving apparatus and be connected with the feed pump.

Ex. 3 at col. 1, l. 63 – col. 2, l. 7. In the preferred embodiment, "[w]hen the filter 24 is no longer useable, the cleaning fluid container 61 is detached from the conduits 50, 64, and a new one is substituted." Ex. 3 at col. 8, ll. 59-63.

The prosecution history supports this construction. For example, in response to an August 21, 1996 office action, this element of claim 1 was amended from "said container and filter being separable from the cleaning device as a unit" to the present language – "said container and filter being separable from the cradle structure as a unit." Ex. 4 at B000101. The prosecution history explains that this limitation, among other things, distinguished the claimed invention from the prior art reference, the Browning Patent. As set forth in the prosecution history, the Browning Patent relates to an ultrasonic cleaning device for cleaning toothbrushes, wherein a "recessed portion 44 for receiving a toothbrush is located within container 14. Browning's recessed portion 44 is part of container 14, and therefore, Browning does not teach

or suggest a container and filter that are separable from a cradle structure as a unit, as claimed."
Id. at B000102.

Rayovac contends that this claim element should be construed to mean that "the container and filter are an integrally formed module which can be removed from the cradle structure." Ex. 8 at 2. Such a construction, however, improperly imports limitations from the preferred embodiment and specification to the claim language. The specification cannot be used to rewrite the claim language, especially when the specification is narrower than the actual claim. See SuperGuide Corp. v. DirecTV Enters., Inc., 358 F.3d 870, 875 (Fed. Cir. 2004). "Claims are not to be interpreted by adding limitations appearing only in the specification." Electro Med., 34 F.3d at 1054; see also Giese, 43 F. Supp.2d at 103 ("Limitations that appear only in the specification may not be read into patent claims."). Nothing in the claim language suggests that the claim element means an "integrally formed module." Indeed, such a "module" type claim construction might be reasonable with regard to claim 8, a claim dependent on claim 1, which provides that "the cleaning fluid container has at its end, a locating member which aligns and laterally supports the filter in the interior of the cleaning fluid container." However, no similar language is found in claim 1. "Where claims use different terms, those differences are presumed to reflect a difference in the scope of the claims." Forest Labs., Inc. v. Abbott Labs., 239 F.3d 1305, 1310 (Fed. Cir. 2001); see also Innova/Pure Water, 381 F.3d at 1123 (limitations in dependent claims generally not imported to the independent claims on which they rely). As such, Rayovac's proposed construction should be rejected.

**F.    Claim 2 of the '556 Patent**

Claim 2 of the '556 patent is a dependent claim directed to a cleaning device as claimed in claim 1, wherein the "cleaning fluid container is comprised of two chambers, one chamber serving to hold the cleaning fluid, the other chamber being configured as the filter." Ex. 3 at col.

11, ll. 27-30. The additional claim limitation should be construed as requiring that the cleaning

fluid container consists of two chambers. One chamber holds cleaning fluid. The other chamber

is a filter. This construction is supported by the plain meaning of the claim language as well as

the specification. The latter provides that "it is advantageous that the cleaning fluid container is

comprised of two chambers, one chamber serving to hold the cleaning fluid, the other chamber

being configured as the filter means." Ex. 3 at col. 2, ll. 11-14. The specification further states

that "[t]he filter 24 forms a first chamber receiving the hair dust, while the remaining part of the

casing forms a second chamber for holding filtered cleaning fluid." Ex. 3 at col. 9, ll. 6-8. The

two chambers are shown in Figures 7 through 9 in container 61.    Rayovac purports to limit the

"chambers" of claim 2 to "enclosed compartments." See Ex. 8 at 7. There is no support for such

a construction in the claim language itself or the specification. As claim construction is

grounded first and foremost in the language of the claim itself, followed in significance by the

patent specification, Rayovac's construction lacks merit and must be rejected by the Court. See

Vitronics, 90 F.3d at 1582 (first step in claim construction is words of claim itself, followed by

consideration of specification); see also Fuji Photo Film, 386 F.3d at 1099 (language of claim

controls construction).

    **G.**    **Claim 6 of the '556 Patent**

    Claim 6 of the '556 patent is a dependent claim directed to a cleaning device as claimed

in claim 1, wherein "the cleaning fluid container contains ports through which cleaning fluid

passes in and out of the cleaning fluid container." Ex. 3 at col. 11, ll. 51-53. The quoted claim

limitation should be construed to mean that the cleaning fluid container includes inlet and outlet

ports through which cleaning fluid passes into and out of the cleaning fluid container. This

construction is supported by the specification, which provides that the "cleaning fluid container...

includes an outlet port 63 communicating with the cradle 7 through the conduit 64. In this

manner, the cleaning circuit is closed. The container 61 inlet and outlet ports 62, 63 shown in FIG. 7 may also be provided at a bottom 67 of the cleaning fluid container 61, enabling the cleaning fluid container 61 to be connected to suitable conduits from above." Id. at col. 8, ll. 14-21); see also id. at col. 8, ll. 40-43 ("The cleaning fluid container 61 or cartridge shown in FIGS. 7 to 9 is comprised of a cylindrical casing 101 having a bottom 67 and a lid 72 in which the inlet port 62 and the outlet port 63 as well as the filter 24 are provided."); Id. at FIGS. 6-7 (container 61).

Rayovac incorporates its construction of claim 1 of the '556 for its construction of claim 6 and contends that the element of the claim directed towards the cleaning fluid container does not require construction. See Ex. 8 at 2.

### H.     Claim 18 of the '556 Patent

Claim 18 of the '556 patent is a dependent claim directed to a cleaning device as claimed in claim 1, wherein "the cradle structure is open towards atmosphere and is supplied with cleaning fluid from the cleaning fluid container by means of the fluid feed mechanism." Ex. 3 at col. 12, ll. 42-45. The quoted claim limitation means that the cradle structure is open towards atmosphere and is supplied with cleaning fluid from the cleaning fluid container by the fluid feed mechanism.

This construction is supported by the specification. In particular, the specification provides that "it is advantageous that the shaving apparatus is receivable in a cradle structure that is open towards atmosphere and is supplied with cleaning fluid from the outwardly closed cleaning fluid container by means of the feed pump. This results in an open system for the cleaning device, enabling the shaving apparatus to be inserted laterally from outside into the cleaning device at any time, without the need to remove components or covers from the cleaning device." Id. at col. 3, ll. 21-29; see also id. at col. 4, ll. 30-34 ("The cleaning device 5, in

particular the wet portion thereof, that is, the cradle 7, is configured as a cleaning system open to

atmosphere, whilst a cleaning fluid container 61, as subsequently described with reference to the

embodiment FIG. 7, is closed."); id. at col. 4, ll. 35-37 ("With its shaving head 3 in an inverted

position, the shaving apparatus 1 is seated in the upwardly open cradle 7 configured as a wet

portion."); id. at col. 6, ll. 30-34 ("Operation of the switching means 9 causes the feed pump 23

to be driven which then delivers cleaning fluid to the cradle 7 and to the shaving head 3 for a

predetermined period of time, the fluid dislodging all of the hair dust 75 in the shaving head 3

(see segment 30 to 31 in FIG. 4)); id. at col. 8, ll. 26-34 ("According to this embodiment (FIG.

6), the switching means 9 activates the feed pump 23 configured as a vane-type pump drawing

air at the beginning of the cleaning cycle and forcing this air through the conduit 50 into the

cleaning fluid container 61 so that the cleaning fluid flows from the cleaning fluid container 61

through the outlet port 63 and the conduit 64 to the drained cradle 7, refilling it until the cleaning

fluid is discharged to the collecting reservoir 65 over the overflow device 26."); id. at FIGS. 1-2,

6 (cradle 7, pump 23).

Rayovac construes this claim limitation as requiring that "the cradle is unsealed when it is

supplied with cleaning fluid from the cleaning fluid container by means of the fluid feed

mechanism." Ex. 8 at 2. This construction finds no support in the claim language and the

specification. Nothing in the claim requires the cradle to be "sealed" or "unsealed." Instead, the

claim provides merely that the cradle is open towards atmosphere, including a range of

possibilities such as not shut, confined, lidded, covered, or sealed. See, e.g., W.E. Hall Co., 370

F.3d at 1350 (quoting definition of "open" as "not shut in or confined, not surrounded by

barriers"). Moreover, Rayovac's construction is nonsensical in that it implies that the cradle is

"sealed" prior to being supplied with cleaning fluid. There is no support for such an assumption

in the claim language or specification.  <u>See</u> <u>Fuji Photo Film</u>, 386 F.3d at 1099 (language of claim

itself provides clear direction for construction of claims).  As such, Rayovac's construction is

improper.

**IV.    CONCLUSION**

     Based on the foregoing reasons, Braun respectfully requests that the Court adopt its

proposed claim construction for the claims at issue in this case.

BRAUN GmbH,

By its attorneys,


____s/Lesley F. Wolf_____
William L. Patton (BBO #391640)
Dalila Argaez Wendlandt (BBO #639280)
Lesley F. Wolf (BBO #651199)
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
(617) 951-7000

Attorneys for Plaintiff


Dated: December 1, 2004