## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

BRAUN GmbH,                                    )
                                               )
        Plaintiff,                         )
                                               )
    v.                                       )        Civil Action No. 03-CV-12428-WGY
                                               )
RAYOVAC CORPORATION,                           )
                                               )
        Defendant.                         )
                                               )
                                               )
_____)

## RAYOVAC'S SECOND AMENDED ANSWER AND COUNTERCLAIMS TO THE AMENDED COMPLAINT

Except as expressly admitted or qualified herein, Defendant Rayovac Corporation, denies each and every allegation contained in the Second Amended Complaint of Plaintiff Braun GmbH ("Braun"). Furthermore, Rayovac understands that Braun intends to dismiss with prejudice any and all claims under U.S. Patent No. 5,649,556. Accordingly Rayovac thus denies any allegations relating to the '556 patent. Rayovac, for its answer against Plaintiff, hereby states:

### NATURE OF THE ACTION

1.     Braun, a wholly owned subsidiary of Gillette Holding Company --a wholly owned subsidiary of the Gillette Company ("Gillette") and a leading global manufacturer of electric shavers, brings this action to stop Rayovac from willfully infringing Braun's pioneering patented technology on shaving products.

**RESPONSE:**     Rayovac admits that the action brought by Braun purports to be one for patent infringement. Rayovac otherwise denies all other allegations of Paragraph 1.

2.     Braun is the world leader in the development and marketing of dry shavers, due in no small measure to its longstanding technological advantage over its rivals, including Rayovac. Braun's patented technology is the result of its extensive and successful research and development programs.

**RESPONSE:**     Denied.

3.     Braun's current dry shaving products – its Syncro System Smart Logic products – incorporate patented features that distinguish them from the competition. These features include Braun's automatic self-cleaning Clean&Charge® system designed to thoroughly and hygienically clean the dry shaver for optimal shaver performance.  As explained in the Syncro System Smart Logic package, the Clean&Charge system provides "[c]onvenient cleaning with no mess, no fuss or removing the foil."   The innovation of the Clean&Charge system is the subject of Braun's United States Patent No. 5,711,328 and United States Patent No. 5,649,556.

**RESPONSE:**     Rayovac admits that Braun's package includes the statement quoted in the third sentence of Paragraph 3.  Rayovac lacks sufficient information to form a belief concerning the truth or falsity of the allegations of the second sentence of Paragraph 3 and thus denies those allegations.   Rayovac acknowledges that Braun contends that the Clean&Charge system is the subject of the two identified patents.  Rayovac otherwise denies all allegations of Paragraph 3.

4.     On information and belief, in or about October 2003 Rayovac launched a dry shaver system called "Titanium Smart System," which Rayovac markets as the "world's first rotary cleaning system" (the "Titanium Smart System rotary cleaner"). It includes a cleaning device, which Rayovac calls the "Smart Cleaner" that "automatically cleans, charges and

renews" the dry shaver. Importantly, this device is an unauthorized use of Braun's patented technology described above.

**RESPONSE:** Rayovac admits that in or about October 2003, Rayovac began selling a shaver called the "Titanium Smart System" shaver that it has described as the "world's first rotary cleaning system." Rayovac admits the allegations of the second sentence of Paragraph 4. Rayovac otherwise denies all allegations of Paragraph 4.

5. On information and belief, in or about August 2004 Rayovac launched another dry shaver system, also under the name "Titanium Smart System," which Rayovac markets as the "world's 1st foil cleaning system with titanium" (the "Titanium Smart System foil cleaner"). It includes a cleaning device, which Rayovac also calls "Smart Cleaner" that "automatically cleans, charges, and renews" the dry shaver. Importantly, this device, like its predecessor, is an unauthorized use of Braun's patented technology described above.

**RESPONSE**: Rayovac admits that in or about August 2004 it began selling a shaver called the "Titanium Smart System" shaver that it has described as the "world's 1st foil cleaning system with titanium." Rayovac admits the allegations of the second sentence of Paragraph 5. Rayovac otherwise denies all allegations of Paragraph 5.

6. On information and belief, in or about May 2005 Rayovac launched a dry shaver system for women, under the name "Smooth & Silky Titanium System," (the "Titanium Smart System women's foil cleaner," together with the Titanium Smart System rotary cleaner and the Titanium Smart System foil cleaner, the "Titanium Smart Systems"). It includes a cleaning device, which Rayovac also calls "Smart Cleaner" that "automatically cleans, charges, and

renews" the dry shaver.  Importantly, this device, like its predecessors, is an unauthorized use of Braun's patented technology described above.

**RESPONSE**:    Rayovac admits that in or about May 2005 it began selling a women's shaver called the "Smooth & Silky Titanium System."  Rayovac admits the allegations of the second sentence of Paragraph 6.  Rayovac otherwise denies all allegations of Paragraph 6.

7.    Rayovac's Titanium Smart Systems are blatant attempts by Rayovac to seize a significant part of Braun's business by misappropriating Braun's own, patented technology.

**RESPONSE**:    Denied.

8.    Braun brings this action, seeking both injunctive relief and damages. Braun respectfully requests that this Court enjoin Rayovac from making, importing, advertising and selling the Titanium Smart Systems and further requests an award of damages to compensate them for the injuries they have already suffered.  Braun also requests that it be awarded treble damages, attorneys' fees, and related legal costs and expenses.

**RESPONSE:**    Rayovac admits that Braun purports, through this action, to seek injunctive relief and damages.  Rayovac otherwise denies all other allegations in Paragraph 8.

## THE PARTIES

9.    Braun is a German corporation headquartered in Kronberg, Germany.  Braun is a wholly owned subsidiary of Gillette Holding Company, which is also a German corporation and wholly owned by Gillette, a corporation organized and existing under the laws of the State of

Delaware and having its principal executive offices at Prudential Tower Building, Boston, Massachusetts 02199.

**RESPONSE:**    Rayovac lacks sufficient information to form a belief concerning the truth or falsity of the allegations of Paragraph 9 and thus denies those allegations.

10.    On information and belief, Rayovac is corporation organized and existing under the laws of the State of Wisconsin and having its principal place of business at Six Concourse Parkway, Suite 3300, Atlanta, Georgia 30328.

**RESPONSE:**    Denied.  On May 2, 2005, Rayovac Corporation changed its name to Spectrum Brands Corporation.  Spectrum Brands Corporation is a corporation organized and existing under the laws of the State of Wisconsin and having its principal place of business at Six Concourse Parkway, Suite 3300, Atlanta, Georgia 30328.

11.    On information and belief, Rayovac makes, uses, sells and/or offers for sale throughout the United States the shaving products alleged herein to infringe Braun's United States Patent No. 5,711,328 and United States Patent No. 5,649,556.  On information and belief, Rayovac does business in this Judicial District.

**RESPONSE:**    Rayovac admits that it does business in this Judicial District. Rayovac otherwise denies all other allegations of Paragraph 11.  Braun has agreed to dismiss with prejudice any and all claims under the '556 patent.  Accordingly Rayovac thus denies any allegations as they relate to the '556 patent.

## JURISDICTION AND VENUE

12.     This action for patent infringement arises under the Patent Laws of the United States, 35 U.S.C. § 1 et seq. Jurisdiction of this Court over the subject matter of this action is based on 28 U.S.C. §§ 1338 (patents) and 1331 (federal question).  Venue is proper under 28 U.S.C. §§ 1391(b) and (c) and 1400(b), because defendant resides in this Judicial District within the meaning of those provisions.

**RESPONSE:**     Rayovac admits that the action brought by Braun purports to be one for patent infringement.  Rayovac admits that venue is proper in this Judicial District. Rayovac otherwise denies all remaining allegations of paragraph 12.

## FIRST CAUSE OF ACTION
### (For Patent Infringement)

13.     Braun repeats and realleges the allegations of paragraphs 1 through 10 above.

**RESPONSE:**     Rayovac restates and realleges its responses to Paragraphs 1 through 10 above and incorporates them in response to the allegations contained in Paragraph 13 of Plaintiff's Second Amended Complaint.

14.     On January 27, 1998, U.S. Patent No. 5,711,328 ("the '328 patent"), entitled "Cleaning Device for the Shaving Head of a Dry Shaver," was duly and legally issued to Braun Aktiengesellschaft as assignee of its inventor, Gebhard Braun.  (A copy of the '328 patent is annexed hereto as Exhibit 1.)  Braun Aktiengesellschaft subsequently changed its name to Braun GmbH.  Braun, therefore, is the owner of all right, title and interest in and to the '328 patent, including all right to recover for any and all past infringement thereof.

**RESPONSE:**    Rayovac admits that Exhibit 1 to Plaintiffs' Second Amended Complaint, appears to be a copy of U.S. Patent No. 5,711,328 and that the '328 patent appears to have been issued on January 27, 1998 to Braun Aktiengesellschaft as the assignee of Gebhard Braun.  Rayovac otherwise denies the remaining allegations of paragraph 14.

15.    Upon information and belief, Rayovac has been and is now infringing the '328 patent by manufacturing, using, selling, and/or offering to sell, and has actively induced others to manufacture, use, sell, and/or offer to sell, in this Judicial District and elsewhere, products covered by one or more claims of the '328 patent, including products designated as the Titanium Smart System, including the Titanium Smart System rotary cleaner, the Titanium Smart System foil cleaner, and the Titanium Smart System women's foil cleaner.

**RESPONSE:**    Denied.

16.    Upon information and belief, Rayovac's infringement and active inducement of infringement have been willful and deliberate, rendering this case "exceptional" within the meaning of 35 U.S.C. § 285.

**RESPONSE:**    Denied.

17.    Braun has been damaged and will be irreparably injured by Rayovac's continuing infringement and active inducement of infringement, for which Braun has no adequate remedy at law.  Rayovac's infringing activities will continue unless enjoined by this Court.

**RESPONSE:**    Denied.

## SECOND CAUSE OF ACTION
### (For Patent Infringement)

18.      Braun repeats and realleges the allegations of paragraphs 1 through 15 above.

**RESPONSE:**      Rayovac restates and realleges its responses to Paragraphs 1 through 15 above and incorporates them in response to the allegations contained in Paragraph 18 of Plaintiff's Second Amended Complaint.

19.      On July 22, 1997, U.S. Patent No. 5,649,556 ("the '556 patent"), entitled "Cleaning Device for Cleaning the Shaving Head of a Dry Shaving Apparatus," was duly and legally issued to Braun Aktiengesellschaft as assignee of its inventor, Gebhard Braun. (A copy of the '556 patent is annexed hereto as Exhibit 2.)  Braun Aktiengesellschaft subsequently changed its name to Braun GmbH.  Braun, therefore, is the owner of all right, title and interest in and to the '556 patent, including all right to recover for any and all past infringement thereof.

**RESPONSE:**      Rayovac admits that Exhibit 2 attached to Plaintiffs' Second Amended Complaint, appears to be a copy of U.S. Patent No. 5,649,556 and that the '556 patent appears to have been issued on July 22, 1997 to Braun Aktiengesellschaft as the assignee of Gebhard Braun.  Rayovac lacks sufficient information to form a belief concerning the truth or falsity of the remaining allegations of Paragraph 19 and thus denies those allegations. Additionally, Braun has agreed to dismiss with prejudice any and all claims under the '556 patent.  Accordingly Rayovac thus denies any allegations as they relate to the '556 patent.

20.      Upon information and belief, Rayovac has been and is now infringing the '556 patent by manufacturing, using, selling, and/or offering to sell, and has actively induced others to manufacture, use, sell, and/or offer to sell, in this Judicial District and elsewhere, products

covered by one or more claims of the '556 patent, including products designated as the Titanium Smart System, including the Titanium Smart System rotary cleaner, the Titanium Smart System foil cleaner, and the Titanium Smart System women's foil cleaner.

      **RESPONSE:**    Denied.   In addition, Braun has agreed to dismiss with prejudice any and all claims under the '556 patent.

21.    Upon information and belief, Rayovac's infringement and active inducement of infringement have been willful and deliberate, rendering this case "exceptional" within the meaning of 35 U.S.C. § 285.

      **RESPONSE:**    Denied.  In addition, Braun agreed to dismiss with prejudice any and all claims under the '556 patent.

22.    Braun has been damaged and will be irreparably injured by Rayovac's continuing infringement and active inducement of infringement, for which Braun has no adequate remedy at law. Rayovac's infringing activities will continue unless enjoined by this Court.

      **RESPONSE:**    Denied.  In addition, Braun agreed to dismiss with prejudice any and all claims under the '556 patent.

### THIRD CAUSE OF ACTION
### (For Correction of Inventorship)

23.    Braun repeats and realleges the allegations of paragraphs 1 through 20 above.

      **RESPONSE:**    Rayovac restates and realleges its responses to Paragraphs 1 through 20 above and incorporates them in response to the allegations contained in Paragraph 23 of Plaintiff's Second Amended Complaint.

24.    The '328 patent listed Gebhard Braun as the sole inventor.

**RESPONSE**:    Rayovac admits that Exhibit 1 attached to Plaintiffs' Second Amended Complaint appears to be a copy of U.S. Patent No. 5,711,328 and that the '328 patent appears to list Gebhard Braun as the sole inventor.

25.    However, Dr. Dietrich Pahl ("Dr. Pahl") also made significant contributions to the invention disclosed therein and therefore is, in fact, and (sic) inventor of the '328 patent.

**RESPONSE:**    Admitted.  In addition, Norbert Smetana and Helmut Kraus are also inventors of the '328 patent.

26.    The omission of Dr. Pahl from the '328 patent application occurred without any deceptive intent and reflected a misunderstanding of the requirements of United States patent law and its differences from German law.

**RESPONSE:**    Denied

27.    Mr. Braun, Dr. Pahl, and Braun consent to the correction of inventorship so as to reflect that Dr. Pahl is a co- inventor on the '328 patent.

**RESPONSE:**    Rayovac lacks sufficient information to form a belief concerning the truth or falsity of the allegations of Paragraph 27 and thus denies those allegations.

28.    Correction of inventorship is necessary to create an enforceable patent right, and therefore, before the Court can enjoin Rayovac's infringing conduct, it must order the correction of the '328 patent.

**RESPONSE:**    Rayovac admits that the '328 patent is not enforceable, but denies that inventorship can be corrected and denies all remaining allegations of paragraph 28.

### FOURTH CAUSE OF ACTION
### (For Correction of Inventorship)

29.    Braun repeats and realleges the allegations of paragraphs 1 through 26 above.

**RESPONSE:**    Rayovac restates and realleges its responses to Paragraphs 1 through 26 above and incorporates them in response to the allegations contained in Paragraph 29 of Plaintiff's Second Amended Complaint.  In addition, Braun has agreed to dismiss with prejudice any and all claims under the '556 patent.

30.    The '556 patent listed Gebhard Braun as the sole inventor.

**RESPONSE:**    Rayovac admits that Exhibit 2 attached to Plaintiffs' Second Amended Complaint, appears to be a copy of U.S. Patent No. 5,649,556 and that the '556 patent appears to list Gebhard Braun as the sole inventor.  In addition, Braun has agreed to dismiss with prejudice any and all claims under the '556 patent.

31.    However, Dr. Dietrich Pahl ("Dr. Pahl") also made significant contributions to the invention disclosed therein and therefore is, in fact, and (sic) inventor of the '556 patent.

**RESPONSE:**    Admitted.  In addition, Braun has agreed to dismiss with prejudice any and all claims under the '556 patent.

32.    The omission of Dr. Pahl from the '556 patent application occurred without any deceptive intent and reflected a misunderstanding of the requirements of United States patent law and its differences from German law.

**RESPONSE:**    Denied  In addition, Braun has agreed to dismiss with prejudice any and all claims under the '556 patent.

33.    Mr. Braun, Dr. Pahl, and Braun consent to the correction of inventorship so as to reflect that Dr. Pahl is a co- inventor on the '556 patent.

**RESPONSE:**    Rayovac lacks sufficient information to form a belief concerning the truth or falsity of the allegations of Paragraph 33 and thus denies those allegations.  In addition, Braun has agreed to dismiss with prejudice any and all claims under the '556 patent.

34.    Correction of inventorship is necessary to create an enforceable patent right, and therefore, before the Court can enjoin Rayovac's infringing conduct, it must order the correction of the '556 patent.

**RESPONSE:**    Rayovac admits that the '556 patent is not enforceable, but denies that inventorship can be corrected and denies all remaining allegations of paragraph 34. In addition, Braun has agreed to dismiss with prejudice any and all claims under the '556 patent.

## RAYOVAC'S AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

35.    Rayovac has not infringed, contributorily infringed, or induced others to infringe, and is not infringing or inducing others to infringe any valid claim of U.S. Patent No. 5,711,328.

## SECOND AFFIRMATIVE DEFENSE

36.    Rayovac has not infringed, contributorily infringed, or induced others to infringe, and is not infringing or inducing others to infringe any valid claim of U.S. Patent No. 5,649,556.

## THIRD AFFIRMATIVE DEFENSE

37.    U.S. Patent No. 5,711,328 is invalid under 35 U.S.C. § 101, *et seq*.

## FOURTH AFFIRMATIVE DEFENSE

38.    U.S. Patent No. 5,649,556 is invalid under 35 U.S.C. § 101, *et seq*.

## FIFTH AFFIRMATIVE DEFENSE

39.    U.S. Patent No. 5,711,328 is unenforceable for failing to name the true inventors.

## SIXTH AFFIRMATIVE DEFENSE

40.    U.S. Patent No. 5,649,556 is unenforceable for failing to name the true inventors.

## SEVENTH AFFIRMATIVE DEFENSE

41.    Upon information and belief, U.S. Patent No. 5,711,328 is unenforceable due to inequitable conduct committed during prosecution before the United States Patent and Trademark Office ("the USPTO").

42.    First, Braun filed U.S. Patent Application No. 08/376,849 ("the '849 application") on January 23, 1995.  On January 23, 1995, Braun also filed with the USPTO the Declaration of Birgit Hubatsch representing that Braun had filed with the USPTO a "true and accurate" English translation of German Patent Application No. 440238.7-23 ("the German application") which

Braun had included with its U.S. application. Braun filed the Declaration in order to claim priority pursuant to 35 U.S.C. § 119 to the January 26, 1994 filing date of the German application.

43.    On February 24, 1995, the USPTO issued a Notice to File Missing Parts of the '849 application because the USPTO believed the '849 application had been filed in a language other than English. In response, on March 21, 1995, Braun swore to the USPTO that it had filed a verified translation of the German application on January 23, 1995. Based upon Braun's representation, the USPTO issued a decision on August 18, 1995 granting Braun's petition to treat the application as complete as filed on January 26, 1995.

44.    However, the English translation of the German application, in fact, materially differed from the German original and/or contained text that did not even appear in the German original at all. Upon information and belief, Braun by and through those substantively involved with the prosecution of the '849 patent application, submitted a document that was not a "true and accurate" translation of the German original and/or concealed the manifest discrepancies in the translation with intent to deceive the USPTO. The information that Braun misrepresented/concealed would have been considered material by a reasonable Examiner because (1) it would have changed the result of the decision granting Braun's petition to treat the application as complete as filed and (2) it would have precluded Braun from claiming a January 23, 1994 priority date.

45.    Second, Braun committed inequitable conduct in failing to disclose Zeischke, Development of a Cleaning Station for Electric Shavers ("the thesis"), published on June 14, 1992. The thesis was published with the assistance of employees of Braun in Kronberg,

Germany including Dr. Jung, H. D. Klauer, and Braun's Patent Department.  H. D. Klauer, a Braun employee substantively involved in the preparation or prosecution of the '849 application, knew of the thesis during the prosecution of the '849 application.  Mr. Klauer had a duty of disclosure pursuant to 37 C.F.R. § 1.56(c) in connection with the '849 application, and he understood his duty of full disclosure.  Braun, by and through those substantively involved in the preparation or prosecution of the '849 application, failed to disclose the thesis during the prosecution of the '849 application with the intent to deceive the USPTO.  According to Braun, no prior art disclosed in connection with the '328 patent disclosed a "bracket for insertion of the shaving apparatus therein."   A reasonable examiner would thus have considered the thesis material to the patentability of numerous claims presented by Braun including, but not limited, to claim 18 of the '328 patent.

46.    Third, Braun, by and through its employees and agents, committed inequitable conduct in knowingly failing to disclose several individuals who conceived of alleged inventions during the prosecution of the '849 application.  Such individuals include at least Dr. Dietrich Pahl, Norbert Smetana, and Helmut Kraus.  Named inventor Gebhard Braun has testified that, when he filed his oath of inventorship, he knew that others had conceived of much of the subject matter that was described and claimed in the '849 application.  On the orders of Dr. Dietrich Pahl, however, Gebhard Braun intentionally filed a false oath claiming that he was the sole inventor of the subject matter of the '849 application.  The materiality of a false oath cannot be disputed under governing Federal Circuit precedent.

47.    Upon information and belief, Braun, by and through others substantively involved in the preparation or prosecution of the '849 application, knew that Gebhard Braun was not the sole inventor of the '849 application during its prosecution, but failed to disclose that fact to the

USPTO.  Upon information and belief, Braun failed to disclose such information with the intent to deceive the USPTO.  Naming the correct inventors on a United States patent application is a statutory prerequisite, and Braun's intentional choice to ignore that prerequisite was material.

48.    Fourth, Braun committed inequitable conduct in failing to disclose the ultrasonic cleaning system discussed at, for example, pages 79-80 of the deposition of Juergen Hoeser. Braun purchased the ultrasonic cleaning system from a third party, and it has been in use at Braun since the 1960's.  The ultrasonic cleaning device is thus prior art to the '328 patent.  The ultrasonic cleaning device included a blower for drying shaving heads after they had been washed in the ultrasonic cleaning device.  Gebhard Braun knew of the ultrasonic cleaning device during the prosecution of the '849 application.  Upon information and belief, H. D. Klauer knew of the ultrasonic cleaning device during the prosecution of the '849 application.  Mr. Braun and Mr. Klauer had a duty of disclosure pursuant to 37 C.F.R. § 1.56(c) in connection with the '849 application.  Both Mr. Braun and Mr. Klauer understood their duties of disclosure.  Braun, by and through those substantively involved in the preparation or prosecution of the '849 application, failed to disclose the thesis during the prosecution of the '849 application with the intent to deceive the USPTO.  According to Braun, no prior art disclosed in connection with the '328 patent disclosed (1) a drying device (2) a drying device comprising an impeller and (3) a drying device further comprising a heater.  A reasonable examiner would have considered the ultrasonic cleaning device material to the patentability of numerous claims presented by Braun including, but not limited to, claims 11-13.

## EIGHTH AFFIRMATIVE DEFENSE

49.     Upon information and belief, U.S. Patent No. 5,649,556 is unenforceable due to inequitable conduct committed during prosecution before the United States Patent and Trademark Office ("the USPTO").

50.     Braun committed inequitable conduct in failing to disclose Zeischke, Development of a Cleaning Station for Electric Shavers ("the thesis"), published on June 14, 1991.  The thesis was published with the assistance of employees of Braun in Kronberg, Germany including Dr. Jung, H. D. Klauer, and Braun's Patent Department.  H. D. Klauer, a Braun employee substantively involved in the preparation or prosecution of the U.S. Patent Application No. 08/370,861 (the '861 application), knew of the thesis during the prosecution of the '861 application, failed to disclose the thesis during the prosecution of the '861 application with the intent to deceive the USPTO.  A reasonable examiner would have considered the thesis material to the patentability of numerous patent claims presented by Braun.

51.     Second, Braun, by and through its employees and agents, committed inequitable conduct in knowingly failing to disclose several individuals who conceived of alleged inventions during the prosecution of the '861 application.  Such individuals include at least Dr. Dietrich Pahl.  Named inventor Gebhard Braun has testified that, when he filed his oath of inventorship, he knew that others had conceived of much of the subject matter that was described and claimed in the '861 application.  On the orders of Dr. Dietrich Pahl, however, Gebhard Braun intentionally filed a false oath claiming that he was the sole inventor of the subject matter of the '861 application.  The materiality of a false oath cannot be disputed under governing Federal Circuit precedent.

52.    Upon information and belief, Braun, by and through others substantively involved in the preparation or prosecution of the '861 application, knew that Gebhard Braun was not the sole inventor of the '861 application during its prosecution, but failed to disclose that fact to the USPTO.  Upon information and belief, Braun failed to disclose such information with the intent to deceive the USPTO.  Naming the correct inventors on a United States patent application is a statutory prerequisite, and Braun's intentional choice to ignore that prerequisite was material.

### NINTH AFFIRMATIVE DEFENSE

To the extent that Braun reneges upon its agreement to dismiss its claim of infringement under the '556 patent with prejudice, Braun is equitably estopped from asserting that patent against Rayovac.  Braun affirmatively represented to Rayovac that it would dismiss the '556 patent from the case with prejudice.  Rayovac detrimentally relied upon Braun's affirmative representation.  Rayovac will be materially prejudiced if Braun is allowed to proceed with its claim for infringement under the '556 patent.

### TENTH AFFIRMATIVE DEFENSE

The Court lacks subject matter jurisdiction over Braun's claim that Rayovac has infringed the '328 patent.

### ELEVENTH AFFIRMATIVE DEFENSE

The Court lacks subject matter jurisdiction over Braun's claim that Rayovac has infringed the '556 patent.

## COUNTERCLAIMS

53.    Rayovac Corporation, now known as Spectrum Brands Corporation, is a corporation organized under the laws of the State of Wisconsin with its principle place of business at Six Concourse Parkway, Suite 3300, Atlanta, GA 30328.

54.    On information and belief, Braun is a German corporation headquartered in Kronberg, Germany.  Braun is a wholly owned subsidiary of Gillette Holding Company, which is also a German corporation and wholly owned by Gillette, a corporation organized and existing under the laws of the State of Delaware and having its principal executive offices at Prudential Tower Building, Boston, Massachusetts 02199.

55.    Rayovac Corporation counterclaims against Braun pursuant to the patent laws of the United States, Title 35 of the United States Code, and for a specific remedy based upon the laws authorizing actions for declaratory judgment in the courts of the United states, 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 13.

56.    This court has subject matter jurisdiction over this action, which arises under the patent laws of the United States, pursuant to 28 U.S.C. §§ 1331 and 1338(a).

57.    Venue in this district is proper under 28 U.S.C. §§ 1391(c) and 1400(b) because Braun is a corporation subject to personal jurisdiction in this District, and because Braun maintains business offices in this District from which it regularly and systematically conducts business.

## COUNT I - DECLARATION OF NON-INFRINGEMENT OF THE '328 PATENT

58.    An actual controversy exists between Rayovac and Braun as set forth in the allegations of the Second Amended Complaint in this action and the Answer as to whether the '328 patent is not infringed by Rayovac.

59.    Rayovac and the products made, used, sold, or offered for sale by Rayovac, have not infringed, contributorily infringed, induced others to infringe, and is not infringing or inducing others to infringe, any valid claim of the '328 patent.

60.    Rayovac is entitled to a judgment that the '328 patent is not infringed by Rayovac, and awarding Rayovac the damages it has suffered from the unlawful assertion of said patent by Braun.

61.    The continuing assertion of the '328 patent against Rayovac despite the non-infringement of the claims of the '328 patent makes this an exceptional case under 35 U.S.C. § 285.

## COUNT II - DECLARATION OF NON-INFRINGEMENT OF THE '556 PATENT

62.    An actual controversy exists between Rayovac and Braun as set forth in the allegations of the Second Amended Complaint in this action and the Answer as to whether the '556 patent is not infringed by Rayovac.

63.    Rayovac and the products made, used, sold, or offered for sale by Rayovac, have not infringed, contributorily infringed, induced others to infringe, and is not infringing or inducing others to infringe, any valid claim of the '556 patent.

64.     Rayovac is entitled to a judgment that the '556 patent is not infringed by Rayovac, and awarding Rayovac the damages it has suffered from the unlawful assertion of said patent by Braun.

65.     The continuing assertion of the '556 patent against Rayovac despite the non-infringement of the claims of the '556 patent makes this an exceptional case under 35 U.S.C. § 285.

## COUNT III - DECLARATION OF INVALIDITY OF THE '328 PATENT PURSUANT TO 35 U.S.C. § 101 *et seq.*

66.     An actual controversy exists between Rayovac and Braun as set forth in the allegations of the Second Amended Complaint in this action and the Answer as to whether the '328 patent is invalid.

67.     Upon information and belief, all claims of the '328 patent asserted against Rayovac are invalid pursuant to 35 U.S.C. § 101 *et seq.*

68.     Rayovac is entitled to a judgment that the '328 patent is invalid, and awarding Rayovac the damages it has suffered from the unlawful assertion of said patent by Braun.

69.     The continuing assertion of the '328 patent against Rayovac despite the invalidity of the claims of the '328 patent makes this an exceptional case under 35 U.S.C. § 285.

## COUNT IV - DECLARATION OF INVALIDITY OF THE '556 PATENT PURSUANT TO 35 U.S.C. § 101 *et seq.*

70.     An actual controversy exists between Rayovac and Braun as set forth in the allegations of the Second Amended Complaint in this action and the Answer as to whether the '556 patent is invalid.

71.     Upon information and belief, all claims of the '556 patent asserted against Rayovac are invalid pursuant to 35 U.S.C. § 101 *et seq*.

72.     Rayovac is entitled to a judgment that the '556 patent is invalid and awarding Rayovac the damages it has suffered from the unlawful assertion of said patent by Braun.

73.     The continuing assertion of the '556 patent against Rayovac despite the invalidity of the claims of the '556 patent makes this an exceptional case under 35 U.S.C. § 285.

## COUNT V - DECLARATION OF INVALIDITY OF THE '328 PATENT BASED UPON IMPROPER INVENTORSHIP

74.     An actual controversy exists between Rayovac and Braun as set forth in the allegations of the Second Amended Complaint in this action and the Answer as to whether the '328 patent is invalid for improper inventorship.

75.     Upon information and belief, all claims of the '328 patent are invalid for failure to name at least the correct inventor of the claims of the '328 patent.  Assuming there were any patentable inventors claimed in the '328 patent at least Dr. Dietrich Pahl and Norbert Smetana should have been named as inventors but were not, alleges deceptive intent.

76.     Rayovac is entitled to a judgment that the '328 patent is invalid for improper inventorship, and awarding Rayovac the damages it has suffered from the unlawful assertion of said patent by Braun.

77.     The continuing assertion of the '328 patent against Rayovac despite the invalidity of the claims makes this an exceptional case under 35 U.S.C. § 285.

## COUNT VI - DECLARATION OF INVALIDITY OF THE '556 PATENT BASED UPON IMPROPER INVENTORSHIP

78.     An actual controversy exists between Rayovac and Braun as set forth in the allegations of the Second Amended Complaint in this action and the Answer as to whether the '556 patent is invalid for improper inventorship.

79.     Upon information and belief, all claims of the '556 patent are invalid for failure to name Dr. Dietrich Pahl as an inventor.

80.     Rayovac is entitled to a judgment that the '556 patent is invalid for improper inventorship, and awarding Rayovac the damages it has suffered from the unlawful assertion of said patent by Braun.

81.     The continuing assertion of the '556 patent against Rayovac despite the invalidity of the claims makes this an exceptional case under 35 U.S.C. § 285.

## COUNT VII - DECLARATION OF THE UNENFORCEABILITY OF THE '328 PATENT BASED UPON INEQUITABLE CONDUCT

82.     An actual controversy exists between Rayovac and Braun as set forth in the allegations of the Second Amended Complaint in this action and the Answer as to whether the '328 patent is unenforceable based upon inequitable conduct.

83.     First, Braun filed U.S. Patent Application No. 08/376,849 ("the '849 application") on January 23, 1995.  On January 23, 1995, Braun also filed with the USPTO the Declaration of Birgit Hubatsch representing that Braun had filed with the USPTO a "true and accurate" English translation of German Patent Application No. 440238.7-23 ("the German application") which Braun had included with its U.S. application.  Braun filed the Declaration in order to claim priority pursuant to 35 U.S.C. § 119 to the January 26, 1994 filing date of the German application.

84.     On February 24, 1995, the USPTO issued a Notice to File Missing Parts of the '849 application because the USPTO believed the '849 application had been filed in a language other than English.  In response, on March 21, 1995, Braun swore to the USPTO that it had filed a verified translation of the German application on January 23, 1995.  Based upon Braun's representation, the USPTO issued a decision on August 18, 1995 granting Braun's petition to treat the application as complete as filed on January 26, 1995.

85.     However, the English translation of the German application, in fact, materially differed from the German original and/or contained text that did not even appear in the German original at all.  Upon information and belief, Braun by and through those substantively involved with the prosecution of the '849 patent application, submitted a document that was not a "true

24

and accurate" translation of the German original and/or concealed the manifest discrepancies in the translation with intent to deceive the USPTO.   The information that Braun misrepresented/concealed would have been considered material by a reasonable Examiner because (1) it would have changed the result of the decision granting Braun's petition to treat the application as complete as filed and (2) it would have precluded Braun from claiming a January 23, 1994 priority date.

86.   Second, Braun committed inequitable conduct in failing to disclose Zeischke, Development of a Cleaning Station for Electric Shavers ("the thesis"), published on June 14, 1992.   The thesis was published with the assistance of employees of Braun in Kronberg, Germany including Dr. Jung, H. D. Klauer, and Braun's Patent Department.   H. D. Klauer, a Braun employee substantively involved in the preparation or prosecution of the '849 application, knew of the thesis during the prosecution of the '849 application.   Mr. Klauer had a duty of disclosure pursuant to 37 C.F.R. § 1.56(c) in connection with the '849 application, and he understood his duty of full disclosure.   Braun, by and through those substantively involved in the preparation or prosecution of the '849 application, failed to disclose the thesis during the prosecution of the '849 application with the intent to deceive the USPTO.   According to Braun, no prior art disclosed in connection with the '328 patent disclosed a "bracket for insertion of the shaving apparatus therein."   A reasonable examiner would thus have considered the thesis material to the patentability of numerous claims presented by Braun including, but not limited, to claim 18 of the '328 patent.

87.   Third, Braun, by and through its employees and agents, committed inequitable conduct in knowingly failing to disclose several individuals who conceived of alleged inventions during the prosecution of the '849 application.   Such individuals include at least Dr. Dietrich

Pahl, Norbert Smetana, and Helmut Kraus. Named inventor Gebhard Braun has testified that, when he filed his oath of inventorship, he knew that others had conceived of much of the subject matter that was described and claimed in the '849 application. On the orders of Dr. Dietrich Pahl, however, Gebhard Braun intentionally filed a false oath claiming that he was the sole inventor of the subject matter of the '849 application. The materiality of a false oath cannot be disputed under governing Federal Circuit precedent.

88.     Upon information and belief, Braun, by and through others substantively involved in the preparation or prosecution of the '849 application, knew that Gebhard Braun was not the sole inventor of the '849 application during its prosecution, but failed to disclose that fact to the USPTO. Upon information and belief, Braun failed to disclose such information with the intent to deceive the USPTO. Naming the correct inventors on a United States patent application is a statutory prerequisite, and Braun's intentional choice to ignore that prerequisite was material.

89.     Fourth, Braun committed inequitable conduct in failing to disclose the ultrasonic cleaning system discussed at, for example, pages 79-80 of the deposition of Juergen Hoeser. Braun purchased the ultrasonic cleaning system from a third party, and it has been in use at Braun since the 1960's. The ultrasonic cleaning device is thus prior art to the '328 patent. The ultrasonic cleaning device included a blower for drying shaving heads after they had been washed in the ultrasonic cleaning device. Gebhard Braun knew of the ultrasonic cleaning device during the prosecution of the '849 application. Upon information and belief, H. D. Klauer knew of the ultrasonic cleaning device during the prosecution of the '849 application. Mr. Braun and Mr. Klauer had a duty of disclosure pursuant to 37 C.F.R. § 1.56(c) in connection with the '849 application. Both Mr. Braun and Mr. Klauer understood their duties of disclosure. Braun, by and through those substantively involved in the preparation or prosecution of the '849

26

application, failed to disclose the thesis during the prosecution of the '849 application with the intent to deceive the USPTO.  According to Braun, no prior art disclosed in connection with the '328 patent disclosed (1) a drying device (2) a drying device comprising an impeller and (3) a drying device further comprising a heater.  A reasonable examiner would have considered the ultrasonic cleaning device material to the patentability of numerous claims presented by Braun including, but not limited to, claims 11-13.

90.    The continuing assertion of the '328 patent against Rayovac despite the unenforceability of the claims makes this an exceptional case under 35 U.S.C. § 285.

## COUNT VIII– DECLARATION OF THE UNENFORCEABILITY OF THE '556 PATENT BASED UPON INEQUITABLE CONDUCT

91.    An actual controversy exists between Rayovac and Braun as set forth in the allegations of the Second Amended Complaint in this action and the Answer as to whether the '556 patent is unenforceable based upon inequitable conduct.

92.    Upon information and belief, U.S. Patent No. 5,649,556 is unenforceable due to inequitable conduct committed during prosecution before the United States Patent and Trademark Office ("the USPTO").

93.    Braun committed inequitable conduct in failing to disclose Zeischke, Development of a Cleaning Station for Electric Shavers ("the thesis"), published on June 14, 1992.  The thesis was published with the assistance of employees of Braun in Kronberg, Germany including Dr. Jung, H. D. Klauer, and Braun's Patent Department.  Upon information and belief, at least H. D. Klauer, a Braun employee substantively involved in the preparation or prosecution of the U.S. Patent Application No. 08/370,861 (the '861 application"), knew of the

27

thesis during the prosecution of the '861 application.  Braun, by and through those substantively involved in the preparation or prosecution of the '861 application, failed to disclose the thesis during the prosecution of the '861 application with the intent to deceive the USPTO.  A reasonable examiner would have considered the thesis material to the patentability of numerous claims presented by Braun.

94.    Second, Braun, by and through its employees and agents, committed inequitable conduct in knowingly failing to disclose several individuals who conceived of alleged inventions during the prosecution of the '849 application.  Such individuals include at least Dr. Dietrich Pahl and Norbert Smetana.  Named inventor Gebhard Braun has testified that, when he filed his oath of inventorship, he knew that others had conceived of much of the subject matter that was described and claimed in the '849 application.  On the orders of Dr. Dietrich Pahl, however, Gebhard Braun intentionally filed a false oath claiming that he was the sole inventor of the subject matter of the '849 application.  The materiality of a false oath cannot be disputed under governing Federal Circuit precedent.

95.    Upon information and belief, Braun, by and through others substantively involved in the preparation or prosecution of the '849 application, knew that Gebhard Braun was not the sole inventor of the '849 application during its prosecution, but failed to disclose that fact to the USPTO.  Upon information and belief, Braun failed to disclose such information with the intent to deceive the USPTO.  Naming the correct inventors on a United States patent application is a statutory prerequisite, and Braun's intentional choice to ignore that prerequisite was material.

96.     Rayovac is entitled to a judgment that the '556 patent is unenforceable based upon inequitable conduct, and awarding Rayovac the damages it has suffered from the unlawful assertion of said patent by Braun.

97.     The continuing assertion of the '556 patent against Rayovac despite the unenforceability of the claims makes this an exceptional case under 35. U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, Defendant Rayovac prays for entry of judgment against Plaintiffs as follows:

1.     Dismissing with prejudice and on the merits Braun's purported Second Amended Complaint in its entirety;

2.     Awarding Rayovac its costs, attorneys' fees, and disbursements pursuant to 35 U.S.C. § 285 and as otherwise permitted by law;

3.     Entering a judgment declaring the '328 and '556 patents invalid and not infringed by Rayovac or by the use of Rayovac's products and services.

4.     Restraining Braun and each of its officers, employees, agents, alter egos, attorneys, and any persons inactive concert or participation with them from further prosecuting or instituting any action against Rayovac claiming that the '328 or '556 patents are valid or infringed, or from representing that Rayovac's products or services, or that the use thereof, infringes the '328 or '556 patents.

    5.      Awarding Rayovac such other and further relief as the court may deem just and equitable.

                                           Respectfully submitted,

                                         RAYOVAC CORPORATION
                                         By its attorneys,

                                          /s/ Jessica P. Driscoll
                                       Thomas E. Dwyer, Jr. (BBO No. 139660)
                                       Jessica Driscoll (BBO No. 655394)
                                       DWYER & COLLORA, LLP
                                       600 Atlantic Avenue
                                       Boston, MA 02210-1122
                                       (617) 371-1001 (phone)
                                       (617) 371-1037 (facsimile)

                                       Mark A. Pals, P.C. (admitted *pro hac vice*)
                                       James A. Shimota (admitted *pro hac vice*)
                                       Kevin S. Ueland (admitted *pro hac vice*)
                                       KIRKLAND & ELLIS LLP
                                       200 East Randolph Drive
                                       Chicago, Illinois 60601
                                       (312) 861-2000 (phone)
                                       312) 861-2200 (facsimile)

                                       Attorneys for Defendant

Dated:  September 15, 2005