IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BRAUN GmbH,

        Plaintiff,

    v.

RAYOVAC CORPORATION,

        Defendant.

Civil Action No. 03-CV-12428-WGY

**PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTIONS
FOR PARTIAL SUMMARY JUDGMENT**

## *Introduction*

Nothing in Rayovac's Opposition to Braun's motions for partial summary judgment sets forth a genuine issue of material fact.[1] Therefore, on the basis of Braun's prior memorandum and this reply, partial summary judgment should be granted.

## *Argument*

### I. INFRINGEMENT

Rayovac's argument that its products do not contain the Cradle Structure Element[2] and Feed Device Element[3] of claim 11 of the '328 Patent rests on two unsupportable propositions: first, that the Cradle Structure Element includes only the surfaces that directly touch the shaving head of a shaving apparatus; and second, that all surfaces (interior and exterior) of the cradle structure must get wet during the cleaning operation.[4] Nothing in the Court's construction or the patent itself imposes such limitations, and Rayovac's reliance upon them does not create a genuine issue of material fact. Thus, partial summary judgment of infringement of claim 11 should be entered in favor of Braun.

---

[1] Rayovac has filed yet another statement of undisputed facts constructed to support its opposition. However, it contains a number of inaccuracies, the most salient of which this reply memorandum points out.

[2] The "Cradle Structure Element" is "a cradle structure adapted to receive a shaving head of a shaving apparatus." See '328 Patent, col. 14, lines 13-14.

[3] The "Feed Device Element" is "a feed device for feeding cleaning fluid from said cleaning fluid container to said cradle structure." See '328 Patent, col. 14, lines 16-17.

[4] As the Court's claim construction acknowledges, the cleaning system claimed in the '328 Patent does not requires a "fluid-retaining 'cradle'" as suggested by Rayovac. Opp. Memo at 2; Opp. Statement of Facts at Ex. 47. Instead, the claims of the '328 Patent require only a "cradle structure adapted to receive the shaving head of a shaving apparatus," which the Court has construed to be a "structure adapted to receive or support the shaving head of a shaving apparatus and which receives or retains cleaning fluid or both." Hearing Trans. at 5, 11.

### A. Manifold 3a (Together With Its Ports 3b) And Supporting structures 3c Receive Or Support The Shaving Head

Even a cursory visual inspection of Rayovac's accused devices shows that each has a structure adapted to receive or support a shaving head of the shaver. In particular, one need only look at the pictures of Rayovac's accused products to see that the cradle structure is composed of the manifold 3a, ports 3b, and supporting structures 3c. See Wendlandt Decl.[5] at Exs. B-D; Chasen Dep. at 85:21-86:12 (noting that the shaving head of the Rayovac rotary product is supported by a post – that is, supporting structures 3c – and the manifold 3a and its ports 3b). Rayovac does not argue (because it cannot) that ports 3b and supporting structures 3c do not receive or support the shaving head of its shavers.[6] Rayovac quarrels only with the inclusion of manifold 3a as a component part of a structure that, along with ports 3b, receives or supports the shaving head. According to Rayovac, the manifold when considered in isolation from ports 3b does not touch the shaving head of the shaver.

That argument has no meaning because, as Professor Nayfeh explained during his deposition, ports 3b are "integral with" manifold 3a. Nayfeh Dep. at 176:23-177:11. The manifold cannot be considered in isolation. Asked whether his position was that the manifold 3a "indirectly" supports the shaving head, Professor Nayfeh rejected that characterization[7] and explained:

---

[5] The "Wendlandt Decl." refers to the Declaration of Dalila Argaez Wendlandt in Support of Braun GmbH's Motion For Partial Summary Judgment On Infringement.

[6] Indeed, Rayovac expressly acknowledges that ports 3b support the shaving head. See Opp. Statement of Facts ¶8 & Ex. 47. Mr. Phillips further acknowledges that the supporting structures 3c support the shaving head. See Phillips 2nd Rep. ¶33.

[7] Rayovac repeatedly mischaracterizes Professor Nayfeh's testimony. For example, Professor Nayfeh did not opine that the claim construction will not read on a structure if the structure does not "directly" support a shaving head, as suggested by Rayovac. See Opp. Memo at 4. Instead, Professor Nayfeh specifically rejected such a "generalization," noting only that in the context of a prior art reference that contained a slot for insertion of a straight razor, he did not consider the slot to be adapted to receive the "head" of a straight razor because a straight razor does not have a "head" and because the slot was adapted to support the entire straight razor. See Nayfeh Dep. at 42.

> We look for the <u>structure</u> that provides the support <u>and don't just look at a surface that provides the support,</u> but rather the structure that provides the support.
>
> So, I think one skilled in the art would definitely read the structure as including not just the ports [3b], but that piece of plastic [the manifold 3a] to which the ports are, you know, integral, and through which the load is transmitted.

Nayfeh Dep. at 177:12-178:1 (emphasis added). Rayovac does not dispute that manifold 3a and the ports 3b are part of one injection molded component, which together provide support for the shaving head. See Chasen Dep. at 44:20-21 (discussing "the injector" structure which consists of "the manifold with three nozzles [ports] sticking out"); 47:15-18 (noting that "little nozzles" are "<u>on</u> the manifold") (emphasis added). Thus, the structure that supports the shaving head – that is, the structure that is local to the shaving head and specifically adapted to support or receive it – includes not only ports 3b, but the manifold 3a, with which the ports form an integrated, unified whole.[8] This undisputed fact should end the inquiry.

In a deliberate effort to confuse the straightforward infringement analysis, Rayovac introduces an analogy between the manifold 3a and its ports 3b and conduit 64 from Figure 6 of the '328 Patent – "a <u>schematic representation</u> of the fluid circuit of the cleaning device." '328 Patent, col. 3, ll. 64-67 (emphasis added); see Opp. Memo at 3-4. The analogy is faulty in the extreme and, more importantly, irrelevant to the issue of infringement.

---

[8] Rayovac makes a similarly baseless argument with regard to the exterior and interior surfaces of the ports 3b. Rayovac argues that it is only the <u>exterior surfaces</u> of ports 3b that provide support for the shaving head. See Opp. Memo at 4-5. Such an argument does not raise a genuine issue of material fact. In particular, it is clear to one of ordinary skill in the art that a "<u>structure</u> adapted to support or receive a shaving head" includes not only the "surfaces" of that structure that make direct contact with the shaving head, but also the entire structure that receives or supports the shaving head. Thus, in the preferred embodiment of the '328 Patent, the cradle 7 is not limited to the particular surface of cradle 7 that contacts the shaving head, but includes the entire structure (top and bottom surfaces) that constitute cradle 7. Similarly, in this case, one of ordinary skill in the art would not segregate ports 3b into interior surfaces and exterior surfaces when faced with the query – whether ports 3b receive or support the shaving head. See Nayfeh 3rd Rep. at 3.

-3-

Fig. 6



To begin, conduit 64 is a hose that runs from the cleaning fluid container to cradle 7; it is not a structure specifically adapted to support the shaving head. From what is schematically represented in Figure 6, it appears that conduit 64 does not even form a part of cradle 7. In sharp contrast, in the Rayovac products, the manifold 3a is integral with ports 3b, which undisputably support or receive the shaving head. Indeed, as Professor Nayfeh noted, conduit 64 is not designed to bear the load of the shaving head. Nayfeh 3rd Rep. at 3-4. On this score, Rayovac has again mischaracterized Professor Nayfeh's testimony.[9] Asked whether he knew definitively that conduit 64 did not bear any load, Professor Nayfeh said that he did not. Nayfeh Dep. at 179:21-180:5. As Professor Nayfeh explained, however, the question is not whether conduit 64

---

[9] Rayovac also mistakenly asserts that Professor Nayfeh has not opined as to whether manifold 3a, ports 3b, and supporting structures 3c are of a "specific shape." Opp. Memo at 5. To the contrary, Professor Nayfeh has specifically opined that these three components are specifically adapted to support the shaving head of the shaver. See Nayfeh 1st Rep. at 3-4. Indeed, Rayovac does not argue that the shape of the three components together is not tailored to support or receive the shaving head. Instead, looking at the sketch of only the manifold for the foil shavers, which was hand drawn from memory by Professor Nayfeh during his deposition, Rayovac claims only that it "bears no resemblance" to the foil shaving head. See Opp. Memo at 5. However, a visual inspection of the foil devices shows readily that an accurate sketch of the top view of the supporting structures 3c, ports 3b and manifold 3a is of a "specific shape" – that is, a shape specifically adapted to receive or support the shaving head of the foil shaver.

-4-

bears any load, but whether conduit 64 is adapted to bear the load of the shaving head. As Professor Nayfeh noted, there was nothing in schematic Figure 6 to indicate that conduit 64 performed such a function. Nayfeh Dep. 180:5-13.

More importantly, however, Rayovac's assertion that manifold 3a and its ports 3b "serve the same function" as conduit 64 is both false and irrelevant. In the accused products, there is a hose that runs essentially from the cleaning fluid container to the cradle like conduit 64. It is conduit 7. See Exs. B-D. Regardless, the point is irrelevant because the key to determine whether the manifold 3a along with its ports 3b and supporting structures 3c constitute a cradle structure is whether they constitute a structure that receives or supports the shaving head. As discussed above, they do.

### B.  The Cradle Structure Of The Accused Products Receives Or Retains Cleaning Fluid And Fluid Is Fed To The Cradle Structure

Rayovac's argument that its accused products do not contain a structure that receives or retains cleaning fluid and its argument that its products do not contain the Feed Device Element are equally flawed. Rayovac does not argue that manifold 3a and ports 3b do not receive or retain cleaning fluid. Nor does Rayovac dispute that fluid is fed from the cleaning fluid container to manifold 3a and ports 3b. Instead, Rayovac's noninfringement argument rests on the assumption that all surfaces of the cradle structure must get "wet" during cleaning. See Opp. Memo at 5-7. Because, according to Rayovac, supporting structures 3c do not get wet during cleaning, they are not a part of the cradle structure. The assumption is without basis and does not create a genuine issue of material fact.

Nothing in the patent or the Court's construction of the Cradle Structure and Feed Device Elements that requires every surface of the cradle structure to get wet. It is sufficient that the structure as a whole receive or retain cleaning fluid. Thus, for example, in the preferred

-5-



Fig. 1

embodiment of the '328 Patent, the top surface of cradle 7 receives and/or retains cleaning fluid; however, the bottom surface of cradle 7 does not. Nonetheless, the entire structure that constitutes cradle 7, not just its top surface, is the cradle structure.[10] Similarly, with Rayovac's accused products, manifold 3a and ports 3b receive and/or retain cleaning fluid. Whether supporting structures 3c do as well is irrelevant.

Because Rayovac has failed to raise a genuine issue of material fact, summary judgment of infringement should be entered in favor of Braun.

---

[10] Indeed, in the schematic representation in Figure 6 of the '328 Patent, it appears that the entire upper surface of the cradle does not get wet. Nonetheless, it is clear from the patent that the cradle 7 is the cradle structure of that embodiment.

## II. CLAIM 11 OF THE '328 PATENT IS NOT ANTICIPATED BY PRIOR ART FOR DISASSEMBLED BARBER TOOLS

None of the three prior art references – the MeKiney, Davies,[11] and Maatz Patents – discloses the Cradle Structure Element of claim 11 because, *inter alia*, each requires disassembly of a hair clipper apparatus. As Rayovac's expert acknowledged during his deposition, the entire point of the invention disclosed in the '328 Patent is to eliminate the need to disassemble the shaver in order to clean it. In particular, he stated:

> Q:  You took your own electric razor apart?
>
> A:  Oh sure. You have to in order to clean it, which is the whole point of this invention as I understand it.
>
> Q:  Why do you say you had to take it apart to clean it?
>
> A:  Well, its full of little tiny parts that trap the hairs. It's a big mess.
>
> Q:  You see the point of this invention as not having to do that?
>
> A:  That's right.

Phillips Dep. at 86:11-21. Asked again, after a lunch recess, whether he saw the point of the invention as not having to take apart the shaver to clean it, Mr. Phillips confirmed his understanding of the patent. Phillips Dep. .at 127:22-128:9. He pointed to several locations in the patent itself to support his conclusion. Phillips Dep. at 128:10-131:1 (citing to '328 Patent, col. 2, ll. 5-9 (discussing advantage of invention over prior art French device that did not fully clean the shaving head even when the shaving head was disassembled); col. 3, l. 65 through col. 4, l. 5 (discussing advantage of invention's interlock which prevents assembled shaving apparatus from being removed during cleaning and drying); col. 2, ll. 22- 25 (discussing advantage of cradle as a storage device for the shaver, which Phillips read to mean "you don't

---

[11] Mr. Phillips admitted that, in the Davies Patent, fluid is not feed from a tank 12 (Phillips's supposed cleaning fluid container) to tray 74 (Phillips's supposed cradle structure). See Phillips Dep. at 97:22-98:7. Thus, the Davies Patent does not anticipate claim 11 for this additional reason.

-7-

want to take it [the shaver] apart."). Thus, Rayovac's continued reliance on prior art references for cleaning the disassembled cutter blades of hair clippers is entirely misplaced. As such, the anticipation argument does not create a genuine issue of material fact, and summary judgment should be granted in favor of Braun.

### III. BEST MODE

Rayovac's argument that the inventors failed to disclose their preferred cleaning fluid is unsupported by the inventors' testimony and repudiated by its own expert. The inventors did not testify that they had a best mode cleaning fluid. Mr. Braun did not know the composition of the cleaning fluid, and Dr. Pahl testified only that he thought it contained alcohol and a lubricant. That a fat dissolving cleaning fluid, as disclosed in the '328 Patent, would include alcohol is not seriously disputed. See Nayfeh 2nd Rep. at 28; Phillips 3rd Rep. at ¶44; Phillips Dep. at 109:17-23 (opining that the sterilizing fluid in a prior art spray can was "likely to be alcohol" because :"the cheapest sterilizing fluid you could use would be alcohol"). Moreover, the 1965 Simmons Patent (U.S. Patent No. 3, 172,416), which is cited in the '328 Patent, discloses that the cleaning fluid preferred by that inventor included a lubricant. See Simmons Patent, col. 6, ll.8-15 (in connection with a cleaning device to clean a dry shaving apparatus, discussing that "a suitable cleaning liquid [would be] Isopropyl Alcohol ... to which a wetting agent and a razor lubricant may or may not be added ...."). Indeed, Mr. Phillips acknowledged at his deposition that the addition of a lubricant would be known to one skilled in the art in light of the Simmons disclosure. See Phillips Dep. at 69:6-70:18; 131:18-132:3. Thus, summary judgment should be entered in favor of Braun with regard to Rayovac's best mode defense.

### *Conclusion*

WHEREFORE, Braun's motions for partial summary judgment should be granted.

        Braun GmbH

        By its attorneys,

        /s/ Dalila Argaez Wendlandt
        William L. Patton (BBO #391640)
        Dalila Argaez Wendlandt (BBO #639280)
        Dalila.Wendlandt@ropesgray.com
         ROPES & GRAY
         One International Place
         Boston, MA  02110
         Telephone:  (617) 951-7000
         Facsimile:  (617) 951-7050

        Stanley D. Liang (admitted *Pro Hac Vice*)
        ROPES & GRAY LLP
        1251 Avenue of the Americas
        New York, NY 10021

September 19, 2005