**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| BRAUN GmbH, )<br>)<br>    Plaintiff, )<br>)<br>  v. )<br>)<br>RAYOVAC CORPORATION, )<br>)<br>    Defendant. )<br>_____) | Civil Action No. 03-CV-12428-WGY |

**RAYOVAC CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT DECLARING U.S. PATENT NO. 5,711,328 INVALID AND UNENFORCEABLE**

Braun ignores the elephant sitting in the middle of the room — Mr. Braun admitted to filing a false oath with the United States Patent and Trademark Office ("USPTO"). This fact is undisputed and dispositive to Rayovac's inequitable conduct claim. It is thus not surprising that Braun's opposition proceeds as if the issue were only correction under 35 U.S.C. § 256. Rayovac's motion for summary judgment, however, includes *two* independent grounds relating to these issues: (1) inventorship cannot be corrected because Dr. Pahl acted with deceptive intent, thus rendering the '328 patent invalid; and (2) the '328 patent is unenforceable for Mr. Braun's (and others') inequitable conduct. Braun ignores Rayovac's inequitable conduct claim and attempts to create a new "good faith" standard for correction of inventorship despite the absence of such language in the statute or case support. Rayovac's motion for summary judgment should be granted on either of the two independent grounds.

**I.    35 U.S.C. § 256 Does Not Provide That "Good Faith" Is An Excuse For Lying.**

Braun does not dispute that Dr. Pahl's decision to direct Mr. Braun to omit Dr. Pahl's name as an inventor was deliberate. (*See* Pl. Resp. to Defendant's Statement of Uncontested

Facts Pursuant to Local Rule 56.1 ("Pl. Resp."), at No. 33.) Instead Braun urges this Court to consider Dr. Pahl's allegedly well-intentioned motives for lying. *See* Pl. Opp. Br. at 9. But the law is clear that the reason for Dr. Pahl's deception is irrelevant. Likewise, while Braun asserts that Dr. Pahl (and Mr. Braun) did not appreciate the consequences of their actions, such an appreciation must be irrelevant where deceptive intent is shown.[1]

The plain meaning of the words "deceptive intent" do not require malice or ill-rooted intent. "Deceptive" is defined as "intended or tending to deceive." *See* WEBSTER'S NEW COLLEGE DICTIONARY at 292. "Deceive" is defined as "to cause to believe what is not true: Mislead." *Id.* The undisputed facts are thus straightforward:

- Dr. Pahl lied to Braun's Patent Department when he reviewed Mr. Braun's Invention Disclosure Record, intentionally misstating that the inventorship details were correct. (*See* Pl. Resp., at Nos. 31, 32, 33, 36 & 39.)

- Dr. Pahl did so believing that, if he identified himself as an inventor, Braun's Patent Department would seek to add him to the patents it sought. Pahl Dep. Tr. at 135:21-136:4.

- Dr. Pahl believed that, if he were named as an inventor, Braun would be less likely to pursue patent protection upon his cleaning system. *Id.* at 116:19-118:13.

Dr. Pahl undeniably intended "to cause [Braun's Patent Department and thus the United States Patent and Trademark Office] to believe what is not true." As a result, Braun is not entitled to correct inventorship. *See Pannu v. Iolab Corp.*, 155 F.3d 1344, 1350 (Fed. Cir. 1998); *see also Stark v. Advanced Magnetics, Inc.*, 119 F.3d 1551, 1555 (Fed. Cir. 1997).

---

[1] While irrelevant, based upon the rigorous steps that Braun took internally to ascertain inventorship, it is doubtful that Dr. Pahl and Mr. Braun lacked an appreciation of the consequences of their actions. The Invention Disclosure Record read and signed by Mr. Braun was used by Braun to ascertain inventorship. (Pl. Resp., at No. 30.) Mr. Braun testified that he felt "bad" about lying on the Invention Disclosure Record, indicating understanding. Braun Dep. Tr. 122:22-123:24. Moreover, Dr. Pahl testified that he believed that Braun would want to name him an inventor if he had not lied to the Patent Department. Pahl Dep. Tr. at 135:21-136:4. Most likely, Dr. Pahl and Mr. Braun fully understood that their actions had at least some consequences, but they hoped (like many who lie) that they would not get caught.

While Dr. Pahl knowingly and intentionally lied, Braun tries to use smoke and mirrors to distract the Court. Neither § 256 nor the case law interpreting it discusses a "flexible inquiry into motive and consequences" where deceptive intent is conceded. *See* Pl. Opp. Br. at 8. Indeed, the words "good faith" do not appear anywhere in 35 U.S.C. § 256, nor in the Federal Circuit's opinion in *Stark v. Advanced Magnetics, Inc.*, 119 F.3d 1551 (Fed. Cir. 1997). Instead, Braun mischaracterizes precedent to suggest that the term "deceptive intent" in section 256 does not mean what it says. It does not and cannot cite a single case where someone who admittedly lied about inventorships was found to have acted without deceptive intent or where such an actor's alleged "good faith" was even considered. As established below, in every case cited by Braun, there was ***no evidence of deceptive intent*** on the part of the unnamed inventor. The present case is unique in that there is no dispute that the unnamed inventor Dr. Pahl lied to Braun's Patent Department and instructed Mr. Braun to submit a false oath to the USPTO. That level of deceptive intent goes far beyond that relied upon in the case law in refusing correction of inventorship.

*First*, Braun suggests that *Winbond Elec. Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363 (Fed. Cir. 1997) stands for the proposition that a good faith motive for falsifying inventorship details excuses deceptive intent under Section 256. Braun is wrong. In *Winbond*, unlike Dr. Pahl, the unnamed inventor Mr. Gupta did not originally believe he was a co-inventor of the patent-in-suit, and he certainly never lied to cover up his contributions. *Id.* at 1373. Thus, contrary to Braun's suggestion, *Winbond* does not establish a "good faith" excuse for admitted lying.[2]

---

[2]  Braun consistently confuses inequitable conduct and correction of inventorship. In *Winbond*, the Federal Circuit also held that the patentee (not to be confused with the unnamed inventor) had not committed
(Continued…)

*Second*, Braun's reliance on *Akiebolag v. Wankesha Cutting Tools, Inc.*, 1 U.S.P.Q.2d 2002 (E.D. Wis. 1986) is misplaced. In *Akiebolag*, a son invented a rotary drill in Japan. *Id.* at 2003. Subsequently, his father worked with the son on additional rotary drill inventions.[3] *Id.* A patent application was then filed in the United States, and, as originally filed, the son was the sole inventor of the claims. *Id.* Throughout prosecution, the claims were amended and continuation/divisional applications were filed. *Id.* The father was a joint inventor for some of the issued patents, and the son was the sole inventor on others. *Id.* When an attorney later learned from the father that he should have been named as a joint inventor, correction was sought. *Id.* Especially in light of the prosecution history, **lacking any record evidence of deceptive intent by the father**, the court allowed correction.[4] *Id.*

In sharp contrast, it is undisputed Dr. Pahl was from the beginning of prosecution until the end manifestly at least a sole inventor of the '328 patent. (Pl. Resp., at No. 32.) Unlike *Akiebolag* in which the unnamed inventor told his attorneys the truth about inventorship, Dr. Pahl intentionally lied to Braun's Patent Department about inventorship. *Akiebolag* thus supports Rayovac's position.

*Third*, Braun is similarly wrong in relying on *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340 (Fed. Cir. 1998), for the proposition that Dr. Pahl's actions are excusable unless they were

---

inequitable conduct in failing to disclose certain testimony and pleadings to the PTO. *Id.* at 1374. The undisputed record established that the patentee had relied upon a PTO rule in deciding not to disclose the information. *Id.* The PTO rules, on the other hand, show that lying is never permissible. 37 C.F.R. § 1.56.

[3] Several patent applications were filed in Japan naming the son as sole inventor.

[4] In Akiebolag, the father had signed for his son on the inventorship oath in the United States. *Id.* The court held that this was merely a procedural defect. *Id.* Braun wrongly relies upon the language, where "no one has been harmed and the integrity of the patent system has not been compromised," which relates solely to the signature issue. *Id.* There is no allegation that Dr. Pahl (or anyone else) signed Mr. Braun's intentional false oath. Mr. Braun did that for himself.

"intended to and did mislead the examiner into taking favorable action that would not otherwise have been taken."[5]  Pl. Opp. Br. at 8.  In *C.R. Bard*, the defendant alleged that the failure to name the correct inventor was one of several misrepresentations made by the patentee in procuring the patent.  *C.R. Bard*, 157 F.3d at 1365.  The court in *C.R. Bard* held that inventorship could be corrected under Section 256, finding that, based on the record, there was **no record evidence of deceptive intent**.  *Id.* at 1353.  That is obviously not the case here where deceptive intent is uncontradicted.

## II.     Braun Ignores Mr. Braun's Inequitable Conduct in Filing a False Oath With the United States Patent and Trademark Office.

Braun does not and cannot dispute that a false inventorship oath is material.  *Stark*, 119 F.3d at 1555-56.  It is also undisputed that:

- As required by U.S. statute, Mr. Braun signed an oath when the '328 patent application was filed in which he swore that he was the "original, first, and sole inventor … of the subject matter … claimed[.]" (*See* Pl. Resp., at No. 46.)

- Prior to the filing of the '328 patent application, Mr. Braun had previously signed U.S. inventorship oaths, including patents on which he was named as a co-inventor. (*See* Pl. Resp., at No. 43.)

- When Mr. Braun signed the inventorship oath for the '328 patent application, he knew that he was not the sole inventor for the '328 patent application. (*See* Pl. Resp., at No. 47.)

As Rayovac has indisputably established (1) materiality and (2) an intentional misrepresentation, the Court must grant summary judgment.  *See Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1911-12 (Fed. Cir. 1993) (upholding summary judgment of inequitable conduct based upon knowing submission of false affidavit).  Indeed, the Federal Circuit has stated that it

---

[5]  The language Braun misleadingly quotes addresses one element in a *prima facie* case of inequitable conduct — materiality.  As discussed below, inventorship is undeniably material.

would be unlikely "to allow an avowedly deceptive inventive entity [Mr. Braun] to correct…without any penalty for its deception." *Stark*, 119 F.3d at 1555.

Braun does not argue that Mr. Braun's actions can be excused by "good faith." At most, Braun argues that, in contrast to the facts in *Perseptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 12 F. Supp. 2d 69 (D. Mass 1998), Mr. Braun did not act in his own self-interest. Pl. Opp. Br. at 10, fn. 13. The undisputed evidence is to the contrary. Mr. Braun followed Dr. Pahl's order to lie, but Mr. Braun profited from following that order. (*See* Pl. Resp., at Nos. 34, 49 & 50.) To date, Mr. Braun has received between € 20,000 – €40,000 (approximately $30,000-60,000 U.S.). (*See* Pl. Resp., at No. 51.) Mr. Braun thus had an undeniable financial interest to lie.

Mr. Braun's false oath alone is sufficient for this Court to find inequitable conduct, and thereby order that the '328 patent is unenforceable.

**CONCLUSION**

For all the reasons set forth above and in Rayovac's Memorandum in Support of its Motion for Summary Judgment, Rayovac respectfully requests that this Court grant its motion for summary judgment declaring the '328 patent invalid under 35 U.S.C. § 102(f), and unenforceable for inequitable conduct.

Respectfully submitted,

RAYOVAC CORPORATION

By its attorneys,

  /s/ Jessica P. Driscoll
Thomas E. Dwyer, Jr. (BBO No. 139660)
Jessica P. Driscoll (BBO No. 655394)
DWYER & COLLORA, LLP
600 Atlantic Avenue
Boston, MA 02210-1122
Phone: (617) 371- 1000
Facsimile: (617) 371-1037

Mark A. Pals, P.C. (admitted *pro hac vice*)
James A. Shimota (admitted *pro hac vice*)
Kevin S. Ueland (admitted *pro hac vice*)
James B. Coughlan (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
Aon Center
200 E. Randolph Dr.
Chicago, IL 60601
Phone: (312) 861-2000
Facsimile: (312) 861-2200

Dated:  September 20, 2005