## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

BRAUN GmbH,               )
                         )
          Plaintiff,    )
                         )
                         )
                         )
          v.          )       Civil Action No. 03-CV-12428-WGY
                         )
RAYOVAC CORPORATION,   )
                         )
          Defendant.   )

## RAYOVAC CORPORATION'S MEMORANDUM
## IN SUPPORT OF ITS MOTIONS *IN LIMINE* NOS. 1-11.

## TABLE OF CONTENTS

Page No.

I.      MOTION *IN LIMINE* NO. 1 TO PRECLUDE UNDISCLOSED EXPERT
        OPINIONS. ......................................................................................................................1

II.     MOTION *IN LIMINE* NO. 2 TO EXCLUDE ANY TESTIMONY OR
        ARGUMENT REGARDING INFRINGEMENT NOT SET FORTH IN
        BRAUN'S EXPERT REPORTS OR DISCOVERY RESPONSES...................................2
        A.      The Doctrine of Equivalents ...................................................................................3
        B.      Rayovac's Claim Constructions..............................................................................3

III.    MOTION *IN LIMINE* NO. 3 TO EXCLUDE ANY EVIDENCE OR
        ARGUMENT PERTAINING TO CLAIM 9 OF THE '328 PATENT. .............................4

IV.     MOTION *IN LIMINE* NO. 4 TO EXCLUDE DR. NAYFEH'S UNRELIABLE
        OPINIONS AS TO NON-OBVIOUSNESS. .......................................................................6

V.      MOTION *IN LIMINE* NO. 5 TO PRECLUDE DR. NAYFEH FROM OFFERING
        TESTIMONY INCONSISTENT WITH AGREED CLAIM CONSTRUCTIONS. ...........8

VI.     MOTION *IN LIMINE* NO. 6 TO PRECLUDE ANY ARGUMENT
        INCONSISTENT WITH GRAIN PROCESSING CORP. V. AMERICAN
        MAIZE-PRODUCTS CO. ................................................................................................10

VII.    MOTION *IN LIMINE* NO. 7 TO EXCLUDE BRAUN FROM INTRODUCING
        ANY EVIDENCE OR ARGUMENT OF SECONDARY CONSIDERATIONS
        DUE TO DOCUMENT DESTRUCTION........................................................................12

VIII.   MOTION *IN LIMINE* NO. 8 TO PRECLUDE ANY EVIDENCE OR
        ARGUMENT AS TO THE ALLEGED GOOD FAITH OF HANS KLAUER................14

IX.     MOTION *IN LIMINE* NO. 9 TO PRECLUDE CORROBORATION EVIDENCE. ........15

X.      MOTION *IN LIMINE* NO. 10 TO PRECLUDE ANY EVIDENCE OR
        ARGUMENT THAT RAYOVAC COPIED BRAUN.....................................................16

XI.     MOTION *IN LIMINE* NO. 11 TO PRECLUDE BRAUN FROM
        INTRODUCING UNTIMELY PRODUCED EVIDENCE AND FROM
        INTRODUCING EVIDENCE OR ARGUMENT OF COMMERCIAL
        SUCCESS. ......................................................................................................................17

XII.    CONCLUSION................................................................................................................19

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page No(s).</u>

**Cases**

*AstraZeneca AB v. Mutual Pharm. Co., Inc.*,
    2003 WL 1113271 (E.D. Pa. 2003) ................................................................ 16

*Avia Group Int'l Inc. v. L.A. Gear Cal., Inc.*,
    853 F.2d 1557 (Fed. Cir. 1988) ..................................................................... 12

*Batson v. Neal Spelce Assocs., Inc.*,
    112 F.R.D. 632 (W.D. Tex. 1986) ................................................................. 19

*Brasseler U.S.A., L.P. v. Stryker Sales Corp.*,
    267 F.3d 1370 (Fed. Cir. 2001) ..................................................................... 14

*Brown & Williamson Tobacco Corp. v. Phillip Morris Inc.*,
    1999 WL 33756683 (W.D. Ky. 1999) ............................................................. 6

*Brown v. Barbacid*,
    276 F.3d 1327 (Fed. Cir. 2002) ..................................................................... 15

*Business Objects, S.A. v. Microstrategy, Inc.*,
    393 F.3d 1366, 1374 (Fed. Cir. 2005) ............................................................ 2

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
    289 F.3d 801 (Fed. Cir. 2002) ....................................................................... 8

*Collegenet, Inc. v. Applyyourself, Inc.*,
    2004 WL 2050491 (D. Or. 2004) ................................................................. 11

*Currier v. United Techs. Corp.*,
    2003 WL 22799669 (D. Me. 2003) .............................................................. 18

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ...................................................................................... 7

*Graham v. John Deere Co.*,
    383 U.S. 1 (1966) ..................................................................................... 6, 16

*Grain Processing Corp. v. American Maize-Products Co.*,
    185 F.3d 1341 (Fed. Cir. 1999) ..................................................................... 11

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*,
    339 U.S. 605 (1950) .................................................................................... 17

*Headley v. Chrysler Motor Corp.*,
    141 F.R.D. 362 (D. Mass. 1991) ................................................................. 14

*Hochn v. Bobst Group, Inc.*,
    290 F.3d 446 (1st Cir. 2002) ...................................................................... 7

*In re Kotzab*,
    217 F.3d 1365 (Fed. Cir. 2000) .................................................................. 6

*Jackson Jordan, Inc. v. Plasser Am. Corp.*,
    747 F.2d 1567 (Fed. Cir. 1984) .................................................................. 6

*Knopik v. Amoco Corp.*,
    2003 WL 172917 (D. Minn. 2003) .............................................................. 17

*Kuhmo Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) ................................................................................... 7

*Loral Fairchild Corp. v. Victor Co. of Japan, Ltd.*,
    911 F. Supp. 76 (E.D.N.Y. 1996) ............................................................... 8

*Medtronic, Inc. v. Guidant Corp.*,
    378 F. Supp. 2d 503 (D. Del. 2005) ........................................................... 15

*Nation-Wide Check Corp., Inc. v. Forest Hills Distribs., Inc.*,
    692 F.2d 214 (1st  Cir. 1982) ..................................................................... 14

*Oxford Gene Tech., Ltd. v. Mergen Ltd.*,
    345 F. Supp. 2d 431 (D. Del. 2004) ........................................................... 8

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*,
    75 F.2d 1152 (6th Cir. 1977) ...................................................................... 10

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) .................................................................. 9

*Radix Corp. v. Samuels*,
    1989 WL 206496 (D.D.C. 1989) ................................................................. 6

*Rambus, Inc. v. Infineon Techs AG*,
    145 F. Supp. 2d 721 (E.D. Va. 2001) ......................................................... 3

*Roeske v. Pryor*,
    504 N.E.2d 927 (Ill. App. 1987) ................................................................. 14

*Sensonics, Inc. v. Aerosonic Corp.*,
    81 F.3d 1566 (Fed. Cir. 1996) .................................................................... 12

*Siegel v. Am. Honda Motor Co., Inc.*,
   921 F.2d 15 (1st Cir. 1990).......................................................................... 14

*Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.*,
   183 F.3d 1347 (Fed. Cir. 1999)...................................................................... 6

*Softview Computer Prods. Corp. v. Ergo View Techs. Corp.*,
   1999 WL 1225254 (S.D.N.Y. 1999) ............................................................. 5

*State Indus., Inc. v. Mor-Flo Indus., Inc.*,
   883 F.2d 1573 (Fed. Cir. 1989)...................................................................... 4

*Sutera v. Perrier Group of America Inc.*,
   968 F. Supp. 655 (D. Mass. 1997) ................................................................ 7

*Texas Instruments Inc. v. Cypress Semiconductor Corp.*,
   90 F.3d 1558, 1566 (Fed. Cir. 1996).............................................................. 2

*Thiebeault v. Squared Co.*,
   960 F.2d 239 (1st Cir. 1992) ....................................................................... 18

*Transclean Corp. v. Bridgewood Servs., Inc.*,
   101 F. Supp. 2d 788 (D. Minn. 2000)............................................................ 1

*Viam Mfg., Inc. v. Iowa-Export Trading Co.*,
   2000 WL 1234623 (Fed. Cir. 2000).............................................................. 17

*Vitronics Corp. v. Conceptronics, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996)...................................................................... 10

*Warner-Lambert Co. v. Teva Pharm. USA, Inc.*,
   418 F.3d 1326 (Fed. Cir. 2005).................................................................... 14

*Wilson v. Bradlees of New England, Inc.*,
   250 F.3d 10 (1st Cir. 2001) ..................................................................... 1, 4

**Statutes**

35 U.S.C. § 102(f).......................................................................................... 15

35 U.S.C. § 103.............................................................................................. 6

**Rules**

Fed. R. Civ. P. 26(a)(2)(B) ............................................................................ 1

FED. R. CIV. P. 37(b)....................................................................................... 3

FED. R. CIV. P. 37(c)(1) .................................................................................. 1

FED. R. EVID. 402 ........................................................................................................................ 10

FED. R. EVID. 403 ........................................................................................................................ 17

FED. R. EVID. 601 ........................................................................................................................ 15

Rayovac hereby moves *in limine* to exclude certain evidence and argument.  As discussed below, evidence and/or argument Braun intends to offer at trial must be excluded as irrelevant, unfairly prejudicial, untimely disclosed, and/or directly contrary to established legal principles.

## I.    MOTION *IN LIMINE* NO. 1 TO PRECLUDE UNDISCLOSED EXPERT OPINIONS.

Rayovac moves generally to preclude any opinions not provided for in Braun's expert reports.[1]  Braun's experts Dr. Nayfeh and Jesse David had the opportunity to respond to various opinions offered by Rayovac's experts Samuel Phillips and Laura Stamm.  But, for many of Mr. Phillips' and Ms. Stamm's opinions, Braun's experts said nothing.

Federal Rule of Civil Procedure 26(a)(2)(B) requires testifying experts to prepare a report containing, *inter alia*, a "complete statement of all opinions to be expressed and the basis and reasons therefore."  Federal Rule 37(c)(1) provides in relevant part:

> A party that without substantial justification fails to disclose information required by Rule 26(a) … is not, unless such failure is harmless, permitted to use evidence at trial, at a hearing, or on a motion any witness or information not so disclosed.

FED. R. CIV. P. 37(c)(1).  Courts have not hesitated to apply this Rule 37(c)(1) to preclude undisclosed expert opinions or new evidence that an expert seeks to rely upon.  *See, e.g., Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 18-21 (1st Cir. 2001) (affirming exclusion of untimely expert disclosure); *Transclean Corp. v. Bridgewood Servs., Inc.*, 101 F. Supp. 2d 788, 795-96 (D. Minn. 2000) (striking belated supplemental expert report).

The agreed Scheduling Order set forth deadlines for the expert's rebuttal to the opinions of the other party's expert.  Braun thus has no justification for ignoring the explicit opinions of Rayovac's experts.  Now a month from trial, it would cause Rayovac severe prejudice if Braun's experts were permitted to "supplement" their opinions through surprise testimony at trial.  The

---

[1]    Braun seems to acknowledge that it cannot offer untimely opinions.  (Ex.1, Nayfeh Dep., at 221:19-21.)

Court must therefore preclude Dr. Nayfeh and Dr. David from offering any opinions or testimony not set forth in their expert reports.

## II.    MOTION *IN LIMINE* NO. 2 TO EXCLUDE ANY TESTIMONY OR ARGUMENT REGARDING INFRINGEMENT NOT SET FORTH IN BRAUN'S EXPERT REPORTS OR DISCOVERY RESPONSES.

Braun is asserting U.S. Patent No. 5,711,328 ("the '328 patent"). It is undisputed that Dr. Nayfeh has offered no opinion regarding the doctrine of equivalents.[2] (Ex. 1, Nayfeh Dep., at 192:20-193:4.) Rayovac understands, based in part on representation by Braun's counsel, that the written discovery has closed. As with Dr. Nayfeh's report, Braun did not assert a doctrine of equivalents theory in response to Rayovac's contention interrogatory regarding infringement. (Ex. 3, at Braun Resp. to Rayovac Int. No. 1.)

For reasons discussed in Rayovac's Motion for Summary Judgment, Mr. Phillips explained in his expert report that the Court's tentative claim construction for the "cradle structure" limitation should be modified. (Docket No. 170, Rayovac Motion for Summary Judgment, at 5-6.) Neither Dr. Nayfeh in his expert report, nor Braun in its interrogatory responses, addressed the issue of infringement assuming the Court agreed with Mr. Phillips.

In its opposition to Rayovac's Motion for Summary Judgment, Braun stated:

[T]o the extent the Court's March 15, 2005 construction of the asserted claims remains unchanged, Braun's claim is that Rayovac's accused devices infringe Braun's patented claims literally. Braun ***reserves the right*** to pursue a theory of infringement pursuant to the doctrine of equivalents should the Court change its construction.

---

[2] "Infringement under the doctrine of equivalents occurs when a claimed limitation and the accused product perform substantially the same function in substantially the same way to obtain substantially the same result." *Business Objects, S.A. v. Microstrategy, Inc.*, 393 F.3d 1366, 1374 (Fed. Cir. 2005). Specific evidence is necessary to prove infringement under the doctrine of equivalents including "the need to prove equivalency on a limitation-by-limitation basis . . . [and] with 'particularized testimony and linking argument.'" *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1566 (Fed. Cir. 1996) (citations omitted).

(Braun Opp. Br., at 1 n. 1 (emphasis added).)  But Braun has no "right to reserve" infringement theories based upon Rayovac's claim constructions.  *See Rambus, Inc. v. Infineon Techs AG,* 145 F. Supp. 2d 721, 729 (E.D. Va. 2001).   Braun should thus be precluded from offering any evidence or argument that Rayovac has infringed (1) under the doctrine of equivalents for any "cradle structure" construction and (2) under Rayovac's "cradle structure" constructions.

### A.    The Doctrine of Equivalents

As discussed above, both Braun and its expert have failed to say anything about the doctrine of equivalents.  The Court ordered that Braun had until the close of written discovery to supplement its infringement contentions.  (*See* Order granting Rayovac's Motion to Compel, 4/17/2005.)  As the parties have agreed written discovery is closed with no supplementation as to the doctrine of equivalents, the Court must preclude Braun from offering any evidence or argument regarding the doctrine of equivalents.  FED. R. CIV. P. 37(b); *see also Rambus*, 145 F. Supp. 2d at 728.

### B.    Rayovac's Claim Constructions

At the *Markman* Hearing, the Court instructed the parties that the tentative claim constructions could change.  *Markman* Hearing Tr. at 4-5.  Pursuant to the Scheduling Order, expert reports for the party with the burden of proof were due on May 23, 2005.  (Docket No. 51, Amended Scheduling Order, 2/11/05, at 1.)  Braun was aware that Mr. Phillips proposed that the Court's tentative claim construction should be modified.  (Ex. 5, First Expert Report of Samuel R. Phillips, PE, at 8.)  Braun then chose to have Dr. Nayfeh ***not*** offer any infringement opinion under the alternate construction. (Ex. 1, Nayfeh Dep., at 193:5-23.)

As discussed above, courts routinely exclude evidence due to non-compliance with Federal Rule 26(a)(2)(B).  *See* FED. R. CIV. P. 37(c)(1).  As stated by the First Circuit:

> Rule 37(c)(1) … requires the near automatic exclusion of Rule 26 information that is not timely disclosed[.]  [I]t is the obligation of the party facing sanctions for belated disclosure to show that its failure to comply with the Rule was either justified or harmless.

*Wilson*, 250 F.3d at 20-21.  Where, as here, a party has specific notice of competing claim constructions, courts have precluded experts from offering infringement opinions on those constructions if such opinions were not contained within the expert's report.  In *Rambus*, the court stated:

> It would seem to be an equally obvious proposition that the expert reports, therefore, needed to respond to the possibility that the claim construction opinion might reject the interpretations advanced by [the patentee.] … [I]t was incumbent upon [the patentee] to have [its expert] … offer alternative opinions on infringement[.]

*See Rambus,* 145 F. Supp. 2d at 732.  Braun chose to have its expert ignore the possibility that the Court might alter its **tentative** claim construction.  (Ex. 1, Nayfeh Dep., at 195:3-23.)  Now that expert reports have been submitted, any "supplementation" by Dr. Nayfeh will prejudice Rayovac.  Accordingly, the Court must preclude Dr. Nayfeh from offering any opinion except his opinion that Rayovac literally infringes under the Court's tentative claim construction.

## III.    MOTION *IN LIMINE* NO. 3 TO EXCLUDE ANY EVIDENCE OR ARGUMENT PERTAINING TO CLAIM 9 OF THE '328 PATENT.

Braun intends to request lost profits for Rayovac's alleged infringement.  Thus, Braun must prove, *inter alia*, the absence of acceptable non-infringing substitutes.  *See State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577 (Fed. Cir. 1989).  As detailed in the reports of Rayovac's experts, there existed a number of non-infringing substitutes available to Rayovac.  (Ex. 6, Second Phillips Report, at ¶¶ 79-103 ; Ex. 7, Expert Report of Laura B. Stamm, at ¶ 24-26.)  Some of the non-infringing substitutes involve relatively small modifications to Rayovac's existing (and already non-infringing) products.

For the modified Rayovac products, Braun intends to argue that the non-infringing substitutes infringe claim 9 of the '328 patent.[3]  (Ex. 8, Phillips Dep., at 124:22-126:13.) Specifically, Braun hopes to assert that Rayovac's products infringe claim 9, and thus the modified products would still infringe.  (*Id.*)  While Rayovac disagrees, Braun's argument must be excluded.

*First*, the Scheduling Order required Braun to identify the claims which it alleged Rayovac infringed on October 22, 2004.  (Docket No. 36, Scheduling Order at 4.)  It is now too late to raise claim 9.  *See Softview Computer Prods. Corp. v. Ergo View Techs. Corp.*, 1999 WL 1225254, at *2-3 (S.D.N.Y. 1999) (striking untimely asserted patent claims).

*Second*, the parties exchanged *Markman* briefs between December 1, 2004 and January 19, 2005 for the *Markman* Hearing on March 15, 2005.  Braun did not assert, the parties did not brief, and the Court did not consider the construction of claim 9.  Rayovac believes that claim 9 has serious claim construction defects including indefiniteness.  Claim construction is an issue for the Court, and the time to address the scope of claim 9 was in March, not at trial.

*Third*, Braun never provided discovery as to its argument on claim 9 — either in fact or expert discovery.  Despite claiming lost profits, Braun did not once mention claim 9 in response to Rayovac's damages interrogatory.  (Ex. 3, Braun Resp. to Rayovac Interrogatory No. 6.)  Dr. Nayfeh was aware of the non-infringing substitutes proposed, and he, in fact, addressed them. (Ex. 1, at 194:16-222:1.)  But he said nothing whatsoever about claim 9.  Rayovac only received notice of Braun's argument ***after the deposition*** of Dr. Nayfeh.  (Ex. 8, Phillips Dep., at 124:22-126:13.)  Such obvious sandbagging is neither justified nor harmless.  Thus, Braun should be precluded from offering any evidence or argument concerning claim 9.

---

[3]  Claim 9 includes the element: "an electric arrangement for temporarily operating the shaving head of the shaving apparatus and the feed device[.]"

## IV.    MOTION *IN LIMINE* NO. 4 TO EXCLUDE DR. NAYFEH'S UNRELIABLE OPINIONS AS TO NON-OBVIOUSNESS.

The test for obviousness is well established.   35 U.S.C. § 103; *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).  Each claim element must be found in a combination of prior art references, and there must have been a motivation to combine those references.  *See In re Kotzab*, 217 F.3d 1365, 1370 (Fed. Cir. 2000).  "The second step in an obviousness inquiry is to determine whether the claimed invention would have been obvious as a legal matter, based on underlying factual inquiries including: … (3) the differences between *the claimed invention* and the prior art[.]"  *Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1354 (Fed. Cir. 1999) (emphasis added).  It is legal error to compare embodiments in the specification — as opposed to the claims —to the prior art in an obviousness analysis.  *See Jackson Jordan, Inc. v. Plasser Am. Corp.*, 747 F.2d 1567, 1578 (Fed. Cir. 1984) (claims, not embodiments, are focus of the obviousness inquiry).[4]

Mr. Phillips has explained that, comparing the asserted *claims* of the '328 patent to the prior art, those claims are at least obvious.  (Ex. 5, First Phillips Report, at 48-53.)  Dr. Nayfeh's "response" was to ignore the claims.   He instead compared the prior art to the preferred embodiment in the '328 patent specification.  For example, with respect to claims 11 and 12 requiring a "drying device" and a "drying device comprising an impeller," Dr. Nayfeh argues that the prior art does not disclose an allegedly inventive "louvered shutter" (discussed at col. 13:9-12 of the '328 patent).  (Ex. 9, Second Nayfeh Report, at 18-19.)  He, however, concedes that the "louvered shutter" appears nowhere in the asserted claims.   (Ex. 1, Nayfeh Dep., at 53:16-25.)  Likewise, for the "bracket" limitation of claim 18, Dr. Nayfeh admits that he has

---

[4]    *See also Brown & Williamson Tobacco Corp. v. Phillip Morris Inc.*, 1999 WL 33756683, at *32 (W.D. Ky. 1999); *Radix Corp. v. Samuels*, 1989 WL 206496, at *5 (D.D.C. 1989).

compared what is not "literally" in the claim (*i.e.*, the preferred embodiment in the specification) to the prior art.  (*Id.* at 128:6-21.)

Dr. Nayfeh's testimony reveals the fundamentally erroneous methodology he applied in his obviousness analysis:

> A:    [W]hen you look at obviousness, ***you can't just look at the claims***.  You have to look at the active invention, and the active invention includes being able to write the enabling document.
>
> Q:    What is your understanding of what you are supposed to be comparing for purposes of an obviousness analysis?
>
> A:    I don't see it as strictly a comparison.
>
> Q:    Okay.  When you were rendering your opinions on obviousness, you weren't comparing the claims to the prior art?
>
> A:    ***You're not comparing strictly the claims***.  You're looking at the claim in the context of the overall invention and asking ***whether the active invention was obvious***.
>
> ·········································································
>
> Q:    So when you were opining on obviousness, you were comparing the claims and the specification against the prior art, is that right?
>
> A:    Yes.

(Ex. 1, Nayfeh Dep., at 54:18-55:9; 55:13-16. (emphasis added); *see also* 128:6-21.)

An expert's testimony must meet the requirements of Federal Rule of Evidence 702.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591-92 (1993); *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *see also Hochn v. Bobst Group, Inc.*, 290 F.3d 446, 452 (1st Cir. 2002).[5]  Expert testimony must be reliable and "fit" the facts of the case.  *See Sutera v. Perrier Group of America Inc.*, 968 F. Supp. 655, 660-61 (D. Mass. 1997).

Dr. Nayfeh's opinions do not "fit" the facts of the case.  The patent claims are the issue, not the preferred embodiment.  *See Jackson Jordan*, 747 F.2d at 1578.  Dr. Nayfeh's beliefs

---

5    Federal Rule of Evidence 104(a) governs the gatekeeping function.  *See Daubert*, 509 U.S. at 592-93 n. 10.

about "louvered shutters" and other features not "literally in the claims" are legally irrelevant and can only mislead the jury.  His comparison of the preferred embodiment to the prior art is particularly noteworthy in light of Braun's repeated arguments that the claims should not be limited to the preferred embodiment.  (Docket No 45, Braun *Markman* Reply Br., at 8.)  Under these facts, an expert's unreliable obviousness opinion should be excluded.  *See Oxford Gene Tech., Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 435-37 (D. Del. 2004) (excluding expert's obviousness opinion where the expert had failed to compare ***the claims*** to the prior art).  As in *Mergen*, this Court should preclude Dr. Nayfeh from offering his manifestly unreliable obviousness opinions.

## V.    MOTION *IN LIMINE* NO. 5 TO PRECLUDE DR. NAYFEH FROM OFFERING TESTIMONY INCONSISTENT WITH AGREED CLAIM CONSTRUCTIONS.

Prior to the *Markman* Hearing, the parties agreed upon a number of claim constructions. Now confronted with invalidating prior art, Braun is trying to change the tune after the dance.  It cannot.  *See Loral Fairchild Corp. v. Victor Co. of Japan, Ltd.*, 911 F. Supp. 76, 79-81 (E.D.N.Y. 1996) (precluding party from deviating from agreed claim construction).

*First*, the parties have agreed that the preambles to the asserted claims are not limitations. Braun, in fact, vigorously argued that they were not.  (Braun *Markman* Br., at 4-5; 14; 18.)  The preamble "a cleaning device comprising" thus cannot distinguish the prior art.  *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808-09 (Fed. Cir. 2002).  But, in addition to discussing the irrelevant "louvered shutter" (*see* Rayovac Motion in *Limine* No. 4), to evade the prior art, Dr. Nayfeh argues that the "drying device" of claim 11 must be in an integrated unit with the "cradle structure."  (Ex. 1, Nayfeh Dep., at 49:11-51:10.)  By admission, the ***only language*** in claim 11 that allegedly supports Dr. Nayfeh's argument is the preamble.  (Ex. 1,

Nayfeh Dep., at 50:9-51:10.)   The Court must thus preclude Dr. Nayfeh's opinion which is contrary to the law and the claim construction in this case.

*Second*, Braun argued that a "cleaning fluid container" means "a container for holding cleaning fluid," the plain and ordinary meaning.  (Docket No. 39, Braun Markman Br., at 9.) Rayovac agreed.  As U.S. Patent No. 2,976,552 ("the '552 patent") anticipates asserted claims 14 and 18, (Ex. 5, First Phillips Report, at 45-47), Dr. Nayfeh must now concoct a distinction.  He attempts to do so by arguing that the a spray can in the '552 patent that undeniably holds a fluid is not a "cleaning fluid container" because fluid contaminated after cleaning is not returned to the can.  (Ex. 9, Second Nayfeh Report, at 11.)  His testimony reveals that his opinion ridiculously excludes admitted "cleaning fluid containers" such as bottles of dishwasher detergent.  (Ex. 1, Nayfeh Dep., at 99:5-100:10.)  His testimony further proves that his opinion is irrelevant in light of the agreed construction:

> Q:      Can you point me to where in the language of Claim 14 there is any requirement of a provision to catch or contain contaminated fluid?
>
> A:      It's only implied.

(*Id.* at 98:21-24.)  If Braun wanted to assert at that the term "cleaning fluid container" impliedly has a narrow meaning, Braun should not have agreed to the ***exact opposite proposition***.

*Third*, during the *Markman* proceedings, both Braun and Rayovac agreed, by submitting no briefing, that the term "shaving apparatus" in the '328 patent did not require construction. Claim terms are presumptively given their plain and ordinary meaning.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*).  As explained by Mr. Phillips and conceded by Dr. Nayfeh, the plain and ordinary meaning of the term "shaving apparatus" encompasses both wet and dry shaving apparatuses.  (Ex. 10, Phillips Third Report, at ¶¶ 63-65; Ex. 1, Nayfeh Dep., at 34:10-13.)  By attempting an end run around the *Markman* process, Braun

hopes to read the word "dry" into the '328 patent in an attempt to avoid the prior art. (Docekt No. 182, Plaintiff's Response to Defendant's Statement of Uncontested Facts, Fact No. 107 at 36.) However, as Dr. Nayfeh has to admit, Braun knew how to claim a "dry shaving apparatus," and it, in fact, did so in the claims of the now-dismissed U.S. Patent No. 5,649,556. (Ex. 11, at col. 11, ll. 16-17; Ex. 1, Nayfeh Dep., at 78:21-79:13.) Not only does the evidence contradict Dr. Nayfeh's opinion, Braun opted to forego presenting any evidence that the term "shaving apparatus" did not have its plain and ordinary meaning at the *Markman* Hearing to overcome the presumption. Plain and ordinary meaning must control. *See Vitronics Corp. v. Conceptronics, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The Court must thus preclude Braun from offering any evidence or argument inconsistent with agreed plain and ordinary meaning constructions.

## VI.    MOTION *IN LIMINE* NO. 6 TO PRECLUDE ANY ARGUMENT INCONSISTENT WITH GRAIN PROCESSING CORP. V. AMERICAN MAIZE-PRODUCTS CO.

The Court must preclude Braun from advancing an erroneous argument regarding the "availability" of non-infringing substitutes to Rayovac. Specifically, Rayovac expects that Braun will present the argument that a "non-infringing substitute" is not available unless an alleged infringer was developing and/or marketing that substitute as of the date of the alleged infringement. Braun's argument is contrary to law and thus irrelevant. FED. R. EVID. 402.

To recover lost profits, Braun must prove, *inter alia*, the absence of acceptable non-infringing substitutes. *See Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1977). Rayovac asserts that there were several non-infringing substitutes available to it when its alleged infringement began. Evidence offered at trial will prove Rayovac's technical ability to bring these designs to market, and Rayovac's ability to sell them. Mr. Phillips has also explained that the substitutes were technically feasible to implement. (*See* Ex. 6, Second Expert Report of Samuel R. Phillips PE, at ¶¶ 79-83 & 88-103.) Ms. Stamm has

10

further explained that the non-infringing substitutes would have been commercially acceptable. (*See* Ex. 7, Expert Report of Laura B. Stamm at ¶¶ 24-26.)

Braun apparently intends to argue that the non-infringing substitutes were not "available" in Fall 2003 for the irrelevant reason that the substitutes were not marketed or under development at that time. For example, in his Third Expert Report, Dr. Nayfeh states that an air cleaning system was not "available" because Rayovac did not begin prototyping it until 2004. (*See* Ex. 12, Third Nayfeh Report, at 11-12.) Similarly, Dr. Nayfeh's principal criticism of Rayovac's other non-infringing substitutes is that Rayovac has not actively pursued them.[6] (*Id.* at 14-15.)

Braun's argument has been squarely rejected. *See Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1354 (Fed. Cir. 1999). Proof of "but for" causation is a prerequisite to recovery of lost profits. The issue here is thus not whether the non-infringing substitutes were, in fact, produced and/or sold during the alleged infringement. The issue is whether the substitutes were "available;" *i.e.*, whether "but for" any infringement the substitutes could have been produced and sold by the alleged infringer. If so, the patented technology would be of less value to the alleged infringer. The Federal Circuit has explained:

> [O]nly by comparing the patented invention to its next-best available alternative(s) — ***regardless of whether the alternative(s) were actually produced and sold during the infringement*** — can the court discern the market value of the patent owner's exclusive right, and therefore his expected profit or reward, had the infringer's activities not prevented him from taking full economic advantage of this right.

*Id.* at 1351; *see also Collegenet, Inc. v. Applyyourself, Inc.*, 2004 WL 2050491, at *2-3 (D. Or. 2004). Thus, the mere fact that Rayovac has not commercialized any of the non-infringing

---

6    The reason, of course, is that Rayovac's current products do not infringe any valid patent claim.

substitutes (or even begun work on some of them) is irrelevant.  Braun is free to argue at trial

that Rayovac lacked the technical ability to bring the non-infringing substitutes to market, or that

the non-infringing substitutes would not be commercially acceptable.  But as a matter of law, the

Court must preclude Braun from arguing that because the designs are not currently on the market

or actively under development, they *ipso facto* are not "available" non-infringing substitutes.

## VII.    MOTION *IN LIMINE* NO. 7 TO EXCLUDE BRAUN FROM INTRODUCING ANY EVIDENCE OR ARGUMENT OF SECONDARY CONSIDERATIONS DUE TO DOCUMENT DESTRUCTION.

Braun apparently intends to offer evidence of secondary considerations of non-

obviousness — (1) the alleged commercial success of its products covered by its patents and (2)

the purported long felt need for its patented inventions.  (Ex. 3, Braun Resp. to Rayovac Int. No.

5.)  Commercial success is only relevant to obviousness if Braun can prove a nexus between the

patent claims and the alleged commercial success.  *See Avia Group Int'l Inc. v. L.A. Gear Cal.,*

*Inc.*, 853 F.2d 1557, 1564 (Fed. Cir. 1988).  Rayovac disputes that Braun has proof of (1) any

such nexus or (2) a long felt need for its alleged inventions.

Not only is Braun's proof lacking, Braun should be precluded from offering any evidence

or argument concerning secondary considerations because it destroyed highly relevant evidence.

Braun filed this suit in December 2003, and it is clear that it anticipated litigation at least by Fall

2003.  (Ex. 13, Privilege Log, at 5.)  By Fall 2003, Braun was under an affirmative duty to

preserve evidence relevant to the '328 patent.  *See Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d

1566, 1575 (Fed. Cir. 1996) ("[T]here is an uncompromising duty to preserve relevant records,

and particularly after litigation has begun.").  Braun, however, did nothing to ensure that it

fulfilled this duty.  As testified by numerous Braun employees that worked on the development,

sales, and/or marketing of the Braun's cleaning system, Braun employees were not even told to

gather relevant evidence, let alone preserve it.  (Ex. 14, Hoeser Dep., at 58:2-67:20; 81:18-22;

192:23-193:19; 209:16-220:7; 243:20-23; 255:2-256:15; Ex. 15, Parker Dep., at 79:11-16; Ex.

16, Smetana Dep., at 29:7-14; Ex. 17, Greaves Dep., at 170:9-171:1.)

Braun's failure to preserve relevant evidence has directly prejudiced Rayovac. Gilbert

Greaves was the business director of Braun's men's shaver group during the early development

of Braun's alleged inventions. (Ex. 17, Greaves Dep., at 32:4-7.) When Mr. Greaves initially

heard about the cleaning system, he was unenthusiastic about it and did not want Braun to

market the product. (Ex. 18, Pahl Dep., at 54:15-56:17; Ex. 17, Greaves Dep., at 74:13-20.)

Braun's cleaning system did, however, come to market. Mr. Greaves then prepared a detailed

case study regarding Braun's cleaning system, detailing how and why it was developed, and

what allegedly made it successful. (Ex. 17, Greaves Dep., at 61:2-62:5; 62:11-64:5.) Rayovac

believes the case study would have at least tended to disprove Braun's alleged secondary

considerations because, *inter alia*, Mr. Greaves didn't think there was a need for the product.[7]

Mr. Greaves retired from Braun in February 2004 — after Braun had filed this case. (Ex.

17, Greaves Dep., at 170:9-10.) When he left his computer at Braun, the case study existed in a

specific computer file, and Rayovac requested production of the document.[8] (*Id.* at 169:11-

171:21.) Braun never produced the document, and now asserts that it no longer has the

document. (Exs. 19 and 20, Letters from D. Wendlandt to K. Ueland, 9/22/05.) Braun is simply

trying to put a favorable spin on the allegedly inadvertent destruction of a document saved in a

specific computer file that existed during the litigation. The document(s) are relevant. They

existed during the case. If Braun had exercised ***any*** care, Rayovac would have access to what it

---

[7]    As to commercial success, Mr. Hoeser, Braun's 30(b)(6) designee on secondary considerations, testified that
there is no nexus between the commercial success of Braun's products and the "drying device" of claim 11 or
the "bracket" of claims 18. (Ex. 14, Hoeser Dep., at 173:14-174:6; 169:19-21.)

[8]    Rayovac asked that Braun produce the document after Mr. Greaves' deposition was completed.

believes was highly relevant evidence.[9]  Courts routinely sanction parties for the destruction of relevant evidence.  *See Nation-Wide Check Corp., Inc. v. Forest Hills Distribs., Inc.*,  692 F.2d 214, 217 -218 (1st  Cir. 1982); *Siegel v. Am. Honda Motor Co., Inc.*, 921 F.2d 15, 16-17 (1st Cir. 1990); *Headley v. Chrysler Motor Corp.*, 141 F.R.D. 362, 365 (D. Mass. 1991).  Given Braun's ***at a minimum*** gross negligence, the Court should sanction Braun by precluding Braun from offering any evidence or argument regarding secondary considerations.[10]

## VIII.  MOTION *IN LIMINE* NO. 8 TO PRECLUDE ANY EVIDENCE OR ARGUMENT AS TO THE ALLEGED GOOD FAITH OF HANS KLAUER.

Rayovac has alleged that the Braun's in-house patent agent Hans Dieter Klauer committed inequitable conduct during prosecution through knowing and intentional misstatements and omissions.  (Docket No. 171, Rayovac Mem. in Support of its Mot. for Summary  Judgment at 13-14.)  A fact finder can infer deceptive intent upon proof of (1) the materiality of withheld or misrepresented information and (2) knowledge of such information by an individual with a duty of disclosure.  *See Warner-Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326, 1346 (Fed. Cir. 2005).  A patentee can attempt to rebut that inference by introducing evidence of the accused individual's good faith.  *Brasseler U.S.A., L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1383 (Fed. Cir. 2001).[11]

Mr. Klauer is deceased.  (Ex. Docket No. 177, Braun Opp. at 11.)  "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness

---

[9]  As discussed further below, Braun's document collection efforts were wholly deficient in this case.  It isn't even clear when Mr. Greaves' case study was destroyed.  This is not surprising given that Braun didn't even attempt to collect documents from Mr. Greaves' or others files until this past summer.

[10]  Alternately, Rayovac requests that the Court instruct the jury that it can infer from Braun's destruction of the case study that it would have adversely impacted Braun's secondary considerations case.  *See, e.g., Roeske v. Pryor*, 504 N.E.2d 927, 932-33 (Ill. App. 1987).

[11]  Such precedent should not be confused with Dr. Pahl's and Mr. Braun's lies concerning inventorship.  Where deceptive intent is undisputed, nothing needs to be inferred, and alleged good faith is irrelevant.

has personal knowledge of the matter." FED. R. EVID. 601. As to information that Rayovac can prove Mr. Klauer knew about through documentary evidence, Braun can contest materiality. But the only person knowledgeable about Mr. Klauer's good (or bad) faith is Mr. Klauer.

Likewise, Braun has withheld as privileged documentary evidence authored by Mr. Klauer in connection with the '328 patent. (Ex. 13.) Such evidence would clearly be probative of Mr. Klauer's alleged good faith or, as Rayovac believes, bad intent. Having withheld such evidence, Braun cannot offer evidence of Mr. Klauer's good intentions as a sword after shielding relevant evidence from scrutiny. See, e.g., Medtronic, Inc. v. Guidant Corp., 378 F. Supp. 2d 503, 505 n. 2 (D. Del. 2005). Accordingly, this Court should preclude Braun from offering any evidence or argument as to Mr. Klauer's good faith.

## IX. MOTION *IN LIMINE* NO. 9 TO PRECLUDE CORROBORATION EVIDENCE.

The '328 patent is invalid pursuant to 35 U.S.C. § 102(f) because the co-inventors of claims 13, 18, and 19 of the '328 patent, Norbert Smetana and Helmut Kraus respectively, are not named as inventors. (Ex. Docket No 191, Rayovac's Answer and Counterclaims to Second Amended Complaint, at ¶ 46; ¶¶ 74-81.) Braun asserts, *inter alia*, that Dr. Pahl and/or Mr. Braun conceived of the subject matter of claims 13, 18, and 19 prior to Mr. Smetana and Mr. Kraus. To establish a conception date, testimony as to the purported date **must** be corroborated by documentary evidence. See Brown v. Barbacid, 276 F.3d 1327, 1334 -1335 (Fed. Cir. 2002).

Rayovac took the deposition of Braun on conception and reduction to practice dates. For claim 13, Braun's designee testified that B 3074-76 showed that Dr. Pahl had allegedly conceived of a heater used in conjunction with a fan prior to Mr. Smetana.[12] (Ex. 14, Hoeser Dep., at 83:16-85:23.) For claims 18 and 19, Braun's designee could identify no documents

---

[12]    As Rayovac will prove at trial, the documents do not show a heater. (Ex. 10, Third Phillips Report, at ¶ 52.)

showing that Mr. Braun had conceived of a bracket and interlock prior to Mr. Kraus.  (*Id.*, at 89:8-90:24.)   The testimony of Braun's designee binds Braun.  *AstraZeneca AB v. Mutual Pharm. Co., Inc.*, 2003 WL 1113271, at \*10 (E.D. Pa. 2003).   Accordingly, the Court should preclude Braun from relying upon any documents except B 3074-76 to corroborate Dr. Pahl's conception of claim 13 prior to Mr. Smetana.  Likewise, the Court should preclude Braun from relying upon any documents to corroborate Mr. Braun's alleged conception of claims 18 and 19 prior to Mr. Kraus.

## X.   MOTION *IN LIMINE* NO. 10 TO PRECLUDE ANY EVIDENCE OR ARGUMENT THAT RAYOVAC COPIED BRAUN.

As stated, Rayovac understands that written discovery is completed.  Rayovac has served interrogatories upon Braun pertaining to (1) secondary considerations of non-obviousness and (2) willfulness, and took a Rule 30(b)(6) deposition on secondary considerations.

Braun has only alleged commercial success and long felt need as secondary considerations (and, for reasons discussed above, evidence on both theories should be excluded).  At the Rule 30(b)(6) deposition, Braun confirmed that it did not intend to prove any other secondary considerations.  (Ex. 14, Hoeser Dep., at 175:13-176:10.)  Given Braun's discovery responses, Braun should not be allowed to offer evidence of (1) failures by others, (2) licenses, (3) copying by the accused infringer, (4) unexpected results, and (5) skepticism by others.  *Graham*, 383 U.S. at 17-18.

Further, beyond numerous objections, Braun responded to Rayovac Interrogatory No. 7 requesting Braun's willfulness contentions as follows:

> Braun notified Remington that its activities infringed the patents-in-suit in December 2003.  On information and belief, Braun states that Remington is aware of Braun's patents, and in particular Braun's patents in the area of cleaning devices for dry shavers.  Despite this awareness, Remington has entered the market with an infringing device in October 2003.  Further, in August 2004, after

Braun filed the present action, Remington introduced a foil version of its infringing product as a further act of willful infringement.

Evidence of copying can be relevant to willfulness. *Viam Mfg., Inc. v. Iowa-Export Trading Co.*, 2000 WL 1234623, at *3 (Fed. Cir. 2000) (copying relevant to obviousness and willfulness). Significantly, however, Braun's interrogatory response does not contend that Rayovac copied Braun. As Braun has agreed that its interrogatory responses are final, it must be precluded from offering any evidence or argument that was not set forth in response to Rayovac's Interrogatory No. 7 including, but not limited to, copying. *See Knopik v. Amoco Corp.*, 2003 WL 172917, at *3-4 (D. Minn. 2003) (excluding theory not disclosed in response to a contention interrogatory).

Copying can only be relevant to secondary considerations of nonobviousness.[13] *Viam Mfg., Inc.*, 2000 WL 1234623, at *3 (copying relevant to obviousness and willfulness). But Braun cannot offer evidence or argument as to copying — which it does not have in any event — because it did not disclose any such evidence to Rayovac in contention interrogatory responses and/or its 30(b)(6) deposition testimony. *Knopik*, 2003 WL 172917, at *3-4. It nonetheless appears from Braun's pleadings that Braun intends to argue to the jury that Rayovac copied Braun. (Docket No. 66, Plaintiff's Second Amended Complaint at ¶¶ 4-7.) Braun's allegation of copying — unsupported by ***any evidence*** — is simply irrelevant and would be unfairly prejudicial. FED. R. EVID. 403. Accordingly, the Court should preclude Braun from even suggesting to the jury that Rayovac copied from Braun.

## XI. MOTION *IN LIMINE* NO. 11 TO PRECLUDE BRAUN FROM INTRODUCING UNTIMELY PRODUCED EVIDENCE AND FROM INTRODUCING EVIDENCE OR ARGUMENT OF COMMERCIAL SUCCESS.

---

[13] Copying is also relevant to infringement under the doctrine of equivalents. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 612 (1950) (copying relevant to doctrine of equivalents). But, for reasons set forth in connection with Motion *in Limine* No. 2, the doctrine of equivalents is not an issue here.

Braun's initial document production in this litigation was slightly over 7,000 pages. After Braun insisted that it had produced all responsive documents, Rayovac established through deposition discovery that Braun had failed to collect or produce a large number of responsive documents. Braun's counsel acknowledged this in a May 13, 2005 letter, indicating that "[i]t is apparent from Mr. Hoeser's deposition that there are documents which should have been produced by Braun." (Ex. 2.) Thereafter Braun produced additional documents on a rolling basis. Over six weeks, Braun's production of 7,000 pages ballooned to approximately 40,000 pages.[14] Braun then insisted that its document production was complete. However, on August 16, 2005, Rayovac received several computer disks which contained over 90,000 pages of documents.[15]

In order to avoid the prejudice due to Braun's untimely production, Rayovac moves this Court to preclude Braun from relying on any of the 90,000 pages produced in August. Preclusion is an appropriate remedy to avoid surprise and prejudice where, as here, a party fails to supplement its discovery responses in a timely fashion. *See Thiebeault v. Squared Co.*, 960 F.2d 239, 246-247 (1st Cir. 1992) ("[T]he focus of a preclusion inquiry is mainly upon surprise and prejudice, including the opponent's ability to palliate the ill effects stemming from the late disclosure.") *Currier v. United Techs. Corp.*, 2003 WL 22799669, at *5 (D. Me. 2003) (excluding 600 documents produced on the eve of trial). While Rayovac disagrees, Braun argued to the Court that these documents are irrelevant to the issues in the case. (Docket No. 177, Braun's Opposition to Rayovac's Motion for Reconsideration at 1.) Accordingly, Braun

---

[14] Rayovac moved the Court to extend the case schedule due to Braun's untimely production of the 40,000 pages. ( Docket No. 67, Rayovac's Motion to Extend.) The Court denied Rayovac's motion.

[15] After receiving the 90,000 pages, Rayovac moved for reconsideration of the Court's Order denying the Motion to Extend the Case Schedule. (Docket No. 174, Rayovac's Motion for Reconsideration.) The Court again denied Rayovac's motion. In the Motion for Reconsideration, Rayovac noted that it would move the Court for evidentiary sanctions should the case schedule not be moved. (*Id.* at 5.)

cannot now argue that any of the 90,000 documents are relevant to the issues that Braun seeks to prove.

Braun has represented that the 90,000 pages of documents are related to sales and marketing of the products allegedly covered by the patents-in-suit — information clearly relevant to the alleged commercial success of Braun's product.  (Docket No. 177, Braun's Response to Rayovac's Motion for Reconsideration of its Motion to Extend Time, Docket No. 177.)  Braun produced all of this information *after* Rayovac had taken the 30(b)(6) deposition on secondary considerations.  As with the destroyed case study, Rayovac should have been allowed to probe the untimely produced evidence to test Braun's "proof" that there is a nexus between the commercial success of Braun's products and the alleged inventions of the patents-in-suit.  But through document destruction and its at best grossly negligent efforts to gather documents, Braun handcuffed Rayovac's ability to rebut Braun's claim of commercial success.  Rayovac should not be the party to suffer for Braun's discovery shortcomings.  Rather, the Court must preclude Braun from offering any evidence that allegedly shows a nexus between the commercial success of its products and the alleged inventions of the patents-in-suit.  *See Batson v. Neal Spelce Assocs., Inc.*, 112 F.R.D. 632, 644 (W.D. Tex. 1986) (precluding plaintiff from producing evidence on damage issue due to continued failure to produce relevant material).

## XII.    CONCLUSION

For the foregoing reasons, Rayovac respectfully requests that the Court grant Rayovac's Motions in *Limine* Nos. 1-11.

DATED:  September 30, 2005                DWYER & COLLORA LLP


                                          By:  __/s/ Kevin Ueland_____
                                          Jessica P. Driscoll (BBO# 139660)
                                          Dwyer & Collora LLP
                                          600 Atlantic Avenue
                                          Boston, MA  0210-1122
                                          (617) 371- 1000
                                          Facsimile: (617)371-1037

                                          Mark A. Pals (admitted *pro hac vice*)
                                          James A. Shimota (admitted *pro hac vice*)
                                          Kevin S. Ueland (admitted *pro hac vice*)
                                          James B. Coughlan (admitted *pro hac vice*)
                                          KIRKLAND & ELLIS LLP
                                          Aon Center
                                          200 E. Randolph Dr.
                                          Chicago, IL 60601
                                          (312) 861-2000
                                          Facsimile: (312) 861-2200