# Exhibit 8

1

SAMUEL R. PHILLIPS, AUGUST 30, 2005

```
 1            IN THE UNITED STATES DISTRICT COURT
 2                 DISTRICT OF MASSACHUSETTS
 3
 4   BRAUN GmbH,                    )
 5              Plaintiff,          )
 6        -vs-                      ) Civil Action No.
 7   RAYOVAC CORPORATION,           ) 03-CV-12428-WGY
 8              Defendant.          )
 9
10        The deposition of SAMUEL R. PHILLIPS, called
11   by the Plaintiff for examination, taken pursuant to
12   the Federal Rules of Civil Procedure of the United
13   States District Courts pertaining to the taking of
14   depositions, taken before CORINNE T. MARUT, C.S.R.
15   No. 84-1968, a Certified Shorthand Reporter of the
16   State of Illinois, at the offices of Kirkland &
17   Ellis LLP, Suite 5600, 200 East Randolph Drive,
18   Chicago, Illinois, on the 30th day of August, A.D.
19   2005, commencing at 8:53 a.m.
20
21
22
23                                         COPY
24
```

1  elimination of the bracket in the Rayovac device.
2      A.    Yes.
3      Q.    To whom did you speak to with regard to
4  that one?
5      A.    I don't think I talked to anybody about
6  that. It's just that they could do it.
7      Q.    Why do you say they could do it?
8      A.    Well, there is so much precedent.
9  Cordless telephone comes immediately to mind. The
10 only thing the bracket does is -- it does two
11 things. It adds stability and it adds electric
12 power and both of those you can do with other
13 devices that are well-known. I mean, I know of
14 them and presumably Rayovac knows of them.
15     Q.    But you haven't spoken to anyone at
16 Rayovac to confirm that?
17     A.    I don't believe I have.
18     Q.    And you haven't seen any Rayovac
19 documents concerning this?
20     A.    No, definitely not seen any Rayovac
21 documents.
22     Q.    Have you tested these what you call
23 available non-infringing substitutes against any of
24 the other claims in the '328 patent, that is, the

1  ones that have not been asserted in this case?
2      A.   I don't think I have. I don't think
3  I've paid any attention to the non-asserted ones.
4      Q.   Can I ask you to look at claim 9 of the
5  '328 patent, which is Exhibit 7.
6      A.   All right.
7      Q.   As I read them, the only difference
8  between claim 9 and claim 11, which is one of the
9  asserted claims, is that claim 11 requires a drying
10 device and claim 9 requires an electrical
11 arrangement for temporarily operating the shaving
12 head of the shaving apparatus and the feed device?
13     A.   Yes.
14     Q.   Is that your reading as well?
15     A.   Let me do my own comparison here.
16     Q.   Sure.
17     A.   Yes, I think you're reading this
18 correct.
19     Q.   So, with regard to the non-infringing
20 substitute which would eliminate the dryer, would
21 that non-infringing substitute escape infringement
22 of claim 9?
23     MR. SHIMOTA:   Objection; outside the scope,
24 form.

```
 1  BY THE WITNESS:
 2       A.    Of course, I haven't reached an opinion
 3  on that.  I'd have to study that a bit to see what
 4  the -- what the result would be.
 5  BY MS. WENDLANDT:
 6       Q.    Do you know whether the -- any of the
 7  three Remington or Rayovac products accused of
 8  infringement in this case have an electrical
 9  arrangement that operates both the feed device and
10  the shaving head?
11       MR. SHIMOTA:  Objection.
12  BY THE WITNESS:
13       A.    No, I'm sorry, I don't know.
14  BY MS. WENDLANDT:
15       Q.    Okay.  Turning your attention back to
16  claim 1 of the '328 patent, which is the -- one of
17  the elements is a cradle structure with an outlet
18  port.
19             Isn't the dimension of the outlet port
20  something that you would need to know in order to
21  answer the question whether the cradle structure is
22  able to retain cleaning fluid?
23             Again, assuming that claim 1 did not
24  have a concave cradle structure.
```