IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRAUN GmbH,<br><br>        Plaintiff,<br><br>v.<br><br>RAYOVAC CORPORATION,<br><br>        Defendant. | Civil Action No. 03-CV-12428-WGY |

**BRAUN'S MEMORANDUM OF LAW IN OPPOSITION TO
RAYOVAC'S MOTIONS *IN LIMINE* NOS. 1-11**

**TABLE OF CONTENTS**

I.  BRAUN EXPECTS BOTH PARTIES WILL COMPLY WITH THE RULES REGARDING EXPERT TESTIMONY……………………………………….…....1

II. BRAUN MAY OFFER TESTIMONY AS TO INFRINGEMENT SHOULD THE COURT CHANGE ITS <u>MARKMAN</u> CONSTRUCTION……………………….2

III. BRAUN MAY OFFER EVIDENCE AND ARGUMENT ON CLAIM 9 TO SHOW THAT RAYOVAC DID NOT HAVE AN AVAILABLE ACCEPTABLE NON-INFRINGING SUBSTITUTE……………………………………………………….2

IV. PROFESSOR NAYFEH'S EXPERT OPINIONS ON NON-OBVIOUSNESS ARE PROPER……………………………………………………………………………..4

V.  PROFESSOR NAYFEH HAS NOT, AND WILL NOT, OFFER TESTIMONY INCONSISTENT WITH THE CONSTRUCTION OF THE '328 PATENT'S CLAIMS……………………………………………………………………………...5

VI. UNDER <u>GRAIN PROCESSING</u>, BRAUN IS PLAINLY ENTITLED TO OFFER EVIDENCE TO REBUT RAYOVAC'S CLAIM TO HAVE AVAILABLE ACCEPTABLE NON-INFRINGING ALTERNATIVES……………………….7

VII. BRAUN SHOULD NOT BE PRECLUDED FROM OFFERING EVIDENCE AND ARGUMENT OF SECONDARY CONSIDERATIONS……………………….....9

VIII. MR. KLAUER'S GOOD FAITH IS UNDISPUTED……………………………...10

IX. BRAUN SHOULD NOT BE PRECLUDED FROM OFFERING EVIDENCE TO REBUT RAYOVAC'S CLAIM THAT MESSRS. SMETANA AND KRAUS ARE CO-INVENTORS OF THE '328 PATENT……………………………………..11

X.  BRAUN SHOULD NOT BE PRECLUDED FROM SHOWING THAT RAYOVAC COPIED BRAUN'S INVENTION……………………………………………....12

XI. BRAUN WOULD BE PREJUDICED IF IT IS NOT ALLOWED TO REBUT RAYOVAC'S ATTACK THAT SOME OF THE ASSERTED CLAIMS ARE OBVIOUS……………………………………………………………………….13

# TABLE OF AUTHORITIES

## Cases

Albert v. Warner-Lambert Co., No. 99-11700, 2002 WL 745822 (D. Mass. Apr. 24, 2002).......1

Amgen, Inc. v. Hoechst Marion Roussel, Inc., 126 F.Supp.2d 69 (D. Mass. 2001).................5

Brown v. Davis, 116 U.S. 237 (1886)..................................................................6

Fiskars, Inc. v. Hunt Mfg. Co., 279 F.3d 1378 (Fed. Cir. 2002).......................................3

Fusco v. Gen. Motors Corp., 11 F.3d 259 (1st Cir. 1993)...............................................1

Graham v. John Deere Co., 383 U.S. 1 (1966)......................................................4, 5

Grain Processing Corp. v. American Maize-Prods. Co., 185 F.3d 1341 (Fed. Cir. 1999)..3, 7, 8, 9

In re Kumar, 418 F.3d 1361 (Fed. Cir. 2005)...........................................................5

Juicy Whip, Inc. v. Orange Bang, Inc., 292 F.3d 728 (Fed. Cir. 2002)............................10

Micro Chem., Inc. v. Lextron, Inc., 318 F.3d 1119 (Fed. Cir. 2003)..............................7, 8

Pannu v. Iolab Corp., 155 F.3d 1344 (Fed. Cir. 1998)................................................11

Rite-Hite Corp. v. Kelley Co., Inc., 56 F.3d 1538 (Fed. Cir. 1995)..................................3

Sandt Tech. v. Resco Metal & Plastics Corp., 264 F.3d 1344 (Fed. Cir. 2001)...................12

Warner-Lambert Co. v. Teva Pharm. USA, Inc., 418 F.3d 1326 (Fed. Cir. 2001)................10

Zygo Corp. v. Wyko Corp., 79 F.3d 1563 (Fed. Cir. 1996)...........................................8

## Statutes

35 U.S.C. § 103................................................................................................4

Federal Rule of Evidence 702..............................................................................5

I.  **BRAUN EXPECTS BOTH PARTIES WILL COMPLY WITH THE RULES REGARDING EXPERT TESTIMONY**

Rayovac's first Motion In Limine amounts to a motion directing Braun to follow the rules for expert testimony. See Memo. at 1.[1] Braun expects that both parties will comply with the rules.

To the extent, however, that Rayovac intends by its motion to preclude Braun's experts from updating or supplementing their opinions should new information or issues arise, its motion should be denied. Indeed, Braun's experts have expressly reserved the right to do so. As Judge Stearns has explained, "[s]upplementation of an expert's report in anticipation of trial may be more the rule than the exception. '[E]xperts, like lawyers themselves, may increase their efforts as trial approaches, and we do not suggest any general bar to an exhibit created in good faith for the expert after initial discovery.'" Albert v. Warner-Lambert Co., No. 99-11700, 2002 WL 745822, *1 (D. Mass. Apr. 24, 2002) (quoting Fusco v. Gen. Motors Corp., 11 F.3d 259, 266 (1st Cir. 1993)). Braun's experts have provided opinions on Rayovac's infringement and various invalidity defenses, as well as on the lost profits and other damages that infringement caused. Should new information become available, Braun's experts may offer supplemental reports or testimony on those contested issues. For example, Braun's expert on damages has stated his opinion on the damages Braun suffered as of May 2005. At trial, he will update his opinion based on updated financial data, if any, that Rayovac provides. See Reply Report of Jesse David at 2. Under those circumstances, Rayovac would not suffer surprise or prejudice.

---

[1] "Memo." refers to Rayovac Corporation's Memorandum in Support of Its Motions In Limine Nos. 1-11.

## II. BRAUN MAY OFFER TESTIMONY AS TO INFRINGEMENT SHOULD THE COURT CHANGE ITS MARKMAN CONSTRUCTION

Rayovac's second Motion In Limine purports to bar Braun from offering testimony or argument on infringement should the Court changes its Markman construction. The motion should be denied. To begin, the Court has given no indication that it will change its claim construction. Rayovac has presented no new arguments to support a changed construction, and the Court, on October 5, 2005, reaffirmed its March 15, 2005 construction.

Moreover,[2] even if the Court should adopt Rayovac's proposal to construe the Cradle Structure Element as a structure that receives and retains cleaning fluid, there is no authority that would prevent Braun from pointing to the undisputed fact that the cradle structures on Rayovac's accused products receive and retain cleaning fluid.[3]

## III. BRAUN MAY OFFER EVIDENCE AND ARGUMENT ON CLAIM 9 TO SHOW THAT RAYOVAC DID NOT HAVE AN AVAILABLE ACCEPTABLE NON-INFRINGING SUBSTITUTE

Rayovac's third Motion In Limine, which seeks to preclude Braun from offering testimony and argument regarding claim 9 of the '328 patent, is a thinly veiled attempt to hide Rayovac's failure to consider whether its alleged non-infringing alternatives actually infringe any and all of the '328 patent's claims. In particular, to resist Braun's right to lost profits, Rayovac intends to show that it had available acceptable non-infringing alternatives, even though it never manufactured or marketed those products. See Second Report of Samuel Phillips ("Phillips 2d Rep.") at ¶¶ 79-103; Memo. at 10. The

---

[2] Contrary to Rayovac's assertion, Braun has not represented that written discovery has closed. Indeed, on the day Rayovac filed these motions, counsel for Braun spoke with counsel for Rayovac on this point, and again informed – as counsel for Braun had earlier in the week – that Braun intended to update its written discovery.
[3] For example, Rayovac cannot dispute that, during the cleaning operation, the manifold and fluid ports of Rayovac's cradle structure are filled with fluid.

engineering designs for these products either do not exist or have been only preliminarily sketched. Nonetheless, Rayovac now complains that because Braun never brought an infringement claim against Rayovac's entirely <u>hypothetical</u> alternatives, the Court should penalize Braun for its omission. Braun, however, could not bring suit on the basis of products that do not exist. Braun has thus not engaged in any kind of "sandbagging." Memo. at 5.

Indeed, Braun must only show a reasonable probability that Rayovac had no available acceptable non-infringing alternative. <u>Rite-Hite Corp. v. Kelley Co., Inc.</u>, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (citations omitted). Evidence that there was no alternative <u>on the market</u> will satisfy Braun's obligation. See <u>Grain Processing Corp. v. American Maize-Prods. Co.</u>, 185 F.3d 1341, 1353 (Fed. Cir. 1999) ("[W]hen an alleged alternative is not on the market during the accounting period, a trial court may reasonably infer that it was not available as a noninfringing substitute at that time.") (citation omitted). Rayovac acknowledges that Braun's cleaning device for dry shavers was the first of its kind, and that when Rayovac introduced its products, Braun sold the only market competitor. See Deposition of James Chasen on May 5, 2005 ("Chasen Dep.") at 24:24-25:4. Because there was, therefore, no acceptable available non-infringing alternative on the market, Rayovac has the burden to show that it nonetheless had one available. <u>Fiskars, Inc. v. Hunt Mfg. Co.</u>, 279 F.3d 1378, 1382 (Fed. Cir. 2002) (citing <u>Grain Processing</u>, 185 F.3d at 1353 (Fed. Cir. 1999)).

Rayovac's motion thus attempts to obscure a fundamental flaw in its damages position. Specifically, Rayovac, having produced no evidence as to how its hypothetical

product does not infringe claim 9 of the '328 patent, is now the party in default. As such, its motion should be denied.

## IV. PROFESSOR NAYFEH'S EXPERT OPINIONS ON NON-OBVIOUSNESS ARE PROPER

In its fourth Motion <u>In Limine</u> to exclude Professor Nayfeh's opinions on the nonobviousness of the assert claims, Rayovac falsely depicts the basis for and substance of Professor Nayfeh's expert opinions. Foremost, Professor Nayfeh did not, as Rayovac suggests, "ignore" the claims of the '328 patent. Memo. at 6. His review of the prior art methodically identifies the elements of each claim that distinguish it. <u>See</u> Second Report of Samir Nayfeh ("Nayfeh 2d Rep.") at 1-18. Nor does he, with regard to claim 12,[4] "compare" the prior art to the preferred embodiment. <u>Id</u>. at 18. The first sentence of his non-obviousness analysis quotes the <u>claim</u>. <u>Id</u>. He then states that the Mekiney and Maatz patents do not contain "elements" that are present in <u>claim</u> 12, specifically the cradle structure and drying device.[5] <u>Id</u>. Lastly, he concludes that the other patents Mr. Phillips cites, when combined with either the Mekiney or Maatz patent, would not render the impeller obvious. <u>Id</u>. at 19-20. To illustrate why the impeller element is nonobvious, Professor Nayfeh discusses the inventiveness required to fit a blowing system into the cleaning device. <u>Id</u>. at 19.

Under 35 U.S.C. § 103, Dr. Nayfeh's analysis is completely appropriate. After the claims have been construed, "the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. . . .[as well as] secondary

---

[4] Although Rayovac's motion discusses claim 11, Rayovac has not argued that claim 11 is obvious.
[5] Indeed, he is responding to the report by Mr. Phillips, Rayovac's expert, in which Mr. Phillips concedes that the Mekiney and Maatz patents do not contain the impeller identified in claim 12. <u>See</u> First Report of Samuel Phillips ("Phillips 1st Rep.") at ¶ 143.

considerations." Graham v. John Deere Co., 383 U.S. 1, 17-18 (1966). Professor Nayfeh's analysis follows these steps sequentially, beginning with comparison of the claims to the alleged prior art. In his obviousness analysis, Dr. Nayfeh opined that the patents cited by Rayovac, even when coupled with the Mekiney and Maatz patents, did not contain an enabling. Nayfeh 2d Rep. at 19. Without that disclosure, the patents do not teach one of ordinary skill in the art to install an impeller, and can therefore not be considered prior art for purposes of an obviousness analysis. See Amgen, Inc. v. Hoechst Marion Roussel, Inc., 126 F.Supp.2d 69, 114 (D. Mass. 2001) (finding patent non-obvious because infringer failed to prove that alleged prior art included an enabling disclosure); see also In re Kumar, 418 F.3d 1361, 1365 (Fed. Cir. 2005) ("In order to render a claimed apparatus or method obvious, the prior art must enable one skilled in the art to make and use the apparatus or method.") (quotation marks omitted). In comparing the claims, then, Mr. Nayfeh's discussed – as he must – the inventiveness required to fit the impeller. The louvered shutters simply illustrate the complexity involved, and show that the '328 patent contains an enabling disclosure not found in the alleged prior art. His analysis thus hews precisely to the law, discussing issues that he would have been derelict to ignore. Under Federal Rule of Evidence 702, his testimony on non-obviousness should be allowed.

## V. PROFESSOR NAYFEH HAS NOT, AND WILL NOT, OFFER TESTIMONY INCONSISTENT WITH THE CONSTRUCTION OF THE '328 PATENT'S CLAIMS

In its fifth Motion In Limine to preclude Professor Nayfeh from offering testimony inconsistent with the agreed claim construction, Rayovac repeatedly distorts Professor Nayfeh's and Braun's position. First, Professor Nayfeh has not argued, as

Rayovac suggests, that the drying device of claim 11 must be an integrated unit with the cradle structure. Memo. at 8. Instead, Professor Nayfeh has made the unremarkable observation that the drying device of claim 11 must be a part of the cleaning device, and not a separate hand towel manually applied to dry the shaver. Deposition of Samir Nayfeh on August 25, 2005 ("Nayfeh Dep.") at 45:2-50:22. Professor Nayfeh's opinion is consistent with longstanding law, see, e.g., Brown v. Davis, 116 U.S. 237, 249 (1886) (holding that a process that uses a human hand to accomplish a function does not infringe a claim that requires that the function be accomplish through a lever mechanism), and the claim construction in this case.

Second, Professor Nayfeh's opinion that the spray can of the Loeffler patent (U.S. Patent 2,976,552) is not a cleaning fluid container because it holds sterilizing fluid rather than cleaning fluid is consistent with the Court's construction. Nayfeh 2d Rep. at 11. As both experts acknowledge, not all sterilizing fluids are cleaning fluids. See Deposition of Samuel R. Phillips on August 30, 2005 ("Phillips Dep.") at 104:24-106:10; Nayfeh 2d Report at 11. And, the brushes, not the sterilizing spray, accomplish the cleaning operation in the Loeffler patent. See Loeffler Patent at col. 2, lines 38-43.

Third, the '328 patent is directed to a method for cleaning a dry shaving apparatus. Braun is not precluded by the claim construction or otherwise from highlighting this fact. Rayovac's motion reveals its own chameleon position with regard to its prior art reference. Each involves sterilizing devices for barber tools. In his first report, Mr. Phillips opined that these devices anticipated the claims of the '328 patent because they had shelves or baskets to hold the clipper blades disassembled from the clipper head of a hair clipper apparatus. See Phillips 1st Rep. at ¶¶ 83, 93, 103, 114, 123.

In response to the undeniable[6] fact that the '328 patent discloses a device for cleaning an <u>assembled</u> shaving head of a dry shaver, Rayovac switched its position and argued that the barber tool sterilizer held straight razors and that the straight razor was a shaving apparatus. <u>See</u> Third Report of Samuel Phillips ("Phillips 3d Rep.") at ¶¶ 91-92. Braun should not now be precluded from offering testimony and argument that the claims on the '328 patent are directed to a device for cleaning a dry shaving apparatus. That the shaving apparatus is dry is apparent from the face of the patent, which uses the phrases "shaving apparatus," "razor," "electric razor," "dry razor," and "electric shaving apparatus" interchangeably – all to mean a dry shaver apparatus.[7] Nothing in Braun's arguments to the Court or Professor Nayfeh's reports precludes Braun from making this point through testimony or argument.

## VI. UNDER <u>GRAIN PROCESSING</u>, BRAUN IS PLAINLY ENTITLED TO OFFER EVIDENCE TO REBUT RAYOVAC'S CLAIM TO HAVE AVAILABLE ACCEPTABLE NON-INFRINGING ALTERNATIVES

In <u>Grain Processing</u>, the Federal Circuit emphasized that while there may be situations in which a product not yet brought to market (or even manufactured) can still be "available" for purposes of a lost profits analysis, trial courts "must proceed with caution in assessing proof of the availability of substitutes not actually sold during the period of infringement." <u>Grain Processing</u>, 185 F.3d at 1353; <u>see also</u> <u>Micro Chem., Inc.</u>

---

[6] Even Mr. Phillips acknowledges that this is the point of the '328 patent. <u>See</u> Phillips Dep. at 128:20-130:1.

[7] <u>See</u> '328 Patent, col. 1, line 10 ("dry shaver"); col. 1, line 12 ("electric razor"); col. 1, line 56 ("the razor"); col. 2, lines 21-25 ("shaving apparatus"); col. 2, lines 21-25 ("it is advantageous to configure the cradle as a storage device for the shaving apparatus which is associated with an electrical arrangement for operating the shaving apparatus and the cleaning device."); col. 3, lines 1-2 ("The cleaning function is aided by the oscillatory motion of the shaving head"); col. 4, lines 15-17 ("the "ON" position for electrically activating the shaving apparatus also serves for activation of the cleaning device."); col. 4, lines 37-38 ("The cleaning device is designed for use with all electric shaving apparatus."); col. 5, line 36 ("The shaving apparatus is recharged"); col. 6, line 8 compare with line 13 (referring to operation of preferred embodiment and using "shaving apparatus" and "electric shaving apparatus" interchangeably).

v. Lextron, Inc., 318 F.3d 1119, 1122-1123 (Fed. Cir. 2003) (In Grain Processing, "even the ready availability of material and know-how alone did not make the substitute process 'available' for the lost profits calculus."). As noted in Section III supra, in determining whether a purportedly non-infringing alternative is available, the fact that a product was never marketed or manufactured remains an important consideration. Grain Processing, 185 F.3d at 1553 (drawing a distinction between "acceptable substitutes that the infringer proves were available" and "substitutions only theoretically possible.") Indeed, "when an alleged alternative is not on the market during the accounting period, a trial court may reasonably infer that it was not available as a noninfringing substitute at that time." Id. (citation omitted). Accordingly, the Federal Circuit has recognized that in at least one other case, the "availability of the [hypothetical] substitute . . . depended on direct market sales." Id. at 1352 (discussing Zygo Corp. v. Wyko Corp., 79 F.3d 1563 (Fed. Cir. 1996)).

Rayovac is thus simply incorrect to argue that the failure to manufacture or market a product is "irrelevant" to the issue of availability. Memo. at 10-12. Such evidence, at the least, creates an inference in favor of Braun. See Grain Processing, 185 F.3d at 1353. As the Federal Circuit explained, "[m]ere speculation or conclusory assertions will not suffice to overcome the inference. After all, the infringer chose to produce the infringing, rather than noninfringing, product." Id. Evidence of Rayovac's failure to produce or market its alleged alternatives will tend to show that the alternatives were "only theoretically possible," especially where, as here, Rayovac has sought to "invent around" Braun's patents. See Micro Chem., 318 F.3d at 1123 (fact that "an infringer had to design or invent around the patented technology to develop an alleged

substitute weighs against a finding of availability") (citing Grain Processing, 185 F.3d at 1354). Grain Processing does not therefore bar Braun from presenting such evidence; if anything, Grain Processing encourages it.[8]

### VII. BRAUN SHOULD NOT BE PRECLUDED FROM OFFERING EVIDENCE AND ARGUMENT OF SECONDARY CONSIDERATIONS

Rayovac's seventh Motion In Limine seeks to preclude Braun from offering any evidence of secondary considerations, such as commercial success. Memo. at 12-14. Yet, the commercial success of Braun's products embodying the invention disclosed in the '328 patent is undisputed. Rayovac, through deposition testimony and in its internal documents, has acknowledged the Braun products' commercial success. See, e.g., Deposition of James Doyle on June 3, 2005 ("Doyle Dep.") at 44:21 – 46:19, 47:12 – 48:6 (testimony of Rayovac's division vice president for all Remington products, describing study of the success of Braun's commercial cleaning products embodying the patented technology); Deposition of Alan Schoepp on May 12, 2005 ("Schoepp Dep.") at 167:12-19 (Rayovac's controller for North American marketing acknowledging that Rayovac considered Braun's products embodying the patented technology to be successful commercially at the time Rayovac entered the market with its accused products). Nonetheless, Rayovac seeks to preclude Braun from offering evidence of this acknowledged commercial success because Braun has been unable to locate a presentation created by a former Braun employee, Gilbert Greaves, for an outside engineering organization. Ironically, the presentation purportedly documents Braun's commercial success. In particular, Mr. Greaves testified that the document is a presentation of "what allegedly made [the products embodying Braun's inventions]

---

[8] Braun incorporates by reference its Motion In Limine to preclude Rayovac from offering any evidence of an available acceptable non-infringing alternative, filed herewith.

-9-

successful."  See Deposition of Gilbert Greaves on April 29, 2005 at 170:9-10. Contrary to Rayovac's suggestion, Braun has not deliberately destroyed this or any other documents.  Indeed, once it became apparent that Braun possessed documents responsive to Rayovac's broad document requests that it had not previously produced, Braun located and produced such documents expeditiously.  Rayovac has offered no proof (because none exists) of bad faith.  Indeed, from Mr. Greaves's testimony it would appear that the Greaves presentation, if it could be found, would only assist Braun in showing the undisputed commercial success of its products.  Hence, Rayovac's motion should be denied.

## VIII.  MR. KLAUER'S GOOD FAITH IS UNDISPUTED

Rayovac's eighth Motion In Limine to preclude evidence or argument of the good faith of Hans Dieter Klauer, the in-house patent attorney who oversaw the prosecution of the '328 patent, rests on the morbid idea that because Mr. Klauer is dead, the Court should presume he acted in bad faith and with deceptive intent.  Memo. at 14-15.  Not surprisingly, Rayovac's position has no support in the law.

To show inequitable conduct by Mr. Klauer, Rayovac has the burden to show by clear and convincing evidence that information withheld from the examiner of the '328 patent was material, that Mr. Klauer knew of such materiality, and that he withheld or misrepresented this information with an intent to deceive the examiner.  Juicy Whip, Inc. v. Orange Bang, Inc., 292 F.3d 728, 737 (Fed. Cir. 2002).  Should Rayovac meet its burden of proof, which it cannot, the Warner-Lambert case, and well-established case law, "does not foreclose the possibility" that Braun be allowed to rebut by offering, for example, evidence of Mr. Klauer's good faith.  Warner-Lambert Co. v. Teva Pharm.

-10-

USA, Inc., 418 F.3d 1326, 1346 (Fed. Cir. 2001). Indeed, good faith is presumed in the absence of evidence of bad faith. Pannu v. Iolab Corp., 155 F.3d 1344, 1350 n.4 (Fed. Cir. 1998). In this case, Rayovac has no evidence of bad faith and hopes to use the fact that Mr. Klauer is dead to its advantage. It cannot, and the motion should be denied.

IX. **BRAUN SHOULD NOT BE PRECLUDED FROM OFFERING EVIDENCE TO REBUT RAYOVAC'S CLAIM THAT MESSRS. SMETANA AND KRAUS ARE CO-INVENTORS OF THE '328 PATENT**

Rayovac's ninth Motion In Limine to preclude Braun from offering corroboration evidence to rebut Rayovac's defense that the '328 patent is invalid for failure to name Norbert Smetana and Helmut Kraus as co-inventors should be denied.

Rayovac contends that Mr. Smetana "invented" the addition of the heater to a drying device in unasserted claim 13. The purported basis for this contention is an internal Braun memorandum documenting a meeting between Mr. Braun, the named inventor, and Mr. Smetana during which the addition of a heater to the cleaning device was discussed. As Mr. Smetana explained during his deposition, he is not a co-inventor and believes the addition of a heater to speed drying was well known at the time. (For example, hair dryers have been using heat with a fan to speed drying for decades.) See Deposition of Norman Smetana on April 29, 2005 at 48:16 – 49:2. Furthermore, Dr. Pahl's original prototype (which was created long before the meeting between Messrs. Braun and Smetana) contains a heater. Photographs of this prototype have been produced to Rayovac and the device has been made available for Rayovac's inspection. Braun should not now be precluded from showing the prototype with its heater at trial to rebut Rayovac's unsupportable proposition that Mr. Smetana is, despite his testimony to the contrary, a co-inventor.

Rayovac further contends that Mr. Kraus, a regulator at the German equivalent to the Underwriters Laboratories Inc., "invented" the interlock of <u>unasserted</u> claim 19. Rayovac purports to base its contention on an internal Braun document concerning a meeting with Mr. Kraus during which it was suggested that a warning not to remove the shaver while wet was insufficient and that the shaver should be locked in place. Mr. Braun (who was not at the meeting) testified that he knew of this (rather commonly known) safety requirement and developed the interlock. Deposition of Gebhard Braun on April 26-27, 2005 at 68:22 – 69:2. Braun should not be precluded from putting forth evidence on this issue. <u>Sandt Tech. v. Resco Metal & Plastics Corp.</u>, 264 F.3d 1344, 1350-51 (Fed. Cir. 2001) ( "Circumstantial evidence about the inventive process, alone, may also corroborate [the inventor's testimony]."). Therefore, Rayovac's motion should be denied.

## X.  BRAUN SHOULD NOT BE PRECLUDED FROM SHOWING THAT RAYOVAC COPIED BRAUN'S INVENTION

Rayovac's tenth Motion <u>In Limine</u> to preclude Braun from offering evidence of copying by Rayovac is an attempt to hide internal Rayovac documents, previously unavailable to Braun, that show indisputably that Rayovac's intention in developing its accused products was to copy Braun's products and to mirror (and exploit) Braun's success. Indeed, at every step in the development of the accused products, Rayovac used Braun's products as a benchmark. Braun should be allowed to use these Rayovac documents to establish secondary considerations of nonobviousness.[9] Not surprisingly, there is no support for Rayovac's novel proposition that an infringing defendant should

---

[9] Because all of these documents are labeled "Attorneys Eyes Only" pursuant to the parties' Confidentiality Agreement, they cannot be distributed internally at Braun. And, thus were not available to Braun's Rule 30(b)(6) witness during that deposition.

be protected from its own admissions in its own internal documents that it copied the patented product. As such, Rayovac's motion should be denied.[10]

## XI. BRAUN WOULD BE PREJUDICED IF IT IS NOT ALLOWED TO REBUT RAYOVAC'S ATTACK THAT SOME OF THE ASSERTED CLAIMS ARE OBVIOUS

Rayovac's eleventh Motion In Limine (like its seventh) is a desperate attempt to keep the acknowledged commercial success of Braun's products embodying the patented technology from the jury. The proof of this commercial success is in Rayovac's own documents. The proof of this commercial success comes from the testimony of Rayovac's own witnesses. The proof of this commercial success is also plain from the financial statements of Braun and Rayovac, which have been timely produced. Nothing in Rayovac's motion supports exclusion of this and similar evidence to show the commercial success of the invention. As such, Rayovac's motion should be denied.[11]

---

[10] See footnote 2 above.
[11] Rayovac again complains of Braun's production of documents responsive to Rayovac's broad discovery requests. Rayovac, however, has now had over 2 months to review these documents. Although it is not presently Braun's intention to use any of these documents in support of its case at trial, Braun should not be precluded from doing so.

-13-

Respectfully submitted,

BRAUN GmbH
By its Attorneys


/s/ Dalila Argaez Wendlandt
William L. Patton (BBO #391640)
Dalila Argaez Wendlandt (BBO #639280)
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
(617) 951-7000

Stanley D. Liang (admitted *pro hac vice*)
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY 10021
(212) 596-9000

Attorneys for Plaintiffs

Dated: October 14, 2005