**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

BRAUN GmbH,               )
                           )
                           )
          Plaintiff,       )
                           )
v.                           )      Civil Action No. 03-CV-12428-WGY
                           )
RAYOVAC CORPORATION,    )
                           )
          Defendant.      )
                           )

## BRAUN'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTIONS *IN LIMINE* NOS. 1-4

## **TABLE OF CONTENTS**

I.    BRAUN'S *MOTION IN LIMINE* NO.1: RAYOVAC'S EXPERT SHOULD BE
      PRECLUDED FROM TESTIFYING AS TO RAYOVAC'S DEFENSE THAT
      THE '328 PATENT' IS INDEFINITE……………………………………….……..1

II.   BRAUN'S *MOTION IN LIMINE* NO.2: RAYOVAC SHOULD BE
      PRECLUDED FROM OFFERING EVIDENCE REGARDING THE
      UNTIMELY MADE ALLEGATION OF INEQUITABLE CONDUCT WITH
      RESPECT TO THE ULTRASONIC CLEANER OR IN THE ALTERNATIVE
      SUMMARY JUDGMENT SHOULD BE GRANTED TO BRAUN………..……2

III.  BRAUN'S *MOTION IN LIMINE* NO.3: RAYOVAC'S EXPERT IS NOT
      QUALIFIED TO RENDER ANY OPINION AS TO THE TRANSLATION OF
      THE GERMAN APPLICATION INTO ENGLISH……………………….…..3

IV.   BRAUN'S MOTION IN LIMINE NO. 4: RAYOVAC SHOULD BE
      PRECLUDED FROM OFFERING TESTIMONY EVIDENCE AND
      ARGUMENT OF ITS HYPOTHETICAL NON-INFRINGING
      ALTERNATIVES……………………………………………………………….…..4

      A.  Rayovac's Gas Cleaning System Is Not Available or Acceptable……………6

      B.  Rayovac's Other Alternatives Are Not Non-Infringing, Available or
          Acceptable………………….…………………………………………………7

      C.  Mr. Phillips' Opinion As To the Availability of Non-Infringing Alternatives
          Should Be Excluded Because It Is Based Solely on Speculation And
          Discussions With Rayovac's Counsel………………………………..…………9

      D.  Ms. Stamm's Opinion Should Be Excluded Because It Is Based On Mr.
          Phillips' Speculative Opinion………………………………………………11

# TABLE OF AUTHORITIES

## Cases

Amgen, Inc. v. Chugai Pharmaceutical Co., 927 F.2d 1200 (Fed. Cir. 1991)................1

Bose Corp. v. JBL, Inc., 112 F.Supp.2d 138 (D. Mass. 2000)...............................8

Capon v. Eshhar, 418 F.3d 1349 (Fed. Cir. 2005)..............................................1

Grain Processing Corp. v. American Maize-Products Company, 185 F.3d 1341 (Fed. Cir. 1999).............................................................................................5-8

Honeywell Intern., Inc. v. Hamilton Sundstrand Corp., 166 F.Supp.2d 1008 (D. Del. 2001) vacated in part on other grounds, 370 F.3d 1131 (Fed. Cir. 2004)...................7

Hebert v. Lisle Corp., 99 F.3d 1109 (Fed. Cir. 1996)..........................................4

Micro Chem., Inc. v. Lextron, Inc., 318 F.3d 1119 (Fed. Cir. 2003)...............5, 7, 8

Serrano v. Telular Corp., 111 F.3d 1578 (Fed. Cir. 1997)....................................11

## Statutes or Rules

35 U.S.C. § 112......................................................................................1

35 U.S.C. § 271(c)..................................................................................11

Fed. R. Evid. 402.................................................................................1, 4

Fed. R. Evid. 702-703..............................................................................4

Plaintiff Braun GmbH ("Braun") submits this memorandum of law in support of its five motions in limine, filed concurrently herewith.

## I.  BRAUN'S *MOTION IN LIMINE* NO. 1: RAYOVAC'S EXPERT SHOULD BE PRECLUDED FROM TESTIFYING AS TO RAYOVAC'S DEFENSE THAT THE '328 PATENT[1] IS INDEFINITE

Under Fed. R. Evid. 402, Braun moves to preclude Rayovac's technical expert, Samuel Phillips, from testifying that the asserted claims of the '328 patent are indefinite under 35 U.S.C. § 112, second paragraph.  As became clear during Mr. Phillips' deposition, his opinion on indefiniteness is based on a misunderstanding of the relevant law and confusion between the concepts of indefiniteness and written description.

In particular, to determine whether a claim is indefinite, the Court must examine the claims and determine whether one skilled in the art would understand what is claimed.  See, e.g., Amgen, Inc. v. Chugai Pharmaceutical Co., 927 F.2d 1200, 1217 (Fed. Cir. 1991).  In contrast, to determine whether a claim lacks adequate written description, the Court must look at the specification and determine whether it, when considered as a whole, conveys to one of ordinary skill in the art that the inventors invented the subject matter claimed.  See, e.g., Capon v. Eshhar, 418 F.3d 1349, 1358 (Fed. Cir. 2005).

Mr. Phillips has opined that the '328 patent is indefinite, but his opinion (as he explained during his deposition) is improperly based on his examination of the specification rather than on the claim terms.  Mr. Phillips testified:

> Q:  In Phillips Exhibit 1, your first report, and Exhibit 3, your third report, you opine that the '328 patent and the '556 patent are invalid for indefiniteness?
> A.   Yes.
>
> Q.   Can you explain the basis for your opinion?
>
> . . .

---

[1] U.S. Patent No. 5,711,328 (the "'328 patent").

A.    Yes.  It's that the patent <u>specification</u> is not consistent with the construction of the cradle concept and for it to be consistent, the <u>specification</u> would need to be different. It's a consequence of the claim construction.

<u>See</u> Deposition of Samuel R. Phillips on Aug. 30, 2005 ("Phillips Dep.") at 26:15-27:7.

Indeed, Mr. Phillips testified that he sees no difference between "written description" and "indefiniteness."  <u>Id</u>. at 26:15-28:15.   Specifically, Mr. Philips testified as follows:

Q.   Now, how is that different than your opinion later on in your report that the patent --the '328 patent is invalid for inadequate written description?

A.   I have to say I'm not entirely clear.

Q.   Okay.  What is your understanding of indefiniteness?

A.    It means that you -- it's very similar to written description. As I say, I have great trouble telling them apart.  It means that you -- in return for the monopoly of the patent, you have to tell people how to practice your invention; and the inventor has not done so.

<u>Id.</u> at 28:3-15.  Accordingly, Mr. Phillips' opinion with respect to the indefiniteness of the asserted claims of the '328 Patent based, as it is, on an incorrect understanding of indefiniteness, should be excluded.

## II.    BRAUN'S *MOTION IN LIMINE* NO. 2: RAYOVAC SHOULD BE PRECLUDED FROM OFFERING EVIDENCE REGARDING THE UNTIMELY MADE ALLEGATION OF INEQUITABLE CONDUCT WITH RESPECT TO THE ULTRASONIC CLEANER OR IN THE ALTERNATIVE SUMMARY JUDGMENT SHOULD BE GRANTED TO BRAUN

On September 15, 2005, more than twenty two months after this action began, Rayovac alleged for the first time that Braun committed inequitable conduct by not disclosing to the Patent Office an ultrasonic cleaning system.  <u>See</u> Rayovac's Second Amended Answer and Counterclaims to the Amended Complaint.

The ultrasonic cleaning system is a metal box, which looks like an aquarium, in which dirty cleaning parts are held in a basket and submerged into liquid (about 5 liters of water containing dishwashing soap), with the parts then being cleaned by ultrasound.  Deposition of

Juergen Hoeser on May 11 and 12, 2005 ("Hoeser Dep.") at 151:11 to 153:23.   The basket, consisting of wire mesh, is then lifted out of the liquid.   The operator covers the basket using his hand, using the pressured air to dry it.   From the 1960's to now, this system, which Braun purchased from an outside source, has been used by Braun's Customer Service department before repairs are made.   Id. at 151:11 to 152:15.

The ultrasonic cleaning device is not material to patentability of the claims of the '328 patent.   There is no intrinsic or extrinsic evidence that ultrasound cleans claimed cleaning devices.   The ultrasonic cleaning device lacks elements of each of the claims of the '328 patent. The undisputed facts show that it does not comprise at least the following elements of the claims of the '328 patent:

- a cradle structure adapted to receive a shaving head of a shaving apparatus;

- a feed device for feeding cleaning fluid from said cleaning fluid container to said cradle structure;

- a cradle structure being arranged above a fluid level of the cleaning fluid in said cleaning fluid container during the feeding of said cleaning fluid to said cradle structure;

- a drying device; and

- a bracket.

There is also no evidence that Mr. Braun, Mr. Klauer or anyone associated with the prosecution of the '328 patent was aware or should have been aware of the ultrasonic cleaning device's alleged materiality.   It is difficult to be aware of a product's materiality when a product is not, in fact, material.

Braun thus moves in limine to preclude Rayovac from offering evidence of the ultrasonic cleaning system's materiality to patentability, and from offering evidence on any alleged intent to deceive the patent office, as the allegation of this "inequitable conduct" was not

made until September 15, 2005. As such, Braun has not had an opportunity to obtain full fact and expert discovery on this issue.

In the alternative, Braun moves for summary judgment that Braun did not commit inequitable conduct by not disclosing the ultrasonic cleaning device, as it is not material to patentability and there is absolutely no evidence of intent to deceive. See, e.g., Hebert v. Lisle Corp., 99 F.3d 1109, 1115 (Fed. Cir. 1996).

### III.   BRAUN'S *MOTION IN LIMINE* NO. 3: RAYOVAC'S EXPERT IS NOT QUALIFIED TO RENDER ANY OPINION AS TO THE TRANSLATION OF THE GERMAN APPLICATION INTO ENGLISH

Rayovac's technical expert has opined that the German word "aufnahmeteil" should be translated as "receptacle" and not as "cradle." See First Report of Samuel R. Phillips ("Phillips 1st Report") at 20-21. Yet no where in Mr. Phillips' C.V. or in any of his reports does one find that he is qualified as a translator of technical terms of the mechanical art from German to English.

Indeed, during his deposition, Mr. Phillips testified that he is not a native German speaker, he has not received a degree in German[2] and he has not traveled in Germany. Phillips Dep. at 4:22 – 5:2 and 5:23 - 24. By his own admission, Mr. Phillips is not an expert in translation from German to English. Braun thus moves to exclude his testimony regarding translation of the German word "aufnahmeteil" under Fed. R. Evid. 402 and 702-703.

### IV.   BRAUN'S *MOTION IN LIMINE* NO. 4: RAYOVAC SHOULD BE PRECLUDED FROM OFFERING TESTIMONY EVIDENCE AND ARGUMENT OF ITS HYPOTHETICAL NON-INFRINGING ALTERNATIVES

In an attempt to deny Braun's right to lost profits in what has been essentially a two player market for cleaning devices for dry shavers, Rayovac intends to assert that it had available

---

[2] At best, Mr. Phillips once took an elementary German class, which he admits did not help him an expert in the German language. Id. at 5:3 – 14.

acceptable non-infringing alternatives, <u>even though it never manufactured or marketed those</u> <u>products</u>. <u>See</u> Second Report of Samuel Phillips ("Phillips 2d Rep.") at ¶¶ 79-103. Rayovac relies on <u>Grain Processing Corp. v. American Maize-Products Co.</u>, 185 F.3d 1341 (Fed. Cir. 1999), for authority to offer evidence on its phantom alternatives. Memo. at 10.[3] However, because (a) Rayovac's first alternative is a gas cleaning system that it concedes was still in development and unavailable during the accounting period, and (b) its other "alternative" is actually a medley of products that each purports to design around a particular claim without any single product avoiding all claims of the '328 patent, <u>Grain Processing</u> is unavailing. Thus, Rayovac's evidence on this issue should be precluded.

In <u>Grain Processing</u>, the Federal Circuit emphasized that while there may be situations in which a product not yet brought to market (or even manufactured) can still be "available" for purposes of a lost profits analysis, trial courts "must proceed with caution in assessing proof of the availability of substitutes not actually sold during the period of infringement." <u>Grain Processing</u>, 185 F.3d at 1353; <u>see also</u> <u>Micro Chem., Inc. v. Lextron, Inc.</u>, 318 F.3d 1119, 1122-1123 (Fed. Cir. 2003) (In <u>Grain Processing</u>, "even the ready availability of material and know-how alone did not make the substitute process 'available' for the lost profits calculus."). To establish that an alternative is available, the infringer must come forward with evidence, not mere speculation, that it "had all of the necessary equipment, know-how, and experience to implement [a non-infringing alternative] whenever it chose to do so," and did not have to "invent around" the patent. <u>Id</u>. at 1348, 1354; <u>see also</u> <u>Micro Chem.</u>, 318 F.3d at 1122-1123 (describing these factors as "guidelines"). Indeed, the Federal Circuit has expressly cautioned that when an alleged alternative is not on the market, the trial court should infer that it was not available as a non-infringing substitute. <u>Id</u>. at 1353. "[S]ubstitutes only theoretically possible" and "[m]ere

---

[3] "Memo." refers to Rayovac Corporation's Memorandum in Support of Its Motions <u>In Limine</u> Nos. 1-11.

speculation or conclusory assertions" will not enable the defendant to overcome this inference. Id. As Grain Processing and subsequent precedent make clear, the Federal Circuit did not intend to allow defendants to put before the Court a boundless array of abstract, unrealized devices. Grain Processing imposes a clear limit on the type of evidence that Rayovac can present.

### A.    Rayovac's Gas Cleaning System Is Not Available Or Acceptable[4]

Pursuant to these guidelines, evidence of Rayovac's gas cleaning system products should be precluded.  As Mr. Phillips' expert report and testimony and James Chasen's[5] testimony make clear, the gas cleaning system is the quintessential "theoretical" possibility; its effectiveness is only speculative and conclusory.  Mr. Phillips somehow intuits from undated photos and conversations with Mr. Chasen that the gas cleaning system has "proven to be effective in cleaning dirty shaving heads."  See Phillips 2d Rep. at ¶¶ 82-83.  Mr. Chasen's testimony, however, refutes this unsupported conclusion.  Rayovac did not even begin to explore a gas cleaning system until June of 2004 – almost a full year after it began infringing the '328 patent. See Chasen Dep. at 92:7-92:14.  Moreover, the initial concept differed from that seen in the photos upon which Mr. Phillips relied – photos that were apparently created by Mr. Chasen shortly before his deposition on May 5, 2005.  See id. at 91:5-91:16 (describing the gas cleaning system as a product "that we are developing") (emphasis added).[6]  The photos themselves show only crude laboratory test stands.  See Third Expert Report of Samir Nayfeh ("Nayfeh 3d Rep.") at 12-13.  Indeed, Mr. Chasen explains that as of May 5, 2005, the gas cleaning system is still

---

[4] Because of the preliminary nature of the gas cleaning system, Braun has not had the opportunity to examine it to determine whether it infringes Braun's patents.  Indeed, it was not until October 12, 2005, that Rayovac's counsel informed Braun's counsel that a "prototype" of the gas cleaning system was available for inspection.

[5] Mr. Chasen is the lead engineer developing the gas cleaning system at Rayovac.

[6] Sean Martin, a witness for Rayovac, has also testified that as of Spring 2004: no consumer tests had yet been done for the gas cleaning product; the tests would have been done only on images and descriptions, not prototypes; Rayovac had yet to decide which design would actually optimize the cleaning effect; and Rayovac had not decided whether in fact it wished to market the product.  See Deposition of Sean Martin on June 28, 2005 ("Martin Dep.") at 17:25-21:5.

only a prototype – one that Rayovac itself describes as "a little bit not as user-friendly as it could be." See id. at 93:18-20.

Rayovac has thus conceded that during the accounting period, its alleged alternative was not even "theoretically" available. See, e.g., Honeywell Intern., Inc. v. Hamilton Sundstrand Corp., 166 F.Supp.2d 1008, 1030 (D. Del. 2001) ("Technology which is still in development during the accounting period is not considered to be an available alternative.") vacated in part on other grounds, 370 F.3d 1131 (Fed. Cir. 2004); see also Micro Chem., 318 F.3d at 1123 (reversing trial court's ruling that product was "available" under Grain Processing because, during accounting period, infringer expended hundreds of man-hours designing and testing substitute over several months, and worked through a number of design changes). By no means did Rayovac have "all of the necessary equipment, know-how, and experience to implement [a non-infringing alternative] whenever it chose to do so." Grain Processing, 185 F.3d at 1348 (emphasis added). Rayovac was – and still is – far from producing and marketing a gas-cleaning product. Under Grain Processing and its progeny, then, Rayovac should be precluded from offering evidence or argument that its gas cleaning system was available.

**B.    Rayovac's Other Alternatives Are Not Non-Infringing, Available Or Acceptable**

Further, Rayovac cannot flood the Court with purely conceptual alternatives that, collectively, purport to invent around the asserted claims of the '328 patent, but individually still infringe those asserted and other claims of the patent. Mr. Phillips presents a litany of products that, as discussed infra, modify one aspect of the accused products in an attempt to design around the asserted claims of the '328 patent. See Phillips 2d Rep. at ¶¶ 93, 95, 97, 99, 103.

Following Grain Processing, though, the Federal Circuit has emphasized that when "an infringer had to design or invent around the patented technology to develop an alleged substitute

[it] weighs against a finding of availability." Micro Chem., 318 F.3d at 1123 (citing Grain

Processing, 185 F.3d at 1354); see also Bose Corp. v. JBL, Inc., 112 F. Supp. 2d 138, 160 (D.

Mass. 2000) (finding the record was "too scant" on availability of an acceptable substitute to be

persuasive where the infringer attempted to "design around" the patent at issue).  Indeed, here,

Rayovac has not yet even attempted to "design around" the '328 patent; like the gas cleaning

products, these alternatives are still strictly theoretical.  As discussed in Part IV.C, infra, there is

no evidence that Rayovac actually considered developing these products.  Nor is there any

evidence that Rayovac had "all of the necessary equipment, know-how, and experience to

implement [a non-infringing alternative] whenever it chose to do so."  Grain Processing, 185

F.3d at 1348 (emphasis added).  Because Rayovac could not have manufactured a coherent non-

infringing product, it is improper, under Grain Processing, for Rayovac simply to argue that it

understood how to modify its products or invent around the '328 patent's claims; evidence of

these speculative, theoretical products should be precluded.[7]

---

[7] Nor has Rayovac suggested (because it cannot suggest) that its design-arounds constitute a single multi-faceted product.  The lack of a coherent product makes it impossible for Rayovac to show that its product was "acceptable." See, e.g., McGinley v. Franklin Sports, Inc., 192 F.Supp.2d 1214, 1220-21 (D. Kan. 2002) (discussing Grain Processing, and noting other precedent that "[t]he purported substitute must . . .possess characteristics different from the patented product.") (quotation and citation omitted); Stryker Corp. v. Intermedics Orthopedics, Inc., 96 F.3d 1409, 1418 (Fed. Cir. 1996) (A "product on the market which lacks the advantages of the patented product can hardly be termed an [acceptable] substitute.").  Indeed, as discussed in footnotes 8 and 9, infra, there is substantial reason to believe that these alternatives would not be acceptable.

C.      **Mr. Phillips' Opinion As To the Availability of Non-Infringing Alternatives Should Be Excluded Because It Is Based Solely on Speculation And Discussions With Rayovac's Counsel**

The fact that Rayovac has not yet even attempted to design around the '328 patent also renders invalid Mr. Phillips' opinion as to the availibility of these hypothetical products. Under Fed. R. Evid. 402, Mr. Phillips should be precluded from testifying as to whether Rayovac had non-infringing liquid-based cleaning devices that were acceptable and available at the time Rayovac began infringing the '328 patent. See Phillips 2d Rep. at ¶¶ 79 – 103. Mr. Phillips' opinions were not, and could not have been, based on facts. He testified that Rayovac never informed him of the availability of these units for the marketplace. Phillips Dep. at 121:9 – 124:21. Moreover, Mr. Phillips has not considered whether these alternatives are actually "non-infringing."

To design around claim 11, Mr. Phillips has opined that Rayovac could have removed the drying device from its infringing products. Yet, Mr. Phillips has never seen any Rayovac documents nor spoken with any Rayovac employees regarding the status and feasibility of removing the dryer from its accused products.[8] Id. at 121:9 – 122:10. Indeed, it appears that the only person with whom Mr. Phillips consulted in rendering his opinion was Rayovac's counsel. Id. at 121:9-122:3.

To design around claim 12, Mr. Phillips has opined that Rayovac could have replaced its impeller based drying device with an induction heating device. Yet, Mr. Phillips did not consult any Rayovac employees nor reviewed any Rayovac documents with respect to using induction

---

[8] Nor does Mr. Phillips explain why a device that eliminates a dryer, and therefore takes longer to dry, would be an acceptable alternative. In fact, Mr. Chasen testified that it was a critical design criterion for Rayovac in developing its current products that the cleaning cycle duration should be less than one-half hour. See Chasen Dep. at 62. Thus, the additional time needed to air or drip dry the shaving head was not acceptable to Rayovac at the time it designed its current products. There is no reason to believe, therefore, that it would be acceptable to consumers now.

heating device as a drying means. Id. He further admitted that "[t]he induction heater, it would take some development." Id. at 122:18-19.

To design around claim 14, Mr. Phillips has opined that Rayovac could add a lid to its products. Yet, Mr. Phillips does not know if Rayovac is currently considering adding such a lid.[9] Phillips Dep. at 123:1-13. His entire opinion is based on his belief that Rayovac provide what are admittedly "sketches" of a lid to Rayovac's counsel. Id. at 123:7-17.

To design around claim 18, Mr. Phillips has opined that Rayovac could remove the bracket from its accused devices. Yet, he has not reviewed any documents nor spoken with any Rayovac employees regarding removing the bracket. Id. at 123:23 – 21. Hence, Mr. Phillips' opinion that Rayovac has available, or could make available, non-infringing alternatives that are liquid-based cleaning devices for drying shavers is not based in fact; his opinion appears to be based on his own (or, more accurately, Rayovac's counsel's) imagination of what might be. Such testimony is irrelevant.

Importantly, Mr. Phillips never considered whether any of these alleged non-infringing alternatives is actually non-infringing. Indeed, Mr. Phillips has tested these alternatives only against the asserted claims of the '328 patent. (And, as discussed in Section IV.B supra, it is clear that none of Mr. Phillips's proposed modifications of Rayovac's accused products avoids infringement of all of the asserted claims of the '328 patent.) He has never determined whether these alternatives infringe any of the other claims. Phillips Dep. at 124:22 – 126:4. In particular, Mr. Phillips has not considered whether these purportedly non-infringing alternatives infringe claim 9 of the '328 patent. Claim 9 provides:

A cleaning device comprising:

---

[9] Moreover, there is no reason to believe that a lidded cradle structure would be acceptable to consumers. Coupled with elimination of the dryer, such a lid would create an environment within the cradle structure ideal for bateria and fungus growth. This is hardly acceptable to the consumer.

a cradle structure adapted to receive a shaving head of a shaving apparatus,

a cleaning fluid container,

a feed device for feeding cleaning fluid from said cleaning fluid container to said cradle structure, said cradle structure being arranged above a fluid level of the cleaning fluid in said cleaning fluid container during the feeding of said cleaning fluid to said cradle structure, and

an electric arrangement for temporarily operating the shaving head of the shaving apparatus and the feed device.

See '328 patent, col. 13, line 60 to col. 14, line 6. To design around claim 9, the alternatives would need to eliminate the electrical arrangement for temporarily operating the shaving head of the shaving apparatus and the feed device. Because none of these so-called alternatives proposes to eliminate this electrical arrangement in the accused products, the alternatives continue to infringe the '328 patent.

Additionally, Rayovac's alternative that would add a lid to its current products is not non-infringing. It would be clear that, in operation, the alternative would still infringe claim 14, since in operation the customer would (presumably) continue to use the cleaning device as a storage device for the shaver. Hence, the lid would either be permanently removed or permanently left open. In either case, Rayovac would be liable for contributory infringement. See, e.g., 35 U.S.C. § 271(c)(2001); Serrano v. Telular Corp., 111 F.3d 1578, 1584 (Fed. Cir. 1997). As such, Mr. Phillips' opinion that these alternatives are non-infringing is fundamentally flawed.

Accordingly, his opinion that these alternatives are "non-infringing" alternatives should be precluded as irrelevant.

### D.    Ms. Stamm's Opinion Should Be Excluded Because It Is Based On Mr. Phillips' Speculative Opinion

Ms. Laura Stamm, Rayovac's damages expert, should also be precluded from testifying on this subject, as she relied on Mr. Phillips opinion in his second expert report for the availability of non-infringing alternatives. See Expert Report of Laura B. Stamm at 7, ¶¶ 24-26.

Thus, her testimony would be irrelevant hearsay.  Further, she should be precluded from giving testimony on damages based on the availability of allegedly non-infringing alternatives, as their availability is not based on facts.


                                        Respectfully submitted,

                                        BRAUN GmbH
                                        By its Attorneys


                                        /s/ Dalila Argaez Wendlandt
                                        William L. Patton (BBO #391640)
                                        Dalila Argaez Wendlandt (BBO #639280)
                                        ROPES & GRAY LLP
                                        One International Place
                                        Boston, MA 02110-2624
                                        (617) 951-7000

                                        Stanley D. Liang (admitted *pro hac vice*)
                                        ROPES & GRAY LLP
                                        1251 Avenue of the Americas
                                        New York, NY 10021
                                        (212) 596-9000

                                        Attorneys for Plaintiffs

Dated: October 14, 2005