IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRAUN GmbH,<br><br>    Plaintiff,<br><br>v.<br><br>RAYOVAC CORPORATION,<br><br>    Defendant. | Civil Action No. 03-CV-12428-WGY |

## BRAUN GMBH'S SUPPLEMENTAL ANSWERS TO RAYOVAC'S INTERROGATORY NOS. 1-7, 13, 15 AND 19

Pursuant to Federal Rule of Civil Procedure 33, plaintiff Braun GmbH ("Braun") answers and objects to defendant Rayovac Corporation ("Rayovac") First, Second and Third Sets of Interrogatories (the "Interrogatories") as follows:

### GENERAL OBJECTIONS

These general objections are hereby incorporated into each specific objection and response below and are not repeated therein.

1. Braun objects to the Interrogatories and to each individual interrogatory, to the extent that they seek information protected from discovery by the attorney-client privilege, the attorney-work-product doctrine, or any other applicable privilege. Any reference to an attorney's name herein is not, and is not intended as, a waiver of any applicable attorney-client or work-product privilege.

2. Braun objects to the Interrogatories and to each individual interrogatory, to the extent that they seek information that is outside the scope of Braun's own first-hand knowledge or the identification of documents that are not within Braun's possession, custody or control.

3. Braun objects to the Interrogatories and to each individual interrogatory, to the extent that they seek to impose obligations or burdens upon Braun beyond those required and/or permitted by the applicable provisions of the Local Rules and/or the Federal Rules of Civil Procedure.

4. Braun objects to the Interrogatories and to each individual interrogatory, to the extent that they are vague, ambiguous, overly broad, unduly burdensome, lack sufficient particularity and seek identification of information and/or documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

5. Braun objects to the Interrogatories and to each individual interrogatory to the extent that they require the collection of information that is contained in public records or are otherwise generally available to the public, as this information is equally available to Rayovac.

6. Braun objects to the Interrogatories and to each individual interrogatory to the extent that they fail to define a relevant time period.

7. The objections and responses herein are made without waiver of and with specific preservation of:

    a. All objections as to competency, relevancy, materiality, privilege and admissibility of the information or the subject matter thereof, as evidence for any purpose and any proceeding in this action (including trial) and in other actions;

b.  The right to object on any grounds at any time to a demand for further responses to these or any other discovery requests or other discovery proceedings involved or related to the subject matter of the discovery to which information or documents are provided; and

c.  The right at any time to review, correct, add to, supplement or clarify any of these responses.

## SUPPLMENTAL ANSWERS TO SPECIFIC INTERROGATORIES

## INTERROGATORY NO. 1:

For each Remington product that Braun alleges infringes either of the Patents-in-Suit, and for each of those Patents-in-Suit, provide the following information:

A.  specify each claim of the Patents-in-Suit alleged by Braun to be literally infringed, and provide a claim chart specifying the particular structure or part of each such product that allegedly corresponds to each element and limitation of each apparatus claim alleged to be infringed, or the specific step in the use of each such product that allegedly corresponds to each step of each method claim alleged to be infringed;

B.  specify each claim of the Patents-in-Suit alleged by Braun to be infringed under the doctrine of equivalents, and provide a claim chart specifying the particular structure or part of each such product that allegedly corresponds under the doctrine of equivalents to each element and limitation of each apparatus claim alleged to be infringed, or the specific step in the use of each such product that allegedly corresponds under the doctrine of equivalents to each step of each method claim alleged to be infringed. For each element that is alleged to be present under the doctrine of equivalents, Braun's explanation should include the bases for Braun's contention that the differences between the claim element and the accused product are insubstantial and that the element and the accused product perform substantially the same function in substantially the same way to achieve substantially the same result; and

C.  in a separate column of each of the preceding charts, for each claim element that Braun contends should be construed by the Court, specify the construction Braun contends attaches to each element, and identify all intrinsic and extrinsic evidence alleged by Braun to support each such construction.

## SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 1:

Braun hereby incorporates its previous answers and objections to this interrogatory. Braun further incorporates by reference its Motion for Partial Summary Judgment of Infringement and accompanying memorandum of law, as well as the Expert Report and Third Expert Report of Professor Samir Nayfeh. In addition to the General Objections set forth above, Braun also objects to Interrogatory No. 1 on the ground that it seeks a legal conclusion. Subject to these objections, Braun states that Rayovac has also literally infringed at least claim 12 of the '328 patent. Claim chart for this claim is shown below.

| Claim 12 of the '328 Patent | Claim Construction | Rayovac's Accused Products |
|---|---|---|
| A device as claimed in claim 11, wherein | See Exhibit 2 of Braun's Answer to Remington's First Set of Interrogatories served on October 25, 2004 for Braun' claim construction for claim 11 of the '328 patent. | See Exhibit 2 of Braun's Answer to Remington's First Set of Interrogatories served on October 25, 2004. |
| The drying device comprises an impeller. | The drying device includes an impeller.<br><br>Source: '328 Patent, col. 7, lines 29-39 ("Provided at the lower end of the electric motor 13 is a motor output shaft 15 on which an impeller or impeller wheel 16 is arranged serving in particular for drying the cleaned shaving head 3 of the shaving apparatus 1 following termination of the cleaning cycle of the shaving head 3 described in more detail in the following. The impeller 16 sits in an impeller casing 17 communicating through an opening 18 with the space above the cradle 7, and it directs a continuous stream of hot air heated by a heating means, not shown in the drawings, against the shaving head 3 to effect a drying action following the cleaning operation."); col. 8, lines 59-62 ("Further arranged in the area of the bracket 10 is the motor 28 adapted to drive directly the impeller 16 which is operatively associated with a heating means for heating the air used for drying the shaving apparatus 1."); col. 9, lines 50-54 ("Being automatically inserted in the circuit at point 33, the impeller 16 is turned on with or without heating means and driven by the electric motor 13, thus delivering dry air to the shaving head 3 for a predetermined period of time (see segment d between points 33 and 34)."); Figure 1 (impeller 16). | Each of the accused products contains a drying device that includes an impeller. |

3140136_1.DOC

In addition to the General Objections set forth above, Braun objects to this interrogatory as premature in seeking Braun's answer with respect to infringement under the doctrine of equivalents. Under the Court's claim construction during the <u>Markman</u> hearing, Rayovac's accused devices literally infringe at least claims 11, 12, 14 and 18 of the '328 Patent. Braun further notes that on October 5, 2005 the Court confirmed its March 15, 2005 claim construction, rejecting Rayovac's renewed argument that the Cradle Structure Element be limited to cradle structures that receive <u>and</u> retain cleaning fluid. Nevertheless, Braun asserts that Rayovac's accused products infringe each of the asserted claims even under Rayovac's erroneous construction because the injection ports and manifold of Rayovac's cradle structure receive and retain cleaning fluid. Unless the Court changes its claim construction, it is premature for Braun to put forth its position on infringement under the doctrine of equivalents. Braun reserves the right to put forth its position on infringement (either literal or under the doctrine of equivalents) should the Court change its claim construction. Hence, subject to these objections, Braun does not answer this interrogatory with respect to infringement under the doctrine of equivalents at this time.

**INTERROGATORY NO. 2:**

For each of the asserted claims identified in response to Interrogatory No. 1, state:

- A. the earliest date of conception of the subject matter of each claim, the earliest date the subject matter of the claim was actually reduced to practice, the identity of all persons in possession of information or knowledge corroborating or supporting those dates of conception and reduction to practice; and

- B. identify all documents, including laboratory notebook pages, project and technical reports, memoranda, physical samples and devices or any other evidence corroborating or supporting such conception and such reduction to practice.

## SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 2:

Braun hereby incorporates its previous answer and objections to this interrogatory. In addition to the General Objections set forth above, Braun objects to Interrogatory No. 2 to the extent it seeks information protected from disclosure by the attorney-client privilege or the work product doctrine. Braun also objects to Interrogatory No. 2 on the ground that it seeks a legal conclusion. Subject to these objections, Braun states as follows:

Claim 12 of the '328 patent were conceived on or before November 1992 and reduced to practice on or before November 1992.

Persons with knowledge of the aforementioned information include: Dr. Dietrich Pahl, Mr. Gebhard Braun, Dr. Wolfgang Vorbeck, and Mr. Peter Sartorius.

For documents in support of the conception and reduction to practice of claims 11, 12, 14 and 18 of the '328 Patent, see Braun's documents produced to date, including without limitation B003075-B003076, B001058-B001063, B001066-B001068, and B001069-B001073.

## INTERROGATORY NO. 3:

For each of the Patents-in-Suit, identify the earliest date upon which any embodiment of any asserted claim was: (1) offered for sale in the United States; (2) sold in the United States; (3) publicly used in the United States; (4) offered for sale anywhere in the world; (5) sold anywhere in the world; and (5) publicly used anywhere in the world. Further identify all documents evidencing the advertising and marketing efforts associated with the earliest offers for sale, sales, and public uses identified herein.

## SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 3:

Braun hereby incorporates its previous answer and objections to this interrogatory. In addition to the General Objections set forth above, Braun objects to Interrogatory No. 3 to the extent it seeks information protected from disclosure by the attorney-client privilege or the work product doctrine. Braun also objects to Interrogatory No. 3 on the ground that it seeks a legal conclusion. Subject to these objections and to later modification in light of information obtained

through discovery or otherwise, Braun states that embodiments of the claims listed in Response to Interrogatory No. 1 were (1) first offered for sale in the United States in June 2000; (2) first sold in the United States in July 2000; (3) first publicly used in the United States in January 2000; (4) first offered for sale anywhere in the world in September 1999; (5) first sold anywhere in the world in September 1999; and (5) first publicly used anywhere in the world in July 1999.

The documents related to the advertising and marketing efforts associated with the earliest offers for sale, sales, and public uses identified herein are: Gillette's internal marketing and sales reports, Braun's internal marketing and sales reports, Market Share Trend Reports, and market research studies. See documents produced by Braun and Gillette to date, including, without limitation, GIL003978-GIL004049, GIL004050-GIL004190, GIL004575-GIL004642, B008325-B008329, B000895-B000897, B000912-B000921, B007668-B007711, B008330-B008331, B008372, B008371, B008450-B008527, B007890-B007942, B007834-B007889.

## INTERROGATORY NO. 4:

Identify each product developed, manufactured, sold or offered for sale by Braun that embodies any element of any asserted claims identified in response to Interrogatory No. 1, including without limitation, all models, prototypes, and modifications, including the name and version number of the product and the element and claim embodied.

## SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 4:

Braun hereby incorporates its previous answer and objections to this interrogatory. In addition to the General Objections set forth above, Braun objects to Interrogatory No. 4 on the ground that it is unduly burdensome and unlikely to lead to the discovery of admissible evidence. Braun further objects to this interrogatory as seeking information that is publicly available such that Rayovac already has access to it.

Subject to these objections, Braun states that the products embodying elements of the asserted claims identified in response to Interrogatory No. 1 are listed on the Exhibit 3 attached to Braun's answer to this interrogatory served on October 25, 2004, as well as other Braun products with a Clean & Charge system sold to the public, which are thus publicly available information. Further, Braun has produced financial documents identifying by SKU number said Braun products.

**INTERROGATORY NO. 5:**

State in detail Braun's contentions regarding the following, including all legal and factual bases for such contentions: (a) the level of ordinary skill in the art to which the subject matter of each of the Patents-in-Suit pertains and (b) any objective indicia of nonobviousness that Braun contends supports the validity of the Patents-in-Suit.

**SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 5:**

Braun hereby incorporates its previous answer and objections to this interrogatory. In addition to the General Objections set forth above, above, Braun objects to Interrogatory No. 5 on the ground that it is unduly burdensome and unlikely to lead to the discovery of admissible evidence. Braun also objects to Interrogatory No. 5 on the ground that it seeks a legal conclusion. Subject to these objections, Braun states that the long felt industry need for the patented inventions and the commercial success of Braun's products embodying these patents are objective indicia of nonobviousness, supporting the validity of the patents. With regard to the long felt need, no other commercial product existed in the dry shaver industry capable of easily cleaning the shaving head of a dry shaver. Prior to the patented inventions, cleaning of the shaving head of a dry shaver was accomplished by manually brushing debris from the shaver head or by disassembly of the shaver head and placement of the cutter in a beaker, which could be shaken. The patented inventions solved the problems associated with these and other methods. The commercial success of the products embodying these patents is further evidence

of the nonobviousness of the inventions. Moreover, based at least on documents produced by Rayovac, including without limitation, R000666, R002955, R002714-5, R002729-30, R002695, R000965-8, R000024-36, R000021, R002691, R000884, R002812, R002691, R000884, R002812-15, R002959, R004028-9, R002518-69, Rayovac considered Braun's products as benchmark in designing its infringing products. Because Rayovac's products literally infringe at least claims 11, 12, 14 and 18 of the '328 Patent, Rayovac must have copied Braun's products embodying Braun's claimed invention while using them as a benchmark. Using Braun's products that embody this patented technology as benchmark in the design of Rayovac's products and copying these products is further evidence of the nonobviousness of the inventions.

**INTERROGATORY NO. 6:**

Provide with particularity, the factual and legal bases for Braun's contentions as to the amount of damages due to Braun if Remington is found to infringe one or both of the Patents-in-Suit, including, but not limited to, the proper royalty rate, amount of lost profits due and/or increased damages for willfulness; further identify the evidentiary support (including all documents and identification of witnesses) for any facts identified.

**SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 6:**

In addition to the General Objections set forth above, Braun hereby incorporates its previous answer and objections to this interrogatory. Subject to these objections, Braun answers Interrogatory No. 6 by directing Rayovac's attention to the Expert Report and Reply Report of Dr. Jesse David.

**INTERROGATORY NO. 7:**

State whether Braun contends that the alleged infringement of the Patents-in-Suit by Remington is or was willful and, if so, describe the totality of the circumstances that Braun alleges support such a contention.

**SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 7:**

Braun hereby incorporates its previous answer and objections to this interrogatory. Subject to these objections, Braun states as follows: Braun notified Rayovac that its activities

infringed the patents-in-suit in December 2003. On information and belief, Braun states that Rayovac is aware of Braun's patents, and in particular Braun's patents in the area of cleaning devices for dry shavers. In fact, Rayovac first became aware of the '328 Patent in late 2001 around the time it began considering developing a shaver cleaning system of its own. While developing its own shaver cleaning system, Rayovac used Braun's products as a benchmark. *See* documents produced by Rayovac, including without limitation, R000666, R002955, R002714-5, R002729-30, R002695, R000965-8, R000024-36, R000021, R002691, R000884, R002812, R002691, R000884, R002812-15, R002959, R004028-9, R002518-69. And Rayovac copied Braun's products while using it as a benchmark, as its products literally infringe at least claims 11, 12, 14 and 18 of the '328 Patent. Furthermore, despite its awareness of Braun's patent, Rayovac has entered the market with an infringing device in October 2003. Further, in August 2004, after Braun filed the present action, Rayovac introduced a foil version of its infringing product as a further act of willful infringement. And again in May 2005, Rayovac introduced a foil version for women of its infringing product as a further act of willful infringement.

**INTERROGATORY NO. NO. 13:**

Identify all costs, both fixed and variable, incurred by Braun and/or The Gillette Company in manufacturing and marketing the products covered by the patents-in-suit. In addition identify as well all documents that support Braun's Response to Interrogatory No. 13.

**SUPPLEMENTAL ANSWER TO INTERROGATORY NO. NO. 13:**

Braun hereby incorporates its previous answer and objections to this interrogatory. In addition to the General Objections set forth above, Braun again objects to Interrogatory No. 13 to the extent it seeks information protected from disclosure by the attorney-client privilege or the work product doctrine. Braun further objects to Interrogatory No. 13 as

duplicative to Rayovac's previous discovery requests, such as subject number 3 listed in Attachment A to its May 3, 2005 Second Notice of Rule 30(b)(6) deposition.

Braun further objects to Interrogatory No. 13 to the extent it seeks discovery of Gillette, a non-party in this action from whom Rayovac has sought document discovery as well as a Rule 30(b)(6) deposition. Such information is outside the scope of Braun's own first-hand knowledge or requires the identification of documents that are not within Braun's possession, custody or control.

Subject to these objections and to later modification in light of information obtained through discovery or otherwise, Braun states as follows:

The direct costs (variable costs for specific products) for Braun's Clean & Charge products relate to materials that go to the development of these products and include costs for any and all componentry, costs for product packaging, transport costs of getting the material from a supplier to Braun, labor costs and related costs, conversion costs (the costs associated with taking a group of raw materials and converting them into a finished product). *See* transcript of the June 6, 2005 deposition of Matt Parker at pages 279-280, 284-285.

For the documents relevant to the direct costs for Braun's Clean & Charge products, see the documents produced by Braun and Gillette to date, including, without limitation, B007830-B007831, B007958, B007959-B007981, B007982-B007995, B008325-B008329, B008330-B008331, B008370 and B008371-B008372. Each of these documents is designated for attorney's eyes only.

Braun does not break down fixed costs on a per product basis.

**INTERROGATORY NO. 15:**

Does Braun contend that the claims and written description of U.S. Patent Application No. 08/376,849 (as filed on January 23, 1995) are an accurate and literal English translation of the claims and written description of German Patent Application No. 4402238.7

(as filed on January 26, 1994)? To the extent that Braun does not so contend, please provide Braun's contention as to (1) how the U.S. Patent Application No. 08/376,849 and German Patent Application No. 4402238.7 differ, (2) why the U.S. Patent Application No. 08/376,849 and German Patent Application No. 4402238.7 differ, (3) when Braun discovered any differences between the U.S. Patent Application No. 08/376,849 and German Patent Application No. 4402238.7. Please also identify all Braun employees or agents (including foreign and U.S. prosecution counsel) who had knowledge of both the U.S. and German applications during the prosecution of U.S. Patent No. 5,649,556, this interrogatory includes, but is not limited to, Braun's amendment of German Patent Application No. 4402238.7. *See, e.g.,* B001136ENG-001137ENG.

**SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 15:**

Braun hereby incorporates its previous answer and objections to this interrogatory. In addition to the General Objections set forth above, Braun objects to Interrogatory No. 15 on the ground that it is unduly burdensome and unlikely to lead to the discovery of admissible evidence. Braun further objects to this interrogatory on the grounds that it is duplicative of other interrogatories.

Subject to these objections, Braun states that the claims and the specification of the '849 application are accurate and literal translation of German Patent Application No. 4402238.7 (as amended on October 24, 1994– see B001138-B001145 and B001138ENG-B001145ENG). The specification and the claims of the '849 application do not have any new matter added in relation to German Patent Application No. 4402238.7 (as filed on January 26, 1994) and the claims of the '328 Patent are entitled to priority under 35 U.S.C. § 119 from German Patent Application No. 4402238.7.

**INTERROGATORY NO. 19:**

Identify what role The Gillette Company ("Gillette") has in the manufacturing, testing, sales, marketing, distribution, and/or "the general business management" of the products that employ the inventions disclosed by the patents-in-suit and all facts supporting Braun's statement that Gillette "shoulders the responsibility for the sales and marketing of ... the products that employ the inventions disclosed by the patents-in-suit." This Interrogatory includes, but is not limited to, (a) the money or other consideration paid by Gillette to Braun for the products that employ the inventions disclosed by the patents-in-suit (from the first sale in the

U.S. to the present); (b) Braun's method for accounting for the money or other consideration paid by Gillette to Braun for such products; (c) the gross and net profits made by Braun as a result of Gillette's sales and marketing of such products; (d) the reason that Gillette shoulders the responsibility for the sale and marketing of such products in the U.S.; (e) Braun's ability to shoulder the responsibility for the sale and marketing of such products in the U.S. without Gillette; (f) the amount of funds spent by Gillette annually on the sales and marketing of such products; and (g) the identification of documents by Bates Number of documents supporting Braun's contentions.

**SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 19:**

Braun hereby incorporates its previous answers and objections to this interrogatory.

Subject to these objects, as to the profits made by Braun, see the Expert Report and the Reply Report of Dr. Jesse David.

Signed under the penalty of perjury this 12th day of October 2005.

Uwe Sievers
for BRAUN GmbH

Objections made by:

_____
William L. Patton (BBO #391640)
Dalila Argaez Wendlandt (BBO #639280)
ROPES & GRAY LLP
One International Place
Boston, MA 02110-2624
(617) 951-7000

Stanley D. Liang (admitted *pro hac vice*)
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY 10021
(212) 596-9000

Attorneys for Plaintiff

Dated: October 12, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2005, I caused a copy of the Braun GMBH's SUPPLEMENTAL Answers To RAYOVAC'S Interrogatory Nos. 1-7, 13, 15 and 19 to be served as follows:

<div style="margin-left: 2em;">

By Facsimile and Overnight Courier
Thomas E. Dwyer, Jr.
Dwyer & Collora, LLP
600 Atlantic Avenue
Boston, MA 02110-2211


James A. Shimota
Kirkland & Ellis, LLP
Aon Center
200 E. Randolph Drive
Chicago, IL 60601

</div>

_____
Stanley D. Liang